No. 24-10900

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

X CORP.,

*Plaintiff-Appellee,*

v.

MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, and ANGELO CARUSONE,

*Defendants-Appellants.*

On Appeal from the United States District Court

for the Northern District of Texas

(Case No. 4:23-cv-01175-O)

## APPENDIX TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR ADMINISTRATIVE STAY AND MOTION FOR STAY PENDING APPEAL

*(Counsel listed on following page)*

GIBSON, DUNN &
CRUTCHER LLP
Andrew LeGrand
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com
tcox@gibsondunn.com

Theodore J. Boutrous, Jr.
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch
Christopher D. Dodge
Jacob D. Shelly
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

*Counsel for Defendants-
Appellants Media Matters for
America, Angelo Carusone, and
Eric Hananoki*

| N.D. Tex. Docket No. | Description of Document | App. Page No. |
|---|---|---|
| 14 | Scheduling Order | 1 |
| 37 | First Amended Complaint | 18 |
| 60 | Brief in Support of Motion to Compel Production of Documents | 46 |
| 62 | Response to Motion to Compel Production of Documents | 70 |
| 63 | Appendix in Support of Response to Motion to Compel | 99 |
| 65 | Order on Motion to Compel | 202 |
| 66 | Joint Motion to Amend Scheduling Order | 206 |
| 69 | Scheduling Order | 212 |
| 72 | Order on Parties' Stipulation on Protective Order | 215 |
| 84 | Motion to Compel Production of Donor-Related Documents | 218 |
| 85 | Appendix in Support of Motion to Compel Donor-Related Documents | 243 |
| 87 | Response to Motion to Compel Donor-Related Documents | 371 |
| 88 | Appendix in Support of Response to Motion to Compel filed by Media Matters for America | 399 |
| 89 | Defendants' Notice of Exhibits in Support of Response to Motion to Compel Donor-Related Documents | 468 |
| 89-1 | Exhibit A to Notice of Exhibits | 472 |
| 89-2 | Exhibit B to Notice of Exhibits | 477 |
| 89-3 | Exhibit C to Notice of Exhibits | 481 |
| 89-4 | Exhibit D to Notice of Exhibits | 483 |
| 97 | Appendix in Support of Motion to Compel Production of Documents Withheld Under Texas Press Shield Law | 485 |

| 98 | Order on Motion to Compel Donor-Related Documents | 624 |
|---|---|---|
| 99 | Emergency Motion to Stay Order on Motion to Compel | 647 |
| 100 | Brief in Support of Emergency Motion to Stay | 651 |
| 101 | Notice of Interlocutory Appeal | 684 |
| 102 | Order on Emergency Motion to Stay | 688 |

# Doc. 14

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-01175-O |
| | § | |
| MEDIA MATTERS FOR AMERICA | § | |
| and ERIC HANANOKI, | § | |
| | § | |
| **Defendants.** | § | |

## SCHEDULING ORDER

## I.      SUMMARY OF CRITICAL DATES

| | |
|---|---|
| Deadline for Motions for Leave to Join Parties or Amend Pleadings (¶ 2) | March 20, 2024 |
| Initial Expert Designation & Report (¶ 4 a.) | June 24, 2024 |
| Responsive Expert Designation & Report (¶ 4 b.) | July 22, 2024 |
| Rebuttal Expert Designation (¶ 4 c.) | 30 days after disclosure made by other party |
| Expert Objections (¶ 4 d.) | October 14, 2024 |
| Dispositive Motions (¶ 3) | August 5, 2024 |
| Mediation (¶ 5) | July 10, 2024 |
| Completion of Discovery (¶ 6) | July 29, 2024 |
| Pretrial Disclosures and Objections (¶ 7) | November 27, 2024<br><br>Objections due 14 days thereafter |
| Pretrial Materials (pretrial order, etc.) (¶ 8) | December 12, 2024 |
| Exchange of Exhibits (¶ 9) | December 23, 2024 |
| Pretrial Conference (¶ 11) | To be set if necessary. |
| Trial Date (¶ 1) | January 6, 2025 |

App.002

## II.     SCHEDULING INSTRUCTIONS

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and the local rules of this Court (except as modified herein), the Court, having considered the status report submitted by the parties, finds that the following schedule should govern the disposition of this case:

Unless otherwise ordered or specified herein, all limitations and requirements of the Federal Rules of Civil Procedure and the local rules of this Court must be observed.

**Please note that the Court has attempted to adhere to the schedule requested by the parties.  In so doing, the Court assumes that the parties thoroughly discussed scheduling issues prior to submitting their status report and that the parties understand that the deadlines imposed in this Order are firmly in place, absent the few exceptions set forth below.**

1.     **<u>Trial Date</u>**:  This case is **set for trial** on this Court's four-week docket beginning **January 6, 2025**.  Counsel and the parties shall be ready for trial on **two days'** notice at any time during this four-week period.

2.     **<u>Joinder of Parties or Amendment of Pleadings</u>**: By **March 20, 2024**, all motions requesting **joinder** of additional parties or **amendments** of pleadings shall be filed.

3.     **<u>Dispositive Motions</u>**:  By **August 5, 2024**, all motions that would dispose of all or any part of this case (including motions for **summary judgment**) shall be filed.

4.     **<u>Experts</u>**:

a.  **<u>Initial Designation of Expert(s)</u>**:  Unless otherwise stipulated or directed by order, the party with the burden of proof on the issue subject to the expert designation shall file a written designation of the name and address of each **expert witness** who will testify at trial for that party and shall otherwise comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure on or before **June 24, 2024**. (Unless otherwise noted, all references to Rules in this Order shall refer to the Federal Rules of Civil Procedure.)

b.  **<u>Responsive Designation of Expert(s)</u>**: Each party without the burden of proof on the issue subject to expert designation shall file a written designation of the name

App.003

and address of each **expert witness** who will testify at trial for that party and shall otherwise comply with Rule 26(a)(2) on or before **July 22, 2024**.

**c.** **Rebuttal Expert(s)**:  If the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B), the disclosures required under Rule 26(a)(2) shall be made within **30 days** after the disclosure made by the other party.

**d.** **Challenges to Experts**:  The parties are directed to file any objections to, or motions to strike or exclude expert testimony (including Daubert motions),  no later than **October 14, 2024**.  *No challenges to experts shall be filed prior to* August 5, 2024 *without obtaining leave of court.*

5.   **Mediation:**

    **a.** **Mediation Requirements:** The parties shall jointly select a mediator and mediate on or before **July 10, 2024.** Individual parties and their counsel shall participate **in person**, not by telephone or other remote means. All other parties shall participate by a representative or representatives, in addition to counsel, who shall have **unlimited settlement authority** and who shall participate **in person**, not by telephone or other remote means. If a party has liability insurance coverage as to any claim made against that party in this case, a representative of each insurance company providing such coverage, who shall have **full authority to offer policy limits in settlement**, shall be present at, and participate in, the meeting **in person**, not by telephone or other remote means.  At this meeting, the parties shall comply with the requirements of Local Rule 16.3.

    **b.** **Exceptions to Mediation Requirements:** If any party is unable to satisfy the Mediation Requirements in full, they may submit a motion to the Court requesting leave to be excused from the objectionable requirement(s) and showing good cause as to why they should be excused. This motion must be submitted as soon as the issue presents itself, and **no later than three weeks before the mediation deadline or the mediation itself, whichever occurs sooner**. If the Court does not rule on the motion prior to the mediation conference, the parties must proceed as if the request is denied.

    **c.** **Mediation Report:** Within **seven days** after the mediation, the parties shall **jointly prepare and file a written report**, which shall be signed by counsel for each party, detailing the date on which the mediation was held, the persons present (including the capacity of any representative), and a statement informing the Court of the effect of their mediation and whether this case has been settled by agreement of the parties.

6.   **Completion of Discovery**:  By **July 29, 2024,** all discovery—including discovery concerning expert witnesses—shall be completed.  The parties may agree to extend

this discovery deadline, provided (a) the extension **does not affect** the trial setting, dispositive motions deadline, challenges to experts deadline, or pretrial submission dates; and (b) written notice of the extension is given to the Court.

7. **Pretrial Disclosures and Objections**:  Unless otherwise directed by order, the parties must make the disclosures required by Rule 26(a)(3)(A)-(B) by **November 27, 2024**.  With respect to the identification of witnesses who will be called by deposition, the parties must also identify the portions of the deposition transcript that they intend to use.  (Modification of Rule 26(a)(3)(A)(ii)).  Within **14 days thereafter**, a party must serve and file a list disclosing any **objections**, together with the grounds therefor, to: (a) the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); (b) the admissibility of materials identified under Rule 26(a)(3)(A)(iii); and (c) the use of any witnesses (except for expert objections) identified under Rule 26(a)(3)(A)(i)[1], if any.  Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, are waived unless excused by the Court for good cause.

8. **Pretrial Materials**:  By **December 12, 2024** except as otherwise noted below, all **pretrial materials** shall be filed.  Specifically, by this date:

   a. **Pretrial Order**:  A **joint pretrial order** shall be submitted by the Plaintiff's attorney which covers each of the matters listed in Local Rule 16.4 and which states the **estimated length of trial**.  If an attorney for either party does not participate in the preparation of the joint pretrial order, the opposing attorney shall submit a separate pretrial order with an explanation of why a joint order was not submitted (so that the Court can impose sanctions, if appropriate).  Each party may present its version of any disputed matter in the joint pretrial order; therefore, failure to agree upon content or language **is not an excuse for submitting separate pretrial orders**.  (Modification of Local Rule 16.4).  When the joint pretrial order is

---

[1] Requiring parties to file objections to witnesses disclosed under Rule 26(a)(3)(A)(i) is a modification of the requirements of Rule 26(a)(3)(B), which only requires that the parties file objections to deposition designations (Rule 26(a)(3)(A)(ii)) and exhibits (Rule 26(a)(3)(A)(iii)).

App.005

approved by the Court, it will control all subsequent proceedings in this case. If submitted on paper, the parties must submit the original and one copy of the proposed pretrial order (styled as the "Pretrial Order") directly to the Court's chambers. Do not file it with the clerk. The Court will direct the clerk to file it after the Court signs it. The proposed pretrial order must be transmitted to the electronic address used for receipt of proposed orders (o'connor_orders@txnd.uscourts.gov) no later than **December 16, 2024.**

**b.** <u>**Witness List**</u>: A **list of witnesses** shall be filed by each party, which divides the persons listed into groups of "**probable witnesses**," "**possible witnesses**," "**experts**," and "**record custodians**" and which provides:

**(i)** the **name and address** of each witness;

**(ii)** a **brief narrative summary** of the testimony to be covered by each witness;

**(iii)** whether the witness has been **deposed**; and

**(iv)** the **expected duration** of direct or cross-examination of the witness.[2]

The Witness list will include three columns. The first column will contain a brief statement of the subject matter to be covered by a particular witness. The second column will bear the heading "Sworn" and the third column will bear the heading "Testified" so that the Court can keep track of the witnesses at trial.

If any witness needs an interpreter, please note this on the witness list. It is the obligation of the party offering such a witness to arrange for an interpreter to be present at trial.

(Modification of Local Rule 26.2(b))

**c.** <u>**Exhibit List and Deposition Testimony Designations**</u>: **A list of exhibits (including demonstrative exhibits) and a designation of portions of depositions** to be offered at trial shall be filed by each party. The list of exhibits shall describe with specificity the documents or things in numbered sequence. The documents or things to be offered as exhibits shall be numbered by attachment of gummed labels

---

[2] Pursuant to Rule 16(c)(2)(O) and Section VII of the United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan, the Court may impose a reasonable limit on the time allowed for presenting evidence in this case. See Commentary - 1993 Amendment to the Federal Rules of Civil Procedure (court should ordinarily impose time limits only after receiving appropriate submissions from the parties).

App.006

to correspond with the sequence on the exhibit list and identify the party submitting the exhibit. (Modification of Local Rule 26.2(b), (c)). Do not use letter suffixes to identify exhibits (e.g., designate them as 1, 2, 3, not as 1A, 1B, 1C). The Exhibit list will include two columns, one bearing the heading "Offered" and the other bearing the heading "Admitted."

Each party's **exhibit list** shall be accompanied by a written statement, signed by counsel for each party and state that, as to each exhibit shown on the list,

> **(i)** the parties agree to the admissibility of the exhibit; or

> **(ii)** the admissibility of the exhibit is objected to, identifying the nature and legal basis of any objection to admissibility and the name(s) of the party or parties urging the objection.

All parties shall cooperate in causing such statements to be prepared in a timely manner for filing with the exhibit lists. Counsel for the party proposing to offer an exhibit shall be responsible for coordinating activities related to preparation of such a statement as to the exhibit the party proposes to offer. This includes an obligation to make exhibits available for inspection in advance of the deadline for filing exhibit lists where a party needs to see exhibits to assess admissibility. The Court may exclude any exhibit offered at trial unless such a statement regarding the exhibit has been filed in a timely manner. In addition, objections not identified in the statement may be waived.

A **list of each party's exhibits** to which no objection will be lodged (preadmitted) must be submitted at the **pretrial conference**.[3] The Court expects the parties to confer and agree to admit the majority of their exhibits prior to trial.

> **d. <u>Jury Charge</u>:** **Requested jury instructions and questions (annotated)[4]** shall be filed as set forth below. In order to minimize time after commencement of the trial in resolving differences in the language to be included in the Court's charge to the jury:

> **(i)** Counsel for the Plaintiff shall deliver to counsel for Defendant by **December 2, 2024** a copy of its proposed Court's charge to the jury.

---

[3] This does not change the sequential manner in which each side should number its exhibits. In other words, a party should not separately number its exhibits into "objected to" and "unobjected to" categories.

[4] "Annotated" means that *each* proposed instruction shall be accompanied by citation to statutory or case authority and/or pattern instructions. It is not sufficient to submit a proposed instruction without citation to supporting authority.

App.007

(ii)    Counsel for Defendant shall deliver to counsel for the Plaintiff by **December 4, 2024** (A) a statement, prepared with specificity, of any objection his client had to any part of the proposed charge that counsel for Plaintiff has delivered pursuant to this paragraph and (B) the text of all additional instructions or questions his client wishes to have included in the Court's charge to the jury. Each objection and each such request shall be accompanied by citations of authorities supporting defendant's objection or request.

(iii)    At 10:00 a.m. on **December 6, 2024**, the lead attorneys for the parties to this action shall meet face-to-face at either (A) a mutually agreeable place, or (B) at the office of counsel for the Plaintiff located in Ft. Worth, Texas or within 50 miles of the Ft. Worth Division of the Northern District of Texas, for the purposes of (1) discussing, and trying to resolve, differences between the parties as to language to be included in the Court's charge to the jury and (2) identifying areas of disagreement that cannot be resolved. Such meeting shall be held for a sufficient length of time for there to be a meaningful discussion of all areas of disagreement and a meaningful attempt to accomplish agreement. Each attorney shall cooperate fully in all matters related to such a meeting.

(iv)    By 2:00 p.m. on **December 9, 2024** counsel for Plaintiff shall file a document titled "Agreed Charge" which in a single document shall contain, in logical sequence, all language to be included in the charge, including jury instructions and jury questions, about which the parties do not have disagreement and all language either party wishes to have included in the charge about which there is disagreement. All language of the proposed charge about which there is disagreement shall be (A) in bold face, (B) preceded by an indication of the identity of the party requesting the language, and (C) followed by a listing of citations of authorities in favor of and in opposition to the proposed language. Objections may be waived if not stated in the Agreed Charge.

Plaintiff must also send, in a WordPerfect-compatible format, the Agreed Charge to: o'connor_orders@txnd.uscourts.gov and include the case number and the document number of the referenced motion in the subject line.

**e.  Limited Number of Motions in Limine**: Motions in limine should not be filed as a matter of course. If filed, counsel must file them with the Court and serve them on the opposing party by **December 9, 2024**. Responses must be filed with the Court and served on the opposing party by **December 23, 2024**. Replies to responses are not permitted except by leave of Court. Parties may file motions in limine on no more than **TEN discrete topics** (no subparts) that are actually in

App.008

dispute. (good faith compliance with the conference requirements of Local Rule 7.1 will help to narrow issues that are actually in dispute). Motions in limine that contain boilerplate requests, that exceed ten topics or that cover undisputed issues will be stricken.

**f.  Voir Dire**:  The parties shall file any **proposed voir dire questions** which the Court is requested to ask during its examination of the jury panel by **December 16, 2024**.

**g.  Trial Briefs**:  Trial briefs may be filed by each party.  In the absence of a specific order of the Court, trial briefs are not required, but are welcomed.  The briefing should utilize Fifth Circuit and/or Supreme Court authority or relevant state authority to address the issues the parties anticipate will arise at trial.

**h.  Witness and Exhibit Lists**: The parties must deliver to the court reporter separate lists of witnesses and exhibits, as well as a glossary of all terms likely to be uttered on the record during the trial that are technical, scientific, medical, or otherwise uncommon,  no later than **12:00 noon on the Thursday prior to trial.**

**NOTE:**  Deadlines in this order regarding pretrial materials are dates for **filing** or **delivery, not mailing** dates.

9.    **Exchange of Exhibits**:  No later than **December 23, 2024**, counsel for each party intending to offer exhibits shall **exchange a complete set** of marked exhibits (including demonstrative exhibits) with opposing counsel and **shall deliver a set of marked exhibits to the Court's chambers** (except for large or voluminous items that cannot be easily reproduced).

10.    **Settlement Conference and Status Report**:
**a. Settlement Conference**:  No later than **December 23, 2024**, the parties and their respective lead counsel shall hold a **face-to-face meeting** to discuss **settlement** of this case.  Individual parties and their counsel shall participate in person, not by telephone or other remote means.   All other parties shall participate by a representative or representatives, in addition to counsel, who shall have unlimited settlement authority and who shall participate in person, not by telephone or other remote means.  If a party has liability insurance coverage as to any claim made against that party in this case, a representative of each insurance company providing such coverage, who shall have full authority to offer policy limits in settlement, shall be present at, and participate in, the meeting in person, not by telephone or other remote means.  At this meeting, the parties shall comply with the requirements of Local Rule 16.3.

App.009

**b. Joint Settlement Report**: Within **seven days** after the settlement conference, the parties shall **jointly prepare and file a written report**, which shall be signed by counsel for each party, detailing the date on which the meeting was held, the persons present (including the capacity of any representative), a statement regarding whether meaningful progress toward settlement was made, and a statement regarding the prospects of settlement.

11. **Pretrial Conference**:  A **pretrial conference** will be conducted, in person, if the Court determines such a conference is necessary.  If the Court anticipates imposing time limits on the presentation of evidence that *significantly* reduces the parties' estimated trial length, the Court will schedule a pretrial conference and advise of such deadlines so that counsel will have reasonable notice of such limits.  Lead counsel for each party must attend, or, if the party is proceeding *pro se*, the party must attend.  Fed. R. Civ. P. 16 (c)(1) & (e).  Lead counsel and pro se parties must have the authority to enter into stipulations and admissions that would facilitate the admission of evidence and reduce the time and expense of trial.  Id.  All pretrial motions not previously decided will be resolved at that time, and procedures for trial will be discussed.  At the final pretrial conference, it should be possible to assign the specific date for trial during the four-week docket.  **Telephone calls about the probable trial date prior to the final pretrial conference will not likely be beneficial to counsel or the Court staff.**

12. **Modification of Scheduling Order**:  As addressed above, this Order shall control the disposition of this case unless it is modified by the Court upon a showing of **good cause** and by leave of court.  Fed. R. Civ. P. 16(b)(4).  Conclusory statements will usually not suffice to show good cause, even if the motion is agreed or unopposed.  Moreover, the Court does not grant motions to modify the scheduling

App.010

order as a matter of course.  Any request that the trial date of this case be modified must be made (a) **in writing** to the Court, (b) **before** the deadline for completion of discovery, and (c) **in accordance with the United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan ¶ V and Local Rule 40.1** (motions for continuance must be signed by the party as well as by the attorney of record).

13.     <u>**Sanctions**</u>:  Should any party or counsel fail to cooperate in doing anything required by this Order, such party or counsel or both may be subject to sanctions. If the *plaintiff* does not timely file the required (or other) pretrial material, the case will be dismissed.  If the *defendant/third party* does not timely file the required (or other) pretrial material, a default will be entered or the defendant/third party will not be permitted to present witnesses or exhibits at trial.  Fines or other sanctions, if appropriate, may also be imposed under Rule 16(f).  **Failure to list a witness, exhibit, or deposition excerpt as required by this Order** shall be grounds for exclusion of that evidence.  This does not apply to testimony, exhibits, or deposition excerpts offered for impeachment; further, the use of unlisted witnesses, exhibits, or deposition excerpts for rebuttal shall be permitted if the attorneys could not have reasonably anticipated their need for that evidence.

14.     <u>**Electronic Filing Procedures**</u>:  This case has been designated for enrollment in the Electronic Case Filing System (CM/ECF).  (For more information on the ECF system, please see http://www.txnd.uscourts.gov/filing/ecf.html). Now that the case is designated an ECF case, all documents must be filed electronically; however, the Court still requires that courtesy copies of dispositive motions (and

App.011

accompanying briefs and appendices) be sent to Chambers. Proposed orders are **required** to be submitted with **EVERY** motion. (Modification to Local Rule 7.1(c)). Proposed orders must be submitted via e-mail in a Word or WordPerfect-compatible format as instructed in the CM/ECF system's "Proposed Orders" Event. The proposed orders must be **e-mailed** to: o'connor_orders@txnd.uscourts.gov. Include the case number and the document number of the referenced motion in the subject line.

15.   **Citations**: All briefs filed with the Court shall comply with the most recent edition of *The Bluebook: A Uniform System of Citation*. Particularly, counsel are directed to provide, where applicable, the subsections of cited statutes, and to provide pinpoint citations when citing cases, i.e., provide the page where the stated legal proposition can be found. See *Bluebook* Rules 3.2-3.4 (Columbia Law Review Ass'n et al. eds, 20th ed. 2015) (regarding pinpoint citations and subsections). Furthermore, if a brief contains citations to unpublished opinions or to LEXIS, counsel must attach copies of those cases to the brief.

16.   **Notice**: Each attorney of record and any unrepresented party must review and adhere to the Local Civil Rules of the Northern District of Texas, which may be accessed at http://www.txnd.uscourts.gov/rules/localrules/lr_civil.html. Additionally, each attorney of record and any unrepresented party must review and abide by the standards of litigation conduct for attorneys appearing in civil actions in the Northern District of Texas, as outlined in *Dondi Properties Corp. v. Commerce Savings & Loan*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), which may be accessed at http://www.txnd.uscourts.gov/publications/index.html.

App.012

17.   <u>**Inquiries**</u>: Questions relating to this scheduling order or legal matters should be presented in a motion, as appropriate. Questions regarding electronic notice or electronic case files shall be directed to the **Help Desk at 1-866-243-2866**. If any electronic equipment is needed in the courtroom, notify Brian Rebecek, Fort Worth Division Manager, at 817-850-6613.

**SO ORDERED** on this **22nd day** of **January, 2024**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**

App.013

# Doc. 31

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| X CORP., | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:23-cv-01175-O** |
| MEDIA MATTERS FOR AMERICA, et al., | |
| **Defendants.** | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND FAILURE TO STATE A CLAIM

Defendants Media Matters for America and Eric Hananoki (collectively, "Defendants") respectfully move the Court for an order dismissing the above-captioned case for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.  For the reasons stated in the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss, and Appendix thereto, the Complaint should be dismissed entirely and with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6).

WHEREFORE, Defendants respectfully request dismissal of the Complaint.

App.015

Respectfully submitted,

Dated:  February 6, 2024.

*/s/ Andrew LeGrand*
GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.** (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Omeed Alerasool* (DC 90006578)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
oalerasool@elias.law

\* Admitted *pro hac vice*
\** *Pro hac vice* application forthcoming

*Counsel for Defendants Media Matters for America and Eric Hananoki*

App.016

## CERTIFICATE OF SERVICE

On February 6, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

App.017

# Doc. 37

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**X CORP.**, a Nevada corporation,
   Plaintiff,

  vs.

**MEDIA MATTERS FOR AMERICA**, a
Washington, D.C. non-profit corporation,
**ERIC HANANOKI**, and **ANGELO
CARUSONE**,
    Defendants.

Case No. 4:23-cv-01175-O

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

  1.  Since Elon Musk acquired Plaintiff X Corp., the company has taken extensive steps to reduce legacy censorship on the X platform while maintaining important safety protocols to preserve and grow advertiser relationships. One immediate and broadly recognized consequence is that X is now the most significant online platform that permits users to share their views without aggressive censorship measures implemented to provide a partisan or ideological advantage to one faction or another.

  2.  These changes have prompted an extended, ideologically driven crusade against X by Defendants Media Matters for America ("Media Matters"), its President, Angelo Carusone, and its reporters, including, as relevant here, Eric Hananoki. Media Matters describes itself as "a progressive research and information center dedicated to comprehensively monitoring, analyzing, and correcting conservative misinformation in the U.S. media."[1] Since its launch in 2004, Media

---

[1] About Us, MEDIA MATTERS FOR AMERICA (2023), https://www.mediamatters.org/about-us.

Matters has engaged in an all-out campaign of "guerilla warfare and sabotage" on conservative news sources.[2] In this context, X Corp. is a critical target for Media Matters: having opened the X platform to conservative and liberal speech alike, X Corp. has weakened Media Matters' ability to censor its ideological enemies.

3.      Defendants have not taken the rejection of their preferred censorship regime lightly. Media Matters is well aware of the importance of advertising revenue to X Corp.—paid advertising being the overwhelming source of X Corp.'s revenue—and is likewise aware that X Corp. obtains that revenue through contracts with many prominent businesses to advertise on the X platform. In just the last year, Media Matters has published a series of articles designed to threaten X Corp.'s relationships with massive multinational advertisers and global publishers, including Amazon, eBay, Major League Baseball, New York Times Co., Samsung, Sports Illustrated, The Wall Street Journal, USA Today, Office Depot, Nokia, Dish, Bayer, Tyson Foods, Honeywell, Discovery, FanDuel, Thermo Fisher, National Women's Soccer League, the Pittsburgh Steelers, the Atlanta Falcons, Manchester City, DraftKings, FanDuel, T-Mobile, and The Athletic.[3]

4.      Last November alone, Media Matters released over twenty articles disparaging X Corp.—a blatant smear campaign. And these articles are only the latest salvo. Since the first news of Musk's interest in the company, Media Matters has falsely portrayed Twitter, now X, as a risky, unsafe platform for advertisers. Contrary to Media Matters' malicious and fabricated narrative,

---

[2] Ben Smith, *Media Matters' war against Fox*, Politico (Mar. 26, 2011 7:23 AM), https://www.politico.com/story/2011/03/media-matters-war-against-fox-051949.

[3] *See, e.g.*, Eric Hananoki, *X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags*, Media Matters for America (Nov. 17, 2023, 12:16 PM), https://www.mediamatters.org/twitter/x-placing-ads-amazon-nba-mexico-nbcuniversal-and-others-next-content-white-nationalist.

App.020

99% of X's measured ad placement in 2023 appeared adjacent to content scoring above the Global Alliance for Responsible Media's brand safety floor.

5.      Defendants have therefore undertaken a smear campaign constituting business disparagement and tortious interference with X Corp.'s business relationships in an attempt to force X Corp. to impose left-wing censorship policies on the X platform.

6.      This campaign has consisted of the long-term and repeated attempts to destroy X Corp.'s relationships with its advertising base through false and malicious claims about the platform. Indeed, Media Matters publicly represents that "[n]o advertiser is safe while Elon Musk controls X."[4]

7.      Defendants' attempts to destroy the relationships that X Corp. has built with its advertisers have been anything but subtle. Last November, looking to portray X's social networking platform as being dominated by "white nationalist and anti-Semitic conspiracy theories," Media Matters knowingly and maliciously manufactured side-by-side images depicting advertisers' posts on X Corp.'s social media platform beside Neo-Nazi and white-nationalist fringe content and then portrayed these manufactured images as if they were what typical X users experience on the platform. Media Matters designed both these images and its resulting media strategy to drive advertisers from the platform and destroy X Corp.

8.      These images and the resulting November 2023 articles were a deception campaign: Media Matters created utterly extraordinary and manufactured circumstances that no organic user would undertake, deliberately misused the X platform to induce the algorithm to pair racist content with popular advertisers' brands, and then passed off the results as typical of an X user's

---

[4] Matt Gertz, *It's the Antisemitism, Stupid*, MEDIA MATTERS FOR AMERICA (Nov. 17, 2023, 11:00 AM), https://www.mediamatters.org/elon-musk/its-antisemitism-stupid.

App.021

experience. This manipulation was designed to create, and did create, the false impression that these pairings are anything but what they actually are: manufactured, inorganic, and extraordinarily rare. It likewise harmed X Corp.'s business relationships and advertising contracts with numerous companies, as Media Matters itself gloated: IBM, Apple, Lionsgate Entertainment, Sony, and more.[5]

9.      Media Matters executed this plot in multiple steps, as X's internal investigations have revealed. First, Media Matters accessed accounts that had been active for at least 30 days, bypassing X's ad filter for new users. Media Matters then exclusively followed a small subset of users consisting *entirely* of accounts in one of two categories: those known to produce extreme, fringe content, and accounts owned by X's big-name advertisers. The end result was a feed precision-designed by Media Matters for a single purpose: to produce side-by-side ad/content pairings that it could screenshot in an effort to alienate advertisers.

10.     But this activity *still* was not enough to create the pairings of advertisements and content that Media Matters aimed to produce.

11.     Media Matters therefore resorted to endlessly scrolling and refreshing its unrepresentative, hand-selected feed, **generating between 13 and 15 times more advertisements per hour than viewed by the average X user**, and repeating this inauthentic activity until it finally received pages containing the result it wanted: fringe content next to X's largest advertisers' paid posts.

12.     Media Matters omitted mentioning any of this in a report published on November 16, 2023, that displayed instances Media Matters "found" on X of advertisers' paid posts featured

---

[5] Media Matters Staff, *Here Are the Companies Pulling Ads from X*, MEDIA MATTERS FOR AMERICA (Nov. 17, 2023, 4:45 PM), https://www.mediamatters.org/twitter/here-are-companies-pulling-ads-x.

next to Neo-Nazi and white-nationalist content. Nor did Media Matters otherwise provide any context regarding the forced, inauthentic nature and extraordinary rarity of these pairings.

13.    Indeed, Media Matters insisted that their manipulated and false article was authentic. As Defendant Angelo Carusone claimed in an interview on MSNBC on November 26, 2023: "You know, we didn't place the ads. We didn't, you know, photoshop in the pictures of the ads. What we did was use Twitter *the way a normal user would* and then log the advertisements that were received. And that's the issue—no matter how you slice it, the fact is their brand safety tools were not operating in the way that they claim they should have been." (emphasis added). Media Matters continues to publish this false statement on its website today.[6]

14.    Relying on the false and malicious narrative propagated by Media Matters, the advertisers targeted took these pairings to be anything *but* rare and inorganic, with all but one of the companies featured in the Media Matters piece withdrawing all ads from X, including Apple, Comcast, NBCUniversal, and IBM—some of X's largest advertisers. Indeed, in pulling all advertising from X in response to this intentionally deceptive report, IBM called the pairings an "entirely unacceptable situation."[7] Only Oracle did not withdraw its ads.

15.    The truth bears no resemblance to Media Matters' narrative. In fact, IBM's, Comcast's, and Oracle's paid posts appeared alongside the fringe content cited by Media Matters for *only one* viewer (out of more than 500 million) on all of X: *Media Matters*. Not a single authentic user of the X platform saw IBM's, Comcast's, or Oracle's ads next to that content, which

---

[6] *Angelo Carusone discusses Elon Musk and X on MSNBC*, Media Matters (Nov. 26, 2023), https://www.mediamatters.org/angelo-carusone/angelo-carusone-discusses-elon-musk-and-x-msnbc-no-matter-how-you-slice-it-fact.

[7] Hannah Murphy, *IBM pulls adverts from X after report finding they ran next to Nazi Content*, Financial Times (Nov. 16, 2023), https://www.ft.com/content/647b4c4d-f4d5-46cd-bc26-8c943b6995e7.l.

Media Matters achieved only through its manipulation of X's algorithms as described above. And in Apple's case, only two out of more than 500 million active users saw its ad appear alongside the fringe content cited in the article—at least one of which was Media Matters.

16.    Media Matters could have produced a fair, accurate account of users' interactions with advertisements on X via basic reporting: following *real users*, documenting the *actual, organic* production of content and advertisement pairings. Had it done so, however, it would not have produced the outcome Media Matters so desperately desired, which was to tarnish X's reputation by associating it with racist content. So instead, Media Matters chose to maliciously misrepresent the X experience with the intention of harming X and its business.

17.    Unsatisfied with the initial financial consequences of Media Matters' blatantly false reporting, Media Matters President Angelo Carusone appeared on broadcast television to personally repeat and reiterate the false and malicious coverage that Media Matters had falsely and maliciously manufactured. As Carusone put it: "Why does it seem like there's so much more Nazi content, why does it seem like that platform is getting more extreme, why does it seem like the tools they are promising us, the brand safety tools are not working the way they should. It's because when you look at it through the lens of the key decision-maker there Elon Musk, he doesn't really see a problem or at least seemingly, with a lot of this content because it's also a reflection of his own worldview."[8]

---

[8] Media Matters Staff, *On MSNBC, Angelo Carusone Explains Why Elon Musk's Own Behavior Will Keep Advertisers Away from X*, MEDIA MATTERS FOR AMERICA (Nov. 25, 2023, 8:01 PM), https://www.mediamatters.org/angelo-carusone/msnbc-angelo-carusone-explains-why-elon-musks-own-behavior-will-scare-advertisers.

**PARTIES**

18.    Plaintiff X Corp. is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in San Francisco, California. Plaintiff conducts significant business in Texas, including maintaining significant offices in Texas. X Corp. operates the social media platform, "X" (formerly "Twitter"), an internet-based service that enables users to create and share their own content, interact with other users, and curate feeds of content.

19.    Defendant Media Matters is a web-based publisher incorporated under the laws of the District of Columbia with its principal place of business at 800 Maine Avenue SW, Suite 400, Washington, D.C. 20024. The organization's purpose is "to systematically monitor" conservative media and publish reports based on this purported reporting.

20.    Defendant Angelo Carusone is the President of Media Matters and is domiciled in New York.

21.    Defendant Eric Hananoki is a writer for Defendant Media Matters and is domiciled in Maryland.

**JURISDICTION & VENUE**

22.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

23.    This Court has personal jurisdiction over all Defendants. Upon information and belief, Media Matters routinely contacts numerous Texans to invite them to subscribe to Media Matters' content. In particular, the November 22, 2023, Media Matters newsletter that contains the false, malicious, and disparaging statements at the heart of this case, was, on information and belief, emailed to hundreds or thousands of Texans, including numerous individuals living in the

Northern District of Texas. Media Matters likewise seeks donations from individuals in Texas in order to fund its campaign against X Corp. These actions indicate that defendants purposefully avail themselves of Texas in seeking to advertise to and fundraise from Texan audiences specifically based on the false, malicious, and disparaging statements at issue here.

24.     Media Matters, its officers, reporters, agents, or employees, including, on information and belief, Eric Hananoki or Angelo Carusone, contacted advertisers headquartered in Texas in order to communicate the false and malicious assertions contained in their November article and in earlier Media Matters coverage of X Corp. These communications represent a purposeful availment of Texas because they were willful and knowing efforts to influence businesses headquartered or incorporated in Texas, including Oracle and AT&T, to discontinue ongoing contractual relationships entered into in Texas, by decision-makers in Texas, with X Corp.

25.     Upon information and belief, defendants' campaign to destroy X Corp. by discouraging advertisers from using the X platform caused at least several businesses located in, headquartered in, or with a substantial presence in Texas (including in the Northern District) to re-examine, reduce, or suspend their advertising relationships with X Corp. These effects were calculated and deliberate and further underscore the propriety of this Court's exercise of personal jurisdiction over all defendants.

26.     It is common journalistic practice to contact the subjects of an article. Indeed, Eric Hananoki has previously noted that he or Media Matters sought comments from one or more subjects of previous stories, implying that he and Media Matters at least follow this practice when it advances their agenda.[9] It is implausible that neither Hananoki, Carusone, nor Media Matters

---

[9] Eric Hananoki, *A QAnon Grifter Was Selling Colloidal Silver as a Supposed Coronavirus Treatment and Cure*, MEDIA MATTERS FOR AMERICA (April 8, 2020, 2:36 PM),

App.026

contacted potential or actual sources or subjects of their stories regarding their coverage of X Corp. while those sources or subjects were located in Texas. This, too, constitutes purposeful availment of Texas sufficient to establish personal jurisdiction over all defendants.

27.    Defendants' targeting of Elon Musk individually likewise supports the exercise of personal jurisdiction by this Court. Musk has been a resident of Texas throughout the relevant period of defendants' misinformation campaign; many of Musk's decisions regarding X Corp. took place while Musk was physically within Texas; many of Musk's personal and professional relationships are with other individuals also in Texas. Texas is plainly a geographic center of the effects of defendants' attempts to disparage and injure X Corp. And as the owner of Plaintiff X Corp., Defendants' smears against Musk both necessarily harm and were designed to harm X Corp. itself.

28.     This Court may likewise exercise personal jurisdiction over all defendants because defendants' malicious and wrongful conduct was designed to damage relationships with both advertisers in Texas and tens of thousands of Texas users, including thousands of users in this district alone.

29.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in the Northern District of Texas. Aside from Media Matters' false, malicious, and disparaging content being accessible throughout the Northern District of Texas on its website, Media Matters affirmatively transmitted that content into the Northern District of Texas through thousands of copies of its November 22, 2023, newsletter, which repeated and linked to the disparaging statements at issue in this litigation. Furthermore, on

---

https://www.mediamatters.org/coronavirus-covid-19/qanon-grifter-dustin-nemos-was-selling-colloidal-silver-supposed-coronavirus

App.027

information and belief, Defendants or their officers, employees, or agents reached out to businesses headquartered in this district or with significant property in this district—for example, AT&T Corp.—to draw those businesses' attention to defendants' false, malicious, and disparaging statements in order to destroy X Corp.'s relationships with those businesses. Likewise, thousands of X users are located within the Northern District of Texas.

## GENERAL ALLEGATIONS

### I.     Media Matters Targets X Corp. Because of the Changes to Its Policies.

30.     Under previous management, then-Twitter engaged in extensive ideological censorship designed to broadly promote left-wing views and speakers while marginalizing right-wing views and speakers. Defendants expected that Elon Musk would end that censorship and opposed Musk's acquisition of Twitter from the start. As Carusone ranted on one MSNBC segment prior to the consummation of Musk's acquisition of Twitter, when "Elon . . . says free speech, what he really means is free for all. That's all you need to know about what Twitter will look like. So the cesspool that everyone sort of recognized that Twitter kind of can be sometimes and the reactionary aspects to it, that cesspool is going to flood over . . . [and] it's actually going to have an effect on the entire information landscape."[10]

31.     Indeed, when it appeared that Musk would not purchase then-Twitter, Carusone was ecstatic. Media Matters issued a press release containing Carusone's declaration that "If Musk was to acquire Twitter . . . Twitter would become a supercharged engine of radicalization." Per Carusone, Musk was a "madman" that "significantly harmed [Twitter's] shareholder value" by

---

[10] Media Matters Staff, *On MSNBC, Angelo Carusone: Fox News Supports Elon Musk Buying Twitter Because His Vision for Twitter "Empowers Their Lies and It Enables Their Politics*,*" MEDIA MATTERS FOR AMERICA (Apr. 29, 2022, 8:17 PM), https://www.mediamatters.org/msnbc/angelo-carusone-fox-news-supports-elon-musk-buying-twitter-because-his-vision-twitter.

mere association. Ultimately, Carusone projected that it was advertisers who scuttled the deal: "Advertisers took notice, largely as the result of pressure from activists and community leaders, and made it clear they would not pay for Musk's ideological fantasy."[11]

32.    A few days before Musk's acquisition of then-Twitter Inc., Media Matters unapologetically began lobbying then-Twitter's sponsors "to pull their support" from the platform "if Musk's acquisition results in a new deluge of unmoderated right-wing hatred and misinformation." And the sort of support Media Matters expected advertisers to pull was clear: Media Matters acknowledged "that ads reportedly accounted for 90% of Twitter's revenue," and concluded "it is clear that the power to hold Musk accountable if he rolls back the platform's protections against harassment, abuse, and disinformation"—Media Matters' euphemistic way of describing then-Twitter's ideologically driven censorship—"lies in the hands of Twitter's top advertisers." That article identified what Media Matters believed to be then-Twitter's top 20 advertisers, which Media Matters believed had paid Twitter "an estimated $358 million combined" across most of 2022. Media Matters' list included Home Box Office Inc., Amazon, IBM, Apple, Coca-Cola, Comcast, Meta, and Google, among others.[12]

33.    Musk acquired Twitter Inc. nonetheless. Mere hours after consummating the acquisition, Media Matters organized an open "coalition letter" to contact what it believed were the platform's 20 largest advertisers. That letter "call[ed] on [the companies] to notify Musk and

---

[11] Media Matters Staff, *Angelo Carusone: Elon Musk's Twitter deal is collapsing because of Musk's own erratic behavior, embrace of extremists, and bad business decisions*, MEDIA MATTERS FOR AMERICA (Jul. 8, 2022, 6:58 PM), https://www.mediamatters.org/twitter/angelo-carusone-elon-musks-twitter-deal-collapsing-because-musks-own-erratic-behavior.

[12] Alex Paterson & Natalie Mathes, *These Top Advertisers Can Stop Musk's Twitter From Supercharging Online Radicalization*, MEDIA MATTERS FOR AMERICA (Oct. 27, 2022, 5:43 PM), https://www.mediamatters.org/twitter/these-top-advertisers-can-stop-musks-twitter-supercharging-online-radicalization.

App.029

publicly commit that [they] will cease all advertising on Twitter globally if he follows through on his plans to undermine brand safety and community standards including gutting content moderation." This letter proved one of the earliest examples of Media Matters' dishonest and calculated equation of a reduction in censorship on the platform with a concern for "brand safety."

34.     Carusone made Media Matters' strategy plain: pressure advertisers into leaving the platform if Twitter, now X, did not capitulate to Media Matters' censorship demands. As Carusone put it contemporaneously with Musk's acquiring Twitter, "Twitter is different. They really just need blue-chip advertisers. And because they really need blue-chip advertisers, there's a very small set of them that actually have disproportionate influence. I don't think they need to run away right now, although I would be happy if they wanted to send a message. But the easiest message they can send is to call and say, here's our red lines. What are you doing about brand safety and community safeguards? And if you're planning on rolling them back, we're walking."[13]

35.     Carusone's repeated statements announcing his campaign indicated his and Media Matters' understanding of the value of X Corp.'s important advertising contracts with major companies, how interference with those contracts and the underlying business relationships giving rise to those contracts could inflict serious harm on X Corp., and that Media Matters and Carusone had every intention of harming X Corp., the platform, those contracts, and those business relationships if X Corp. did not maintain Media Matters' preferred censorship regime.

---

[13] Media Matters Staff, *On MSNBC, Angelo Carusone Explains Why Twitter and Elon Musk Need to Listen to Blue-Chip Advertisers*, MEDIA MATTERS FOR AMERICA (Oct. 30, 2022, 7:41 PM), https://www.mediamatters.org/angelo-carusone/msnbc-angelo-carusone-explains-why-twitter-and-elon-musk-need-listen-blue-chip.

App.030

36.     After Musk acquired then-Twitter Inc., now X Corp., the company terminated many of the individuals responsible for this censorship regime and ended many of the policies responsible for its ongoing implementation on the platform.

37.     Media Matters' and Carusone's statements regarding the X platform became increasingly vitriolic and malicious. For example, Carusone used a discussion regarding media personality Tucker Carlson's move to the X platform to slur Carlson and disparage X. Carusone described Carlson as "an evangelizer of white supremacy. Probably the biggest advocate. . . . So I actually think Twitter is going to become a much meaner, nastier, racist place because, for sure, as we've already seen the way the algorithm is playing out, it's not like you know Elon Musk is going to be a passive participant here. He's going to have his thumb on the scale to make sure that Tucker's reach is getting prioritized and amplified, probably to the same degree that his own does."[14]

38.     These knowingly false and actually malicious statements harmed X Corp.'s reputation and business relationships: several long-term advertisers decreased their advertising spending on the platform, while others suspended or terminated their relationships with the platform altogether.

**II.     X is a Safe Platform for Users and Advertisers, Despite Media Matters' Deceptions.**

39.     Defendants' campaign did not initially yield the full scope of economic harms they sought because X Corp.'s platform is, at bottom, a safe place for users and advertisers to communicate.

---

[14] Media Matters Staff, *On MSNBC, Angelo Carusone Explains Why Tucker Carlson's Power "Will Be Greatly Diminished" If He Takes His Show to Twitter*, MEDIA MATTERS FOR AMERICA (Oct. 30, 2022, 7:41 PM), https://www.mediamatters.org/angelo-carusone/angelo-carusone-explains-why-tucker-carlsons-power-will-be-greatly-diminshed-if-he.

App.031

40.    X Corp. operates the X social media platform with over 500 million active monthly users. X facilitates free expression and open discourse by enabling its users to create and share their own content and to message and comment on other users' posts. These posts appear sequentially to users in "feeds," which occasionally include paid advertisements—the overwhelming source of X Corp.'s revenue.

41.    Users shape their own experiences on X. Users curate the content on their own feeds by choosing to "follow" other users, thereby determining which posts are presented to them. Most users are served a variety of content based on an algorithm that takes account of who that user follows and what that user engages with. But X also provides its users the option to forgo algorithmically suggested posts altogether, thereby enabling a user to view only the content that user chooses to view.

42.    X is a social media platform that remains in operation due to its loyal users and advertisers. X Corp. invests heavily in technologies that work in tandem to facilitate safe and effective interactions between users and advertisers—technologies that operate seamlessly under normal, organic conditions.

43.    As a first layer of protection for advertisers, X applies default protections to all posts. These protections are designed to prevent advertisements from being placed next to content that violates community guidelines. When users operate within X's community guidelines, these default mechanisms are effective and have a long history of successfully protecting X's advertisers from undesirable interactions with fringe content.

44.    As a second layer of protection, X provides advertisers with opt-in options. These options allow advertisers to further address any specific concerns they may have about their

App.032

advertisements being seen next to specific content. Here, advertisers can specify which key words and user handles they *do not* want their posts to appear by.

45.    These protections and others create a safe environment for advertisers that allow them to reach their target audiences while protecting their brands, as Media Matters well knows.

### III.    Media Matters Systematically Manipulated the X User Experience to Disparage X.

46.    Because its campaign of disparaging X Corp. as well as pressuring advertisers had not forced X Corp. to capitulate to Media Matters' demands, on November 16, 2023, Media Matters and Eric Hananoki published a false, disparaging, and misleading article with the headline, "*X has been placing ads* for Apple, Bravo, IBM, Oracle, and Xfinity[15] next to pro-Nazi content," claiming that X Corp. was responsible for anti-Semitic content being paired with X's advertisers' paid posts.[16] This statement was not true, and both Media Matters and Hananoki knew it. As explained below and displayed in an X internal review, this title is false in that Media Matters itself—not X—was responsible for placement of the content it identified through its willful exploitation of X's user features—a result it *specifically intended* to bring about. X in fact has many default safeguards that *prevent* the platform from displaying content in the manner achieved by Defendants.

47.    Further, in the body of the piece, Media Matters falsely claimed that it "recently *found* ads for Apple, Bravo, Oracle, Xfinity, and IBM next to posts that tout Hitler and his Nazi

---

[15] Xfinity is a Comcast service.

[16] *See* Eric Hananoki, *As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content*, MEDIA MATTERS FOR AMERICA, (Nov. 16, 2023, 10:05AM), https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle.

App.033

Party on X."[17] Based on this false claim, Media Matters falsely stated that it "certainly isn't the case" that "brands are now 'protected from the risk of being next to' potentially toxic content."[18] Media Matters intentionally and maliciously made these false statements to poison advertiser relationships: the piece expressly states that X leadership had "been trying to bring advertisers back to the platform by claiming it's safe for business."[19]

48.    In reality, Media Matters did not *find* pairings that X passively allowed on the platform. Media Matters *created* these pairings in secrecy to manufacture the harmful perception that X is at best an incompetent content moderator (a harmful accusation for any social media platform), or that X Corp. encourages Nazi and racist posts.

49.    On X, users can control the content on their feeds. When users show interest in particular topics, ads will generate that relate to those topics. Media Matters exploited these features by creating a secret X account precision-designed to evade normal safeguards, manipulating every aspect of the system through which posts and advertisements appear, ultimately creating the side-by-side images of objectionable content and advertisements.

50.    X's internal user data tells the story of just how far Media Matters went to manufacture an inorganic user experience strictly aimed at creating an interaction between controversial content and big-name advertisers that was seen only by the Media Matters account and then published broadly.

51.    First, Media Matters set out on their attempt to evade X's content filters for new users by specifically using an account that had been in existence for more than thirty days.

---

[17] *See id.* (emphasis added).

[18] *See id.*

[19] *See id.*

App.034

52.     Next, Media Matters set its account to follow only 30 users (far less than the average number of accounts followed by a typical active user, 219), severely limiting the amount and type of content featured on its feed. *All* of these users were either already known for posting controversial content or were accounts for X's advertisers. That is, *100% of the accounts* Media Matters followed were either fringe accounts or were accounts for national large brands. In all, this functioned as an attempt to flood the Media Matters account with content only from national brands and fringe figures, tricking the algorithm into thinking Media Matters *wanted* to view both hateful content and content from large advertisers.

53.     Even this did not produce Media Matters' intended result. An internal review by X revealed that Media Matters' account started to alter its scrolling and refreshing activities in an attempt to manipulate inorganic combinations of advertisements and content. Media Matters' excessive scrolling and refreshing generated between 13 and 15 times more advertisements per hour than would be seen by a typical user, attempting to forcibly generate a pairing of fringe content and paid advertisements by massive repetition unlike anything that any normal user would encounter under typical, or even extraordinary, conditions.

54.     Eventually, through intentionally evading X's multiple safeguards by curating the content on its feed and then repeatedly attempting to create pairings of advertisements for major brands with controversial content, Media Matters finally achieved its goal. Accordingly, it took screenshots of posts from IBM, Apple, Bravo, Xfinity, and Oracle that Media Matters engineered to appear adjacent to inflammatory, fringe content.

## IV.     To Disparage X, Media Matters Hid Its Manipulation from Readers and Advertisers.

55.     Media Matters generated a specific, intended result that was not only inorganic, but exceedingly (and demonstrably) rare, all while taking specific steps to obscure these facts in its

November 29, 2023, article. These deliberate, malicious omissions generated in advertisers and users the false, misleading impression that these types of pairings were common, widespread, and alarming. Media Matters hid its manipulations through omissions, deceptive image selections, misrepresentations, and secrecy settings.

56.     Media Matters omitted in its entirety its process of manufacturing these ad pairings. It did not include in its article that it created a user that *only* followed 30 accounts that either belonged to fringe figures or major national brands. Neither readers nor advertisers had any way of knowing that the entire feed was orchestrated to generate the remarkably rare combinations. Media Matters also omitted mentioning in its entirety its excessive scrolling and refreshing, allowing users to believe (falsely) that the "report" was produced under circumstances that were organic and unmanipulated.

57.     Media Matters also omitted and made no attempt to truthfully disclose the rarity of these pairings. The representation put forth by Media Matters constituted 0.0000009090909 percent of impressions served on the day in question. Most or all of these pairings were not seen by literally anyone besides Media Matters' own manipulated account, and no authentic user of the platform has been confirmed to have seen any of these pairings.

58.     Media Matters' image choice in its smear also functioned to hide the true nature of its report. All images selected contained *only* the ad and the controversial content, with all other posts absent from view. That is, had readers been able to see the posts above and below the pairings, they would have easily gleaned the highly specific nature of the small number of accounts Media Matters chose to follow. Media Matters chose to show *every* pairing in its article using this deceptive technique—hiding its deceit through even more deceit.

App.036

59.     Tellingly, Media Matters used X's privacy features in order to hide its methodology from its readers. That is, Media Matters set this account to "private," blocking anyone from seeing which accounts Media Matters actually followed, thus disallowing anyone from understanding how its feed was manipulated. Indeed, Media Matters at no point includes images *with any information about the account that was exposed to these images*; the cropped nature of Media Matters' deceptive screenshots leaves its profile picture out of frame.

60.     Accordingly, Media Matters created the impression that these pairings were organic, accurate, and representative of the typical X user's experience, which actually and demonstrably misled users and advertisers, causing harm to X Corp.

## V.    Media Matters Caused Advertisers to Believe the Pairings Were Organic.

61.     After the publication of Media Matters' false smear on November 16, 2023, advertisers pulled their ads from the site, which, as Media Matters admits, only happened after it reported that X was placing ads alongside white nationalist and pro-Nazi content. Included in these companies, which all referenced antisemitic content in their withdrawal from X, are:

**Comcast.** After Media Matters' November article featured a contrived, misleading, and inflammatory image showing an ad for Xfinity next to a pro-Nazi post, its parent company Comcast decided to pull all ads for Comcast entities from X.

**NBCUniversal.** As the parent company of Bravo and a subsidiary of Comcast, NBCUniversal pulled all advertising from X after publication of the article.

**Apple.** The day after publication of the article, which also featured an Apple ad contrived to be placed next to fringe content, Apple—one of X's largest clients—pulled all of its ads from the platform.

App.037

**IBM.** As previously discussed, IBM pulled all ads immediately after the publication of the article.

62.     Media Matters' manipulation was so severe that companies not even featured in the article also pulled ads from X. These companies include Lionsgate, Warner Bros. Discovery, Paramount, and Sony.

63.     The result of this November 2023 article—the culmination of over a year's worth of disparagement of X Corp. and a long campaign pressuring advertisers to cut ties with the X platform if Media Matters' demands were not met—was severe. As described above, numerous advertisers reduced their advertising spending under ongoing contracts with X Corp. Others suspended or ended their relationships with X Corp. altogether.

64.     X Corp. has lost millions of dollars through this forgone advertising and undoubtedly millions more in lost brand equity with its advertisers and user base. These economic harms were directly caused by the November 2023 article, the campaign of disparagement waged against X Corp., or both.

## FIRST CAUSE OF ACTION

### Tortious Interference with Contract

65.     Plaintiffs re-allege and incorporate by reference the above allegations.

66.     At all relevant times, Defendants were aware that X Corp. contracted with various third parties, including, but not limited to Apple, NBCUniversal, Comcast, Bravo, and IBM, to sell ads on the X platform, as clearly demonstrated by the many articles written by Defendants on the topic. Defendants are aware that such businesses are "brand-conscious blue chip companies" who pay to advertise on the X platform.[20]

---

[20] Gertz, *It's the Antisemitism, Stupid*, *supra*.

App.038

67.    Defendants intentionally interfered with contracts between X Corp. and its advertisers, including but not limited to Apple, NBCUniversal, Comcast, Bravo, and IBM—all clients with existing advertisement agreements that were casualties of defendants' misrepresentations and ceased advertising on the X platform as a direct result.

68.    Defendants also intentionally interfered with contracts between X Corp. and such advertisers by making performance of X's advertisement agreements more burdensome or of less or no value to the businesses entitled to performance under advertising contracts with X Corp.

69.    Defendants' own statements and "reporting" demonstrate that they willfully, intentionally, and knowingly interfered with contracts between X Corp. and such advertisers, including but not limited to persuading advertisers to end their relationships with X due to manufactured concerns about advertising safety and antisemitism on the X platform. Upon information and belief, defendants desired to interfere with such contracts or believed that interference was substantially certain to result from their actions.

70.    Defendants' campaign to falsely depict the X platform as unsafe for advertisers proximately caused harm to X's revenue from its contracts with such paying advertisers. Defendants' false statements about safety on the X platform and antisemitism were substantial factors in bringing about this harm because they undermined advertisers' faith in X Corp.'s abilities to monitor and curate content.

71.    By and through their actions, Defendants have interfered and continue to interfere with existing contractual relationships involving X Corp.

72.    X Corp. had existing contractual relationships at all relevant times with corporate advertisers for the sale of advertisements on the X platform. Defendants were aware of those obligations and willfully and intentionally interfered with those contracts by falsely portraying the

App.039

X platform as unsafe for advertisers and falsely associating X Corp. and the X platform with antisemitism. Defendants' acts of interference include, but are not limited to, knowingly persuading advertisers to end or suspend advertising on the X platform, knowingly inducing one or more of the contracting parties to breach its obligations, or knowingly making X Corp.'s performance of its advertisement sales more burdensome or of less or no value to the advertisers entitled to performance. Defendants' actions are the proximate cause of X Corp.'s injury. And at a minimum, X Corp. has been and continues to be injured by being stripped of advertising revenue and brand equity and by incurring the significant legal burden of combatting Defendants' wrongful actions toward X Corp.'s contractual obligations. *See, e.g.*, *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 210 (5th Cir. 2020); *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017); *Travelhost, Inc. v. Brady*, No. 3:11-CV-454-M-BK, 2013 WL 4475057, at *5 (N.D. Tex. Aug. 21, 2013).

## SECOND CAUSE OF ACTION

### Business Disparagement

73.     X Corp. re-alleges and incorporates by reference the above allegations.

74.     Business disparagement is actionable under Texas law if "'(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) resulting in special damages to the plaintiff.'" *Vendever LLC v. Intermatic Mfg. Ltd.*, No. 3:11-CV-201-B, 2011 WL 4346324, at *4 (N.D. Tex. Sept. 16, 2011) (quoting *Forbes v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 170 (Tex. 2003)).

75.     Defendants made false and disparaging statements regarding the quality of X Corp.'s product, X, including, but not limited to, that a typical user using the platform in an ordinary manner would receive major advertiser content paired next to fringe content; that X

Corp.'s brand-safety protocols were malfunctioning or otherwise defective; and that X Corp.'s policies were implemented to advance an anti-Semitic or racist agenda.

76.     Defendants made these statements as statements of fact, not opinion. Among other statements described above, defendants represented that X "has been placing" advertisements next to anti-Semitic and racist materials. It represented that it "found" these materials next to advertisements. Based on these false representations, defendants also falsely stated that it "certainly isn't the case" that "brands are now 'protected from the risk of being next to' potentially toxic content."

77.     Defendants intentionally made these statements with actual malice. Defendants made them either knowing that they were false or without regard to their falsity because they were made as part of an ongoing campaign to inflict economic harm on X Corp. in retaliation for X Corp. not hewing to their preferred policies regarding the X platform. Defendants either subjectively intended to make false statements regarding the "risk" to advertisers or were recklessly indifferent to the truth.

78.     Defendants made these false, disparaging, and malicious statements without any legally recognized privilege entitling them to do so. They are responsible for their "'falsehoods concerning the condition or quality of" X Corp.'s "products or services that [were] intended to, and d[id] in fact, cause financial harm.'" *Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578, at *7 (N.D. Tex. Aug. 12, 2021) (quoting *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020)).

79.     X Corp. suffered financial harm as a result of these statements. X Corp's special damages—their "'direct, pecuniary loss attributable to the false communications of the defendants,'" *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996) (citing *Hurlbut v.*

App.041

*Gulf Atlantic Life Ins.*, 749 S.W.2d 762, 767 (Tex. 1987))—included lost revenue from businesses suspending, reducing, or re-examining their advertising with X Corp. as well as lost brand equity. Defendants' false and disparaging statements about advertising-safety measures on the X platform further inflicted financial harms on X Corp. by undermining advertisers' faith in X Corp.'s abilities to monitor and curate content. Defendants are liable for these losses.

### **THIRD CAUSE OF ACTION**

**Interference with Prospective Economic Advantage**

80.    X Corp. re-alleges and incorporates by reference the above allegations.

81.    X Corp. was engaged in economic relationships that would have resulted in an economic benefit to X Corp. X Corp. had relationships with advertisers that pulled their spending in the light of defendants' article and had every reason to suspect that these relationships would continue.

82.    At all relevant times, defendants knew of these relationships, as they were described in their "reporting."

83.    Defendants engaged in wrongful conduct that disrupted X Corp.'s economic relationships. Through extensive deception and misrepresentation, defendants caused advertisers to lose faith in X Corp.'s abilities to monitor and curate content, thereby leading them to break off these lucrative relationships and any future continued relationships.

84.    Defendants' false, malicious, and disparaging statements were independently tortious.

85.    Defendants acted with the intent to disrupt these relationships. Media Matters' actions continued its expressly declared "guerilla war" on media it dislikes and its systematic, harassing attacks on X Corp.

App.042

86.    X Corp. was harmed as a result of defendants' actions: it lost advertisers as a result of defendants' interference.

87.    Defendants' actions were undoubtedly a substantial factor in causing this harm, with defendants' website even noting that X Corp.'s relationships fell apart *after* Media Matters released its maliciously false piece.

88.    As stated above, Defendants' conduct is independently tortious or unlawful. Defendants' conduct described herein is the proximate cause of the ongoing injury to X Corp. because, at a minimum, Defendants knowingly and intentionally took actions to discourage any advertiser from associating with X Corp., which were purposefully designed to interfere with X Corp.'s business opportunities. And X Corp. has been and continues to be injured by, at a minimum, incurring significant burden and expense to combat Defendants' actions in order to maintain its economic and bargaining position with respect to its prospective business relations related to advertisement sales on the X platform and by incurring the significant legal burden of combatting Defendants' wrongful actions. *See, e.g.*, *Moser v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2558-L, 2017 WL 1957084, at *5 (N.D. Tex. Feb. 28, 2017), *report and recommendation adopted sub nom. Moser v. Omnitron Int'l Inc.*, No. 3:16-CV-2558-L, 2017 WL 1957026 (N.D. Tex. May 10, 2017); *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

App.043

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in its favor and the following relief:

1.     Actual and consequential damages caused by defendants' misconduct, including but not limited to all general and special damages;

2.     Punitive damages in an amount to be proven at trial;

3.     A preliminary and permanent injunction ordering defendants to immediately delete, take down, or otherwise remove the article entitled "As Musk Endorses Antisemitic Conspiracy Theory, X Has Been Placing Ads for Apple, Bravo, IBM, Oracle, and Xfinity Next to Pro-Nazi Content From Its Web," and any other false, malicious, and disparaging articles as may be demonstrated to the Court, from all websites and social media accounts owned, controlled, or operated, directly or indirectly, by defendants;

4.     Plaintiffs' costs and attorneys' fees to litigate this action; and

5.     For such other and further relief as the Court may deem just and proper.

App.044

February 27, 2024                              Respectfully submitted.

                                               */s/ Judd E. Stone II*
                                               Judd E. Stone II
                                               Texas Bar No. 24076720
                                               Christopher D. Hilton
                                               Texas Bar No. 24087727
                                               Ari Cuenin
                                               Texas Bar No. 24078385
                                               **STONE | HILTON PLLC**
                                               1115 W. Slaughter Lane
                                               Austin, TX 78748
                                               Telephone: (737) 465-7248
                                               judd@stonehilton.com
                                               chris@stonehilton.com
                                               ari@stonehilton.com

                                               John C. Sullivan
                                               Texas Bar No. 24083920
                                               **S|L LAW PLLC**
                                               610 Uptown Boulevard, Suite 2000
                                               Cedar Hill, TX 75104
                                               Telephone: (469) 523-1351
                                               Facsimile: (469) 613-0891
                                               john.sullivan@the-sl-lawfirm.com

App.045

# Doc. 60

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| *Defendants.* | § § | |

---

## BRIEF IN SUPPORT OF MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS

---

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
ALEXANDER M. DVORSCAK
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
(737) 465-3897

JOHN C. SULLIVAN
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

*COUNSEL FOR PLAINTIFF*

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

FACTUAL AND PROCEDURAL BACKGROUND..................................................... 1

ARGUMENT AND AUTHORITIES ............................................................................... 3

   I.  Defendants flatly refuse to produce discoverable information based on meritless and relevance, vagueness, and burden objections, which they have also failed to preserve. ....... 3

     A.  Each disputed request in this category seeks relevant, nonprivileged information that is proportional to the needs of the case................................................................................. 3

     B.  X's requests are not vague. ................................................................................. 6

     C.  X's requests are not unduly burdensome or harassing.................................... 7

     D.  Defendants' anemic boilerplate is insufficient to preserve their objections. .................... 8

   II. Where Defendants have promised to produce documents "subject to" their objections, their objections are waived............................................................................... 10

     A.  Defendants' privilege objections are unsupported boilerplate........................................ 12

     B.  In addition to procedural defects, Defendants' privileges fail on their merits.............. 13

       1. Defendants misunderstand the "reporter's privilege" that they assert. ........................ 13

       2. Defendants' asserted associational privilege does not bar non-state actor discovery. . . 15

CONCLUSION.................................................................................................................. 17

CERTIFICATE OF SERVICE ........................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. Alid (Texas) LLC*,
  No. 3:13-cv-04122, 2014 WL 3624929 (N.D. Tex. Jul. 22 2014) ............................................ 4

*Americans for Prosperity Foundation v. Bonta*,
  594 U.S. 595 (2021) ................................................................................................................ 16

*City of Newport v. Fact Concerts, Inc.*,
  453 U.S. 247 (1981) .................................................................................................................. 4

*Crow v. ProPetro Services, Inc.*,
  No. 7:15-cv-00149, 2016 WL 9776368 (N.D. Tex. June 6, 2016) .......................................... 10

*Curtis v. Metro. Life Ins. Co.*,
  No. 3:15-cv-02328, 2016 WL 687164 (N.D. Tex. Feb. 19, 2016) .......................................... 6

*Gueye v. Mike Bloomberg 2020 Inc.*,
  2021 WL 3910341 (N.D. Tex. Mar. 12, 2021) ................................................................ 16, 17

*Hardy v. Gissendaner*,
  508 F.2d 1207 (5th Cir. 1975) ................................................................................................ 16

*Heller v. City of Dall.*,
  303 F.R.D. 466 (N.D. Tex. 2014) ..................................................................... 9, 10, 11, 12

*Henry v. First Nat. Bank of Clarksdale*,
  444 F.2d 1300 (5th Cir. 1971) ................................................................................................ 16

*Holland v. Centennial Homes, Inc.*,
  No. 3:92-CV-1533-T, 1993 WL 755590 (N.D. Tex. Dec. 21, 1993) ...................................... 14

*In re Santa Fe Int'l Corp.*,
  272 F.3d 705 (5th Cir. 2001) .................................................................................................. 13

*In re Selcraig*,
  705 F.2d 789 (5th Cir. 1983) ........................................................................................... 13, 14

*Janvey v. GMAG LLC*,
  No. 3:15-CV-00401, 2016 WL 11782222 (N.D. Tex. Oct. 7, 2016) ........................................ 8

*Karem v. Priest*,
  744 F. Supp. 136 (W.D. Tex. 1990) ........................................................................................ 13

*Keefe v. City of Minneapolis*,
  No. CIV. 09-2941 DSD/SER, 2012 WL 7766299 (D. Minn. May 25, 2012) ........................ 14

*Kitzmiller v. Dover Area Sch. Dist.*,
  379 F. Supp. 2d 680 (M.D. Pa. 2005) ..................................................................................... 14

*Le v. Lockheed Martin Corp.*,
  No. 4:24-cv-00031, 2024 WL 832374 (N.D. Tex. Feb. 6, 2024) .............................................. 4

*Loc. Union No. 48 of Sheet Metal Workers Int'l Ass'n v. Hardy Corp.*,
  332 F.2d 682 (5th Cir. 1964) .................................................................................................. 17

App.049

*Lopez v. Don Herring Ltd.*,
   327 F.R.D. 567 (N.D. Tex. 2018) ............................................. 11

*Mahalingam v. Wells Fargo Bank, N.A.*,
   No. 3:22-CV-1076-L, 2023 WL 3575645 (N.D. Tex. May 19, 2023) ................... 12

*Mize v. McGraw-Hill, Inc.*,
   82 F.R.D. 475 (S.D. Tex. 1979) ........................................ 16, 17

*Naoko Ohno v. Yuko Yasuma*,
   723 F.3d 984 (9th Cir. 2013) ............................................. 17

*NAACP v. Alabama ex rel. Patterson*,
   357 U.S. 449 (1958) ..................................................... 15

*Orchestrate HR, Inc. v. Trombetta*,
   178 F. Supp. 3d 476 (N.D. Tex. 2016) ................................... 10

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010) ........................................... 16

*RealPage, Inc. v. Enter. Risk Control, LLC*,
   No. 4:16-CV-00737, 2017 WL 1165688 (E.D. Tex. Mar. 29, 2017) ............... 11

*Shelley v. Kraemer*,
   334 U.S. 1 (1948) .................................................... 16, 17

*Sw. Insulation, Inc. v. Gen. Insulation Co.*,
   No. 4:15-cv-00601, 2016 WL 9244822 (N.D. Tex. April 25, 2016) ............... 9

*United States v. Smith,*
   135 F.3d 963 (5th Cir. 1998) ............................................. 13

*Whole Woman's Health v. Smith,*
   896 F.3d 362 (5th Cir. 2018) ............................................. 15

**Rules**

Fed. R. Civ. P. 26(b)(5)(A)(ii) .............................................. 13

Fed. R. Civ. P. 26(g) ....................................................... 9

Fed. R. Civ. P. 26(g)(3) .................................................... 12

**Other Authorities**

"Take Action," MEDIA MATTERS FOR AMERICA,
   https://www.mediamatters.org/take-action (last visited May 24, 2024) ................... 6

FINANCIAL SUPPORT, COLLINS DICTIONARY,
   https://www.collinsdictionary.com/ us/dictionary/english/financial-support
   (last accessed May 24, 2024) .............................................. 6

App.050

Early in discovery, Plaintiff X Corp. served targeted requests for production on Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone. When Defendants stonewalled, X began a lengthy meet-and-confer process to understand and, if possible, address their objections. Those efforts were almost completely fruitless. Notwithstanding a looming discovery deadline, Defendants still have not produced most of the responsive documents that they possess. That poses a problem requiring this Court's intervention. The withheld documents are essential to understanding the central allegation that X raises in its amended complaint: Defendants' tortious interference with X's advertisers through the publication of two deeply misleading articles about the company's social media platform. *See* Am. Compl. ¶¶ 30-38, 46-54.

In the absence of responsive documents, this case is at a standstill. X cannot retain experts, let alone depose key witnesses, without an understanding of the universe of relevant documents that Defendants are improperly withholding without any basis in the Federal Rules of Civil Procedure. The Court should therefore compel Defendants to promptly make a complete production responsive to X's requests with sufficient time for the parties to timely finish discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2023, Defendant Hananoki wrote, Defendant Media Matters published, and Defendant Carusone trumpeted a series of articles that attacked X with false and pernicious statements about X and the content appearing on X's platform. Am. Compl. ¶¶ 30-38, 46-54. As a result of that tortious conduct, major advertisers withdrew from X's platform. *Id.* ¶¶ 30-38, 61-64. Because of the ongoing damage caused by Defendants' lies, X brought claims for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

App.051

On February 5, 2024, after the discovery period opened, X began serving written discovery requests. X's first set of written discovery included 29 requests for production. Those requests largely concern categories of documents and other evidence related to the articles, X Corp., and the X platform. *See* Appx. 12-13. Others request information relevant to Media Matters' finances, financial condition, and insurance coverage—matters clearly relevant to any litigation in which a plaintiff seeks damages. Appx. 13-14 (Requests 12-18). And the rest seek information relevant to Defendants' states of mind, communications with like-minded persons and organizations, and other information expected to show knowledge, intent, motive, and other relevant, permissible matters. *See* Appx. 13-14 (Requests 11, 19-20). X's second set of written discovery relates to similar issues, as well as those issues that Defendants have raised in their motions to the court. Appx. 38-41 (Requests 30-47).

In their responses to these requests, Defendants have asserted virtually every conceivable basis for withholding production. Appx. 42-77, 114-138 (Defendants' objections and responses). They flatly refuse to ever produce *anything* in response to 14 out of X's 47 requests. For the remaining 33, they assert a variety of inapplicable privileges and unsupported, boilerplate objections, and impermissibly promise to produce documents "subject to" those objections. Although Defendants claim in their responses not to be "presently withholding responsive documents," they have made only two small document productions, despite receiving X's first set of requests months ago. In conferences among counsel, Defendants have stated their intention to make rolling productions on a bi-weekly basis—but Defendants will not commit to timely production of all relevant documents such that discovery can be completed during the Court's discovery period. Weeks of back-and-forth among counsel have not resolved these disagreements, necessitating this motion. Appx. 139-174 (exchanges between counsel).

App.052

– 2 –

## ARGUMENT AND AUTHORITIES

I.    **Defendants flatly refuse to produce discoverable information based on meritless relevance, vagueness, and burden objections, which they have also failed to preserve.**

Defendants have refused to produce any documents in response to X's Request Nos. 9, 11, 13-14, 16-18, 21, 35, 37-38, 43, and 46-47. *See* Appx. 53-68, 116-136. They also seek to impermissibly limit Request Nos. 15, 23, and 42. *See id.* The stated basis for this refusal is relevance, vagueness, and undue burden/harassment. But as to each objection, Defendants' objections are meritless—and even if there was any arguable merit to their objections, they are waived for their failure to sufficiently state the basis of their objections. The Court should overrule all Defendants' objections to these requests and compel production in full.

Defendants also assert blanket privileges on these requests. Such assertion is improper for the reasons discussed below in Part III, and Defendants have therefore waived the related privileges, for the reasons explained below.

### A.    Each disputed request in this category seeks relevant, nonprivileged information that is proportional to the needs of the case.

Defendants have questioned the relevance of these requests in writing and during conferences among counsel. Despite Plaintiff having explained the relevance, Defendants persist in their objections. Because these requests seek relevant documents, Defendants' objections should be overruled.

***Request No. 9***: X seeks documents and communications with X's advertisers. Appx. 26. Given that X's claim is that Defendants tortiously interfered with X's existing and prospective contracts with its advertisers, X is entitled to full and complete discovery into what Defendants said to X's advertisers. This will provide direct evidence of Defendants' interference with X's contracts and business relations. Additionally, responsive documents regarding advertising or

App.053

support for Defendants will likely show Defendants' states of mind, motivations, and intentions, as well as evidence of their knowledge of facts and anticipation of consequences relevant to liability and punitive damages.

*Request Nos. 11, 17-18, 21, and 35*: X seeks communications with public officials and related entities, documents related to donors and their financial support, and documents and communications related to Media Matters' solicitations and sources of funding. Appx. 26-28. Responsive documents will uncover evidence of Defendants' motives and intentions, individuals with whom they worked on the articles and who funded the project, and reveal Defendants' personal and political vendetta against X. These targeted requests will capture or lead to evidence relevant to Defendants' subjective intent to harm X supporting elements of X's tortious interference and business disparagement claims.

*Request Nos. 13-16*: X seeks relevant financial information and related materials. Appx. 26-27. Defendants' financial information is discoverable and proportional because X seeks punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) ("[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"); *Le v. Lockheed Martin Corp.*, No. 4:24-cv-00031, 2024 WL 832374, at *1 (N.D. Tex. Feb. 6, 2024) (Ray, Mag. J.) ("[C]ourts have consistently ordered discovery of the defendant's net worth where punitive damages are sought."); *Alvarez v. Alid (Tex.) LLC*, No. 3:13-cv-04122, 2014 WL 3624929, at *2–3 (N.D. Tex. Jul. 22 2014) (Horan, Mag. J.) ("[A] party seeking discovery of net-worth information need not satisfy any evidentiary prerequisite, such as making a *prima facie* showing of entitlement to punitive damages."). X is thus entitled to discovery related to Media Matters' received donations, income, expenditures, financial obligations, and net worth. Also, Defendants' initial disclosures are insufficient given the

App.054

– 4 –

possibility that responsive documents will show third-parties or other donors who are not insurers but who are nevertheless funding Defendants' tortious conduct or insulating them from the consequences.

*Request Nos. 23, 37-38, and 43*: X seeks information about Defendants' actions taken to write and publish the November 2023 articles and commit their other tortious acts. Appx. 28, 39. These requests seek communications with Hananoki and Gertz (a senior fellow at Media Matters) immediately before Elon Musk's purchase of X through the tortious conduct, Hananoki's travel during the relevant time, and Defendants' subsequent coverage after their initial tortious act. The articles that Hananoki wrote lie at the heart of this case, and communications with him are clearly relevant to establishing, at a minimum, motive, intent, and liability. Likewise, Hananoki's travel during the time he was working on the articles, who he met, and what they discussed is reasonably calculated to uncover information, including potential witnesses' identities, relevant documents, and other evidence supporting personal jurisdiction and venue. This information is also relevant to understanding the motivations, funding, and support behind Defendants' crusade against X.

*Request Nos. 46 and 47*: X seeks documents related to Defendants' past bad behavior, including libel, malicious, or discriminatory conduct. Appx. 40-41. These documents will reveal whether Defendants had policies and procedures in place to prevent reporting falsehoods or whether they fostered a culture tolerating and encouraging such behavior. Other instances where Defendants have lied, discriminated, or otherwise defamed in the past are relevant to determining whether they did so again here, as well as supporting their knowledge, intent, and malice. Thus, responsive documents will support, at a minimum, X's claim for punitive damages. Further, Defendants cannot block discovery by speculating on a document's ultimate admissibility at trial,

App.055

– 5 –

and Defendants' witnesses may open the door to the use of these documents during their testimony. *See* Fed. R. Civ. P. 26(b)(1).

**B.    X's requests are not vague.**

Relatedly, Defendants insist (in response to Request Nos. 1, 2, 7, 9, 10, 14, 16-18, 22, 25-30, 35, and 41-45) that terms in X's requests are vague. In doing so, Defendants were obligated to provide their understanding of the term. *See Curtis v. Metro. Life Ins. Co.*, No. 3:15-cv-02328, 2016 WL 687164, at *5–6 (N.D. Tex. Feb. 19, 2016) (Horan, Mag. J.). For many of their objections (Request Nos. 7, 10, 14, 16-18, 22, 35, and 41-45), Defendants do not even identify which term is objectionably vague. Those objections should be overruled as a matter of course. *See id.*

In other instances, Defendants do not explain how straightforward terms in X's requests are vague. For example, Request No. 9 asks for "all communications with X's advertisers about advertising with or financially supporting" Defendants. Appx. 26. Defendants claim that "financially supporting" is vague. Appx. 54. It is hard to take that objection seriously. As one dictionary has defined it, the meaning of "financial support" includes donating money to, purchasing services from, or otherwise contributing money to encourage or assist that organization. *See* FINANCIAL SUPPORT, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/financial-support (last accessed May 24, 2024). Defendants' counsel did not offer a substantially differing understanding of the term during conferences or explain why the term "financially supporting"—a term that Media Matters itself uses in connection with its own fundraising efforts*—is in any way vague. Defendants should not be allowed to evade their discovery obligations based on vagueness objections that are themselves difficult to decipher.

---

* *See, e.g.*, "Take Action," MEDIA MATTERS FOR AMERICA, https://www.mediamatters.org/take-action (last visited May 24, 2024) ("Sign up here to join the effort to encourage Hannity's advertisers to stop financially supporting his propaganda.").

App.056

In two instances, Defendants put forward enough information for X to understand their vagueness concerns: X's request for "notes" (Request Nos. 1, 30) and "platform account data" (Request Nos. 2, 31). X actually agrees with Defendants that "notes" means "written records created in the process of reporting, writing, and publishing the November 16, 2023 Article." X disagrees, however, that "Platform account data" is limited to just the "usernames of accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article"—instead, X submits that properly construed, this term means login information, messages sent and received, login dates, and related information, as well as communications from the Platform itself, such as automatically generated emails regarding activity on each user account. Counsel for the parties have discussed both terms, and reached agreement as to "notes," but Defendants have not committed to producing "Platform account data" as properly understood. Accordingly, Defendants' unsupported and unsupportable vagueness objections should be overruled.

### C.  X's requests are not unduly burdensome or harassing.

With respect to these bases for complete non-production, Defendants' objections include near-identical boilerplate in virtually every response. For example, in 35 out of 47 requests (Request Nos. 5-19, 21, 23-29, 34-38, and 41-47), Defendants object: "this Request [is] overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation." *See, e.g.*, Appx. 25 (Request No. 5). No supporting basis is stated. *See also* ECF No. 54 at 9 ("Defendants do not explain *why* this request is overbroad. It may well be the case that this request is appropriate in the circumstances of this case.") For nine of their 35 objections (Request Nos. 11-14, 16-18, 21, and 35), Defendants add "harassing" for good measure, but never explain why those eight requests are "harassing" or otherwise distinct from the others. *See* Appx.

App.057

56-60, 61-65, 67-68, 122-23. Defendants provide no reason why these requests are harassing, and indeed they cannot—X is not harassing Defendants and, instead, is only engaging in discovery to request all relevant documents that will expose and demonstrate Defendants' tortious behavior.

Likewise, in none of their 35 "burdensome" objections do Defendants identify any actual production burden, let alone providing a cost estimate. *See, e.g.*, Dkt. 54 at 11 ("[T]he party resisting discovery bears the responsibility of actually establishing the undue burden"). They do not explain how the requests are "disproportionate to the needs of this case," either by identifying the number of responsive documents or how production is "disproportionate" to a dispute with over $100 million at issue. *Janvey v. GMAG LLC*, No. 3:15-CV-00401, 2016 WL 11782222, at *4 (N.D. Tex. Oct. 7, 2016) (Bryant, Mag. J.) ("[T]he substantial amount in controversy weighs in favor of allowing the discovery, even where time and cost estimates may be significant.").

In attempts to understand Defendants' objections, Plaintiff has requested basic information regarding production, such as the identities of custodians, sources and volume of data collection, and other information that is routinely exchanged among counsel in cases involving voluminous discovery. Defendants' counsel also flatly refused to provide any of this information, instead demanding that Plaintiff send an interrogatory asking for things like custodians and collection criteria. All that Defendants have said is that they have collected 3.5TB of data, which is a meaningless number without any context regarding Defendants' custodians and collection efforts. Accordingly, Defendants have fallen well short of demonstrating the unduly burdensome and harassing nature of these or any requests. These objections should also be overruled.

### D. Defendants' anemic boilerplate is insufficient to preserve their objections.

Even if any of Defendants' objections had any merit—they do not—Defendants' insufficient discovery responses have resulted in them waiving their objections entirely. Courts in this District have long warned parties that these sorts of "general, generic objections violate the

App.058

Federal Rules and are invalid." *Heller v. City of Dall.*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (Horan, Mag. J.). They "are meaningless and constitute a waste of time for opposing counsel and the court." *Id.* "In the face of such objections, it is impossible to know whether information has been withheld and, if so, why." *Id.* (quotation omitted). A "failure to particularize objections leads to one of two conclusions: either [respondent] lacked a factual basis to make the objections they did, which would violate Rule 26(g), or they complied with Rule 26(g), made a reasonable inquiry before answering and discovered facts that would support a legitimate objection, but they were waived for failure to specify them as required." *Id.* at 484 (quotation omitted). Accordingly, a party must "show specifically how each discovery request is not relevant or otherwise objectionable" and "com[e] forward with specific information." *Sw. Insulation, Inc. v. Gen. Insulation Co.*, No. 4:15-cv-00601, 2016 WL 9244822, at *3 (N.D. Tex. April 25, 2016) (O'Connor, J.).

For example, in *Heller*, the party resisting discovery included boilerplate language claiming privilege: "to the extent they seek disclosure [of] matters protected by attorney-client privilege, work product doctrine, legislative privilege, or other exemptions or privileges recognized, among other things, by applicable law and/or rules of evidence and civil procedure." 303 F.R.D. at 482. Such language "is an off-the-shelf and decidedly non-specific objection that gains the responding party nothing without . . . explaining precisely how that request exceeds or conflicts with the scope of permissible discovery." *Id.* at 484. Likewise, for boilerplate undue burden objections, "the very act of making such boilerplate objections is prima facie evidence of a Rule 26(g) violation." *Id.* at 490 ("[I]f the lawyer had paused, made a reasonable inquiry, and discovered facts that demonstrated the burdensomeness or excessive cost of the discovery request, he or she should have disclosed them in the objection, as both Rule 33 and 34 responses must state

objections with particularity, on pain of waiver."); *see also Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507–08 (N.D. Tex. 2016) (Horan, Mag. J.).

Likewise, in *Crow v. ProPetro Services, Inc.*, a party served boilerplate responses, objecting "the request is ambiguous and fails to identify with specificity the documents requested" and "this request is vague, ambiguous, overly broad, and unduly burdensome, and it seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence." No. 7:15-cv-00149, 2016 WL 9776368, at *4 (N.D. Tex. June 6, 2016) (Counts, Mag. J.). Because that party had "failed to support its objections" and did not "show how the requested discovery was overly broad, burdensome, or oppressive," the Court rejected those objections as waived. *Id.*

So too here. Because Defendants provided no support for their relevance, vagueness, and burden/harassment objections, their "boilerplate objections" are "waived." *Id.* at *4. Moreover, because the objections fail to "explain[] precisely how that request exceeds or conflicts with the scope of permissible discovery" the objections should be overruled. *See Heller*, 303 F.R.D. at 484. Accordingly, X requests the Court overrule all of Defendants' objections to Request Nos. 5–19, 21, 23–29, 34–38, and 41–47, and compel Defendants to produce all documents responsive to those requests.

## II.     Where Defendants have promised to produce documents "subject to" their objections, their objections are waived.

For those document requests where Defendants have agreed to produce responsive documents, *e.g.*, Appx. 49-53, 64-65 (RFP Nos. 5-8, 15, 19), virtually all of them contain the same boilerplate described above. On their merits, these objections should be overruled for the same reasons described above. But for most requests, including Request No. 1, Defendants agree to produce documents on a rolling basis "subject to, and without waiving these objections," after "a

reasonable search." *See, e.g.*, Appx. 45. None of these kinds of responses state what categories of documents, if any, that Defendants are withholding based on those objections. Nor do Defendants identify the bounds or process by which their limitation of documents searched was "reasonable." *Id.* During meet and confers, Defendants' counsel refused to disclose what custodians or search terms were being used as limiting factors. *See* Appx. 152-53. There is accordingly no way for X to know what responsive documents Defendants are withholding.

As *Heller* explained, responding "subject to" or "without waiving" "has no basis at all in the Federal Rules of Civil Procedure" and is improper. 303 F.R.D. at 486–87 ("[It] is manifestly confusing (at best) and misleading (at worse).") (quotation omitted); *see also RealPage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-00737, 2017 WL 1165688, at *3 (E.D. Tex. Mar. 29, 2017) ("Rule 34 does not allow this kind of hedging."). This is because "responding to a document request or interrogatory [subject to and without waiving objections] leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be." *Heller*, 303 F.R.D. at 487. Accordingly, "[i]f a discovery request is overbroad, the responding party must . . . explain the scope of what the responding party is answering or responding to." *Id.* at 488. "Similarly, if answering or responding to a discovery request would impose an undue burden, the responding party must . . . only answer or respond to the part or extent, if any, of the request that would not involve an undue burden." *Id.* at 489. That Defendants are still in the process of reviewing documents does not change this analysis—the objections are still waived. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 583 (N.D. Tex. 2018) (Horan, Mag. J.) ("General, boilerplate, and unsupported objections [to which documents are produced 'subject to'] preserve nothing and—regardless of a party or an attorney's concerns about what they do not

App.061

know or have not yet located or may later find—are 'improper and ineffective.'" (quoting *Heller*, 303 F.R.D. at 483–84)).

Although courts caution that making objections in this manner can be sanctionable, X asks only that this Court overrule Defendants' objections. *See, e.g.*, *Mahalingam v. Wells Fargo Bank, N.A.*, No. 3:22-CV-1076-L, 2023 WL 3575645, at *14 (N.D. Tex. May 19, 2023) (Horan, Mag. J.) ("The Court has warned that counsel who fail to comply the Federal Rules' and case law's requirements for discovery responses and objections may face sanctions—including under Rule 26(g)(3) —and does so here again."). Accordingly, to the extent that Defendants seek to withhold any documents on the basis of these objections, they must be compelled instead to produce all responsive materials, and Defendants should be required to provide sufficient information to X's counsel to allow a legitimate evaluation regarding the reasonableness of their collection and production efforts.

## III.    Defendants' Privilege Objections Should Be Overruled.

### A.    Defendants' privilege objections are unsupported boilerplate.

Defendants' privilege-based objections fare no better. Defendants do not even *specify* each of their claimed privileges, let alone assert them sufficiently for this Court to rule on them. Instead, for every objection, Defendants assert the following catchall: attorney-client privileges, work-product protections, "and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26." *See, e.g.*, Appx. 45 (RFP No. 1).

Even where Defendants attempt to identify a specific First Amendment privilege objection, they still act in a scattershot manner: sometimes claiming a reporter's privilege (*e.g.*, RFP No. 1), sometimes against the purported chilling of their speech and associational rights, (*e.g.*, RFP No. 3), and sometimes against production of donor information. (*e.g.*, RFP No. 17). Defendants never describe what the First Amendment privileges, invoked by rote repetition, ostensibly protect.

App.062

– 12 –

Because Defendants do not assert privilege objections with any specificity and indeed attempt a catchall privilege objection applicable to each request, the privilege claims should be disregarded. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability."). And for the requests where Defendants have asserted a blanket privilege as a basis for complete non-production of documents, Defendants' privilege objections should be overruled in their entirety, or at a minimum, Defendants must be compelled to provide a privilege log. Fed. R. Civ. P. 26(b)(5)(A)(ii). X accordingly requests that the Court overrule the boilerplate and catchall privilege objection that Defendants asserted in every response and compel production of any responsive documents Defendants were otherwise intending to withhold on that basis.

**B.      In addition to procedural defects, Defendants' privileges fail on their merits.**

**1.      Defendants misunderstand the "reporter's privilege" that they assert.**

Defendants abuse the notion of a "reporter's privilege" that would shield the requested documents from production. The Fifth Circuit has recognized exactly one privilege for a journalist: a *qualified* privilege against having to divulge a confidential source's *identity*. *In re Selcraig*, 705 F.2d 789, 792–93 (5th Cir. 1983); *see* Appx. 45 (relying on *Selcraig*). Courts have rejected a broader privilege *even in a criminal context*. *Selcraig*, 705 F.2d at 799 n.15; *Karem v. Priest*, 744 F. Supp. 136, 137 (W.D. Tex. 1990). Regardless, this privilege does nothing for Media Matters or Carusone: it must be invoked *by the reporter*. *See Selcraig*, 705 F.2d at 798; *Karem*, 744 F. Supp. at 138. For example, in *United States v. Smith*, the Fifth Circuit explained that there was "little support" for a television station's attempt to assert a reporter's privilege—that at most covered the "rights of the newsmen." 135 F.3d 963, 970 (5th Cir. 1998).

Thus, insofar as Defendants invoke the limited privilege recognized in *Selcraig*, *e.g.*, Appx. 45-46, 116-17, they cannot even benefit from that case's limited holding. Defendants never clarify

App.063

– 13 –

exactly what responsive documents sought by X they believe are covered by the "reporter's privilege." The premise of Defendants' case is that Media Matters merely reported what could be seen on the X platform by "ordinary" users, for which there "is no intrusion into newsgathering or special functions of the press" since reporters recounting what they have "seen or heard" in public can be questioned as a "witness like any other member of the public." *Kitzmiller v. Dover Area Sch. Dist.*, 379 F. Supp. 2d 680, 687 (M.D. Pa. 2005) (citations omitted). Defendants should be estopped from arguing otherwise in a self-serving assertion of privilege.

Regardless, here, the requested discovery into Hananoki's notes, drafts, and sources is necessary—and can overcome the qualified nature of the non-absolute privilege—because Hananoki is a party and information about his reporting is central to both the jurisdictional and merits claims in this case, and especially with respect to the disputed intent elements of each of X's claims. *Cf., e.g., Holland v. Centennial Homes, Inc.*, No. 3:92-CV-1533-T, 1993 WL 755590, at *6 (N.D. Tex. Dec. 21, 1993) (Sanderson, Mag. J.) ("Discovery of the private work product of a reporter should not be compelled upon the mere speculation of possible impeaching material alone, especially in a civil case where the reporter is neither a party nor a witness to the facts upon which the lawsuit is based."). As both a party and a witness, X is entitled at a minimum to such discovery from Hananoki. *Cf. Keefe v. City of Minneapolis*, No. CIV. 09-2941 DSD/SER, 2012 WL 7766299, at *4 (D. Minn. May 25, 2012) (contrasting this scenario with discovery sought from a reporter who was "neither a party nor a witness to any of the underlying facts"). Of course, Defendants have yet to produce a log even attempting to quantify the number of individuals for whom the disclosure of identity could even arguably vitiate a privilege.

Even if Defendants could rely on *Selcraig's* limited privilege, nothing prevents production of materials (*in camera*, if necessary) that work around that narrow constraint. Only a miniscule

App.064

– 14 –

percentage of what X requested even arguably requires the disclosure of the disputed identities. For example, donor identifiers provide no basis for a claim of a reporter's privilege, and the substance of what sources said is not protected even if *Selcraig* was applicable. And Hananoki's notes and drafts are not privileged because of a source's identity alone, which could be redacted in any case.

### 2.     Defendants' asserted associational privilege does not bar non-state actor discovery.

Defendants' associational privilege claim fares no better. The Court may charitably ignore Defendants' attempted comparison of their tortious conduct to the NAACP facing possible dissolution by Alabama's attempt to obtain a donor list in the Civil Rights Era. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). Media Matters makes no comparable showing of its membership to the people combatting segregation, for whom "compelled disclosure of . . . membership is likely to affect adversely the ability of [the NAACP] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *Id.* at 462–63. Such egregious revisionism lends no help to Media Matters, which can claim no comparable state action.

An associational privilege is, at most, qualified. The Fifth Circuit in *Whole Woman's Health v. Smith* instructed that the *internal* communications of an organization may be protected in limited factual circumstances. 896 F.3d 362, 372 (5th Cir. 2018). There, the panel also noted that the party resisting discovery had "already cooperated extensively in discovery in a way that minimizes any adverse impact on the plaintiffs' ability" to conduct necessary cross-examination. *Id.* at 374. Here, Defendants seek to avoid discovery into matters related to its donors altogether. Media Matters cannot claim a categorical First Amendment privilege—let alone in this context, where the location of donors, persons from whom Media Matters solicited information, and

App.065

individuals contacted regarding Media Matters' "reporting" are relevant jurisdictional facts that Defendants have placed at issue.

Defendants also cannot rely on *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021). Like Alabama in *NAACP*, California was a state actor in *Bonta*, thus triggering the First Amendment's application. *Id.* at 616. There is simply no "state action" here that could even arguably support such an association privilege. *Id.* The same is true of Defendants' misplaced reliance on *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010), given that the state action in that case was obvious: the defendants included numerous government parties, including then-governor Arnold Schwarzenegger, in a challenge to California's same-sex marriage law.

That this Court might compel discovery does not provide the relevant state action. Otherwise, *everyone* would enjoy a privilege against discovery on speech/association grounds *for every reason*. Under Fifth Circuit precedent, "there is no 'state action' to be found in the mere filing of a private civil tort action in state court." *Henry v. First Nat. Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971). That reality has left Defendants bereft of case law supporting their reliance on the First Amendment in conferencing this motion. And their assertion that "the judicial process . . . represents state action, even in cases between private parties" is contrary to law. Appx. 162 (Apr. 26, 2024 Email from A. Ahmed) (citing *Shelley v. Kraemer*, 334 U.S. 1, 14–15 (1948); *Gueye v. Mike Bloomberg 2020 Inc.*, 2021 WL 3910341, at *2 (N.D. Tex. Mar. 12, 2021) (Ray, Mag. J.); *Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475, 476-78 (S.D. Tex. 1979)). Courts across the country, including the Fifth Circuit, have rejected the argument that mere coercive state judicial process constitutes state action. *E.g.*, *Hardy v. Gissendaner*, 508 F.2d 1207, 1210–11 (5th Cir. 1975); *Loc. Union No. 48 of Sheet Metal Workers Int'l Ass'n v. Hardy Corp.*, 332 F.2d 682, 685–86 (5th Cir. 1964). Indeed, "*Shelley*'s attribution of state action to judicial enforcement has

– 16 –

App.066

generally been confined to the context of discrimination claims under the Equal Protection Clause." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 998–1000 (9th Cir. 2013). "In the context of First Amendment challenges to speech-restrictive provisions in private agreements or contracts, domestic judicial enforcement of terms that could not be enacted by the government has not ordinarily been considered state action." *Id.*

Neither of Defendants' two, non-binding district-court cases depart from that great weight of authority in the context of discovery. *Gueye* actually *denied* an assertion of privilege by rejecting essentially the same argument advanced by Defendants here. 2021 WL 3910341, at *2–3. And the other, *Mize*, is not an associational-privilege case: it merely applies an ostensible *reporter*'s privilege in civil cases by reference to criminal grand-jury proceedings (where there is obvious state action). 82 F.R.D. at 476. Even if this Court considered the non-binding *Mize* decision, it stands for nothing more than that courts should consider case-by-case the "extent to which pretrial discovery had been conducted, the fruits of that discovery, and the resulting demonstrated need or lack of need for compelling disclosure of the news reporter's confidential source." *Id.* at 477. Unlike the movant in *Mize*, X has diligently sought discovery, only to be hampered by Defendants despite "showing that the identity of the news source goes to the heart of the plaintiff's claim." *Id.* at 478. X has requested information regarding Media Matters' donors and its finances for obvious and allowed reasons: (1) to see how Defendants have availed themselves of Texas; (2) to see if they are profiting from their disparagement; and (3) to see their financial condition. At a minimum, these factors are relevant to establish jurisdiction, compensatory damages, and punitive damages.

## CONCLUSION

X respectfully requests that the Court overrule Defendants' objections and order Defendants to promptly produce all materials responsive to X's requests for production. For any privilege claims that the Court concludes Defendants retain following a ruling on this motion, X

App.067

requests that the Court order Defendants to contemporaneously provide a privilege log identifying all such assertions of privilege with specificity.

Dated: May 24, 2024.                          Respectfully submitted,

                                              */s/ Christopher D. Hilton*
                                              Judd E. Stone II
                                              Texas Bar No. 24076720
                                              Christopher D. Hilton
                                              Texas Bar No. 24087727
                                              Ari Cuenin
                                              Texas Bar No. 24078385
                                              Alexander M. Dvorscak
                                              Texas Bar No. 24120461
                                              **STONE | HILTON PLLC**
                                              1115 W. Slaughter Lane
                                              Austin, TX 78748
                                              Telephone: (737) 465-3897
                                              judd@stonehilton.com
                                              chris@stonehilton.com
                                              ari@stonehilton.com
                                              alex@stonehilton.com

                                              John C. Sullivan
                                              Texas Bar No. 24083920
                                              **S|L Law PLLC**
                                              610 Uptown Boulevard, Suite 2000
                                              Cedar Hill, TX 75104
                                              Telephone: (469) 523-1351
                                              Facsimile: (469) 613-0891
                                              john.sullivan@the-sl-lawfirm.com

App.068

– 18 –

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2024, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

/s/ Alexander M. Dvorscak
Alexander M. Dvorscak

App.069

# Doc. 62

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

X CORP.,

          Plaintiff,

    v.

MEDIA MATTERS FOR AMERICA, et al.,

          Defendants.

Civil Action No. 4:23-cv-01175-O

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 2

    I.    X's motion is untimely. ...................................................................................... 2

        A.  Many of X's arguments are moot. ......................................................... 2

        B.  X's arguments about the application of privilege to documents responsive to its requests are premature. ....................................... 4

    II.    X's argument that the First Amendment privilege does not apply in these proceedings is wrong. ..................................................................... 5

    III.    X seeks documents that are far outside the scope of legitimate discovery. ........... 9

        A.  RFP Nos. 3, 17, 18, 21, and 35 are harassing requests for irrelevant donor information. ..................................................... 10

        B.  RFP Nos. 13, 14, 15, and 16 are harassing and disproportionate requests for irrelevant financial information. ....................................... 13

        C.  RFP Nos. 23, 24, 37, and 38 are harassing requests for irrelevant information about Media Matters employees. .............................. 18

        D.  RFP No. 46 is a harassing request for irrelevant information about Media Matters's personnel matters. ................................... 21

CONCLUSION .......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ams. for Prosperity Found. v. Bonta*,
   594 U.S. 595 (2021)...............................................................................11

*Anderson v. Hale*,
   No. 00 C 2021, 2001 WL 503045 (N.D. Ill. May 10, 2001) ......................6

*Briones v. Smith Dairy Queens Ltd.*,
   No. CIV.A. V-08-48, 2008 WL 4630485 (S.D. Tex. Oct. 16, 2008) ....................17

*Britt v. Super. Ct. of San Diego Cnty.*,
   574 P.2d 766 (Cal. 1978)............................................................................6

*Callais v. United Rentals N. Am.*,
   No. CV 17-312-BAJ-RLB, 2018 WL 6517446 (M.D. La. Dec. 11, 2018) .....................16, 17

*Carrier v. Ravi Zacharias Int'l Ministries, Inc.*,
   No. 1:21-CV-3161-TWT, 2023 WL 2355891 (N.D. Ga. Mar. 3, 2023) ...................5

*Charles v. Tex. Lottery Comm'n*,
   No. A-06-CA-158 LY, 2006 WL 8445908 (W.D. Tex. Nov. 1 2006) ...................4

*Cuomo v. Clearing House Ass'n, LLC*,
   557 U.S. 519 (2009)...............................................................................13

*United States ex rel. Eichner v. Ocwen Loan Servicing, LLC*,
   No. 4:19-CV-524, 2024 WL 843900 (E.D. Tex. Feb. 28, 2024)............................4

*Flynn v. Square One Distrib., Inc.*,
   No. 6:16-mc-25-ORL-37TBS, 2016 WL 2997673 (M.D. Fla. May 25, 2016) .....................6

*Grandbouche v. Clancy*,
   825 F.2d 1463 (10th Cir. 1987) ..................................................................5

*Gueye v. Mike Bloomberg 2020 Inc.*,
   Nos. 4:20-cv-00487-BP through 4:20-cv-00490-BP, 2021 WL 3910341
   (N.D. Tex. Mar. 12, 2021) ................................................................7, 8

*Hamilton v. Geithner*,
   No. 1:08cv1112 (JCC), 2009 WL 2240358 (E.D. Va. July 23, 2009)...................13

*Hardy v. Gissendaner*,
   508 F.2d 1207 (5th Cir. 1975) ....................................................................8

*Henry v. First National Bank of Clarksdale*,
   444 F.2d 1300 (5th Cir. 1971) ....................................................................8

*Hickman v. Taylor*,
   329 U.S. 495 (1947)...............................................................................11

App.073

*In re House of Yahweh*,
   266 S.W.3d 668 (Tex. App. 2008)..................................................................16

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
   No. 75 CIV. 5388 (MJL), 1985 WL 315 (S.D.N.Y. Feb. 28, 1985)...........................6

*In re Jacobs*,
   300 S.W.3d 35 (Tex. App. 2009)..................................................................16

*La Union Del Pueblo Entero v. Abbott*,
   No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022)............4, 5, 7

*Local Union No. 48 of Sheet Metal Workers International Ass'n v. Hardy Corp.*,
   332 F.2d 682 (5th Cir. 1964)......................................................................8

*McVay v. Halliburton Energy Servs. Inc.*,
   No. 3:07-CV-1101-O, 2010 WL 11583175 (N.D. Tex. June 18, 2010)......................15

*Media Matters for Am. v. Paxton*,
   No. 24-cv-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024) ........................11

*Midwest Feeders, Inc. v. Bank of Franklin*,
   No. 5:14-cv-78-DCB-MTP, 2015 WL 11117899 (S.D. Miss. Nov. 19, 2015) .............4

*Mimms v. CVS Pharmacy, Inc.*,
   889 F.3d 865 (7th Cir. 2018) .....................................................................12

*Mize v. McGraw-Hill, Inc.*,
   82 F.R.D. 475 (S.D. Tex. 1979)................................................................7, 8

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
   641 F.3d 470 (10th Cir. 2011) ....................................................................5

*NAACP v. State of Alabama ex rel. Patterson*,
   357 U.S. 449 (1958)................................................................................6

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)...............................................................................12

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
   557 U.S. 193 (2009)...............................................................................11

*Ohno v. Yasuma*,
   723 F.3d 984 (9th Cir. 2013) .....................................................................8

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010) ...............................................................5, 7, 9

*Price v. Lockheed Martin Corp.*,
   No. 4:04CV123LN, 2006 WL 1686568 (S.D. Miss. June 19, 2006) ...................14, 17

*Pulte Home Corp. v. Montgomery County*,
   No. GJH-14-3955, 2017 WL 1104670 (D. Md. Mar. 24, 2017)...........................6

App.074

*Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*,
    No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852 (S.D. Miss. Apr. 24, 2015)....................16

*Shelley v. Kraemer*,
    334 U.S. 1 (1948)..........................................................................................................6

*Sierra Club v. Union Elec. Co.*,
    No. 4:14-cv-00408-AGF, 2015 WL 9583394 (E.D. Mo. Dec. 31, 2015)................................6

*Smith v. DeTar Hosp. LLC*,
    No. CA-V-10-83, 2011 WL 6217497 (S.D. Tex. Dec. 14, 2011)...........................................15

*Sullivan v. Schlumberger Ltd.*,
    No. 4:20-CV-00662, 2021 WL 3206778 (E.D. Tex. July 29, 2021) ......................................17

*Tingle v. Hebert*,
    No. CV 15-626-JWD-EWD, 2017 WL 2335646 (M.D. La. May 30, 2017)..........................15

*Vertex Aerospace, LLC v. Womble Bond Dickinson, LLP*,
    No. 309CV00704HTWLGI, 2022 WL 1830715 (S.D. Miss. Apr. 26, 2022) ........................17

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) .....................................................................................7, 9

**Rules**

Fed. R. Civ. P. 26(b)(1).......................................................................................9, 13, 19

Fed. R. Civ. P. 26(b)(2)(B) .........................................................................................9

Fed. R. Civ. P. 26(b)(2)(C) ....................................................................................10, 20

**Other Authorities**

@ElonMusk, X.com (Nov. 18, 2023, 2:01 AM),
    https://x.com/elonmusk/status/1725771191644758037
    [https://perma.cc/X4HN-PLJ4].................................................................................11

@TheChiefNerd, X.com (Dec. 10, 2023, 4:24 PM),
    https://x.com/thechiefnerd/status/1733960832571122115?s=46&t=PN52ydwT
    vFusTeuJ-h77RA [https://perma.cc/6L3M-SHX3] ....................................................11

## INTRODUCTION

X Corp.'s motion to compel is untimely and meritless. It arrived while the parties were in the middle of negotiating the various disputes raised in X's motion, despite Defendants' explicit representation that amended responses and objections to X's requests for production (RFPs) would be imminently forthcoming. Defendants served those on May 28, as promised, mooting almost all of X's concerns. X's motion is premature for the additional reason that Defendants have not yet identified a single document that is being withheld on the basis of any privilege. X inexplicably demands that "Defendants must be compelled to provide a privilege log," Pl.'s. Br. in Supp. of Mot. to Compel Produc. of Docs. at 13, ECF No. 60 ("Br."), when (1) Defendants have made clear throughout this process that they will log any privileged documents, and (2) X has not taken any steps to "come to terms on a mutually acceptable protocol for the handling of privileged material"—a prerequisite to the exchange of any privilege log set forth in X's *own instructions* in its requests for production, *see* App. of Exs. to Pl.'s Mot. to Compel Produc. of Docs. at 10, 23, 36, ECF No. 60-1 ("X App."). Thus, for the several categories of requests for which Defendants have made clear that they are not currently withholding any responsive documents, X's rush to compel is unripe.

Two sets of issues are, however, ready for this Court's resolution. *First*, X's effort to deprive Defendants of any recourse to their First Amendment rights in discovery disputes is contradicted by case law all across the country—including in the Fifth Circuit—and should be rejected out of hand. X's attempt to harness the coercive power of this Court to compel Defendants to produce their most sensitive internal documents requires state action that implicates core constitutional guarantees. This Court should not be the first to hold otherwise. *Second*, for the discrete subset of requests where the parties' impasse is clear, X has no basis to compel production. These requests flout the guardrails that protect litigants from abusive and harassing discovery into

App.076

their most sensitive documents, particularly where those documents are wholly irrelevant to the claims or defenses in the case. For example, X seeks the identity of *every Media Matters donor* and other financial minutiae far beyond what courts allow in analogous cases, as well as personal records and correspondence that have *nothing* to do with the underlying dispute. For any and all of these reasons, the motion should be denied.

## ARGUMENT

### I.    X's motion is untimely.

Many of X's contentions are moot, as the purported disputes had already been resolved— or otherwise could have been resolved—before X rushed to file its motion. Other contentions are unripe for this Court's attention, as X has not yet agreed to a protocol for handling privileged information, let alone received a log identifying privileged documents that Defendants might be compelled to produce.

### A.    Many of X's arguments are moot.

A brief summary of the conferral process is necessary to clarify why this Court need not adjudicate many of the issues raised in X's motion. During two initial conferrals on April 9 and May 1, and through related correspondence, counsel for Defendants explained that a large team of attorneys was collecting, reviewing, and producing documents[1]; they clarified that Defendants were not limiting searches or productions for any request except for discrete categories where

---

[1] To date, Defendants have collected over 5.5 Terabytes of data, enlisted nearly 50 people to review documents, and produced over 2,000 documents and over 2,000 videos comprising approximately 564 gigabytes of data. *See* Defs.' App. at 146. X's assertion that Defendants have "stonewalled" is fanciful, Br. at 1; responding to X's unbounded discovery requests is an enormous undertaking that Defendants are engaging with every resource at their disposal. *See* Defs.' App. at 146. Defendants intend to comply with all deadlines in the Court's scheduling order, ECF No. 14, and X has no basis to arbitrarily demand documents on an accelerated (and apparently non-mutual) schedule. *See* Br. at 1.

App.077

Defendants noted they did not intend to produce any documents; and they sought reciprocal case law, clarity, and compromise from X on several disputed requests where Defendants had explained their position and proposed revised responses. *See* Defs.' App. at 118–121, 125–29, 131–35. After X's counsel announced on May 23 that it intended to move to compel, counsel for Defendants reiterated that X had yet to identify a single case disputing Defendants' objections, and that any privilege dispute was premature because Defendants had yet to identify or log the withholding of a single document. *Id.* at 105–07, 109–10. To formalize the explanations presented over several weeks of calls and correspondence, Defendants also alerted X that they would amend their responses by May 28 to resolve any possible dispute over the use of general objections. *Id.* at 102. But X could not be budged from its file-first-discuss-later approach, and docketed its motion on May 24. *See* Mot. to Compel Produc. of Docs., ECF No. 59.

As promised, Defendants served amended discovery responses on May 28 that removed the general objections that are the subject of much of X's motion. *See* Defs.' App. at 3–33, 34–64, 65–81. And as promised, the responses memorialized the various compromises and concessions that Defendants have made over the series of meet-and-confers. Accordingly, X's arguments regarding RFP Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 19, 20, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 39, 40, 41, 42, 43, 44, 45, and 47 are now moot or (to the extent further disputes may arise) otherwise unripe.[2]

---

[2] If X contests any of Defendants' amended responses, it should raise those issues in a subsequent good faith conferral with Defendants, and, if the parties remain at impasse, in a separate motion so that Defendants may be heard (by X, and, if necessary, by the Court) to defend their position and respond to any objections.

**B.    X's arguments about the application of privilege to documents responsive to its requests are premature.**

X's request for a ruling on Defendants' anticipated assertions of privilege before Defendants have logged the withholding of any document is premature. *See* Defs.' App. at 109–10 (highlighting caselaw). Indeed, courts in the Fifth Circuit regularly deny motions to compel as premature under these circumstances. *See, e.g.*, *United States ex rel. Eichner v. Ocwen Loan Servicing, LLC*, No. 4:19-CV-524, 2024 WL 843900, at *7 (E.D. Tex. Feb. 28, 2024); *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14-cv-78-DCB-MTP, 2015 WL 11117899, at *3 (S.D. Miss. Nov. 19, 2015); *see also Charles v. Tex. Lottery Comm'n*, No. A-06-CA-158 LY, 2006 WL 8445908, at *2 n.1 (W.D. Tex. Nov. 1 2006) (noting "as the [Defendant] has not submitted a privilege log to Plaintiff, [] it is therefore not clear that there is presently any dispute regarding the documents claimed to be . . . privileged"). This is because "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself." *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022) (quoting *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020)).

Despite Defendants having raised this point (and the preceding caselaw) to X several times, it remains unclear whether (and if so, why) X disagrees. Notably, X's own requests for production instruct that Defendants' production "shall be governed" by "a mutually acceptable protocol for the handling of privileged material that the parties will memorialize in a proposed court order." X App. at 10, 23, 36. No such protocol has been agreed upon or adopted by the Court. In fact, the parties have not even reached agreement on an order for the exchange and production of electronically stored information ("ESI")—which will govern certain privilege issues—or for a

App.079

protective order—which will inform the categories of data likely to remain nonpublic.[3] X's rush to compel Defendants' production of documents is belied by its unexplained delay in finalizing any of the documents that will govern the discovery process. Defs.' App. at 144–65.[4]

After the parties finish negotiating a privileged-documents protocol, an ESI protocol, and a protective order, and after Defendants log any responsive documents as privileged, and after the parties meaningfully confer on that assertion, *then* this Court's time and resources may be necessary to resolve any dispute. Until then, there is no assertion of privilege to adjudicate because no party is withholding any document on the basis of privilege.

## II.  X's argument that the First Amendment privilege does not apply in these proceedings is wrong.

Because X's attempt to graft a state-party requirement onto the privilege presents a purely legal issue that is unlikely to be affected by any additional facts, Defendants do not oppose the Court's resolution of the issue at this time. The law is clear, as courts across the country that have explicitly reached this issue have been unanimous: "the First Amendment privilege applies to discovery orders issued in litigation involving only private parties." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011). This is because a court order "compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *see also Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, No. 1:21-CV-3161-TWT, 2023

---

[3]Although "protective orders limiting dissemination of information protected by the First Amendment privilege 'cannot eliminate' the First Amendment injury resulting from compelled disclosure," *Abbott*, 2022 WL 17574079, at *9 (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1164 (9th Cir. 2010)), the scope of a protective order may be relevant to a party's assertion of privilege, *see Perry*, 591 F.3d at 1164.

[4] Despite Defendants' concerns about the ongoing lack of these necessary protocols, they have adhered to their promise of biweekly document productions. To date, Defendants are not withholding any documents necessitating a privilege log or anything similar.

App.080

WL 2355891, at *4 (N.D. Ga. Mar. 3, 2023) (recognizing, in dispute between private parties, that

"courts have consistently recognized a qualified associational privilege in the discovery context");

*Pulte Home Corp. v. Montgomery County*, No. GJH-14-3955, 2017 WL 1104670, at *3 (D. Md.

Mar. 24, 2017) (holding, in dispute between private parties, that "First Amendment protections

apply in the context of discovery orders"); *Flynn v. Square One Distrib., Inc.*, No. 6:16-mc-25-

ORL-37TBS, 2016 WL 2997673, at *2 n.4 (M.D. Fla. May 25, 2016) (similar); *Sierra Club v.*

*Union Elec. Co.*, No. 4:14-cv-00408-AGF, 2015 WL 9583394, at *2 (E.D. Mo. Dec. 31, 2015)

(similar); *Anderson v. Hale*, No. 00 C 2021, 2001 WL 503045, at *3 (N.D. Ill. May 10, 2001)

("This same balancing test [for the government to overcome the associational privilege] equally

applies to cases involving two private parties."); *Int'l Soc'y for Krishna Consciousness, Inc. v.*

*Lee*, No. 75 CIV. 5388 (MJL), 1985 WL 315, at *9 n.16 (S.D.N.Y. Feb. 28, 1985) (rejecting

argument that First Amendment privilege does not apply in discovery disputes between private

parties); *cf. Britt v. Super. Ct. of San Diego Cnty.*, 574 P.2d 766, 774 (Cal. 1978) (en banc) (holding

"the threat to First Amendment rights may be more severe in a discovery context, since the party

directing the inquiry is a litigation adversary who may well attempt to harass his opponent and

gain strategic advantage by probing deeply into areas which an individual may prefer to keep

confidential").

 These principles follow directly from Supreme Court precedent. In *Shelley v. Kraemer*,

334 U.S. 1, 14–15 (1948), the Court recognized that the action of "courts and of judicial officers

in their official capacities is to be regarded as action of the State within the meaning of" the

Constitution's state action requirements. Similarly, in *NAACP v. State of Alabama ex rel.*

*Patterson*, 357 U.S. 449, 463 (1958), where the Supreme Court reviewed a state court order

requiring a private organization to disclose its membership lists, the Court recognized "[i]t is not

of moment that the State has here acted solely through its judicial branch, for whether legislative or judicial, it is still the application of state power which we are asked to scrutinize."

Courts in the Fifth Circuit take the First Amendment privilege as a given, reviewing privilege assertions among private parties as a routine matter. *See, e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362, 370 (5th Cir. 2018) (favorably reviewing First Amendment privilege claim by private third party in response to discovery requests from private plaintiffs); *Abbott*, 2022 WL 17574079, at *9 ("Private Plaintiffs must establish a substantial need for the withheld documents that outweighs the intrusion into the [private] Defendant Intervenors' constitutional rights."); *Gueye v. Mike Bloomberg 2020 Inc.*, Nos. 4:20-cv-00487-BP through 4:20-cv-00490-BP, 2021 WL 3910341, *2 (N.D. Tex. Mar. 12, 2021) (adjudicating First Amendment privilege dispute between private parties); *Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475, 478 (S.D. Tex. 1979) (recognizing invocation of First Amendment privilege was sufficient to defeat motion to compel in suit between private parties).

Faced with this one-sided caselaw, X fails to cite a single case—in the Fifth Circuit or anywhere else—prohibiting litigants from invoking the privilege. Instead, it misunderstands key authority, cites inapposite cases, and attempts meaningless distinctions of relevant precedent. Highlighting *Perry*, for example, the seminal Ninth Circuit case that recognized the First Amendment privilege in a discovery dispute between private parties, X contends "the state action in that case was obvious" because "the defendants included numerous government parties, including then-governor Arnold Schwarzenegger." Br. at 16. Equally obvious, however, is that none of those governmental parties were involved in the discovery dispute at issue—private plaintiffs sought the production of private defendant-intervenors' internal campaign communications. *Perry*, 591 F.3d at 1152.

App.082

Next, X lists a slew of cases that have nothing to do with the First Amendment privilege or discovery disputes at all. *See* Br. at 16–17 (citing cases). *Henry v. First National Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971), held that the mere filing of a state court antitrust suit was not "state action" for purposes of civil rights statutes. *Hardy v. Gissendaner*, 508 F.2d 1207, 1210–11 (5th Cir. 1975), held that Alabama's holder-in-due-course statute did not justify mortgagors' constitutional claim where the statute was applied without discrimination. *Local Union No. 48 of Sheet Metal Workers International Ass'n v. Hardy Corp.*, 332 F.2d 682, 685–86 (5th Cir. 1964), turned on the court's interpretation of the word "coerce" in the National Labor Relations Act. And in *Ohno v. Yasuma*, 723 F.3d 984, 987 (9th Cir. 2013), the Ninth Circuit held that enforcement of a Japanese damages award under California's Uniform Foreign–Country Money Judgments Recognition Act did not transform the underlying foreign court's judgment into domestic state action. None of these cases illuminate the parties' discovery dispute.

Returning to cases that do address the First Amendment privilege in discovery disputes, X seeks to distinguish *Gueye* as a case where the assertion of privilege was unsuccessful, Br. at 17, but the mere fact that litigants may not win on every conceivable assertion of privilege does not suggest that the privilege is altogether unavailable in private litigation. Instead, the court's careful application of the *Perry* test in that case indicates the opposite. *Gueye*, 2021 WL 3910341, at *2–3. Finally, X seeks to distinguish *Mize* as a case about the reporter's privilege. Br. at 17. In *Mize*, a private plaintiff suing a publisher for defamation sought to compel disclosure of the identity of a confidential source used in preparing a challenged article, and the motion to compel was denied because the information was privileged under the First Amendment. 82 F.R.D. at 476. There is no material distinction from the present case.

App.083

In short, courts have uniformly rejected X's suggestion that private litigants are prohibited from invoking the First Amendment privilege. Instead, every cited case now before the Court either expressly holds the exact opposite or otherwise reaches the merits of the privilege claims. This Court should reject X's invitation to become an outlier of one. The Court should confirm that Defendants retain core First Amendment rights that may privilege certain documents from compelled production, and that courts retain authority to adjudicate these disputes as they arise.[5]

## III.     X seeks documents that are far outside the scope of legitimate discovery.

The Federal Rules limit the scope of discovery to nonprivileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Applying this test, courts are to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Courts "must limit the frequency or extent of discovery otherwise allowed" if "the discovery sought is unreasonably cumulative or

---

[5] While Defendants maintain that the actual application of the First Amendment privilege is unripe until this Court determines the relevance of the information requested, *see infra* at Argument III.A–D, and until Defendants serve their forthcoming privilege log, *see supra* at Argument I.B, if the Court seeks to expedite resolution of the anticipated dispute, Defendants respectfully request an opportunity to submit evidence, including affidavits, confirming the burden that disclosure of various categories of requested documents would impose on Defendants, their donors, and other affiliates. *See Perry*, 591 F.3d at 1161 (when evaluating assertions of the First Amendment privilege, courts "balance the burdens imposed on individuals and associations against the significance of the interest in disclosure to determine whether the interest in disclosure outweighs the harm"). As relevant here, the Fifth Circuit has specifically warned against discovery orders that force private parties "to turn over *to a public policy opponent* its internal communications" and other sensitive documents. *Whole Women's Health*, 896 F.3d at 373.

duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Because all of X's discovery requests that are ripe for adjudication flagrantly violate these rules, its motion to compel should be denied.

A.    **RFP Nos. 3, 17, 18, 21, and 35 are harassing requests for irrelevant donor information.[6]**

By X's own telling, "the central allegation that X raises in its amended complaint [is] Defendants' tortious interference with X's advertisers through the publication of two deeply misleading articles about the company's social media platform." Br. at 1. But many of X's requests have nothing to do with this subject matter. Instead, X trains its sights on what X-owner Elon Musk has made clear was the goal all along of this "thermonuclear lawsuit": destroying Media Matters

---

[6] RFP No. 3 requests "All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article." Defs.' App. at 7, 38.

RFP No. 17 requests "Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support." *Id.* at 20, 51.

RFP No. 18 requests "Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind." *Id.* at 21, 52–53.

RFP No. 21 requests "All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino." *Id.* at 24, 55.

RFP No. 35 requests "All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform." *Id.* at 71.

App.085

for its critical reporting.[7] To achieve this goal, X is targeting Media Matters's financial jugular by seeking to expose every one of the organization's donors, even where the donors have not sponsored any work related to any issues in this case.[8]

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries," and may not be "conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry." *Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947). "And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." *Id.* Donor identities are extremely sensitive in ways virtually certain to implicate privilege. *See, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616–17 (2021). This Court can avoid altogether the need to adjudicate those anticipated disputes by recognizing that requests for donor identities are inappropriately harassing and irrelevant. *See, e.g.*, *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the [issue].") (citing *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)).

To justify its demand for these maximally sensitive documents—the names, personal residences, and communications of individuals who donate to Media Matters, a nonprofit that has attracted powerful and deep-pocketed enemies, *see, e.g.*, *Media Matters for Am. v. Paxton*, No.

---

[7] @ElonMusk, X.com (Nov. 18, 2023, 2:01 AM),
https://x.com/elonmusk/status/1725771191644758037 [https://perma.cc/X4HN-PLJ4].

[8] *See* @TheChiefNerd, X.com (Dec. 10, 2023, 4:24 PM),
https://x.com/thechiefnerd/status/1733960832571122115?s=46&t=PN52ydwTvFusTeuJ-h77RA
[https://perma.cc/6L3M-SHX3] (Mr. Musk vowing that X "will pursue not just the organization, but anyone funding that organization. I want to be clear about that. Anyone funding that organization, will be, we will pursue them.").

App.086

24-cv-147 (APM), 2024 WL 1773197, at *20 (D.D.C. Apr. 12, 2024) (enjoining Texas Attorney General from further retaliating against Defendants for their political reporting)—X musters two conclusory sentences. It asserts, first, that "[r]esponsive documents will uncover evidence of Defendants' motives and intentions, individuals with whom they worked on the articles and who funded the project, and reveal Defendants' personal and political vendetta against X." Br. at 4. But X fails to explain how the home addresses of Media Matters donors would be relevant to Defendants' mental states. And whatever the motives and intentions of Media Matters's donors, the *identities* of those donors will in no way reveal *Media Matters's* motives and intentions. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964) ("[T]he state of mind required for actual malice would have to be brought home to the persons in the [news] organization having responsibility for the publication" of the challenged material.); *see also, e.g.*, *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865, 868 (7th Cir. 2018) ("It is the state of mind of the speaker that is relevant."). Whatever X's theory tying donor information to Media Matters's motives, any such theory has not been shared with Defendants during conferrals and is missing from X's requests and motion.

X's second sentence of explanation states that the "requests will capture or lead to evidence relevant to Defendants' subjective intent to harm X supporting elements of X's tortious interference and business disparagement claims." Br. at 4. This assertion replicates the first and similarly fails to explain how the identity of every donor—no matter what amount they gave, no matter where they live, no matter what restrictions may have accompanied their funds—could be

App.087

relevant to Defendants' subjective intent. Such conclusory pablum fails to meaningfully bring X's requests within the scope of Rule 26.[9]

Donor identities are not "importan[t to] the issues at stake in the action," and the burden of the proposed discovery—on Defendants, and, given the invitation to harassment, on the donors themselves—clearly "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009). Because X's requests for donor identities are based on no more than a "purely speculative hope that" they will "reveal a long-running and intricately-planned conspiracy," the motion to compel should be denied. *Hamilton v. Geithner*, No. 1:08cv1112 (JCC), 2009 WL 2240358, at *2 (E.D. Va. July 23, 2009).

### B.    RFP Nos. 13, 14, 15, and 16 are harassing and disproportionate requests for irrelevant financial information.[10]

RFP Nos. 13, 14, 15, and 16 seek financial information about Defendants that is grossly excessive to the needs of this case—particularly where Defendants have already provided X with

---

[9] As an afterthought—literally the last line of their argument—X floats the possibility that donor residences could be relevant to jurisdiction. *See* Br. at 17. To the extent X seeks discovery into whether Defendants have solicited Texas donors to fund Media Matters's journalism about X— Defendants have not, which remains undisputed for purposes of the pending motion to dismiss, *see* Mot. to Dismiss Am. Compl. at 9, ECF No. 41—information identifying the names of actual or prospective donors would not be relevant to that inquiry.

[10] RFP No. 13 requests "All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters." Defs.' App. at 14, 45.

RFP No. 14 requests "All Your bank statements and all documents sufficient to show Your financial condition during the time period." *Id.* at 15, 46.

RFP No. 15 requests "All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future,

sufficient information to determine Media Matters's net worth, and where Defendants are willing to provide further information about Defendants' net worth under penalty of perjury should this Court require it.

While plaintiffs seeking punitive damages in Texas are generally entitled to discovery into a defendant's net worth, none of the cases that X cites permit a plaintiff who alleges punitive damages to "have *carte blanche* access to the private financial life a defendant." *Price v. Lockheed Martin Corp.,* No. 4:04CV123LN, 2006 WL 1686568, at *3 (S.D. Miss. June 19, 2006). But that is precisely what X seeks here—a roving inquiry into Defendants' internal financial lives, with some requests seeking documents dating back decades. Specifically, in addition to seeking *twenty years*' worth of Defendants' IRS Form 990s (RFP No. 12), an excessive request that Defendants have nonetheless responded to and which specifically identifies Media Matters's net worth, *see* Defs.' App. at 94, X also seeks "all annual financial statements . . . since the founding of Media Matters" (RFP No. 13), "all [] bank statements and all documents" that show Defendants' financial condition since April 2021 (RFP No. 14), all insurance and similar policies related to any "obligation of any kind whatsoever" (RFP No. 15), and all documents that show Defendants' "expenses and identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever," since April 2021 (RFP 16).[11]

---

or that You have owed during the time period, including but not limited to any monetary judgment in this matter." *Id.* at 17, 48.

RFP No. 16 requests "Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever." *Id.* at 18, 49.

[11] In addition to including Defendants' net worth, Defendants' IRS 990 form also requires an organization to list its contributions and grants, income, total revenue, total expenses, total assets,

The substance of these requests, even ignoring their excessive temporal reach, far exceeds the information that a plaintiff seeking a defendant's net worth is entitled to in discovery. Determining a defendant's net worth is not a complicated enterprise. To the contrary, "[n]et worth is calculated by subtracting assets less liabilities." *McVay v. Halliburton Energy Servs. Inc.*, No. 3:07-CV-1101-O, 2010 WL 11583175, at *3 (N.D. Tex. June 18, 2010) (O'Connor, J.). For this reason, courts routinely deny requests seeking more detailed private information about a defendant's financial picture when such information is unnecessary to determining a defendant's net worth. In *Smith v. DeTar Hosp. LLC*, No. CA-V-10-83, 2011 WL 6217497 (S.D. Tex. Dec. 14, 2011), for example, a plaintiff seeking punitive damages in a defamation case sought wide-ranging financial information from the defendant, including an itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years. *Id.* at *1, *7. The court denied the discovery requests because they were "overly burdensome, excessive, and unnecessary," and instead required the defendants only to respond to an interrogatory stating their current net worth and to produce the most recent financial statement showing such information. *Id.* at *8.

Similarly, in *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646 (M.D. La. May 30, 2017), the court required a defendant facing a punitive damage claim to produce basic tax documents for the years relevant to the claim at issue but then *denied* further discovery into the party's financial assets, including a request for "any and all documents" regarding the defendant's assets and their fair market value, as "overly broad, invasive, and unreasonably burdensome." *Id.*

---

total liabilities, net assets, and more. *See* Defs.' App. at 83, 91–94. This information more than captures any information that X would be entitled to and satisfies the categories of information that X identifies in its motion. *See* Br. at 4 (arguing X is entitled to information regarding Defendants' "received donations, income, expenditures, [and] financial obligations").

App.090

at \*7; *see also Callais v. United Rentals N. Am.*, No. CV 17-312-BAJ-RLB, 2018 WL 6517446,

at \*6 (M.D. La. Dec. 11, 2018) (denying request for defendant to produce "any and all documents

that support, contradict, or related to defendant's net profit/loss" as overly broad and instead

compelling production only of basic financial documents for a specified time period). Here too,

X's requests for ***all*** annual financial statements (RFP No. 13), ***all*** bank statements and ***all***

documents showing Defendants' "financial condition," (RFP No. 14), ***all*** insurance policies

unrelated to any judgment that may result from this litigation (RFP No. 15), and documents

showing ***all*** of Defendants' expenses in various categories and the recipients of those expenses

(RFP No. 16) are overly broad and burdensome and should be denied as disproportionate to the

needs of this case. *Cf. In re House of Yahweh*, 266 S.W.3d 668, 673–74 (Tex. App. 2008) (holding

trial court "abuse[d] its discretion by ordering the production of financial records," including

property lists, bank statements, stock ownership statements, donation records, income tax returns,

asset lists, and income and budget forecasts "that would not necessarily evidence net worth" or

were otherwise cumulative).

Moreover, "[a]llowing litigants to delve without limitation into personal finances not only

raises serious privacy concerns, but also provides an opportunity for 'needless abuse and

harassment.'" *In re Jacobs*, 300 S.W.3d 35, 46 (Tex. App. 2009) (quoting *Wal–Mart Stores, Inc.

v. Alexander,* 868 S.W.2d 322, 331–32 (Tex. 1993) (Gonzalez, J., concurring)). X's attempt to

conduct a virtual audit of every Defendant's income and expenses on such a granular level is

nothing short of an attempt to harass, intimidate, and crush its adversaries.

If this Court finds Defendants' IRS 990 statements insufficient, Defendants are willing to

produce a sworn statement of their current net worth, which should negate the need for any further,

probing discovery on the matter. *See, e.g.*, *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-

CV-667-HTW-LRA, 2015 WL 1886852, at *3–7 (S.D. Miss. Apr. 24, 2015) (denying requests seeking all financial statements, all documents, and all schedules relating to defendant's net worth for a punitive damages claim, and requiring the defendant only to produce a current certified statement of net worth); *Vertex Aerospace, LLC v. Womble Bond Dickinson, LLP*, No. 309CV00704HTWLGI, 2022 WL 1830715, at *11 (S.D. Miss. Apr. 26, 2022) (denying requests for detailed financial information and requiring defendant to provide only a certified statement of current net worth); *Price*, 2006 WL 1686568, at *3 (denying plaintiff's request for detailed financial information and requiring the defendant instead to produce a "sworn financial statement, fairly outlining, under the penalty of perjury, the Defendant's assets, liabilities, and net worth").

Finally, if the Court does not deny the motion to compel as to RFP Nos. 13, 14, 15, and 16 outright, it should at a minimum limit the temporal period for which Defendants must produce documents to the relevant time periods at issue: 2023, the year in which the alleged defamation occurred, and 2024, when those financial reports become available. *See Sullivan v. Schlumberger Ltd.*, No. 4:20-CV-00662, 2021 WL 3206778, at *4 (E.D. Tex. July 29, 2021) (limiting discovery of relevant financial information for punitive damages claim to only the "most recent calculation of net worth" and not to cumulative requests for the defendant's net worth in prior years); *Briones v. Smith Dairy Queens Ltd.*, No. CIV.A. V-08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008) (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008, where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008); *Callais*, 2018 WL 6517446, at *6 (limiting the plaintiff's discovery of annual reports, financial statements, and federal income tax returns to the relevant three-year period). Such information should be unnecessary, however, considering Defendants' existing production of multiple years of

App.092

tax documents which relay Media Matters's net worth, and Defendants' willingness to produce additional sworn statements of net worth if this Court finds it necessary.

### C.     RFP Nos. 23, 24, 37, and 38 are harassing requests for irrelevant information about Media Matters employees.[12]

This tort suit does not give X the right to sift through Defendants' employees' personal papers—particularly those who have nothing to do with this case. That is not legitimate discovery; it is harassment by one of the world's richest men against a nonprofit organization that has met his wrath. When Defendants inquired into the relevance of X's request for Mr. Hananoki's travel documents (RFP No. 23), X suggested that the information could reveal whether Mr. Hananoki was meeting with article sources, X advertisers, or other claim-related individuals around the time that the disputed articles were written and published. In response, Defendants certified that "Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article." Defs.' App. at 119. When X suggested that the information could be relevant to this Court's jurisdiction, Defendants told X that "Mr. Hananoki also did not travel to Texas in any capacity during this time." *Id.* Nevertheless, X insisted that it wanted *everything* that fell within the ambit of the request as written, accounting for Mr. Hananoki's activities and whereabouts at all times during that period regardless of their relevance to the claims at issue. That would presumably include every correspondence about Mr.

---

[12] RFP No. 23 requests "All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023." Defs.' App. at 26, 57.

RFP No. 24 requests "All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023." *Id.* at 27, 58.

RFP No. 37 requests "All materials regarding or communications with Eric Hananoki." *Id.* at 73.

RFP No. 38 requests "All materials regarding or communications with Matt Gertz." *Id.* at 74.

App.093

Hananoki's personal travel over the Thanksgiving holiday and every associated document, down to gas station receipts and sightseeing photos. Rule 26 does not permit that gross intrusion.

RFP No. 24 is similarly unreasonable, seeking, without qualification, "All" of Defendants' "calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments." *Id.* at 27, 58. Defendants have explained that they will produce documents that "relate to X or any of its employees, policies, or advertisers listed in the amended complaint, or to the November 16 and 17 articles." *Id.* at 59; *see also id.* at 27. Apparently unsatisfied with these claims-related documents, X seeks more. According to the plain text of the request, which X refuses to modify, X demands Defendants' exercise logs, doctors' appointment reminders, personal journals, parent-teacher conference schedules, evidence of private visits with individuals who have nothing to do with this case, and so much more. X cannot point to any authority entitling it to this information.

RFP No. 37, in turn, requests *from Mr. Hananoki* "All materials regarding or communications with Eric Hananoki." *Id.* at 73. By its terms, X demands that Mr. Hananoki produce every single communication he has sent or received—every credit card solicitation delivered to his mailbox, every email with his children's pediatrician, every text message with his wife—for the past three years. And not just communications, but also all other "materials regarding" himself, which would ostensibly include everything from medical prescriptions to family pictures.

Nor is this request warranted as to Defendants Media Matters or Mr. Carusone, who are certain to have "materials regarding" and "communications with" Mr. Hananoki that are entirely irrelevant to the issues at stake in the action, and where the burden and expense of the proposed discovery vastly outweighs any conceivable benefit. *See* Fed. R. Civ. P. 26(b)(1). X's position that Defendants are obligated to produce everything in their possession—and then leave it to X to

decide what is relevant—would impose an immense burden on Defendants and would unnecessarily intrude on Defendants' private and personal lives for reasons unrelated to the case. Defendants have asked X to explain what claim-related documents pertaining to Mr. Hananoki would not otherwise be responsive to RFP Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 30, 31, 32, 33, 34, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47. Defs.' App. at 74. Because X has no answer to this question, it has no basis to compel production. *See* Fed. R. Civ. P. 26(b)(2)(C) (courts "must limit the frequency or extent of discovery otherwise allowed" if "the discovery sought is unreasonably cumulative or duplicative").

As unreasonable as X's requests related to Mr. Hananoki are, its requests related to non-party Matt Gertz are even more so—and are far afield of its tort claims. Mr. Gertz had no role in authoring the articles at issue in this case. The only reference to Mr. Gertz in the amended complaint is a footnote citation to a single article that Mr. Gertz wrote for Media Matters that provided hyperlinks to Mr. Hananoki's reporting, statements by X officials, and other X-related news. *See* Am. Compl. ¶¶ 6 n.4, 66 n.20, ECF No. 37. If Mr. Gertz has discoverable documents related to the issues in this case, they will be collected, reviewed, and produced as part of Defendants' process of responding to other requests. *See, e.g.*, RFP Nos. 1–4, 30–33 (seeking all documents related to the researching, drafting, publishing, and discussion of the November 16 and November 17 articles); *see also* RFP Nos. 5, 25, 28, 34 (seeking all documents related to Defendants' and their employees' knowledge of X, Elon Musk, and Linda Yaccarino). Any other demand for "materials regarding or communications with Matt Gertz" vindictively targets Mr. Gertz for reasons entirely unconnected to the claims at hand. Because the only additional documents that are uniquely responsive to RFP No. 38 would be irrelevant to any claim or defense, X is not entitled to compel their production.

D.     **RFP No. 46 is a harassing request for irrelevant information about Media Matters's personnel matters.[13]**

X tries—and fails—to justify RFP No. 46, its request to ransack Defendants' Human Resources files. Needless to say, X has not sued Defendants for employment discrimination, nor do the tort claims it brings here have any overlap with the employment-related matters it seeks to compel in RFP No. 46. X purports to seek documents related to "Defendants' past bad behavior," Br. at 5, but there is no generic "bad behavior" tort under Texas common law. Whether any former Media Matters employee accused Defendants of pregnancy-status discrimination, for example, is no more relevant to this suit than whether Media Matters has ever been accused in a slip-and-fall injury on its premises, or whether Mr. Hananoki has ever received a speeding ticket. X purports to desire documents that will reveal whether "Defendants had policies and procedures in place to prevent reporting falsehoods," *id.*, but personnel records are clearly not the place to find journalism policies and procedures.[14]

Similarly, X contends that "instances where Defendants have lied, discriminated, or otherwise defamed in the past are relevant to determining whether they did so again here." *Id.* But Defendants are not accused of "discriminat[ing]" against X, and RFP No. 46 does not otherwise relate to false statements or defamation. X alleged that Defendants committed tortious interference

---

[13] RFP No. 46 requests "All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations that You took adverse employment actions or otherwise discriminated against or took any action against another person or persons on the basis of a protected class, including but not limited to race, color, national origin, religion, sex, sexual orientation, language status, or pregnancy status." Defs.' App. at 79.

[14] Those are expressly covered by RFP No. 39, which seeks "All materials reflecting or regarding any policies, practices, procedures, codes of conduct, ethical standards, or other guidelines for appropriate investigation and reporting for Media Matters' articles, including but not limited to policies concerning fact-checking, defamation, and contacting sources or subjects of articles." Defs.' App. at 75.

App.096

with contract, business disparagement, and interference with prospective economic advantage. Am. Compl. ¶¶ 65–88. None of these torts have anything to do with identity-based discrimination or Media Matters's employment matters, and so nothing in RFP No. 46 is relevant to any claims or defenses in this action.

## CONCLUSION

The Court should deny X's motion to compel and hold that Defendants are not precluded from invoking the First Amendment privilege in future discovery disputes.

Dated: May 29, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

App.097

## CERTIFICATE OF SERVICE

On May 29, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

App.098

# Doc. 63

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **X CORP.,** | |
| **Plaintiff,** | |
| | |
| **v.** | **Civil Action No. 4:23-cv-01175-O** |
| | |
| **MEDIA MATTERS FOR AMERICA, et al.,** | |
| **Defendants.** | |

### APPENDIX OF EXHIBITS TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki present the following exhibits to accompany their Response to Plaintiff's Motion to Compel Production of Documents:

| Exhibit No. | Description | Appendix Page Number |
|:---:|:---:|:---:|
| 1 | Defendants Media Matters for America and Eric Hananoki's Amended Responses and Objections to Plaintiff's First Set of Requests for Production | 3–33 |
| 2 | Defendant Angelo Carusone's Amended Responses and Objections to Plaintiff's First Set of Requests for Production to Defendant Angelo Carusone | 34–64 |
| 3 | Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone's Responses and Objections to Plaintiff's Second Set of Requests for Production | 65–81 |
| 4 | IRS Form 990 (2023) | 82–94 |
| 5 | Email Exchange Between Counsel re: X/MMFA: Meet and Confer | 95–141 |
| 6 | Declaration of Andrew LeGrand | 142–146 |

App.100

Dated: May 29, 2024

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

On May 29, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

App.101

2

# Exhibit 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA AND ERIC HANANOKI'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Defendants Media Matters for America ("Media Matters") and Mr. Eric Hananoki,[1] through their undersigned counsel, submit these amended responses and objections to Plaintiff X Corp.'s First Set of Requests for Production ("Discovery Requests" or "Requests"), initially served on March 11, 2024. Defendants' amendments are made based on conferral among counsel.

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants'

---

[1] Plaintiff's First Set of Requests for Production were served on February 5, 2024, prior to when Plaintiff amended its complaint to include Angelo Carusone as a defendant. Therefore, these Responses and Objections are not on behalf of Mr. Carusone. All references to Defendants herein are to Media Matters and Mr. Hananoki only.

investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s) and/or on a document-by-document basis, or to move for a Court order if deemed appropriate.

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court and will be produced on a rolling basis. As of the date of these Amended Responses and Objections, the Parties have yet to agree upon or submit for the Court's approval any of these documents. Any previous or forthcoming production by Defendants is made without waiver of their rights and privileges according to those documents once they are finalized and entered by the Court.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters or Eric Hananoki and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

App.104

## RESPONSES TO INDIVIDUAL REQUESTS

**REQUEST FOR PRODUCTION NO. 1**: All versions of the November 16, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," but Defendants interpret the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 16, 2023 Article. In its May 24, 2024 Motion to Compel, Plaintiff indicated that it agrees with Defendants' definition. *See* ECF 60, Pl.'s Mot. to Compel, at 7.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 2**:  All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

**OBJECTIONS**: The Request does not define the term "Platform account data." After conferring with Plaintiff, Defendants interpret the term as used here to ask for usernames, posts, chats, and comments of, as well as emails generated from, accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. *See also* ECF 60, Pl.'s Mot. to Compel, at 7. Plaintiff also

includes "login information" in their definition of Platform account data, but Defendants object to this as not relevant and disproportionate to the needs of the case since it seeks sensitive username and password information. Defendants further object to this Request because it seeks Platform account data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles.

Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.


**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article.

**OBJECTION**: Defendants object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and

App.106

**7**

deterred from affiliating with organizations they support.[2]  Indeed, Elon Musk himself has called

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue

not just the organization but anyone funding that organization. I want to be clear about that anyone

funding that organization, will be, we will pursue them".[3]  Plaintiff's request for this information

is inappropriate and not proportional to the needs of this case.

   **RESPONSE**: Based on this objection, Defendants will not produce identifying donor

information in response to this request. Defendants will otherwise produce on a rolling basis any

responsive, nonprivileged documents in their possession, custody, or control that they are able to

locate following a reasonable search. Defendants are in the process of collecting and reviewing

documents and are not presently withholding any responsive documents that they have identified.

Defendants will supplement this response if they identify and withhold any responsive documents.


   **<u>REQUEST FOR PRODUCTION NO. 4</u>**:   All audio and video recordings of You discussing or

referencing in any way the November 16, 2023 Article, including but not limited to documents

---

[2] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[3]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

App.107

reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

**OBJECTIONS**: Defendants object to this Request because it purports to seek materials "in the possession, custody, or control of third parties" and therefore falls outside the scope of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents. Defendants will not search for or produce any documents that are in the possession, custody, or control of third parties.

**REQUEST FOR PRODUCTION NO. 5**:  All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

App.108

**9**

**REQUEST FOR PRODUCTION NO. 6**: All documents and communications concerning content moderation on the Platform.

    **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 7**: All documents and communications concerning advertising on the Platform, including but not limited to documents and communications concerning any particular advertiser or potential advertiser on the Platform.

    **OBJECTION**: The Request does not define "advertiser," but Defendants interpret the term to mean all X advertisers listed in Plaintiff's amended complaint. To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all the entities that have advertised on X, much less all entities that X may view as a "potential advertiser".

    **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Based on the objection above, Defendants will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

App.109

**REQUEST FOR PRODUCTION NO. 8**:   All communications with X's advertisers concerning the Platform, including but not limited to communications regarding their decision to advertise on the Platform.

    **OBJECTION**: The Request does not define "X's advertisers," but Defendants interpret the term to mean all X advertisers listed in Plaintiff's amended complaint**.** To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all of X's advertisers.

    **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Based on the objection above, Defendants will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 9**:   All communications with X's advertisers about advertising with or financially supporting You.

    **OBJECTION**: The Request does not define "X's advertisers," but Defendants interpret the term to mean all advertisers listed in X's amended complaint**.** To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all of X's advertisers.

App.110

**RESPONSE**: Neither Media Matters nor Eric Hananoki has any documents responsive to this request for the advertisers listed in X's amended complaint.

**REQUEST FOR PRODUCTION NO. 10**: All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll posts, comments, direct messages, and any other account data of any kind whatsoever" of various accounts, even where the information it seeks is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Defendants further object to this Request because it seeks data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with account handles related to the claims and issues in this case and otherwise produce on a rolling basis any responsive, nonprivileged materials related to the claims and issues in this case that are in their possession, custody, or control and that they are able to locate following a reasonable search.

App.111

**REQUEST FOR PRODUCTION NO. 11**: All communications with appointed or elected public officials, candidates for public office, candidate campaign committees, political party committees, PACs, 501(c)(4) groups, and any other political actors or political operatives.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll communications" with an unquantifiable number of potential individuals and entities on unspecified topics, even where these are immaterial and unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Indeed, there are over 500,000 public officials in the U.S.,[4] not counting individuals not currently in office or candidates; over 70,000 registered 501(c)(4)s[5]; and over 8,500 PACs.[6]

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Pursuant to X's representations at the May 27, 2024 meet-and-confer, Defendants await a revised request that is tailored to the claims and defenses at issue in this case.

———————————————

[4] *How many politicians are there in the USA? (Infographic),* PoliEngine, https://poliengine.com/blog/how-many-politicians-are-there-in-the-us (last accessed May 27, 2024).

[5] *How many nonprofits are there in the US?*, USA Facts (Nov. 2024), shttps://usafacts.org/articles/how-many-nonprofits-are-there-in-the-us/ (last accessed May 27, 2024).

[6] *Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=O (last accessed May 27, 2024); *see also Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=V&committee_type=W (last accessed May 27, 2024).

App.112

**REQUEST FOR PRODUCTION NO. 12**: All IRS Form 990s for Media Matters, regardless of time period, since the founding of Media Matters.

 **RESPONSE**: Defendants have produced and will continue to produce on a rolling basis Media Matters's Form 990 tax returns.

**REQUEST FOR PRODUCTION NO. 13**: All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters.

 **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll annual financial statements for Media Matters" since the organization's founding twenty years ago, with no indication of why this information would be material or related to the claims or defenses at issue in this case. Indeed, the Platform was not founded until 2006, two years *after* Media Matters was founded. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). Indeed, courts allowing the discovery of financial information for punitive damages generally limit the temporal scope of those documents. *See, e.g.*, *Callais v. United Rentals North America*, No. 17-312, 2018 WL 6517446, at *6 (M.D. La. Dec. 11, 2018) (compelling production of annual reports, financial statements, and federal income tax returns for a three-year period); *Briones*, 2008 WL

App.113

4630485, at *5 (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008, where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008). A time period that would not produce relevant documents to the issue at hand is not reasonable and may be overly broad. *See, e.g.*, *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *9 (M.D. La. Mar. 30, 2022). Moreover, Defendants object to this request as duplicative of Request for Production No. 12, as Media Matters's 990 forms contain comprehensive information on Media Matter's annual finances. *See, e.g.*, *Vertex Aerospace, LLC v. Womble Bond Dickinson*, LLP, No. 309CV00704HTWLGI, 2022 WL 1830715, at *11 (S.D. Miss. Apr. 26, 2022) (holding request into assets and liabilities were disproportionate to the needs of the case, given the company's insurance coverage and its ability to provide a certified statement of its net worth).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 14**: All Your bank statements and all documents sufficient to show Your financial condition during the time period.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll bank statements and all documents

App.114

sufficient to show [Defendants'] financial condition," with no indication of why this information—including personal financial information of an individual reporter—would be material or related to the claims or defenses at issue in this case. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 15**: All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future, or that You have owed during the time period, including but not limited to any monetary judgment in this matter.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation *of any kind whatsoever*," even where the information would be immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses such as employee medical and dental insurance policies.

**RESPONSE**: Defendants direct Plaintiff to Section IV of Defendants' Initial Disclosures, served to counsel on March 8, 2024 via email, Defendants' Amended Initial Disclosures, served to counsel on May 8, 2024, and any subsequent revisions to Defendants' Initial Disclosures, which, pursuant to Federal Rule of Civil Procedure 26 (a)(1)(A)(iv), lists "any insurance agreement under

which an insurance business may be liable to satisfy all or part of a possible judgment in th[is] action or to indemnify or reimburse for payments made to satisfy the judgment [in this litigation]." Defendants will produce any responsive, non-privileged documents related to the issues in this litigation. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever.

    **OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires producing a high-volume of sensitive financial information— including a limitless amount of unrestricted "expenses"—that are immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting

App.117

financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "documents evidencing transfers of money" to an employee, which largely included salary payments, to be overly broad).

  **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

16

App.118

**REQUEST FOR PRODUCTION NO. 17**: Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

 **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks a high-volume of sensitive financial information "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[7]

---

[7] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year,

17

Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[8] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 18**: Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

--------------------------

as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[8]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

App.120

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks information about any communications soliciting financial support "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[9] Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding

---

[9] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

App.121

that organization. I want to be clear about that anyone funding that organization, will be, we will

pursue them."[10] Plaintiff's request for this information is inappropriate and not proportional to the

needs of this case.

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents

in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 19**: Documents sufficient to identify the recipients of any

communications or email updates, "Action Updates," or "Weekly Updates" sent out via any email

list that You maintain, as well as any information related to those recipients' locations, including

but not limited to any self-reported location data and their IP addresses.

**OBJECTION**: Defendants object to this Request as being overly broad, not reasonably

particularized, harassing, and disproportionate to the needs of this case, and for seeking documents

not relevant to any claim or defense asserted in this litigation. The identities of individuals who

subscribe to Defendants' email lists are not relevant to any claims or defenses in this case, and

their disclosure is reasonably likely to subject recipients to harassment. *See NAACP v. State of Ala.

ex rel. Patterson*, 357 U.S. 449, 462 (1958) (recognizing disclosure of nonprofit organization's

membership lists would likely result in harassment).

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged

documents in their possession, custody, or control that they are able to locate following a

reasonable search for documents that identify the location of recipients of any communications or

---

[10]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last
accessed May 28, 2024).

App.122

email updates, "Action Updates," or "Weekly Updates" sent by Defendants via any email list. Defendants will not provide documents that disclose identifying information of individual recipients.

**REQUEST FOR PRODUCTION NO. 20**: Documents sufficient to show Media Matters' organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 21**: All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**OBJECTIONS**: Defendants object to this Request as harassing. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure

App.123

of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[11]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[12]  Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. In any event, Media Matters does not receive any dedicated funding that is restricted for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**REQUEST FOR PRODUCTION NO. 22**: All documents concerning, and communications with, any third-party public relations, advertising, marketing, communications, or similar firm that

_____

[11] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[12] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

You have contracted with, or that you have contacted in any capacity about the November 16, 2023 Article.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 23**: All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and as seeking documents not relevant to any claim or defense asserted in this litigation. This Request impermissibly requires blanket production of "[a]ll documents and communications related to or reflecting *any* travel" by Mr. Hananoki during the specified time period, even where not reasonably related to the issues in dispute in this case or the parties' defenses. This request also is harassing to Mr. Hananoki, as he is being asked to search through and disclose any and all documents— including flights, hotels, meal receipts, texts, calls, photographs, and more—related to any travel, including personal travel with his family that has no relevance to the claims or defenses being litigated in this case and despite Defendants' assurances that Mr. Hananoki did not conduct any work-related travel during the time period. Indeed, Defendants understand from the Parties' meet-and-confers that Plaintiff seeks to account for Mr. Hananoki's whereabouts and activities during this time period without qualification. Moreover, Defendants further object to this Request as

duplicative of and/or cumulative of other document requests, including Document Requests Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16,17, 18, 19, 20, 21, 22, 24, 25, 28, 30, 31, 32, 33, 34, 36, 37 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47. Any relevant information Plaintiff seeks with this request, beyond what Defendants have already certified, are captured by X's many other broad requests.

**RESPONSE**: Defendants do not possess any responsive documents relevant to any claim or defense in this litigation because, as Defendants made clear to Plaintiff in their email of May 2, 2024, Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article. In addition, he did not travel to Texas in any capacity during this time.

**REQUEST FOR PRODUCTION NO. 24**: All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments" during the specified time period, even where not reasonably related to the issues in dispute in this case. This request is also harassing because it is asking Defendants to essentially account for all of their activities and appointments, including personal activities and appointments, without qualification.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents related to any of X's employees, policies, or advertisers listed in the amended complaint or the issues raised in the amended complaint that are in their possession, custody, or control and

App.126

that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to or reflecting Your involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms."

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

App.127

**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to or reflecting Media Matters' Board's involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search and in light of Defendants interpretation of the terms. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to or reflecting Media Matters' donors' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a). Defendants further object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[13]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear

---

[13] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

App.129

about that anyone funding that organization, will be, we will pursue them".[14] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Defendants will produce on a rolling basis, any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control, nor will Defendants produce identifying donor information in response to this request. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to or reflecting Media Matters' employees' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it

_____

[14] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a).

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search through the relevant custodians' files. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 29**: All documents and communications related to or reflecting Media Matters' advertisers' and agencies' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a).

App.131

**RESPONSE**: Defendants do not possess any documents that are responsive to this Request because Media Matters does not have any advertisers or agencies.

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612) 1700
Seventh Avenue, Suite 2100
Seattle,  WA 98101
T:  (206)  656-0177
F:  (206)  656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)  250
Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law
* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America and Eric Hananoki*

App.132

# Exhibit 3

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO
CARUSONE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF
REQUESTS FOR PRODUCTION**

Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr.
Angelo Carusone, through their undersigned counsel, submit these responses and objections to
Plaintiff X Corp.'s Second Set of Requests for Production ("Discovery Requests" or "Requests").

<u>**PRELIMINARY STATEMENT**</u>

The responses set forth herein are based on the information and documents reasonably
available to Defendants at this time, but discovery in this matter, including Defendants'
investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's
Discovery Requests, is still ongoing. Defendants reserve their right to alter, supplement, amend,
correct, clarify, or otherwise modify these responses and objections, to assert additional objections
or privileges in any subsequent supplemental response(s) and/or on a document-by-document
basis, or to move for a Court order if deemed appropriate.

App.134

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court, and will be produced on a rolling basis. As of the date of these Amended Responses and Objections, the Parties have yet to agree upon or submit for the Court's approval any of these documents. Any previous or forthcoming production by Defendants is made without waiver of their rights and privileges according to those documents once they are finalized and entered by the Court.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters, Eric Hananoki, or Angelo Carusone, and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

## <u>RESPONSES TO INDIVIDUAL REQUESTS</u>

**<u>REQUEST FOR PRODUCTION NO. 30</u>**: All versions of the November 17, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," but Defendants interpret the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 17, 2023 Article. In its May 24, 2024

App.135

Motion to Compel, Plaintiff indicated that it agrees with Defendants' definition. *See* ECF 60, Pl.'s

Mot. to Compel, at 7.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged

documents in their possession, custody, or control that they are able to locate following a

reasonable search. Defendants are in the process of collecting and reviewing documents and are

not presently withholding any responsive documents that they have identified. Defendants will

supplement this response if they identify and withhold any responsive documents.


**REQUEST FOR PRODUCTION NO. 31**: All source materials, research, screenshots, Platform

account data, and other documents or communications relied on, referenced, created, or considered

by You in conceiving of, investigating, working on, writing, publishing, and disseminating the

November 17, 2023 Article.

**OBJECTIONS**: The Request does not define the term "Platform account data." After

conferring with Plaintiff, Defendants interpret the term as used here to ask for usernames, posts,

chats, and comments of, as well as emails generated from, accounts on the X Platform relied on,

referenced, created, or considered in investigating, working on, writing, publishing, and

disseminating the referenced article. *See also* ECF 60, Pl's Mot. to Compel, at 7. Defendants also

include "login information" in their definition of Platform account data, but Defendants object to

this as not relevant and disproportionate to the needs of the case since it seeks sensitive username

and password information. Defendants further object to this Request because it seeks Platform

account data that is already within X's possession and is therefore more convenient, less

burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles.

Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 32**: All documents and communications related to the November 17, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 17, 2023 Article.

**OBJECTION**: Defendants object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[1]  Indeed, Elon Musk himself has called

---

[1] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year,

App.137

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[2] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on this objection, Defendants will not produce identifying donor information in response to this request. Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 33**: All audio and video recordings of You discussing or referencing in any way the November 17, 2023 Article, including but not limited to documents reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

---

as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[2]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**OBJECTIONS**: Defendants object to this Request because it purports to seek materials "in the possession, custody, or control of third parties" and therefore falls outside the scope of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents. Defendants will not search for or produce any documents that are in the possession, custody, or control of third parties.

**REQUEST FOR PRODUCTION NO. 34**: All materials regarding or communications with You or any other Media Matters employee, contractor, or agent mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 35**: All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon

App.139

Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

**OBJECTIONS**: Defendants object to this Request as harassing. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[3] Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that

---

[3] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

organization, will be, we will pursue them".[4] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

      **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 36**: All materials, including but not limited to notes, transcripts, or recordings, whether published, broadcast, or otherwise, or all media or public appearances made by You wherein You discussed or mentioned this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

      **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 37**: All materials regarding or communications with Eric Hananoki.

---

[4] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

App.141

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with Eric Hananoki," even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request as duplicative of and/or cumulative of other discovery requests, including Request Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 30, 31, 32, 33, 34, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47.

**RESPONSE**: Many of documents Defendants produce in response to other Requests will be responsive to this Request as well, as noted above. Based on the foregoing objections, however, Defendants will not conduct a separate search or create separate productions for this Request at this time.

**REQUEST FOR PRODUCTION NO. 38**: All materials regarding or communications with Matt Gertz.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with Matt Gertz," even where not reasonably related to the issues in dispute in this case. Indeed, Mr. Gertz did not author either the November 16 or November 17 articles and is only referenced in two footnotes of Plaintiff's Amended Complaint, both citing to the same article. *See* ECF 37, Am. Compl. at n.4 and n.20. Defendants further object to this Request as duplicative

of and/or cumulative of other discovery requests, including Discovery Request Nos. 5, 6, 7, 20, 28, 34, 36, 39, 41, 42, 44, and 45.

**RESPONSE**: Documents Defendants produce in response to other Requests may be responsive to this Request as well, as noted above. Based on the foregoing objections, however, Defendants will not conduct a separate search or create separate productions for this Request at this time.

**REQUEST FOR PRODUCTION NO. 39**: All materials reflecting or regarding any policies, practices, procedures, codes of conduct, ethical standards, or other guidelines for appropriate investigation and reporting for Media Matters' articles, including but not limited to policies concerning fact-checking, defamation, and contacting sources or subjects of articles.

**RESPONSE**: Defendants will produce on a rolling basis, any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 40**: All materials and communications regarding the X account(s) used in creating the November 16, 2023 Article or the November 17, 2023 Article, including but not limited to any emails from the Platform (including automatic or system-generated emails).

**OBJECTIONS**: Defendants interpret "materials" to include Platform account data. Defendants object to this Request because it seeks Platform account data that is already within X's

App.143

possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery. Defendants also object to this Request as duplicative of and/or cumulative of other discovery requests, including Discovery Request Nos. 2, 10, and 31.

**RESPONSE**: Defendants interpret "materials" to include Platform account data. The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles and otherwise produce on a rolling basis any responsive, nonprivileged materials that are in their possession, custody, or control and that they are able to locate following a reasonable search.

**REQUEST FOR PRODUCTION NO. 41**: All materials and communications with or regarding any X account or X advertiser appearing the [sic] November 16, 2023 Article or the November 17, 2023 Article.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 42**: All materials regarding or communications with any individual or entity named in the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage, including communications with any entity's board of directors,

11                                                                App.144

employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of any such entity.

**OBJECTIONS**: Defendants object to the phrase "any subsequent coverage," which is vague, overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, as it would purport to include every article MMFA has written or published since November 16, 2023.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged materials regarding or communications with any individual or entity named in the November 16, 2023 Article or the November 17, 2023 Article in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 43**: All materials regarding or communications with any sources for the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage.

**OBJECTIONS**: Defendants object to the phrase "any subsequent coverage," which is vague, overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, as it would purport seek information pertaining to every source for every article MMFA has written or published since November 17, 2023.  Defendants object to this Request as duplicative of and/or cumulative of other discovery requests, including Request Nos. 2, 3, 31, and 32.

**RESPONSE**:  Defendants are not in possession of any responsive documents because Defendants did not rely on any sources in drafting the November 16 and November 17, 2023 articles.

**REQUEST FOR PRODUCTION NO. 44**: Documents sufficient to show the identity of the author of and every contributor to articles that are attributed to "Media Matters Staff" or that are unattributed referring to this Matter, Elon Musk, Linda Yaccarino, X, Twitter, the November 16, 2023 Article, the November 17, 2023 Article, or the Platform, including misinformation, brand safety, ad pairing, anti-Semitism, racism, Nazis or Nazi ideology and content, white nationalism, white supremacism, or the "alt-right" on the Platform.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 45**: All materials or communications that reference in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform, and use any of the following terms or any variant of any of the following terms: Hitler, Nazi, racist, racism, alt-right, antisemite, antisemitism, anti-Semite, anti-Semitism, red line, replacement theory, white supremacy, white nationalism, white pride, Pepe, frog Twitter, the Holocaust, bigotry, hate, hatred, hateful speech, Charlottesville, tiki torch, January 6, January 6th, Jan. 6, Jan. 6th, 1/6, J6, minorities, hordes, jew,

jewish, Israel, Israeli, IDF, Israeli Defense Force, Palestine, Palestinian, "from the river to the sea,"
October 7, 10/7, jihad, day of jihad, Hamas, Gaza, Islam, Islamic, Palestinian Islamic Jihad, PIJ,
Islamophobia, Zionism, Zionist, Zion, blue chip, brand, free speech, First Amendment, Texas, Fort
Worth, Dallas, Austin.

   **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged
documents in its possession, custody, or control that they are able to locate following a reasonable
search. Defendants are in the process of collecting and reviewing documents and are not presently
withholding any responsive documents that they have identified. Defendants will supplement this
response if they identify and withhold any responsive documents.


   **REQUEST FOR PRODUCTION NO. 46**: All materials reflecting or relating to any reports,
accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits
(including potential or threatened lawsuits that were never filed), or investigations involving
allegations that You took adverse employment actions or otherwise discriminated against or took
any action against another person or persons on the basis of a protected class, including but not
limited to race, color, national origin, religion, sex, sexual orientation, language status, or
pregnancy status.

   **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably
particularized, unduly burdensome, and disproportionate to the needs of this case. Indeed, none of
the employment related materials X seeks in its request are relevant to any of its tort claims or
computation of damages, or to Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495,
507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has
ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations

inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.").

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.


**REQUEST FOR PRODUCTION NO. 47**: All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations against You regarding business disparagement, defamation, or libel.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, Defendants, like all media organizations, are frequently contacted by individuals who criticize or threaten Defendants regarding their reporting despite having no credible basis and despite never going through with legal action. Searching, reviewing, and producing all of these documents would result in a high volume of irrelevant and not responsive documents. *See, e.g.*, *Samsung Elecs. Am.,*

*Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 284 (N.D. Tex. 2017) (noting "a court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case, considering" among other things, "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

**RESPONSE**: Notwithstanding these objections, Defendants will produce on a rolling basis any responsive publicly available legal filings in its possession, custody, or control that they are able to locate following a reasonable search.

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

# Exhibit 5

| From: | Aria Branch |
|---|---|
| To: | Chris Hilton; LeGrand, Andrew; Alex Dvorscak; Ahmed, Amer S.; Abha Khanna |
| Cc: | Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Vidyarthi, Apratim; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Ogale, Arjun; Judd E. Stone, II; Ari Cuenin; Bonnie Chester; Cody Coll; john.sullivan@the-sl-lawfirm.com; Tom Albright; Michael Abrams; Togias, Iason |
| Subject: | RE: X/MMFA: Meet and Confer |
| Date: | Monday, May 27, 2024 12:21:51 PM |

Chris,

We won't belabor the points raised in your email and will instead look forward to discussing these issues today, per the Court's order.

However, I continue to be taken aback and disappointed by your repeated falsehoods about my statements, and I believe they embody and are colored by the exact opposite of the collegiality and professional courtesy referenced in the *Dondi Properties* case cited by the Court. As you have pointed out, at that time of our first meet and confer, Defendants' motion to stay discovery was pending, and we had yet to (and still have yet to) agree to a Protective Order and ESI protocol. On our call, I made clear that we were eager to agree to a Protective Order and ESI Protocol so that we could begin discovery in earnest. And I stated that our clients were understandably concerned about engaging in expensive and intrusive discovery, given the tremendous breadth of your requests, in light of the possibility that discovery could be stayed in the near future.  I did not, however, at any point represent that our "clients were not diligently working to respond to discovery nor that they had no desire to do so given the pending motion to stay and motion to dismiss." I said the exact opposite – that we were engaged in document collection from relevant custodians and that we would get back to you on the anticipated date of our first production of documents. At one point, I explicitly stated that we "intend to comply with the scheduling order" and that I wanted to assure you that we were not "sitting on our hands." Our conduct since that call has been entirely consistent with the statements I made, as we have since produced documents (consistent with the timing we provided) and we have repeatedly affirmed that we have every intention and desire of complying with our discovery obligations.

We also want to clarify that Defendants have given you the names of our main custodians and assured you that "we have collected documents from [other] appropriate custodians who were involved in the research, drafting, and editing of the challenged article." As we noted in our earlier email, we also are willing to discuss a mutual exchange of custodians and search terms during our call today.

Regards,

**Aria C. Branch**
Partner
Elias Law Group LLP
250 Massachusetts Avenue NW, Suite 400
Washington DC 20001
202-968-4518

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

App.151

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Monday, May 27, 2024 9:21 AM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Ogale, Arjun <AOgale@gibsondunn.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Togias, Iason <ITogias@gibsondunn.com>
**Subject:** Re: X/MMFA: Meet and Confer

Andrew,

The continued posturing about our efforts to confer is not helpful. Today will be at least our fourth call on these issues, in addition to many emails. You were not on two of those calls, and you did not participate in the substantive discussion during the third. On the first call, your co-counsel Ms. Branch advised us that your clients were not diligently working to respond to discovery, and had no desire to do so, given the pending motion to stay and motion to dismiss. Since then we have repeatedly explained our concerns to your team, and we have received something like 5000 pages of documents, despite your team's repeated claims to have collected 3.5 TB of data.

Defendants' solution to these discovery issues has repeatedly been a request for us to narrow the scope of our RFPs. Of course we are open to that discussion. But so far that discussion has been uninformed. We have almost no idea what your collection efforts have included up to this point, not even a simple custodian list. We are not going to limit the scope of our requests simply because you keep asking. If Defendants demonstrate how specific limits on particular RFPs will significantly streamline the discovery process, and are willing to discuss the information that would be excluded by those limits, then I'm certain we can have a productive conversation, even if we don't ultimately agree.

Regarding your suggestion that we have somehow not conferred with you regarding privilege over the course of these converstaions, you are simply mistaken. We have asked you to produce a case that demonstrates the state action which would implicate the first amendment. The authorities defendants have provided do not do so. We have asked you to produce a case that creates a reporter's privilege other than Selcraig, which we think is inapplicable and would at most cover a source's identity by its own terms. Defendants have not done so. We have asked you to explain your associational privilege other than citing Banta and NAACP, which involve state action and wholly dissimilar circumstances. Defendants have not done so. It is defendants' burden to demonstrate the privilege, and we are unconvinced.

If you'd like to call me to have a private discussion regarding your concerns, you can do so at 737-465-3897. I am traveling with my family today but I will make time to talk to you.

App.152

Thanks,
Chris

---

**From:** LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Sent:** Sunday, May 26, 2024 5:52 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Aria Branch <abranch@elias.law>; Ogale, Arjun <AOgale@gibsondunn.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Togias, Iason <ITogias@gibsondunn.com>
**Subject:** RE: X/MMFA: Meet and Confer

Alex,

We are available to confer Monday between 12:30 and 1:30 ET.

Regarding the disputes you highlighted in your email.

1. Per our email on Friday before you filed the motion to compel, we already intended to amend our responses on Tuesday to formalize what we have already conveyed to you at multiple meet and confers: we are not categorically withholding or refusing to produce documents for each request as Plaintiff suggests. We have made explicit in our responses which requests we are not producing documents for. For the rest, we have collected and are reviewing documents based on Plaintiff's request—not our objections—and will produce accordingly, only withholding documents based on privilege, which we will then log for Plaintiff's review.
   1. Our amendment should moot Plaintiff's concerns. Please let us know if that is not the case.
   2. If Plaintiff would like to do a mutual exchange of custodians and search terms, we are happy to discuss this tomorrow.
2. Thank you for identifying the requests you have remaining concerns over. As we noted during our last meeting, this is helpful to give us an understanding of where disagreements remain. We remain willing and eager to discuss these requests to attempt to find a common ground. We would like to reiterate, however, especially in light of the Court's order and the cases it cited, that there needs to be a mutual willingness to come together to resolve these issues. We will be prepared to reiterate our concerns about Plaintiff's request with an eye towards ways we can narrow our objections, as we have already done with several other requests. In turn, we expect

App.153

that Plaintiff will come prepared to discuss why it feels it needs the broad discovery it seeks and an openness to tailoring its requests to what is most relevant to the case.

3. Defendants have met our burden to confer in good faith about this issue. We have given Plaintiff a number of cases regarding our position on privilege both in our responses and after, and have expressed on several occasions, both in writing and in meetings, our desire to better understand the reasoning behind Plaintiff's opposition. Plaintiff in turn has refused to provide us with any supporting cases of its own or to show any support for its position outside of giving blanket disagreement. Indeed, at the last meet and confer, Plaintiff noted that it was not its burden to share its cases or support with us despite multiple requests from Defendants. We remain open to continuing this conversation to come to a mutually agreeable resolution but reiterate that it must be a two-sided discussion.

Best,
Andrew

**Andrew LeGrand**
Partner

T: +1 214.698.3405 | M: +1 469.658.5686
ALeGrand@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201-2923

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Sunday, May 26, 2024 9:53 AM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Aria Branch <abranch@elias.law>; Ogale, Arjun <AOgale@gibsondunn.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Togias, Iason <ITogias@gibsondunn.com>
**Subject:** RE: X/MMFA: Meet and Confer

**[WARNING: External Email]**

Counsel,

We have reviewed the Court's recent order (Dkt. 61). We would like to meet-and-

App.154

confer again on Monday or Tuesday of next week.

We reiterate our position that we are in disagreement on every RFP. However, we see three broad categories of disputes:

1. For requests where you have agreed to produce documents—we believe this can be resolved if you:
   a. Withdraw your non-privilege related objections to RFPs 1-8, 10, 19-20, 22, 24-28, 30-34, 36, 39-42, and 44-45 and serve us amended responses; and
   b. Disclose your custodians and search terms so we may understand the scope of your production.
2. For requests where you are refusing to produce documents—we have grouped the RFPs by category in our Motion. My suggestion is we go through these categories on the meet-and-confer to confirm that we remain in disagreement requiring Court resolution:
   a. RFP 9;
   b. RFPs 11, 17-18, 21, and 35;
   c. RFPs 13-16;
   d. RFPs 23, 37-38, and 43; and
   e. RFPs 46 and 47.
3. Privilege—we again reiterate our belief that none of the First Amendment privileges you have asserted are applicable in this case. Please let us know if there is any additional case we have not already reviewed, otherwise this issue will have to be resolved by the Court if you will not agree to withdraw your privilege objections.


Best,
-Alex
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Friday, May 24, 2024 3:03 PM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Ogale, Arjun <AOgale@gibsondunn.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin

<ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll
<cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright
<tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Togias, Iason
<ITogias@gibsondunn.com>
**Subject:** Re: X/MMFA: Meet and Confer

Andrew,

Leaving aside the many other misstatements and mischaracterizations in your email,
you and your colleagues' repeated suggestion that our conferencing this motion has
been inadequate blinks reality. Perhaps it feels piecemeal to you because you have
not been on every call or responded to emails along with the 13+ other defense
attorneys who have participated in this process. We have been working with your
team for literally months.

We are moving on every single RFP because Defendants have asserted meritless
objections in response to every RFP and so far refused to withdraw them. You have
refused to provide ANY response for over a dozen RFPs, you have asserted
objections that you refuse to withdraw or explain while also confusingly assuring us
that you are ignoring your own objections for production purposes, you have refused
to provide even basic information about your collection efforts to support your burden
objections, and you are asserting privileges that do not exist or apply. These disputes
are ripe for court intervention.

We have been practicing in NDTX for many years also, and it is not our experience
that sharing motions before they are filed is common practice. We reaffirm our
commitment to continue the discussion after the motion is filed and hopefully narrow
the scope of disagreement for the court.

Have a great weekend,
Chris


Get Outlook for iOS

_____

**From:** LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Sent:** Friday, May 24, 2024 2:36:23 PM
**To:** Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>;
Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta
<erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed
Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge
<cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>;
Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com
<john.sullivan@the-sl-lawfirm.com>; Tom Albright <tom@stonehilton.com>; Michael Abrams

App.156

101

<michael@stonehilton.com>; Togias, Iason <ITogias@gibsondunn.com>
**Subject:** RE: X/MMFA: Meet and Confer

Alex and Chris,

Thank you for meeting with us earlier today. We wanted to touch base about where we landed and next steps.

Plaintiff informed us they intend to file a motion to compel in the coming days seeking production of certain categories of documents that are currently in dispute. As we stated on the call, and reiterate now, Defendants remain open to continuing to discuss any areas of dispute. While it is true that the parties have discussed some of these disagreements, these discussions have been piecemeal, and Defendants have made several concessions over the past weeks to help move the parties towards a mutually beneficial resolution. We are thus unsure of where the parties' disagreements currently stand or the reasons for them and, therefore, of what further concessions can be made so that the parties can resolve disputes without adding to the Court's busy docket.

Accordingly, as we discussed on the call, we request that you send us a list of the RFPs that Plaintiff intends to raise with the Court. Defendants also asked Plaintiff to send, as is typically done in the NDTX, a copy of their motion to compel ahead of filing. The purpose of this is for Defendants to have a clear understanding of what Plaintiffs believe is ripe for court intervention and Plaintiff's position on those issues to see if further agreement can be reached. Plaintiff represented that they would likely file the motion first and have any further conversations about the motion after it was filed, but that they would discuss internally to assess their willingness to send Defendants a list of disputed RFPs and/or a preemptive copy of their motion.

Defendants also clarified that they are not withholding documents based on general objections. Plaintiff asked whether Defendants can formalize that in the form of amended responses. We can commit to providing amended responses by Tuesday, May 28.

Similarly, Defendants are eager to engage meaningfully in discussions over Plaintiff's continued privilege objections. We have provided Plaintiff with several authorities supporting our position, separate and apart from what is in our responses and objections. Plaintiff has stated that they disagree with our position and that the law is different than what we argue but have not offered support for that position. We asked on the call—and reiterate our request here—for you to send any authority supporting or explaining your position. Plaintiffs indicated they are aware of authority but believe the parties are too far apart for it to make any difference, and also stated it was not their burden to provide Defendants with authority in support of their position. As we noted, Defendants cannot meaningfully assess Plaintiff's arguments to determine whether modification of our privilege objections are warranted without a fulsome understanding about Plaintiff's position. We remain willing to continue these conversations to reach a mutually beneficial conclusion.

Plaintiff also requested assurance on when Defendants would produce documents in advance of the discovery deadline. As Defendants have made clear, given Plaintiff's incredibly broad requests, Defendants have collected over 3.5 Terabytes of data to date. We have a team of staff attorneys and associates from two firms reviewing the data around the clock and have been making—and will continue to make—bi-weekly productions, as

App.157

promised. Defendants have represented repeatedly that we intend to comply with court ordered deadlines and have no intention of waiting until the end of discovery to produce documents.

We of course understand Plaintiff's desire to have documents before depositions are conducted and expert reports are due. Defendants have the same desires with respect to Plaintiffs' forthcoming document productions as well. We remain open to discussing ways to meet the parties' needs, such as by bifurcating the schedule so that expert discovery and depositions take place after all documents are exchanged or extending the case schedule deadlines. Given the expanded scope of the discovery served in this case, which we believe goes beyond what was represented at the beginning of this action, we think the Court would be amenable to such modifications. *See, e.g.*, ECF 14 at pp. 9-10 (Any request that the trial date of this case be modified must be made (a) in writing to the Court, (b) before the deadline for completion of discovery, and (c) in accordance with the United States District Court for the Northern District of Texas Civil Justice Expense and Delay Reduction Plan ¶V and Local Rule 40.1). While we understand why Plaintiff pushed for a faster discovery and case schedule than Defendants, *see, e.g.*, ECF 13 at ¶ 8 (compare Plaintiff's proposed close of discovery date of August 12 with Defendant's staggered deadlines ending February 12), we think the sheer scope of discovery in this case and the parties desire to have documents produced before depositions and expert reports take place may necessitate longer schedule. Defendants also remain open to discussing other solutions Plaintiff may have.

Defendants remain willing and eager to continue meaningfully conferring in good faith to come to mutually beneficial compromises that help serve the needs of the parties without further burdening the Court's docket with discovery-related motion practice.

Best,
Andrew

**Andrew LeGrand**
Partner

T: +1 214.698.3405 | M: +1 469.658.5686
ALeGrand@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201-2923

-----Original Appointment-----
**From:** Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>
**Sent:** Thursday, May 23, 2024 6:35 PM
**To:** Vidyarthi, Apratim; Alex Dvorscak; Ahmed, Amer S.; Abha Khanna
**Cc:** LeGrand, Andrew; Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Aria Branch; Ogale, Arjun; Chris Hilton; Judd E. Stone, II; Ari Cuenin; Bonnie Chester; Cody Coll; john.sullivan@the-sl-lawfirm.com; Tom Albright; Michael Abrams; Togias, Iason
**Subject:** X/MMFA: Meet and Confer

App.158

103

**When:** Friday, May 24, 2024 12:00 PM-12:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** https://gibsondunn.zoom.us/j/95953110450?pwd=YkxCL1U5Vko3OXIydkVTaUNPSWtUZz09

Hi there,

Apratim Vidyarthi is inviting you to a scheduled Zoom meeting.

# Join Zoom Meeting

iPhone One Tap:    US: +16465189805,,95953110450# or +16465588656,,95953110450#

Meeting URL:    https://gibsondunn.zoom.us/j/95953110450?
pwd=YkxCL1U5Vko3OXIydkVTaUNPSWtUZz09

Meeting ID:    959 5311 0450
Passcode:    030679

## Join by Telephone

For higher quality, dial a number based on your current location.

Dial:    +1 646 518 9805 US (New York)
    +1 646 558 8656 US (New York)
    +1 301 715 8592 US (Washington DC)
    +1 213 338 8477 US (Los Angeles)
    +1 346 248 7799 US (Houston)
    +1 669 219 2599 US (San Jose)
    +1 669 900 6833 US (San Jose)
    +1 720 928 9299 US (Denver)
    888 788 0099 US Toll-free
    833 548 0276 US Toll-free
    833 548 0282 US Toll-free
    833 928 4608 US Toll-free
    833 928 4609 US Toll-free
    833 928 4610 US Toll-free
    877 853 5247 US Toll-free

Meeting ID:    959 5311 0450

International numbers

## Join from a H.323/SIP room system

H.323:    162.255.37.11 (US West) OR 162.255.36.11 (US East)

Meeting ID:    959 5311 0450

App.159

| | |
|---|---|
| Passcode: | 030679 |
| SIP: | 95953110450.030679@zoomcrc.com |

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Thursday, May 23, 2024 5:29 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

We can meet and confer tomorrow at noon eastern.
Please circulate a Zoom link or dial-in.

Best,
-Alex
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Thursday, May 23, 2024 3:57 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Hi Alex,

To clarify, Defendants' counsel can be available between 12:00 pm and 5:00 pm ET tomorrow, May 24, if you are willing to negotiate ways to narrow the scope of these requests and/or provide some authority for your legal position. To the extent your concerns pertain to Defendants' RFP objections other than the claims of privilege, I want to reiterate what we explained in our previous meet-and-confer and in my May 2 email—that Defendants are not withholding any responsive documents for reasons other than privilege. We look forward to learning your availability and discussing further tomorrow.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

App.161

**106**

| | |
|---|---|
| **From:** | Ahmed, Amer S. |
| **To:** | Alex Dvorscak; Abha Khanna |
| **Cc:** | LeGrand, Andrew; Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Jacob Shelly; Chris Dodge; Daniela Lorenzo; Aria Branch; Vidyarthi, Apratim; Ogale, Arjun; Chris Hilton; Judd E. Stone, II; Ari Cuenin; Bonnie Chester; Cody Coll; john.sullivan@the-sl-lawfirm.com; Tom Albright; Michael Abrams |
| **Subject:** | RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery? |
| **Date:** | Thursday, May 23, 2024 4:08:45 PM |

Alex,

On the contrary, as the final sentence of my email made clear, we strongly feel court intervention is premature at this stage and think it would be quite useful to continue to confer because we have not exhausted all of our avenues for discussion. As I noted in my email, Plaintiff has continuously refused to provide us with any case law supporting its position and refuses to engage in any discussions about tailoring its requests to the needs of this case. This has made it impossible for us to meaningfully confer and resolve any lingering disagreements. We would welcome such a good-faith exchange of legal authority. The parties have also not "come to terms on a mutually acceptable protocol for the handling of privileged material" nor have any documents been withheld from production on any grounds. We and the parties should continue to engage in good faith discussions to resolve the issues without burdening the court's very busy docket with further motion practice.

Kind regards,

Amer


**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Thursday, May 23, 2024 3:48 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>

App.162

**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Hi Amer,

I understand from your email that you do not intend on offering a time for an additional conference. Instead, given the length of our correspondence and conferences, I assume you agree with my suggestion that the parties have already exhausted the potential for compromise and need the Court's guidance to resolve these issues.

I will note your opposition in the certificate of conference to our motion.

Best,
-Alex
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Thursday, May 23, 2024 1:36 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Hello Alex,

It is regrettable that your email mischaracterizes the parties' discussions and misstates the record.

First, in both my April 26 and May 2 correspondence—and during our May 1 meet and confer—we
asked whether X is aware of any cases that contradict our assertions of privilege. You have yet to
provide any. We have no way to deliberate over the scope of our disagreement (let alone reconsider
any objections, if necessary) if you are unable to identify any contrary legal authority. Indeed, it
would contradict the purpose of a meet-and-confer if our very first opportunity to review any cases
you have in mind is in response to a motion to compel.

In contrast to your reticence, my April 26 email identified three illustrative cases in response to your
request for caselaw supporting our position that the invocation of First Amendment privileges is not
barred in discovery disputes between private parties for want of state action. (This list supplemented
three other cases, including the Ninth Circuit's decision in *Perry v. Schwarzenegger*, that I identified
in my April 12 email.) Regardless of how the particular fact-bound discovery dispute in *Gueye v. Mike
Bloomberg 2020, Inc.*, was resolved, *Gueye* was a N.D. Tex. case involving a discovery dispute
between private parties that applied First Amendment principles derived from *Perry* and was
adjudicated without any mention of the state action concerns that you have raised. Do you
disagree? And do you have any other basis for Mr. Hilton's uncited assertion on April 24 that "the

law in the Fifth Circuit on this issue is significantly different"?

Second, you know from your participation in the May 1 conferral that Defendants have *never* indicated that they "do not intend to complete document production during the Court's discovery period." That misrepresentation is especially striking given that the conferral concluded with multiple counsel for Defendants correcting Mr. Hilton's assertion that Defendants intend to shirk their discovery obligations. We explained that a large team of attorneys is reviewing documents virtually around the clock, but—because of the extraordinary breadth of X's requests, and X's refusal to narrow the scope of any of these requests during our conferrals—we cannot guarantee when the production will be completed. (Nor have our productions to date been "small." We have adhered to the rolling biweekly production schedule that we previously indicated and have already produced nearly 5,000 pages of documents and over 100 video files. More will be forthcoming on Tuesday.) The best way for X to ensure an expeditious conclusion to document production would be to limit its requests to non-privileged information relevant to the claims and defenses at issue in this case, as the Federal Rules' proportionality standard requires.

Third, your request for a ruling on our assertions of privilege before we have logged the withholding of a single document is premature. *See, e.g.*, *United States ex rel. Eichner v. Ocwen Loan Servicing, LLC*, No. 4:19-CV-524, 2024 WL 843900, *7 (E.D. Tex. Feb. 28, 2024) (denying motion to compel as premature where parties had not yet exchanged privilege logs); *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14cv78-DCB-MTP, 2015 WL 11117899, *3 (S.D. Miss. Nov. 19, 2015) (same); *Charles v. Texas Lottery Comm'n*, A-06-CA-158 LY, 2006 WL 8445908, *2 n.1 (W.D. Tex. Nov. 1 2006) (noting "as the [Defendant] has not submitted a privilege log to Plaintiff, [] it is therefore not clear that there is presently any dispute regarding the documents claimed to be [privileged]"). Once the parties "come to terms on a mutually acceptable protocol for the handling of privileged material that the parties will memorialize in a proposed court order" (per your RFP instructions), Defendants will produce their privilege log and counsel will be available to confer about any disputes at that time. To be clear, in light of the above, we do not agree that it is "necessary to tee up these disputes for court resolution" because any such rush to court would be entirely premature.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**From:** Alex Dvorscak <alex@stonehilton.com>

App.165

**Sent:** Wednesday, May 22, 2024 1:54 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

I noticed an error in my below message—it should read: please propose a time for
a conference that can take place before 5:00 p.m. CT tomorrow, **May 23**.

Best,
-Alex
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Alex Dvorscak
**Sent:** Wednesday, May 22, 2024 12:43 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Hi Amer,

As we've previously detailed (in our email dated May 2, for example), Defendants
have raised a host of inapplicable and invalid objections to X's requests for
production that are unsupported by the Federal Rules of Civil Procedure. In
addition, although Defendants have made wide-ranging privilege assertions, those
assertions lack any support in the caselaw you provided to us on April 26. In fact,

App.166

some of the cases you cited counsel against the very privilege assertions you have made. *E.g.*, *Gueye v. Mike Bloomberg 2020 Inc.*, 2021 WL 3910341, at *2-*3 (N.D. Tex. Mar. 12, 2021) (Ray, Mag. J.)

At this juncture, it appears to us that Defendants are using these unfounded objections to stymie the timely completion of fact discovery. Indeed, Defendants have represented that they do not intend to complete document production during the Court's discovery period, and from the two small productions Defendants have made so far, we have no reason to expect otherwise absent court intervention.

For these reasons, X believes it is necessary to tee up these disputes for court resolution. We will be filing a motion to compel that requests that the Court overrule Defendants' objections and timely produce all responsive documents in Defendants' possession prior to the close of discovery. Please let us know if you would like to confer again before we file our motion or whether you believe our prior discussions have exhausted the potential for compromise. If you would like to confer, please propose a time for a conference that can take place before 5:00 p.m. CT tomorrow, **May 23**. We will otherwise presume Defendants are opposed and note as such in our motion.

We will get back to you separately regarding the protective order.

Best,
-Alex
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Wednesday, May 15, 2024 8:18 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

App.167

Alex,

We remain confused as to why you thought it appropriate to ignore wholesale our proposed
protective order edits—without even requesting a meet-and-confer to talk through them—and
unilaterally propose a new protective order. As you know, despite the existence of model protective
orders, parties are free to enter into protective orders that best suit the needs of their particular
litigation and their clients. The standard form includes a lot of language that is not relevant to the
issues being litigated in this case or to the discovery being sought. For example, documents
containing "sensitive trade secret information, or information capable of being utilized for the
preparation or prosecution of a patent application" are unlikely to be at issue. Defendants' proposed
modifications, therefore, omit language within the standard form that is not relevant to the issues
being litigated in this case and instead focuses on documents and disclosures that are pertinent
given the discovery that is already being sought. You took the same approach when it came to the
"model" ESI order.

We are also confused regarding Plaintiff's concern over marking donor information confidential. The
standard order already presumes that financial information will be confidential, and donors are, by
definition, financial contributors. What basis does X have for asserting that the personal identifying
information of non-party donors—the identities of who even the IRS regards as confidential, and
which Defendants maintain are privileged—must not only be produced, but remain presumptively
public in order for X to prosecute its case?

Defendants also do not agree that in-house counsel or an extended list of organizational employees
should get access to confidential or attorneys' eyes-only documents. These individuals would still get
access to the overwhelming majority of discovery exchanged in this case. However, given the well-
documented hostility Plaintiff and its owner have shown towards Defendants, and given the fact that
X is suing MMFA (and has threatened lawsuits) in numerous international jurisdictions with differing
discovery rules, we do not think it appropriate or necessary for individuals within X to get access to
the very limited category of confidential and AEO documents. MMFA, in turn, will not have access to
Plaintiff's most sensitive files. Moreover, if the parties identify an individual who needs access to the
information and who is not already allowed access under the protective order, the parties can
discuss releasing information on a case-by-case basis under paragraph 11(c) of the order. Given the
very limited category of documents that could be marked confidential or AEO and the ability for
parties to negotiate after the fact, we think the revised order will strike a better balance of
protecting both parties during discovery while still honoring the open and public nature of our court
system.

Attached is the protective order you sent us with our edits and some additional thoughts added on
top. Please let us know if you would like to discuss.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Monday, May 13, 2024 4:13 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]
Hi Amer,

I'm reattaching the document I sent on Friday, as it is not the form order, but
instead contains several proposed revisions in track changes.

Regarding Defendants' previously proposed revisions, we reviewed them and do
not agree that it is proper to expand the definition of confidential or attorney's
eyes only from the Court's standard order. If you have a basis for including, for
example, donor identities under the AEO designation, that was not apparent to us.
Nor did we agree with Defendants' other proposed revisions that would restrict
inhouse counsel from participating in the litigation—accordingly, they were not
included in this draft. We believe that our revised order will strike the best balance
of protection to both parties during discovery while still honoring the open and
public nature of our court system.

The revisions we added to the Court's document are only there for three
purposes:

    (1) to clarify that this order doesn't affect the presentation of evidence at

App.169

114

trial or during depositions (the transcript of which can be marked);
(2) to allow inhouse counsel for MM and X to view all potential trial
exhibits so that they can fully participate in the litigation; and
(3) to ensure that anyone who drafted/received confidential info is not
inadvertently barred from reviewing the confidential info by this order.

I am happy to set up a call to discuss the proposed revisions in more detail.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Monday, May 13, 2024 11:47 AM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Alex,

While we disagree that the time period needs to be the same given that the discovery
needs of the parties are different, we will agree to the original April 14, 2021 date.

Regarding the protective order, we are confused. You all sent us a NDTX proposed
order.  We then sent back on April 26 a redline proposing our edits (reattached for
your convenience).  Why are we now receiving a new protective order without any of
our markups?  Please coordinate with your team and advise.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, May 10, 2024 12:51 PM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>;
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Hi Amer –

We will confer with our client and get back to you regarding your deposition
requests.

Please let us know if you have a position on our suggested compromise of using
September 1, 2021 as the cutoff date for responsive documents. I'll note that in
your discovery requests you also sought documents dating back to April 14, 2021,
and so would request that any compromise be applied mutually.

I have also attached a proposed protective order that is redlined off the Court's
standard form protective order.

Best,
-Alex
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Thursday, May 9, 2024 5:28 PM

App.171

116

**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Tom Albright <tom@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Counsel:

In light of the tight discovery schedule, we thought it prudent to reach out now about scheduling depositions for various X employees, so that you have plenty of notice. Below is a list of individuals we intend to depose. Could you please let us know when in the timeframe June 17-July 25 these individuals are available to sit for depositions?

- Brett Weitz
- Elizabeth Palumbo
- Elon Musk
- Joe Benarroch
- Jonathan Phelps
- Kylie McRoberts
- Linda Yaccarino
- Matt Madrazo
- Monique Pintarelli
- Rob Hayes
- Siddharth Rao
- Yale Cohen

Thanks very much.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

App.172

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, May 3, 2024 11:46 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

**[WARNING: External Email]**

Hi Amer,

Thanks for your response. While we disagree with your many misstatements and
mischaracterizations of the parties' positions, there's no need to go through that
now. We will respond to those issues if/when needed.

Regarding the open action items on our end:
- We have a response to your number (1) below. As a compromise, we would
  accept September 1, 2021 instead of April 14, 2021. Please let us know it that
  is acceptable.
- I have attached a draft ESI order for your review. Please let me know if y'all
  agree or have any comments.
- I will also follow up with a proposed protective order shortly.

Best,
-Alex
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Thursday, May 2, 2024 7:15 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;

App.173

Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>

**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Alex,

We write to follow-up on pending action items and to respond to some of the points you raise below.

*First*, regarding the production we served on Tuesday, April 30, we can confirm that the documents on the Kiteworks platform are properly loaded and are downloading. The system also indicates that the production was downloaded on your end yesterday afternoon. We assume this means there is nothing further to do on this end. If anyone else from your team needs access to the platform, please let us know.

*Second*, as you noted in your email, during yesterday's call, you indicated that you will 1) propose a new start date for responsive documents that will be closer in time to the events in dispute than your current request for documents created as early as April 14, 2021; 2) confirm with Plaintiff what Platform account data is already in its possession, which may help resolve disputes over requests that seek such data from Defendants; and 3) follow-up with any additional caselaw regarding your position on privilege considerations. We look forward to this information.

*Third*, regarding RFP 23, we can confirm that Mr. Hananoki did not travel to Texas during the time period outlined in RFP 23 for leisure or work. Defendants therefore modify their response to RFP 23 to be (in <span style="color:red">red</span>):

Subject to, and without waiving these objections, Defendants do not possess any responsive documents because Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article. <span style="color:red">Mr. Hananoki also did not travel to Texas in any capacity during this time.</span>

We believe this amendment is sufficient to obviate any further dispute on this RFP. Please confirm.

*Fourth*, Defendants take issue with the way you characterize yesterday's meeting. For instance, you write:

"Defendants are limiting their production to a reasonable search based on their chosen search terms and custodians, rather than capturing the entire universe of potentially responsive documents." As we reiterated numerous times yesterday, this description is not accurate. Defendants are running broad searches through the 3.5 Terabytes of data we have collected that capture—to the very best of our ability—all of Plaintiff's requests as written. These searches are **not** limited by Defendants' objections and responses, save for the categories of documents potentially responsive to discrete inappropriate requests where Defendants clearly indicated in written objections/responses that they will not

App. 174

producing documents at this time. We are also manually reviewing the extensive collection you requested of audio and video files that are not amenable to search terms, which, as you can imagine, is a time-consuming process. We will produce all responsive, non-privileged documents that we identify as part of our search. For privileged documents that we withhold, we will send X a privilege log explaining what was held back and why.

This approach conforms with traditional discovery processes. The only way to capture the universe of potentially responsive documents is a reasonable search based on the scope of the request. Indeed, the only other alternative would be for Defendants to review every single document in their possession, regardless of its relationship to any of Plaintiffs' requests. Therefore, your objection to Defendants conducting a "reasonable" search is confusing, to say the least. We are not aware of any authority requiring parties to perform an *un*reasonable search. If you believe otherwise, please send us the relevant citations.

You also write that "Defendants will not tell X their search terms, custodians, or otherwise describe their search process, but indicated that they might disclose them in response to a specific ROG asking for that information." But Defendants have provided Plaintiff with primary custodian names as a courtesy, and the first time that Plaintiff even brought up search terms was during yesterday's meeting. At no point before then had Plaintiff asked for search terms, proposed search terms, or offered to negotiate search terms. And Plaintiff has not put forth any explanation for why it appears to believe that Defendants are not conducting discovery in good faith such that its choices of custodians or search terms are improper. We remain willing to answer any properly-served discovery requests, but we do not understand that Plaintiff has any right to otherwise insist on collecting more information about Defendants, their employees, or their processes.

We also disagree with Plaintiff's characterization that Defendants "will not estimate the length of time before their production will be completed" or "the contents of any given production before it occurs." Far from withholding this information, we explained that these kinds of questions cannot be answered with any reliability in advance of conducting the necessary review. We explained that most of your requests are broad and overlapping, so this is not the kind of case where we might produce documents in response to each request sequentially. Nor can we predict the total time necessary to review every document in the 3.5 Terabyte database that we have collected, especially given that so many of your requests encroach on privileged materials that will need to be studied, potentially redacted, and logged.

*Finally*, it is clear based on our communications to date that Plaintiff shows a continued unwillingness to engage in good-faith discussions on narrowing Plaintiff's many overbroad, disproportionate, and irrelevant requests. Despite Defendants' demonstrated willingness to confer and revise several of our responses to X's discovery requests in order to resolve disputes without taxing the Court's limited resources, Plaintiff has not engaged in meaningful discussions and has, to date, refused to work with Defendants to modify a single one of Plaintiff's 47 discovery requests in any way. As Defendants have noted time and time again, Defendants remain open to discussing ways to alleviate the burdens of discovery while still meeting the needs of this case. As we discussed yesterday, Plaintiff's desire both for overbroad discovery and an expedited timeline are necessarily in friction, and yet Plaintiff has refused to negotiate on either point.

Kind regards,

App.175

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Thursday, May 2, 2024 11:49 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>; Abha Khanna <akhanna@elias.law>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>;
Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>;
Aria Branch <abranch@elias.law>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun
<AOgale@gibsondunn.com>; Chris Hilton <chris@stonehilton.com>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com;
Tom Albright <tom@stonehilton.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Hi all,

Thanks for taking the time to meet with us yesterday. I believe our conference
helped clarify a lot of the parties' issues. And so, I wanted to quickly summarize
our understanding of what was discussed.

1. **General Issues:**
   - Tech issues with first production:
     - Parties will work to connect IT folks to ensure file transfer.
   - ESI Order:
     - X will get y'all a draft ESI order shortly for discussion.
   - Date Limitation:
     - X will propose a compromise date for production that is later
       than April 2021 but before April 2022.

2. **Specific Requests:**

App.176

- Request for "platform account data:"
  - Disagreement over what this request entails.
  - Defendants stated their position that they do not intend to propose anything X has access to.
  - X disagrees but will look further into this further.
- RFP 9:
  - Parties disagree on relevance, and this issue will likely require Court resolution.
- X's Request for Hananoki's travel:
  - Defendants offered to produce documents showing any travel to Texas and work travel.
  - X does not agree to any limitation but requested Defendants amend their responses to reflect that they will at least produce documents related to travel to Texas or travel for work.
- Reporter's Privilege:
  - Parties disagree on the extent of privilege, and this issue will likely require Court resolution.
  - Defendants will follow up with any additional caselaw of which they are aware.
- RFPs #46 and 47:
  - Parties disagree on relevance, and this issue will likely require Court resolution.

3. **Defendants' Production:**
- Custodians and Search terms:
  - Defendants are limiting their production to a reasonable search based on their chosen search terms and custodians, rather than capturing the entire universe of potentially responsive documents.
  - Defendants will not tell X their search terms, custodians, or otherwise describe their search process, but indicated that they might disclose them in response to a specific ROG asking for that information.
  - Defendants are not withholding any documents on a categorical basis except where explicitly stated in their responses.
- Rolling production:
  - Defendants have promised to make a rolling production of documents, hopefully on a 2-week basis.

    o X indicated its concern that all responsive documents will not be produced during the discovery period.

    o Defendants will not estimate the length of time before their production will be completed.

    o Defendants will not estimate the contents of any given production before it occurs.

    o Defendants will provide a cover letter contemporaneous with any production that describes its contents.

Please let me know if there's anything you believe I left out. Otherwise, you can look for a follow up email from us soon with that draft ESI order for discussion.

Best,
-Alex

**Alexander M. Dvorscak**
Attorney
STONE | HILTON PLLC
1115 W. Slaughter Ln.
Austin, Texas 78748
alex@stonehilton.com | (518) 772-8657
www.stonehilton.com

CONFIDENTIALITY NOTICE:
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or the work-product doctrine. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Tuesday, April 30, 2024 7:15 PM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

App.178

Sounds good - we'll look out for a calendar invitation and link from you.

**Amer S. Ahmed (he/him)**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

> On Apr 29, 2024, at 5:59 PM, Chris Hilton <chris@stonehilton.com>
> wrote:
>
> **[WARNING: External Email]**
> Yes, that works for us. Thanks.
>
> _____
>
> **From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
> **Sent:** Monday, April 29, 2024 4:37 PM
> **To:** Chris Hilton <chris@stonehilton.com>
> **Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
> <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez
> Armenta <erodriguezarmenta@elias.law>; Champion, Anne
> <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
> Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo
> <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II
> <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
> <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-
> lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom Albright
> <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale,
> Arjun <AOgale@gibsondunn.com>
> **Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?
>
> Hi Chris – How does 2pm ET on Wednesday 5/1 work on your end?  Thanks.
>
> **Amer S. Ahmed**
> Partner
>
> T: +1 212.351.2427 | M: +1 917.921.7295
> AAhmed@gibsondunn.com
>
> **GIBSON DUNN**
> Gibson, Dunn & Crutcher LLP
> 200 Park Avenue, New York, NY 10166-0193

App.179

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Sunday, April 28, 2024 10:31 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez
Armenta <erodriguezarmenta@elias.law>; Champion, Anne
<AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo
<dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-
lawfirm.com; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim
<AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Thanks for your response, Amer. In light of the Court's order on Friday and the
additional information you've provided here, we'd like to meet and confer this
week on Tuesday or Wednesday. Please let us know your availability on those
days.

Thanks,
Chris

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Friday, April 26, 2024 4:09 PM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez
Armenta <erodriguezarmenta@elias.law>; Champion, Anne
<AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo
<dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-
lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom Albright
<tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale,
Arjun <AOgale@gibsondunn.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Chris,

Thank you for responding to my email of April 12, 2024, which incorporated
proposals for resolving certain discovery issues. As we discussed during our

App.180

April 9 meet and confer and noted throughout our responses and objections, Plaintiff's 47 requests are largely over-broad, irrelevant, and disproportionate to the needs of this case. Defendants are committed to complying with the Court's scheduling order and, accordingly, remain willing and eager to discuss ways in which Plaintiff may narrow its requests to correspond to the claims being litigated, thus making the document collection and review process more expeditious—to the benefit of all parties.

At the same time, despite their position that the Court lacks jurisdiction to hear Plaintiff's claims, which are meritless in any event, Defendants have been working over the last several weeks to gather and review responsive, relevant documents and plan to begin producing documents in a matter of days, as we have already explained. As a result of Plaintiff's many expansive and intrusive requests, Defendants have collected approximately 3.5 Terabytes of data to date. Processing and reviewing this much data is, understandably, time consuming and labor intensive, and Defendants anticipate needing to continue their document collection and review efforts in the coming weeks to ensure compliance with their discovery obligations. Given the undue burden imposed by these overbroad requests, Defendants update their responses, as noted below, to object to requests for documents created before Mr. Musk purchased Twitter on April 14, 2022. Regarding your question about custodians, the names we have identified are illustrative not exhaustive and we have collected documents from appropriate custodians who were involved in the research, drafting, and editing of the challenged article. If you have concerns about specific individuals that you believe should be custodians, please provide us those names and we can confirm whether they are custodians or, as appropriate, why they are not.

Defendants have also shown their willingness to work with Plaintiff in good faith to resolve discovery disputes by, for example, agreeing to narrow their initial responses and objections to some of Plaintiff's requests, despite Plaintiff's flat-out refusal to discuss narrowing even its broadest requests in return. In the spirit of continuing to work with Plaintiff on a resolution to any discovery disputes, we further agree to modify the following requests for production as follows (additions in red):

**RFP No. 5**: Defendants agree to modify their objections and responses as follows:

1. <u>Request</u>: All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.

2. <u>Objections</u>: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" that in any way mention X, the Platform, Elon Musk, or Linda Yaccarino, even where not reasonably

App.181

related to the issues in dispute in this case. Moreover, Plaintiff's request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

3. <u>Responses</u>: ~~Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.~~ Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control from April 14, 2022 onward that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials and will not search for or produce materials under third parties' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**RFP No. 6**:

1. <u>Request</u>: All documents and communications concerning content moderation on the Platform.

2. <u>Objections</u>: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" related to any content moderation policies on the Platform and is not reasonably limited to materials relevant to the issues in dispute in this case. Moreover, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

3. <u>Responses</u>: ~~Based on the foregoing objections, Defendants will not~~

App.182

~~produce documents in response to this Request at this time.~~ Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control from April 14, 2022 onward that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials and will not search for or produce materials under third parties' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**RFP No. 10**:

1. Request: All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.

2. Objections: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll posts, comments, direct messages, and any other account data of any kind whatsoever" of various accounts, even where the information it seeks is vague, immaterial, or unrelated to the claims or defenses at issue in this case. Moreover, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive, including X account information within X Corp.'s possession.

3. Responses: ~~Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.~~ Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control from April 14, 2022 onward that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials and will not search for or produce materials under third parties' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

App.183

Regarding RFP no. 2, you continue to expand the scope of "Platform account data." Because Plaintiff owns and controls the X platform, please explain why—once Defendants identify the relevant accounts, which we are willing to do—Plaintiff would be unable (despite being better placed) to compile the relevant platform data that it seeks. We appear to have a disagreement over RFP no. 9 but are willing to continue to discuss ways in which we can reach a mutually agreeable resolution. Regarding RFP no. 23, we ask that Plaintiff to explain why any and all travel undertaken by Mr. Hananoki during the identified period (which includes the Thanksgiving holiday period)—even travel unrelated to his work on the challenged article—is relevant to the issues in this case and should be subject to discovery. Better understanding Plaintiff's position on these issues will help us determine how best to respond to Plaintiff's request and avoid a potential dispute.

Plenty of controlling and in-jurisdiction cases have recognized that use of the judicial process (as would be necessary to resolve discovery disputes concerning documents withheld on the ground of First Amendment privilege) represents state action, even in cases between private parties. *See, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 14-15 (1948); *Gueye v. Mike Bloomberg 2020 Inc.*, 2021 WL 3910341, at *2 (N.D. Tex. Mar. 12, 2021) (favorably citing *Perry* in adjudicating discovery dispute between private parties); *Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475 (S.D. Tex. 1979) (recognizing invocation of First Amendment privilege was sufficient to defeat motion to compel in suit between private parties). Given your statement that "the law in the Fifth Circuit is significantly different," please provide any authority rejecting a First Amendment privilege for state action reasons in a discovery dispute between private parties. We are happy to review any such cases and continue this discussion.

Lastly, as promised, attached are our proposed edits to the ND Texas protective order.

We look forward to your responses.

Kind regards,

Amer


**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Wednesday, April 24, 2024 11:09 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J.
<TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez
Armenta <erodriguezarmenta@elias.law>; Champion, Anne
<AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob
Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo
<dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-
lawfirm.com; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim
<AVidyarthi@gibsondunn.com>; Ogale, Arjun <AOgale@gibsondunn.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

[WARNING: External Email]

Amer,

Thank you for your email.

I appreciate you providing a partial list of custodians. We requested and had
been expecting a full custodian list, not just a selection of primary custodians.
We request that you provide complete information about all your custodians,
including their names, sources collected, and volume of data collected per
custodian. Please provide this information no later than Friday, April 26.

A significant issue that we discussed during our call was the Court's scheduling
order. In particular, I emphasized that Defendants have an obligation to
produce documents and provide discovery under the Court's current schedule,
regardless of your belief in the merits of your arguments. Although we look
forward to you actually beginning production on April 30, that promise alone is
not sufficient to address our concerns. I requested that Defendants explain how
meeting the current schedule is possible given the delays in production thus
far. I assume that your failure to address the topic means that you are not going
to provide any additional information on this topic beyond your bare assurance
on our call that you will comply with the Court's deadlines. If you have any
additional information to provide in this regard, please also provide it no later
than Friday, April 26.

In response to the other specific issues we discussed that you touch on in your
email:

- We appreciate your modification of your objection to RFP #2. However,
  we believe that your proposal still does not capture all relevant
  information. In particular, we mentioned on the phone that we are also
  interested in emails or other communications from the platform, including
  automatically generated emails and communications. You should collect
  and produce any data or information whatsoever related to any accounts

App.185

130

on the Platform that were involved in the creation of the November 16, 2023 Article.

- It appears that we have a disagreement with respect to RFP #9.
- While we appreciate your modification of your response to RFP #23, we believe that your limited response is unwarranted. All of Mr. Hananoki's travel during that very limited time period is relevant, and you should produce all of the information that we have requested. Accordingly, it appears that we have a disagreement with respect to this request.
- Thank you for the additional authority regarding your First Amendment privilege objections. As you know, the law in the Fifth Circuit on this issue is significantly different. If you have any Fifth Circuit cases that we may have overlooked, please let us know no later than Friday, April 26. Until you bring something else to our attention, it appears that we have a disagreement on this issue.

While we appreciate your following up on those issues, there was much more that we discussed on our call. There any many other RFPs where you have indicated that you will not produce any documents whatsoever based on your objections. We discussed those RFPs in detail, and you have not changed your position regarding most of them. Accordingly, it appears that we have a disagreement regarding those RFPs.

In light of the above and our conversation on April 9, we believe that at least some of these issues are ripe for litigation. If you believe that additional conversations would be productive in narrowing the disagreements between us, you have my number and I am happy to discuss these issues any time.

Thanks,
Chris

Christopher D. Hilton
Stone | Hilton
P.O. Box 150112
Austin, TX 78715
(737) 465-3897

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Friday, April 12, 2024 7:58 PM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo

App.186

131

<dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II
<judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester
<Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom Albright
<tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>; Ogale,
Arjun <AOgale@gibsondunn.com>
**Subject:** RE: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Chris,

We write to follow up on the various topics we discussed during our meet and
confer on Tuesday, April 9, 2024. As we discussed, while we continue to
maintain—as the Reply brief filed this evening in support of our Rule 12 Motion
makes clear—that there is no basis for the Court to exercise jurisdiction over
Defendants, the Northern District of Texas is an improper venue, the alleged
claims are meritless, and discovery under these special circumstances is improper,
Defendants have nonetheless been working over the last several weeks to gather
and review responsive, relevant documents.

In that process, we have retained a document collection and document hosting and
review vendor, identified primary custodians with documents that are relevant to
X's requests for production (including Angelo Carusone, Ben Dimiero, Cynthia
Padera, and Eric Hananoki), and collected thousands of gigabytes of data across
various mediums including emails, cloud storage platforms, calendars, chatrooms,
Media Matters's website, computer files, notes applications, and social media
accounts. We are continuing our collection of files within these and other
mediums, but given the volume and breadth of the requests, we expect this
collection to be an ongoing process over the next several weeks. We are also in
the process of reviewing materials that we have collected so far for
responsiveness and privilege.

Without waiving any objections, and subject to a ruling on our pending motion to
stay discovery if one issues in the interim, Defendants plan to begin producing
responsive, non-privileged documents on a rolling basis no later than April 30,
2024.

We would also like to clarify our position on the three discovery requests that we
agreed to follow up on during our meet and confer (changes in red):

**RFP No. 2**. Defendants agree to modify their objections and responses to RFP

App.187

No. 2 as follows:

1. <u>Request</u>: All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

2. <u>Objection</u>: The Request does not define the term "Platform account data," and Defendants interpret the term as used here to ask for usernames, posts, chats, and comments of accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. To the extent Plaintiff means something else by the term, Defendants object to this Request as vague and ambiguous. Defendants further object to this Request because it seeks sensitive information protected by the First Amendment privilege and reporter's privilege, including by asking Defendants to divulge protected source material. *See, e.g.*, *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (recognizing "the first amendment shields a reporter from being required to disclose the identity of persons who have imparted information . . . in confidence."); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) (recognizing "the close nexus between the freedoms of speech and assembly" protected party from disclosure of associational documents). Defendants also object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to the extent that this Request seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive, such as information about accounts on X or sources and links embedded within the November 16, 2023 article.

3. <u>Responses</u>: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**RFP No. 9**. Defendants stand on their objections and responses to RFP no. 9. X Corp failed to explain during our meet and confer how an overbroad request seeking "[a]ll communications with X's advertisers about advertising with or financially supporting You" is at all relevant to the issues and claims being litigated in this case. If X Corp is willing to narrow the scope of its requests, Defendants are willing to consider revising our objections and responses.

App.188

**RFP No. 23**. Defendants agree to modify their objections and responses to RFP No. 23 as follows:

1. <u>Request</u>: All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023

2. <u>Objection</u>: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications related to or reflecting any travel" by Mr. Hananoki during the specified time period, even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

3. <u>Responses</u>: ~~Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.~~ Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search regarding documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023 undertaken in relation to Mr. Hananoki's research or drafting of the November 16, 2023 article. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

Also as discussed during our meet and confer, we would like to reiterate our position on the First Amendment privilege and its application in this action. The First Amendment privilege protects parties from compelled disclosures, *regardless* of whether the party seeking discovery is a private party or a state actor. *See, e.g.*, *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011) (holding, in a dispute between trade groups, "that the First Amendment privilege applies to the *district court's discovery order*, which requires trade groups and their members *to disclose to a private party* their communications regarding [lobbying] strategy") (emphasis added); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61, 1165 (9th Cir. 2010) (applying First Amendment privilege in dispute between two private parties); *see also Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385–86 (2021).

Note that we are still awaiting X Corp's proposed revisions to the protective order (the Attorneys' Eyes Only provision), which it alluded to during our meet and confer, so that we may consider those revisions. We are also awaiting X Corp's draft ESI protocol.

Defendants remain willing and open to continuing discovery discussions, and view this as an ongoing conversation as both parties attempt to balance our various obligations and competing interests. Please let us know if you would like to discuss.

Kind regards,

Amer

**Amer S. Ahmed**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Tuesday, April 9, 2024 10:32 AM
**To:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Tom Albright <tom@stonehilton.com>; Vidyarthi, Apratim <AVidyarthi@gibsondunn.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

App.190

**[WARNING: External Email]**

Chris Hilton is inviting you to a scheduled Zoom meeting.


Topic: Chris Hilton's Zoom Meeting

Time: Apr 9, 2024 10:00 AM Central Time (US and Canada)


Join Zoom Meeting

https://zoom.us/j/93717820766?
pwd=SVVRRzJUT21sTVdQNXQ1VW0rNlVEZz09


Meeting ID: 937 1782 0766

Passcode: 309640


---


One tap mobile

+13462487799,,93717820766#,,,,*309640# US (Houston)

+17193594580,,93717820766#,,,,*309640# US


---


Dial by your location

• +1 346 248 7799 US (Houston)

• +1 719 359 4580 US

• +1 253 205 0468 US

• +1 253 215 8782 US (Tacoma)

App.191

136

• +1 669 444 9171 US

• +1 669 900 9128 US (San Jose)

• +1 309 205 3325 US

• +1 312 626 6799 US (Chicago)

• +1 360 209 5623 US

• +1 386 347 5053 US

• +1 507 473 4847 US

• +1 564 217 2000 US

• +1 646 558 8656 US (New York)

• +1 646 931 3860 US

• +1 689 278 1000 US

• +1 301 715 8592 US (Washington DC)

• +1 305 224 1968 US


Meeting ID: 937 1782 0766

Passcode: 309640


Find your local number: https://zoom.us/u/ac4POFCg4l

---

**From:** Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Sent:** Tuesday, April 9, 2024 9:10 AM
**To:** Chris Hilton <chris@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Jacob Shelly <jshelly@elias.law>; Chris Dodge <cdodge@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Aria Branch <abranch@elias.law>; Judd E. Stone, II <judd@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Bonnie Chester <Bonnie@stonehilton.com>; Cody Coll <cody@stonehilton.com>;

App.192

john.sullivan@the-sl-lawfirm.com <john.sullivan@the-sl-lawfirm.com>; Tom
Albright <tom@stonehilton.com>; Vidyarthi, Apratim
<AVidyarthi@gibsondunn.com>
**Subject:** Re: X/MMFA: Plaintiff Position on Motion to Stay Discovery?

Chris - we are still waiting on dial in information for our 11am call. Please
advise.

**Amer S. Ahmed (he/him)**
Partner

T: +1 212.351.2427 | M: +1 917.921.7295
AAhmed@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193

> On Apr 8, 2024, at 11:10 AM, Chris Hilton
> <chris@stonehilton.com> wrote:

> **[WARNING: External Email]**

> Amer,

> Tomorrow at 11 AM works. Attached is the NTDX default protective
> order and third party agreement. We'll endeavor to provide a
> proposed ESI order.

> Thanks,

> Chris

This message may contain confidential and privileged information for the sole use of
the intended recipient. Any review, disclosure, distribution by others or forwarding
without express permission is strictly prohibited. If it has been sent to you in error,
please reply to advise the sender of the error and then immediately delete this

message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this

App.194

message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error,

App.195

please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

App.196

# Exhibit 6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:23-cv-1175-O** |
| **MEDIA MATTERS FOR AMERICA,** **et al.,** | |
| **Defendants.** | |

**DECLARATION OF ANDREW LEGRAND**
**IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO**
**COMPEL PRODUCTION OF DOCUMENTS**

I, Andrew LeGrand, declare as follows:

1.      I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.      I am a Partner in the Dallas office of Gibson, Dunn & Crutcher LLP.

3.      I represent Media Matters for America ("Media Matters") in the above-captioned suit.

**Conferral between the parties**

4.      The parties met and conferred on Plaintiff's various discovery requests on April 9, May 1, May 24, and May 27, and engaged in various email exchanges during this process as well. Defs.' App. at 96–97, 103–05, 109–10, 136–38.

5.      On May 23, Counsel for Plaintiff stated that it intended to move to compel documents. After some corresponding, counsel for Defendants requested that the parties confer on

App.198

**143**

May 24 to resolve or better understand the basis of Plaintiff's concerns and the disputed issues.

6.      During and after the May 24 meeting, Defendants requested a list of the specific requests on which Plaintiff intended to seek judicial intervention. Plaintiff did not provide that list verbally or in writing prior to filing its motion to compel later that day.

7.      Following the Court's May 25 order, counsel for Plaintiff requested an additional meeting. The parties conferred on Monday, May 27.

**ESI Protocol, Protective Order, and Privileged-Documents Protocol**

8.      As part of our January 5 Rule 12(f) conference, the parties discussed entering into a mutually agreeable ESI protocol and agreement on how to handle privileged documents.

9.      In Plaintiff's February 5 request for production, these agreements are referenced in instructions 4 and 5, and Plaintiff noted that each agreement would be "memorialize[d] in a proposed court order."

10.      On March 29, almost three weeks after Defendants served their responses and objections to Plaintiff's February 5 requests for production and almost three months after the parties' discovery conference, Plaintiff's counsel requested to confer with Defendants about their responses; about the ESI protocol; and about a proposed order regarding the handling and protection of privileged or trial-preparation materials. The parties agreed to meet on April 9.

11.      On April 3, counsel for Defendants, Amer Ahmed, asked Plaintiff to send Defendants any proposed changes it had to the Northern District of Texas protective order model and model ESI protocol ahead of their April 9 meeting "to move things along."

12.      On April 8, Mr. Hilton circulated the standard Northern District of Texas protective order model as a PDF, without any annotations from Plaintiff. He also noted that Plaintiff would "endeavor to provide a proposed ESI order."

13.     On April 12, Mr. Ahmed sent an email recapping the parties' discussion on April 9. In this email, Mr. Ahmed wrote that Defendants were "still awaiting X Corp's proposed revisions to the protective order (the Attorneys' Eyes Only provision), which it alluded to during our meet and confer, so that we may consider those revisions. We are also awaiting X Corp's draft ESI protocol."

14.     On April 24, Plaintiff responded to Mr. Ahmed's April 12 email, but did not mention the ESI protocol, the protective order, or any privilege documents agreement.

15.     On April 26, without having received any proposed revisions from Plaintiff, Mr. Ahmed circulated Defendants' proposed revisions to the standard protective order.

16.     After the parties May 1 meet-and-confer, Plaintiff's counsel promised to provide a draft ESI order shortly.

17.     On May 3, Plaintiff's counsel circulated a proposed ESI protocol and noted that they would "follow up with a proposed protective order shortly."

18.     On May 10, Plaintiff's counsel circulated proposed edits to the standard protective order that, with no explanation, completely disregarded Defendants' April 26 suggestions to the same document.

19.     Defendants followed up on May 13, re-attaching Defendants' proposed edits of April 26 with a request for an explanation why those edits had been disregarded.  That same day, Plaintiff responded, re-attaching its May 10 protective order edits, and explaining that the reason it had disregarded Defendants' proposals was because it did not agree with them.

20.     Defendants replied to Plaintiff on May 15 providing both proposed revisions to Plaintiff's protective order and accompanying explanations for the changes.

21.     On May 22, Defendant also provided Plaintiff with edits to its proposed ESI

protocol.

22.     Plaintiff did not reply to Defendant's proposed ESI protocol or protective order until May 28, after it filed its motion to compel. To date, the parties have not entered into any ESI, protective order, or privileged document agreement.

23.     Defendants have made three document productions despite their concerns over not having formal protocols governing discovery in this case.

**Discovery efforts**

24.     Defendants have undertaken a diligent effort to collect and review documents in light of this Court's scheduling order.

25.     Defendants have collected over 5.5 Terabytes of data to date across many relevant custodians and are still in the process of collecting additional documents. Defendants have produced over 2,000 documents consisting of nearly 8,000 pages and over 2,000 videos comprising approximately 564 gigabytes of data.

26.     Defendants have engaged a team of 14 staff attorneys and 33 associates across two law firms to conduct document review.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on:   May 29, 2024                          


 */s/ Andrew LeGrand*                              
Andrew LeGrand


App.201

**146**

# Doc. 65

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-01175-O** |
| | § | |
| **MEDIA MATTERS FOR AMERICA, et al.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court are the Motion to Compel and brief in support filed by Plaintiff (ECF Nos. 59-60); the Response and appendix in support filed by Defendants (ECF Nos. 62-63); and Plaintiff's Reply (ECF No. 64). After reviewing the motion, brief in support, response, and reply, the Court finds the following Requests for Production ("RFP") remain in dispute based on the briefings: 2, 7, 8, 9, 11, 13, 14, 15, 16, 17, 18, 19, 21, 23, 24, 25, 26, 27, 28, 29, 31, 35, 37, 38, 40, 43, 46, 47. After due consideration the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**. Accordingly, the Court orders that:

To the extent Plaintiff contests any of Defendants amended discovery responses, it should first raise those issues in a subsequent good faith conferral with Defendants, and if necessary, the Court can resolve any remaining dispute following this effort. Based on what is currently before the Court and the parties' conferral process to date, it appears the parties have demonstrated they are capable of resolving discovery disputes through meaningful conferrals as required in Federal Court. *See Dondi Properties Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) (emphasizing that "in general the rules dealing with discovery in federal cases are to be self-

executing"). The Court therefore **DENIES** at this time Plaintiff's Motion as to these RFPs. The Court further **ORDERS** parties to confer to resolve issues related to Defendants' amended discovery responses to these RFPs, establish a privileged-documents protocol, and an ESI protocol no later than **June 14, 2024**.

Because there is no privileged-documents protocol in place and the Defendants have not logged any responsive documents as privileged, the Court **DEFERS** ruling on RFP Nos. 17-18, 21, and 35 and any First Amendment privilege concerns until such a protocol is established and responsive documents have been identified. The Court **ORDERS** Defendants to log any responsive documents as privileged and deliver to Plaintiff no later than **June 14, 2024**.

The Court **OVERRULES in part and SUSTAINS in part** Defendants' objections to RFP Nos. 13-16, 23-24, 37-38, and 46.

RFP Nos. 13-16: Plaintiff's requests for financial discovery are relevant but must be limited. As an initial matter, Media Matters's IRS Form 990s alone are not enough. Eric Hananoki and Angelo Carusone are also defendants that Plaintiff seeks punitive damages against. Thus, tax returns and bank statements for all three Defendants are relevant. However, the temporal period for which Defendants must produce documents are limited to the relevant time periods at issue: 2023 and 2024. To the extent that it has not already, Defendants **SHALL PROVIDE** all documents in its possession and control responsive to these RFPs and the Courts limitations.

RFP Nos. 23-24, and 37-38: Plaintiff's requests for information about Defendants' actions taken to write and publish the November 2023 articles and commit the other alleged tortious acts are relevant. However, the RFPs must be limited to communications, calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023, and must be related to X Corp, Elon Musk, or the November 2023 articles.

App.204

To the extent that it has not already, Defendants **SHALL PROVIDE** all documents in its possession and control responsive to these RFPs and the Courts limitations.

RFP No. 46: Plaintiff's requests for information about Media Matters's personnel matters is relevant. However, the RFP must be limited to instances where Defendants themselves have been accused of—or investigated—antisemitism at Media Matters. To the extent that it has not already, Defendants **SHALL PROVIDE** all documents in its possession and control responsive to these RFPs and the Courts limitations.

The parties **SHALL COMPLY** with this Order. Specifically: (1) Defendants must deliver all documents in its possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46 to Plaintiff; (2) Defendants must create and deliver a privilege log of any documents being withheld from production to Plaintiff. After the parties meaningfully confer, Defendants must notify the Court whether any dispute regarding the assertion of First Amendment privileges remain; (3) the parties must confer regarding Defendants' amended discovery responses to the remaining RFPs; and (4) the parties must establish a privileged-documents protocol and an ESI protocol **on or before June 14, 2024**. Also by that date, Defendants shall promptly file proof of delivery and compliance.

    **SO ORDERED** on this **June 6, 2024.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

App.205

# Doc. 66

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Case No. 4:23-cv-01175-O |
| | § | |
| **MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § | |
| *Defendants.* | § | |

---

## JOINT MOTION TO AMEND SCHEDULING ORDER

---

Plaintiff X Corp. and Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone jointly submit this motion to amend the scheduling order that the Court entered on January 22, 2024. ECF No. 14. As discussed below, to ensure that the parties can fulfill their discovery obligations and prepare this case for trial, the parties respectfully request an extension of the deadlines in the current scheduling order.

## ARGUMENT AND AUTHORITIES

Rule 16 of the Federal Rules of Civil Procedure provides that parties may request the Court to amend the scheduling order for good cause shown. Fed. R. Civ. P. 16(b)(4); *see also S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) ("The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'") (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)); ECF No. 14 ¶ 12 ("Conclusory statements will usually not suffice to show good cause, even if the motion is agreed or unopposed.").

App.207

Good cause exists under these circumstances. The scope of written discovery and the volume of document review and collection is significantly exceeding that which the parties anticipated at the time they conferred for the Joint Report regarding the schedule (ECF No. 13) and pursuant to Rule 26(f). As the Court has recognized, "the parties have demonstrated they are capable of resolving discovery disputes through meaningful conferrals," ECF No. 65 at 1, but much work remains to be done in discovery.

Defendants submit that they have so far collected over 5.5 terabytes of potentially responsive data, which they are diligently reviewing and producing. *See* ECF No. 62-1 (LeGrand Decl.).[1] But even with the dozens of attorneys Defendants have employed to review documents, *id.*, Defendants have approximately 4.3 terabytes of data comprising millions of documents and thousands of videos awaiting review.

Plaintiff submits that it is likewise gathering and reviewing a significant number of documents as part of its discovery obligations, and will need to continue to do so.[2]

Furthermore, both Parties each intend to take numerous depositions before this case will be ready for dispositive motion practice and trial, and those depositions will not be efficient or productive in the absence of still-pending document discovery. Likewise, both Parties anticipate offering expert testimony to assist the Court and jury in adjudicating the issues in this case. Those expert reports will not be effective or productive in the absence of still-pending document discovery. Given the unexpected volume of discovery and the resultant delay in deposition

---

[1] Defendants will need to undertake additional document collection in light of the Court's Order regarding Plaintiff's Motion to Compel, ECF No. 65.
[2] Indeed, the parties have already agreed to extend X's deadline to respond to Defendants' outstanding discovery requests.

App.208

scheduling and expert witness discovery, neither side can reasonably meet the existing discovery deadlines.

Separately, good cause also exists for the requested extension because discovery in this case has raised disputes and privileges that have already required litigation and that, despite the parties' diligence, will certainly require additional time to finally resolve.  As the Court is aware, the parties already have had a discovery dispute requiring this Court's adjudication. While the Court has begun to resolve that motion to compel, *see* ECF No. 65, the parties have further conferred and agree that the requested extension of deadlines is necessary to allow each side time to comply with the Court's order and better position them to address and resolve any additional discovery disputes. Accordingly, as part of the revised schedule, the parties have proposed a modest modification of the deadlines contained in the Court's recent order. ECF No. 65 at 2-3.[3]

Given the volume and complexity of ongoing document discovery, as well as the anticipated depositions and expert discovery, the Parties believe that the proposed extension of the remaining deadlines constitutes a reasonable and efficient schedule that will permit the Parties the additional time required to complete discovery in as "self-executing" a manner as possible under the circumstances of this case. *Cf. Dondi Properties Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988). The Parties also request, as part of their proposed order, an interim deadline denoting the end of written discovery on January 29, 2025, two weeks before initial expert designations are due under the revised schedule. The requested schedule—which the parties agree to work towards with the utmost diligence—will serve the interests of justice by allowing the

---

[3] The parties had already begun discussions on a proposed extension before the Court's June 6, 2024 Order on the Motion to Compel. Both parties have been working diligently in good faith and will continue to do so to ensure timely discovery productions and responses. Accordingly, the Parties jointly propose to allow additional time for the review of documents for potential privilege assertions and production of privilege logs.

App.209

parties to take depositions and make expert disclosures with the benefit of a complete factual record, which will in turn allow the Court and the jury to better understand and adjudicate the Parties' disputes.

Finally, the Parties anticipate that further modification of the schedule in this Matter will not be necessary, thereby maximally preserving the Court's ability to "efficiently and expeditiously resolve cases." ECF No. 54 at 12.

## CONCLUSION

The parties respectfully request that the Court grant their joint motion to modify the scheduling order and enter the revised schedule contained in the attached proposed order.

Dated: June 10, 2024                                Respectfully submitted,

*/s/ Christopher D. Hilton*                          */s/ Andrew LeGrand*
Christopher D. Hilton                                Andrew LeGrand
Counsel for Plaintiff                                Counsel for Defendants


*/s/ Adam Mehes*                                     */s/ Angelo Carusone*
Adam Mehes                                           Angelo Carusone
On behalf of X Corp.                                 On Behalf of Media Matters for
                                                     America


                                                     */s/ Eric Hananoki*
                                                     Eric Hananoki


                                                     */s/ Angelo Carusone*
                                                     Angelo Carusone

4

App.210

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

App.211

# Doc. 69

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-01175-O** |
| | § | |
| **MEDIA MATTERS FOR AMERICA, et al.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

### ORDER

Before the Court is the parties' Joint Motion to Amend Scheduling Order (the "Motion") (ECF No. 66), filed June 10, 2024. The parties request an extension of all remaining deadlines, including the trial date. ECF No. 66 at 3. Recognizing the volume and complexity of ongoing document discovery, as well as the anticipated depositions and expert discovery, the Court finds good cause to **GRANT in part** the Motion to the extent possible based on the Court's calendar. However, the Court **DENIES** the request to extend deadlines in this case, including the trial date, by a full eight months absent a sufficient showing of good cause for such an extension.[1] Accordingly, the Court **MODIFIES** the schedule in this matter as follows:

| ESI Protocol, Protective Order, and Privilege Log Agreement | **June 14, 2024** |
|---|---|
| Deadline for Defendants to Provide First Privilege Log and Associated Documents | **June 28, 2024** |
| Initial Expert Designation & Report | ~~June 24, 2024~~ **January 14, 2025** |

---

[1] As previously explained, this Court's docket—which is one of the busiest in the entire country—cannot presently accommodate for a change of the requested trial date. *See* ECF No. 54. Such a postponement would be at odds with the Court's obligation to ensure this case moves at a diligent pace toward final resolution. *See* FED. R. CIV. P. 1 (identifying the duty to "secure the just, *speedy*, and inexpensive determination of every action and proceeding" (emphasis added)).

App.213

| Responsive Expert Designation & Report | ~~July 22, 2024~~ **January 28, 2025** |
|---|---|
| Rebuttal Expert Designation | **February 7, 2025** |
| Expert Objections | ~~October 14, 2024~~ **March 3, 2025** |
| Dispositive Motions | ~~August 5, 2024~~ **December 9, 2024** |
| Mediation | ~~July 10, 2024~~ **November 27, 2024** |
| Completion of Discovery | ~~July 29, 2024~~ **December 31, 2024** |
| Pretrial Disclosures and Objections | ~~November 27, 2024~~ **February 26, 2025** Objections due 7 days thereafter |
| Pretrial Materials (pretrial order, witness lists, and exhibit lists) | ~~December 12, 2024~~ **March 13, 2025** |
| Jury Charge[2] | ~~December 9, 2024~~ **March 3, 2025** |
| Motions in Limine[3] | ~~December 9, 2024~~ **March 10, 2025** |
| Exchange of Exhibits | ~~December 23, 2024~~ **March 24, 2025** |
| Settlement Conference | ~~December 23, 2024~~ **March 24, 2025**[4] |
| Pretrial Conference | To be set if necessary. |
| Trial Date | ~~January 6, 2025~~ **April 7, 2025** |

 

**SO ORDERED** on this **13th day** of **June, 2024**.

_Reed O'Connor_
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[2] All deadlines surrounding the jury charge (as described in the January 22, 2024 Scheduling Order) are adjusted accordingly based on the revised deadline for filing the Agreed Charge with Court on March 3, 2025.

[3] Responses to motions in limine (as limited by the January 22, 2024 Scheduling Order) are due within fourteen days of the filing of such a motion.

[4] The Joint Settlement Report (as described in the January 22, 2024 Scheduling Order) **SHALL** be jointly filed no later than **two** days after the settlement conference.

# Doc. 72

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 4:23-cv-01175-O** |
| | § | |
| MEDIA MATTERS FOR AMERICA, et al., | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court is the parties' Stipulation on Protective Order (ECF No. 70), filed June 13, 2024. This Court routinely declines to convert an agreement of the parties into a court order. This practice does not leave the parties without recourse.

First, during the discovery stage, the parties may agree to any confidentiality or discovery-related contract among themselves without devoting judicial resources to the matter. *See Davis v. City of Fort Worth*, No. 4:14-cv-491-A, 2014 WL 12940678, at \*3, \*3 n.3 (N.D. Tex. July 3, 2014).

Second, at the adjudicative stage, a party may move for leave to file specific documents under seal with a memorandum outlining the good cause for the document to be sealed from public. The motion must be supported by legal authorities and relevant facts verified by oath or declaration of a person with personal knowledge. *See United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) ("Public confidence in our judicial system cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public

App.216

view." (cleaned up)); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420–21 (5th Cir. Mar. 5, 2021) ("[W]hen materials enter the court record, the standard for shielding records from public view is far more arduous."). Accordingly, the Court **DENIES** the parties' motion.

      **SO ORDERED** this **14th day** of **June, 2024**.

Reed O'Connor

**UNITED STATES DISTRICT JUDGE**

App.217

# Doc. 84

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| *Defendants.* | § § | |

---

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL
### PRODUCTION OF DONOR-RELATED DOCUMENTS

---

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
ALEXANDER M. DVORSCAK
**STONE | HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

JOHN C. SULLIVAN
**S|L LAW PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

*COUNSEL FOR PLAINTIFF*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

ARGUMENT AND AUTHORITIES ....................................................................... 4

    I.   Defendants waived any arguable First Amendment protection by refusing to provide a privilege log regarding donor information .................................................................. 4

       A.  Defendants' existing assertions of privilege are insufficient .................................. 4

       B.  Defendants failed to submit a timely privilege log ................................................ 6

       C.  Defendants have refused to comply with the Court's order .................................. 8

       D.  Defendants failed to put forward evidence substantiating their First Amendment claim .............................................................................................. 8

    II.   Defendants' assertion of First Amendment privileges fails on the merits. .............. 10

       A.  The First Amendment does not bar non-state actor discovery. ......................... 10

       B.  The First Amendment does not protect Defendants' asserted interests. .............. 14

CONCLUSION ...................................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021) ...................................................................................... 10, 13, 15

*Buckley v. Valeo,* 424 U.S. 1 (1976) ...................................................................... 9, 15

*Burch v. Regents of the University of Cal.,*
    No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313 (E.D. Cal. Aug. 30, 2005) ................. 7, 8

*Cardenas v. Dorel Juvenile Grp., Inc.,*
    231 F.R.D. 616 (D. Kan. 2005) ...................................................................... 5

*Crow v. ProPetro Servs., Inc.,*
    No. 7:15-cv-00149, 2016 WL 9776368 (N.D. Tex. June 6, 2016) ........................... 6

*Cyber Promotions, Inc. v. Am. Online, Inc.,*
    948 F. Supp. 436 (E.D. Pa. 1996) .................................................................. 13

*Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.,*
    No. 4:20-CV-04192-LLP, 2021 WL 3862131 (D.S.D. Aug. 30, 2021) ...................... 13

*Edwards v. Habib,*
    397 F.2d 687 (D.C. Cir. 1968) ...................................................................... 12

*Eureka Fin. Corp. v. Hartford Accident & Indem. Co.,*
    136 F.R.D. 179 (E.D. Cal. 1991) .................................................................... 5

*Fla. State Conf. of Branches & Youth Units of NAACP v. Lee,*
    568 F. Supp. 3d 1301 (S.D. Fla. 2021) ........................................................... 16

*Grandbouche v. Clancy,*
    825 F.2d 1463 (10th Cir. 1987) .................................................................... 13

*Gueye v. Mike Bloomberg 2020 Inc.,*
    No. 4:20-cv-00487-BP, 2021 WL 3910341 (N.D. Tex. Mar. 12, 2021) ................... 13

*Hardy v. Gissendaner,*
    508 F.2d 1207 (5th Cir. 1975) ................................................................ 11, 12

*Heller v. City of Dallas,*
    303 F.R.D. 466 (N.D. Tex. 2014) .................................................................. 6

*Henderson v. Union Pac. R.R. Co.,*
    No. CV 15-0669, 2016 WL 5936889 (W.D. La. Oct. 11, 2016) ........................... 5

*Henry v. First Nat. Bank of Clarksdale,*
    444 F.2d 1300 (5th Cir. 1971) .................................................................... 11

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.,*
    565 U.S. 171 (2012) .................................................................................. 17

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
    515 U.S. 557 (1995) .................................................................................. 10

App.221

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
    641 F.3d 470 (10th Cir. 2011) ............................................................. 12

*In re Santa Fe Int'l Corp.*,
    272 F.3d 705 (5th Cir. 2001) ................................................................. 9

*In re Selcraig*,
    705 F.2d 789 (5th Cir. 1983) ............................................................... 15

*In re United States*,
    864 F.2d 1153 (5th Cir. 1989) ............................................................... 5

*Janvey v. Alguire*,
    No. 3:09-CV-724-N-BQ, 2018 WL 11362638 (N.D. Tex. Oct. 17, 2018) ............... 8

*Johnston v. Transocean Offshore Deepwater Drilling, Inc.*,
    No. CV 18-491, 2019 WL 1558040 (E.D. La. Apr. 10, 2019) ................................ 7

*Jordan v. Aries Marine Corp.*,
    No. CIV.A. 14-377, 2015 WL 151336 (E.D. La. Jan. 12, 2015) ............................. 9

*Manhattan Community Access Corp. v. Halleck*,
    587 U.S. 802 (2019) ............................................................................ 13

*Marx v. Kelly, Hart & Hallman, P.C.*,
    929 F.2d 8 (1st Cir. 1991) ...................................................................... 5

*Mize v. McGraw-Hill, Inc.*,
    82 F.R.D. 475 (S.D. Tex. 1979) ............................................................. 13

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ............................................................. 10, 11, 15, 16

*Naoko Ohno v. Yuko Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ................................................................. 12

*OrchestrateHR, Inc. v. Trombetta*,
    No. 3:13-cv-2110-P, 2015 WL 11120526 (N.D. Tex. July 15, 2015) ....................... 7

*Perry v. Schwarzenegger*,
    591 F.3d 1147 (9th Cir. 2010) ............................................................... 11

*Rogge v. Bandera Falls Prop. Owner's Ass'n*,
    No. CV SA-07-CA-996-OLG, 2009 WL 10713559 (W.D. Tex. Aug. 11, 2009) ............ 7

*Samsung Elecs. Am., Inc. v. Yang Kun Chung*,
    321 F.R.D. 250 (N.D. Tex. 2017) ............................................................. 5

*Sharp Corp. v. Hisense USA Corp.*,
    292 F. Supp. 3d 157 (D.D.C. 2017) ......................................................... 12

*Shelley v. Kraemer*,
    334 U.S. 1 (1948) ......................................................................... 10, 12

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ............................................................. 16, 17

App.222

*Williams v. Parker*,
    843 F.3d 617 (5th Cir. 2016) .................................................................. 9

**Rules**

Fed. R. Civ. P. 34(b) ............................................................................... 5

Fed. R. Civ. P. 34(b)(1)(B) ...................................................................... 5

Fed. R. Civ. P. 34(b)(2)(A) ...................................................................... 5

**Other Authorities**

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,
    Federal Practice and Procedure § 2213 ................................................. 5

App.223

## INTRODUCTION

X seeks information about Media Matters' largest donors—who they are, where they reside, and what Media Matters has told them—because that information is essential to X's prosecution of its claims. As a threshold matter, documents showing that Media Matters solicited donors in Texas, and in this District specifically, would refute Media Matters' position that the Court lacks jurisdiction and that this Court is an improper venue to resolve X's claims. And on the merits, Media Matters' solicitation of donations from groups or persons hostile to X would supply potential evidence of malice and provide a basis for a factfinder to impose punitive damages—X is entitled to know what Media Matters has said to its donors about its crusade against the platform to get them to fund its defamatory "journalism."

On June 6, 2024, this Court issued an order requiring Defendants to log any documents regarding donors that have been withheld pursuant to a claim of privilege. ECF No. 65 at 2. Defendants have refused to do so. Instead, flouting the Court's order, Defendants have asserted, generally and vaguely, a First Amendment "privilege" and other objections that purportedly immunize them from even searching for, let alone logging, documents responsive to X's requests for production that call for donor information. Defendants' position is flatly inconsistent with this Court's so-ordered directive.

At the time of the Court's order, it deferred ruling on the substance of whether the First Amendment actually protected Defendants' donor information. For multiple reasons, it does not. Simply put, Defendants' position that the First Amendment shields their donor information from disclosure cannot be reconciled with First Amendment jurisprudence stretching back decades. The First Amendment privilege Defendants appear to claim only applies against state actors—and it is undisputed that X is a privately held corporation. Moreover, and independently, Defendants have waived any purported privilege through their actions three times over: by asserting their First

App.224

Amendment privilege only in a vague and general manner, failing to produce a privilege log, and failing to comply with the Court's order requiring them to do so. All parties agree that this issue presents a legal dispute ripe for judicial resolution. X therefore requests that the Court overrule Defendants' First Amendment privilege assertions regarding donor information and compel Defendants to produce the withheld documents.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 2023, Media Matters for America published a series of articles falsely representing that major advertisers' content was organically being "placed" next to fringe content on X's popular social media platform. Am. Compl. ¶¶ 30-38, 46-54. As a result of that tortious conduct, significant advertisers withdrew from X's platform. *Id.* ¶¶ 30-38, 61-64. Because of the ongoing damage caused by Media Matters' lies, X brought claims against Media Matters, its president, Angelo Carusone, and the articles' author, Eric Hananoki, for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. *Id.* ¶¶ 65-88.

In February 2024, X began serving requests for production. X's first and second sets of requests for production contain four requests targeted towards Media Matters' donors:

- No. 17: information sufficient to identify Media Matters' donors.

- No. 18: communications reflecting solicitations of donations.

- No. 21: documents reflecting the funding sources for Media Matters' defamatory articles about X.

- No. 35: communications with donors regarding X and the matters at issue in this lawsuit.

Appx. 11, 26. In their first set of responses and objections to these requests, Defendants objected on the basis of purported "First Amendment speech and associational rights" protecting donor

information from disclosure and refused to produce any responsive documents. Appx. 47-49, 51-52, 69-70 (Initial Resps. & Objs. to RFP Nos. 17, 18, 21, 35). In their second, amended responses and objections Defendants removed their objection to "First Amendment speech and associational rights." Appx. 128-30, 201-06 (Second Amended Resps. & Objs. to RFP Nos. 17, 18, 21, 35). Instead, Defendants objected because the requests were purportedly intended to harass (they are not) and otherwise failed to sufficiently or particularly state their First Amendment objections. *Id.*

Several months passed while X attempted to confer with Defendants regarding the production of documents responsive to these four requests. When these talks proved fruitless, X sought an order compelling production of documents responsive to these requests, among other issues. ECF Nos. 59, 60. On June 6, 2024, the Court granted X's motion in part and denied it in part. ECF No. 65. As relevant here, the Court deferred ruling on Defendants' "First Amendment privilege concerns" until a privileged-documents protocol was established and "responsive documents have been identified." *Id.* at 2. The Court ordered "Defendants to log any responsive documents as privileged and deliver to Plaintiff." *Id.*

The parties subsequently reached agreement on a privileged-documents protocol. ECF No. 68. But in contravention of this Court's instruction, Defendants insist that they "are not separately searching for donor-related documents" and therefore have refused to log documents that are responsive to X's requests for production seeking those documents. Appx. 179. Defendants' failure to produce donor information, which they are required to disclose for the reasons set forth below, is ripe for judicial resolution.[*] Appx. 174.

---

[*] The parties continue to confer regarding the other privilege issues that X raised in its motion to compel. X reserves all rights to seek court intervention on other issues if agreements cannot be reached.

App.226

## ARGUMENT AND AUTHORITIES

The Court should overrule Defendants' privilege objection with respect to donor information. Defendants waived any First Amendment privilege by: asserting it in a vague and general manner, failing to provide their objections in a privilege log, and repudiating the Court's order requiring Defendants to provide a privilege log. Defendants' vague, generalized, and waived First Amendment privilege objection also fails on the merits in any event. As X has argued, and as Defendants fail to refute, such First Amendment objections are inapplicable here, where there is no indication of state action. And regardless of the state-action issue, Defendants' claims of First Amendment privileges are also meritless with respect to this specific donor information. The Court should thus overrule Defendants' privilege assertions and compel Defendants to provide responsive documents.

**I.     Defendants waived any arguable First Amendment protection by refusing to provide a privilege log regarding donor information.**

Defendants have waived any arguable First Amendment privilege concerning donor information. Defendants' bare assertion in its discovery responses of a generalized First Amendment privilege over donor information was insufficient to preserve a privilege claim. If there were any doubt that Defendants' assertions were insufficient, this Court removed them when it explicitly ordered Defendants to provide a privilege log of any documents over which they assert a claim of privilege—and Defendants did not. Defendants' failure to produce a privilege log is reason enough to find waiver. Doubly so given Defendants' refusal to obey this Court's order, which provides a further, independent basis for waiver.

**A.     Defendants' existing assertions of privilege are insufficient.**

Defendants' vague and general objections in its discovery responses that a First Amendment privilege somehow protects Defendants' donor information are insufficient to

App.227

preserve their asserted privilege. Rule 34 of the Federal Rules of Civil Procedure requires parties to timely serve objections and assertions of privilege in response to requests for production. Fed. R. Civ. P. 34(b)(2)(A). "[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 283 (N.D. Tex. 2017) (Horan, M.J.) (quoting *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989)); *see also Henderson v. Union Pac. R.R. Co.*, No. CV 15-0669, 2016 WL 5936889, at *2 (W.D. La. Oct. 11, 2016) ("[T]he Fifth Circuit has found that the waiver provision applies equally to Rule 34." (citing *In re United States*, 864 F.2d at 1156); *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) (upholding waiver for failure to file objections timely); *Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 618 (D. Kan. 2005) (finding waiver from untimely assertion of attorney-client privilege).

It is likewise axiomatic that a general objection to the production of privileged documents does not constitute compliance with Rule 34(b). *See, e.g.*, *Marx*, 929 F.2d at 12; *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991). Rule 34(b) requires the reasons for any discovery objections to be explicitly stated with supporting detail. Indeed, the 2015 amendment to Rule 34(b)(1)(B) specifically require a claim of privilege to be expressly made with a description of the documents withheld and the objection to be stated "with specificity." 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2213. Such detailed procedures would be pointless without consequences for failing to follow them, and courts should not reward a party that has "persisted in its stonewalling." *Eureka Fin. Corp.*, 136 F.R.D. at 185; *see also* WRIGHT & MILLER, *supra* (providing support for the view that failure to make an explicit, timely objection based on privilege waives the objection). Courts in this District have long warned parties that "general, generic objections violate the Federal Rules

App.228

and are invalid." *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (Horan, M.J.). A defendant's "boilerplate objections" will be deemed "waived." *Crow v. ProPetro Servs., Inc.* No. 7:15-cv-00149, 2016 WL 9776368, at *4 (N.D. Tex. June 6, 2016) (Counts, M.J.).

Here, instead of describing the documents withheld and the objections to production with specificity, Defendants relied only on a vague and generalized assertion that production would chill "First Amendment speech and associational rights," which is insufficient without more. Appx. 47-49, 51-52, 69-70 (Initial Resps. & Objs. to RFP Nos. 17, 18, 21, 35). Defendants' bare reference to the "First Amendment" is insufficiently particularized because it could theoretically encompass a wide variety of information and several constitutional rights—including free-speech or free-press rights of journalists, or free-association rights of organizations. *See, e.g.*, ECF No. 64 at 3-6. Worse, the Defendants asserted this objection only in their first set of interrogatory responses and objections. Appx. 146, 161. Defendants' Second Amended Responses and Objections—*i.e.*, the operative set of objections—objects mainly on the basis of purported harassment (there is none), and does not sufficiently or particularly include a First Amendment objection at all. Appx. 128-30, 201-06 (Second Amended Resps. & Objs. to RFP Nos. 17, 18, 21, 35). That alone constitutes waiver.

### B. Defendants failed to submit a timely privilege log.

Consistent with the above, the Court has already determined that Defendants' cursory, boilerplate objections regarding donor information were insufficient to assert a First Amendment privilege. ECF No. 65 at 2. Accordingly, it correctly ordered Defendants to produce a privilege log as a result. *Id.* Defendants did not produce a privilege log and, by failing to do so, further waived their objections.

App.229

Where a court declines to find waiver, it must, at a minimum, require the opposing party

to "produce a proper privilege log." *OrchestrateHR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2015

WL 11120526, at *9 (N.D. Tex. July 15, 2015) (Horan, M.J.). But when a defendant "fail[s] to

provide a privilege log" and "fail[s] to properly substantiate [its] objections by submitting evidence

necessary to sustain its burden of proof to [its] these objections," privilege is also waived. *Johnston*

*v. Transocean Offshore Deepwater Drilling, Inc.*, No. CV 18-491, 2019 WL 1558040, at *2 (E.D.

La. Apr. 10, 2019); *see also Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. CV SA-07-CA-

996-OLG, 2009 WL 10713559, at *3 (W.D. Tex. Aug. 11, 2009) (stating that "[f]ailure to provide

a privilege log" supporting generalized or catch-all privilege objections waives a privilege claim.).

For instance, in *Burch v. Regents of the University of California*, No. CIV. S-04-0038 WBS GGH,

2005 WL 6377313 (E.D. Cal. Aug. 30, 2005), the court found privilege objections raised in a

privilege log sufficient only if the log is "submitted in a timely manner" and with "supporting

affidavits or other competent evidence to prove the applicability of asserted privileges." *Id.* at *1.

Absent "mitigating circumstances," a privilege log submitted "approximately six months after

Plaintiffs served their first set of document requests" was insufficient to preserve the privilege. *Id.*

at *2 (emphasis omitted). Here, Defendants have failed to provide the court-ordered privilege log

and accordingly, Defendants' assertion of privilege is waived. *See Johnston*, 2019 WL 1558040,

at *2. Defendants have, at most, asserted a vague privilege claim based on "First Amendment

speech and associational rights" without specifying the particular documents to which the privilege

claim applies, which they must do. *See* Appx. Appx. 47-49, 51-52, 69-70 (Initial Resps. & Objs.

to RFP Nos. 17, 18, 21, 35). More than six months have passed since X issued its first discovery

requests, and Defendants have failed—indeed, refused—to identify and log responsive documents

App.230

withheld on privileged grounds, and no "mitigating circumstances," *Burch*, 2005 WL 6377313, at *2, excuse Defendants' failure to provide a court-ordered privilege log.

### C.     Defendants have refused to comply with the Court's order.

Defendants' failure to search for and log donor-related documents they claim are privileged on First Amendment grounds is all the more egregious because it contravenes the Court's order on X's first motion to compel. In its June 6, 2024 Order, this Court provided a clear instruction: For Request for Production Nos. 17, 18, 21, and 35 (each of which seeks documents and communications concerning Media Matters' donors and donations), "[t]he Court **ORDERS** Defendants to log any responsive documents as privileged." ECF No. 65 at 2 (emphasis in original). Defendants failed to do so. Indeed, Defendants have flouted the Court's directive and asserted a generalized First Amendment associational privilege as a basis for refusing to search for responsive documents altogether. *See* Appx. 176 (email from A. Khanna dated July 30, 2024). If Defendants took issue with the Court's order, the proper course would have been to move for reconsideration. Defendants did not. They simply refused to comply with this Court's directive to log responsive documents withheld on the basis of an asserted First Amendment privilege for donor information. Accordingly, Defendants' privilege objection is waived for this reason as well. *See, e.g.*, *Janvey v. Alguire*, No. 3:09-CV-724-N-BQ, 2018 WL 11362638, at *6 (N.D. Tex. Oct. 17, 2018) (Bryant, M.J.) (observing that a finding of waiver is especially warranted when a party opposing discovery has acted with "unjustified delay, inexcusable conduct, or bad faith").

### D.     Defendants failed to put forward evidence substantiating their First Amendment claim.

Even assuming Defendants were allowed to disregard this Court's order and their obligation to submit a privilege log (they were not), Defendants were required to, but have not, provided the requisite supporting evidence to support their objection. "A party asserting a privilege

App.231

exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). A party cannot rely only on a "bare assertion" that their First Amendment rights had been violated; they must "explain how, precisely, their rights were curtailed." *Williams v. Parker*, 843 F.3d 617, 622-23 (5th Cir. 2016). Indeed, a "proper substantiation of privilege . . . imposes an *evidentiary* burden, and the party asserting such objections must *prove* that each document it has withheld was privileged." *Jordan v. Aries Marine Corp.*, No. CIV.A. 14-377, 2015 WL 151336, at *3 (E.D. La. Jan. 12, 2015). The "party resisting discovery by asserting any privilege bears the burden of proof sufficient to substantiate its privilege claim and cannot rely merely on a blanket assertion of privilege." *Id.* "A lawyer's argument . . . is *not* evidence and is insufficient as a matter of proof to establish *fact*." *Id.* (emphasis in original).

Defendants have not provided "specific evidence of past or present harassment" due to "associational ties" with Media Matters, "or of harassment directed against the organization itself." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976). At most, Defendants cite to generalized statements from non-party Elon Musk concerning Media Matters that betray Defendants' actual (but misguided) reason for withholding donor information. *See* Appx. 128-30, 201-06 (Second Amended Resps. & Objs. to RFP Nos. 17, 18, 21, 35). According to Defendants, Musk's statements concerning Media Matters' funding sources reflect an effort to use that information against Media Matters. *See* ECF No. 62 at 10-11. But Defendants merely reference statements that Musk would file this lawsuit "against Media Matters and ALL those who colluded in this fraudulent attack" and "pursue not just the organization, but anyone funding that organization." *Id.* at 10-11 nn. 7-8. Defendants show nothing more than that X seeks to prosecute those responsible for the torts at issue in this case and obtain the necessary information—which can support jurisdiction and venue and provide evidence of malice—to prosecute its claims in this litigation. That alone cannot constitute a colorable First

– 9 –

App.232

Amendment objection. Moreover, if there were any doubt on that score, it is resolved by the fact that X has already entered into a confidentiality agreement with Media Matters that renders any such donor information limited to attorneys' eyes only. ECF No. 70 at 2. Defendants make no argument—and offer no evidence—that X's counsel would not abide by their obligations under the confidentiality agreement or that they would misuse any confidential donor information. For this reason as well, Defendants' efforts to preclude discovery into Defendants' donor information should fail.

## II.     Defendants' assertion of First Amendment privileges fails on the merits.

Defendants' withholding of responsive documents under any First Amendment theory is also substantively improper. The First Amendment would not apply here given that the requisite state action is missing. And in all cases, the First Amendment cannot justify withholding of the donor information at issue here. Thus, insofar as the Court deferred ruling on Defendants' assertion of a First Amendment privilege, it should now overrule any such objection with respect to the information at issue in Request for Production Nos. 17, 18, 21 and 35.

### A.     The First Amendment does not bar non-state actor discovery.

Defendants' First Amendment privilege objections fail for the reasons stated by X in its initial motion to compel, on which the Court has deferred ruling. ECF No. 65 at 2. As X has previously explained, ECF No. 60 at 16-17, ECF No. 64 at 5-6, the First Amendment applies only where a defendant asserts a privilege claim against ***governmental actors***. The "guarantees of free speech and equal protection guard only against encroachment by the government and 'erec[t] no shield against merely private conduct.'" *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos*., 515 U.S. 557, 566 (1995) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). Defendants thus cannot rely on cases like *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958), and *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 610-11 (2021), each of which

App.233

involved obvious state action. And the Fifth Circuit has repudiated the notion that merely invoking the judicial process constitutes state action. *See, e.g.*, *Hardy v. Gissendaner*, 508 F.2d 1207, 1210-11 (5th Cir. 1975); *see also Henry v. First Nat. Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971) ("[T]here is no 'state action' to be found in the mere filing of a private civil tort action in state court."). Were it otherwise, any civil lawsuit could be said to trigger state action, which would swallow the restriction altogether.

It is a bedrock constitutional principle that the First Amendment protections Media Matters purports to claim apply only against government actors. The underlying reason for those protections likewise has no application here where X is not a state actor. Media Matters has not even attempted to show that "compelled disclosure of . . . membership is likely to affect adversely the ability of [the organization] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *NAACP*, 357 U.S. at 462-63. For good reason: X has no state power to shutter Defendants or their speech. Defendants have argued for a different result under *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010), because the parties seeking discovery in that case were private actors. Yet the governmental action in that case was unmistakable, as litigants included government officials and the suit concerned a direct challenge to state law enacted by voters.

While it is plain that filing a lawsuit does not invoke state action, *see supra* pp. 14-17 it is equally clear that this Court compelling discovery cannot provide the relevant state action. Otherwise, *everyone* would enjoy a privilege against discovery in any civil case on speech/association grounds against any party. For instance, in the analogous context of "First Amendment challenges to speech-restrictive provisions in private agreements or contracts," the "domestic judicial enforcement of terms that could not be enacted by the government has not

App.234

ordinarily been considered state action." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 998-1000 (9th Cir. 2013). "If, for constitutional purposes, every private right were transformed into governmental action by the mere fact of court enforcement of it, the distinction between private and governmental action would be obliterated." *Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157, 176 (D.D.C. 2017) (quoting *Edwards v. Habib*, 397 F.2d 687, 691 (D.C. Cir. 1968)).

Defendants concede, as they must, the First Amendment would not apply without governmental action. *See* ECF No. 62 at 5. Defendants also cannot argue that X itself is a state actor. X is a privately held corporation. Defendants' authorities do not suggest otherwise. Accordingly, the First Amendment does not apply.

Faced with this prohibitive bar to the First Amendment's application, Defendants have invoked inapposite authority. Relying on *Shelley*, Defendants have argued that "the action of 'courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of' the Constitution's state action requirements." ECF No. 62 at 6 (quoting 334 U.S. at 14-15). But the Fifth Circuit has rejected the notion that merely invoking the judicial process constitutes state action. *E.g.*, *Hardy*, 508 F.2d at 1210-11. It is no answer, as Defendants suggest, that this Fifth Circuit authority arose outside the context of a "First Amendment privilege or discovery disputes." ECF No. 62 at 8. After all, *Shelley* itself was an Equal Protection case, not a First Amendment case or a discovery dispute. Given that Fifth Circuit precedent already rejects Defendants' attempt to extend *Shelley* beyond the Equal Protection context, that should end the matter. *See Hardy*, 508 F.2d at 1210-11.

Defendants' reliance on non-binding, out-of-district authority is likewise unavailing. Defendants have cited only one circuit-court holding, *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470, 481 (10th Cir. 2011), for the proposition that the First

App.235

Amendment applies to discovery orders in cases between private parties. ECF No. 62 at 5. But that case relied on *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987), a case against *government agents* that merely stated in dicta that a court order "compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny." *Grandbouche* is thus distinguishable and, in any event, its dicta has rightly been called into doubt since "it has the effect of creating government action every time a magistrate simply signs, and a trial judge enforces, a discovery order." *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 445 (E.D. Pa. 1996). Other courts have rejected reliance on the First Amendment where "the part[ies] seeking the discovery" were "private parties, 'not police, law enforcement, or any other type of Government entity.'" *Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., Inc.*, No. 4:20-CV-04192-LLP, 2021 WL 3862131, at *2 (D.S.D. Aug. 30, 2021) (citation omitted). That reasoning follows the admonishment that "[t]he First Amendment constrains *governmental actors*." *Id.* (emphasis in original) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019)). So the Court should reject any suggestion that courts "uniformly" flout the state-action requirement by granting discovery requests. ECF No. 62 at 9.

As X has argued, in one of Defendants' own authorities, the court actually *denied* an assertion of privilege by rejecting essentially the same argument advanced by Defendants here. *Gueye v. Mike Bloomberg 2020 Inc.*, No. 4:20-cv-00487-BP, 2021 WL 3910341, *2-3 (N.D. Tex. Mar. 12, 2021) (Ray, M.J.). And the other merely applies an ostensible *reporter*'s privilege in civil cases by reference to criminal grand-jury proceedings (where there is obvious state action). *See Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475, 476 (S.D. Tex. 1979). Defendants have argued that "[d]onor identities are extremely sensitive in ways virtually certain to implicate privilege." ECF No. 62 at 11 (citing *Bonta*, 594 U.S. at 616-17). But, as noted above, *Bonta* involved a state

attorney general enforcing state disclosure requirements. *See* 594 U.S. at 601-02. Here, X is of course a private party, and it seeks donor information not because it is required by state disclosure requirements, but because it is relevant to its legal claims.

In any event, the authority cited by Defendants at most supports a qualified privilege and a case-by-case analysis of the disputed materials, which X readily overcomes as discussed below and in previous briefing. *See* ECF No. 64 at 3-4. Unlike the movant in *Mize*, X has diligently sought discovery on highly relevant material central to X's claims—only to be hampered by Defendants. 82 F.R.D. at 478. X has requested information regarding Media Matters' donors and its finances for obvious, relevant, proportionate reasons: (1) to see how Defendants have availed themselves of Texas; (2) to see how Defendants funded their tortious conduct; and (3) to see if they are profiting or seeking to improve their financial condition from their disparagement. At a minimum, these factors are relevant to establish jurisdiction, compensatory damages, and punitive damages, and the parties' confidentiality order—agreed to by Defendants after extensive negotiations—ensures that the information will not be misused. Ultimately, Defendants offer no authority that a private party must be denied donor information on First Amendment grounds without some government action or disclosure requirement.

**B.    The First Amendment does not protect Defendants' asserted interests.**

It is clear that the First Amendment privilege does not apply here because X is not a state actor. Even if it were (it is not), the privilege Defendants invoke does not protect the donor information Defendants seek to withhold. As an initial matter, it is not clear what constitutional theory (free speech, free press rights of journalists, or free association rights of organizations) Defendants' bare reference to the "First Amendment" is meant to invoke, *see, e.g.*, ECF No. 64 at 3-6, but Defendants' claim fails on the merits no matter what the theory.

App.237

With respect to Defendants' alleged journalistic activities, the First Amendment claim fails. Defendants have suggested that there is "no material distinction" between First Amendment protections for reporters and other First Amendment protections. ECF No. 62 at 8. But the Fifth Circuit has recognized only a *qualified* privilege against having to divulge a confidential source's *identity*. *In re Selcraig*, 705 F.2d 789, 792-93 (5th Cir. 1983). Any reliance on that principle here is a red herring: This First Amendment protection of identity applies to *reporters*' confidential sources, which is not the same thing as identifying a *donor*. Indeed, Defendants do not invoke a need to protect any source's identity from disclosure. Thus, any asserted First Amendment privilege on the basis that Defendants engaged in ostensibly journalistic activities must be rejected.

With respect to a First Amendment associational right, Defendants' claim also fails on the merits. The asserted associational privilege protects against compelled disclosure that would adversely affect an organization by "induc[ing] members to withdraw . . . and dissuading others from joining because of fear of exposure." *NAACP*, 357 U.S. at 463. The party seeking to avoid disclosure must demonstrate a "reasonable probability that the compelled disclosure" will "subject them to threats, harassment, or reprisals from either Government officials or private parties." *Buckley*, 424 U.S. at 74.

Here, Defendants do not assert a comparable infringement of an associational privilege. Simply put, Defendants disclosure of donor information would subject anyone to similar "threats, harassment, or reprisals." *See id.* Defendants fail to explain why disclosure would be "virtually certain to implicate privilege," ECF No. 62 at 11 (citing *Bonta*, 594 U.S. 595, 616-17), given that this case does not involve mandatory disclosure of donor information "to the State" as in *Bonta*, 594 U.S. at 616. As explained above, the donor information would solely be used to prosecute X's claims. *See supra* pp. 8-10. Defendants have alternatively compared themselves to the NAACP

App.238

facing possible dissolution by Alabama's attempt to obtain "membership lists" in the Civil Rights Era, ECF No. 62 at 6 (quoting *NAACP*, 357 U.S. at 460), and vaguely invoked unknown "burden[s]" on Defendants' "donors[] and other affiliates," ECF No. 62 at 9 n.5. But Media Matters cannot plausibly compare its tortious conduct to people combatting state-enforced segregation, for whom "compelled disclosure of . . . membership is likely to affect adversely the ability of [the NAACP] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *NAACP*, 357 U.S. at 462-63. Such egregious revisionism lends no help to Media Matters.

Moreover, Defendants fail to show that disclosure would jeopardize associational rights by exposing any specific views held by Media Matters' donors. Because the discovery requests regarding donor identities "do not seek any internal or confidential communications that reflect its members' private views," Defendants cannot justify their blanket privilege assertion. *Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021). As noted above, the parties have already agreed to designate such information "attorney's eyes only," and any additional concerns about specific documents could be addressed by "seek[ing] a protective order designating those documents as confidential." *Id.*

Defendants fare no better by arguing that disclosure would require Media Matters "'to turn over *to a public policy opponent* its internal communications' and other sensitive documents." ECF No. 62 at 9 n.5 (quoting *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018)). Media Matters' donor information would not come within any privilege recognized by the Supreme Court or the Fifth Circuit. Defendants have cited the Fifth Circuit's decision in *Whole Woman's Health* as precedent supposedly foreclosing "discovery orders that force private parties" from disclosing such information 'to a public policy opponent.'" ECF No. 62 at 9 n.5 (quoting 896

– 16 –

App.239

F.3d at 373). But the Fifth Circuit in *Whole Woman's Health* instructed that the purely *internal* communications of a *religious organization* may be protected in limited factual circumstances. 896 F.3d at 372. And even then, the intrusion must be so severe as to threaten the groups' ability to "maintain their internal organizational autonomy," given the attendant ecclesiastical prerogatives for the church organization at issue in that case. *Id.* at 374. There, the panel also noted that the party resisting discovery had "already cooperated extensively in discovery in a way that minimizes any adverse impact on the plaintiffs' ability" to conduct necessary cross-examination. *Id.* at 374.

Here, Media Matters is readily distinguishable from religious groups at issue in *Whole Woman's Health*. Defendants hold themselves out as journalists, not a religious group with self-governance rights that might be jeopardized by public disclosure. As the Fifth Circuit explained, it is because "religious bodies" must be "free to govern themselves in accordance with their own beliefs" that the Constitution affords a "structural protection" for the "autonomy of religious groups." *Id.* at 373 (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 199-200 (2012) (Alito, J., concurring)). Defendants also seek to avoid discovery into matters related to its donors altogether, which sweeps far more broadly than any religious associational privilege discussed in *Whole Woman's Health*. Media Matters cannot claim a categorical First Amendment privilege—let alone in this context, where the location of donors, persons from whom Media Matters solicited information, and individuals contacted regarding Media Matters' "reporting" are facts relevant to both the jurisdictional issues that Defendants themselves have placed at issue, as well as to the Defendants' actual malice, which is an element of Plaintiff's claim. The First Amendment does not protect the disclosure of such information during discovery in civil litigation between private parties.

App.240

## CONCLUSION

X respectfully requests that the Court overrule Defendants' First Amendment privilege objections regarding donor information and order Defendants to promptly produce all materials responsive to X's requests for production.

Dated: August 30, 2024

Respectfully submitted,

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Michael R. Abrams
Texas Bar No. 24087072
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

App.241

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2024, a copy of this document was served on all counsel of record through the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

<u>*/s/ Alexander M. Dvorscak*</u>
Alexander M. Dvorscak

App.242

# Doc. 85

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § § | |
| *Defendants.* | § § | |

## **APPENDIX**

1.  20240205    Plaintiff X's First Set of Requests for Production to Media Matters

2.  20240329    Plaintiff X's Second Set of Requests for Production to Media Matters

3.  20240311    Defendants' Responses and Objections to Plaintiff's First Set of Requests for Production

4.  20240429    Defendants' Responses and Objections to Plaintiff's Second Requests for Production

5.  20240429    Defendants' Amended Responses and Objections to Plaintiff's First Set of Requests for Production

6.  20240528    Defendants' Responses and Objections to Plaintiff's Second Requests for Production

7.  20240719    Defendants' Responses and Objections to Plaintiff's First Interrogatories

8.  20240802    Email re Defendants' Fifth Production

9.  20240528    Defendants' Amended Responses and Objections to Plaintiff's First Set of Requests for Production

App.244

TAB 1

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**X CORP.,**

            Plaintiff,

        vs.                                          Case No. 4:23-cv-01175-O

**MEDIA MATTERS FOR AMERICA**, et al.

            Defendants.

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff X. Corp. hereby serves this First Set of Requests for Production on each of the Defendants, Media Matters for America and Eric Hananoki, by and through their counsel of record, on February 5, 2024, via email pursuant to an agreement for electronic service between counsel. Each Defendant is hereby independently obligated to respond to these requests and produce the documents described below in accordance with the Instructions and Definitions.

You are reminded that you must respond in writing within 30 days of this date. Production is to be made at the offices of Stone Hilton PLLC, 1115 W. Slaughter Ln., Austin, TX 78715, or via such means as counsel for the parties may agree.

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com


John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com


*Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that this document was served on counsel for Defendants via email on

February 5, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Christopher D. Hilton*
Christopher D. Hilton

App.247

Appx. 4

## DEFINITIONS

In reading and interpreting these requests for production and the accompanying instructions, the following definitions shall apply:

1.      "X" or "Plaintiff" shall mean the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc.

2.      "Defendant," "You," and "Your" shall mean the Defendants in this Matter, Media Matters for America (also referred to as "Media Matters") and Eric Hananoki (also referred to as "Hananoki"), either conjunctively or disjunctively as needed to bring within the scope of these requests any materials that might otherwise be excluded from their scope. "Defendant," "You," and "Your" also refers to, as applicable, each Defendant's board of directors ("Board"), employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of any Defendant, as well as all persons who have acted or purport to have acted on any Defendant's behalf.

3.      "Matter" shall refer to this above-captioned litigation, *X Corp. v. Media Matters for America et al.*, No. 4:23-cv-01175-O.

4.      "Material," "document," "information," "data," and any other similar words describing categories of things that may be subject to production in response to these requests, shall be given the broadest possible interpretation provided by law, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. Each of these words shall also include without limitation handwritten notes, data in specialized databases or document repositories, and data or information received from journalistic sources. Each of these

words shall also include without limitation any "communications" (regardless of whether "communications" is separately specified), meaning any transmission of any information via any means whatsoever, including without limitation emails, phone logs, voicemails, text messages, chat messages (such as Zoom, Slack, Microsoft Teams, or Google Meet), Signal messages, WhatsApp messages, notes of conversations, or recordings of conversations.

5.    "Concerning," "regarding," "related to," and any other similar phrases signify any connection, direct or indirect, between the requested material and the stated topic. Such phrases describing the subject matter of a request shall be given the broadest possible interpretation in order to bring within the scope of these requests any materials that might otherwise be excluded from their scope.

6.    "Identify," or a request for an "identity," when used with respect to an individual or an entity, means to provide the name of the individual or entity, the current street address for the individual or the main office of such entity (or, if such information is unavailable, any available information or data regarding the individual or entity's location), the telephone number and email address for the individual or entity, and the name and title of the individual responsible for operations of any entity.

7.    The "Platform" shall refer to the social media website x.com and twitter.com, and the X app and Twitter app, and shall include but not be limited to the website's or app's features, functions, users, and content.

8.    The "November 16, 2023 Article" shall refer to the article written by Eric Hananoki and originally published on November 16, 2023, at or around 10:05 AM EST, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content," available as of February 4, 2024 at

4

App.249

https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle, including all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto.

9.    The "Website" shall refer to the Media Matters for America website and all of its pages, available at https://www.mediamatters.org/.

## INSTRUCTIONS

Pursuant to Federal Rule of Civil Procedure 34, You are hereby instructed to respond to these requests for production as follows:

1.       Respond to each request for production separately by listing the materials and by describing them as defined above. If the material is numbered or labeled for production, in each response provide both the information that identifies the material and the material's number or label. You must produce all of the materials in your possession, custody, or control as well as any materials in the possession, custody, or control of Your departments, officers, directors, employees, agents, servants, attorneys, or representatives of any kind whatsoever, or any other person or entity from whom you have the right to obtain documents and information.

2.       To the extent that You object to a request for production, You must state the objection with particularity, providing specific grounds for the objection, and You must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part that is objectionable, and You must respond in full to the part that is unobjectionable.

3.       Produce documents and tangible things in the forms as they are kept in the ordinary course of business, except that documents may be numbered or labeled during the production process. Every effort should be made to maintain document unitization from whatever source the documents are collected.

4.       Electronically stored information (ESI) should be produced in accordance with generally accepted ESI standards, and all the information and metadata necessary for loading Your production into Relativity or a similar document management database. No metadata should be altered or destroyed during Your collection or production of documents. Counsel for the parties

have previously agreed to come to terms on a mutually acceptable set of ESI protocols that the parties will memorialize in a proposed court order, and Your production shall be governed by that order.

5.     For any materials that You assert are privileged, protected, or otherwise except from discovery for any reason, You are instructed to provide an appropriate privilege log. Counsel for the parties previously agreed to come to terms on a mutually acceptable protocol for the handling of privileged material that the parties will memorialize in a proposed court order, and Your production shall be governed by that order. Any nonprivileged information within a document that can be produced, must be produced, with redactions over the privileged information. If You claim that any materials are not privilege or otherwise exempt from disclosure but should nonetheless be kept confidential, You are instructed to alert counsel of that fact prior to the deadline for a response to these requests so that the parties can evaluate the need for a confidentiality and protective order in this matter.

6.     For any materials that You claim no longer exist, have been destroyed, or cannot be located, provide the following: (a) a statement identifying the material; (b) a statement of how and when the material ceased to exist or when it could no longer be located; (c) the reasons for the material's nonexistence or loss; (d) the identity, address, and job title of each person having knowledge about the nonexistence or loss of the material; and (e) a statement identifying any other materials evidencing the nonexistence or loss of the material or any facts about the nonexistence or loss.

7.     These requests for production must be construed as broadly as possible, giving words their most expansive and inclusive interpretation, such that the requests should be construed

with a meaning that brings materials within the request's scope rather than with a meaning that excludes materials from the request's scope.

8.    The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, wherever needed in order to bring within the scope of these requests any materials that might otherwise be excluded from their scope.

9.    The words "and" and "or" shall each be construed either conjunctively or disjunctively as needed to bring within the scope of these requests any materials that might otherwise be excluded from their scope.

10.    Unless otherwise stated, the responsive "time period" for these requests is April 14, 2021, to the present. These requests are continuing in nature, and You have an obligation to amend, supplement, or correct Your responses and Your productions in accordance with Federal Rule of Civil Procedure 26(e).

App.253

## REQUESTS FOR PRODUCTION

1.      All versions of the November 16, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

2.      All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

3.      All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article.

4.      All audio and video recordings of You discussing or referencing in any way the November 16, 2023 Article, including but not limited to documents reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

5.      All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.

6.      All documents and communications concerning content moderation on the Platform.

App.254

Appx. 11

7.      All documents and communications concerning advertising on the Platform, including but not limited to documents and communications concerning any particular advertiser or potential advertiser on the Platform.

8.      All communications with X's advertisers concerning the Platform, including but not limited to communications regarding their decision to advertise on the Platform.

9.      All communications with X's advertisers about advertising with or financially supporting You.

10.     All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.

11.     All communications with appointed or elected public officials, candidates for public office, candidate campaign committees, political party committees, PACs, 501(c)(4) groups, and any other political actors or political operatives.

12.     All IRS Form 990s for Media Matters, regardless of time period, since the founding of Media Matters.

13.     All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters.

14.     All Your bank statements and all documents sufficient to show Your financial condition during the time period.

15.     All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future,

App.255

Appx. 12

or that You have owed during the time period, including but not limited to any monetary judgment in this matter.

16.     Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever.

17.     Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

18.     Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

19.     Documents sufficient to identify the recipients of any communications or email updates, "Action Updates," or "Weekly Updates" sent out via any email list that You maintain, as well as any information related to those recipients' locations, including but not limited to any self-reported location data and their IP addresses.

20.     Documents sufficient to show Media Matters' organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

21.     All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

22.     All documents concerning, and communications with, any third-party public relations, advertising, marketing, communications, or similar firm that You have contracted with, or that you have contacted in any capacity about the November 16, 2023 Article.

App.256

23.    All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023.

24.    All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023.

25.    All documents and communications related to or reflecting Your involvement in or knowledge of X and any related entities, individuals, and platforms.

26.    All documents and communications related to or reflecting Media Matters' Board's involvement in or knowledge of X and any related entities, individuals, and platforms.

27.    All documents and communications related to or reflecting Media Matters' donors' involvement in or knowledge of X and any related entities, individuals, and platforms.

28.    All documents and communications related to or reflecting Media Matters' employees' involvement in or knowledge of X and any related entities, individuals, and platforms.

29.    All documents and communications related to or reflecting Media Matters' advertisers' and agencies' involvement in or knowledge of X and any related entities, individuals, and platforms.

App.257

Appx. 14

TAB 2

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

**X CORP.**,

           Plaintiff,

    vs.

**MEDIA MATTERS FOR AMERICA**, et al.

          Defendants.

Case No. 4:23-cv-01175-O

## PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff X. Corp. hereby serves this First Set of Requests for Production on each of the Defendants, Media Matters for America, Eric Hananoki, and Angelo Carusone, by and through their counsel of record, on March 29, 2024, via email pursuant to an agreement for electronic service between counsel. Each Defendant is hereby independently obligated to respond to these requests and produce the documents described below in accordance with the Instructions and Definitions.

You are reminded that you must respond in writing within 30 days of this date. Production is to be made at the offices of Stone Hilton PLLC, 1115 W. Slaughter Ln., Austin, TX 78715, or via such means as counsel for the parties may agree.

Respectfully submitted.

*/s/ Christopher D. Hilton*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on counsel for Defendants via email on

March 29, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Christopher D. Hilton*
Christopher D. Hilton

App.260

Appx. 17

## DEFINITIONS

In reading and interpreting these requests for production and the accompanying instructions, the following definitions shall apply:

1.      "X" or "Plaintiff" shall mean the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc.

2.      "Defendant," "You," and "Your" shall mean the Defendants in this Matter, Media Matters for America (also referred to as "Media Matters"), Eric Hananoki (also referred to as "Hananoki"), and Angelo Carusone (also referred to as "Carusone"), either conjunctively or disjunctively as needed to bring within the scope of these requests any materials that might otherwise be excluded from their scope. "Defendant," "You," and "Your" also refers to, as applicable, each Defendant's board of directors ("Board"), employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of any Defendant, as well as all persons who have acted or purport to have acted on any Defendant's behalf.

3.      "Matter" shall refer to this above-captioned litigation, *X Corp. v. Media Matters for America et al.*, No. 4:23-cv-01175-O.

4.      "Material," "document," "information," "data," and any other similar words describing categories of things that may be subject to production in response to these requests, shall be given the broadest possible interpretation provided by law, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. Each of these words shall also include without limitation handwritten notes, data in specialized databases or document repositories, and data or information received from journalistic sources. Each of these

words shall also include without limitation any "communications" (regardless of whether "communications" is separately specified), meaning any transmission of any information via any means whatsoever, including without limitation emails, phone logs, voicemails, text messages, chat messages (such as Zoom, Slack, Microsoft Teams, or Google Meet), Signal messages, WhatsApp messages, notes of conversations, or recordings of conversations.

5.      "Concerning," "regarding," "related to," and any other similar phrases signify any connection, direct or indirect, between the requested material and the stated topic. Such phrases describing the subject matter of a request shall be given the broadest possible interpretation in order to bring within the scope of these requests any materials that might otherwise be excluded from their scope.

6.      "Identify," or a request for an "identity," when used with respect to an individual or an entity, means to provide the name of the individual or entity, the current street address for the individual or the main office of such entity (or, if such information is unavailable, any available information or data regarding the individual or entity's location), the telephone number and email address for the individual or entity, and the name and title of the individual responsible for operations of any entity.

7.      The "Platform" shall refer to the social media website x.com and twitter.com, and the X app and Twitter app, and shall include but not be limited to the website's or app's features, functions, users, and content.

8.      The "November 16, 2023 Article" shall refer to the article written by Eric Hananoki and originally published on November 16, 2023, at or around 10:05 AM EST, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content," available as of February 4, 2024 at

https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle, including all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto.

9.      The "November 17, 2023 Article" shall refer to the article written by Eric Hananoki and originally published on November 17, 2023, at or around 12:16 PM EST, and updated on November 21, 2023, at or around 2:15 PM EST, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags," available as of March 27, 2024 at https://www.mediamatters.org/twitter/x-placing-ads-amazon-nba-mexico-nbcuniversal-and-others-next-content-white-nationalist, including all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto.

10.      The "Website" shall refer to the Media Matters for America website and all of its pages, available at https://www.mediamatters.org/.

App.263

### INSTRUCTIONS

Pursuant to Federal Rule of Civil Procedure 34, You are hereby instructed to respond to these requests for production as follows:

1.     Respond to each request for production separately by listing the materials and by describing them as defined above. If the material is numbered or labeled for production, in each response provide both the information that identifies the material and the material's number or label. You must produce all of the materials in your possession, custody, or control as well as any materials in the possession, custody, or control of Your departments, officers, directors, employees, agents, servants, attorneys, or representatives of any kind whatsoever, or any other person or entity from whom you have the right to obtain documents and information.

2.     To the extent that You object to a request for production, You must state the objection with particularity, providing specific grounds for the objection, and You must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part that is objectionable, and You must respond in full to the part that is unobjectionable.

3.     Produce documents and tangible things in the forms as they are kept in the ordinary course of business, except that documents may be numbered or labeled during the production process. Every effort should be made to maintain document unitization from whatever source the documents are collected.

4.     Electronically stored information (ESI) should be produced in accordance with generally accepted ESI standards, and all the information and metadata necessary for loading Your production into Relativity or a similar document management database. No metadata should be altered or destroyed during Your collection or production of documents. Counsel for the parties

6

App.264

have previously agreed to come to terms on a mutually acceptable set of ESI protocols that the parties will memorialize in a proposed court order, and Your production shall be governed by that order.

5.      For any materials that You assert are privileged, protected, or otherwise except from discovery for any reason, You are instructed to provide an appropriate privilege log. Counsel for the parties previously agreed to come to terms on a mutually acceptable protocol for the handling of privileged material that the parties will memorialize in a proposed court order, and Your production shall be governed by that order. Any nonprivileged information within a document that can be produced, must be produced, with redactions over the privileged information. If You claim that any materials are not privilege or otherwise exempt from disclosure but should nonetheless be kept confidential, You are instructed to alert counsel of that fact prior to the deadline for a response to these requests so that the parties can evaluate the need for a confidentiality and protective order in this matter.

6.      For any materials that You claim no longer exist, have been destroyed, or cannot be located, provide the following: (a) a statement identifying the material; (b) a statement of how and when the material ceased to exist or when it could no longer be located; (c) the reasons for the material's nonexistence or loss; (d) the identity, address, and job title of each person having knowledge about the nonexistence or loss of the material; and (e) a statement identifying any other materials evidencing the nonexistence or loss of the material or any facts about the nonexistence or loss.

7.      These requests for production must be construed as broadly as possible, giving words their most expansive and inclusive interpretation, such that the requests should be construed

with a meaning that brings materials within the request's scope rather than with a meaning that excludes materials from the request's scope.

8.      The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, wherever needed in order to bring within the scope of these requests any materials that might otherwise be excluded from their scope.

9.      The words "and" and "or" shall each be construed either conjunctively or disjunctively as needed to bring within the scope of these requests any materials that might otherwise be excluded from their scope.

10.      Unless otherwise stated, the responsive "time period" for these requests is April 14, 2021, to the present. These requests are continuing in nature, and You have an obligation to amend, supplement, or correct Your responses and Your productions in accordance with Federal Rule of Civil Procedure 26(e).

App.266

## REQUESTS FOR PRODUCTION

1.      All versions of the November 17, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

2.      All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 17, 2023 Article.

3.      All documents and communications related to the November 17, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 17, 2023 Article.

4.      All audio and video recordings of You discussing or referencing in any way the November 17, 2023 Article, including but not limited to documents reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

5.      All materials regarding or communications with You or any other Media Matters employee, contractor, or agent mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

6.      All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

7.      All materials, including but not limited to notes, transcripts, or recordings, whether published, broadcast, or otherwise, or all media or public appearances made by You wherein You discussed or mentioned this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

8.      All materials regarding or communications with Eric Hananoki.

9.      All materials regarding or communications with Matt Gertz.

10.     All materials reflecting or regarding any policies, practices, procedures, codes of conduct, ethical standards, or other guidelines for appropriate investigation and reporting for Media Matters' articles, including but not limited to policies concerning fact-checking, defamation, and contacting sources or subjects of articles.

11.     All materials and communications regarding the X account(s) used in creating the November 16, 2023 Article or the November 17, 2023 Article, including but not limited to any emails from the Platform (including automatic or system-generated emails).

12.     All materials and communications with or regarding any X account or X advertiser appearing the November 16, 2023 Article or the November 17, 2023 Article.

13.     All materials regarding or communications with any individual or entity named in the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage, including communications with any entity's board of directors, employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of any such entity.

14.     All materials regarding or communications with any sources for the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage.

15.     Documents sufficient to show the identity of the author of and every contributor to articles that are attributed to "Media Matters Staff" or that are unattributed referring to this Matter,

App.268

Elon Musk, Linda Yaccarino, X, Twitter, the November 16, 2023 Article, the November 17, 2023 Article, or the Platform, including misinformation, brand safety, ad pairing, anti-Semitism, racism, Nazis or Nazi ideology and content, white nationalism, white supremacism, or the "alt-right" on the Platform.

16.     All materials or communications that reference in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform, and use any of the following terms or any variant of any of the following terms: Hitler, Nazi, racist, racism, alt-right, antisemite, antisemitism, anti-Semite, anti-Semitism, red line, replacement theory, white supremacy, white nationalism, white pride, Pepe, frog Twitter, the Holocaust, bigotry, hate, hatred, hateful speech, Charlottesville, tiki torch, January 6, January 6th, Jan. 6, Jan. 6th, 1/6, J6, minorities, hordes, jew, jewish, Israel, Israeli, IDF, Israeli Defense Force, Palestine, Palestinian, "from the river to the sea," October 7, 10/7, jihad, day of jihad, Hamas, Gaza, Islam, Islamic, Palestinian Islamic Jihad, PIJ, Islamophobia, Zionism, Zionist, Zion, blue chip, brand, free speech, First Amendment, Texas, Fort Worth, Dallas, Austin.

17.     All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations that You took adverse employment actions or otherwise discriminated against or took any action against another person or persons on the basis of a protected class, including but not limited to race, color, national origin, religion, sex, sexual orientation, language status, or pregnancy status.

18.     All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened

App.269

lawsuits that were never filed), or investigations involving allegations against You regarding business disparagement, defamation, or libel.

TAB 3

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA AND ERIC HANANOKI'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Defendants Media Matters for America ("Media Matters") and Mr. Eric Hananoki,[1] through their undersigned counsel, submit these responses and objections to Plaintiff X Corp.'s First Set of Requests for Production ("Discovery Requests" or "Requests").

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants' investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests is still ongoing. Defendants reserve their right to alter, supplement, amend,

---

[1] Plaintiff's First Set of Requests for Production were served on February 5, 2024, prior to when Plaintiff amended its complaint to include Angelo Carusone as a defendant. Therefore, these Responses and Objections are not on behalf of Mr. Carusone. All references to Defendants herein are to Media Matters and Mr. Hananoki only.

correct, clarify, or otherwise modify these responses and objections, to assert additional objections

or privileges, in any subsequent supplemental response(s), or to move for a Court order if deemed

appropriate.

By making the accompanying responses and objections to Plaintiff's Discovery Requests,

Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the

admissibility of such responses and documents into evidence in this action, or in any other

proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and

any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court,

and will be produced on a rolling basis. Defendants will not produce documents in response to

Plaintiff's discovery requests until the Court has entered a mutually agreeable ESI Protocol

and protective order negotiated by the Parties, or until the Court instructs otherwise.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media

Matters or Eric Hananoki and that the Northern District of Texas is not the proper venue for this

dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I

and II; *see also* Defendants' Motion to Stay Discovery, ECF 43. at Section I.

### <u>RESPONSES TO INDIVIDUAL REQUESTS</u>

<u>**REQUEST FOR PRODUCTION NO. 1**</u>:  All versions of the November 16, 2023 Article,

including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates,

and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," and Defendants interpret

the term as used here consistent with its ordinary meaning to ask for written records created in the

process of reporting, writing, and publishing the November 16, 2023 Article. To the extent Plaintiff means something else by the term, Defendants object to this Request as vague and ambiguous. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege or reporter's privilege, including notes and communications that divulge protected source material. *See, e.g.*, *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (recognizing "the first amendment shields a reporter from being required to disclose the identity of persons who have imparted information . . . in confidence"); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) (recognizing "the close nexus between the freedoms of speech and assembly" protected party from disclosure of associational documents). Defendants also object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

App.274

**REQUEST FOR PRODUCTION NO. 2**:   All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

   **OBJECTIONS**: The Request does not define the term "Platform account data," and Defendants interpret the term as used here to ask for usernames of accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. To the extent Plaintiff means something else by the term, Defendants object to this Request as vague and ambiguous. Defendants further object to this Request because it seeks sensitive information protected by the First Amendment privilege and reporter's privilege, including by asking Defendants to divulge protected source material. *See, e.g.*, *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (recognizing "the first amendment shields a reporter from being required to disclose the identity of persons who have imparted information . . . in confidence."); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) (recognizing "the close nexus between the freedoms of speech and assembly" protected party from disclosure of associational documents). Defendants also object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to the extent that this Request seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source

**App.275**

that is more convenient, less burdensome, or less expensive, such as information about accounts on X or sources and links embedded within the November 16, 2023 article.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article.

**OBJECTIONS**: Defendants object to this Request because it seeks information such as confidential communications with donors and strategic partners that are squarely protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385–86 (2021); *Nat'l Ass'n for Advancement of Colored People*, 357 U.S.  at 460; *see also Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018), as revised (July 17, 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

App.276

Defendants further object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 4**:  All audio and video recordings of You discussing or referencing in any way the November 16, 2023 Article, including but not limited to documents reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

**OBJECTIONS**: Defendants object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further

App.277

object to this Request because it seeks materials "in the possession, custody, or control of third parties" and therefore not within Defendants' possession, custody, or control.

      **RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials and will not search for or produce materials under third parties' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

      **REQUEST FOR PRODUCTION NO. 5**:  All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.

      **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" that in any way mention X, the Platform, Elon Musk, or Linda Yaccarino, even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine,

7

**App.278**

and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 6**: All documents and communications concerning content moderation on the Platform.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" related to any content moderation policies on the Platform and is not reasonably limited to materials relevant to the issues in dispute in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 7**: All documents and communications concerning advertising on the Platform, including but not limited to documents and communications concerning any particular advertiser or potential advertiser on the Platform.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, the terms "any particular advertiser or potential advertiser on the Platform" is not reasonably limited to materials relevant to the issues in dispute in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these

App.280

objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 8**:   All communications with X's advertisers concerning the Platform, including but not limited to communications regarding their decision to advertise on the Platform.

> **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

> **RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

App.281

**REQUEST FOR PRODUCTION NO. 9**:  All communications with X's advertisers about advertising with or financially supporting You.

      **OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires blanket production of "[a]ll communications" with certain advertisers not reasonably limited to materials relevant to the issues in dispute in this case. Similarly, the phrase "financially supporting" is vague, overly broad, and not reasonably limited to materials relevant to the issues in dispute in this case. Defendants also object to this Request because it seeks sensitive information such as communications protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to this request to the extent it seeks materials outside of Defendants possession, custody, or control.

      **RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

App.282

Appx. 39

**REQUEST FOR PRODUCTION NO. 10**: All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.

OBJECTIONS: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll posts, comments, direct messages, and any other account data of any kind whatsoever" of various accounts, even where the information it seeks is vague, immaterial, or unrelated to the claims or defenses at issue in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive, including X account information within X Corp.'s possession.

RESPONSES: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

App.283

**REQUEST FOR PRODUCTION NO. 11**: All communications with appointed or elected public officials, candidates for public office, candidate campaign committees, political party committees, PACs, 501(c)(4) groups, and any other political actors or political operatives.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll communications" with a staggering number of potential individuals on unspecified topics immaterial and unrelated to the claims or defenses at issue in this case. Defendants also object to this Request to the extent it seeks sensitive communications that are protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this request to the extent it seeks information outside of Defendants' possession, custody, or control.

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

13

**REQUEST FOR PRODUCTION NO. 12**: All IRS Form 990s for Media Matters, regardless of time period, since the founding of Media Matters.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll IRS Form 990s for Media Matters" since the organization's founding twenty years ago, with no indication of why this information would be material or related to the claims or defenses at issue in this case. Indeed, the Platform was not founded until 2006, two years *after* Media Matters was founded. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis only publicly available version of its Form 990 tax returns. Defendants will not produce any non-public versions of its tax return.

**REQUEST FOR PRODUCTION NO. 13**: All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll annual financial statements for Media Matters" since the organization's founding twenty years ago, with no indication of why this information would be material or related to the claims or defenses at issue in this case. Indeed, the Platform was not founded until 2006, two years *after* Media Matters was founded. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are

App.286

Appx. 43

otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

       **RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.


**REQUEST FOR PRODUCTION NO. 14**: All Your bank statements and all documents sufficient to show Your financial condition during the time period.

       **OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll bank statements and all documents sufficient to show [Defendants'] financial condition," with no indication of why this information—including personal financial information of an individual reporter—would be material or related to the claims or defenses at issue in this case. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

App.287

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 15**: All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future, or that You have owed during the time period, including but not limited to any monetary judgment in this matter.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation *of any kind whatsoever*" even where the information would be immaterial or unrelated to the claims or defenses at issue in this case. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial information and associations protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to

this request to the extent that it seeks materials outside of Defendants' possession, custody, or control.

RESPONSES: Subject to, and without waiving these objections, Defendants direct Plaintiff to Section IV of Defendants' Initial Disclosures, served to counsel on March 8, 2024 via email, which, pursuant to Federal Rule of Civil Procedure 26 (a)(1)(A)(iv), lists "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in th[is] action or to indemnify or reimburse for payments made to satisfy the judgment [in this litigation]." Defendants will produce any related documents as required by Federal Rule of Civil Procedure 34. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever.

OBJECTIONS: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires producing a high-volume of sensitive financial information—including a limitless amount of unrestricted "expenses"—that are immaterial or unrelated to the claims or defenses at issue in this case. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial information protected by the First Amendment

privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 17**: Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks a high-volume of sensitive financial information "of any kind" that is immaterial or unrelated to the claims or defenses at issue in this case. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial and associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found.*, 141 S. Ct. at 2385–86; *Nat'l Ass'n for Advancement of*

*Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.  Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 18**: Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks a high-volume of sensitive financial information of "any kind" that is immaterial or unrelated to the claims or defenses at issue in this case. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial and associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*,

*Americans for Prosperity Found.*, 141 S. Ct. 2385–86; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.  Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this request to the extent it seeks materials outside of Defendants' possession, custody, or control.

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.


**REQUEST FOR PRODUCTION NO. 19**: Documents sufficient to identify the recipients of any communications or email updates, "Action Updates," or "Weekly Updates" sent out via any email list that You maintain, as well as any information related to those recipients' locations, including but not limited to any self-reported location data and their IP addresses.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. Defendants also object to this Request to the extent it seeks disclosure of associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found.*,

141 S. Ct. at 2385–86; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 20**: Documents sufficient to show Media Matters' organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

**OBJECTIONS**: Defendants object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

App.293

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 21**: All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" that in any way mention sources of funding related to X, the Platform, Elon Musk, or Linda Yaccarino, even where not reasonably related to the issues in dispute in this case. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial and associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found.*, 141 S. Ct. 2385–86; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client

23

App.294

privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 22**: All documents concerning, and communications with, any third-party public relations, advertising, marketing, communications, or similar firm that You have contracted with, or that you have contacted in any capacity about the November 16, 2023 Article.

**OBJECTIONS**: Defendants object to this Request to the extent it seeks disclosure of sensitive associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to the term "similar firm" as vague.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control

that they are able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 23**: All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications related to or reflecting *any* travel" by Mr. Hananoki during the specified time period, even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

**RESPONSES**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 24**: All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023.

App.296

Appx. 53

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments" during the specified time period, even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to or reflecting Your involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this

App.297

litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" related to undefined topics even where not reasonably related to the issues in dispute in this case. Similarly, "any related entities, individuals, and platforms" is vague and undefined. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants also object to this request to the extent it seeks materials outside of Defendants' possession, custody, or control. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Requests Nos. 5 and 8.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

App.298

**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to or reflecting Media Matters' Board's involvement in or knowledge of X and any related entities, individuals, and platforms.

 **OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" related to undefined topics even where not reasonably related to the issues in dispute in this case. Similarly, "any related entities, individuals, and platforms" is vague and undefined. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

 **RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that it is able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to or reflecting Media Matters' donors' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" related to undefined topics even where not reasonably related to the issues in dispute in this case. Similarly, "any related entities, individuals, and platforms" is vague and undefined. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial and associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found.*, 141 S. Ct. 2385–86; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this request to the extent it seeks materials outside of Defendants' possession, custody, or control.

**RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis, any responsive, nonprivileged documents in its possession, custody, or control that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to or reflecting Media Matters' employees' involvement in or knowledge of X and any related entities, individuals, and platforms.

 **OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" related to undefined topics even where not reasonably related to the issues in dispute in this case. Similarly, "any related entities, individuals, and platforms" is vague and undefined. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Requests Nos. 5, 8, and 25.

 **RESPONSES**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control that it is able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

App.301

**REQUEST FOR PRODUCTION NO. 29**: All documents and communications related to or reflecting Media Matters' advertisers' and agencies' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll documents and communications" related to undefined topics even where not reasonably related to the issues in dispute in this case. Similarly, "any related entities, individuals, and platforms" is vague and undefined. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to this Request to the extent that it seeks materials not within Defendants' possession, custody, or control.

**RESPONSES**: Subject to, and without waiving these objections, Defendants do not possess any documents that are responsive to this Request because Media Matters does not have any advertisers or agencies.

App.302

**GIBSON, DUNN & CRUTCHER LLP**

Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.** (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed** (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**

Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*
** *Pro hac vice* application forthcoming

*Counsel for Defendants Media Matters for America and Eric Hananoki*

### CERTIFICATE OF SERVICE

On March 11, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*

Andrew LeGrand

App.303

Appx. 60

TAB 4

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| X CORP., <br><br> *Plaintiff*, <br><br>    v. <br><br> MEDIA MATTERS FOR AMERICA, *et al.*, <br><br>    *Defendants*. | Civil Action No. 4:23-cv-01175-O |

## DEFENDANTS MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO CARUSONE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION

Defendants Media Matters for America ("Media Matters"), Mr. Eric Hananoki, and Mr. Angelo Carusone, through their undersigned counsel, submit these responses and objections to Plaintiff X Corp.'s Second Set of Requests for Production ("Discovery Requests" or "Requests").

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants' investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests, is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s), or to move for a Court order if deemed appropriate.

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court, and will be produced on a rolling basis. Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters, Eric Hananoki, or Angelo Carusone, and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

## <u>RESPONSES TO INDIVIDUAL REQUESTS</u>

**<u>REQUEST FOR PRODUCTION NO. 30</u>**: All versions of the November 17, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," and Defendants interpret the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 17, 2023 Article. To the extent Plaintiff means something else by the term, Defendants object to this Request as vague and ambiguous. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege or reporter's privilege, including notes and communications that divulge protected source material. *See, e.g.*, *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (recognizing "the first amendment shields a reporter from being required to disclose

the identity of persons who have imparted information . . . in confidence"); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) (recognizing "the close nexus between the freedoms of speech and assembly" protected party from disclosure of associational documents). Defendants also object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 31**: All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 17, 2023 Article.

**OBJECTIONS**: The Request does not define the term "Platform account data," and Defendants interpret the term as used here to ask for usernames of accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. To the extent Plaintiff means something else by the term, Defendants object to this Request as vague and ambiguous. Defendants further object to this Request because it seeks sensitive information protected by the First Amendment privilege and reporter's privilege, including by asking Defendants to divulge protected source material. *See, e.g.*, *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (recognizing "the first amendment shields a reporter from being required to disclose the identity of persons who have imparted information . . . in confidence."); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) (recognizing "the close nexus between the freedoms of speech and assembly" protected party from disclosure of associational documents). Defendants also object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to the extent that this Request seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive, such as information about accounts on X or sources and links embedded within the November 17, 2023 article.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that

they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 32**: All documents and communications related to the November 17, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 17, 2023 Article.

**OBJECTIONS**: Defendants object to this Request because it seeks information such as confidential communications with donors and strategic partners that are squarely protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385–86 (2021); *Nat'l Ass'n for Advancement of Colored People*, 357 U.S.  at 460; *see also Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018), as revised (July 17, 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search public sources

for responsive materials. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 33**: All audio and video recordings of You discussing or referencing in any way the November 17, 2023 Article, including but not limited to documents reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

**OBJECTIONS**: Defendants object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this Request because it seeks materials "in the possession, custody, or control of third parties" and therefore not within Defendants' possession, custody, or control.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants will not search public sources for responsive materials and will not search for or produce materials under third parties' possession, custody, or control. Defendants are in the process of collecting documents for review

App.310

and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 34**: All materials regarding or communications with You or any other Media Matters employee, contractor, or agent mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications" that in any way mention this Matter, X, Twitter, the Platform, Elon Musk, or Linda Yaccarino, even where not reasonably related to the issues in dispute in this case. Indeed, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. For example, Plaintiff seeks communications and documents related to "this Matter," which could conceivably include privileged conversations with counsel and work product created for the purpose of litigation. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are

App.311

Appx. 68

otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Requests Nos. 4, 5, 6, 25, and 33.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control from April 14, 2022 onward that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 35**: All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. Indeed, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants also object to this Request to the extent it seeks disclosure of sensitive financial and associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and

associational rights. *See, e.g.*, *Americans for Prosperity Found.*, 141 S. Ct. 2385–86; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also, Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.  Defendants object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants also object to this request to the extent it seeks materials outside of Defendants' possession, custody, or control. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Request Nos. 18 and 21.

　　　　**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.


　　　　**REQUEST FOR PRODUCTION NO. 36**: All materials, including but not limited to notes, transcripts, or recordings, whether published, broadcast, or otherwise, or all media or public appearances made by You wherein You discussed or mentioned this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

　　　　**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For

example, this Request impermissibly requires blanket production of "[a]ll materials" related to any public appearances that in any way mention this Matter, X, Twitter, the Platform, Elon Musk, or Linda Yaccarino, even where not reasonably related to the issues in dispute in this case. Indeed, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. For example, Plaintiff seeks communications and documents related to "this Matter," which could conceivably include privileged conversations with counsel and work product created for the purpose of litigation. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Requests Nos. 4, 5, 6, 25, 33, and 34.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control from April 14, 2022 onward that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 37**: All materials regarding or communications with Eric Hananoki.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with Eric Hananoki," even where not reasonably related to the issues in dispute in this case. Indeed, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before Mr. Hananoki's challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Requests Nos 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16,17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 30, 31, 32, 33, 34, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47.

**RESPONSE**: Many of documents Defendants produce in response to other Requests will be responsive to this Request as well, as noted above. Based on the foregoing objections, however, Defendants will not conduct a separate search or create separate productions for this Request at this time.

**REQUEST FOR PRODUCTION NO. 38**: All materials regarding or communications with Matt Gertz.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with Matt Gertz," even where not reasonably related to the issues in dispute in this case. Indeed, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before Mr. Hananoki's challenged article was published and a year before Elon Musk took over the Platform. And Mr. Gertz was not involved in the researching or drafting of the challenged article. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Request Nos. 5, 6, 7, 20, 28, 34, 36, 39, 41, 42, 44, and 45.

**RESPONSE**: Many of documents Defendants produce in response to other Requests will be responsive to this Request as well, as noted above. Based on the foregoing objections, however,

App.316

Defendants will not conduct a separate search or create separate productions for this Request at this time.

**REQUEST FOR PRODUCTION NO. 39**: All materials reflecting or regarding any policies, practices, procedures, codes of conduct, ethical standards, or other guidelines for appropriate investigation and reporting for Media Matters' articles, including but not limited to policies concerning fact-checking, defamation, and contacting sources or subjects of articles.

**OBJECTIONS**: Defendants object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Moreover, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis, any responsive, nonprivileged documents in its possession, custody, or control from April 14, 2022 onward that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 40**: All materials and communications regarding the X account(s) used in creating the November 16, 2023 Article or the November 17, 2023 Article,

including but not limited to any emails from the Platform (including automatic or system-generated emails).

**OBJECTIONS**: Defendants object to this Request because it seeks sensitive information protected by the First Amendment privilege and reporter's privilege, including by asking Defendants to divulge protected source material. *See, e.g.*, *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (recognizing "the first amendment shields a reporter from being required to disclose the identity of persons who have imparted information . . . in confidence."); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) (recognizing "the close nexus between the freedoms of speech and assembly" protected party from disclosure of associational documents). Defendants also object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to the extent that this Request seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Request Nos. 2, 10, and 31.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis, any responsive, nonprivileged documents in its possession, custody, or control from April 14, 2022 onward that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding

any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 41**: All materials and communications with or regarding any X account or X advertiser appearing the [sic] November 16, 2023 Article or the November 17, 2023 Article.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials and communications" to a broad range of individuals and entities even where not reasonably related to the issues in dispute in this case. Moreover, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Request Nos. 2, 3, 7, 8, 10, 22, 31, 32, and 42.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control from April 14, 2022 onward that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 42**: All materials regarding or communications with any individual or entity named in the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage, including communications with any entity's board of directors, employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of any such entity.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with" a broad range of individuals and entities even where not reasonably related to the issues in dispute in this case. Plaintiff also seeks documents on "any subsequent coverage," which is unduly broad and impermissibly seeks every article MMFA has written or published since November 16, 2023 and subsequent to Plaintiff filing its Complaint. Moreover, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the

Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Request Nos. 2, 3, 7, 8, 10, 22, 31, 32, and 41.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control from April 14, 2022 onward that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants will not search for or produce materials related to "any subsequent coverage" as this is beyond the scope of what is being litigated in this case. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 43**: All materials regarding or communications with any sources for the November 16, 2023 Article, the November 17, 2023 Article, and any subsequent coverage.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials regarding or communications with any source" even where not reasonably related to the issues in dispute in this case. Plaintiff also seeks documents on "any subsequent coverage," which is unduly broad and impermissibly seeks every article MMFA has written or published since November 16, 2023 and subsequent to Plaintiff filing its Complaint. Defendants object to this Request because it seeks sensitive information protected by the First Amendment privilege and reporter's privilege, including by asking Defendants to divulge protected source material. *See, e.g.*, *In re Selcraig*, 705 F.2d 789, 792 (5th Cir. 1983) (recognizing "the first amendment shields a reporter from being required to disclose the identity of persons who have imparted information . . . in confidence."). Defendants also object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Request Nos. 2, 3, 31, and 32.

**RESPONSE**:  Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.


**REQUEST FOR PRODUCTION NO. 44**: Documents sufficient to show the identity of the author of and every contributor to articles that are attributed to "Media Matters Staff" or that are unattributed referring to this Matter, Elon Musk, Linda Yaccarino, X, Twitter, the November 16,

2023 Article, the November 17, 2023 Article, or the Platform, including misinformation, brand safety, ad pairing, anti-Semitism, racism, Nazis or Nazi ideology and content, white nationalism, white supremacism, or the "alt-right" on the Platform.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of a broad set of materials related to articles about Elon Musk, Linda Yaccarino, X, Twitter, the Platform, and a broad range of topics even where not reasonably related to the issues in dispute in this case. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26. Defendants also object because this information can be requested via less burdensome measures, like an interrogatory.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control from April 14, 2022 onward that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

App.323

**REQUEST FOR PRODUCTION NO. 45**: All materials or communications that reference in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform, and use any of the following terms or any variant of any of the following terms: Hitler, Nazi, racist, racism, alt-right, antisemite, antisemitism, anti-Semite, anti-Semitism, red line, replacement theory, white supremacy, white nationalism, white pride, Pepe, frog Twitter, the Holocaust, bigotry, hate, hatred, hateful speech, Charlottesville, tiki torch, January 6, January 6th, Jan. 6, Jan. 6th, 1/6, J6, minorities, hordes, jew, jewish, Israel, Israeli, IDF, Israeli Defense Force, Palestine, Palestinian, "from the river to the sea," October 7, 10/7, jihad, day of jihad, Hamas, Gaza, Islam, Islamic, Palestinian Islamic Jihad, PIJ, Islamophobia, Zionism, Zionist, Zion, blue chip, brand, free speech, First Amendment, Texas, Fort Worth, Dallas, Austin.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll materials or communications that reference in any way" a broad range of individuals, entities, and topics, even where not reasonably related to the issues in dispute in this case. Moreover, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the First Amendment privilege, reporter's privilege, attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.  For example, Plaintiff seeks communications and

documents related to "this Matter," which could conceivably include privileged conversations with counsel and work product created for the purpose of litigation. Defendants also object to this Request to the extent that it seeks publicly available documents and/or documents that are otherwise available to Plaintiff such that responsive materials may be obtained from another source that is more convenient, less burdensome, or less expensive. Defendants further object to this Request as duplicative of and/or cumulative of Discovery Request Nos. 5, 34, 35, and 36.

**RESPONSE**: Subject to, and without waiving these objections, Defendants will produce on a rolling basis any responsive, nonprivileged documents in its possession, custody, or control from April 14, 2022 onward that it is able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control. Defendants are in the process of collecting documents for review and are not presently withholding any responsive documents that they have identified subject to these objections. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 46**: All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations that You took adverse employment actions or otherwise discriminated against or took any action against another person or persons on the basis of a protected class, including but not limited to race, color, national origin, religion, sex, sexual orientation, language status, or pregnancy status.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the

extent it seeks documents not relevant to any claim or defense asserted in this litigation. Indeed, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 47**: All materials reflecting or relating to any reports, accusations, files, notes, personnel records, complaints, mediations, arbitrations, lawsuits (including potential or threatened lawsuits that were never filed), or investigations involving allegations against You regarding business disparagement, defamation, or libel.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, including to the extent it seeks documents not relevant to any claim or defense asserted in this litigation. Indeed, Plaintiffs' request seeks documents dating back to April 14, 2021, more than two and a half years before the challenged article was published and a year before Elon Musk took over the Platform. Defendants further object to this Request to the extent it seeks documents or communications that are protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26.

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

App.326

**GIBSON, DUNN & CRUTCHER LLP**

Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.** (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**

Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*
** *Pro hac vice* application forthcoming

*Counsel for Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone*

App.327

Appx. 84

## CERTIFICATE OF SERVICE

On April 29, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*

Andrew LeGrand

App.328

Appx. 85

TAB 8

| | |
|---|---|
| **From:** | Abha Khanna |
| **To:** | Alex Dvorscak; Daniela Lorenzo; Jacob Shelly; LeGrand, Andrew; Ahmed, Amer S. |
| **Cc:** | Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Chris Dodge; Aria Branch; Samuel Ward-Packard; Mindy Johnson; Chris Hilton; Cody Coll; Tom Albright; Ari Cuenin; Judd E. Stone, II; john.sullivan@the-sl-lawfirm.com; Bonnie Chester; Michael Abrams; Alithea Sullivan |
| **Subject:** | RE: X/MMFA - Defendants' Fifth Production |
| **Date:** | Friday, August 2, 2024 6:51:48 PM |
| **Attachments:** | 2024.08.02 - Amended 6.28 Priv Log.pdf |

Alex and Chris,

Thank you again for meeting with us today for a productive conversation on resolving outstanding discovery issues. As promised, attached is our amended privilege log and below is both a summary of what we discussed during our call and Defendants' proposal for how the parties can move forward with the discovery Plaintiff seeks.

The parties discussed three issues Plaintiff identified as potential discovery disputes that would form the basis of Plaintiff's motion to compel:

1. Whether Defendants should be required to turn over donor-related information.
   a. The parties agreed this dispute is ripe for Court intervention and Plaintiff plans to move to compel these documents on or after Monday of next week.

2. Defendants' document-by-document privilege assertions on their first privilege log.
   a. Defendants' amended privilege log seeks to assuage the various log-related concerns Plaintiff raised during the parties' last meet-and-confer.
   b. To the extent Plaintiff has further concerns regarding the amended log or documents identified therein, the Parties will confer (we will make ourselves available for such a conversation early next week).

3. Defendants' objections and responses to subsection (4) of Plaintiff's Interrogatory Nos. 7 and 8.
   a. Defendants clarified that their objection is *not* based on privilege or a refusal to search for and produce "any comments, revisions, feedback, or approval" in relation to the November 16 and 17 articles. Rather, Defendants objected that producing this information in a *written interrogatory* is inefficient and that they will, instead, produce responsive documents.
   b. Defendants also reiterated that they are *not* categorically withholding as privileged or refusing to produce documents related to the November 16 and 17 articles.

Please confirm that these are all the issues Plaintiff contemplated for its above-referenced motion to compel.

Additionally, recognizing that both parties have an interest in ensuring discovery is productive and efficient, Defendants are proposing a modified approach to searching for and producing the documents Plaintiff has requested:

1. The parties will come together to identify the set of document requests that are essential to the maintenance of X's claims, as Alex began to do in his email earlier today.
2. Defendants will then modify their search and review parameters to target these categories of documents.
3. The parties will agree that Defendants will no longer need to review, produce, or log the documents that fall outside of these categories.

We believe this approach is consistent with the legal standard set forth in the Texas Press Shield Law, will significantly streamline discovery moving forward, and will reduce discovery fights and therefore the need to burden the Court. Defendants understand and share Plaintiff's desire for expediency and believe that—while we may need to iron out the details of any proposal to come to a mutually agreeable resolution—the parties are more aligned than we are divided on this issue.

Given our conversation earlier, we remain optimistic about reaching a compromise that serves both parties' interests while respecting the Court's time. We look forward to keeping these lines of communication open and conferring on the above issues in good faith.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, August 2, 2024 9:38 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

The documents central to our disagreements regarding privilege have been obvious to both sides and we have been discussing them for months. However, to facilitate our discussion, we have identified the following categories of documents that have not been produced and over which you may be asserting privilege, but which have not yet appeared on a privilege log. Note that this is an illustrative list, not a complete one.

- Notes, drafts, and sources of the Articles (*see* X's MTC at 14).
- Communications between or among Hananoki, Sharon Kann, Michale Eberhart, Ben Dimiero, Kayla Gogarty, and/or Andrea Austria regarding the Articles (*see* MMFA's responses to ROGs 7 and 8).

App.330

Appx. 174

- All documents that the Court compelled in its order dated June 6, 2024. This includes "all documents in [Your] possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46." Dkt. 65 at 3.

As we discussed during our last call, we cannot wait months before these documents are produced or logged. Our goal is to only burden the Court with the substantive legal issues of privilege—we hope we can work out the procedural mechanics of discovery together in good faith.

Looking forward to discussing this in more detail on today's call.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Alex Dvorscak
**Sent:** Thursday, August 1, 2024 11:18 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

Friday at 1 ET/12 CT works for us. I'll send around a Zoom link.
We will respond to the additional points raised in your email yesterday so that you know our positions prior to the conference.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 31, 2024 3:21 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is available Friday at 1 ET/12 CT. We have greater availability on Monday if that time does not work for you.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Wednesday, July 31, 2024 9:09 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

It looks like there's a few issues for us to discuss. Can you please let me know your availability to confer tomorrow afternoon or Friday morning?

Best,

-Alex Dvorscak

STONE | HILTON PLLC

alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Tuesday, July 30, 2024 3:48 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

First, thank you for sending these cases. As you are aware, two of them are out-of-Circuit, all of them are non-controlling district court opinions, and—most importantly—none of them finds waiver where a privilege was noted on a timely privilege log. Accordingly, your cited authority does not support your position. If you have no better authority, then our position is that your proposed motion is frivolous and we are, accordingly, at an impasse regarding any waiver of Texas's press shield law. *Cf.* Fed. R. Civ. P. 11(b), (c).

Second, our initial privilege log fully complied with the protocol that you and your colleagues negotiated. As a courtesy, we have agreed to revisit that protocol to increase clarity for all parties. An amended privilege log will be forthcoming this week.

Third, we are confused by your refrain that Defendants "refuse to log all responsive documents." If you are referring to our refusal to independently *search* for donor-related documents, we agree that the privileged status of donor-related documents is ripe for the Court's resolution. Are you also referring to other categories of documents? If so, please identify them promptly so that we can ascertain the nature of any dispute.

Finally, as I noted in my previous email, it appears the parties have a mutual interest in increasing transparency about the pace of future document productions. To that end, we propose the following interim deadlines:

1. Wednesday, August 7: parties exchange search terms and full custodian lists.
2. Friday, October 11: parties substantially complete document productions in response to requests served to date.
3. Revised privilege log exchange:
   1. Friday, September 6: first mutual exchange [same as in current agreement]
   2. Friday, October 4: second mutual exchange [changed from October 11 under current agreement]
   3. Friday, November 1: third and final mutual exchange [changed from November 15 under current agreement]
   4. This schedule would omit a fourth privilege log in December to allow productions and logs to be complete by the beginning of November.

We welcome Plaintiff's feedback on the above, and we remain available to confer as necessary. While the parties may not be able to reach agreement on all issues, there is no basis for motions practice when parties remain confused—as we do—about the nature of any dispute. *See* LR 7.1(a).

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Monday, July 29, 2024 8:33 PM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

This case has already been substantially delayed; accordingly, X will be filing its second/renewed motion to compel this Friday. However, as stated last week, we are willing to make ourselves available at any time between now and then to confer.
In the interest of making any conferral more productive, I've addressed a few points from your email below:

- *Regarding waiver*: we explained our position during the meet-and-confer. To the extent that what you are now requesting are legal citations, please see the following, non-exhaustive opinions, which collectively support our position:
  - *Janvey v. Alguire*, No. 3:09-cv-00724-N-BQ, 2018 WL 11362638 (N.D. Tex. Oct. 17, 2018)
  - *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*, 136 F.R.D. 179 (E.D. Cal. 1991)
  - *Burch v. Regents of the University of Cal.*, No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313 (E.D. Cal. Aug. 30, 2005)

App.332

- *Regarding the amended privilege log:* we cannot delay the case to indefinitely wait on an amended log. For example, we did not meet-and-confer last Friday, as you state, but the week prior. We expect that you will serve us an amended privilege log ASAP, otherwise we will not hesitate to add your delay in providing one to our motion to compel.
- *Regarding privilege assertions:* it is insufficient for you to say that you're asserting privilege arguments on a document-by-document basis when you refuse to log all responsive documents and when the Court specifically asked for the parties to "meaningfully concur" on the extent of the First Amendment privileges asserted.
  - If our understandings of your privilege arguments are incorrect, please correct us in writing. If you continue to refuse to confer, we will raise your refusal to clarify the scope of your privilege assertions in our motion.
- *Regarding Defendants' discovery requests:* your email equates apples and oranges. Plaintiff served their requests on February 5, 2024. We have been waiting nearly six months and have received only a few thousand documents out of the terabytes of information you claim to have collected. By contrast, Defendants served their requests in May. We are not the cause of delay here—and have been making productions apace with several thousand pages produced and more on the way.

As stated up front, I am willing to meet-and-confer at any time between now and Friday evening. My hope is always that we can narrow our dispute and limit the need for Court intervention as much as possible, particularly given the parties clear disagreement over certain issues of governing law.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, July 29, 2024 6:23 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Alex,

With regard to the two issues that you believe are ripe for adjudication, we agree that the privileged status of donor information is ready for the court's review, but we disagree that your argument that Defendants have somehow waived the Texas Shield Laws is similarly ripe. Despite repeated requests, we still have not received any legal authority from you suggesting that (i) the preservation of a privilege objection in RFP responses, coupled with (ii) the specific invocation of a privilege on a first privilege log can lead to the extreme result of complete waiver.

We remind you that your first motion to compel was filed before you provided us with your intended legal arguments and citations, and thus needlessly involved the court in matters that could be (and to a large extent, have been) resolved in conferrals. *See, e.g., Dondi Properties Corp. v. Com. Sav. & Loan Ass'n,* 121 F.R.D. 284, 289 (N.D. Tex. 1988). If you have any authority indicating the Defendants waived the Press Shield law despite (1) our assertion of "the First Amendment privilege and reporter's privilege" "as well as any other applicable privilege or shield law" in our RFP responses *and* (2) our document-by-document privilege objections/assertions, please provide it for our review immediately. If you have no such authority, of course a motion would be inappropriate. Moreover, Defendants have already committed to re-serving our June 28 privilege log following the parties' meet and confer last Friday. Raising any log-related issues with the Court before Plaintiff can assess whether it disagrees with Defendants' revised privilege designations is similarly inappropriate.

With regard to your questions about our June 28 privilege log, each of your four assertions is mistaken. The privilege objections we raised in our log *apply to the individual documents that were logged.* Defendants have and will continue to raise objections on a document-by-document basis. Thus, it is possible that some documents falling within the four categories you enumerate will be produced and that other documents within those categories will be withheld or redacted and logged based on the Texas Press Shield laws, the First Amendment, or any other relevant privilege.

Finally, we would like to resolve the confusion you expressed regarding our production and privilege schedule. As we have indicated many times, the search terms merited by your broad discovery requests have pulled in an enormous quantity of documents for review. We are aware that some of these documents will contain drafts of articles, some may contain donor information, and many will be irrelevant to the claims or defenses at issue. Our recognition that draft articles exist, however, was not a representation that we had yet identified and reviewed every needle in the haystack.

It is conspicuous that you fault Defendants for referencing future document productions in their interrogatory responses when Plaintiff, of course, did the exact same thing. *See* X's R&Os to MMFA's 1st and 2nd Interrogatories Nos. 2, 3, 5, and 7. It appears that the parties have a mutual interest in identifying reciprocal expectations about future document productions to ensure that the documents each side regards as essential are produced at a pace sufficient to leave time for deposition preparation and review, when necessary, the Court's involvement. We are discussing possible approaches internally and will share our recommendation by early next week.

Defendants continue to remain open to conferring to reach mutually satisfactory resolutions to our differences, but stress that it cannot be a one-way conversation where one party makes concessions and compromises while the other simply repeats its same arguments without legal support. Good-faith efforts at discovery will be a more effective use of everyone's time and resources—including the Court's.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 26, 2024 6:04 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

Thank you for last Friday's meet-and-confer and your follow-up email. With a few exceptions, it appears we have narrowed the privilege disputes to two issues ripe for adjudication.

First, the parties disagree about whether the Texas "Press Shield Laws" was waived or applies at all. We dispute your mischaracterization of prior meet-and-confers as having discussed Texas "Press Shield Laws" (they have not) and the appropriate level of specificity needed to lodge a proper privilege objection. But this disagreement should not foreclose prompt adjudication of your privilege claim, which presents a purely legal question regarding the scope and applicability of Texas "Press Shield Laws." To diligently follow the Court's amended scheduling order, we intend to file a motion to compel next **Friday, August 2**. We are, of course, willing to confer again if you believe additional conversations will further narrow the parties' disputes.

Second, the parties' dispute about donor information is also ripe for Court resolution. You indicated that Defendants' interrogatory responses would tee up the question of whether Defendants must disclose donor information. We have reviewed your interrogatory responses and agree. Defendants have made clear they will not search for or produce documents regarding donor information—let alone log the documents. X believes Defendants are required to do so, and so intends to compel a complete interrogatory response on **Friday, August 2**. Because the legal issue appears ripe for court resolution, we do not understand further discussion to be required. If you disagree and wish to discuss further, please let us know.

Defendants' position is unclear regarding the drafts of the November 16 and 17 articles and any editing, feedback, or other communications regarding the Articles that Defendant Hananoki received. For months, X's position that it seeks such information was clearly made through requests for production, meet-and-confers, and interrogatories. Now in your email response below you misconstrue our position as seeking "core documents" somehow separate and apart from its as-served RFPs. This characterization is both untrue and unhelpful.

X was surprised by Defendants' privilege log because it contains *none* of these documents. You claim that these documents have not been "identified to date," placing the quoted words in bold text. But that position facially contradicts countless representations made by Defendants. *Defendants* have consistently identified these documents as privileged from the very first meet-and-confer and at every subsequent meet-and-confer thereafter. These conferences have always referred to Hananoki's notes, drafts of the Article, and Donor identification and *Defendants* have always referred to these as documents they consider privileged. Since these are documents that *Defendants* have consistently discussed during meet-and-confers (and represented to the Court) as being privileged, they must have been identified by now. X will not accept a situation where Defendants have placed these documents on the bottom of the production stack such that X will receive these documents—or see them logged—for the first time at the close of discovery.

Although you stated on the call that the interrogatory responses would clarify Defendants' privilege objections regarding these documents and the application of the First Amendment and Texas "Press Shield laws," they do not. Instead, Defendants say that X must wait for "Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received" about the Articles prior to publication. Once again, this contradicts your claim that these documents have not been "identified to date," further reinforcing how Defendants must have identified some documents regarding the "specific feedback" that Defendant Hananoki received.

Making X guess about what will be produced and when does not comport with the Court's instruction that the parties meaningfully confer to clarify the privilege dispute and that required Defendants to alert the Court as to "whether any dispute regarding the assertion of First Amendment privileges remain." ECF No. 65 at 3. Please let us know when Defendants will receive a privilege log listing these documents and the production of documents referenced in Defendants' interrogatory responses. Otherwise, to keep this case moving in compliance with the Court's schedule, we will have no choice but to raise this issue in the motion to compel.

With respect to the items you have identified on your June 28, 2024 privilege log, below is our understanding of Defendants' assertions of privilege. We ask that you advise us by **Wednesday, July 31** if any of these understandings are mistaken so that the parties can cleanly tee up these issues for judicial resolution.

1. Defendants assert that all communications between Defendant Hananoki and any Media Matters editors about the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.
2. Defendants assert that all drafts of the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.
3. Defendants assert that all internal communications about *other* articles published by Media Matters are privileged under the Texas Shield Law but *not* under the First Amendment.
4. Defendants assert that all communications with third parties as part of drafting, researching, or revising articles written by Media Matters are privileged under both the Texas Sheild Law and the right of association protected by the First Amendment.

Lastly, we agree to the revised format for privilege logs that you propose below. However, we continue to object to any descriptors of third parties (e.g., "strategic vendor") that are undefined and vague. We expect that any revised descriptions will provide sufficient information for both X and the Court to evaluate each privilege claim.

App.334

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 24, 2024 12:34 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Thank you for meeting and conferring on Friday evening. Below is a summary of the key takeaways from our discussion:

*First*, regarding your concerns—expressed for the first time on our call—that Defendants had not included on their privilege log all materials that X considers "core documents," Defendants explained that X's discovery requests do not make any distinction regarding which documents X considers "core" to their case. Instead, X's requests seek every document in Defendants' possession that even *mention* broad terms or concepts (such as "content moderation," RFP No. 6) that are a regular component of Defendants' work. As Defendants have repeatedly explained, this search has swept in an incredible volume of documents for review. That review continues every day.

Defendants' first privilege log identified documents that had been reviewed and determined to be privileged as of the date of that log. The parties have mutually agreed to subsequent privilege log exchanges through the end of the year, recognizing that it will likely take several months to review all potentially responsive documents. This sequencing is consistent with a fair reading of the Court's orders and the parties' own agreements. The Court's June 6 order, as you know, was entered when discovery was set to close on July 29—that is, before the parties jointly sought an extension and thus before the Court recognized "the volume and complexity of ongoing document discovery" and extended the discovery deadline until December 31. *See* ECF No. 69. The parties subsequently negotiated a revised privilege log agreement, and on June 10 we memorialized via email an agreement reached by phone on how to proceed: "With respect to the June 28 'Deadline for Defendants to Provide First Privilege Log and Associated Documents,' the parties understand that on June 28 Defendants will produce a log **of any privileged documents identified to date**, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement." Then on July 2 we agreed to future privilege log exchanges in September, October, November, and December, and further agreed that this course of conduct did not require the Court's imprimatur. Just as X did not produce all responsive documents in its first (and so far, only) document production, it was not reasonable to expect Defendants to log all privileged documents in their first of several scheduled privilege logs, particularly since the parties had already stipulated that "neither side can reasonably meet the existing discovery deadlines." ECF No. 66 at 3. To the extent X now recognizes that the documents relevant to this case can be found through requests much narrower than those that X has served to date, Defendants welcome revised RFPs to expedite the review and logging of responsive documents.

In response to X's related concern about the lack of donor-related documents on their first privilege log, Defendants explained that this dispute is best presented for the Court's adjudication based on Defendants' responses and objections to X's interrogatories. Because Defendants are not separately searching for donor-related documents (as made clear in our objections and responses), these documents will appear on our privilege log only to the extent the documents are responsive to search terms generated by other requests. No such documents had been established as responsive and privileged as of the date of our first log.

*Second*, regarding your suggestion that Defendants waived any invocation of Texas's press shield law by failing to raise it in earlier discussions, in our July 19 email we pointed you to the shield objection raised in our very first responses and objections, and we further reminded you during our call that the shield law was discussed in the parties' very first discovery meet-and-confer in April. Where X has insisted that Defendants not employ general objections before document review has completed, *see, e.g.*, ECF No. 64 at 3 (X complaining that Defendants' invocation of the shield law in their original responses and objections lacked specificity), it is unreasonable to fault Defendants for raising privilege objections on a document-by-document basis, as contemplated by case law. To date, you have failed to provide us with any authority suggesting that a party waives a privilege by identifying it on their first privilege log.

*Third*, regarding your inquiry into the scope of Texas's press shield law, the parties agreed that the text of the statute speaks for itself. As we explained via email and on our call, the press shield is directly applicable to a media organization like Media Matters and journalists like Mr. Hananoki. During our recent call, we further explained that Defendants' first privilege log invokes the shield law only for documents with no conceivable relevance to this case and that are thus clearly not "essential to the maintenance of a claim or defense." Tex. Civ. Prac. & Rem. Code § 22.024.

*Fourth*, in both our July 19 email and subsequent discussion, Defendants agreed to discuss revisions to the privilege protocol and document descriptions to enhance clarity about the nature of documents being withheld. In response, we have prepared an example of a revised privilege log entry:

| Bates Number | Status | Document Type | From/ Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013760 | Withheld | Word | Pamela Vogel pvogel@mediamatters.org | | | | 12/5/2022 | First Amendment Privilege; TX Press Shield Laws | Agenda for an internal MMFA meeting regarding strategy for avenues of journalistic research and writing for the year, much of which was ultimately not pursued by the organization. The document summarizes right-wing media trends and includes a few stray references to Musk or Twitter outside the context of Musk's incendiary remarks or Twitter's advertisement placement.<br><br>**TX Press Shield Law:** This document reflects confidential and sensitive journalistic decision-making processes. |

App.335

| | | | | | | | First Amendment Associational Privilege: This document contains internal communications concerning strategy and messaging. |

If this addresses the concerns that you raised, Defendants will reproduce the entire log with similar changes.

Best regards,

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Abha Khanna
**Sent:** Friday, July 19, 2024 1:20 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

In advance of our call, to facilitate meaningful discussion and a good-faith attempt by both sides to resolve the issues, please find below Defendants' preliminary responses to the concerns you raised:

First, Defendants' Texas Press Shield Law assertions are timely. Contrary to your representations, our original responses and objections to X's First and Second RFP sets *did* reference shield laws—we objected to producing "documents or communications that are protected by the attorney-client privilege, work-product doctrine, **and/or any other applicable privilege or shield law**, and/or constitute trial preparation material within the meaning of Rule 26." (emphasis added); *see also* ECF 64, Pls' Reply in Support of its Motion to Compel at 3 ("As X detailed in its motion, Defendants asserted a catchall objection to X's requests for production for attorney-client privileges, work-product protections, "and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26."). Because Defendants were still in the process of collecting and reviewing initial batches of documents, we could not be certain at that time what information would be found in the documents and which privileges would be implicated. You objected to the use of general objections that were not tied to specific documents, and so Defendants removed this language from subsequent amendments to our discovery responses and agreed to log privilege objections on a document-by-document basis. *See, e.g.*, Second Amended Responses and Objections to Plaintiff's 1st Requests for Production; Amended Responses and Objections to Plaintiff's 1st Requests for Production to Carusone; Amended Responses and Objections to Plaintiff's 2nd Requests for Production. Moreover, Defendants continued to raise the possibility that shield law privileges would be implicated and to preserve our right to make the objection if it was implicated. In our joint ESI Protocol, Defendants expressly added privilege preservation language that states: "Nothing in this Stipulation shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, First Amendment Privilege, reporter's privilege, shield laws, or any other applicable privilege or immunity." *See* ECF 67 at 2.

Contrary to Plaintiff's shifting argument, Defendants' assertion of this privilege could not have been both *premature* when raised in their initial R&Os and yet also *too late* when raised in their first privilege log. *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022) (quoting *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020)) (noting the "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself"). (To be clear, nor have Defendants waived privileges that they did not assert in their first log. Waiver would occur only as to specific documents that Defendants voluntarily and knowingly disclose. *See, e.g., AHF Community Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 148 (N.D. Tex. 2009).)

Second, the Texas Press Shield Law privilege is applicable. "Under Fed. R. Evid. 501, the availability of a privilege in a diversity case is governed by the law of the forum state," allowing Defendants to assert privileges provided by Texas law. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). The relevant statute, Tex. Civ. Prac. & Rem. Code Ann. § 22.023 provides that "a judicial . . . body with the authority to issue a subpoena *or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding*" any information covered by the privilege. Tex. Civ. Prac. & Rem. Code Ann. § 22.023(a) (emphasis added). The statute nowhere suggests that journalists forfeit the Shield Law's protections when they are defendants subject to requests for production rather than third parties subject to subpoenas. *See, e.g., Abraham v. Greer*, 509 S.W.3d 609, 613 (Tex. App. 2016) (trial court noting that the privilege would apply to the defendant if he was deemed to be a journalist). Plaintiff's reading would run afoul of the statute's very purpose, which includes "increas[ing] the free flow of information and preserv[ing] a free and active press." Tex. Civ. Prac. & Rem. Code § 22.022.

Far from limiting the Shield Law's scope, the subsequent section you cite to, Tex. Civ. Prac. & Rem. Code § 22.024, sets the high bar that Plaintiff must clear to overcome the relevant privilege. That section makes clear that a "compulsory process [can]not be[] used to obtain peripheral, nonessential, or speculative information," *id.* at § 22.024(5), and that the information being sought must be "essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure," *id.* at § 22.024(6). The documents Defendants logged as privileged under the Shield Law are fully protected under these provisions.

Third, Defendants disagree with Plaintiff's contention that their descriptions of documents are "vague," "generalized," or "insufficiently specific." Defendants are not obligated to reveal identifying details—including, for example, details identifying strategic vendors and partners—that may undermine or abrogate the very privilege they assert. Defendants' descriptions preserve the privilege's protections while informing Plaintiff of the types of communications found within the identified documents. Defendants are open to discussing the additional detail that you believe is appropriate to discern if any compromises can be reached.

Fourth, Defendants continue to disagree with Plaintiff about the availability of the First Amendment privilege in civil litigation discovery disputes. We again refer Plaintiff to the ample arguments and caselaw we have provided over the last several months on the subject.

Lastly, Defendants will take a closer look at document MMFA_013760 to discern if the information Plaintiff seeks is accessible and, if so, will update the log accordingly. In light of the Parties' recent agreement to include date information on the privilege log, Defendants will also re-issue the log with that column included.

We look further to discussing further later today.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Tuesday, July 16, 2024 12:14 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Daniela,

We're available to meet at 4:00 ET / 3:00 CT on Friday. We'll send around a calendar invite.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Daniela Lorenzo <dlorenzo@elias.law>
**Sent:** Monday, July 15, 2024 3:39 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is not available until Friday between 3-5 ET. If that works for your team, please send us a calendar invite in that time range. If not, please propose times that work for you all next week.

Best,
Daniela

**Daniela Lorenzo** (she/her)
Litigation Associate
Elias Law Group LLP
202.987.5400
dlorenzo@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 12, 2024 9:47 PM
**To:** Jacob Shelly <jshelly@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Pursuant to Section III of the parties' Revised Stipulation for the Exchange of Privilege Logs and the Court's order on X's motion to compel (ECF No. 65), X objects to the assertions of privilege for the following documents (identified by Bates label):

MMFA_013561, 013562-013579, 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013749-013755, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788.

As the Court instructed, we would like to meet and confer regarding our objections. Please let us know your availability to confer next week from Tuesday (7/16) onward.

To aid the discussion, we have briefly set out our overarching objections to your privilege assertions. These descriptions are not meant to be exhaustive and are made without intention of waiving or limiting any argument that X may advance in any future motion practice.

1. Assertion of privilege based on "TX Press Shield Laws" (MMFA_013561, 013562-013579, 013580-013597, 013580-013597, 013598-013616, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788):
    - The assertion is untimely and therefore waived.
        - The parties have met and conferred over the privileges asserted by Defendants many times over the past several months, and prior to this June 28 privilege log submission, the only specific privileges asserted were a federal-law reporter's privilege (e.g., RFP No. 1), purported associational rights, (e.g., RFP No. 3), and protection of donor information. (e.g., RFP No. 17).
    - The privilege is substantively inapplicable.
        - On its own terms, Texas's shield law applies only to "subpoenaing . . . information." Tex. Civ. Prac. & Rem. Code § 22.024(4). As parties to this litigation, Defendants are instead subject to the Federal Rules of Civil Procedure governing disclosure and production of documents. See Fed. R. Civ. P. 26 & 34.
        - The assertion of privilege exceeds the scope of any statutory protections, which would extend at most to certain materials "prepared while acting as a journalist" or the "source" thereof. Tex. Civ. Prac. & Rem. Code § 22.023(1)-(2).
    - Defendants' generalized claim of privilege for "internal strategic communications," "MMFA's journalistic process and procedures," "process" and/or "strategy" is insufficiently specific.
        - Even if the Texas Civil Practice & Remedies Code applies here (and Defendants fail to specify which specific statute would cover the documents at issue) these assertions are vague, generalized and do not provide sufficient detail for X or the Court to determine how or why the underlying document would be privileged.

2. Assertion of a First Amendment and/or "TX Press Shield Laws" privilege with respect to "strategic vendors," "vendor[s]," "researching organizations," or "strategic partners" (MMFA_013562-013579; 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013716-013748, 013756, 013757, 013766, 013784):
    - This assertion is vague, impermissible boilerplate. X is unable to determine what a "strategic vendor" is or why the identities of Defendants' "strategic vendors" would be privileged. The same is true for Defendants' assertions of privilege based on "researching organizations" and "strategic partners," as well as any communications between Defendants and any "vendor."
    - The First Amendment does not protect the disclosure of vendor identities during discovery in civil litigation between private parties. The same is likely true of Defendants' claim of privilege with respect to "researching organizations" and "strategic partners," however Defendants' privilege log does not contain sufficient detail for X to determine the First Amendment's applicability, if any.
    - The assertion of a "TX Press Shield Laws" privilege suffers deficiencies similar to those identified above.

3. Assertion of privilege for any material purportedly unrelated to this case and, specifically, any assertion of First Amendment privilege with respect to allegedly unrelated communications with journalists (MMFA_013749-013755):
    - Defendants' descriptions provide no information allowing X or the Court to gauge whether the documents are "unrelated." If Defendants claim a document is unrelated, Defendants must provide sufficient information to allow X to assess whether to dispute that characterization.
    - The asserted First Amendment privilege is also too vague and lacking in detail to allow X or the Court to determine the applicability of the privilege.
    - The First Amendment does not protect responsive communications in civil litigation between private parties.

4. Assertion of First Amendment privilege with respect to an internal MMFA strategy meeting (MMFA_013760):
    - This assertion does not provide sufficient information to allow X or the Court to determine the applicability of the privilege. For example, the privilege log does not list an author, date, or other pertinent information.
    - The First Amendment does not shield discussions about journalistic strategy from discovery in civil litigation between private parties.

Best,

**Alexander M. Dvorscak**
Attorney
STONE | HILTON PLLC
1115 W. Slaughter Ln.
Austin, Texas 78748
alex@stonehilton.com | (518) 772-8657
www.stonehilton.com

CONFIDENTIALITY NOTICE:
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or the work-product doctrine. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

App.338

**From:** Jacob Shelly <jshelly@elias.law>
**Sent:** Friday, June 28, 2024 10:18 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>
**Subject:** RE: X/MMFA - Defendants' Fifth Production


Counsel,

Attached please find a letter regarding Defendants' fifth document production and the accompanying privilege log.

**Jacob Shelly**
Elias Law Group LLP
250 Massachusetts Ave NW Suite 400
Washington DC 20001
202-968-4496

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

TAB 9

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANTS MEDIA MATTERS FOR AMERICA AND ERIC HANANOKI'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION

Defendants Media Matters for America ("Media Matters") and Mr. Eric Hananoki,[1] through their undersigned counsel, submit these amended responses and objections to Plaintiff X Corp.'s First Set of Requests for Production ("Discovery Requests" or "Requests"), initially served on March 11, 2024. Defendants' amendments are made based on conferral among counsel.

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants'

---

[1] Plaintiff's First Set of Requests for Production were served on February 5, 2024, prior to when Plaintiff amended its complaint to include Angelo Carusone as a defendant. Therefore, these Responses and Objections are not on behalf of Mr. Carusone. All references to Defendants herein are to Media Matters and Mr. Hananoki only.

1

App.341

investigation into the issues raised in this lawsuit and documents responsive to Plaintiff's Discovery Requests is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s) and/or on a document-by-document basis, or to move for a Court order if deemed appropriate.

By making the accompanying responses and objections to Plaintiff's Discovery Requests, Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses and documents into evidence in this action, or in any other proceedings.

Produced materials will adhere to formal ESI protocol, privilege material agreement, and any protective order agreed to by Counsel for Plaintiff and Defendants and entered by the Court and will be produced on a rolling basis. As of the date of these Amended Responses and Objections, the Parties have yet to agree upon or submit for the Court's approval any of these documents. Any previous or forthcoming production by Defendants is made without waiver of their rights and privileges according to those documents once they are finalized and entered by the Court.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters or Eric Hananoki and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

## RESPONSES TO INDIVIDUAL REQUESTS

**REQUEST FOR PRODUCTION NO. 1**: All versions of the November 16, 2023 Article, including but not limited to all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto, and including all prior versions previously available on the Website.

**OBJECTIONS**: The Request does not define the term "notes," but Defendants interpret the term as used here consistent with its ordinary meaning to ask for written records created in the process of reporting, writing, and publishing the November 16, 2023 Article. In its May 24, 2024 Motion to Compel, Plaintiff indicated that it agrees with Defendants' definition. *See* ECF 60, Pl.'s Mot. to Compel, at 7.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 2**:  All source materials, research, screenshots, Platform account data, and other documents or communications relied on, referenced, created, or considered by You in conceiving of, investigating, working on, writing, publishing, and disseminating the November 16, 2023 Article.

**OBJECTIONS**: The Request does not define the term "Platform account data." After conferring with Plaintiff, Defendants interpret the term as used here to ask for usernames, posts, chats, and comments of, as well as emails generated from, accounts on the X Platform relied on, referenced, created, or considered in investigating, working on, writing, publishing, and disseminating the referenced article. *See also* ECF 60, Pl.'s Mot. to Compel, at 7. Plaintiff also

3                              App.343

includes "login information" in their definition of Platform account data, but Defendants object to this as not relevant and disproportionate to the needs of the case since it seeks sensitive username and password information. Defendants further object to this Request because it seeks Platform account data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with the relevant account handles.

Defendants will otherwise produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 3**:  All documents and communications related to the November 16, 2023 Article, including but not limited to internal communications, communications with the public (including social media posts), communications with donors, communications with journalists, and communications with the advertisers mentioned in the November 16, 2023 Article.

**OBJECTION**: Defendants object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and

App.344

deterred from affiliating with organizations they support.[2]  Indeed, Elon Musk himself has called

Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue

not just the organization but anyone funding that organization. I want to be clear about that anyone

funding that organization, will be, we will pursue them".[3]  Plaintiff's request for this information

is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on this objection, Defendants will not produce identifying donor

information in response to this request. Defendants will otherwise produce on a rolling basis any

responsive, nonprivileged documents in their possession, custody, or control that they are able to

locate following a reasonable search. Defendants are in the process of collecting and reviewing

documents and are not presently withholding any responsive documents that they have identified.

Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 4**:   All audio and video recordings of You discussing or

referencing in any way the November 16, 2023 Article, including but not limited to documents

---

[2] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[3] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

reflecting any URLs for any such recordings of You that are in the possession, custody, or control of third parties.

**OBJECTIONS**: Defendants object to this Request because it purports to seek materials "in the possession, custody, or control of third parties" and therefore falls outside the scope of Fed. R. Civ. P. 26 and 34.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents. Defendants will not search for or produce any documents that are in the possession, custody, or control of third parties.

**REQUEST FOR PRODUCTION NO. 5**:  All documents and communications discussing or mentioning X, the Platform, Elon Musk, or Linda Yaccarino, including but not limited to email updates, "Action Updates," or "Weekly Updates," that were sent out via any email, text, phone, social media, or other distribution list that You maintain.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 6**: All documents and communications concerning content moderation on the Platform.

    **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 7**: All documents and communications concerning advertising on the Platform, including but not limited to documents and communications concerning any particular advertiser or potential advertiser on the Platform.

    **OBJECTION**: The Request does not define "advertiser," but Defendants interpret the term to mean all X advertisers listed in Plaintiff's amended complaint. To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all the entities that have advertised on X, much less all entities that X may view as a "potential advertiser".

    **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Based on the objection above, Defendants will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 8**:   All communications with X's advertisers concerning the Platform, including but not limited to communications regarding their decision to advertise on the Platform.

      **OBJECTION**: The Request does not define "X's advertisers," but Defendants interpret the term to mean all X advertisers listed in Plaintiff's amended complaint**.** To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all of X's advertisers.

      **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Based on the objection above, Defendants will not search for or produce any documents concerning advertisers not listed in X's amended complaint. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 9**:  All communications with  X's advertisers  about advertising with or financially supporting You.

      **OBJECTION**: The Request does not define "X's advertisers," but Defendants interpret the term to mean all advertisers listed in X's amended complaint**.** To the extent Plaintiff means something different, Defendants object to this Request as vague because Defendants do not know the identity of all of X's advertisers.

App.348

Appx. 192

**RESPONSE**: Neither Media Matters nor Eric Hananoki has any documents responsive to this request for the advertisers listed in X's amended complaint.

**REQUEST FOR PRODUCTION NO. 10**: All posts, comments, direct messages, and any other account data of any kind whatsoever posted by You on the Platform, including but not limited to the @mmfa and @ehananoki accounts and any accounts used in the creation of the November 16, 2023 Article.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll posts, comments, direct messages, and any other account data of any kind whatsoever" of various accounts, even where the information it seeks is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Defendants further object to this Request because it seeks data that is already within X's possession and is therefore more convenient, less burdensome, and less expensive for X to access outside of discovery.

**RESPONSE**: The Parties are still discussing the extent to which some or all of the Platform account data is in the custody, possession, and control of X and more easily accessible by X. Once the Parties have resolved that question, Defendants will provide Plaintiff with account handles related to the claims and issues in this case and otherwise produce on a rolling basis any responsive, nonprivileged materials related to the claims and issues in this case that are in their possession, custody, or control and that they are able to locate following a reasonable search.

**REQUEST FOR PRODUCTION NO. 11**: All communications with appointed or elected public officials, candidates for public office, candidate campaign committees, political party committees, PACs, 501(c)(4) groups, and any other political actors or political operatives.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll communications" with an unquantifiable number of potential individuals and entities on unspecified topics, even where these are immaterial and unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. Indeed, there are over 500,000 public officials in the U.S.,[4] not counting individuals not currently in office or candidates; over 70,000 registered 501(c)(4)s[5]; and over 8,500 PACs.[6]

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Pursuant to X's representations at the May 27, 2024 meet-and-confer, Defendants await a revised request that is tailored to the claims and defenses at issue in this case.

---

[4] *How many politicians are there in the USA? (Infographic),* PoliEngine, https://poliengine.com/blog/how-many-politicians-are-there-in-the-us (last accessed May 27, 2024).

[5] *How many nonprofits are there in the US?*, USA Facts (Nov. 2024), shttps://usafacts.org/articles/how-many-nonprofits-are-there-in-the-us/ (last accessed May 27, 2024).

[6] *Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=O (last accessed May 27, 2024); *see also Committees*, Federal Election Commission, https://www.fec.gov/data/committees/?committee_type=V&committee_type=W (last accessed May 27, 2024).

**REQUEST FOR PRODUCTION NO. 12**: All IRS Form 990s for Media Matters, regardless of time period, since the founding of Media Matters.

**RESPONSE**: Defendants have produced and will continue to produce on a rolling basis Media Matters's Form 990 tax returns.

**REQUEST FOR PRODUCTION NO. 13**: All annual financial statements for Media Matters, regardless of time period, since the founding of Media Matters.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll annual financial statements for Media Matters" since the organization's founding twenty years ago, with no indication of why this information would be material or related to the claims or defenses at issue in this case. Indeed, the Platform was not founded until 2006, two years *after* Media Matters was founded. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). Indeed, courts allowing the discovery of financial information for punitive damages generally limit the temporal scope of those documents. *See, e.g.*, *Callais v. United Rentals North America*, No. 17-312, 2018 WL 6517446, at *6 (M.D. La. Dec. 11, 2018) (compelling production of annual reports, financial statements, and federal income tax returns for a three-year period); *Briones*, 2008 WL

4630485, at *5 (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008, where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008). A time period that would not produce relevant documents to the issue at hand is not reasonable and may be overly broad. *See, e.g.*, *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *9 (M.D. La. Mar. 30, 2022). Moreover, Defendants object to this request as duplicative of Request for Production No. 12, as Media Matters's 990 forms contain comprehensive information on Media Matter's annual finances. *See, e.g.*, *Vertex Aerospace, LLC v. Womble Bond Dickinson*, LLP, No. 309CV00704HTWLGI, 2022 WL 1830715, at *11 (S.D. Miss. Apr. 26, 2022) (holding request into assets and liabilities were disproportionate to the needs of the case, given the company's insurance coverage and its ability to provide a certified statement of its net worth).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 14**: All Your bank statements and all documents sufficient to show Your financial condition during the time period.

**OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll bank statements and all documents

sufficient to show [Defendants'] financial condition," with no indication of why this information—including personal financial information of an individual reporter—would be material or related to the claims or defenses at issue in this case. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 15**: All materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation of any kind whatsoever that You may currently owe, that You may owe in the future, or that You have owed during the time period, including but not limited to any monetary judgment in this matter.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires a blanket production of "[a]ll materials regarding Your insurers, insurance policies, indemnity rights, or any other third-party payors who may be liable or willing to satisfy any judgment, liability, or obligation *of any kind whatsoever*," even where the information would be immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses such as employee medical and dental insurance policies.

**RESPONSE**: Defendants direct Plaintiff to Section IV of Defendants' Initial Disclosures, served to counsel on March 8, 2024 via email, Defendants' Amended Initial Disclosures, served to counsel on May 8, 2024, and any subsequent revisions to Defendants' Initial Disclosures, which, pursuant to Federal Rule of Civil Procedure 26 (a)(1)(A)(iv), lists "any insurance agreement under

14

**App.354**

which an insurance business may be liable to satisfy all or part of a possible judgment in th[is] action or to indemnify or reimburse for payments made to satisfy the judgment [in this litigation]." Defendants will produce any responsive, non-privileged documents related to the issues in this litigation. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 16**: Documents sufficient to show Your expenses and the identity of the recipients of such expenditures, including but not limited to expenses on salaries, travel, equipment, real property, solicitation of donations, and any other expenses whatsoever.

    **OBJECTIONS**: Defendants object to this Request as being overly broad, vague, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request requires producing a high-volume of sensitive financial information— including a limitless amount of unrestricted "expenses"—that are immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. While federal courts allow plaintiffs bringing punitive damages to engage in pretrial discovery of financial information, *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008), this does not provide plaintiff "*carte blanche* to obtain all information [it] seeks," *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022). *See, e.g.*, *Briones*, 2008 WL 4630485, at *7 (limiting discovery of relevant financial information to defendant's annual reports and/or financial statements); *see also Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *8 (S.D. Tex. Dec. 14, 2011) (limiting

15

App.355

financial disclosures to defendant's most recent financial statement stating their current net worth and finding that all other discovery requests relating to net worth—including itemization of assets and liabilities, description of homes, real estate, and other possessions, salary, total earnings, W-2s and other documents, and financial statements over several years—were overly burdensome, excessive, and unnecessary); *Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2017 WL 2335646, at *7 (M.D. La. May 30, 2017) (finding a request for "'any and all documents' regarding virtually everything [defendant] owns" was "unreasonably burdensome"); *Regions Ins., Inc. v. Alliant Ins. Servs., Inc.*, No. 3:13-CV-667-HTW-LRA, 2015 WL 1886852, at *7 (S.D. Miss. Apr. 24, 2015) (holding defendant was only required to provide a current net worth statement, certified by independent auditors, with any supporting documentation that the auditors include with its statement); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "statements for all credit cards used by [an employee]" overly broad because it exceeded the limited subject matter of the litigation); *Hunter v. Copeland*, No. CIV.A. 03-2584, 2004 WL 1562832, at *5 (E.D. La. July 12, 2004) (finding a request for "documents evidencing transfers of money" to an employee, which largely included salary payments, to be overly broad).

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

16    App.356

**REQUEST FOR PRODUCTION NO. 17**: Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

      **OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks a high-volume of sensitive financial information "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[7]

---

[7] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year,

17

App.357

Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[8] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

**RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. Defendants direct Plaintiff to Media Matters's 990 forms, most of which have already been produced to Plaintiff. Any remaining 990 forms will also be produced. These forms provide a comprehensive financial picture of Media Matters, including its net worth.

**REQUEST FOR PRODUCTION NO. 18**: Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

_____

as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[8] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks information about any communications soliciting financial support "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[9] Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding

---

[9] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them."[10] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

 **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time.

**REQUEST FOR PRODUCTION NO. 19**: Documents sufficient to identify the recipients of any communications or email updates, "Action Updates," or "Weekly Updates" sent out via any email list that You maintain, as well as any information related to those recipients' locations, including but not limited to any self-reported location data and their IP addresses.

 **OBJECTION**: Defendants object to this Request as being overly broad, not reasonably particularized, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. The identities of individuals who subscribe to Defendants' email lists are not relevant to any claims or defenses in this case, and their disclosure is reasonably likely to subject recipients to harassment. *See NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) (recognizing disclosure of nonprofit organization's membership lists would likely result in harassment).

 **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search for documents that identify the location of recipients of any communications or

---

[10]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

email updates, "Action Updates," or "Weekly Updates" sent by Defendants via any email list. Defendants will not provide documents that disclose identifying information of individual recipients.

**REQUEST FOR PRODUCTION NO. 20**: Documents sufficient to show Media Matters' organizational structure, including Board membership, leadership structure, and that of any affiliated or related entities.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 21**: All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**OBJECTIONS**: Defendants object to this Request as harassing. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure

of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[11]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them".[12]  Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

> **RESPONSE**: Based on the foregoing objections, Defendants will not produce documents in response to this Request at this time. In any event, Media Matters does not receive any dedicated funding that is restricted for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

**REQUEST FOR PRODUCTION NO. 22**: All documents concerning, and communications with, any third-party public relations, advertising, marketing, communications, or similar firm that

---

[11] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

[12] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

App.362

You have contracted with, or that you have contacted in any capacity about the November 16, 2023 Article.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 23**: All documents and communications related to or reflecting any travel by Eric Hananoki from October 20, 2023, to December 15, 2023.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, and disproportionate to the needs of this case, and as seeking documents not relevant to any claim or defense asserted in this litigation. This Request impermissibly requires blanket production of "[a]ll documents and communications related to or reflecting *any* travel" by Mr. Hananoki during the specified time period, even where not reasonably related to the issues in dispute in this case or the parties' defenses. This request also is harassing to Mr. Hananoki, as he is being asked to search through and disclose any and all documents—including flights, hotels, meal receipts, texts, calls, photographs, and more—related to any travel, including personal travel with his family that has no relevance to the claims or defenses being litigated in this case and despite Defendants' assurances that Mr. Hananoki did not conduct any work-related travel during the time period. Indeed, Defendants understand from the Parties' meet-and-confers that Plaintiff seeks to account for Mr. Hananoki's whereabouts and activities during this time period without qualification. Moreover, Defendants further object to this Request as

App.363

duplicative of and/or cumulative of other document requests, including Document Requests Nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 14, 15, 16,17, 18, 19, 20, 21, 22, 24, 25, 28, 30, 31, 32, 33, 34, 36, 37 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47. Any relevant information Plaintiff seeks with this request, beyond what Defendants have already certified, are captured by X's many other broad requests.

**RESPONSE**: Defendants do not possess any responsive documents relevant to any claim or defense in this litigation because, as Defendants made clear to Plaintiff in their email of May 2, 2024, Mr. Hananoki did not conduct any travel from October 20, 2023, to December 15, 2023 undertaken in relation to his research or drafting of the November 16, 2023 article. In addition, he did not travel to Texas in any capacity during this time.

**REQUEST FOR PRODUCTION NO. 24**: All of Your calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments from October 20, 2023, to December 15, 2023.

**OBJECTIONS**: Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request impermissibly requires blanket production of "[a]ll calendars, journals, schedules, activity logs, visitors' logs, diaries, or appointments" during the specified time period, even where not reasonably related to the issues in dispute in this case. This request is also harassing because it is asking Defendants to essentially account for all of their activities and appointments, including personal activities and appointments, without qualification.

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents related to any of X's employees, policies, or advertisers listed in the amended complaint or the issues raised in the amended complaint that are in their possession, custody, or control and

24

App.364

that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 25**: All documents and communications related to or reflecting Your involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms."

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**App.365**

**REQUEST FOR PRODUCTION NO. 26**: All documents and communications related to or reflecting Media Matters' Board's involvement in or knowledge of X and any related entities, individuals, and platforms.

      **OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34.

      **RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search and in light of Defendants interpretation of the terms. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**REQUEST FOR PRODUCTION NO. 27**: All documents and communications related to or reflecting Media Matters' donors' involvement in or knowledge of X and any related entities, individuals, and platforms.

26

**App.366**

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a). Defendants further object to the disclosure of donor identification information as harassing. Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support.[13]  Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear

---

[13] *See, e.g.*, *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 616–17 (2021) ("The petitioners here, for example, introduced evidence that they and their supporters have been subjected to bomb threats, protests, stalking, and physical violence. App. in No. 19–251, at 256, 291–292. Such risks are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children") (internal citation omitted); *see also Koch Ally Says He Received Death Threats*, Matt Reynolds, Courthouse News (Feb.25, 2016) (libertarian businessman whose affiliation with the Americans for Prosperity Foundation was leaked said "he received death threats and had considered quitting the foundation because he was worried about his family's safety and the adverse effect of protests outside his North Carolina stores") (last accessed May 28, 2024).

about that anyone funding that organization, will be, we will pursue them".[14] Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

     **RESPONSE**: Defendants will produce on a rolling basis, any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search. Defendants will not search for or produce materials outside of Defendants' possession, custody, or control, nor will Defendants produce identifying donor information in response to this request. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

     **REQUEST FOR PRODUCTION NO. 28**: All documents and communications related to or reflecting Media Matters' employees' involvement in or knowledge of X and any related entities, individuals, and platforms.

     **OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it

---

[14]*@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM), [https://perma.cc/6L3M-SHX3] (last accessed May 28, 2024).

App.368

considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a).

**RESPONSE**: Defendants will produce on a rolling basis any responsive, nonprivileged documents in their possession, custody, or control, based on their understanding of the relevant terms, that they are able to locate following a reasonable search through the relevant custodians' files. Defendants are in the process of collecting and reviewing documents and are not presently withholding any responsive documents that they have identified. Defendants will supplement this response if they identify and withhold any responsive documents.

**<u>REQUEST FOR PRODUCTION NO. 29</u>**: All documents and communications related to or reflecting Media Matters' advertisers' and agencies' involvement in or knowledge of X and any related entities, individuals, and platforms.

**OBJECTIONS**: The terms "any related entities, individuals, and platforms" are vague and undefined. Defendants will accordingly interpret "related entities" to include X Holdings Corp., X's holding company. Defendants will interpret "related individuals" to mean former and current X or Twitter employees, executives, and board members. Defendants will interpret "related platforms" to include Twitter. To the extent Plaintiff means something else with any of these terms, Defendants object to the request as vague absent identification from Plaintiff of who and what it considers to be "related entities, individuals, and platforms." Defendants also object to this request because it seeks materials outside of Defendants' possession, custody, or control in violation of Fed. R. Civ. P. 26 and 34(a).

**RESPONSE**: Defendants do not possess any documents that are responsive to this Request because Media Matters does not have any advertisers or agencies.

**GIBSON, DUNN & CRUTCHER LLP**
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna* (WA 42612) 1700
Seventh Avenue, Suite 2100
Seattle,  WA 98101
T:  (206) 656-0177
F:  (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)  250
Massachusetts Ave, NW Suite 400
Washington, D.C. 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law
* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America and Eric Hananoki*

App.370

# Doc. 87

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| X CORP.,<br><br>   **Plaintiff,**<br><br>  v.<br><br>**MEDIA MATTERS FOR AMERICA,**<br>**et al.,**<br><br>   **Defendants.** | **Civil Action No. 4:23-cv-01175-O** |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DONOR-RELATED DOCUMENTS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 3

   I.  Defendants have not waived any First Amendment protections ......................................... 3

   II.  The donor information that X demands is privileged by the First Amendment ................ 8

      A.  First Amendment protections extend to discovery disputes between
private parties .................................................................................................... 9

      B.  The First Amendment privilege applies to organizational membership and
donor lists ........................................................................................................ 13

      C.  There is a reasonable probability that compelled disclosure of Media Matters's donors
will subject the donors to threats, harassment, and reprisals ...................................... 14

      D.  X cannot show that donor names are "highly relevant" to its claims. ........................ 16

   III.  X's harassing requests for irrelevant donor information fall outside the proper scope of
discovery ............................................................................................................. 19

CONCLUSION ............................................................................................................ 20

App.373

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021) ................................................................13, 16, 18

*Anderson v. Hale,*
    No. 00 C 2021, 2001 WL 503045 (N.D. Ill. May 10, 2001) ....................................9

*Brady v. Klentzman,*
    515 S.W.3d 878 (Tex. 2017) ................................................................18

*Britt v. Super. Ct. of San Diego Cnty.,*
    574 P.2d 766 (Cal. 1978) ................................................................10

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ................................................................8, 14

*Carrier v. Ravi Zacharias Int'l Ministries, Inc.,*
    No. 1:21-CV-3161-TWT, 2023 WL 2355891 (N.D. Ga. Mar. 3, 2023) ..................................9

*Cuomo v. Clearing House Ass'n, LLC,*
    557 U.S. 519 (2009) ................................................................20

*Familias Unidas v. Briscoe,*
    544 F.2d 182 (5th Cir. 1976) ................................................................13

*Flynn v. Square One Distrib., Inc.,*
    No. 6:16-mc-25-Orl-37TBS, 2016 WL 2997673 (M.D. Fla. May 25, 2016) ..........................9

*Grandbouche v. Clancy,*
    825 F.2d 1463 (10th Cir. 1987) ................................................................9

*Gueye v. Mike Bloomberg 2020 Inc.,*
    Nos. 4:20-cv-00487-BP through 4:20-cv-00490-BP, 2021 WL 3910341 (N.D.
    Tex. Mar. 12, 2021) ................................................................10, 11

*Hamilton v. Geithner,*
    No. 1:08cv1112 (JCC), 2009 WL 2240358 (E.D. Va. July 23, 2009) ................................20

*Hardy v. Gissendaner,*
    508 F.2d 1207 (5th Cir. 1975) ................................................................12

*Hastings v. N. E. Indep. Sch. Dist.,*
    615 F.2d 628 (5th Cir. 1980) ................................................................2, 13

App.374

*Henry v. First Nat'l Bank of Clarksdale,*
    444 F.2d 1300 (5th Cir. 1971) ............................................................12

*Hickman v. Taylor,*
    329 U.S. 495 (1947)......................................................................20

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,*
    No. 75 Civ. 5388 (MJL), 1985 WL 315 (S.D.N.Y. Feb. 28, 1985)................10

*Johnson v. TheHuffingtonPost.com,*
    21 F.4th 314 (5th Cir. 2021) ...........................................................17

*La Union Del Pueblo Entero v. Abbott,*
    No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022).............4, 10, 14

*Media Matters for Am. v. Bailey,*
    No. 24-CV-147 (APM), 2024 WL 3924573 (D.D.C. Aug. 23, 2024)......................1

*Media Matters for Am. v. Paxton,*
    No. 24-cv-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024) ......................1

*Mize v. McGraw-Hill, Inc.,*
    82 F.R.D. 475 (S.D. Tex. 1979).....................................................11, 12

*In re Motor Fuel Temperature Sales Pracs. Litig.,*
    641 F.3d 470 (10th Cir. 2011) ..........................................................9

*NAACP v. State of Ala. ex rel. Patterson,*
    357 U.S. 449 (1958)...............................................................8, 10, 13

*Ohno v. Yasuma,*
    723 F.3d 984 (9th Cir. 2013) ..........................................................12

*Owens-Corning Fiberglas Corp. v. Malone,*
    972 S.W.2d 35 (Tex. 1998).............................................................18

*Perry v. Schwarzenegger,*
    591 F.3d 1147 (9th Cir. 2010) .....................................................9, 11, 16

*Pulte Home Corp. v. Montgomery County,*
    No. GJH-14-3955, 2017 WL 1104670 (D. Md. Mar. 24, 2017)............................9

*Samsung Elec. Am., Inc. v. Chung,*
    321 F.R.D. 250 (N.D. Tex. 2017)......................................................17

*Sharp Corp. v. Hisense USA Corp.,*
    292 F. Supp. 3d 157 (D.D.C. 2017)....................................................12

*Shelley v. Kraemer*,
    334 U.S. 1 (1948) ........................................................................................... 10

*Sierra Club v. Energy Future Holdings Corp.*,
    No. 5:10CV156, 2013 WL 12244352 (E.D. Tex. Dec. 30, 2013) ...................... 9, 11, 14, 18

*Sierra Club v. Union Elec. Co.*,
    No. 4:14-cv-00408-AGF, 2015 WL 9583394 (E.D. Mo. Dec. 31, 2015) ................... 9

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ..................................................................... 9, 10, 13

*Young Conservatives of Tex. Found. v. Univ. of N. Tex.*,
    No. 4:20-CV-973-SDJ, 2022 WL 2901007 (E.D. Tex. Jan. 11, 2022) ................... 14

## Other Authorities

Fed. R. Civ. P. 26(b)(1) ............................................................................... 19, 20

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................ 19

App.376

## INTRODUCTION

X's motion to compel asks this Court to order unfettered disclosure of core privileged information protected by the First Amendment. To deflect the obvious constitutional prohibition against such compelled disclosure, X makes up a claim of waiver that is belied by the record and foreclosed by precedent. There is no serious waiver argument here, and an unbroken line of authority confirms that the donor information X demands is protected by the First Amendment. The Court should reject X's bid to trample upon the constitutional rights of Media Matters and its donors.

In reporting on misinformation and hate speech in the U.S. media, Defendants Media Matters for America, its President and CEO Angelo Carusone, and its Senior Investigative Reporter Eric Hananoki (collectively, "Media Matters") have made a lot of enemies. Their reporting on content moderation and brand safety deficiencies on X resulted in this lawsuit by one of the world's richest men, two abusive investigations by state attorneys general,[1] and a deluge of vitriolic, vulgar, and violent online threats. These threats have gotten worse since X filed this action. Shortly after the complaint was filed, one harasser sent Mr. Hananoki an image of a noose. Another emailed a Media Matters reporter a photograph of him and his wife and wrote, "We know where you live. Expect a visit." A voicemail received at Media Matters's office threatened "if you keep pushing things it will get to a point where there will be violence." And when the names of persons believed to be donors to Media Matters became public earlier this year, an avalanche of

---

[1] The U.S. District Court for the District of Columbia has enjoined Texas and Missouri investigations arising out of the Media Matters articles at issue here, finding that the investigations were likely retaliatory in violation of the First Amendment and that Media Matters's reporting was likely not defamatory. *See Media Matters for America v. Bailey*, No. 24-CV-147 (APM), 2024 WL 3924573, at *10 (D.D.C. Aug. 23, 2024); *Media Matters for America v. Paxton*, No. 24-cv-147 (APM), 2024 WL 1773197, at *18–19 (D.D.C. Apr. 12, 2024).

App.377

vicious attacks quickly followed. "You pedophiles won't be roaming free for too long," one poster wrote on the X platform. Another said, "I want to see the death penalty served on all of them."

No one should be subject to these vile threats merely for supporting a cause and organization they believe in. If X's motion to compel is granted, the inevitable result will be an even more expansive chill of the associational rights of Media Matters and its donors. The First Amendment is meant to protect against exactly this result, by guaranteeing the right to associate privately—free from interference and harassment—in furtherance of shared civic goals. *See Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980).

X cannot identify any caselaw requiring organizations to hand over full, unredacted donor lists to litigation opponents in analogous situations. Instead, it relies heavily on procedural arguments, urging the Court to skip the substantive question and instead find waiver. But Media Matters has waived nothing. It asserted First Amendment objections in its very first responses to X's requests for donor information, and then refined those objections at X's own urging. Media Matters also complied with its privilege log obligations, as set by this Court and as *agreed to by X*. Nor can X complain that Media Matters's first (of five) privilege logs deprived it of a ripe controversy for motions practice. Media Matters explained to X in July that the dispute was ripe for judicial resolution; it was X who chose to wait six weeks before presenting its arguments to the Court.

The reason that X leans so hard on procedural waiver is that Media Matters prevails on the substantive merits of its First Amendment defense. As the overwhelming weight of authority shows, the Constitution's protections apply in suits between private parties. Courts—including the Fifth Circuit—have been clear that private litigants may not commandeer the judiciary to order advocacy organizations to turn over private membership and donor lists. The application of the

App.378

privilege here is similarly straightforward. As Media Matters explains in the accompanying declaration, the organization has been the target of reprehensible threats of violence, with employees and donors subject to harassment. Thus, the privilege is at its zenith. Meanwhile, X is unable to identify *any* need to discover the personal identities and residential addresses of Media Matters's donors sufficient to overcome the privilege.

Finally, it is not just the First Amendment that X's discovery requests violate. Because the requests seek irrelevant information and perpetuate a campaign of harassment against Media Matters and their donors, they run contrary to the Federal Rules of Civil Procedure.

The motion to compel should be denied.

## ARGUMENT

### I.     Defendants have not waived any First Amendment protections.

X spends half of its brief searching for an argument that Media Matters waived its objections to identifying donors, but those objections have been carefully preserved—and exhaustively explained to X—over the entire course of discovery. X's retelling of the background to this dispute distracts from the *substantive* impasse that merits this Court's attention.

Media Matters preserved its First Amendment privilege objections. X admits that Media Matters's initial responses to X's requests for production objected to disclosing documents that would identify donors because the requests were harassing, because the underlying information is irrelevant to X's claims, and because the requests sought "disclosure of sensitive financial and associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights." X App. 47–49, ECF No. 85 (citing *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 611–13 (2021); *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958); *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160

App.379

(9th Cir. 2010)); *see also* X App. 51–52, 69–70 (same). After X asked Media Matters to remove "generalized" objections, Media Matters agreed to instead assert these privilege objections on a document-by-document basis, *see La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022), but was explicit that it was maintaining its objections that the requests are inappropriately harassing and sought irrelevant information. *See* X App. 128–30; 201–06.

When X moved in May to compel the production of these documents, Media Matters explained that X's efforts to overcome Media Matters's assertions of privilege were premature because—again, consistent with X's own assertions about its understanding of the law and consistent with Fifth Circuit precedent—Media Matters was reserving claims of privilege until it identified *specific* documents that were protected by specific privileges. *See* ECF No. 62 at 4–5. Media Matters separately argued that the requests for donor-identifying documents were inappropriate and harassing grasps for irrelevant information. *Id.* at 10–13. As to X's request for donor identities in particular, Media Matters stated that it was "virtually certain to implicate privilege," but proposed that "this Court can avoid altogether the need to adjudicate those anticipated [privilege] disputes by recognizing that requests for donor identities are inappropriately harassing and irrelevant." *Id.* at 11. The Court did not address Media Matters's categorical objections based on harassment and relevance, and—rather than crediting any of X's arguments about waiver—it deferred ruling on the anticipated privilege assertions until a privilege "protocol is established and responsive documents have been identified." ECF No. 65 at 2.

The Court initially ordered Defendants to deliver a privilege log to X by June 14, 2024, given that, at the time, discovery was scheduled to close in July. *Id.* Recognizing that the expedited schedule was unsuited to this case, however, X filed a joint motion on June 10 seeking to extend

App.380

the discovery window. ECF No. 66. As the motion explained, the parties agreed "that the requested
extension of deadlines is necessary to allow each side time to comply with the Court's order" on
X's motion to compel, and the parties "jointly propose[d] to allow additional time for the review
of documents for potential privilege assertions and production of privilege logs." *Id.* at 3 & n.3.
The Court extended discovery by five months and, as the parties had requested, set a June 28
deadline for Media Matters's *first* privilege log. ECF No. 69 at 1. The parties subsequently
negotiated a privilege protocol and agreed to a mutual exchange of privilege logs on September 6,
October 11, November 15, and December 17. Defs.' App. at 4–5, 7–11.

As promised, Media Matters served its first privilege log on June 28. As contemplated by
the parties' joint motion, that log did not include every single privileged document conceivably
responsive to X's many broad requests. Such an approach would have been impossible, and plainly
inconsistent with both the Court's order extending discovery and the parties' protocol establishing
additional privilege log exchanges through the rest of the year. Instead, consistent with its
agreement with X, Media Matters logged the documents that it had identified and determined to
be privileged as of the service date. Defs.' App. at 14 ("With respect to the June 28 'Deadline for
Defendants to Provide First Privilege Log and Associated Documents,' the parties understand that
on June 28 Defendants will produce a log of any privileged documents identified to date, along
with copies of any redacted documents referenced therein, with additional document productions
and privilege logs to follow in accordance with the parties' forthcoming Privilege Log
Agreement."). While this first assembly of privileged documents did not include any
communications *specifically with donors*, that is simply because X's broad requests (seeking, for
instance, "All documents and communications related to or reflecting [Media Matters's]
involvement in or knowledge of X and any related entities, individuals, and platforms," X App.

14) have swept in enormous quantities of documents for review that, as X agreed in the parties'
joint motion, require far more time and resources to review and log than the original case schedule
provided. *See* ECF 66 at 2 ("The scope of written discovery and the volume of document review
and collection is significantly exceeding that which the parties anticipated at the time they
conferred for the Joint Report regarding the schedule (ECF No. 13) and pursuant to Rule 26(f).").[2]

Moreover, the present dispute over donor-related discovery was ripe for resolution six
weeks before X filed its motion. *Cf.* Br. Supp. Mot. to Compel at 2, ECF No. 84 ("Br.")
(recognizing that "[a]ll parties agree that this issue presents a legal dispute ripe for resolution,"
notwithstanding Media Matters's first privilege log); *see also* Defs.' App. at 29–30. Indeed, the
issue became ripe as early as July 19, when Media Matters served responses and objections to X's
first set of interrogatories. In response to X's second interrogatory, which asked Media Matters to
identify its "top 20 funding sources," Media Matters objected that the request was harassing,
sought irrelevant information, and "represent[ed] a fishing expedition for highly sensitive and
privileged information, the production of which would chill Defendants' exercise of their First
Amendment speech and associational rights." Defs.' App. at 42–43. Thus, as Media Matters
explained to X in subsequent conferrals, there was no need for Media Matters to sift through the
haystack of collected documents to find a donor communication that it could log as privileged to
trigger X's ability to file a motion on this issue—it could do so based on Media Matters's objection

---

[2] The privilege log did, however, include many entries for documents protected by the First
Amendment associational privilege—thus, X's repeated assertions that Media Matters has "failed"
or "refused" to "log responsive documents withheld on privilege grounds," Br. at 1, 3, 6–8, is false.

App.382

to X's interrogatories. Defs.' App. at 29–30.[3] X nevertheless waited over six weeks to file the present motion.

X does not make any mention of this background (or even seek to compel a substantive response to Interrogatory No. 2), but it firmly establishes that X's waiver arguments are without merit: Media Matters did not waive the First Amendment privilege in its first objections, which explicitly identified the First Amendment privilege. X App. 47–49, 51–52, 69–70. That assertion of privilege was sufficiently particularized. It explained at length that the requested documents were sensitive and their disclosure would chill First Amendment speech and associational rights—with citations to two Supreme Court decisions, a Fifth Circuit decision, and a landmark Ninth Circuit decision recognized as persuasive by courts across the country, where each decision describes and applies that privilege that Media Matters identified. X App. 47–49, ECF No. 85 (citing *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 611–13 (2021); *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958); *Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010)); *see also* X App. 51–52, 69–70 (same). Media Matters also did not waive the First Amendment privilege by failing to describe the documents withheld because, as of the date of its first privilege log, it had not identified any donor-related documents that it was withholding based on privilege. App. Ex. 3 at 14; App. Ex. 4 at 30. And Media Matters did not waive the First Amendment privilege by failing

---

[3] X is also wrong to assert that because Media Matters has objected to separately searching for donor-related documents, Media Matters "therefore [has] refused to log documents that are responsive to X's requests for production seeking those documents." Br. at 3. As Media Matters explained to X during conferrals, documents *already* collected would likely be responsive to X's donor-related requests, and Media Matters assured it would log those privileged documents as they surfaced in the review process. Indeed, during the more than two months of review since it submitted its first privilege log, Media Matters has identified several donor-related documents that are included in its second privilege log.

to submit a timely privilege log because it *did serve* a privilege log by the agreed to June 28 deadline, and it will *continue to serve* privilege logs in accordance with the remaining deadlines.[4] The only purported "deficiency" that X has identified with this log is that it failed to include an exhaustive list of every responsive document in Media Matters's control that could be subject to privilege, but such an approach would be nonsensical in light of the discovery extension ordered by this Court and the privilege protocol negotiated and agreed to by X.

## II.     The donor information that X demands is privileged by the First Amendment.

As X concedes, the First Amendment associational privilege protects against compelled disclosure that would adversely affect an organization by "induc[ing] members to withdraw . . . and dissuad[ing] others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *NAACP*, 357 U.S. at 463; *cf.* Br. at 15. To be protected from disclosure, a movant "need show only a reasonable probability that the compelled disclosure of [an organization's] contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties." *Buckley v. Valeo*, 424 U.S. 1, 74 (1976). "The proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself. A pattern of threats or specific manifestations of public hostility may be sufficient." *Id.* Once this prima facie showing is made, the burden shifts to the party seeking the discovery to demonstrate "an interest in obtaining the disclosures it seeks which is sufficient to justify the deterrent effect on the free exercise of the constitutionally protected right of

---

[4] To the extent X's core concern is that it wants to receive certain categories of documents that it deems essential to its claims as early as possible, Media Matters proposed a discovery protocol on August 2 that would frontload the search and production (or logging) of these documents. Defs.' App. at 25. More than a month later, X still has not responded.

association." *Perry*, 591 F.3d at 1161 (citation omitted). "[T]he party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Id.*; *accord Whole Women's Health*, 896 F.3d at 372–74 (applying "the *Perry* balancing test"). Under this framework, X is not entitled to discover the identities of Media Matters's donors.

> ## A.  First Amendment protections extend to discovery disputes between private parties.

The nationwide consensus remains the same as it was the last time the parties briefed this issue: "the First Amendment privilege applies to discovery orders issued in litigation involving only private parties." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011). This is because a court order "compelling discovery and the trial court's enforcement of that order provide the requisite governmental action that invokes First Amendment scrutiny." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *see also Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, No. 1:21-CV-3161-TWT, 2023 WL 2355891, at *4 (N.D. Ga. Mar. 3, 2023) (recognizing, in dispute between private parties, that "courts have consistently recognized a qualified associational privilege in the discovery context"); *Pulte Home Corp. v. Montgomery County*, No. GJH-14-3955, 2017 WL 1104670, at *3 (D. Md. Mar. 24, 2017) (holding, in dispute between private parties, that "First Amendment protections apply in the context of discovery orders"); *Flynn v. Square One Distrib., Inc.*, No. 6:16-mc-25-Orl-37TBS, 2016 WL 2997673, at *2 n.4 (M.D. Fla. May 25, 2016) (similar); *Sierra Club v. Union Elec. Co.*, No. 4:14-cv-00408-AGF, 2015 WL 9583394, at *2 (E.D. Mo. Dec. 31, 2015) (similar); *Sierra Club v. Energy Future Holdings Corp.*, No. 5:10CV156, 2013 WL 12244352, at *3 (E.D. Tex. Dec. 30, 2013) (similar); *Anderson v. Hale*, No. 00 C 2021, 2001 WL 503045, at *3 (N.D. Ill. May 10, 2001) ("This same balancing test [for the government to overcome the associational privilege] equally applies to cases

involving two private parties."); *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, No. 75 Civ. 5388 (MJL), 1985 WL 315, at *9 n.16 (S.D.N.Y. Feb. 28, 1985) (rejecting argument that First Amendment privilege does not apply in discovery disputes between private parties); *cf. Britt v. Super. Ct. of San Diego Cnty.*, 574 P.2d 766, 774 (Cal. 1978) (en banc) (holding "the threat to First Amendment rights may be more severe in a discovery context, since the party directing the inquiry is a litigation adversary who may well attempt to harass his opponent and gain strategic advantage by probing deeply into areas which an individual may prefer to keep confidential").

The principle that discovery orders implicate state action follows directly from Supreme Court precedent. In *Shelley v. Kraemer*, 334 U.S. 1, 14–15 (1948), the Court recognized that the action of "courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of" the Constitution's state action requirements. Similarly, in *NAACP*, where the Supreme Court reviewed a state court order requiring a private organization to disclose its membership lists, the Court recognized "[i]t is not of moment that the State has here acted solely through its judicial branch, for whether legislative or judicial, it is still the application of state power which we are asked to scrutinize." 357 U.S. at 463. Since then, the Fifth Circuit and courts within it have taken the First Amendment privilege as a given, reviewing and adjudicating privilege assertions among private parties as a matter of course. *See, e.g.*, *Whole Woman's Health*, 896 F.3d at 369–70 (favorably reviewing First Amendment privilege claim by private third party in response to discovery requests from private plaintiffs); *Abbott*, 2022 WL 17574079, at *9 ("Private Plaintiffs must establish a substantial need for the withheld documents that outweighs the intrusion into the [private] Defendant Intervenors' constitutional rights."); *Gueye v. Mike Bloomberg 2020 Inc.*, Nos. 4:20-cv-00487-BP through 4:20-cv-00490-BP, 2021 WL 3910341, at *2 (N.D. Tex. Mar. 12, 2021) (adjudicating First Amendment privilege dispute between private

App.386

parties); *Energy Future Holdings Corp.*, 2013 WL 12244352, at *3 ("Defendants have not demonstrated an interest in the membership list that is sufficient to justify a potential deterring effect such a disclosure may have on the free exercise by [Plaintiff's] members of their constitutionally protected right of association."); *Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475, 478 (S.D. Tex. 1979) (recognizing invocation of First Amendment privilege was sufficient to defeat motion to compel in suit between private parties).

Faced with this one-sided caselaw, X misrepresents key authority. In discussing *Perry*, for example, the seminal Ninth Circuit case that recognized the First Amendment privilege in a discovery dispute between private parties, X contends "the governmental action in that case was unmistakable" because "litigants included government officials" defending a challenge to a state law. Br. at 11. Equally unmistakable, however, is that none of those government officials were involved in the discovery dispute at issue—private plaintiffs sought the production of private defendant-intervenors' internal campaign communications. *Perry*, 591 F.3d at 1152. X further tries to distinguish *Gueye* as a case where the assertion of privilege was unsuccessful, Br. at 13, but the mere fact that litigants may not win on every conceivable assertion of privilege does not suggest that the privilege is altogether unavailable in private litigation. Instead, the court's careful application of the *Perry* test in that case indicates the opposite. *Gueye*, 2021 WL 3910341, at *2–3. Finally, X seeks to distinguish *Mize* as a case applying the reporter's privilege "by reference to criminal grand-jury proceedings." Br. at 13. But the reporter's privilege is derived from the same First Amendment at issue here, and X does not provide any explanation of why the state action analysis would differ. Further, *Mize* was not a criminal case, and its holding was not contingent on criminal cases. There, a private plaintiff suing a publisher for defamation sought to compel disclosure of the identity of a confidential source used in preparing a challenged article, and the

App.387

motion to compel was denied because the information was privileged under the First Amendment. 82 F.R.D. at 476. There is no material distinction from the present case.

Next, X presses cases that have nothing to do with the First Amendment privilege or discovery disputes at all. *See* Br. at 11–12 (citing cases). *Henry v. First National Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971), held that the mere filing of a state court antitrust suit was not "state action" for purposes of civil rights statutes. *Hardy v. Gissendaner*, 508 F.2d 1207, 1210–11 (5th Cir. 1975), held that Alabama's holder-in-due-course statute did not justify mortgagors' constitutional claim where the statute was applied without discrimination. *Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157, 163 (D.D.C. 2017), upheld a Singaporean arbitral commission's order that one Asian television manufacturer could not disparage another Asian television manufacturer while the arbitration was pending. And in *Ohno v. Yasuma*, 723 F.3d 984, 987 (9th Cir. 2013), the Ninth Circuit held that enforcement of a Japanese damages award under California's Uniform Foreign–Country Money Judgments Recognition Act did not transform the underlying foreign court's judgment into domestic state action. None of these cases illuminate the parties' discovery dispute.[5]

After all of this, X finally admits the obvious: The on-point authority compiled by Media Matters "supports a qualified privilege and a case-by-case analysis of the disputed materials." Br. at 14. That analysis cannot be avoided here and, as discussed below, it requires denial of X's motion to compel.

---

[5] Other out-of-circuit district court decisions that X cites are insufficient to overcome the uniform consensus within the Fifth Circuit.

App.388

**B.    The First Amendment privilege applies to organizational membership and donor lists.**

Courts have consistently applied the First Amendment privilege to shield the identities of an organization's members and donors. In *NAACP*, the Supreme Court noted that "[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy" may effectively restrain the freedom of association, and it emphasized "the vital relationship between freedom to associate and privacy in one's associations." 357 U.S. at 462. X's assertion that the Court has limited this protection to "people combatting state-enforced segregation," Br. at 16, is simply wrong. In *Bonta*, for example, the Supreme Court held that the First Amendment guaranteed a right of anonymity to the major donors of nonprofit organizations that were dedicated to values such as free markets and religious freedom. 594 U.S. at 602.

The Fifth Circuit has also applied this privilege far beyond the context of racial discrimination. In *Hastings*, for example, the court held that an order compelling disclosure of a teacher federation's membership list abridged associational and privacy rights guaranteed by the First Amendment. 615 F.2d at 631. Based on the federation's claims that "members have been harassed," the court concluded that "[t]o direct disclosure of the membership list would subject the other members to the very retaliatory measures they seek to avoid." *Id.* at 632; *see also Whole Woman's Health*, 896 F.3d at 373 (recognizing as especially "disturbing" the prospect that an organization could be forced "to turn over *to a public policy opponent* its internal communications, setting a precedent that may be replicated in litigation anywhere"); *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976) (reversing district court decision to dismiss case based on parent association's refusal to disclose its membership information).

It is similarly common for district courts in this circuit to deny motions to compel advocacy organizations to produce confidential information (including names and home addresses) about

App.389

their members. In *Energy Future Holdings Corp.*, for example, the court held that the party moving to compel had "not demonstrated an interest in the membership list that is sufficient to justify a potential deterring effect such a disclosure may have on the free exercise by [the organization's] members of their constitutionally protected right of association." 2013 WL 12244352, at *3. In *Abbott*, the court recognized Republican Party committees' assertion of associational privilege and found it allowed them to fully "redact the names of any individual Committee members or volunteers from all discovery they are required to produce in this litigation." 2022 WL 17574079, at *7. And in *Young Conservatives of Texas Foundation v. University of North Texas*, No. 4:20-CV-973-SDJ, 2022 WL 2901007 (E.D. Tex. Jan. 11, 2022), the court recognized that members of the Young Conservatives of Texas Foundation have "been harassed and threatened with physical violence due to their associational affiliation," which supported a finding that discovery into the Foundation's "members' names and contact information will chill associational rights." *Id.* at *3. Thus, there can be no dispute that X's discovery requests implicate the First Amendment privilege.

### C.     There is a reasonable probability that compelled disclosure of Media Matters's donors will subject the donors to threats, harassment, and reprisals.

Media Matters's employees and donors have suffered the same manner of abuse that courts have long recognized creates a right to *private* association under the First Amendment. This string of past and present "harassment of members due to their associational ties" and of "harassment directed against the organization itself" confirms that the privilege applies to Media Matters. *Buckley*, 424 U.S. at 74.

As Mr. Carusone explains in a sworn declaration, threats against Media Matters have exploded in both number and intensity since X initiated this lawsuit. Carusone Decl. ¶¶ 5–7. Mr. Hananoki has received messages laced with profanity, racism, and violent threats, including in one instance an image of a noose. *Id.* ¶ 8. Another Media Matters reporter received an email with a

photograph of himself and his wife, with the message, "We know where you live. Expect a visit." *Id.* ¶ 10. Media Matters's main office, meanwhile, received an email threatening, "[We] know where your offices are at. We're coming for you keep looking over your shoulder." *Id.* ¶ 12. And the office has received voicemails referencing this lawsuit and warning, "I think if you keep pushing it things will get to a point where there will be violence. And I think you're right near the top of the list for the baddest fucking motherfuckers on this continent." *Id.* ¶ 14; *see also id.* ¶ 15 (another voicemail threatening, "I may be one of the people that you really don't want to come up and visit your offices"). Just last week, Media Matters received an email stating, "Looks like I can track your funding. Home addresses and bank accounts are next. . . . Every employee at, media matters is considered an enemy to the USA and will be executed." *Id.* ¶ 22.

Posts on the X platform directed at Media Matters and its affiliates have been especially horrific. On May 23, 2024, for example, after a former Media Matters employee posted about the toll that this lawsuit has been taking on Media Matters, one user posted, "I'm starting a woodchipper manufacturing company and need some testers, and I think your colleagues would be qualified." *Id.* ¶ 19. Referencing the conspiracy theory that culminated in a man opening fire on a Washington, D.C. pizza restaurant, another posted, "Fuck you @mmfa. . . . #pizzagate never concluded. We are coming for you, we never forgot, and we will never forgive." *Id.* ¶ 17.

Similar threats have also been aimed at Media Matters's donors. After the Free Beacon posted an alleged "leaked donor list" of Media Matters's "five largest contributors," there was an eruption of violent and hateful threats. One user posted a picture of Musk firing a .50 caliber weapon and edited the photo to look as though Musk was shooting at Media Matters's logo; others posted antisemitic harassment and slurs. *Id.* ¶ 26. X users repeatedly called for arrests, treason trials, and the "death penalty" for these donors. *Id.* ¶ 29. This abuse has gotten so bad that some

"donors and potential donors have [already] expressed concerns for their own privacy and personal safety," *id.* at ¶ 32,  and MMFA expects donors will "discontinue their support for and affiliation with Media Matters if they expected their identities could be shared with X,". *id.* ¶ 35. Indeed, "[c]ash flows to MMFA have already been affected by the threats and risks associated with the potential that some donors' identities will be disclosed because of this litigation." *Id.* ¶ 33.

Media Matters has done what it can to protect the physical safety of its employees working in its Washington, D.C. office, including by reimbursing the costs of home security systems, and placing security guards at the reception of its office when threats spike. *Id.* ¶ 31. But it is not feasible to offer similar protections to donors nationwide. Like the members of the American Foundation for Prosperity who were at the center of the controversy in the Supreme Court's First Amendment decision in *Bonta*, Media Matters's donors depend on the First Amendment privilege to avoid retaliatory threats to their safety and livelihood. *See* 594 U.S. at 617. As the Supreme Court recognized, the risks of protests, stalking, and physical violence "are heightened in the 21st century and seem to grow with each passing year, as 'anyone with access to a computer [can] compile a wealth of information about' anyone else, including such sensitive details as a person's home address or the school attended by his children." *Id.* Media Matters's donors similarly have an overwhelming interest in maintaining the privacy of their affiliation with the organization, and Media Matters has a reciprocal interest in protecting its association with the very people who fund its First Amendment-protected journalism.

### D.    X cannot show that donor names are "highly relevant" to its claims.

X cannot carry its burden to "show that the information sought is highly relevant" to its claims. *Perry*, 591 F.3d at 1161. Instead, X's interests in the identities of Media Matters's donors are entirely nonexistent.

App.392

To justify its demand for these maximally sensitive documents, X has settled on three possible bases for relevance. First, X says that the information is relevant "to see how Defendants have availed themselves of Texas." Br. at 14. But X has not identified any reason why it needs the *names and home addresses* of Media Matters's donors to determine the extent of Media Matters's availment. Further, those contacts would be relevant to personal jurisdiction only to the extent that X's claims "arise out of or relate to" Media Matters's purposeful contacts with the forum state. *Johnson v. TheHuffingtonPost.com*, 21 F.4th 314, 317 (5th Cir. 2021). Thus, X's first purported justification for donor-related information would extend only to documents and communications showing, at most, how often and in what ways Media Matters has solicited donations from Texans in preparing and publishing the challenged articles. Far from claiming privilege over this information, however, Media Matters has provided it—confirming that *no such documents exist*. *See* App. Supp. Mot. to Dismiss, Ex. B ¶ 13, ECF No. 42 (Mr. Hananoki did not solicit Texas donors for Media Matters in connection with the articles); *id.* Ex. C ¶ 4 (Mr. Carusone has not sought any donations from individuals or organizations in Texas earmarked to fund Media Matters's work related to X Corp.). Because "a party cannot produce what it does not have . . . the court cannot compel a party to produce non-existent documents." *Samsung Elecs. Am.*, 321 F.R.D. at 299 (cleaned up).

X's other two purported bases for seeking donor-related documents—"to see how Defendants funded their tortious conduct" and "to see if they are profiting or seeking to improve their financial condition from their disparagement," Br. at 14—also are not sufficient to overcome the First Amendment privilege. X conspicuously makes no effort to explain how the identities and addresses of all donors nationwide are relevant to these supposed justifications; nor does it explain how either of these justifications is relevant to their claims. X merely recites a conclusory assertion

17                                                        App.393

that the information is relevant to "compensatory damages" and "punitive damages," *id.*, but neither is correct.

"Compensatory damages in defamation cases must compensate for 'actual injuries' and cannot merely be 'a disguised disapproval of the defendant.'" *Brady v. Klentzman*, 515 S.W.3d 878, 887 (Tex. 2017) (citation omitted). If X succeeds on its claims, the amount of compensatory damages will turn on what X can prove about its own lost advertising revenue and reputational injury within the relevant community; not on *who* donated to Defendants. Likewise, the appropriate amount of punitive damages depends on (1) the degree of reprehensibility of the defendant's misconduct, with conduct that endangers a person's health or safety meriting more punishment than merely economic harm; (2) the amount of actual damages; and (3) a comparison to other penalties that could be awarded for similar misconduct. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 45 (Tex. 1998). Again, none of these factors require identification of Media Matters's donors. If X has some other relevancy hook in mind—or any legal support for its cursory insinuations—no such explanation has been provided and Media Matters cannot be required to guess at it.

Finally, the existence of a protective order does not defeat Media Matters's privilege. As the Supreme Court recognized in *Bonta*, the right to anonymity remains paramount even where the proposed recipients of donor information are required by law to keep donor identities confidential. 594 U.S. at 616 ("Our cases have said that disclosure requirements can chill association even if there is no disclosure to the general public." (cleaned up)); *see also Energy Future Holdings Corp.*, 2013 WL 12244352, at *3 ("[A]ssuming the requested information is relevant, the Court is not convinced the protective order would insulate [the advocacy organization's] members against the risk of public disclosure."). Here, as described above, donor

App.394

identities are not relevant—let alone essential—to X's claims, and the volume and intensity of violent threats hurled at everyone affiliated with Media Matters since the inception of this lawsuit requires full application of the First Amendment privilege.

### III. X's harassing requests for irrelevant donor information fall outside the proper scope of discovery.

If this Court determines that the First Amendment privilege does not apply, the motion to compel should still be denied because the requests are harassing and seek irrelevant information. The Federal Rules limit the scope of discovery to nonprivileged matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Applying this test, courts are to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Courts "must limit the frequency or extent of discovery otherwise allowed" if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

By X's own telling, "the central allegation that X raises in its amended complaint [is] Defendants' tortious interference with X's advertisers through the publication of two deeply misleading articles about the company's social media platform." ECF No. 60 at 1. As explained above, X's requests for donor-related documents have nothing to do with this subject matter. And to the extent Media Matters's donor solicitations could bolster X's attempt to trigger jurisdiction in Texas, X can offer no reason why such a request would require disclosure of donor identities (and, as X has already been informed, Mr. Hananoki did not solicit Texas donors for Media Matters in connection with the articles and Mr. Carusone has not sought any donations from individuals or organizations in Texas earmarked to fund Media Matters's work related to X Corp.). In short, X's

App.395

donor-related requests constitute naked harassment. *See Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries," and may not be "conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry.").

Donor identities are not "important[t to] the issues at stake in the action," and the burden of the proposed discovery—on Media Matters, and, given the invitation to harassment, on the donors themselves—clearly "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, a deep-pocketed litigant is striking at the financial jugular of a nonprofit organization, threatening its very existence through abusive discovery. Musk has made the harassment explicit, using the X platform to decry Media Matters as "an evil propaganda machine [that] can go to hell" and declaring that "we will pursue not just [Media Matters], but anyone funding that organization. I want to be clear about that. Anyone funding the organization, we will pursue them."[6] X's motivation to target donors for harassment does not need to be inferred—it has been openly admitted.

"Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009). Because X's requests for donor identities are based on no more than a "purely speculative hope that" they will "reveal a long-running and intricately-planned conspiracy," the motion to compel should be denied. *Hamilton v. Geithner*, No. 1:08cv1112 (JCC), 2009 WL 2240358, at *2 (E.D. Va. July 23, 2009).

## CONCLUSION

The Court should deny X's motion to compel.

---

[6] @TheChiefNerd, X.com (Dec. 10, 2023, 4:24 PM) https://x.com/thechiefnerd/status/ 1733960832571122115?s=46&t=PN52ydwTvFusTeuJ-h77RA [https://perma.cc/6L3M-SHX3]

App.396

Dated: September 6, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

GIBSON, DUNN & CRUTCHER LLP        ELIAS LAW GROUP LLP
Andrew LeGrand (TX 24070132)           Abha Khanna* (WA 42612)
2001 Ross Avenue, Suite 2100              1700 Seventh Avenue, Suite 2100
Dallas, TX 75201                                   Seattle, WA 98101
T: (214) 698-3100                                 T: (206) 656-0177
F: (214) 571-2960                                 F: (206) 656-0180
alegrand@gibsondunn.com              akhanna@elias.law

Theodore J. Boutrous, Jr.* (CA 132099)    Jacob D. Shelly* (DC 90010127)
333 South Grand Avenue                     Daniela Lorenzo* (NY 5780457)
Los Angeles, CA 90071                       250 Massachusetts Avenue NW, Suite 400
T: (213) 229-7000                                Washington, DC 20001
F: (213) 229-7520                                T: (202) 968-4490
tboutrous@gibsondunn.com              F: (202) 986-4498
                                                         jshelly@elias.law
Amer S. Ahmed* (NY 4382040)           dlorenzo@elias.law
200 Park Avenue
New York, New York 10166                 * Admitted *pro hac vice*
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

App.397

**CERTIFICATE OF SERVICE**

On September 6, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

App.398

# Doc. 88

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| **X CORP.,**<br>        **Plaintiff,**<br><br>   **v.**<br><br>**MEDIA MATTERS FOR AMERICA,**<br>**et al.,**<br>        **Defendants.** | **Civil Action No. 4:23-cv-01175-O** |

## APPENDIX OF EXHIBITS ACCOMPANYING
## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL
## PRODUCTION OF DONOR-RELATED DOCUMENTS

Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki present the

following exhibits to accompany their Response to Plaintiff's Motion to Compel Production of

Donor-Related Documents:

| Exhibit No. | Description | Appendix Page No. |
|---|---|---|
| 1 | Email Exchange Between Counsel<br>re: X/MMFA – Revised Privilege Log Agreement | 3–5 |
| 2 | Revised Privilege Log Agreement | 6–11 |
| 3 | Email Exchange Between Counsel<br>re: X v. Media Matters | 12–23 |
| 4 | Email Exchange Between Counsel<br>re: X/MMFA – Defendants' Fifth Production | 24–34 |
| 5 | Defendant Media Matters for America's Responses and<br>Objections to Plaintiff's First Interrogatories | 35–68 |

Dated: September 6, 2024.

Respectfully submitted,

*/s/ Andrew LeGrand*

App.400

1

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

## CERTIFICATE OF SERVICE

On September 6, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

App.401

# Exhibit 1

| | |
|---|---|
| **From:** | Michael Abrams |
| **To:** | Jacob Shelly; Daniela Lorenzo; Alex Dvorscak; Chris Hilton |
| **Cc:** | Abha Khanna; Aria Branch; Ahmed, Amer S. |
| **Subject:** | RE: X/MMFA - Revised Privilege Log Agreement |
| **Date:** | Tuesday, July 2, 2024 5:05:09 PM |

Great, thank you Jacob.

---

**From:** Jacob Shelly <jshelly@elias.law>
**Sent:** Tuesday, July 2, 2024 4:02 PM
**To:** Michael Abrams <michael@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Alex Dvorscak <alex@stonehilton.com>; Chris Hilton <chris@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Subject:** RE: X/MMFA - Revised Privilege Log Agreement

Hi Michael,

That sounds good, we agree with adding a "date" field to forthcoming logs.

Thank you,
Jacob

**Jacob Shelly**
**Elias Law Group LLP**
250 Massachusetts Ave NW Suite 400
Washington DC 20001
202-968-4496

---

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Michael Abrams <michael@stonehilton.com>
**Sent:** Tuesday, July 2, 2024 4:58 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Alex Dvorscak <alex@stonehilton.com>; Chris Hilton <chris@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Jacob Shelly <jshelly@elias.law>
**Subject:** RE: X/MMFA - Revised Privilege Log Agreement

Hi Daniela,

Circling back on these proposed alternative dates, this looks good to us. We'd also like to suggest that the parties agree to add a "date" field to forthcoming privilege logs. Please let us know if that works for y'all. As you mentioned below, I don't think we need to file anything with the Court about these revised dates.

Best,

App.403

Michael

---

**From:** Daniela Lorenzo <dlorenzo@elias.law>
**Sent:** Wednesday, June 26, 2024 8:50 AM
**To:** Michael Abrams <michael@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Chris Hilton <chris@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Jacob Shelly <jshelly@elias.law>
**Subject:** X/MMFA - Revised Privilege Log Agreement

Michael,

As promised, attached is a revised privilege log agreement with proposed alternate dates given the new Court schedule. Let us know if this looks good to you all. I think we can just agree that this will be the operative agreement without needing to file it again but let us know if you disagree.

Best,
Daniela

**Daniela Lorenzo** (she/her)
Litigation Associate
Elias Law Group LLP
202.987.5400
dlorenzo@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

App.404

# Exhibit 2

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Case No. 4:23-cv-01175-O |
| | § | |
| **MEDIA MATTERS FOR AMERICA,** a | § | |
| Washington, D.C. non-profit corporation, **ERIC** | § | |
| **HANANOKI**, and **ANGELO CARUSONE**, | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

---

## STIPULATION AND ORDER FOR THE EXCHANGE OF PRIVILEGE LOGS

---

This Stipulation Regarding the Exchange of Privilege Logs ("Stipulation") shall govern the format and timing for the parties to log documents withheld in full or in part due to an assertion of privilege in the above-captioned case (the "Action") between Plaintiff X Corp., and Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone (each, individually, a "Party" and, collectively, the "Parties").

### I.    PROCESS OF LOGGING PRIVILEGED DOCUMENTS

All documents and files that contain, in whole or in part, privileged information will be logged and produced in accordance with the below:

### A.    Withholding or redacting privileged documents

Where a document is privileged in its entirety, the producing Party will withhold the document but produce a PDF "placeholder" indicating and assigning a Bates number to the file being withheld.

App.406

Where a document is partially privileged, the producing Party will redact only those portions of the document that are privileged. The redactions will expressly indicate what kind of privilege the Party is asserting. For example, if the producing Party is redacting a paragraph due to the attorney work product privilege, the redaction applied to the paragraph will read "Attorney Work Product" rather than the word "Redacted" or a black box. The document will be otherwise produced in accordance with the Parties' ESI Protocol and Protective Order.

**B.    Privilege log contents**

For all documents being partially or fully withheld for privilege, the producing Party will log each document in a chart or table that contains the following information:

1)  "Status" meaning whether the document is being redacted or withheld.

2)  "Bates" meaning the document or "placeholder" PDF Beginning Bates number.

3)  "Doc Type" meaning the type of document being redacted or withheld (email, word document, excel spreadsheet, video, etc.)

4)  "Date" meaning the date the document was created or sent.

4)5)    "From/Author" meaning the name of the document author or email/message sender with any names and email addresses redacted if necessary.

5)6)    "To" meaning the name(s) of the email/message recipients with any names and email addresses redacted if necessary.

6)7)    "Cc" meaning the name(s) of the email's Cc recipients with any names and email addresses redacted if necessary.

7)8)    "Bcc" meaning the name(s) of the email's Bcc recipients with any names and email addresses redacted if necessary.

8)9)    "Privilege Designation" meaning the privilege being asserted.

App.407

9)10)  "Privilege Description" meaning the reason why the document or redacted

text is privileged.

10)11) "Confidentiality" meaning any confidentiality designation.

## C.    Privilege log exemptions

All documents withheld or redacted due to privilege must be logged except those the Parties agreed not to log in their ESI Protocol or via independent agreement.

## II.    TIMING OF PRIVILEGE LOG EXCHANGE

### A.    Exchange dates

The Parties agree to a mutual exchange of all documents redacted or withheld for privilege and any corresponding privilege logs in the manner outlined above on the following days, contingent on the Court granting the parties' pending joint motion to amend scheduling order:

1)  September 6, 2024

2)  October 11, 2024

3)  November 15, 2024

4)  December 17, 2024

Nothing in this Stipulation shall prevent the Parties from producing documents that are not privileged, in whole or in part, outside of this privileged document exchange schedule. The Parties agree to ensure documents are being produced in a timely manner without undue delay.

The parties stipulate to allow for the claw back of any inadvertent disclosures of privileged information as laid out in the Parties' ESI Protocol.

## III.    CHALLENGES TO PRIVILEGE LOGS

The Parties will have 14 days after a privilege log is produced to object to the privilege designation of a document on said privilege log in writing to the other Party. The Parties agree to

App.408

meet and confer in good faith over any challenges to a document's privilege designation and

attempt to reach a resolution to any disagreement before seeking Court intervention.

Dated: July 16, 2024                          Respectfully submitted,

Agreed as to form and substance:

Counsel for Plaintiff

*/s/ Draft*
Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
Alexander M. Dvorscak
Texas Bar No. 24120461
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
alex@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com
Counsel for Defendants:

*/s/ Andrew LeGrand*
Andrew LeGrand Texas Bar No. 24070132
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX
75201-2923
Telephone: (214) 698-3100

App.409

– 4 –

**10**

Email: alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.*
Jay P. Srinivasan*
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Email: tboutrous@gibsondunn.com
Email: jsrinivasan@gibsondunn.com

Amer S. Ahmed*
Anne Champion*
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Email: aahmed@gibsondunn.com
Email: achampion@gibsondunn.com

**ELIAS LAW GROUP LLP**
Abha Khanna*
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
Email: akhanna@elias.law
Aria C. Branch*
Christopher D. Dodge*
Jacob D. Shelly*
Elena A. Rodriguez Armenta*
Daniela Lorenzo*
Omeed Alerasool
250 Massachusetts Ave. NW,
Suite 400
Washington, DC 20001
T: (202) 968-4652
abranch@elias.law
cdodge@elias.law
jshelly@elias.law
erodriguezarmenta@elias.law
dlorenzo@elias.law
oalerasool@elias.law

App.410

# Exhibit 3

| | |
|---|---|
| **From:** | Michael Abrams |
| **To:** | Abha Khanna; Chris Hilton; Alex Dvorscak; LeGrand, Andrew; Aria Branch; Ahmed, Amer S.; Champion, Anne |
| **Subject:** | RE: X v. Media Matters |
| **Date:** | Monday, June 10, 2024 10:56:54 PM |
| **Attachments:** | image001.png |

Perfect, thank you. Sending over to our paralegal to get this on file.

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, June 10, 2024 9:55 PM
**To:** Michael Abrams <michael@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

Thanks, Michael. Final versions attached! (Scheduling order just accepts the redline we had proposed.)

Best,
Abha

**Abha Khanna**
**Elias Law Group LLP**
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Michael Abrams michael@stonehilton.com
**Sent:** Monday, June 10, 2024 7:13 PM
**To:** Abha Khanna akhanna@elias.law; Chris Hilton chris@stonehilton.com; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

Thank you, Abha. Here you go. We also made the attached minor edit but then saved as a clean version.



App.412

13

Can you please return to me in the next few minutes or so? Our paralegal is on call to file this evening if you can return with signatures for Defendants. Thank you!

Michael

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, June 10, 2024 9:01 PM
**To:** Michael Abrams <michael@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

Michael,

I understand from Andrew (based on his call with Chris) that we have now reached agreement on the attached drafts. With respect to the June 28 "Deadline for Defendants to Provide First Privilege Log and Associated Documents," the parties understand that on June 28 Defendants will produce a log of any privileged documents identified to date, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement.

Once you confirm and sign, we'll do the same and send back to you to get on file with the Court.

Many thanks!
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Michael Abrams <michael@stonehilton.com>
**Sent:** Monday, June 10, 2024 1:32 PM
**To:** Abha Khanna <akhanna@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** RE: X v. Media Matters

App.413

Abha,

Thank you for the response. We are fine with the edits to substance of the joint motion. With respect to signatures, Local Rule 40.1 provides that a "motion for continuance of a trial setting must be signed by the moving party as well as by the party's attorney of record," so we think the current signature block needs to stay in. For what it's worth, we believe a /s/ with the client's permission to be acceptable and that is how we plan on handling it.

With respect to your other questions below, we're agreeable to an understanding among counsel for mutual dates for production and exchanges of privilege logs, but we don't think those dates need to be incorporated into a court order. We think we'll be in a better place to evaluate an appropriate schedule in that regard once we see how much of our requested extension the Court grants. We're happy to confer on that issue shortly so that everyone is on the same page.

With respect to your second question, we understood the Court to order that "Defendants must deliver all documents in its possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46 to Plaintiff" and that "Defendants must create and deliver a privilege log of any documents being withheld from production to Plaintiff" by June 14. It may be that most of the responsive documents that Defendants have are subject to a privilege assertion. Nonetheless, we think that any responsive, non-privileged documents—or documents that are responsive to RFP Nos. 13-16, 23-24, 37-38, and 46 and that can be produced in redacted format— should be produced contemporaneously with a privilege log. If y'all think you may need more time for the document production, that's something we can work with y'all on, although it'd be helpful to understand when you think that production might occur.

Finally, we can agree to a 2-week extension for Defendants' interrogatory responses, but we think the mutual agreement should be triggered off the filing of the joint motion rather than the Court granting it. We cannot predict the Court's ruling and if the Court denies the motion the parties would in all likelihood have to agree to extend discovery amongst themselves in any event.

We're prepared to sign off (with Chris signing on behalf of X) if all of this is acceptable to y'all.

Thanks,

Michael

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, June 10, 2024 2:42 PM
**To:** Michael Abrams <michael@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>

App.414

**Subject:** RE: X v. Media Matters

Hi Michael,

Thank you for these documents – it looks like we are very close to agreement. We have made light edits for clarity to the joint motion (attached), and write below to follow up on a few issues regarding the schedule:

First, we foresee the exchange of privilege logs as an ongoing process whereby further review of documents will inevitably identify additional documents subject to privilege. Thus, similar to Defendants' commitment to biweekly document productions, we believe both parties will benefit from regular, reciprocal exchanges of privilege logs. This will ensure that areas of dispute are timely identified for judicial resolution, and that both parties are held to similar expectations. To the extent you disagree with the dates that we proposed for this exchange, <u>on what schedule does X intend to produce privilege logs</u>? Defendants are amenable to producing their first privilege log on June 28, as you propose, but we believe the parties should agree to mutual timelines in the interests of fairness and predictability.

Second, you proposed a June 28 deadline for service of a "Privilege Log and Documents." For the avoidance of ambiguity, we understand that the "Documents" referenced are those that correspond to the privilege log (in redacted form or with blank slipsheets bates-numbered). <u>Please confirm that is your understanding as well</u>. We will circulate a Proposed Privilege Log Agreement shortly that can govern this process.

Third, Defendants will consent to X's request for a second extension of its ROG response deadline provided that 1) the Court grants an extension of the case schedule, and 2) X is willing to agree to a reciprocal 2-week extension for Defendants' responses to X's interrogatories.

Hopefully we are able to get the motion and proposed order on file today.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Michael Abrams <michael@stonehilton.com>
**Sent:** Sunday, June 9, 2024 12:24 PM
**To:** Abha Khanna <akhanna@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne

App.415

16

<AChampion@gibsondunn.com>;
**Subject:** RE: X v. Media Matters

Abha,

Our proposed edits and clean versions of both documents are attached. We are agreeable to most of the revised dates that you have proposed. We do not think it is necessary, however, to establish multiple interim deadlines for the mutual exchange of privilege logs. To the extent Defendants are concerned about the June 14 deadline in the order on the motion to compel, we think it would be easier to propose an extension of that deadline (which we read to encompass a privilege log and document production) and have put a place for that extension in the proposed schedule. Our only other change to the schedule is that we suggest making January 29 the end of written discovery, as opposed to the end of fact discovery, to allow the parties time, in their discretion, to continue with any necessary depositions until the deadline for the completion of all discovery.

On the subject of deadlines, we would appreciate one extra week—until June 19—for our responses to Defendants' first set of interrogatories. Please let us know if Defendants will agree to that extension.

Thank you,

Michael

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Friday, June 7, 2024 2:55 PM
**To:** Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Cc:** Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X v. Media Matters

Thanks, Chris. Look forward to seeing your revisions.

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Friday, June 7, 2024 12:53 PM
**To:** Abha Khanna <akhanna@elias.law>; Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew

App.416

17

<ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>

**Cc:** Michael Abrams <michael@stonehilton.com>

**Subject:** Re: X v. Media Matters

Didn't want to leave this pending any longer without a response, and Alex is out today.

We are working through some edits and will get this back to you ASAP. We are going to have some substantive changes, but as I committed to Andrew on the phone, we are trying to work with y'all on the areas of particular concern, while also maintaining our position on areas of dispute.

Thanks,
Chris

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Thursday, June 6, 2024 9:57 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Cc:** Chris Hilton <chris@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X v. Media Matters

Alex,

Thank you for putting together these drafts – we are largely in agreement on the relevant arguments. We have two substantive edits:

First, as Andrew mentioned to Chris this week, Defendants remain concerned about representations in X's motion-to-compel briefing, which the judge has now ruled on, that Defendants have not been producing documents diligently and in good faith. I understand Chris proposed that we put language in the joint motion making clear that expedited production isn't necessary, so we have proposed a footnote in the draft to that effect. Additionally, in light of the extended schedule and the fact that we have not yet identified specific privileged documents (as indicated in our amended R&Os), we have suggested modifying the Court's imposed June 14, 2024 deadline for a priv log and have included instead staggered dates for the parties to exchange privilege logs. This approach will ensure the parties are logging and exchanging privileged documents in a timely manner as they conduct document review.

Second, given the enormity of this task, because we do not want to be in a position where

we have to ask the Court for further extensions, and because the Court may, like last time, settle on tighter deadlines than the parties propose, we think it makes sense to extend the schedule slightly more to ensure the parties have adequate time to conduct discovery adequately. To that end, we have proposed modified deadlines that we feel will better help meet the parties' needs. The proposed schedule provides a 6-month extension to fact discovery cutoff and adds an additional 90 days for expert discovery.

Attached are both clean copies of the drafts and redlines with our edits. Let us know if you are amenable to our edits and we can work toward finalizing the draft to get on file by the end of the week (tomorrow).

Best,

Abha

**Abha Khanna**

Elias Law Group LLP

1700 Seventh Ave Ste 2100

Seattle WA 98101

206-656-0177

akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Wednesday, June 5, 2024 9:01 PM
**To:** Abha Khanna <akhanna@elias.law>; LeGrand, Andrew ALeGrand@gibsondunn.com; Aria Branch abranch@elias.law; Ahmed, Amer S. AAhmed@gibsondunn.com; Champion, Anne AChampion@gibsondunn.com
**Cc:** Chris Hilton <chris@stonehilton.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X v. Media Matters

App.418

Counsel,


Please see attached a draft joint motion to amend the scheduling order and proposed order for your review.


Best,

-Alex Dvorscak

Stone|Hilton pllc

alex@stonehilton.com | (518) 772-8657

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Wednesday, June 5, 2024 8:56 PM
**To:** Abha Khanna <akhanna@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** Re: X v. Media Matters


Thanks Abha.


Get Outlook for iOS

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, June 5, 2024 6:58:41 PM
**To:** Chris Hilton <chris@stonehilton.com>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** RE: X v. Media Matters


Hi Chris,

App.419

We agree to a one-week extension for X's discovery responses.


Best,

Abha


**Abha Khanna**

**Elias Law Group LLP**

1700 Seventh Ave Ste 2100

Seattle WA 98101

206-656-0177

akhanna@elias.law


CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Wednesday, June 5, 2024 4:36 PM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>; Michael Abrams <michael@stonehilton.com>
**Subject:** Re: X v. Media Matters


We are awaiting one final input before we can send you the draft motion and proposed schedule. Still hopeful that we'll get it to you tonight.


Can y'all please also let us know on the extra week for the other written discovery?


Thanks,

App.420

Chris


Get Outlook for iOS

---

**From:** Chris Hilton <chris@stonehilton.com>
**Sent:** Wednesday, June 5, 2024 11:02 AM
**To:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S.
<AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** Re: X v. Media Matters


Thanks for the follow up email and the call a few moments ago. We will get y'all a draft joint
motion and revised schedule today. We had not internally discussed the idea of phasing expert
discovery, but we will consider that as well and let you know.


Regarding our discovery deadline, we appreciate the courtesy regarding the interrogatory
responses. As we discussed, I have since been advised that an additional week on RFP and
RFA responses would also be significantly helpful on our end, and that I was misinformed
yesterday when I thought it relates only to the ROGs. Please let us know whether an additional
week on those other written discovery responses would also be acceptable.


Thanks,

Chris


Get Outlook for iOS

---

**From:** LeGrand, Andrew <ALeGrand@gibsondunn.com>
**Sent:** Tuesday, June 4, 2024 9:36:08 PM
**To:** Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>
**Cc:** Abha Khanna <akhanna@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S.
<AAhmed@gibsondunn.com>; Champion, Anne <AChampion@gibsondunn.com>
**Subject:** X v. Media Matters

App.421

Chris,

Thank you for reaching out regarding the need for additional time to complete discovery. We can agree to a one-week extension for X's interrogatory responses and to jointly request an extension of the July 29 discovery deadline by at least 6 months, as you requested. We are happy to review a proposed joint motion to extend the discovery deadlines that we can submit to the Court.

In addition, as I think we have both recognized, the current schedule lacks any mechanism to guarantee that documents are produced in time for experts to review and incorporate relevant information into their own analysis and reports. Accordingly, we propose adding a separate expert discovery deadline that would fall three months after the fact discovery deadline. If this sequencing makes sense to you, either you can include it in the draft joint motion or we can add it when we send along our revisions.

Many thanks,

Andrew


**Andrew LeGrand**
Partner

T: +1 214.698.3405 | M: +1 469.658.5686
ALeGrand@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue Suite 2100, Dallas, TX 75201-2923

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

App.422

# Exhibit 4

| | |
|---|---|
| **From:** | Alex Dvorscak |
| **To:** | Abha Khanna; Daniela Lorenzo; Jacob Shelly; LeGrand, Andrew; Ahmed, Amer S. |
| **Cc:** | Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Chris Dodge; Aria Branch; Samuel Ward-Packard; Mindy Johnson; Chris Hilton; Cody Coll; Tom Albright; Ari Cuenin; Judd E. Stone, II; john.sullivan@the-sl-lawfirm.com; Bonnie Chester; Michael Abrams; Alithea Sullivan |
| **Subject:** | RE: X/MMFA - Defendants' Fifth Production |
| **Date:** | Friday, August 9, 2024 1:22:46 PM |

Hi Abha,

We are currently in the process of reviewing your most recent production and amended privilege log to see if it addressed the concerns we raised on our call. We will respond more substantively to your proposal next week.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Friday, August 2, 2024 6:51 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex and Chris,

Thank you again for meeting with us today for a productive conversation on resolving outstanding discovery issues. As promised, attached is our amended privilege log and below is both a summary of what we discussed during our call and Defendants' proposal for how the parties can move forward with the discovery Plaintiff seeks.

The parties discussed three issues Plaintiff identified as potential discovery disputes that would form the basis of Plaintiff's motion to compel:

1. Whether Defendants should be required to turn over donor-related information.
   a. The parties agreed this dispute is ripe for Court intervention and Plaintiff plans to move to compel these documents on or after Monday of next week.

2. Defendants' document-by-document privilege assertions on their first privilege log.
   a. Defendants' amended privilege log seeks to assuage the various log-related concerns Plaintiff raised during the parties' last meet-and-confer.
   b. To the extent Plaintiff has further concerns regarding the amended log or documents identified therein, the Parties will confer (we will make ourselves available for such a conversation early next week).

3. Defendants' objections and responses to subsection (4) of Plaintiff's Interrogatory Nos. 7 and 8.
   a. Defendants clarified that their objection is *not* based on privilege or a refusal to search for and produce "any comments, revisions, feedback, or approval" in relation to the November 16 and 17 articles. Rather, Defendants objected that producing this information in a *written interrogatory* is inefficient and that they will, instead, produce responsive documents.
   b. Defendants also reiterated that they are *not* categorically withholding as privileged or refusing to produce documents related to the November 16 and 17 articles.

Please confirm that these are all the issues Plaintiff contemplated for its above-referenced motion to compel.

Additionally, recognizing that both parties have an interest in ensuring discovery is productive and efficient, Defendants are proposing a modified approach to searching for and producing the documents Plaintiff has requested:

1. The parties will come together to identify the set of document requests that are essential to the maintenance of X's claims, as Alex began to do in his email earlier today.
2. Defendants will then modify their search and review parameters to target these categories of documents.
3. The parties will agree that Defendants will no longer need to review, produce, or log the documents that fall outside of these categories.

We believe this approach is consistent with the legal standard set forth in the Texas Press Shield Law, will significantly streamline discovery moving forward, and will reduce discovery fights and therefore the need to burden the Court. Defendants understand and share Plaintiff's desire for expediency and believe that—while we may need to iron out the details of any proposal to come to a mutually agreeable resolution—the parties are more aligned than we are divided on this issue.

Given our conversation earlier, we remain optimistic about reaching a compromise that serves both parties' interests while respecting the Court's time. We look forward to keeping these lines of communication open and conferring on the above issues in good faith.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, August 2, 2024 9:38 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy

App.424

<mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

The documents central to our disagreements regarding privilege have been obvious to both sides and we have been discussing them for months. However, to facilitate our discussion, we have identified the following categories of documents that have not been produced and over which you may be asserting privilege, but which have not yet appeared on a privilege log. Note that this is an illustrative list, not a complete one.

- Notes, drafts, and sources of the Articles (*see* X's MTC at 14).
- Communications between or among Hananoki, Sharon Kann, Michale Eberhart, Ben Dimiero, Kayla Gogarty, and/or Andrea Austria regarding the Articles (*see* MMFA's responses to ROGs 7 and 8).
- All documents that the Court compelled in its order dated June 6, 2024. This includes "all documents in [Your] possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46." Dkt. 65 at 3.

As we discussed during our last call, we cannot wait months before these documents are produced or logged. Our goal is to only burden the Court with the substantive legal issues of privilege—we hope we can work out the procedural mechanics of discovery together in good faith.

Looking forward to discussing this in more detail on today's call.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

**From:** Alex Dvorscak
**Sent:** Thursday, August 1, 2024 11:18 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

Friday at 1 ET/12 CT works for us. I'll send around a Zoom link.
We will respond to the additional points raised in your email yesterday so that you know our positions prior to the conference.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 31, 2024 3:21 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is available Friday at 1 ET/12 CT. We have greater availability on Monday if that time does not work for you.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Wednesday, July 31, 2024 9:09 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, A

App.425

<AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

It looks like there's a few issues for us to discuss. Can you please let me know your availability to confer tomorrow afternoon or Friday morning?

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Tuesday, July 30, 2024 3:48 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

First, thank you for sending these cases. As you are aware, two of them are out-of-Circuit, all of them are non-controlling district court opinions, and—most importantly—none of them finds waiver where a privilege was noted on a timely privilege log. Accordingly, your cited authority does not support your position. If you have no better authority, then our position is that your proposed motion is frivolous and we are, accordingly, at an impasse regarding any waiver of Texas's press shield law.  *Cf.* Fed. R. Civ. P. 11(b), (c).

Second, our initial privilege log fully complied with the protocol that you and your colleagues negotiated. As a courtesy, we have agreed to revisit that protocol to increase clarity for all parties. An amended privilege log will be forthcoming this week.

Third, we are confused by your refrain that Defendants "refuse to log all responsive documents." If you are referring to our refusal to independently *search* for donor-related documents, we agree that that the privileged status of donor-related documents is ripe for the Court's resolution. Are you also referring to other categories of documents? If so, please identify them promptly so that we can ascertain the nature of any dispute.

Finally, as I noted in my previous email, it appears the parties have a mutual interest in increasing transparency about the pace of future document productions. To that end, we propose the following interim deadlines:

1. Wednesday, August 7: parties exchange search terms and full custodian lists.
2. Friday, October 11: parties substantially complete document productions in response to requests served to date.
3. Revised privilege log exchange:
   1. Friday, September 6: first mutual exchange [same as in current agreement]
   2. Friday, October 4: second mutual exchange [changed from October 11 under current agreement]
   3. Friday, November 1: third and final mutual exchange [changed from November 15 under current agreement]
   4. This schedule would omit a fourth privilege log in December to allow productions and logs to be complete by the beginning of November.

We welcome Plaintiff's feedback on the above, and we remain available to confer as necessary. While the parties may not be able to reach agreement on all issues, there is no basis for motions practice when parties remain confused—as we do—about the nature of any dispute.  *See* LR 7.1(a).

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Monday, July 29, 2024 8:33 PM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

This case has already been substantially delayed; accordingly, X will be filing its second/renewed motion to compel this Friday. However, as stated last week, we are willing to make ourselves available at any time between now and then to confer.

App.426

27

In the interest of making any conferral more productive, I've addressed a few points from your email below:

- *Regarding waiver:* we explained our position during the meet-and-confer. To the extent that what you are now requesting are legal citations, please see the following, non-exhaustive opinions, which collectively support our position:
  - *Janvey v. Alguire,* No. 3:09-cv-00724-N-BQ, 2018 WL 11362638 (N.D. Tex. Oct. 17, 2018)
  - *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.,* 136 F.R.D. 179 (E.D. Cal. 1991)
  - *Burch v. Regents of the University of Cal.,* No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313 (E.D. Cal. Aug. 30, 2005)
- *Regarding the amended privilege log:* we cannot delay the case to indefinitely wait on an amended log. For example, we did not meet-and-confer last Friday, as you state, but the week prior. We expect that you will serve us an amended privilege log ASAP, otherwise we will not hesitate to add your delay in providing one to our motion to compel.
- *Regarding privilege assertions:* it is insufficient for you to say that you're asserting privilege arguments on a document-by-document basis when you refuse to log all responsive documents and when the Court specifically asked for the parties to "meaningfully concur" on the extent of the First Amendment privileges asserted.
  - If our understandings of your privilege arguments are incorrect, please correct us in writing. If you continue to refuse to confer, we will raise your refusal to clarify the scope of your privilege assertions in our motion.
- *Regarding Defendants' discovery requests:* your email equates apples and oranges. Plaintiff served their requests on February 5, 2024. We have been waiting nearly six months and have received only a few thousand documents out of the terabytes of information you claim to have collected. By contrast, Defendants served their requests in May. We are not the cause of delay here—and have been making productions apace with several thousand pages produced and more on the way.

As stated up front, I am willing to meet-and-confer at any time between now and Friday evening. My hope is always that we can narrow our dispute and limit the need for Court intervention as much as possible, particularly given the parties clear disagreement over certain issues of governing law.

Best,
-Alex Dvorscak
Sᴛᴏɴᴇ | Hɪʟᴛᴏɴ ᴘʟʟᴄ
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, July 29, 2024 6:23 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Alex,

With regard to the two issues that you believe are ripe for adjudication, we agree that the privileged status of donor information is ready for the court's review, but we disagree that your argument that Defendants have somehow waived the Texas Shield Laws is similarly ripe. Despite repeated requests, we still have not received any legal authority from you suggesting that (i) the preservation of a privilege objection in RFP responses, coupled with (ii) the specific invocation of a privilege on a first privilege log can lead to the extreme result of complete waiver.

We remind you that your first motion to compel was filed before you provided us with your intended legal arguments and citations, and thus needlessly involved the court in matters that could be (and to a large extent, have been) resolved in conferrals. *See, e.g., Dondi Properties Corp. v. Comm. Sav. & Loan Ass'n,* 121 F.R.D. 284, 289 (N.D. Tex. 1988). If you have any authority indicating the Defendants waived the Press Shield law despite (1) our assertion of "the First Amendment privilege and reporter's privilege" "as well as any other applicable privilege or shield law" in our RFP responses *and* (2) our document-by-document privilege objections/assertions, please provide it for our review immediately. If you have no such authority, of course a motion would be inappropriate. Moreover, Defendants have already committed to re-serving our June 28 privilege log following the parties' meet and confer last Friday. Raising any log-related issues with the Court before Plaintiff can assess whether it disagrees with Defendants' revised privilege designations is similarly inappropriate.

With regard to your questions about our June 28 privilege log, each of your four assertions is mistaken. The privilege objections we raised in our log *apply to the individual documents that were logged*. Defendants have and will continue to raise objections on a document-by-document basis. Thus, it is possible that some documents falling within the four categories you enumerate will be produced and that other documents within those categories will be withheld or redacted and logged based on the Texas Press Shield laws, the First Amendment, or any other relevant privilege.

Finally, we would like to resolve the confusion you expressed regarding our production and privilege schedule. As we have indicated many times, the search terms merited by your broad discovery requests have pulled in an enormous quantity of documents for review. We are aware that some of these documents will contain drafts of articles, some may contain donor information, and many will be irrelevant to the claims or defenses at issue. Our recognition that draft articles exist, however, was not a representation that we had yet identified and reviewed every needle in the haystack.

It is conspicuous that you fault Defendants for referencing future document productions in their interrogatory responses when Plaintiff, of course, did the exact same thing. *See* X's R&Os to MMFA's 1st and 2nd Interrogatories Nos. 2, 3, 5, and 7. It appears that the parties have a mutual interest in identifying reciprocal expectations about future document productions to ensure that the documents each side regards as essential are produced at a pace sufficient to leave time for deposition preparation and, where necessary, the Court's involvement. We are discussing possible approaches internally and will share our recommendation by early next week.

Defendants continue to remain open to conferring to reach mutually satisfactory resolutions to our differences, but stress that it cannot be a one-way conversation where one party makes concessions and compromises while the other simply repeats its same arguments without legal support. Good-faith efforts at discovery will be a more effective use of everyone's time and resources—including the Court's.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 26, 2024 6:04 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

Thank you for last Friday's meet-and-confer and your follow-up email. With a few exceptions, it appears we have narrowed the privilege disputes to two issues ripe for adjudication.

First, the parties disagree about whether the Texas "Press Shield Laws" was waived or applies at all. We dispute your mischaracterization of prior meet-and-confers as having discussed Texas "Press Shield Laws" (they have not) and the appropriate level of specificity needed to lodge a proper privilege objection. But this disagreement should not foreclose prompt adjudication of your privilege claim, which presents a purely legal question regarding the scope and applicability of Texas "Press Shield Laws." To diligently follow the Court's amended scheduling order, we intend to file a motion to compel next **Friday, August 2**. We are, of course, willing to confer again if you believe additional conversations will further narrow the parties' disputes.

Second, the parties' dispute about donor information is also ripe for Court resolution. You indicated that Defendants' interrogatory responses would tee up the question of whether Defendants must disclose donor information. We have reviewed your interrogatory responses and agree. Defendants have made clear they will not search for or produce documents regarding donor information—let alone log the documents. X believes Defendants are required to do so, and so intends to compel a complete interrogatory response on **Friday, August 2**. Because the legal issue appears ripe for court resolution, we do not understand further discussion to be required. If you disagree and wish to discuss further, please let us know.

Defendants' position is unclear regarding the drafts of the November 16 and 17 articles and any editing, feedback, or other communications regarding the Articles that Defendant Hananoki received. For months, X's position that it seeks such information was clearly made through requests for production, meet-and-confers, and interrogatories. Now in your email response below you misconstrue our position as seeking "core documents" somehow separate and apart from its as-served RFPs. This characterization is both untrue and unhelpful.

X was surprised by Defendants' privilege log because it contains *none* of these documents. You claim that these documents have not been "identified to date," placing the quoted words in bold text. But that position facially contradicts countless representations made by Defendants. *Defendants* have consistently identified these documents as privileged from the very first meet-and-confer and at every subsequent meet-and-confer thereafter. These conferences have always referred to Hananoki's notes, drafts of the Article, and Donor identification and *Defendants* have always referred to these as documents they consider privileged. Since these are documents that *Defendants* have consistently discussed during meet-and-confers (and represented to the Court) as being privileged, they must have been identified by now. X will not accept a situation where Defendants have placed these documents on the bottom of the production stack such that X will receive these documents—or see them logged—for the first time at the close of discovery.

Although you stated on the call that the interrogatory responses would clarify Defendants' privilege objections regarding these documents and the application of the First Amendment and Texas "Press Shield laws," they do not. Instead, Defendants say that X must wait for "Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received" about the Articles prior to publication. Once again, this contradicts your claim that these documents have not been "identified to date," further reinforcing how Defendants must have identified some documents regarding the "specific feedback" that Defendant Hananoki received.

Making X guess about what will be produced and when does not comport with the Court's instruction that the parties meaningfully confer to clarify the privilege dispute and that required Defendants to alert the Court as to "whether any dispute regarding the assertion of First Amendment privileges remain." ECF No. 65 at 3. Please let us know when Defendants will receive a privilege log listing these documents and the production of documents referenced in Defendants' interrogatory responses. Otherwise, to keep this case moving in compliance with the Court's schedule, we will have no choice but to raise this issue in the motion to compel.

With respect to the items you have identified on your June 28, 2024 privilege log, below is our understanding of Defendants' assertions of privilege. We ask that you advise us by **Wednesday, July 31** if any of these understandings are mistaken so that the parties can cleanly tee up these issues for judicial resolution.

1. Defendants assert that all communications between Defendant Hananoki and any Media Matters editors about the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.
2. Defendants assert that all drafts of the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.
3. Defendants assert that all internal communications about *other* articles published by Media Matters are privileged under the Texas Shield Law but *not* under the First Amendment.
4. Defendants assert that all communications with third parties as part of drafting, researching, or revising articles written by Media Matters is privileged under both the Texas Sheild Law and the right of association protected by the First Amendment.

Lastly, we agree to the revised format for privilege logs that you propose below. However, we continue to object to any descriptors of third parties (e.g., "strategic vendor") that are undefined and vague. We expect that any revised descriptions will provide sufficient information for both X and

App.428

the Court to evaluate each privilege claim.

Best,

-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

_____

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 24, 2024 12:34 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Thank you for meeting and conferring on Friday evening. Below is a summary of the key takeaways from our discussion:

*First*, regarding your concerns—expressed for the first time on our call—that Defendants had not included on their privilege log all materials that X considers "core documents," Defendants explained that X's discovery requests do not make any distinction regarding which documents X considers "core" to their case. Instead, X's requests seek every document in Defendants' possession that even *mention* broad terms or concepts (such as "content moderation," RFP No. 6) that are a regular component of Defendants' work. As Defendants have repeatedly explained, this search has swept in an incredible volume of documents for review. That review continues every day.

Defendants' first privilege log identified documents that had been reviewed and determined to be privileged as of the date of that log. The parties have mutually agreed to subsequent privilege log exchanges through the end of the year, recognizing that it will likely take several months to review all potentially responsive documents. This sequencing is consistent with a fair reading of the Court's orders and the parties' own agreements. The Court's June 6 order, as you know, was entered when discovery was set to close on July 29—that is, before the parties jointly sought an extension and thus before the Court recognized "the volume and complexity of ongoing document discovery" and extended the discovery deadline until December 31. *See* ECF No. 69. The parties subsequently negotiated a revised privilege log agreement, and on June 10 we memorialized via email an agreement reached by phone on how to proceed: "With respect to the June 28 'Deadline for Defendants to Provide First Privilege Log and Associated Documents,' the parties understand that on June 28 Defendants will produce a log **of any privileged documents identified to date**, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement." Then on July 2 we agreed to future privilege log exchanges in September, October, November, and December, and further agreed that this course of conduct did not require the Court's imprimatur. Just as X did not produce all responsive documents in its first (and so far, only) document production, it was not reasonable to expect Defendants to log all privileged documents in their first of several scheduled privilege logs, particularly since the parties had already stipulated that "neither side can reasonably meet the existing discovery deadlines." ECF No. 66 at 3. To the extent X now recognizes that the documents relevant to this case can be found through requests much narrower than those that X has served to date, Defendants welcome revised RFPs to expedite the review and logging of responsive documents.

In response to X's related concern about the lack of donor-related documents on their first privilege log, Defendants explained that this dispute is best presented for the Court's adjudication based on Defendants' responses and objections to X's interrogatories. Because Defendants are not separately searching for donor-related documents (as made clear in our objections and responses), these documents will appear on our privilege log only to the extent the documents are donor-related to search terms generated by other requests. No such documents had been established as responsive and privileged as of the date of our first log.

*Second*, regarding your suggestion that Defendants waived any invocation of Texas's press shield law by failing to raise it in earlier discussions, in our July 19 email we pointed you to the shield objection raised in our very first responses and objections, and we further reminded you during our call that the shield law was discussed in the parties' very first discovery meet-and-confer in April. Where X has insisted that Defendants not employ general objections before document review has completed, *see, e.g.*, ECF No. 64 at 3 (X complaining that Defendants' invocation of the shield law in their original responses and objections lacked specificity), it is unreasonable to fault Defendants for raising privilege objections on a document-by-document basis, as contemplated by case law. To date, you have failed to provide us with any authority suggesting that a party waives a privilege by identifying it on their first privilege log.

*Third*, regarding your inquiry into the scope of Texas's press shield law, the parties agreed that the text of the statute speaks for itself. As we explained via email and on our call, the press shield is directly applicable to a media organization like Media Matters and journalists like Mr. Hananoki. During our recent call, we further explained that Defendants' first privilege log invokes the shield law only for documents with no conceivable relevance to this case and that are thus clearly not "essential to the maintenance of a claim or defense." Tex. Civ. Prac. & Rem. Code § 22.024.

*Fourth*, in both our July 19 email and subsequent discussion, Defendants agreed to discuss revisions to the privilege protocol and document descriptions to enhance clarity about the nature of documents being withheld. In response, we have prepared an example of a revised privilege log entry:

| Bates Number | Status | Document Type | From/ Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013760 | Withheld | Word | Pamela Vogel pvogel@mediamatters.org | | | | 12/5/ 2022 | First Amendment Privilege; TX Press Shield Laws | Agenda for an internal MMFA meeting regarding strategy for avenues of journalistic research and writing for the year, much of which was ultimately not pursued by the organization. The document summarizes right-wing media trends and includes a few stray references to Musk or Twitter outside the context of Musk's incendiary remarks or Twitter's advertisement placement. **TX Press Shield Law:** This document reflects confidential and sensitive journalistic decision-making processes. **First Amendment Associational Privilege**: This document contains internal communications concerning strategy and messaging. |

If this addresses the concerns that you raised, Defendants will reproduce the entire log with similar changes.

App.429

Best regards,

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Abha Khanna
**Sent:** Friday, July 19, 2024 1:20 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

In advance of our call, to facilitate meaningful discussion and a good-faith attempt by both sides to resolve the issues, please find below Defendants' preliminary responses to the concerns you raised:

First, Defendants' Texas Press Shield Law assertions are timely. Contrary to your representations, our original responses and objections to X's First and Second RFP sets *did* reference shield laws—we objected to producing "documents or communications that are protected by the attorney-client privilege, work-product doctrine, **and/or any other applicable privilege or shield law**, and/or constitute trial preparation material within the meaning of Rule 26." (emphasis added); *see also* ECF 64, Pls' Reply in Support of its Motion to Compel at 3 ("As X detailed in its motion, Defendants asserted a catchall objection to X's requests for production for attorney-client privileges, work-product protections, "and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26."). Because Defendants were still in the process of collecting and reviewing initial batches of documents, we could not be certain at that time what information would be found in the documents and which privileges would be implicated. You objected to the use of general objections that were not tied to specific documents, and so Defendants removed this language from subsequent amendments to our discovery responses and agreed to log privilege objections on a document-by-document basis. *See, e.g.*, Second Amended Responses and Objections to Plaintiff's 1st Requests for Production; Amended Responses and Objections to Plaintiff's 1st Requests for Production to Carusone; Amended Responses and Objections to Plaintiff's 2nd Requests for Production. Moreover, Defendants continued to raise the possibility that shield law privileges would be implicated and to preserve our right to make the objection if it was implicated. In our joint ESI Protocol, Defendants expressly added privilege preservation language that states: "Nothing in this Stipulation shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, First Amendment Privilege, **reporter's privilege, shield laws, or any other applicable privilege or immunity**." *See* ECF 67 at 2.

Contrary to Plaintiff's shifting argument, Defendants' assertion of this privilege could not have been both *premature* when raised in their initial R&Os and yet also *too late* when raised in their first privilege log. *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022) (quoting *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020)) (noting the "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself"). (To be clear, nor have Defendants waived privileges that they did not assert in their first log. Waiver would occur only as to specific documents that Defendants voluntarily and knowingly disclose. *See, e.g.*, *AHF Community Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 148 (N.D. Tex. 2009).)

Second, the Texas Press Shield Law privilege is applicable. "Under Fed. R. Evid. 501, the availability of a privilege in a diversity case is governed by the law of the forum state," allowing Defendants to assert privileges provided by Texas law. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). The relevant statute, Tex. Civ. Prac. & Rem. Code Ann. § 22.023 provides that "a judicial . . . body with the authority to issue a subpoena *or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding*" any information covered by the privilege. Tex. Civ. Prac. & Rem. Code Ann. § 22.023(a) (emphasis added). The statute nowhere suggests that journalists forfeit the Shield Law's protections when they are defendants subject to requests for production rather than third parties subject to subpoenas. *See, e.g.*, *Abraham v. Greer*, 509 S.W.3d 609, 613 (Tex. App. 2016) (trial court noting that the privilege would apply to the defendant if he was deemed to be a journalist). Plaintiff's reading would run afoul of the statute's very purpose, which includes "increas[ing] the free flow of information and preserv[ing] a free and active press." Tex. Civ. Prac. & Rem. Code § 22.022.

Far from limiting the Shield Law's scope, the subsequent section you cite to, Tex. Civ. Prac. & Rem. Code § 22.024, sets the high bar that Plaintiff must clear to overcome the relevant privilege. That section makes clear that a "compulsory process [can]not be[] used to obtain peripheral, nonessential, or speculative information," *id.* at § 22.024(5), and that the information being sought must be "essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure," *id.* at § 22.024(6). The documents Defendants logged as privileged under the Shield Law are fully protected under these provisions.

Third, Defendants disagree with Plaintiff's contention that their descriptions of documents are "vague," "generalized," or "insufficiently specific." Defendants are not obligated to reveal identifying details—including, for example, details identifying strategic vendors and partners—that may undermine or abrogate the very privilege they assert. Defendants' descriptions preserve the privilege's protections while informing Plaintiff of the types of communications found within the identified documents. Defendants are open to discussing the additional detail that you believe is appropriate to discern if any compromises can be reached.

Fourth, Defendants continue to disagree with Plaintiff about the availability of the First Amendment privilege in civil litigation discovery disputes. We again refer Plaintiff to the ample arguments and caselaw we have provided over the last several months on the subject.

Lastly, Defendants will take a closer look at document MMFA_013760 to discern if the information Plaintiff seeks is accessible and, if so, will update the log accordingly. In light of the Parties' recent agreement to include date information on the privilege log, Defendants will also re-issue the log with that column included.

We look further to discussing further later today.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177

akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Tuesday, July 16, 2024 12:14 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Daniela,

We're available to meet at 4:00 ET / 3:00 CT on Friday. We'll send around a calendar invite.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

**From:** Daniela Lorenzo <dlorenzo@elias.law>
**Sent:** Monday, July 15, 2024 3:39 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is not available until Friday between 3-5 ET. If that works for your team, please send us a calendar invite in that time range. If not, please propose times that work for you all next week.

Best,
Daniela

**Daniela Lorenzo** (she/her)
Litigation Associate
Elias Law Group LLP
202.987.5400
dlorenzo@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 12, 2024 9:47 PM
**To:** Jacob Shelly <jshelly@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com>; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Pursuant to Section III of the parties' Revised Stipulation for the Exchange of Privilege Logs and the Court's order on X's motion to compel (ECF No. 65), X objects to the assertions of privilege for the following documents (identified by Bates label):

MMFA_013541, 013562-013579, 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013749-013755, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788.

As the Court instructed, we would like to meet and confer regarding our objections. Please let us know your availability to confer next week from Tuesday (7/16) onward.

To aid the discussion, we have briefly set out our overarching objections to your privilege assertions. These descriptions are not meant to be

App.431

exhaustive and are made without intention of waiving or limiting any argument that X may advance in any future motion practice.

1. Assertion of privilege based on "TX Press Shield Laws" (MMFA_013561, 013562-013579, 013580-013597, 013580-013597, 013598-013616, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788):
   - The assertion is untimely and therefore waived.
     - The parties have met and conferred over the privileges asserted by Defendants many times over the past several months, and prior to this June 28 privilege log submission, the only specific privileges asserted were a federal-law reporter's privilege (e.g., RFP No. 1), purported associational rights, (e.g., RFP No. 3), and protection of donor information. (e.g., RFP No. 17).
   - The privilege is substantively inapplicable.
     - On its own terms, Texas's shield law applies only to "subpoenaing . . . information." Tex. Civ. Prac. & Rem. Code § 22.024(4). As parties to this litigation, Defendants are instead subject to the Federal Rules of Civil Procedure governing disclosure and production of documents. See Fed. R. Civ. P. 26 & 34.
     - The assertion of privilege exceeds the scope of any statutory protections, which would extend at most to certain materials "prepared while acting as a journalist" or the "source" thereof. Tex. Civ. Prac. & Rem. Code § 22.023(1)-(2).
   - Defendants' generalized claim of privilege for "internal strategic communications," "MMFA's journalistic process and procedures," "process" and/or "strategy" is insufficiently specific.
     - Even if the Texas Civil Practice & Remedies Code applies here (and Defendants fail to specify which specific statute would cover the documents at issue) these assertions are vague, generalized and do not provide sufficient detail for X or the Court to determine how or why the underlying document would be privileged.

2. Assertion of a First Amendment and/or "TX Press Shield Laws" privilege with respect to "strategic vendors," "vendor[s]," "researching organizations," or "strategic partners" (MMFA_013562-013579; 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013716-013748, 013756, 013757, 013776, 013757, 013776):
   - This assertion is vague, impermissible boilerplate. X is unable to determine what a "strategic vendor" is or why the identities of Defendants' "strategic vendors" would be privileged. The same is true for Defendants' assertions of privilege based on "researching organizations" and "strategic partners," as well as any communications between Defendants and any "vendor."
   - The First Amendment does not protect the disclosure of vendor identities during discovery in civil litigation between private parties. The same is likely true of Defendants' claim of privilege with respect to "researching organizations" and "strategic partners," however Defendants' privilege log does not contain sufficient detail for X to determine the First Amendment's applicability, if any.
   - The assertion of a "TX Press Shield Laws" privilege suffers deficiencies similar to those identified above.

3. Assertion of privilege for any material purportedly unrelated to this case and, specifically, any assertion of First Amendment privilege with respect to allegedly unrelated communications with journalists (MMFA_013749-013755):
   - Defendants' descriptions provide no information allowing X or the Court to gauge whether the documents are "unrelated." If Defendants claim a document is unrelated, Defendants must provide sufficient information to allow X to assess whether to dispute that characterization.
   - The asserted First Amendment privilege is also too vague and lacking in detail to allow X or the Court to determine the applicability of the privilege.
   - The First Amendment does not protect responsive communications in civil litigation between private parties.

4. Assertion of First Amendment privilege with respect to an internal MMFA strategy meeting (MMFA_013760):
   - This assertion does not provide sufficient information to allow X or the Court to determine the applicability of the privilege. For example, the privilege log does not list an author, date, or other pertinent information.
   - The First Amendment does not shield discussions about journalistic strategy from discovery in civil litigation between private parties.

Best,

**Alexander M. Dvorscak**
Attorney
STONE | HILTON PLLC
1115 W. Slaughter Ln.
Austin, Texas 78748
alex@stonehilton.com | (518) 772-8657
www.stonehilton.com

CONFIDENTIALITY NOTICE:
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or the work-product doctrine. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** Jacob Shelly <jshelly@elias.law>
**Sent:** Friday, June 28, 2024 10:18 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Attached please find a letter regarding Defendants' fifth document production and the accompanying privilege log.

**Jacob Shelly**

Elias Law Group LLP
250 Massachusetts Ave NW Suite 400
Washington DC 20001
202-968-4496

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

# Exhibit 5

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| X CORP., | |
| *Plaintiff*, | |
| v. | Civil Action No. 4:23-cv-01175-O |
| MEDIA MATTERS FOR AMERICA, *et al.*, | |
| *Defendants*. | |

## DEFENDANT MEDIA MATTERS FOR AMERICA'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST INTERROGATORIES

Defendant Media Matters for America ("Media Matters") hereby serves its responses and objections to Plaintiff X Corp.'s First Interrogatories through its undersigned counsel.

1

App.435

Dated: July 19, 2024

Respectfully submitted,

*/s/ Abha Khanna*

**ELIAS LAW GROUP LLP**

Abha Khanna* (WA 42612)

1700 Seventh Avenue, Suite 2100

Seattle, WA 98101

T: (206) 656-0177

F: (206) 656-0180

akhanna@elias.law

Aria C. Branch (DC 1014541)

Jacob D. Shelly* (DC 90010127)

Elena Rodriguez Armenta* (DC 90018798)

Daniela Lorenzo* (DC 90022335)

250 Massachusetts Ave, NW Suite 400

Washington, D.C. 20001

T: (202) 968-4490

F: (202) 986-4498

abranch@elias.law

jshelly@elias.law

erodriguezarmenta@elias.law

dlorenzo@elias.law

**GIBSON, DUNN & CRUTCHER LLP**

Andrew LeGrand (TX 24070132)

2001 Ross Avenue, Suite 2100

Dallas, TX 75201

T: (214) 698-3100

F: (214) 571-2960

alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)

333 South Grand Avenue

Los Angeles, CA 90071

T: (213) 229-7000

F: (213) 229-7520

tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)

200 Park Avenue

New York, New York 10166

T: (212) 351-4000

2

App.436

F: (212) 351-4035
aahmed@gibsondunn.com

* Admitted *pro hac vice*

*Counsel for Defendant Media Matters for
America*

App.437

**CERTIFICATE OF SERVICE**

I hereby certify that this document was served on all counsel of record for Plaintiff via email on July 19, 2024, pursuant to counsel's agreement to accept service via electronic means.

*/s/ Abha Khanna*
Abha Khanna

## PRELIMINARY STATEMENT

The responses set forth herein are based on the information and documents reasonably available to Defendants at this time, but discovery in this matter, including Defendants' investigation into the issues raised in this lawsuit, is still ongoing. Defendants reserve their right to alter, supplement, amend, correct, clarify, or otherwise modify these responses and objections, to assert additional objections or privileges in any subsequent supplemental response(s), and to modify their responses if and when they learn additional information.

By making the accompanying responses and objections Defendants do not waive, and hereby expressly reserve, their right to assert all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings.

Moreover, Defendants maintain that this Court has no personal jurisdiction over Media Matters, Eric Hananoki, or Angelo Carusone, and that the Northern District of Texas is not the proper venue for this dispute. *See* Defendants' Brief in Support of their Motion to Dismiss, ECF 41 at Sections I and II; Defendants' Reply in Support of their Motion to Dismiss, ECF 51 at Sections I and II. Defendants provide these responses and objections subject to and without waiving any of their arguments for dismissal.

## RESPONSES TO INDIVIDUAL INTERROGATORIES

**INTERROGATORY NO. 1:** Identify and list with particularity all of Your owners, principals, directors, officers, employees, contractors, freelancers, authors, and agents who were affiliated with You at any point in time between April 2021 and the present. For avoidance of doubt, particularity requires You to, at a minimum, for each person identified, (1) to provide current and all former job titles and job descriptions; (2) a start and, if applicable, end date; (3) current or last

known contact information; (4) the reason for separation, if applicable; and (5) all compensation information (*e.g.*, salary, bonuses, commissions, benefits, etc.) by year.

**OBJECTIONS**: Defendants object to this interrogatory on the grounds that it constitutes at least three discrete interrogatories—(1) the name, title, contact information, occupational status, and job description of relevant individuals; (2) the reason for separation, where applicable; and (3) compensation information. *See, e.g.*, *Garza v. Altaire Pharmaceuticals, Inc*., No. 3:20-CV-1524-B-BK, 2021 WL 3809102, at *4 (N.D. Tex. May 28, 2021) (finding interrogatories were multiplicative where "each subpart of these interrogatories can be answered without answering either of its other subparts").

Defendants also object to Interrogatory No. 1 for seeking information that is overbroad and not relevant and proportional to the needs of the case and on the grounds that collecting all responsive information would be unduly burdensome. Collecting information for all individuals (including contractors and agents) affiliated with Defendants—even where the individuals had nothing to do with researching, writing, editing, designing, publishing, or promoting the statements at issue in this case—would impose severe burdens on Defendants. Consistent with other decisions in this Circuit, Defendants will identify individuals responsible for work related to the November 16 and 17, 2023 Articles. *See, e.g.*, *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 561 (N.D. Tex. 2010) (finding that identifying all employees "involved in" the licensing program was overbroad and limiting response to those "responsible for" the licensing program would sufficiently respond to the request); *Am. Airlines, Inc. v. Delta Air Lines, Inc*., No. 4:19-CV-01053-O, 2020 WL 8115870, at *3 (N.D. Tex. July 14, 2020) (similar). Defendants further object that compensation information bears no connection to the allegations at issue in this litigation.

App.440

**RESPONSE**: Plaintiffs attach Exhibit A, which includes names, job titles, role summaries, and employment dates for individuals who have been responsible for work related to the November 16 and 17, 2023 Articles. All individuals are current MMFA employees and may be contacted through counsel.

**INTERROGATORY NO. 2:** Identify and list with particularity Your top 20 funding sources (whether from an individual or entity) by cumulative dollar amount received from 2021 to present. For avoidance of doubt, particularity requires You to, at a minimum, (1) identify the funding source; (2) identify the location of the funding source; (3) state the amount of money received by You from that funding source on a quarterly basis; (4) state whether the funding had any conditions, earmarks, or other restrictions from general use by Media Matters; and (5) a description of the conditions, earmarks, or other restrictions, if any.

**OBJECTIONS**: Defendants object to Interrogatory No. 2 as being harassing and irrelevant to any claim or defense asserted in this litigation, and as calling for First Amendment privileged information. The identities of Defendants' funders are not relevant to any element of any of Plaintiff's three claims, nor are they relevant to a potential calculation of damages. Instead, this Interrogatory represents a fishing expedition for highly sensitive and privileged information, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 610–11, 616–17 (2021); *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958); *see also Whole Woman's Health v. Smith*, 896 F.3d 362, 372 (5th Cir. 2018), *as revised* (July 17, 2018); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010). Disclosure of donor identifying information can also lead to donors being harassed for and deterred

from affiliating with organizations they support. Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that. Anyone funding that organization, will be, we will pursue them."[1]

  **RESPONSE**: Based on the foregoing objections, Defendants will not provide a response to Interrogatory No. 2.


**INTERROGATORY NO. 3:** Describe with particularity all of your policies, procedures, rules, guidelines, and guides that are and/or were in place to ensure You write and publish accurate and non-misleading reporting. For avoidance of doubt, particularity requires You to, at a minimum, (1) identify the policy; (2) identify how the policy was conveyed, for example through document (including emails), presentation, or handbook; (3) identify how employees, freelancers, contractors, and other individuals who write or investigate pieces published to the Media Matters website or that were otherwise distributed by Media Matters are trained in the policy; (4) identify any reporting required by the policy; (5) identify any documentation related to or required by the policy to ensure compliance with the policy; and (6) identify the stated consequence or punishment for noncompliance with the policy.

  **OBJECTIONS**: Defendants object to Interrogatory No. 3 because its request for descriptions of documents—without any limitation as to when those documents were created or

---

[1] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM),
(https://x.com/TheChiefNerd/status/1733960832571122115) (last accessed July 15, 2024).

App.442

implemented or whether those documents have anything to do with the reporting at issue in this case—is overbroad, unduly burdensome, and not relevant or proportional to the needs of this case.

Defendants further object to Interrogatory No. 3 on the grounds that it constitutes at least two separate interrogatories labeled as one: (1) what policies Media Matters has, and (2) how they are enforced. *See, e.g.*, *Garza*, 2021 WL 3809102, at *4 (finding interrogatories were multiplicative where "each subpart of these interrogatories can be answered without answering either of its other subparts").

**RESPONSE**: Defendants respond to Interrogatory No. 3 for policies in place in the 2023-2024 period as follows:

Media Matters has a rigorous publication process supervised by dedicated editors to ensure articles published on its website are accurate. When onboarded, employees with content creation responsibilities are trained in Media Matters's editorial practices using both written guides and hands-on training with editors and/or managers. For each piece of written content published on the website, that process typically includes:

- An initial pitch or outline approved by a relevant manager or member of senior staff;

- a thorough line-edit, including meticulous fact-checking, from one of Media Matters's dedicated editors; and

- a final review from a relevant manager, editor, or member of senior staff prior to publication.

Depending on the article, a piece may also receive several other layers of review, including a first edit by a relevant manager prior to review by a dedicated editor, a thorough second edit by a different editor if deemed necessary, and additional review from members of senior management or Media Matters's legal counsel prior to publication.

App.443

Training materials related to the publication process are accessible to staff on an ongoing basis through the organization's internal systems, and the materials are regularly referenced and reshared in skills training sessions. After pieces are published, potential corrections are governed by Media Matters's corrections policy and with the guidance and input of Media Matters's senior and executive staff. Media Matters also has a corrections section on its website where anyone may request a correction. All corrections are documented. Errors—both from writers and editors—are considered as part of the performance management process for employees.

Defendants have produced documents responsive to Interrogatory No. 3 at Bates range MMFA_016999 – MMFA_017331.

**INTERROGATORY NO. 4:** For each policy identified in response to Interrogatory No. 3, please state with particularity whether the policy has ever been violated, identifying at a minimum the violation, the violator, the time when the violation occurred, and what disciplinary or corrective action, if any, was taken in response.

**OBJECTIONS**: Defendants object to Interrogatory No. 4 as unduly burdensome and disproportionate to the needs of the case because it requests the identification of any violation "ever" committed, without any limitation as to when the purported violation may have occurred.

**RESPONSE**: Defendants are not aware that any of the policies summarized and produced related to writing and publishing accurate and non-misleading reporting in response to Interrogatory No. 3 were violated from 2023 to 2024. While published articles have occasionally contained inaccuracies—as anticipated by the Media Matters's correction policy, beginning Bates MMFA_017087—corrections have been addressed consistently with Media Matters's policies, procedures, rules, guidelines, and guides.

**INTERROGATORY NO. 5:** Identify with particularity all X accounts created by You or any individual affiliated with You, including but not limited to all employees, freelancers, contractors, and other individuals who write or investigate pieces published to the Media Matters website or that were otherwise distributed by Media Matters. For avoidance of doubt, particularity requires You to, at a minimum, (1) identify the account handle; (2) the email and/or phone number associated with the account, (3) the name of the account's primary user; (4) the name of the individual who created the account; (5) the names of any other individuals who have access to the account; and (6) the date when the account was created.

**OBJECTIONS**: Defendants object to Interrogatory No. 5 as being overly broad, burdensome, harassing, and disproportionate to the needs of this case because it requests information about "all X accounts," created not only by Media Matters but also "any individual affiliated" with it, "including but not limited to all employees, freelancers, contractors, and other individuals who write or investigate pieces published to the Media Matters website or that were otherwise distributed by Media Matters," with no limitations as to whether the accounts were used in connection with the Articles that are the subject of this litigation and to include even any and all of those individuals' personal accounts. The interrogatory is also without any limitation on when the accounts were operational or being used. As a result, it seeks information that is not only overbroad, burdensome, harassing and disproportionate to the needs of the case but also not relevant to any claim or defense asserted in this litigation.

**RESPONSE**: The following accounts have been used for research and/or reporting on X Corp. in 2023 and/or 2024:

**Account Handle**: @rwemails
**Email:** rwemailsehhmmfa@gmail.com
**Name of user**: Eric Hananoki
**Other individuals with access**: None
**Date created**: July 2020

**Account Handle**: @ehananoki
**Email:** ehananoki@mediamatters.org
**Name of user**: Eric Hananoki
**Other individuals with access**: None
**Date created**: February 2009

**Account Handle**: @krgogarty
**Email:** kgogarty@mediamatters.org
**Name of user**: Kayla Gogarty
**Other individuals with access**: None
**Date created**: September 2018

**Account Handle**: @Danapatriot
**Email:** kgogarty@mediamatters.org
**Name of user**: Kayla Gogarty
**Other individuals with access**: None
**Date created**: May 2023

**Account Handle**: @ohhkaygo
**Email:** kaylagogartyy@gmail.com
**Name of user**: Kayla Gogarty
**Other individuals with access**: None
**Date created**: November 2011

**Account Handle:** @beasherman42
**Email:** beasherman42@gmail.com
**Users/Access:** All MMFA staff
**Date when created:** November 2021

**Account Handle:** @anettemichaels4
**Email:** anettemichaelson06@gmail.com
**Users/Access:** All MMFA staff
**Date when created:** January 2022

**Account Handle:** @AlKapDC
**Email:** akaplan@mediamatters.org
**Name of user**: Alex Kaplan
**Other individuals with access**: None
**Date created**: November 2015

App.446

**Account Handle**: @RubySeavey
**Email**: rseavey@mediamatters.org
**Name of user**: Ruby Seavey*
**Other individuals with access**: None
**Date created**: September 2014
*No longer with MMFA as of June 30, 2023*

**Account Handle**: @CamKC_17
**Email**: camc177@gmail.com
**Name of user**: Camden Carter*
**Other individuals with access**: None
**Date created**: July 2011
*No longer with MMFA as of May 28, 2024*

**Account Handle**: @_nataliemathes_
**Email**: nmathes@mediamatters.org
**Name of user**: Natalie Mathes*
**Other individuals with access**: None
**Date created**: July 2019
*No longer with MMFA as of March 29, 2024*

**Account Handle**: @justinhorowitz_
**Email**: jhorowitz@mediamatters.org
**Name of user**: Justin Horowitz
**Other individuals with access**: None
**Date created**: May 2009

**Account Handle**: @JackWinstan
**Email**: jwinstanley@mediamatters.org
**Name of user**: Jack Winstanley
**Other individuals with access**: None
**Date created**: May 2020

**Account Handle**: @ethancollier_
**Email**: ecollier@mediamatters.org
**Name of user**: Ethan Collier*
**Other individuals with access**: None
**Date created**: April 2021

*No longer with MMFA as of May 28, 2024*

**Account Handle**: @CarlysHandle
**Email**: cevans@mediamatters.org
**Name of user**: Carly Evans*
**Other individuals with access**: None
**Date created**: November 2020

| |
|---|
| *No longer with MMFA as of June 30, 2024* |
| **Account Handle**: @JasmineGeonzon<br>**Email**: jgeonzon@mediamatters.org<br>**Name of user**: Jasmine Geonzon*<br>**Other individuals with access**: None<br>**Date created**: July 2019<br><br>*No longer with MMFA as of April 19, 2024* |
| **Account Handle**: @Payarm18<br>**Email**: parmstrong@mediamatters.org<br>**Name of user**: Payton Armstrong<br>**Other individuals with access**: None<br>**Date created**: December 2012 |
| **Account Handle**: @Aud_McCabe<br>**Email**: amccabe@mediamatters.org<br>**Name of user**: Audrey McCabe*<br>**Other individuals with access**: None<br>**Date created**: August 2022<br><br>*No longer with MMFA as of June 14, 2024* |
| **Account Handle**: @EricKleefeld<br>**Email**: ekleefeld@mediamatters.org<br>**Name of user**: Eric Kleefeld*<br>**Other individuals with access**: None<br>**Date created**: May 2009<br><br>*No longer with MMFA as of May 28, 2024* |
| **Account Handle**: @wordsmithsilva<br>**Email**: ssilva@mediamatters.org<br>**Name of user**: Spencer Smith-Silva*<br>**Other individuals with access**: None<br>**Date created**: March 2011<br><br>*No longer with MMFA as of May 28, 2024* |
| **Account Handle**: @Gidraaffe<br>**Email**: gtaaffe@mediamatters.org<br>**Name of user**: Gideon Taaffe<br>**Other individuals with access**: None<br>**Date created**: February 2019 |
| **Account Handle**: @npr_matrix<br>**Email**: csimon@mediamatters.org<br>**Name of user**: Chloe Simon |

| |
|---|
| **Other individuals with access**: None<br>**Date created**: August 2018 |
| **Account Handle**: @zpleat<br>**Email**: zpleat@mediamatters.org<br>**Name of user**: Zach Pleat<br>**Other individuals with access**: None<br>**Date created**: February 2009 |
| **Account Handle**: @charishoard<br>**Email**: choard@mediamatters.org<br>**Name of user**: Charis Hoard<br>**Other individuals with access**: None<br>**Date created**: May 2021 |
| **Account Handle**: @AlexPattyy<br>**Email**: apatterson@mediamatters.org<br>**Name of user**: Alex Paterson*<br>**Other individuals with access**: None<br>**Date created**: August 2019<br>*No longer with MMFA as of May 28, 2024* |

**INTERROGATORY NO. 6:** For each account identified in Interrogatory 5, please provide an explanation of whether and how that account was used in connection with the November 16, 2023 Article or the November 17, 2023 Article including but not limited to the research, drafting, and editing and the publication, distribution, or sharing of the Articles in any way.

      **RESPONSE**: The accounts @rwemails and @ehananoki were used by Eric Hananoki for the purpose of conducting research on X, Musk, and Twitter advertisers as detailed in the November 16, 2023 and November 17, 2023 Articles. For an explanation of how these accounts were used, see Defendants' responses to Interrogatories Nos. 7 and 8. No other accounts listed in Interrogatory No. 5 were used in connection with the November 16, 2023 and November 17, 2023 Articles.

**INTERROGATORY NO. 7:** Describe with particularity Your investigation, research, writing, review, and editing process prior to publishing and distributing the November 16, 2023 Article. For the avoidance of doubt, please specify at a minimum, (1) each individual who participated in the drafting of the November 16, 2023 Article or reviewed it prior to publication; (2) the job title of each individual; (3) the specific role played by each individual in drafting or reviewing the November 16, 2023 Article; and (4) any comments, revisions, feedback, or approval provided by the individual.

**OBJECTIONS**: Defendants object to subpart 4 of this Interrogatory because it seeks information that Plaintiff has already requested in Requests for Production ("RFP") Nos. 1 and 3. Translating the same information to an interrogatory is not required. *See Cottonham v. Allen*, No. CV 14-729-JJB-RLB, 2016 WL 4035331, at *5 n.3 (M.D. La. July 25, 2016) (denying motion to compel interrogatory because "there are more efficient, less burdensome ways to obtain this same information," including through an RFP that covers the same subject matter).

**RESPONSE**: Eric Hananoki, a senior investigative reporter at Media Matters, authored the November 16, 2023 Article. For years, Mr. Hananoki has been conducting research and reporting on extremism on social media platforms, including X (and its predecessor, Twitter). Following Elon Musk's purchase of X, Mr. Hananoki and reporters from other news organizations observed and reported on what appeared to be an increase in the presence of pro-Nazi accounts and pro-Nazi content on the platform.

Prior to writing the November 16, 2023 Article, Mr. Hananoki became aware of a pro-Hitler and Holocaust denier account (@bambkb) that had written viral pro-Nazi posts and said it had received approximately $3,000 from X's Ad Revenue Sharing Program. Mr. Hananoki published an article describing this account and its collection of advertising revenue from X on

November 13, 2023. The November 13, 2023 Article also identified several advertisers whose advertisements were placed next to content published by @bambkb.

Prior to writing the November 16, 2023 Article, Mr. Hananoki was also aware that Linda Yaccarino, CEO of X Corp., had claimed that advertisers were "protected from the risk of being next to" potentially toxic content on the platform. *See* CNBC, *X CEO Linda Yaccarino Explains Reason for Getting Rid of Twitter Name*, https://www.cnbc.com/2023/08/10/x-corp-ceo-linda-yaccarino-says-she-has-autonomy-under-elon-musk.html (Aug. 10, 2023). In light of his findings from the November 13, 2023 Article and his prior research about the rise of extremist content on X, Mr. Hananoki sought to further fact-check Ms. Yaccarino's claim.

To test whether advertisers were "protected" from having their ads placed next to toxic content, Mr. Hananoki used an existing private X account (@rwemails) that he had created in 2020 and used it to follow both a number of pro-Nazi accounts, including but not limited to @bambkb, and several non-ideological corporate accounts. The non-ideological corporate accounts that Mr. Hananoki followed included: @StateFarm, @TGIFridays, @hardmountaindew, @Ritzcrackers, and @TheRealTriscuit.

From November 14 to 16, 2023, the time period in which Mr. Hananoki drafted the November 16, 2023 Article, Mr. Hananoki refreshed the home feed of @rwemails to see what content appeared. There, as documented in his November 16, 2023 Article, Mr. Hananoki found numerous advertisements that appeared next to pro-Nazi content. Mr. Hananoki took screenshots from the @rwemails account demonstrating toxic content appearing alongside advertisements. Mr. Hananoki did not alter those screenshots in any way. In drafting the November 16, 2023 Article, Mr. Hananoki also did not contact any advertisers at all, including those whose accounts he followed in researching the article and those that he identified in the November 16, 2023 Article.

17    App.451

On November 15, 2023, while Mr. Hananoki was in the midst of researching the November 16, 2023 Article, Mr. Musk publicly endorsed what appeared to Mr. Hananoki, Media Matters, and many other news organizations to be an antisemitic conspiracy theory. Mr. Musk's comments received widespread media attention. Mr. Hananoki reported on Mr. Musk's apparent endorsement of this theory as part of his November 16, 2023 Article.

The following individuals from Media Matters reviewed a draft of the November 16, 2023 Article prior to publication:

- Beth Cope, Senior Editor

- Ben Dimiero, Editor-in-Chief

- Kayla Gogarty, Research Director

Without waiving any protections provided by Texas shield law, *see* Tex. Civ. Prac. & Rem. Code § 22.021, *et seq.*, Mr. Hananoki directs Plaintiff to Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received about the November 16, 2023 Article prior to publication.

Prior to publication, Mr. Hananoki also provided the proposed headline of the November 16, 2023 Article to Ben Dimiero, Editor-in-Chief, and John Whitehouse, Senior Director, News, for their approval. Both approved the headline.

Other than the information requested by subpart 4, which Defendants object to on the grounds provided above, Defendants are not presently withholding information responsive to this Interrogatory. Defendants will supplement this response if they identify and withhold responsive information.

App.452

**INTERROGATORY NO. 8:** Describe with particularity Your investigation, research, writing, review, and editing process prior to publishing and distributing the November 17, 2023 Article. For the avoidance of doubt, please specify at a minimum, (1) each individual who participated in the drafting of the November 17, 2023 Article or reviewed it prior to publication; (2) the job title of each individual; (3) the specific role played by each individual in drafting or reviewing the November 17, 2023 Article; and (4) any comments, revisions, feedback, or approval provided by the individual.

**OBJECTIONS**: Defendants object to subpart 4 of this Interrogatory because it seeks information that Plaintiff has already requested in RFP Nos. 30 and 32. Translating the same information to an interrogatory is not required. *See Cottonham*, 2016 WL 4035331, at *5 n.3 (denying motion to compel interrogatory because "there are more efficient, less burdensome ways to obtain this same information," including through an RFP that covers the same subject matter).

**RESPONSE**: Eric Hananoki, a senior investigative reporter at Media Matters, authored the November 17, 2023 Article. For years, Mr. Hananoki has been conducting research and reporting on extremism on social media platforms, including X (and its predecessor, Twitter). Following Elon Musk's purchase of X, Mr. Hananoki and reporters from other news organizations observed and reported on what appeared to be an increase in the presence of pro-Nazi accounts and pro-Nazi content on the platform.

Prior to writing the November 17, 2023 Article, Mr. Hananoki became aware of a pro-Hitler and Holocaust denier account (@bambkb) that had written viral pro-Nazi posts and said it had received approximately $3,000 from X's Ad Revenue Sharing Program. Mr. Hananoki published an article describing this account and its collection of advertising revenue from X on November 13, 2023. The November 13, 2023 Article also identified several advertisers whose

19

App.453

advertisements were placed next to content published by @bambkb. On November 16, 2023, Mr. Hananoki also published the article described in Response to Interrogatory No. 7.

Prior to writing the November 17, 2023 Article, Mr. Hananoki was also aware that Linda Yaccarino, CEO of X Corp., had claimed that advertisers were "protected from the risk of being next to" potentially toxic content on the platform. *See* CNBC, *X CEO Linda Yaccarino Explains Reason for Getting Rid of Twitter Name*, https://www.cnbc.com/2023/08/10/x-corp-ceo-linda-yaccarino-says-she-has-autonomy-under-elon-musk.html (Aug. 10, 2023). Despite this claim, Mr. Hananoki observed that search results for neo-Nazi and white nationalist hashtags on X appeared to be monetized, meaning that search results for that content produced that content along with advertisements. In light of his findings from the November 13 and 16, 2023 Articles and his prior research about the rise of extremist content on X, Mr. Hananoki sought to further fact-check Ms. Yaccarino's claim.

Prior to publishing the November 17, 2023 Article, Mr. Hananoki used X's search function to search for white nationalist content. As Mr. Hananoki describes in his November 17, 2023 Article, the searches included: "WLM" (White Lives Matter), "KeepEuropeWhite," "14 Words" (a reference to the leading white nationalist slogan), "white pride," and "WPWW" ("white pride world wide"). Mr. Hananoki used two X accounts to conduct these searches: @rwemails and @ehananoki. From there, Mr. Hananoki refreshed results to determine whether advertisements would appear next to the white nationalist content. Just as with the November 16, 2023 Article, Mr. Hananoki found that advertisements appeared next to the white nationalist content and he took screenshots of them from both X accounts. Mr. Hananoki did not alter those screenshots in any way. In drafting the November 17, 2023 Article, Mr. Hananoki also did not contact any of the advertisers identified in the November 17, 2023 Article.

The November 17, 2023 Article was drafted over the course of November 16 and 17, 2023. In drafting the November 17, 2023 Article, Mr. Hananoki consulted with Sharon Kann, Senior Director of Innovation and Impact at Media Matters, who is credited with a research byline. Mr. Hananoki and Ms. Kann considered adding research to the article about how much advertisers had spent on X, but ultimately chose not to include that information in the article when they were not able to confirm the data before publication.

The following additional individuals from Media Matters reviewed a draft of the November 17, 2023 Article prior to publication:

- Michael Eberhart, Editor

- Ben Dimiero, Editor-in-Chief

- Kayla Gogarty, Research Director

Additionally, Mr. Hananoki provided a draft of the November 17, 2023 Article to the digital design team for Media Matters so members of that team could create an image for the piece. Andrea Austria, Digital Design Coordinator at Media Matters, created the image at the top of the article displaying Mr. Musk and Ms. Yaccarino.

Without waiving any protections provided by Texas shield law, *see* Tex. Civ. Prac. & Rem. Code § 22.021, *et seq.*, Mr. Hananoki directs Plaintiff to Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received about the November 17, 2023 Article prior to publication.

Other than the information requested by subpart 4, which Defendants object to on the grounds provided above, Defendants are not presently withholding information responsive to this Interrogatory. Defendants will supplement this response if they identify and withhold responsive information.

App.455

**INTERROGATORY NO. 9:** Identify each time You contacted an individual living within the confines of the Northern District of Texas, from January 1, 2020 to present, including, but not limited to, (1) for email distribution of the November 16, 2023 Article; (2) for email distribution of the November 17, 2023 Article; (3) for email distribution of any other article published by Media Matters; (4) to solicit donations or for fundraising purposes; (5) to contact any company who had the potential to advertise with X, regardless of whether the company had ever previously advertised on the platform; or (6) general promotion of Media Matters.

**OBJECTIONS**: Defendants object to this Interrogatory as overly broad and disproportionate to the needs of the case in seeking "each time" since January 1, 2020 Defendants contacted an individual residing in the Northern District of Texas, without any limitation as to whether those contacts related to the claims at issue in this litigation, particularly where "X does not invoke general personal jurisdiction over Defendants." Pls.' Resp. to Defs.' Mot. to Dismiss at 4, ECF No. 45. The request for every instance since January 1, 2020 that an individual living within the Northern District of Texas received an email or other message from Defendants would unjustly impose enormous burdens and expenses.

Defendants further object to subpart 5 of Interrogatory No. 9 as vague and ambiguous because any company in existence has the potential to advertise on X.

To the extent this Interrogatory requests the specific identities of donors to Media Matters, or the specific identities of subscribers to Media Matters, Defendants further object to Interrogatory No. 9 because it seeks information that is not relevant to any claims or defenses, and that is further protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.,*

App.456

*Americans for Prosperity Found.*, 594 U.S. at 610–11, 616–17; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160. Disclosure of donor identifying information can also lead to donors being harassed for and deterred from affiliating with organizations they support. Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them."[2]

**RESPONSE**: Subject to the limitations explained below, Defendants will attempt to estimate the number of individuals who provided a zip code associated with the Northern District of Texas who may have received an email communication in the form of a "weekly update" from Media Matters containing the November 16, 2023 Article or November 17, 2023 Article at issue. Specifically, Media Matters sent a weekly update containing the November 16, 2023 Article on November 17, 2023, and Media Matters sent a weekly update containing both the November 16, 2023 and November 17, 2023 Articles on November 22, 2023, two days after this suit was filed.

Media Matters typically contacts by email only those individuals who have affirmatively signed up to receive email updates. As a general matter, Defendants do not specifically verify the location information of individuals who sign up to receive email updates, nor do they ask subscribers who provide this information to update this information once subscribed. Defendants nonetheless attempted, in good faith, to identify individuals who may have received emails

---

[2] *@TheChiefNerd*, X.com (Dec. 10, 2023, 4:24 PM),
(https://x.com/TheChiefNerd/status/1733960832571122115) (last accessed July 15, 2024).

App.457

containing the November 16, 2023 or November 17, 2023 Articles and who provided a zip code associated with the Northern District of Texas. This inquiry and its results, however, have the following inherent limitations:

(1) Defendants possess, via the software Salesforce, the ability to search for individuals who *currently* subscribe to weekly updates from Media Matters and have relevant zip codes associated with their records. But to Defendants' knowledge, their configuration of Salesforce does not permit Defendants to report whether a current subscriber with a relevant zip code was a subscriber at the time this lawsuit was filed or which subscribers with relevant zip codes would have received an email update containing the November 16, 2023 Article or November 17, 2023 Article.

(2) Defendants cannot and do not guarantee the accuracy of the location information in Salesforce. The Salesforce data that Defendants used to respond to this Interrogatory is not updated on any regular basis, nor do Defendants require individuals to provide location information to receive communications updates from them. Much of this location data is several years old, if not decades old. Because of the likelihood that at least some of these individuals have moved out of the Northern District of Texas since they provided this information to Media Matters, the numbers provided below likely overestimate the number of individuals who were associated with or resided in the district at the time the articles at issue in this litigation were published.

(3) Defendants include individuals in this response who have at some point indicated a mailing, billing, shipping, or other address in the Northern District of Texas. Because an individual may have had, at the time the information was provided to

Media Matters, any one of these addresses in the district but not actually resided in the district, the numbers provided below likely overestimate the number of individuals who truly resided in the district at the time they provided this information to Media Matters.

With these inherent limitations, Defendants searched for individuals who are subscribed to receive weekly updates from Media Matters as of July 2, 2024, and are recorded in Salesforce as possessing a zip code associated with the Northern District of Texas. Defendants obtained the following results: 987 individuals who are recorded in Salesforce as having a zip code in the Northern District of Texas currently receive "weekly update" emails from Media Matters. In total, 166,154 individuals currently receive weekly update emails from Media Matters, meaning these individuals account for 0.59% of those who currently receive weekly updates from Defendants per their Salesforce search.

**INTERROGATORY NO. 10:** Identify and list with particularity each company, corporate entity, or nonprofit with whom You had any contact where You discussed, mentioned, or referenced X Corp. from April 2021 to present. For the avoidance of doubt, please specify at a minimum, (1) the name of the contacted entity; (2) a description of the entity; (3) a description of the manner in which the contact occurred; (4) the location where the contact occurred; (5) a summary of the substance of the contact and communication between You and the entity; (6) the purpose of Your contact with the entity; (7) any advice, recommendation, or suggested course of action made by You to the entity; and (8) any actual or planned follow-up communication with that entity.

**OBJECTIONS**: Defendants object to this Interrogatory as improperly containing multiple subparts that go beyond the Interrogatory's first request for information, which seeks only the

identity of the entities with whom Defendants discussed, mentioned, or referenced X. Defendants interpret this Interrogatory as seeking at least four separate categories of information: (1) the identity of these organizations, (2) the manner and means by which Defendants communicated with these entities, (3) the substance of Defendants' conversations with these entities, (4) and Defendants' internal discussions or planning related to their conversations with these entities. *See, e.g.*, *Garza*, 2021 WL 3809102, at *4 (finding interrogatories were multiplicative where "each subpart of these interrogatories can be answered without answering either of its other subparts").

Defendants further object to Interrogatory No. 10 because it seeks privileged information with strategic partners, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. *See, e.g.*, *Americans for Prosperity Found.*, 594 U.S. at 610–11, 616–17; *Nat'l Ass'n for Advancement of Colored People*, 357 U.S. at 460; *see also Whole Woman's Health*, 896 F.3d at 372; *Perry*, 591 F.3d at 1160.

Defendants further object to Interrogatory No. 10 as overly broad and disproportionate to the needs of the case in seeking each time Defendants spoke with an organization and mentioned or referenced X, regardless of when those communications occurred or whether they had anything to do with the claims at issue in this case. Because this interrogatory does not seek information specifically related to this lawsuit and instead seeks information regarding instances in which Defendants simply referred to X, it is facially overbroad. *See, e.g.*, *Lee v. Aramark Facility Servs., LLC*, No. CV 20-2049, 2021 WL 6070448, at *7 (E.D. La. July 15, 2021) ("[A] request is facially overbroad insofar as it not limited to the issues in this lawsuit and would purport to require Defendant to identify and describe every document or thing transmitted or provided to any third party relating to Plaintiff.").

Defendants further object to Interrogatory No. 10 because it seeks information that Plaintiff has already requested in RFP No. 5. Translating the same information to an interrogatory is not required. *See Cottonham*, 2016 WL 4035331, at *5 n.3 (denying motion to compel interrogatory because "there are more efficient, less burdensome ways to obtain this same information," including an RFP which covers the same subject matter).

Defendants further object to Interrogatory No. 10 to the extent it seeks descriptions of the entities with whom Defendants had conversations regarding X, information that is equally obtainable to Plaintiff.

Responding to this interrogatory with the level of granularity requested would be virtually impossible for the following reasons: Over the past several years, Defendant Media Matters, a leader in platform accountability work, has worked with hundreds of groups in a variety of formal and informal fashions. Media Matters's activities range from public partnerships and campaign sign-on letters to more private and informal conversations and passive updates about platform accountability research, which includes research on the platform X. Due to the number of partner organizations in the Stop Toxic Twitter coalition (described below), the frequency of these communications, and the informal nature of many these conversations, it would be virtually impossible to account for all possible mentions or discussion of X without undue burden or expense. To quantify this burden, for example, a search for Defendants' communications with external parties that mention X Corp. or Twitter from April 2021 to the present resulted in over 730,000 results. Subject to the objections Defendants have invoked in response to Plaintiffs' requests for production, Defendants are in the process of reviewing and producing responsive, nonprivileged documents.

App.461

**RESPONSE**: Because the burden and expense of responding to Interrogatory No. 10 in full and with the granularity requested outweighs its likely benefit, Defendants will provide a general overview of the organizations with which Defendants discussed X in the context of platform accountability in 2023 and 2024, along with the broad substance of those conversations.

In 2023 and 2024 broadly, Defendants engaged in high-level conversations that would have mentioned X with members of the Stop Toxic Twitter coalition. This coalition was launched in late 2022 following news that Elon Musk intended to limit content enforcement and other protections on the Platform. Stop Toxic Twitter describes itself as "a coalition of 60+ civil rights and civil society groups calling on Twitter advertisers to demand a safer Twitter for their brands and for users." Stop Toxic Twitter, https://www.stoptoxictwitter.com/ (last accessed July 4, 2024).

As of July 4, 2024, the following organizations in addition to Media Matters, are listed as members of the Stop Toxic Twitter coalition:

1. #VOTEPROCHOICE

2. Access Now

3. Accountable Tech

4. Anti-Defamation League

5. Advocates for Youth

6. AI for the People Inc.

7. Asian Americans Advancing Justice | AAJC

8. Azerbaijan Internet Watch

9. Benton Institute for Broadband & Society

10. Center for Countering Digital Hate

11. Center on Race and Digital Justice

App.462

12. Change the Terms Coalition

13. Check My Ads

14. Coding Rights

15. Color Of Change

16. Common Cause

17. Dangerous Speech Project

18. DemCast USA

19. Digital Africa Research Lab

20. Distributed Artificial Intelligence Research Institute (DAIR)

21. Doctors In Politics

22. Equality Labs

23. Fair Vote UK

24. Freedom Forward

25. Free Press

26. Friends of the Earth

27. GLAAD

28. Global Indigenous Data Alliance

29. Global Project Against Hate and Extremism

30. Indivisible

31. International Women's Media Foundation

32. Jewish Women International

33. JustLeadershipUSA

34. Latino Anti-Disinformation Lab

App.463

**64**

35. Majal.org

36. Maria Ressa

37. MoveOn

38. Muslim Advocates

39. NAACP

40. National Center for Transgender Equality

41. National Hispanic Media Coalition

42. National LGBTQ Task Force

43. NEVER AGAIN Association

44. Numun Fund

45. PFLAG National

46. ProgressNow NM

47. Public Citizen

48. Public Knowledge

49. Ranking Digital Rights

50. Right To Be (formerly Hollaback!)

51. Roger McNamee, Author of Zucked: Waking Up to the Facebook Catastrophe

52. Stop Hate for Profit Coalition

53. Stop Online Violence Against Women

54. SumOfUs

55. Superbloom Design

56. The Center for American Progress

57. The Real Facebook Oversight Board

App.464

58. The Sparrow Project

59. The Tech Oversight Project

60. The TransLatin@ Coalition

61. Ujima Inc., The National Center on Violence Against Women in the Black Community

62. UltraViolet

63. Union of Concerned Scientists

64. United Church of Christ Media Justice Ministry

65. United We Dream

66. Valor US

67. Voto Latino

68. Whose Knowledge?

Communications with these organizations occurred primarily via the Stop Toxic Twitter email list, although Defendants also sometimes communicated with these organizations through other means, including by phone, Zoom, and messaging applications. For the reasons described in Defendants' objections to this Interrogatory, Defendants are unable to respond to the Interrogatory with the level of granularity requested given the significant number of communications and member organizations.

From June 2023 to November 2023, Defendants engaged in high level conversations about the general topic underlying the November 16, 2023 and November 17, 2023 Articles—X's ability (or inability) to prevent advertisements from appearing next to extremist content—with some of the members of the Stop Toxic Twitter coalition listed above.

On November 15, 2023, Elon Musk endorsed what appeared to Defendants and many others to be an antisemitic conspiracy theory, which drew significant public attention. *See* Aimee

31                                        App.465

Picchi, *Elon Musk Expresses Support for Antisemitic Post on X, Calling it "The Actual Truth*,"
CBS News (updated Nov. 16, 2023), https://www.cbsnews.com/news/elon-musk-antisemitic-comments-x-post-actual-truth/. In light of this post, Defendants discussed their general plan to publish information about X's apparent monetization of extremist content with some members of the Stop Toxic Twitter coalition listed above.

After the publication of the November 16, 2023 and November 17, 2023 Articles, Defendants circulated those articles to the Stop Toxic Twitter Coalition email list and may have provided a link to the articles via other informal communications. The communications described in this paragraph occurred between November 16, 2023 and the announcement of Plaintiff's lawsuit on November 20, 2023.

Defendants are not presently withholding responsive information that they have identified subject to their objections. Defendants will supplement this response if they identify and withhold responsive information.

App.466

**Verification of Interrogatory Responses**

I, Cynthia Padera, believe based on reasonable inquiry that Defendant's answers to X's First Interrogatories in *X Corp. v. Media Matters for America et al*., Case No. 4:23-cv-01175, served on July 19, 2024, are true and correct to the best of my knowledge, information, and belief.

Pursuant to 28 U.S. Code § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2024

*Cynthia Padera*
_____

Cynthia Padera
Chief Operating Officer
Media Matters for America

# Doc. 89

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| **X CORP.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** **et al.,** | |
| **Defendants.** | |

### Defendants' Notice of Exhibits

Defendants hereby provide notice of the certified transcripts of voicemails received by Media Matters on or about November 30, 2023 (Exhibit A and Exhibit B).  *See* Decl. of A. Carusone ¶ 13, ECF No. 87-1.  Audiofiles of the voicemails (Exhibit C and Exhibit D) have been separately provided to the Court and Plaintiff's counsel .

Dated: September 6, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

App.469

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Jacob D. Shelly* (DC 90010127)
Daniela Lorenzo* (NY 5780457)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
jshelly@elias.law
dlorenzo@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

App.470

**CERTIFICATE OF SERVICE**

On September 6, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

App.471

# Doc. 89-1

# Exhibit A



# CERTIFICATION OF AUTHENTICITY

Date: August 8, 2024

**Client:** Michelle DePass

**Audio File Transcribed by GMR Transcription Services, Inc.:**
**File Name:**
316988_threat_GIGLIO GEOFFREY 19498995080

To Whom It May Concern:

I, Beth Worthy, President at GMR Transcription, do hereby certify under the penalty of perjury, under the laws of the state of California, that:

The transcript provided by GMR Transcription Services, Inc. is a full, true, and correct transcription of the audio file mentioned above, having been transcribed and reviewed by GMR Transcription to the best of the company's ability. I further certify that neither I, nor the transcriptionist, have any personal association with the case; nor am I, nor the transcriptionist in any way interested in the outcome thereof.

Executed this August 8, 2024.

Sincerely,

**Beth Worthy**
**President**
Email: Beth@gmrtranscription.com
Phone: (714) 202-9653

316988_threat_giglio geoffrey 19498995080
**Male Speaker**

Oh, you guys pissed off the wrong people this time. See when you lie, and you ruin people's lives, cause people to die with what you do. I don't know if you're so stupid you don't realize that. I think you're probably just total fucking assholes or you're brainwashed fucking stupid negros, fucking faggots, you know dipshits of color and of sexual orientation not the majority of the good Black people, good Brown people. And I only use these terms because you assholes do all the time. You're the fucking racists, but you're too fucking chickenshit to sit down to prove that you're not the racist because you hide in the shadows. Fuck, I think there's some bad people that want to hold you accountable. Hopefully it's just the lawsuit, but you should all be really careful. I don't know this for sure. I just hear a lot of shit.

And some people that are pretty tough funded and like a lot of guys who fought wars for 20 years and did a lot, they don't seem – I think you pushed it too hard, and I think you should just shut the fuck up. That would be a smart thing to do. But you're pretty fucking stupid. You're unethical. You're a bunch of lying scum pigs. That's obvious. Now a lawsuit is great, and I think that's the way they should hit lying, sick bastards like you and in some nice red states not your fucking scumbag judicially fucking inbred, disgusting fucking DC court system. I hope nothing happens to you and your employees, but I hope you get sued from here to yesterday you lying, filthy scumbags. You're disgusting. It's disgusting what you do to make your money, clearly morally bankrupt hypocritical fucking losers. Probably a bunch of geeks and freaks who fucking think you're something.

No, you're still a fucking dork, a dork with money, a bunch of fucking – feeding off a bunch of poor Black people, and mentally ill people, homeless people, freaking people who should be protected. You're using them. "Bring in the gays. Brain in the Black people. Pretend we care about them while we fuck them over like we have for decades." You are the worst fucking friend, the worst, the worst to Black people, minorities. Every democrat city's a shithole, shithole because of people like you, you dipshits. And we're gonna make sure everybody knows. And I can't wait till you're serving dinner to a Black man that has your job because you lazy fucking assholes will have eat. So, you'll have to work. And guess what? You're fucking not worth anything. You don't make anything. You don't produce anything.

You do nothing but fucking try to take down shit, you fucking filthy scumbags, whores. Have a good weekend. And I would be careful if I were you. That's all I'm saying. I think if you keep pushing it things will get to a point where there will be violence. And I think you're right near the top of the list for the baddest fucking motherfuckers on this continent. And I don't know; I'm hoping this is all a big fucking game for you rich fucks and we just suck on it. But if you think we're gonna just take it, go fuck yourself you fucking inbred fucking generational idiots, braindead fucking morons. I'd love for some stupid fuck to call me back and try to have a conversation. You're too dumb. All you do is call the police. "Oh, someone was mean to me. We're defunding you, defunding you but we still want you to go get anybody that's mean to us because we're little dorks."

**App.475**

**316988_threat_giglio geoffrey 19498995080**
**Male Speaker**

I mean boy, God I wish, fuck, you guys had the balls. I wish you'd just go in the boxing rink, in the octagon. Fucking rip you apart, make you cry like a little bitch, people like you, so you understand that this is real and you're hurting people. Every time you do the shit you do you fucking tear down the fabric of this country, the best country in the world, you idiots. You clearly don't go anyplace outside of fucking Western Europe you morons, you thick fucking morally bankrupt hypocrites. Go fuck yourself.

**[End of Audio]**

**Duration: 6 minutes**

www.gmrtranscription.com

# Doc. 89-2

# Exhibit B



**CERTIFICATION OF AUTHENTICITY**

Date: August 8, 2024

**Client:** Michelle DePass

**Audio File Transcribed by GMR Transcription Services, Inc.:**
**File Name:**
316988_threat-voicemail-visit-office

To Whom It May Concern:

I, Beth Worthy, President at GMR Transcription, do hereby certify under the penalty of perjury, under the laws of the state of California, that:

The transcript provided by GMR Transcription Services, Inc. is a full, true, and correct transcription of the audio file mentioned above, having been transcribed and reviewed by GMR Transcription to the best of the company's ability. I further certify that neither I, nor the transcriptionist, have any personal association with the case; nor am I, nor the transcriptionist in any way interested in the outcome thereof.

Executed this August 8, 2024.

Sincerely,

**Beth Worthy**
**President**
Email: Beth@gmrtranscription.com
Phone: (714) 202-9653

**316988_threat-voicemail-visit-office**
**Male Speaker**

You folks up there in Washington at Media Matters, you do know what goes around comes around. The stuff you're trying to feed Americans like myself is really, really gonna come back and bite you in the ass. And I may be one of the people that you really don't want to come up and visit your offices. So, remember what goes around comes around. And there's more intelligent Americans that don't believe your crap then there are young people that have their head up their butts.

**[End of Audio]**

**Duration: 1 minute**

App.480

# Doc. 89-3

# Exhibit C

Native Audio File -
316988_threat_GIGLIO
GEOFFREY 19498995080

# Doc. 89-4

# Exhibit D

Native Audio File - 16988_threat-voicemail-visit-office

# Doc. 97

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **X CORP**., a Nevada corporation, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | **Case No. 4:23-cv-01175-O** |
| **MEDIA MATTERS FOR AMERICA,** a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**, | § § § § § | |
| *Defendants.* | § § | |

### APPENDIX

1. 20240205    Plaintiff X's First Set of Requests for Production to Media Matters

2. 20240329    Plaintiff X's Second Set of Requests for Production to Media Matters

3. 20240311    Defendants' Responses and Objections to Plaintiff's First Set of Requests for Production

4. 20240429    Defendants' Responses and Objections to Plaintiff's Second Requests for Production

5. 20240429    Defendants' Amended Responses and Objections to Plaintiff's First Set of Requests for Production

6. 20240528    Defendants' Responses and Objections to Plaintiff's Second Requests for Production

7. 20240719    Defendants' Responses and Objections to Plaintiff's First Interrogatories

8. 20240802    Email re Defendants' Fifth Production

9. 20240528    Defendants' Amended Responses and Objections To Plaintiff's First Set of Requests for Production

10. 20240628    Defendants' Privilege Log

11. 20240628    Defendants' Amended Privilege Log

12. 20240906    Defendants' Second Privilege Log

App.486

TAB 8

| | |
|---|---|
| **From:** | Abha Khanna |
| **To:** | Alex Dvorscak; Daniela Lorenzo; Jacob Shelly; LeGrand, Andrew; Ahmed, Amer S. |
| **Cc:** | Boutrous Jr., Theodore J.; Elena Rodriguez Armenta; Champion, Anne; Omeed Alerasool; Chris Dodge; Aria Branch; Samuel Ward-Packard; Mindy Johnson; Chris Hilton; Cody Coll; Tom Albright; Ari Cuenin; Judd E. Stone, II; john.sullivan@the-sl-lawfirm.com; Bonnie Chester; Michael Abrams; Alithea Sullivan |
| **Subject:** | RE: X/MMFA - Defendants' Fifth Production |
| **Date:** | Friday, August 2, 2024 6:51:48 PM |
| **Attachments:** | 2024.08.02 - Amended 6.28 Priv Log.pdf |

Alex and Chris,

Thank you again for meeting with us today for a productive conversation on resolving outstanding discovery issues. As promised, attached is our amended privilege log and below is both a summary of what we discussed during our call and Defendants' proposal for how the parties can move forward with the discovery Plaintiff seeks.

The parties discussed three issues Plaintiff identified as potential discovery disputes that would form the basis of Plaintiff's motion to compel:

1. Whether Defendants should be required to turn over donor-related information.
   a. The parties agreed this dispute is ripe for Court intervention and Plaintiff plans to move to compel these documents on or after Monday of next week.

2. Defendants' document-by-document privilege assertions on their first privilege log.
   a. Defendants' amended privilege log seeks to assuage the various log-related concerns Plaintiff raised during the parties' last meet-and-confer.
   b. To the extent Plaintiff has further concerns regarding the amended log or documents identified therein, the Parties will confer (we will make ourselves available for such a conversation early next week).

3. Defendants' objections and responses to subsection (4) of Plaintiff's Interrogatory Nos. 7 and 8.
   a. Defendants clarified that their objection is *not* based on privilege or a refusal to search for and produce "any comments, revisions, feedback, or approval" in relation to the November 16 and 17 articles. Rather, Defendants objected that producing this information in a *written interrogatory* is inefficient and that they will, instead, produce responsive documents.
   b. Defendants also reiterated that they are *not* categorically withholding as privileged or refusing to produce documents related to the November 16 and 17 articles.

Please confirm that these are all the issues Plaintiff contemplated for its above-referenced motion to compel.

Additionally, recognizing that both parties have an interest in ensuring discovery is productive and efficient, Defendants are proposing a modified approach to searching for and producing the documents Plaintiff has requested:

1. The parties will come together to identify the set of document requests that are essential to the maintenance of X's claims, as Alex began to do in his email earlier today.
2. Defendants will then modify their search and review parameters to target these categories of documents.
3. The parties will agree that Defendants will no longer need to review, produce, or log the documents that fall outside of these categories.

We believe this approach is consistent with the legal standard set forth in the Texas Press Shield Law, will significantly streamline discovery moving forward, and will reduce discovery fights and therefore the need to burden the Court. Defendants understand and share Plaintiff's desire for expediency and believe that—while we may need to iron out the details of any proposal to come to a mutually agreeable resolution—the parties are more aligned than we are divided on this issue.

Given our conversation earlier, we remain optimistic about reaching a compromise that serves both parties' interests while respecting the Court's time. We look forward to keeping these lines of communication open and conferring on the above issues in good faith.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, August 2, 2024 9:38 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

The documents central to our disagreements regarding privilege have been obvious to both sides and we have been discussing them for months. However, to facilitate our discussion, we have identified the following categories of documents that have not been produced and over which you may be asserting privilege, but which have not yet appeared on a privilege log. Note that this is an illustrative list, not a complete one.

- Notes, drafts, and sources of the Articles (*see* X's MTC at 14).
- Communications between or among Hananoki, Sharon Kann, Michale Eberhart, Ben Dimiero, Kayla Gogarty, and/or Andrea Austria regarding the Articles (*see* MMFA's responses to ROGs 7 and 8).

App.488

Appx. 174

- All documents that the Court compelled in its order dated June 6, 2024. This includes "all documents in [Your] possession and control responsive to RFP Nos. 13-16, 23-24, 37-38, and 46." Dkt. 65 at 3.

As we discussed during our last call, we cannot wait months before these documents are produced or logged. Our goal is to only burden the Court with the substantive legal issues of privilege—we hope we can work out the procedural mechanics of discovery together in good faith.

Looking forward to discussing this in more detail on today's call.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Alex Dvorscak
**Sent:** Thursday, August 1, 2024 11:18 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Abha,

Friday at 1 ET/12 CT works for us. I'll send around a Zoom link.
We will respond to the additional points raised in your email yesterday so that you know our positions prior to the conference.

Best,
-Alex Dvorscak
Stone | Hilton pllc
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 31, 2024 3:21 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is available Friday at 1 ET/12 CT. We have greater availability on Monday if that time does not work for you.

Best,
Abha

**Abha Khanna**
**Elias Law Group LLP**
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Wednesday, July 31, 2024 9:09 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

It looks like there's a few issues for us to discuss. Can you please let me know your availability to confer tomorrow afternoon or Friday morning?

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

_____

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Tuesday, July 30, 2024 3:48 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

First, thank you for sending these cases. As you are aware, two of them are out-of-Circuit, all of them are non-controlling district court opinions, and—most importantly—none of them finds waiver where a privilege was noted on a timely privilege log. Accordingly, your cited authority does not support your position. If you have no better authority, then our position is that your proposed motion is frivolous and we are, accordingly, at an impasse regarding any waiver of Texas's press shield law. *Cf.* Fed. R. Civ. P. 11(b), (c).

Second, our initial privilege log fully complied with the protocol that you and your colleagues negotiated. As a courtesy, we have agreed to revisit that protocol to increase clarity for all parties. An amended privilege log will be forthcoming this week.

Third, we are confused by your refrain that Defendants "refuse to log all responsive documents." If you are referring to our refusal to independently *search* for donor-related documents, we agree that the privileged status of donor-related documents is ripe for the Court's resolution. Are you also referring to other categories of documents? If so, please identify them promptly so that we can ascertain the nature of any dispute.

Finally, as I noted in my previous email, it appears the parties have a mutual interest in increasing transparency about the pace of future document productions. To that end, we propose the following interim deadlines:

1. Wednesday, August 7: parties exchange search terms and full custodian lists.
2. Friday, October 11: parties substantially complete document productions in response to requests served to date.
3. Revised privilege log exchange:
    1. Friday, September 6: first mutual exchange [same as in current agreement]
    2. Friday, October 4: second mutual exchange [changed from October 11 under current agreement]
    3. Friday, November 1: third and final mutual exchange [changed from November 15 under current agreement]
    4. This schedule would omit a fourth privilege log in December to allow productions and logs to be complete by the beginning of November.

We welcome Plaintiff's feedback on the above, and we remain available to confer as necessary. While the parties may not be able to reach agreement on all issues, there is no basis for motions practice when parties remain confused—as we do—about the nature of any dispute. *See* LR 7.1(a).

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Monday, July 29, 2024 8:33 PM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

This case has already been substantially delayed; accordingly, X will be filing its second/renewed motion to compel this Friday. However, as stated last week, we are willing to make ourselves available at any time between now and then to confer.
In the interest of making any conferral more productive, I've addressed a few points from your email below:

- *Regarding waiver*: we explained our position during the meet-and-confer. To the extent that what you are now requesting are legal citations, please see the following, non-exhaustive opinions, which collectively support our position:
    - *Janvey v. Alguire*, No. 3:09-cv-00724-N-BQ, 2018 WL 11362638 (N.D. Tex. Oct. 17, 2018)
    - *Eureka Fin. Corp. v. Hartford Acc. & Indem. Co.*, 136 F.R.D. 179 (E.D. Cal. 1991)
    - *Burch v. Regents of the University of Cal.*, No. CIV. S-04-0038 WBS GGH, 2005 WL 6377313 (E.D. Cal. Aug. 30, 2005)

App.490

Appx. 176

- *Regarding the amended privilege log:* we cannot delay the case to indefinitely wait on an amended log. For example, we did not meet-and-confer last Friday, as you state, but the week prior. We expect that you will serve us an amended privilege log ASAP, otherwise we will not hesitate to add your delay in providing one to our motion to compel.
- *Regarding privilege assertions:* it is insufficient for you to say that you're asserting privilege arguments on a document-by-document basis when you refuse to log all responsive documents and when the Court specifically asked for the parties to "meaningfully concur" on the extent of the First Amendment privileges asserted.
  - If our understandings of your privilege arguments are incorrect, please correct us in writing. If you continue to refuse to confer, we will raise your refusal to clarify the scope of your privilege assertions in our motion.
- *Regarding Defendants' discovery requests:* your email equates apples and oranges. Plaintiff served their requests on February 5, 2024. We have been waiting nearly six months and have received only a few thousand documents out of the terabytes of information you claim to have collected. By contrast, Defendants served their requests in May. We are not the cause of delay here—and have been making productions apace with several thousand pages produced and more on the way.

As stated up front, I am willing to meet-and-confer at any time between now and Friday evening. My hope is always that we can narrow our dispute and limit the need for Court intervention as much as possible, particularly given the parties clear disagreement over certain issues of governing law.

Best,
-Alex Dvorscak
Sᴛᴏɴᴇ | Hɪʟᴛᴏɴ ᴘʟʟᴄ
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Monday, July 29, 2024 6:23 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Alex,

With regard to the two issues that you believe are ripe for adjudication, we agree that the privileged status of donor information is ready for the court's review, but we disagree that your argument that Defendants have somehow waived the Texas Shield Laws is similarly ripe. Despite repeated requests, we still have not received any legal authority from you suggesting that (i) the preservation of a privilege objection in RFP responses, coupled with (ii) the specific invocation of a privilege on a first privilege log can lead to the extreme result of complete waiver.

We remind you that your first motion to compel was filed before you provided us with your intended legal arguments and citations, and thus needlessly involved the court in matters that could be (and to a large extent, have been) resolved in conferrals. *See, e.g., Dondi Properties Corp. v. Com. Sav. & Loan Ass'n,* 121 F.R.D. 284, 289 (N.D. Tex. 1988). If you have any authority indicating the Defendants waived the Press Shield law despite (1) our assertion of "the First Amendment privilege and reporter's privilege" "as well as any other applicable privilege or shield law" in our RFP responses *and* (2) our document-by-document privilege objections/assertions, please provide it for our review immediately. If you have no such authority, of course a motion would be inappropriate. Moreover, Defendants have already committed to re-serving our June 28 privilege log following the parties' meet and confer last Friday. Raising any log-related issues with the Court before Plaintiff can assess whether it disagrees with Defendants' revised privilege designations is similarly inappropriate.

With regard to your questions about our June 28 privilege log, each of your four assertions is mistaken. The privilege objections we raised in our log *apply to the individual documents that were logged.* Defendants have and will continue to raise objections on a document-by-document basis. Thus, it is possible that some documents falling within the four categories you enumerate will be produced and that other documents within those categories will be withheld or redacted and logged based on the Texas Press Shield laws, the First Amendment, or any other relevant privilege.

Finally, we would like to resolve the confusion you expressed regarding our production and privilege schedule. As we have indicated many times, the search terms merited by your broad discovery requests have pulled in an enormous quantity of documents for review. We are aware that some of these documents will contain drafts of articles, some may contain donor information, and many will be irrelevant to the claims or defenses at issue. Our recognition that draft articles exist, however, was not a representation that we had yet identified and reviewed every needle in the haystack.

It is conspicuous that you fault Defendants for referencing future document productions in their interrogatory responses when Plaintiff, of course, did the exact same thing. *See* X's R&Os to MMFA's 1st and 2nd Interrogatories Nos. 2, 3, 5, and 7. It appears that the parties have a mutual interest in identifying reciprocal expectations about future document productions to ensure that the documents each side regards as essential are produced at a pace sufficient to leave time for deposition preparation and, where necessary, the Court's involvement. We are discussing possible approaches internally and will share our recommendation by early next week.

Defendants continue to remain open to conferring to reach mutually satisfactory resolutions to our differences, but stress that it cannot be a one-way conversation where one party makes concessions and compromises while the other simply repeats its same arguments without legal support.  Good-faith efforts at discovery will be a more effective use of everyone's time and resources—including the Court's.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 26, 2024 6:04 AM
**To:** Abha Khanna <akhanna@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Abha,

Thank you for last Friday's meet-and-confer and your follow-up email. With a few exceptions, it appears we have narrowed the privilege disputes to two issues ripe for adjudication.

First, the parties disagree about whether the Texas "Press Shield Laws" was waived or applies at all. We dispute your mischaracterization of prior meet-and-confers as having discussed Texas "Press Shield Laws" (they have not) and the appropriate level of specificity needed to lodge a proper privilege objection. But this disagreement should not foreclose prompt adjudication of your privilege claim, which presents a purely legal question regarding the scope and applicability of Texas "Press Shield Laws." To diligently follow the Court's amended scheduling order, we intend to file a motion to compel next **Friday, August 2**. We are, of course, willing to confer again if you believe additional conversations will further narrow the parties' disputes.

Second, the parties' dispute about donor information is also ripe for Court resolution. You indicated that Defendants' interrogatory responses would tee up the question of whether Defendants must disclose donor information. We have reviewed your interrogatory responses and agree. Defendants have made clear they will not search for or produce documents regarding donor information—let alone log the documents. X believes Defendants are required to do so, and so intends to compel a complete interrogatory response on **Friday, August 2**. Because the legal issue appears ripe for court resolution, we do not understand further discussion to be required. If you disagree and wish to discuss further, please let us know.

Defendants' position is unclear regarding the drafts of the November 16 and 17 articles and any editing, feedback, or other communications regarding the Articles that Defendant Hananoki received. For months, X's position that it seeks such information was clearly made through requests for production, meet-and-confers, and interrogatories. Now in your email response below you misconstrue our position as seeking "core documents" somehow separate and apart from its as-served RFPs. This characterization is both untrue and unhelpful.

X was surprised by Defendants' privilege log because it contains *none* of these documents. You claim that these documents have not been "identified to date," placing the quoted words in bold text. But that position facially contradicts countless representations made by Defendants. *Defendants* have consistently identified these documents as privileged from the very first meet-and-confer and at every subsequent meet-and-confer thereafter. These conferences have always referred to Hananoki's notes, drafts of the Article, and Donor identification and *Defendants* have always referred to these as documents they consider privileged. Since these are documents that *Defendants* have consistently discussed during meet-and-confers (and represented to the Court) as being privileged, they must have been identified by now. X will not accept a situation where Defendants have placed these documents on the bottom of the production stack such that X will receive these documents—or see them logged—for the first time at the close of discovery.

Although you stated on the call that the interrogatory responses would clarify Defendants' privilege objections regarding these documents and the application of the First Amendment and Texas "Press Shield laws," they do not. Instead, Defendants say that X must wait for "Defendants' forthcoming responses to requests for production for further information about specific feedback Mr. Hananoki received" about the Articles prior to publication. Once again, this contradicts your claim that these documents have not been "identified to date," further reinforcing how Defendants must have identified some documents regarding the "specific feedback" that Defendant Hananoki received.

Making X guess about what will be produced and when does not comport with the Court's instruction that the parties meaningfully confer to clarify the privilege dispute and that required Defendants to alert the Court as to "whether any dispute regarding the assertion of First Amendment privileges remain." ECF No. 65 at 3. Please let us know when Defendants will receive a privilege log listing these documents and the production of documents referenced in Defendants' interrogatory responses. Otherwise, to keep this case moving in compliance with the Court's schedule, we will have no choice but to raise this issue in the motion to compel.

With respect to the items you have identified on your June 28, 2024 privilege log, below is our understanding of Defendants' assertions of privilege. We ask that you advise us by **Wednesday, July 31** if any of these understandings are mistaken so that the parties can cleanly tee up these issues for judicial resolution.

1. Defendants assert that all communications between Defendant Hananoki and any Media Matters editors about the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.
2. Defendants assert that all drafts of the Articles are privileged under Texas "Privilege Shield Laws" but *not* under the First Amendment.
3. Defendants assert that all internal communications about *other* articles published by Media Matters are privileged under the Texas Shield Law but *not* under the First Amendment.
4. Defendants assert that all communications with third parties as part of drafting, researching, or revising articles written by Media Matters are privileged under both the Texas Sheild Law and the right of association protected by the First Amendment.

Lastly, we agree to the revised format for privilege logs that you propose below. However, we continue to object to any descriptors of third parties (e.g., "strategic vendor") that are undefined and vague. We expect that any revised descriptions will provide sufficient information for both X and the Court to evaluate each privilege claim.

**App.492**

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

---

**From:** Abha Khanna <akhanna@elias.law>
**Sent:** Wednesday, July 24, 2024 12:34 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Thank you for meeting and conferring on Friday evening. Below is a summary of the key takeaways from our discussion:

*First*, regarding your concerns—expressed for the first time on our call—that Defendants had not included on their privilege log all materials that X considers "core documents," Defendants explained that X's discovery requests do not make any distinction regarding which documents X considers "core" to their case. Instead, X's requests seek every document in Defendants' possession that even *mention* broad terms or concepts (such as "content moderation," RFP No. 6) that are a regular component of Defendants' work. As Defendants have repeatedly explained, this search has swept in an incredible volume of documents for review. That review continues every day.

Defendants' first privilege log identified documents that had been reviewed and determined to be privileged as of the date of that log. The parties have mutually agreed to subsequent privilege log exchanges through the end of the year, recognizing that it will likely take several months to review all potentially responsive documents. This sequencing is consistent with a fair reading of the Court's orders and the parties' own agreements. The Court's June 6 order, as you know, was entered when discovery was set to close on July 29—that is, before the parties jointly sought an extension and thus before the Court recognized "the volume and complexity of ongoing document discovery" and extended the discovery deadline until December 31. *See* ECF No. 69. The parties subsequently negotiated a revised privilege log agreement, and on June 10 we memorialized via email an agreement reached by phone on how to proceed: "With respect to the June 28 'Deadline for Defendants to Provide First Privilege Log and Associated Documents,' the parties understand that on June 28 Defendants will produce a log **of any privileged documents identified to date**, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement." Then on July 2 we agreed to future privilege log exchanges in September, October, November, and December, and further agreed that this course of conduct did not require the Court's imprimatur. Just as X did not produce all responsive documents in its first (and so far, only) document production, it was not reasonable to expect Defendants to log all privileged documents in their first of several scheduled privilege logs, particularly since the parties had already stipulated that "neither side can reasonably meet the existing discovery deadlines." ECF No. 66 at 3. To the extent X now recognizes that the documents relevant to this case can be found through requests much narrower than those that X has served to date, Defendants welcome revised RFPs to expedite the review and logging of responsive documents.

In response to X's related concern about the lack of donor-related documents on their first privilege log, Defendants explained that this dispute is best presented for the Court's adjudication based on Defendants' responses and objections to X's interrogatories. Because Defendants are not separately searching for donor-related documents (as made clear in our objections and responses), these documents will appear on our privilege log only to the extent the documents are responsive to search terms generated by other requests. No such documents had been established as responsive and privileged as of the date of our first log.

*Second*, regarding your suggestion that Defendants waived any invocation of Texas's press shield law by failing to raise it in earlier discussions, in our July 19 email we pointed you to the shield objection raised in our very first responses and objections, and we further reminded you during our call that the shield law was discussed in the parties' very first discovery meet-and-confer in April. Where X has insisted that Defendants not employ general objections before document review has completed, *see, e.g.*, ECF No. 64 at 3 (X complaining that Defendants' invocation of the shield law in their original responses and objections lacked specificity), it is unreasonable to fault Defendants for raising privilege objections on a document-by-document basis, as contemplated by case law. To date, you have failed to provide us with any authority suggesting that a party waives a privilege by identifying it on their first privilege log.

*Third*, regarding your inquiry into the scope of Texas's press shield law, the parties agreed that the text of the statute speaks for itself. As we explained via email and on our call, the press shield is directly applicable to a media organization like Media Matters and journalists like Mr. Hananoki. During our recent call, we further explained that Defendants' first privilege log invokes the shield law only for documents with no conceivable relevance to this case and that are thus clearly not "essential to the maintenance of a claim or defense." Tex. Civ. Prac. & Rem. Code § 22.024.

*Fourth*, in both our July 19 email and subsequent discussion, Defendants agreed to discuss revisions to the privilege protocol and document descriptions to enhance clarity about the nature of documents being withheld. In response, we have prepared an example of a revised privilege log entry:

| Bates Number | Status | Document Type | From/ Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013760 | Withheld | Word | Pamela Vogel pvogel@mediamatters.org | | | | 12/5/2022 | First Amendment Privilege; TX Press Shield Laws | Agenda for an internal MMFA meeting regarding strategy for avenues of journalistic research and writing for the year, much of which was ultimately not pursued by the organization. The document summarizes right-wing media trends and includes a few stray references to Musk or Twitter outside the context of Musk's incendiary remarks or Twitter's advertisement placement. **TX Press Shield Law:** This document reflects confidential and sensitive journalistic decision-making processes. |

App.493

| | | | | | | | | First Amendment Associational Privilege: This document contains internal communications concerning strategy and messaging. |
|---|---|---|---|---|---|---|---|---|

If this addresses the concerns that you raised, Defendants will reproduce the entire log with similar changes.

Best regards,

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Abha Khanna
**Sent:** Friday, July 19, 2024 1:20 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

In advance of our call, to facilitate meaningful discussion and a good-faith attempt by both sides to resolve the issues, please find below Defendants' preliminary responses to the concerns you raised:

First, Defendants' Texas Press Shield Law assertions are timely. Contrary to your representations, our original responses and objections to X's First and Second RFP sets *did* reference shield laws—we objected to producing "documents or communications that are protected by the attorney-client privilege, work-product doctrine, **and/or any other applicable privilege or shield law**, and/or constitute trial preparation material within the meaning of Rule 26." (emphasis added); *see also* ECF 64, Pls' Reply in Support of its Motion to Compel at 3 ("As X detailed in its motion, Defendants asserted a catchall objection to X's requests for production for attorney-client privileges, work-product protections, "and/or any other applicable privilege or shield law, and/or constitute trial preparation material within the meaning of Rule 26."). Because Defendants were still in the process of collecting and reviewing initial batches of documents, we could not be certain at that time what information would be found in the documents and which privileges would be implicated. You objected to the use of general objections that were not tied to specific documents, and so Defendants removed this language from subsequent amendments to our discovery responses and agreed to log privilege objections on a document-by-document basis. *See, e.g.,* Second Amended Responses and Objections to Plaintiff's 1st Requests for Production; Amended Responses and Objections to Plaintiff's 1st Requests for Production to Carusone; Amended Responses and Objections to Plaintiff's 2nd Requests for Production. Moreover, Defendants continued to raise the possibility that shield law privileges would be implicated and to preserve our right to make the objection if it was implicated. In our joint ESI Protocol, Defendants expressly added privilege preservation language that states: "Nothing in this Stipulation shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, First Amendment Privilege, reporter's privilege, shield laws, or any other applicable privilege or immunity." *See* ECF 67 at 2.

Contrary to Plaintiff's shifting argument, Defendants' assertion of this privilege could not have been both *premature* when raised in their initial R&Os and yet also *too late* when raised in their first privilege log. *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022) (quoting *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020)) (noting the "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself"). (To be clear, nor have Defendants waived privileges that they did not assert in their first log. Waiver would occur only as to specific documents that Defendants voluntarily and knowingly disclose. *See, e.g., AHF Community Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 148 (N.D. Tex. 2009).)

Second, the Texas Press Shield Law privilege is applicable. "Under Fed. R. Evid. 501, the availability of a privilege in a diversity case is governed by the law of the forum state," allowing Defendants to assert privileges provided by Texas law. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 724 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). The relevant statute, Tex. Civ. Prac. & Rem. Code Ann. § 22.023 provides that "a judicial . . . body with the authority to issue a subpoena *or other compulsory process may not compel a journalist to testify regarding or to produce or disclose in an official proceeding*" any information covered by the privilege. Tex. Civ. Prac. & Rem. Code Ann. § 22.023(a) (emphasis added). The statute nowhere suggests that journalists forfeit the Shield Law's protections when they are defendants subject to requests for production rather than third parties subject to subpoenas. *See, e.g., Abraham v. Greer*, 509 S.W.3d 609, 613 (Tex. App. 2016) (trial court noting that the privilege would apply to the defendant if he was deemed to be a journalist). Plaintiff's reading would run afoul of the statute's very purpose, which includes "increas[ing] the free flow of information and preserv[ing] a free and active press." Tex. Civ. Prac. & Rem. Code § 22.022.

Far from limiting the Shield Law's scope, the subsequent section you cite to, Tex. Civ. Prac. & Rem. Code § 22.024, sets the high bar that Plaintiff must clear to overcome the relevant privilege. That section makes clear that a "compulsory process [can]not be[] used to obtain peripheral, nonessential, or speculative information," *id.* at § 22.024(5), and that the information being sought must be "essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure," *id.* at § 22.024(6). The documents Defendants logged as privileged under the Shield Law are fully protected under these provisions.

Third, Defendants disagree with Plaintiff's contention that their descriptions of documents are "vague," "generalized," or "insufficiently specific." Defendants are not obligated to reveal identifying details—including, for example, details identifying strategic vendors and partners—that may undermine or abrogate the very privilege they assert. Defendants' descriptions preserve the privilege's protections while informing Plaintiff of the types of communications found within the identified documents. Defendants are open to discussing the additional detail that you believe is appropriate to discern if any compromises can be reached.

Fourth, Defendants continue to disagree with Plaintiff about the availability of the First Amendment privilege in civil litigation discovery disputes. We again refer Plaintiff to the ample arguments and caselaw we have provided over the last several months on the subject.

App.494

Lastly, Defendants will take a closer look at document MMFA_013760 to discern if the information Plaintiff seeks is accessible and, if so, will update the log accordingly. In light of the Parties' recent agreement to include date information on the privilege log, Defendants will also re-issue the log with that column included.

We look further to discussing further later today.

Best,
Abha

**Abha Khanna**
Elias Law Group LLP
1700 Seventh Ave Ste 2100
Seattle WA 98101
206-656-0177
akhanna@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Tuesday, July 16, 2024 12:14 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Hi Daniela,

We're available to meet at 4:00 ET / 3:00 CT on Friday. We'll send around a calendar invite.

Best,
-Alex Dvorscak
STONE | HILTON PLLC
alex@stonehilton.com | (518) 772-8657

**From:** Daniela Lorenzo <dlorenzo@elias.law>
**Sent:** Monday, July 15, 2024 3:39 PM
**To:** Alex Dvorscak <alex@stonehilton.com>; Jacob Shelly <jshelly@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Alex,

Our team is not available until Friday between 3-5 ET. If that works for your team, please send us a calendar invite in that time range. If not, please propose times that work for you all next week.

Best,
Daniela

**Daniela Lorenzo** (she/her)
Litigation Associate
Elias Law Group LLP
202.987.5400
dlorenzo@elias.law

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Alex Dvorscak <alex@stonehilton.com>
**Sent:** Friday, July 12, 2024 9:47 PM
**To:** Jacob Shelly <jshelly@elias.law>; Daniela Lorenzo <dlorenzo@elias.law>; LeGrand, Andrew <ALeGrand@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>
**Cc:** Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>; Chris Hilton <chris@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Alithea Sullivan <alithea@stonehilton.com>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Pursuant to Section III of the parties' Revised Stipulation for the Exchange of Privilege Logs and the Court's order on X's motion to compel (ECF No. 65), X objects to the assertions of privilege for the following documents (identified by Bates label):

MMFA_013561, 013562-013579, 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013749-013755, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788.

As the Court instructed, we would like to meet and confer regarding our objections. Please let us know your availability to confer next week from Tuesday (7/16) onward.

To aid the discussion, we have briefly set out our overarching objections to your privilege assertions. These descriptions are not meant to be exhaustive and are made without intention of waiving or limiting any argument that X may advance in any future motion practice.

1. Assertion of privilege based on "TX Press Shield Laws" (MMFA_013561, 013562-013579, 013580-013597, 013580-013597, 013598-013616, 013636-013655, 013656-013676, 013677-013697, 013698, 013699, 013700-013714, 013715, 013716-013748, 013756, 013757, 013758, 013759, 013760, 013761, 013762, 013763, 013764, 013765, 013766, 013767, 013768, 013769, 013770, 013771, 013772, 013773, 013774, 013775, 013776, 013777, 013778-013782, 013783, 013784, 013785-013787, 013788):
   ○ The assertion is untimely and therefore waived.
      ■ The parties have met and conferred over the privileges asserted by Defendants many times over the past several months, and prior to this June 28 privilege log submission, the only specific privileges asserted were a federal-law reporter's privilege (e.g., RFP No. 1), purported associational rights, (e.g., RFP No. 3), and protection of donor information. (e.g., RFP No. 17).
   ○ The privilege is substantively inapplicable.
      ■ On its own terms, Texas's shield law applies only to "subpoenaing . . . information." Tex. Civ. Prac. & Rem. Code § 22.024(4). As parties to this litigation, Defendants are instead subject to the Federal Rules of Civil Procedure governing disclosure and production of documents. See Fed. R. Civ. P. 26 & 34.
      ■ The assertion of privilege exceeds the scope of any statutory protections, which would extend at most to certain materials "prepared while acting as a journalist" or the "source" thereof. Tex. Civ. Prac. & Rem. Code § 22.023(1)-(2).
   ○ Defendants' generalized claim of privilege for "internal strategic communications," "MMFA's journalistic process and procedures," "process" and/or "strategy" is insufficiently specific.
      ■ Even if the Texas Civil Practice & Remedies Code applies here (and Defendants fail to specify which specific statute would cover the documents at issue) these assertions are vague, generalized and do not provide sufficient detail for X or the Court to determine how or why the underlying document would be privileged.

2. Assertion of a First Amendment and/or "TX Press Shield Laws" privilege with respect to "strategic vendors," "vendor[s]," "researching organizations," or "strategic partners" (MMFA_013562-013579; 013580-013597, 013598-013616, 013617-013635, 013636-013655, 013656-013676, 013677-013697, 013716-013748, 013756, 013757, 013766, 013784):
   ○ This assertion is vague, impermissible boilerplate. X is unable to determine what a "strategic vendor" is or why the identities of Defendants' "strategic vendors" would be privileged. The same is true for Defendants' assertions of privilege based on "researching organizations" and "strategic partners," as well as any communications between Defendants and any "vendor."
   ○ The First Amendment does not protect the disclosure of vendor identities during discovery in civil litigation between private parties. The same is likely true of Defendants' claim of privilege with respect to "researching organizations" and "strategic partners," however Defendants' privilege log does not contain sufficient detail for X to determine the First Amendment's applicability, if any.
   ○ The assertion of a "TX Press Shield Laws" privilege suffers deficiencies similar to those identified above.

3. Assertion of privilege for any material purportedly unrelated to this case and, specifically, any assertion of First Amendment privilege with respect to allegedly unrelated communications with journalists (MMFA_013749-013755):
   ○ Defendants' descriptions provide no information allowing X or the Court to gauge whether the documents are "unrelated." If Defendants claim a document is unrelated, Defendants must provide sufficient information to allow X to assess whether to dispute that characterization.
   ○ The asserted First Amendment privilege is also too vague and lacking in detail to allow X or the Court to determine the applicability of the privilege.
   ○ The First Amendment does not protect responsive communications in civil litigation between private parties.

4. Assertion of First Amendment privilege with respect to an internal MMFA strategy meeting (MMFA_013760):
   ○ This assertion does not provide sufficient information to allow X or the Court to determine the applicability of the privilege. For example, the privilege log does not list an author, date, or other pertinent information.
   ○ The First Amendment does not shield discussions about journalistic strategy from discovery in civil litigation between private parties.

Best,

**Alexander M. Dvorscak**
Attorney
STONE | HILTON PLLC
1115 W. Slaughter Ln.
Austin, Texas 78748
alex@stonehilton.com | (518) 772-8657
www.stonehilton.com

CONFIDENTIALITY NOTICE:
This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege and/or the work-product doctrine. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

App.496

**From:** Jacob Shelly <jshelly@elias.law>
**Sent:** Friday, June 28, 2024 10:18 PM
**To:** Daniela Lorenzo <dlorenzo@elias.law>; Chris Hilton <chris@stonehilton.com>; Alex Dvorscak <alex@stonehilton.com>; Cody Coll <cody@stonehilton.com>; Tom Albright <tom@stonehilton.com>; Ari Cuenin <ari@stonehilton.com>; Judd E. Stone, II <judd@stonehilton.com>; john.sullivan@the-sl-lawfirm.com; Bonnie Chester <Bonnie@stonehilton.com>
**Cc:** LeGrand, Andrew <ALeGrand@gibsondunn.com>; Boutrous Jr., Theodore J. <TBoutrous@gibsondunn.com>; Abha Khanna <akhanna@elias.law>; Elena Rodriguez Armenta <erodriguezarmenta@elias.law>; Champion, Anne <AChampion@gibsondunn.com>; Omeed Alerasool <oalerasool@elias.law>; Chris Dodge <cdodge@elias.law>; Aria Branch <abranch@elias.law>; Ahmed, Amer S. <AAhmed@gibsondunn.com>; Samuel Ward-Packard <swardpackard@elias.law>; Mindy Johnson <mjohnson@elias.law>
**Subject:** RE: X/MMFA - Defendants' Fifth Production

Counsel,

Attached please find a letter regarding Defendants' fifth document production and the accompanying privilege log.

**Jacob Shelly**
Elias Law Group LLP
250 Massachusetts Ave NW Suite 400
Washington DC 20001
202-968-4496

CONFIDENTIAL: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

TAB 10

Defendants' June 28, 2024 Privilege Log

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Privilege Designation | Privilege Description |
|---|---|---|---|---|---|---|---|---|
| MMFA_013561 | Withheld | Word | | | | | TX Press Shield Laws | Comments and revisions to a draft article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of this article is public and either has been or will be produced in discovery. |
| MMFA_013562-MMFA_013579 | Redacted | Email | Sharon Kann <skann@mediamatters.org> | Danil Cuffe <dcuffe@mediamatters.org>;Carly Evans <cevans@mediamatters.org> | Misinformation Monitoring 2020 <misinfomonitoring2020@mediamatters.org>;Research <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Stefanie Le <sle@mediamatters.org> | | 1A;TX Press Shield Laws | Redacted confidential discussions revealing MMFA's internal strategy and journalistic process for work that is unrelated to Plaintiff, Musk, or the articles at issue in this case. Redacted identity of strategic vendors, the disclosure of which could chill MMFA's associational rights. |
| MMFA_013580-MMFA_013597 | Redacted | Email | Alex Kaplan <akaplan@mediamatters.org> | Sharon Kann <skann@mediamatters.org> | Danil Cuffe <dcuffe@mediamatters.org>;Carly Evans <cevans@mediamatters.org>;Misinformation Monitoring 2020 <misinfomonitoring2020@mediamatters.org>;Research <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Stefanie Le <sle@mediamatters.org> | | 1A;TX Press Shield Laws | Redacted confidential discussions revealing MMFA's internal strategy and journalistic process for work that is unrelated to Plaintiff, Musk, or the articles at issue in this case. Redacted identity of strategic vendors, the disclosure of which could chill MMFA's associational rights. |
| MMFA_013598-MMFA_013616 | Redacted | Email | Danil Cuffe <dcuffe@mediamatters.org> | Alex Kaplan <akaplan@mediamatters.org> | Sharon Kann <skann@mediamatters.org>;Carly Evans <cevans@mediamatters.org>;Misinformation Monitoring 2020 <misinfomonitoring2020@mediamatters.org>;Research <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Stefanie Le <sle@mediamatters.org> | | 1A;TX Press Shield Laws | Redacted confidential discussions revealing MMFA's internal strategy and journalistic process for work that is unrelated to Plaintiff, Musk, or the articles at issue in this case. Redacted identity of strategic vendors the disclosure of which could chill MMFA's associational rights. |
| MMFA_013617-MMFA_013635 | Redacted | Email | Stefanie Le <sle@mediamatters.org> | Danil Cuffe <dcuffe@mediamatters.org> | Alex Kaplan <akaplan@mediamatters.org>;Sharon Kann <skann@mediamatters.org>;Carly Evans <cevans@mediamatters.org>;Misinformation Monitoring 2020 <misinfomonitoring2020@mediamatters.org>;Research <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org> | | 1A;TX Press Shield Laws | Redacted confidential discussions revealing MMFA's internal strategy and journalistic process for work that is unrelated to Plaintiff, Musk, or the articles at issue in this case. Redacted identity of strategic vendors the disclosure of which could chill MMFA's associational rights. |

**Defendants' June 28, 2024 Privilege Log**

| Bates | Status | Type | From | To | Cc | Privilege | Description |
|---|---|---|---|---|---|---|---|
| MMFA_013636-MMFA_013655 | Redacted | Email | Danil Cuffe <dcuffe@mediamatters.org> | Misinformation Monitoring 2020 <misinfomonitoring2020@mediamatters.org>;Research <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org> | | 1A;TX Press Shield Laws | Redacted confidential discussions revealing MMFA's internal strategy and journalistic process for work related to researching organizations that are not relevant to this litigation. Redacted identity of strategic vendors, the disclosure of which could chill MMFA's associational rights. |
| MMFA_013656-MMFA_013676 | Redacted | Email | Sharon Kann <skann@mediamatters.org> | Danil Cuffe <dcuffe@mediamatters.org> | Misinformation Monitoring 2020 <misinfomonitoring2020@mediamatters.org>;Research <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Carly Evans <cevans@mediamatters.org>;Jeremy Tuthill <jtuthil@mediamatters.org> | 1A;TX Press Shield Laws | Redacted confidential discussions revealing MMFA's internal strategy and journalistic process for work related to researching organizations that are not relevant to this litigation. Redacted identity of strategic vendors the disclosure of which could chill MMFA's associational rights. |
| MMFA_013677-MMFA_013697 | Redacted | Email | Danil Cuffe <dcuffe@mediamatters.org> | Sharon Kann <skann@mediamatters.org> | Misinformation Monitoring 2020 <misinfomonitoring2020@mediamatters.org>;Research <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Carly Evans <cevans@mediamatters.org>;Jeremy Tuthill <jtuthil@mediamatters.org> | 1A;TX Press Shield Laws | Redacted confidential discussions revealing MMFA's internal strategy and journalistic process for work related to researching organizations that are not relevant to this litigation. Redacted identity of strategic vendors the disclosure of which could chill MMFA's associational rights. |
| MMFA_013698 | Withheld | Word | | | | TX Press Shield Laws | Comments and revisions to a draft article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of this article is public and either has been or will be produced in discovery. |
| MMFA_013699 | Withheld | Word | | | | TX Press Shield Laws | Comments and revisions to a draft article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of this article is public and either has been or will be produced in discovery. |

Appx. 218

**Defendants' June 28, 2024 Privilege Log**

| MMFA_013700-MMFA_013714 | Redacted | Email | Hiwot Hailu <hhailu@mediamatters.org> | fingerprint <fingerprint@mediamatters.org> | Monica Estrada <mestrada@mediamatters.org>;Andrea Alford <aalford@mediamatters.org>;Brennan Suen <bsuen@mediamatters.org>;Craig Harrington <charrington@mediamatters.org>;Angelo S. Carusone <acarusone@mediamatters.org>;Julie Tulbert <jtulbert@mediamatters.org>;Live Links <live@mediamatters.org>;Proposals <proposals@mediamatters.org>;Sergio Muñoz <smunoz@mediamatters.org> | TX Press Shield Laws | Redacted communications between MMFA employees pertaining to the research and drafting strategy of an article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of the article is public and accessible from the link in the document. |
|---|---|---|---|---|---|---|---|

App.501

Appx. 219

Defendants' June 28, 2024 Privilege Log

| MMFA_013715 | Withheld | Chat | Courtney Hagle <chagle@mediamatters.org>;Julie Tulbert <jtulbert@mediamatters.org>;Carly Evans <cevans@mediamatters.org>;Shelby Jamerson <sjamerson@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org>;Ilana Berger <berger@mediamatters.org>;Craig Harrington <charrington@mediamatters.org>;Brennan Suen <bsuen@mediamatters.org>;Sharon Kann <skann@mediamatters.org>;Zachary Pleat <zpleat@mediamatters.org>;Sophie Lawton <slawton@mediamatters.org>;Natalie Mathes <nmathes@mediamatters.org>;Vesper Henry <vhenry@mediamatters.org>;Alex Paterson <apaterson@mediamatters.org>;Courtney Hagle <chagle@mediamatters.org>;Camden Carter <ccarter@mediamatters.org>;Andrea L. Alford <aalford@mediamatters.org>;Rob Savillo <rsavillo@mediamatters.org>;Sergio Munoz <smunoz@mediamatters.org>;Julie Tulbert <jtulbert@mediamatters.org>;Leo Fernandez <lfernandez@mediamatters.org>;Chloe Simon <csimon@mediamatters.org>;Jasmine Geonzon <jgeonzon@mediamatters.org>;Madeline Peltz <mpeltz@mediamatters.org>;Audrey McCabe <amccabe@mediamatters.org>;Jack Wheatley <jwheatley@mediamatters.org>;Julie Millican <jmillican@mediamatters.org>;Alyssa Tirrell <atirrell@mediamatters.org>;Ari Drennen <adrennen@mediamatters.org>;Beatrice Mount <bmount@mediamatters.org>;Carlos Maza <cmaza@mediamatters.org>;Matt Gertz <mgertz@mediamatters.org>;Reed McMaster <rmcmaster@mediamatters.org>;Allison Fisher <afisher@mediamatters.org>;Hanne MacDonald <hmacdonald@mediamatters.org>;Casey Wexler <cwexler@mediamatters.org>;Ethan Collier <ecollier@mediamatters.org>;Carly Evans <cevans@mediamatters.org>;Justin Horowitz <jhorowitz@mediamatters.org>;Gabriel Capuano <gcapuano@mediamatters.org>;Ben Dimiero <bdimiero@mediamatters.org>;Alex Kaplan <akaplan@mediamatters.org>;Shelby Jamerson <sjamerson@mediamatters.org>;Mia Gingerich <mgingerich@mediamatters.org>;Bushra Sultana <bsultana@mediamatters.org>;Lis Power <lpower@mediamatters.org>;Abbie Richards <arichards@mediamatters.org>;Pam Vogel <pvogel@mediamatters.org>;Eric Hananoki <ehananoki@mediamatters.org>;Charis Hoard <choard@mediamatters.org>;Bobby Lewis <lewis@mediamatters.org>;Jacina Hollins-Borges <jhollins-borges@mediamatters.org>;Olivia Little <olittle@mediamatters.org>;Laura Keiter <lkeiter@mediamatters.org>;Carly Novell <cnovell@mediamatters.org> | | TX Press Shield Laws | Communications between MMFA employees discussing confidential information regarding MMFA's journalistic processes and procedures for research related to articles not at issue in this case. |
| --- | --- | --- | --- | --- | --- | --- | --- |

App. 502

Defendants' June 28, 2024 Privilege Log

| Bates | | | From | To | CC | Privilege | Description |
|---|---|---|---|---|---|---|---|
| MMFA_013716-MMFA_013748 | Redacted | Email | Monica Estrada <mestrada@mediamatters.org> | Andrea Alford <aalford@mediamatters.org> | Brennan Suen <bsuen@mediamatters.org> Hiwot Hailu <hhailu@mediamatters.org> fingerprint <fingerprint@mediamatters.org> Craig Harrington <charrington@mediamatters.org> Angelo S. Carusone <acarusone@mediamatters.org> Julie Tulbert <jtulbert@mediamatters.org> Live Links <live@mediamatters.org> Proposals <proposals@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> | 1A; TX Press Shield Laws | Communications between MMFA employees pertaining to the research and drafting strategy of an article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications, coordination with strategic partners, and MMFA's journalistic process and procedures. The final version of the article is public and accessible from the link in the document. |
| MMFA_013749-MMFA_013755 | Redacted | Email | Laura Keiter <lkeiter@mediamatters.org> <branch@mediamatters.org> Lauren Cross <lcross@mediamatters.org> Carly Novell <cnovell@mediamatters.org> | Hiwot Hailu <hhailu@mediamatters.org> | fingerprint <fingerprint@mediamatters.org> Camden Carter <ccarter@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Live Links <live@mediamatters.org> Content Editing <content@mediamatters.org> Kayla Gogarty <kgogarty@mediamatters.org> LGBT Program <lgbt@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Payton Armstrong <parmstrong@mediamatters.org> Research <research@mediamatters.org> research-assignments@mediamatters.org | 1A | Redacted communications from MMFA employee recounting strategic communications with non-MMFA journalist about issues not related to this case. |
| MMFA_013756 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatters.org> Faith Branch <branch@mediamatters.org> Lauren Cross <lcross@mediamatters.org> Carly Novell <cnovell@mediamatters.org> | Cynthia Padera <cpadera@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Hanne MacDonald <hmacdonald@mediamatters.org> Casey Hargrave <chargrave@mediamatters.org> Hiwot Hailu <hhailu@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Faith Branch <branch@mediamatters.org> Howard Pangelinan <hpangelinan@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Lauren Cross <lcross@mediamatters.org> Carly Novell <cnovell@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> | | TX Press Shield Laws | Communications between MMFA employees and strategic partner revealing MMFA strategic partners and confidential journalistic and organizational strategy behind articles not at issue in this litigation. |

Defendants' June 28, 2024 Privilege Log

| Bates | Status | Type | From | To | Privilege | Description |
|---|---|---|---|---|---|---|
| MMFA_013757 | Withheld | Chat | Sergio Munoz <smunoz@mediamatters.org> Hiwot Hailu <hhailu@mediamatters.org> Faith Branch <fbranch@mediamatters.org> Lauren Cross <lcross@mediamatters.org> | Cynthia Padera <cpadera@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Hanne MacDonald <hmacdonald@mediamatters.org> Casey Hargrave <chargrave@mediamatters.org> Hiwot Hailu <hhailu@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Faith Branch <fbranch@mediamatters.org> Howard Pangelinan <hpangelinan@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Lauren Cross <lcross@mediamatters.org> Carly Novell <cnovell@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees and strategic partner revealing MMFA strategic partners and confidential journalistic and organizational strategy behind articles not at issue in this litigation. |
| MMFA_013758 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Faith Branch <fbranch@mediamatters.org> Lauren Cross <lcross@mediamatters.org> | Cynthia Padera <cpadera@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Hanne MacDonald <hmacdonald@mediamatters.org> Casey Hargrave <chargrave@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Faith Branch <fbranch@mediamatters.org> Howard Pangelinan <hpangelinan@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Lauren Cross <lcross@mediamatters.org> Carly Novell <cnovell@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees regarding story pitch request revealing MMFA journalistic processes and strategy about subject matter not at issue in this case. |
| MMFA_013759 | Withheld | Word | | | TX Press Shield Laws | Comments and revisions to draft article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of this article is public and either has been or will be produced in discovery. |
| MMFA_013760 | Withheld | Word | | | 1A, TX Press Shield Laws | Agenda for an internal MMFA meeting regarding strategy for avenues of journalistic research and writing for the year, much of which was ultimately not pursued by the organization. The document reflects confidential and sensitive journalistic processes. |

App.504

Defendants' June 28, 2024 Privilege Log

| Bates | Status | Type | From | To | Privilege | Description |
|---|---|---|---|---|---|---|
| MMFA_013761 | Withheld | Word | | | TX Press Shield Laws | Comments and revisions to a draft article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of this article is public and either has been or will be produced in discovery. |
| MMFA_013762 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatters.org>-Faith Branch <fbranch@mediamatters.org>-Lauren Cross <lcross@mediamatters.org>-Carly Novell <cnovell@mediamatters.org> | Cynthia Padera <cpadera@mediamatters.org>-Rebecca Sturtevant <rsturtevant@mediamatters.org>-Sergio Munoz <smunoz@mediamatters.org>-Hanne MacDonald <hmacdonald@mediamatters.org>-Casey Hargrave <chargrave@mediamatters.org>-Angelo Carusone <acarusone@mediamatters.org>-Faith Branch <fbranch@mediamatters.org>-Howard Pangelinan <hpangelinan@mediamatters.org>-Beth Cope <bcope@mediamatters.org>-Julie Millican <jmillican@mediamatters.org>-John Whitehouse <jwhitehouse@mediamatters.org>-Ben Dimiero <bdimiero@mediamatters.org>-Laura Keiter <lkeiter@mediamatters.org>-Lauren Cross <lcross@mediamatters.org>-Carly Novell <cnovell@mediamatters.org>-Andrea L. Alford <aalford@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees regarding media appearance and story pitch requests revealing MMFA journalistic processes and strategy about subject matter not at issue in this case. |
| MMFA_013763 | Withheld | Email | Natalie Mathes <nmathes@mediamatters.org> | Proposals <proposals@mediamatters.org>-x-Research <research@mediamatters.org>-Internal Intel <internalintel@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees regarding an article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. |
| MMFA_013764 | Withheld | Email | Kayla Gogarty <kgogarty@mediamatters.org> | Natalie Mathes <nmathes@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees regarding an article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. |
| MMFA_013765 | Withheld | Email | Natalie Mathes <nmathes@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees regarding an article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. |

In the To column:
- MMFA_013764: Proposals <proposals@mediamatters.org>-x-Research <research@mediamatters.org>-Internal Intel <internalintel@mediamatters.org>-Alex Paterson <apaterson@mediamatters.org>-Internal Intel <internalintel@mediamatters.org>-Alex Paterson <apaterson@mediamatters.org>-Kaplan <akaplan@mediamatters.org>
- MMFA_013763: Kayla Gogarty <kgogarty@mediamatters.org>-Alex Paterson <apaterson@mediamatters.org>-Alex Kaplan <akaplan@mediamatters.org>
- MMFA_013765: Proposals <proposals@mediamatters.org>-x-Research <research@mediamatters.org>-Internal Intel <internalintel@mediamatters.org>-Alex Paterson <apaterson@mediamatters.org>-Alex Kaplan <akaplan@mediamatters.org>

Defendants' June 28, 2024 Privilege Log

| Bates | Status | Type | From | To | Privilege | Description |
|---|---|---|---|---|---|---|
| MMFA_013766 | Withheld | Chat | Rebecca Sturtevant <sturtevant@mediamatters.org>; Faith Branch <branch@mediamatters.org>; Lauren Cross <lcross@mediamatters.org>; Carly Novell <cnovell@mediamatters.org> | Cynthia Padera <cpadera@mediamatters.org>; Rebecca Sturtevant <sturtevant@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org>; Hanne MacDonald <hmacdonald@mediamatters.org>; Casey Hargrave <chargrave@mediamatters.org>; Angelo Carusone <acarusone@mediamatters.org>; Faith Branch <branch@mediamatters.org>; Howard Pangelinan <hpangelinan@mediamatters.org>; Beth Cope <bcope@mediamatters.org>; Julie Millican <jmillican@mediamatters.org>; John Whitehouse <jwhitehouse@mediamatters.org>; Ben Dimiero <bdimiero@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>; Lauren Cross <lcross@mediamatters.org>; Carly Novell <cnovell@mediamatters.org>; Andrea L. Alford <aalford@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees and vendor regarding media inquiry and pitch communications on articles not at issue in this case. |
| MMFA_013767 | Withheld | Email | Natalie Mathes <nmathes@mediamatters.org> | Alex Paterson <apaterson@mediamatters.org>; Spencer Smith-Silva <ssilva@mediamatters.org>; Internal Intel <internalintel@mediamatters.org>; Proposals <proposals@mediamatters.org>; Content Editing <content@mediamatters.org>; Live Links <live@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees pertaining to the research and drafting strategy of an article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. |
| MMFA_013768 | Withheld | Email | Kayla Gogarty <kgogarty@mediamatters.org> | Natalie Mathes <nmathes@mediamatters.org>; Proposals <proposals@mediamatters.org>; X-Research <research@mediamatters.org>; Research Intel <research@mediamatters.org>; Internal Intel <internalintel@mediamatters.org>; Alex Paterson <apaterson@mediamatters.org>; Alex Kaplan <akaplan@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees pertaining to the research and drafting strategy of an article not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communication and MMFA's journalistic process and procedures. |
| MMFA_013769 | Withheld | Email | Natalie Mathes <nmathes@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org>; Proposals <proposals@mediamatters.org>; X-Research <research@mediamatters.org>; Research Intel <research@mediamatters.org>; Internal Intel <internalintel@mediamatters.org>; Alex Paterson <apaterson@mediamatters.org>; Alex Kaplan <akaplan@mediamatters.org> | TX Press Shield Laws | Communication between MMFA employees pertaining to the research and drafting strategy of an article not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communication and MMFA's journalistic process and procedures. |
| MMFA_013770 | Withheld | Email | Kayla Gogarty <kgogarty@mediamatters.org> | Natalie Mathes <nmathes@mediamatters.org>; Proposals <proposals@mediamatters.org>; X-Research <research@mediamatters.org>; Research Intel <research@mediamatters.org>; Internal Intel <internalintel@mediamatters.org>; Alex Paterson <apaterson@mediamatters.org>; Alex Kaplan <akaplan@mediamatters.org> | TX Press Shield Laws | Communication between MMFA employees pertaining to the research and drafting strategy of an article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. |

Appx. 224

Defendants' June 28, 2024 Privilege Log

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MMFA_013771 | Withheld | Email | Natalie Mathes <nmathes@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org>;Content Editing <content@mediamatters.org> | Proposals <proposals@mediamatters.org>;x-Research <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Alex Paterson <apaterson@mediamatters.org>;Alex Kaplan <akaplan@mediamatters.org> | TX Press Shield Laws | Communications containing draft outlines and internal comments for a draft article not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of this article is public and either has been or will be produced in discovery. |
| MMFA_013772 | Withheld | Word | | | | TX Press Shield Laws | Comments and revisions to a draft article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of this article is public and either has been or will be produced in discovery. |
| MMFA_013773 | Withheld | Word | | | | TX Press Shield Laws | Comments and revisions to a draft article that is not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of this article is public and either has been or will be produced in discovery. |
| MMFA_013774 | Withheld | Chat | Brett Abrams;Sergio Munoz <smunoz@mediamatters.org>;Angelo Carusone <acarusone@mediamatters.org>-Faith Branch <branch@mediamatters.org>;John Whitehouse <jwhitehouse@mediamatters.org>;Ben Dimiero <bdimiero@mediamatters.org>;Andrea L. Alford <aalford@mediamatters.org> | Brett Abrams;Cynthia Padera <cpadera@mediamatters.org>;Rebecca Sturtevant <rsturtevant@mediamatters.org>;Sergio Munoz <smunoz@mediamatters.org>;Hanne MacDonald <hmacdonald@mediamatters.org>;Casey Hargrave <chargrave@mediamatters.org>;Angelo Carusone <acarusone@mediamatters.org>-Faith Branch <branch@mediamatters.org>;Howard Pangelinan <hpangelinan@mediamatters.org>;Beth Cope <bcope@mediamatters.org>;Julie Millican <jmillican@mediamatters.org>;John Whitehouse <jwhitehouse@mediamatters.org>;Ben Dimiero <bdimiero@mediamatters.org>;Laura Keiter <lkeiter@mediamatters.org>;Carly Novell <cnovell@mediamatters.org>;Andrea L. Alford <aalford@mediamatters.org> | | TX Press Shield Laws | Communications between MMFA employees regarding media appearance and story pitch requests revealing MMFA journalistic processes and strategy about subject matter that is not at issue in this case. |

App.507

Defendants' June 28, 2024 Privilege Log

Appx. 225

| Bates | Status | Type | From | To | Basis | Description |
|---|---|---|---|---|---|---|
| MMFA_013775 | Withheld | Chat | Rebecca Sturtevant <sturtevant@mediamatters.org>-Faith Branch <branch@mediamatters.org>-Carly Novell <cnovell@mediamatters.org> | Cynthia Padera <cpadera@mediamatters.org>-Rebecca Sturtevant <sturtevant@mediamatters.org>-Sergio Munoz <smunoz@mediamatters.org>-Hanne MacDonald <hmacdonald@mediamatters.org>-Casey Hargrave <chargrave@mediamatters.org>-Angelo Carusone <acarusone@mediamatters.org>-Faith Branch <branch@mediamatters.org>-Howard Pangelinan <hpangelinan@mediamatters.org>-Beth Cope <bcope@mediamatters.org>-Julie Millican <jmillican@mediamatters.org>-John Whitehouse <jwhitehouse@mediamatters.org>-Ben Dimiero <bdimiero@mediamatters.org>-Laura Keiter <lkeiter@mediamatters.org>-Carly Novell <cnovell@mediamatters.org>-Andrea L. Alford <aalford@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees regarding media appearance and story pitch requests revealing MMFA journalistic processes and strategy about subject matter that is not at issue in this case. |
| MMFA_013776 | Withheld | Chat | Rebecca Sturtevant <sturtevant@mediamatters.org>-Sergio Munoz <smunoz@mediamatters.org>-Faith Branch <branch@mediamatters.org>-Julie Millican <jmillican@mediamatters.org> | Cynthia Padera <cpadera@mediamatters.org>-Rebecca Sturtevant <sturtevant@mediamatters.org>-Sergio Munoz <smunoz@mediamatters.org>-Hanne MacDonald <hmacdonald@mediamatters.org>-Casey Hargrave <chargrave@mediamatters.org>-Angelo Carusone <acarusone@mediamatters.org>-Faith Branch <branch@mediamatters.org>-Howard Pangelinan <hpangelinan@mediamatters.org>-Beth Cope <bcope@mediamatters.org>-Julie Millican <jmillican@mediamatters.org>-John Whitehouse <jwhitehouse@mediamatters.org>-Ben Dimiero <bdimiero@mediamatters.org>-Laura Keiter <lkeiter@mediamatters.org>-Carly Novell <cnovell@mediamatters.org>-Andrea L. Alford <aalford@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees regarding media appearance and story pitch requests and strategy about subject matter not at issue in this case. |
| MMFA_013777 | Withheld | Email | Kayla Gogarty <kgogarty@mediamatters.org> | Natalie Mathes <nmathes@mediamatters.org> | Proposals <proposals@mediamatters.org>-Pamela Vogel <pvogel@mediamatters.org>-x-Research <research@mediamatters.org>-Internal Intel <internalintel@mediamatters.org>-Alex Paterson <apaterson@mediamatters.org>-Carly Evans <cevans@mediamatters.org>-LGBT Program <lgbt@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees pertaining to the research and drafting strategy of an article not at issue in this case about subject matter that is not at issue in this case that reveal internal strategic communication and MMFA's journalistic process and procedures. |
| MMFA_013778-MMFA_013782 | Redacted | Email | Katherine Abughazaleh <kabughazaleh@mediamatters.org> | internalintel@mediamatters.org-Andrew Lawrence <alawrence@mediamatters.org>-John Whitehouse <jwhitehouse@mediamatters.org>-Alicia Sadowski <asadowski@mediamatters.org>-Helena Hind <hhind@mediamatters.org>-Jane Lee <jlee@mediamatters.org>-Isabella Corrao <icorrao@mediamatters.org> | TX Press Shield Laws | Redacted information on research for articles on subject matter that is not at issue in this litigation. |

App.508

Defendants' June 28, 2024 Privilege Log

| MMFA_013783 | Withheld | Chat | Ben Van Bloem <bvanbloem@mediamatters.org> Chloe Simon <csimon@mediamatters.org> Shelby Jamerson <sjamerson@mediamatters.org> Bobby Lewis <rlewis@mediamatters.org> | Pete Tsipis <ptsipis@mediamatters.org> Kayla Gogarty <kgogarty@mediamatters.org> Jack Winstanley <jwinstanley@mediamatters.org> Audrey Bowler <abowler@mediamatters.org> Ben Van Bloem <bvanbloem@mediamatters.org> Craig Harrington <charrington@mediamatters.org> Payton Armstrong <parmstrong@mediamatters.org> Brennan Suen <bsuen@mediamatters.org> Sharon Kann <skann@mediamatters.org> Zachary Pleat <zpleat@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Gideon Taaffe <gtaaffe@mediamatters.org> Natalie Mathes <nmathes@mediamatters.org> Torri Lonergan <tlonergan@mediamatters.org> Andrew Lawrence <alawrence@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Courtney Hagle <chagle@mediamatters.org> Camden Carter <ccarter@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> Rachel Tardiff <rtardiff@mediamatters.org> Ariel Churchill <achurchill@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Noah Dowe <ndowe@mediamatters.org> Chloe Simon <csimon@mediamatters.org> Jasmine Geonzon <jgeonzon@mediamatters.org> Madeline Peltz <mpeltz@mediamatters.org> Sage Hodil <shodil@mediamatters.org> Audrey McCabe <amccabe@mediamatters.org> Jack Wheatley <jwheatley@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> Eric Kleefeld <ekleefeld@mediamatters.org> Beatrice Mount <bmount@mediamatters.org> Matt Gertz <mgertz@mediamatters.org> Reed McMaster <rmcmaster@mediamatters.org> Alison Fisher <afisher@mediamatters.org> Hanne MacDonald <hmacdonald@mediamatters.org> Casey Wexler <cwexler@mediamatters.org> Ethan Collier <ecollier@mediamatters.org> Brendan Karet <bkaret@mediamatters.org> John Knefel <jknefel@mediamatters.org> Justin Horowitz <jhorowitz@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> Shelby Jamerson <sjamerson@mediamatters.org> Mia Gingerich <mgingerich@mediamatters.org> Bushra Sultana <bsultana@mediamatters.org> Emma Mae Weber <eweber@mediamatters.org> Lis Power <lpower@mediamatters.org> Cynthia Padera <cpadera@mediamatters.org> Pam Vogel <pvogel@mediamatters.org> Eric Hananoki <ehananoki@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees discussing confidential information regarding MMFA's journalistic processes and procedures for research related to articles not at issue in this case. |

App.509

**Defendants' June 28, 2024 Privilege Log**

| Bates | Status | Type | Author | Participants | Privilege | Description |
|---|---|---|---|---|---|---|
| MMFA_013784 | Withheld | Chat | Rebecca Sturtevant <sturtevant@mediamatters.org> <cnoveli@mediamatters.org> | <ehananoki@mediamatters.org>>Charis Hoard <choard@mediamatters.org>>Bobby Lewis <rlewis@mediamatters.org>>Michael Eberhart <meberhart@mediamatters.org>>Jacina Hollins-Borges <jhollins-borges@mediamatters.org>>Olivia Little <olittle@mediamatters.org>>Jane Lee <jlee@mediamatters.org>>Alex Guiden <aguiden@mediamatters.org>>Laura Keiter <lkeiter@mediamatters.org>>Tyler Monroe <tmonroe@mediamatters.org>>Eviondo Cooper <ecooper@mediamatters.org>>Jason Campbell <jcampbell@mediamatters.org> Cynthia Padera <cpadera@mediamatters.org>>Rebecca Sturtevant <rsturtevan@mediamatters.org>>Sergio Munoz <smunoz@mediamatters.org>>Hanne MacDonald <hmacdonald@mediamatters.org>>Casey Hargrave <chargrave@mediamatters.org>>Angelo Carusone <acarusone@mediamatters.org>>Howard Pangelinan <hpangelinan@mediamatters.org>>Beth Cope <bcope@mediamatters.org>>Julie Millican <jmillican@mediamatters.org>>John Whitehouse <jwhitehouse@mediamatters.org>>Ben Dimiero <bdimiero@mediamatters.org>>Laura Keiter <lkeiter@mediamatters.org>>Carly Noveli <cnoveli@mediamatters.org>>Andrea L. Alford <aalford@mediamatters.org> | TX Press Shield Laws | Communications between MMFA employees and strategic partner revealing MMFA strategic partners and confidential journalistic and organizational strategy behind articles not at issue in this litigation. |
| MMFA_013785-MMFA_013787 | Redacted | Email | Alicia Sadowski <asadowski@mediamatters.org> | Internal Intel <internalintel@mediamatters.org>>Andrew Lawrence <alawrence@mediamatters.org>>Helena Hind <hhind@mediamatters.org>>Jane Lee <jlee@mediamatters.org>>Katherine Abughazaleh <kabughazaleh@mediamatters.org>>Isabella Corrao <icorrao@mediamatters.org> | TX Press Shield Laws | Redacted information on research for articles on subject matter that is not at issue in this litigation. |
| MMFA_013788 | Withheld | Chat | Sharon Kann <skann@mediamatters.org>>Carly Evans <cevans@mediamatters.org> | Sharon Kann <skann@mediamatters.org>>Carly Evans <cevans@mediamatters.org> | TX Press Shield Laws | Communications between two MMFA employees discussing confidential information regarding MMFA's journalistic processes and procedures for research related to articles not at issue in this case. |
| MMFA_013789 | Withheld | Chat | Victoria Deck <vdeck@mediamatters.org>>Sharon Kann <skann@mediamatters.org> | Victoria Deck <vdeck@mediamatters.org>>Sharon Kann <skann@mediamatters.org> | Attny Client; WP | Communications between two MMFA employees regarding the compilation of work product requested by MMFA's counsel in litigation related to Mr. Hananoki's November 2023 articles. |
| MMFA_013790 | Withheld | Chat | John Whitehouse <jwhitehouse@mediamatters.org>>Jason Campbell <jcampbell@mediamatters.org> | John Whitehouse <jwhitehouse@mediamatters.org>>Jason Campbell <jcampbell@mediamatters.org> | Attny Client | Communications between two MMFA employees regarding legal guidance given by counsel in the present litigation. |

Defendants' June 28, 2024 Privilege Log

| MMFA_013791 | Withheld | Chat | John Whitehouse <jwhitehouse@mediamatters.org>-Jason Campbell <jcampbell@mediamatters.org> | John Whitehouse <jwhitehouse@mediamatters.org>-Jason Campbell <jcampbell@mediamatters.org> | | Attny Client | Communications between two MMFA employees discussing legal guidance provided by counsel in this litigation. |
| MMFA_013792 | Withheld | Chat | Bushra Sultana <bsultana@mediamatters.org>-Sergio Munoz <smunoz@mediamatters.org> | Bushra Sultana <bsultana@mediamatters.org>-Sergio Munoz <smunoz@mediamatters.org> | | Attny Client | Communications between MMFA employees regarding publishing instructions from counsel in response to the present litigation. |
| MMFA_013793 | Withheld | Chat | Sergio Munoz <smunoz@mediamatters.org>-Laura Keiter <lkeiter@mediamatters.org> | Sergio Munoz <smunoz@mediamatters.org>-Laura Keiter <lkeiter@mediamatters.org> | | Attny Client | Communications between MMFA employees relaying legal advice about publication of article. |

TAB 11

Defendants' Amended June 28, 2024 Privilege Log

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013561 | Withheld | Word | Nikki McCann Ramirez nramirez@mediamatters.org | | | | 10/14/2021 | TX Press Shield Laws | Comments, revisions, and citations for a draft article about two public figures not at issue in this case. The comments and revisions reveal internal strategic communications and MMFA's journalistic process and procedures. The final version of the article is public, titled "Tucker Carlson has been defending Alex Jones for years," and can be accessed on MMFA's website. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). |
| MMFA_013562-MMFA_013579 | Redacted | Email | Sharon Kann <skann@mediamatters.org> | Danil Cuffe <dcuffe@mediamatters.org>; Carly Evans <cevans@mediamatters.org> | Misinformation Monitoring 2020 <misinformonitoring2020@mediamatters.org>;Resear ch <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Stefanie Le <sle@mediamatters.org> | | 4/1/2022 | First Amendment Privilege; TX Press Shield Laws | Redacted confidential discussion about avenues for potential research and advocacy. Redacted portion does not reference or pertain to Musk or Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). **First Amendment Associational Privilege**: The redacted portion contains internal communications concerning research and advocacy strategy. |
| MMFA_013580-MMFA_013597 | Redacted | Email | Alex Kaplan <akaplan@mediamatters.org> | Sharon Kann <skann@mediamatters.org> | Danil Cuffe <dcuffe@mediamatters.org>; Carly Evans <cevans@mediamatters.org>;Misinformation Monitoring 2020 <misinformonitoring2020@mediamatters.org>;Resear ch <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Stefanie Le <sle@mediamatters.org> | | 4/1/2022 | First Amendment Privilege; TX Press Shield Laws | Redacted confidential discussion about avenues for potential research and advocacy. Redacted portion does not reference or pertain to Musk or Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). **First Amendment Associational Privilege**: The redacted portion contains internal communications concerning research and advocacy strategy. |
| MMFA_013598-MMFA_013616 | Redacted | Email | Danil Cuffe <dcuffe@mediamatters.org> | Alex Kaplan <akaplan@mediamatters.org> | Sharon Kann <skann@mediamatters.org>; Carly Evans <cevans@mediamatters.org>;Misinformation Monitoring 2020 <misinformonitoring2020@mediamatters.org>;Resear ch <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Stefanie Le <sle@mediamatters.org> | | 4/1/2022 | First Amendment Privilege; TX Press Shield Laws | Redacted confidential discussion about avenues for potential research and advocacy. Redacted portion does not reference or pertain to Musk or Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). **First Amendment Associational Privilege**: The redacted portion contains internal communications concerning research and advocacy strategy. |
| MMFA_013617-MMFA_013635 | Redacted | Email | Stefanie Le <sle@mediamatters.org> | Danil Cuffe <dcuffe@mediamatters.org> | Alex Kaplan <akaplan@mediamatters.org>; Sharon Kann <skann@mediamatters.org>;Carly Evans <cevans@mediamatters.org>;Misinformation Monitoring 2020 <misinformonitoring2020@mediamatters.org>;Resear ch <research@mediamatters.org>;Internal Intel <internalintel@mediamatters.org> | | 4/1/2022 | First Amendment Privilege; TX Press Shield Laws | Redacted confidential discussion about avenues for potential research and advocacy. Redacted portion does not reference or pertain to Musk or Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). **First Amendment Associational Privilege**: The document contains internal communications concerning research and advocacy strategy. |

1

Defendants' Amended June 28, 2024 Privilege Log

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013636-MMFA_013655 | Redacted | E-mail | Danil Cuffe <dcuffe@mediamatters.org> | Misinformation Monitoring 2020 <misinformonitoring2020@mediamatters.org>; Research <research@mediamatters.org>; Internal Intel <internalintel@mediamatters.org> | | | 4/29/2022 | First Amendment Privilege; TX Press Shield Laws | Redacted confidential discussion about avenues for potential research and advocacy related to right-wing media and far-right social media accounts across a variety of platforms. Redacted portion contains a reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**. This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). **First Amendment Associational Privilege**. The document contains internal communications concerning research and advocacy strategy. |
| MMFA_013656-MMFA_013676 | Redacted | E-mail | Danil Cuffe <dcuffe@mediamatters.org> | Misinformation Monitoring 2020 <misinformonitoring2020@mediamatters.org>; Research <research@mediamatters.org>; Internal Intel <internalintel@mediamatters.org>; Curly Evans <cevans@mediamatters.org>; Jeremy Tuthill <jtuthill@mediamatters.org> | | | 4/29/2022 | First Amendment Privilege; TX Press Shield Laws | Redacted confidential discussion about avenues for potential research and advocacy related to right-wing media and far-right social media accounts across a variety of platforms. Redacted portion contains a reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**. This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). **First Amendment Associational Privilege**. The document contains internal communications concerning research and advocacy strategy. |
| MMFA_013677-MMFA_013697 | Redacted | E-mail | Danil Cuffe <dcuffe@mediamatters.org> | Sharon Kann <skann@mediamatters.org> | Misinformation Monitoring 2020 <misinformonitoring2020@mediamatters.org>; Research <research@mediamatters.org>; Internal Intel <internalintel@mediamatters.org>; Curly Evans <cevans@mediamatters.org>; Jeremy Tuthill <jtuthill@mediamatters.org> | | 4/29/2022 | First Amendment Privilege; TX Press Shield Laws | Redacted confidential discussion about avenues for potential research and advocacy related to right-wing media and far-right social media accounts across a variety of platforms. Redacted portion contains a reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**. This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). **First Amendment Associational Privilege**. The document contains internal communications concerning research and advocacy strategy. |
| MMFA_013698 | Withheld | Word | Robert Lewis Rlewis@mediamatters.org | | | | 5/12/2022 | TX Press Shield Laws | Comments, revisions, and citations for a draft article that is not at issue in this case about a conservative news network and television personality. The draft contains a reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. The final version of this article is public, titled "OAN CEO praises Tucker Carlson's 'real news' as he pitches the network to Charter," and can be accessed on MMFA's website. **Texas Press Shield Law**. This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). |

App.514

Defendants' Amended June 28, 2024 Privilege Log

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013689 | Withheld | Word | John Knefel jknefel@mediamatters.org | | | | 6/21/2022 | TX Press Shield Laws | Comments, revisions, and citations for a draft article that is not at issue in this case about violence against trans people and drag queens. The draft contains reference to Musk or Twitter unrelated to research for the November 16 and 2023 articles or advertisement placement on Twitter. The final version of this article is public, titled "Right-wing media are pushing for vigilantes against trans people and drag queens. Fascists are answering the call" and can be accessed on MMFA's website.  **Texas Press Shield Law:** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). |
| MMFA_013700-MMFA_013714 | Redacted | E-mail | Hiwot Hailu <hhailu@mediamatters.org> | fingerprint <fingerprint@mediamatters.org> | Monica Estrada <mestrada@mediamatters.org>; Andrea Alford <aalford@mediamatters.org>; Brennan Suen <bsuen@mediamatters.org>; Craig Harrington <charrington@mediamatters.org>; Angelo S. Carusone <acarusone@mediamatters.org>; Julie Tulbert <jtulbert@mediamatters.org>; Live Links <live@mediamatters.org>; Proposals <proposals@mediamatters.org>; Sergio Muñoz <smunoz@mediamatters.org> | | 10/21/2022 | TX Press Shield Laws | Redacted communications between MMFA employees pertaining to the research and drafting strategy of an article about the 2020 and 2022 elections. The redacted portions do not reference or pertain to Musk or Twitter.  **Texas Press Shield Law:** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). |

Defendants' Amended June 28, 2024 Privilege Log

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013715 | Withheld | Chat | Courtney Hagle <chagle@mediamatters.or g>; Julie Tulbert <jtulbert@mediamatters.or g>; Carly Evans <cevans@mediamatters.or g>; Shelby Jamerson <sjamerson@mediamatters .org> | Kayla Gogarty <kgogarty@mediamatters.org>; Ilana Berger <iberger@mediamatters.org>; Craig Harrington <charrington@mediamatters.org>; Brennan Suen <bsuen@mediamatters.org>; Sharon Kann <skann@mediamatters.org>; Zachary Pleat <zpleat@mediamatters.org>; Sophie Lawton <slawton@mediamatters.org>; Natalie Mathes <nmathes@mediamatters.org>; Vesper Henry <vhenry@mediamatters.org>; Alex Paterson <apaterson@mediamatters.org>; Courtney Hagle <chagle@mediamatters.org>; Camden Carter <ccarter@mediamatters.org>; Andrea L. Alford <aalford@mediamatters.org>; Rob Savillo <rsavillo@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org>; Julie Tulbert <jtulbert@mediamatters.org>; Leo Fernandez <lfernandez@mediamatters.org>; Chloe Simon <csimon@mediamatters.org>; Jasmine Geonzon <jgeonzon@mediamatters.org>; Madeline Peltz <mpeltz@mediamatters.org>; Audrey McCabe <amccabe@mediamatters.org>; Jack Wheatley <jwheatley@mediamatters.org>; Julie Millican <jmillican@mediamatters.org>; Alyssa Tirrell <atirrell@mediamatters.org>; Ari Drennen <adrennen@mediamatters.org>; Beatrice Mount <bmount@mediamatters.org>; Carlos Maza <cmaza@mediamatters.org>; Matt Gertz <mgertz@mediamatters.org>; Reed McMaster <rmcmaster@mediamatters.org>; Allison Fisher <afisher@mediamatters.org>; Hanne MacDonald <hmacdonald@mediamatters.org>; Casey Wexler <cwexler@mediamatters.org>; Ethan Collier <ecollier@mediamatters.org>; Carly Evans <cevans@mediamatters.org>; Justin Horowitz <jhorowitz@mediamatters.org>; Gabriel Capuano <gcapuano@mediamatters.org>; Ben Dimiero <bdimiero@mediamatters.org>; Alex Kaplan <akaplan@mediamatters.org>; Shelby Jamerson <sjamerson@mediamatters.org>; Mia Gingerich <mgingerich@mediamatters.org>; Bushra Sultana <bsultana@mediamatters.org>; Lis Power <lpower@mediamatters.org>; Abbie Richards <arichards@mediamatters.org>; Pam Vogel <pvogel@mediamatters.org>; Eric Hananoki <ehananoki@mediamatters.org>; Charis Hoard <choard@mediamatters.org>; Bobby Lewis <blewis@mediamatters.org>; Jacina Hollins-Borges <jhollins-borges@mediamatters.org>; Olivia Little <olittle@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>; Carly Novell <cnovell@mediamatters.org> | | | 11/7/2022 | TX Press Shield Laws | Communications between MMFA employees pertaining to strategies and methods for tracking right wing media content unrelated to research the November 16 and 17, 2023 articles or advertisement placement on Twitter.

**Texas Press Shield Law:** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). |

**Defendants' Amended June 28, 2024 Privilege Log**

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013716-MMFA_013748 | Redacted | Email | Monica Estrada <mestrada@mediamatters.org> | Andrea Alford <salford@mediamatters.org> | Brennan Suen <bsuen@mediamatters.org>;Hiwot Hailu <hhailu@mediamatters.org>;Fingerprint <fingerprint@mediamatters.org>;Craig Harrington <charrington@mediamatters.org>;Angelo S. Carusone <acarusone@mediamatters.org>;Julie Tulbert <jtulbert@mediamatters.org>;Live Links live@mediamatters.org>;Proposals <proposals@mediamatters.org>;Sergio Muñoz <smunoz@mediamatters.org> | | 11/7/2022 | First Amendment Privilege; TX Press Shield Laws | Communications between MMFA employees pertaining to the research and drafting strategy for an article about the 2020 and 2022 elections. The redacted portions do not reference or pertain to Musk or Twitter. The final version of this article public and linked in the document.  **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1).  **First Amendment Associational Privilege**: The redacted portions of the document contain internal communications concerning research and advocacy strategy. Some redactions also reveal the identity of and information concerning a third party who partnered with MMFA to conduct some of the research and advocacy underlying the article. Disclosure of the organization's partnership with MMFA would chill the organization's and MMFA's First Amendment speech and association rights. |
| MMFA_013749-MMFA_013755 | Redacted | Email | Laura Keiter <lkeiter@mediamatters.org> | Hiwot Hailu <hhailu@mediamatters.org> | Fingerprint <fingerprint@mediamatters.org>;Camden Carter <ccarter@mediamatters.org>;Alex Paterson <apaterson@mediamatters.org>;Live Links live@mediamatters.org>;Content Editing content@mediamatters.org>;Kayla Gogarty <kgogarty@mediamatters.org>;LGBT Program <lgbt@mediamatters.org>;Internal Intel <internalintel@mediamatters.org>;Payton Armstrong <parmstrong@mediamatters.org>;Research <research@mediamatters.org>;Research Assignments <research-assignments@mediamatters.org> | | 11/14/2022 | First Amendment Privilege | Redacted portion contains communications from MMFA employees encouraging communications with a non-MMFA journalist about that journalist's publishing strategy related to a non-MMFA article.  **First Amendment Associational Privilege**: The redacted portion of the document contains internal communications concerning the publishing strategy of a non-MMFA reporter. The disclosure of the reporter's identity and strategy could chill MMFA's and the journalist's First Amendment speech and association rights. |
| MMFA_013756 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatters.org>; Faith Branch <branch@mediamatters.org>; Lauren Cross <lcross@mediamatters.org>; Carly Novell <cnovell@mediamatters.org> | Cynthia Padera <cpadera@mediamatters.org>; Rebecca Sturtevant <rsturtevant@mediamatters.org>; Sergio Muñoz <smunoz@mediamatters.org>; Hanne MacDonald <hmacdonald@mediamatters.org>; Casey Hargrave <chargrave@mediamatters.org>; Hiwot Hailu <hhailu@mediamatters.org>; Angelo Carusone <acarusone@mediamatters.org>; Faith Branch <branch@mediamatters.org>; Howard Pangelinan <hpangelinan@mediamatters.org>; Beth Cope <bcope@mediamatters.org>; Julie Millican <jmillican@mediamatters.org>; Ben Dimiero <bdimiero@mediamatters.org>; John Whitehouse <jwhitehouse@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>; Lauren Cross <lcross@mediamatters.org>; Andrea L. Alford <salford@mediamatters.org>; Carly Novell <cnovell@mediamatters.org> | | 11/17/2022 | TX Press Shield Laws | Communications between MMFA employees and third party communications firm regarding pitches and media requests for articles regarding election coverage. Document contains reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.  **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |

5

**Defendants' Amended June 28, 2024 Privilege Log**

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013757 | Withheld | Chat | Sergio Munoz <smunoz@mediamatters.o rg> Hiwot Hailu <hhailu@mediamatters.org >, Faith Branch <fbranch@mediamatters.or g>, Lauren Cross <lcross@mediamatters.org > | Cynthia Padera <cpadera@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org>, Sergio Munoz <smunoz@mediamatters.org>, Hanne MacDonald <hmacdonald@mediamatters.org>, Casey Hargrave <chargrave@mediamatters.org>, Hiwot Hailu <hhailu@mediamatters.org>, Angelo Carusone <acarusone@mediamatters.org>, Faith Branch <fbranch@mediamatters.org>, Howard Pangelinan <hpangelinan@mediamatters.org>, Beth Cope <bcope@mediamatters.org>, Julie Millican <jmillican@mediamatters.org>, John Whitehouse <jwhitehouse@mediamatters.org>, Ben Dimiero <bdimiero@mediamatters.org>, Laura Keiter <lkeiter@mediamatters.org>, Lauren Cross <lcross@mediamatters.org>, Carly Novell <cnovell@mediamatters.org>, Andrea L. Alford <aalford@mediamatters.org> | | | 11/17/2022 | TX Press Shield Laws | Communications between MMFA employees as a third-party communications firm regarding media request from non-MMFA journalist seeking MMFA collaboration on media appearance to discuss election coverage. Document contains references to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law.** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |
| MMFA_013758 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatter s.org> Sergio Munoz <smunoz@mediamatters.o rg>, Faith Branch <fbranch@mediamatters.or g>, Lauren Cross <lcross@mediamatters.org > | Cynthia Padera <cpadera@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org>, Sergio Munoz <smunoz@mediamatters.org>, Hanne MacDonald <hmacdonald@mediamatters.org>, Casey Hargrave <chargrave@mediamatters.org>, Angelo Carusone <acarusone@mediamatters.org>, Faith Branch <fbranch@mediamatters.org>, Howard Pangelinan <hpangelinan@mediamatters.org>, Julie Millican <jmillican@mediamatters.org>, John Whitehouse <jwhitehouse@mediamatters.org>, Ben Dimiero <bdimiero@mediamatters.org>, Laura Keiter <lkeiter@mediamatters.org>, Lauren Cross <lcross@mediamatters.org>, Carly Novell <cnovell@mediamatters.org>, Andrea L. Alford <aalford@mediamatters.org> | | | 11/18/2022 | TX Press Shield Laws | Communications between MMFA employees as a third-party communications firm regarding media request from non-MMFA journalist seeking MMFA collaboration on non-MMFA article related to electric vehicles. Document contains reference Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law.** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |
| MMFA_013759 | Withheld | Word | Matt Gertz Mgertz@mediamatters.org | | | | 12/1/2022 | TX Press Shield Laws | Comments, revisions, and citations for a draft article about the 2022 election. The document contains a stray reference to Musk or Twitter unrelated to research for the November 16 and 2023 articles or advertisement placement on Twitter. The final version of this article is public, titled "The GOP's 2022 'autopsy' won't pull it out of its right-wing media bubble," and can be accessed on MMFA's website. **Texas Press Shield Law.** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |

6

App.518

**Defendants' Amended June 28, 2024 Privilege Log**

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013760 | Withheld | Word | Pamela Vogel pvogel@mediamatters.org | | | | 12/5/2022 | First Amendment Privilege; TX Press Shield Laws | Agenda for an internal MMFA meeting regarding strategy for avenues of journalistic research and writing for the year, much of which was ultimately not pursued by the organization. The document summarizes right-wing media trends and includes a few stray references to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023(a)(1). **First Amendment Associational Privilege**: This document contains internal communications concerning strategy and messaging. |
| MMFA_013761 | Withheld | Word | John Knefel jknefel@mediamatters.org | | | | 12/19/2022 | TX Press Shield Laws | Comments, revisions, and citations for a draft article that is not at issue in this case about a conservative news network and individual. The version of this article is public, titled "White nationalists embrace Fox News' Bill Melugin," and can be accessed on MMFA's website. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023(a)(1). |
| MMFA_013762 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatter s.org> Faith Branch <fbranch@mediamatters.org> Lauren Cross <lcross@mediamatters.org >; Carly Novell <cnovell@mediamatters.or g> | Cynthia Padera <cpadera@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org> Hanne MacDonald <hmacdonald@mediamatters.org> Casey Hargrave <chargrave@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Faith Branch <fbranch@mediamatters.org> Howard Pangelinan <hpangelinan@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Lauren Cross <lcross@mediamatters.org> Carly Novell <cnovell@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> | | | 12/20/2022 | TX Press Shield Laws | Communications between MMFA employees and a third-party communications firm regarding article pitches and collaboration strategies with third parties for articles not at issue in this litigation regarding a variety of topics unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023(a)(1). |
| MMFA_013763 | Withheld | E-mail | Natalie Mathes <nmathes@mediamatters. org> | Proposals <proposals@mediamatters.org>; x-Research <research@mediamatters.org>; Internal Intel <internalintel@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> | | 1/3/2023 | TX Press Shield Laws | Communications between MMFA employees regarding the research and drafting strategy for a draft article about unrelated social media platform. The document contains a reference to Musk or Twitter unrelated to research for the November and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023(a)(1). |

App.519

**Defendants' Amended June 28, 2024 Privilege Log**

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013764 | Withheld | E-mail | Kayla Gogarty <kgogarty@mediamatters.org> | Natalie Mathes <nmathes@mediamatters.org> | Proposals <proposals@mediamatters.org> x-Research <research@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> | | 1/3/2023 | TX Press Shield Laws | Communications between MMFA employees regarding the research and drafting strategy for draft article about unrelated social media platform. The document contains a reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law.** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). |
| MMFA_013765 | Withheld | E-mail | Natalie Mathes <nmathes@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> | Proposals <proposals@mediamatters.org> x-Research <research@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> | | 1/3/2023 | TX Press Shield Laws | Communications between MMFA employees regarding the research and drafting strategy for draft article that is not at issue in this case about an unrelated social media platform. The document contains a reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law.** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). |
| MMFA_013766 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatter s.org> x- Faith Branch <fbranch@mediamatters.or g> Lauren Cross <lcross@mediamatters.org > Carly Novell <cnovell@mediamatters.or g> | Cynthia Padera <cpadera@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Hanne MacDonald <hmacdonald@mediamatters.org> Casey Hargrave <chargrave@mediamatters.org> Angela Carusone <acarusone@mediamatters.org> Faith Branch <fbranch@mediamatters.org> Howard Pangelinan <hpangelinan@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Lauren Cross <lcross@mediamatters.org> Carly Novell <cnovell@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> | | | 1/10/2023 | TX Press Shield Laws | Communications between MMFA employees and third-party communications firm regarding media inquiry and pitch communications for articles not at issue in this litigation regarding a variety of topics. Document contains reference to Musk or Twitter unrelated to research for the November 16 and 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law.** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). |
| MMFA_013767 | Withheld | E-mail | Natalie Mathes <mathes@mediamatters.org> | Alex Paterson <apaterson@mediamatters.org> Spencer Smith-Silva <ssilva@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Proposals <proposals@mediamatters.org> Content Editing <content@mediamatters.org> Live Links <live@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> x-Research <research@mediamatters.org> Research Assignments <research-assignments@mediamatters.org> | | 1/30/2023 | TX Press Shield Laws | Communications between MMFA employees regarding the research and drafting strategy for draft article about an unrelated social media platform and the 2024 election. The document contains a stray reference to Musk or Twitter unrelated to research for the November 16 and 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law.** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). |

**Defendants' Amended June 28, 2024 Privilege Log**

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013768 | Withheld | E-mail | Kayla Gogarty <kgogarty@mediamatters.org> | Natalie Mathes <nmathes@mediamatters.org> | Proposals <proposals@mediamatters.org> x-Research <research@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> | | 4/28/2023 | TX Press Shield Laws | Communications between MMFA employees regarding the research and drafting strategy for a draft article about an unrelated social media platform. Document contains stray reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1) |
| MMFA_013769 | Withheld | E-mail | Natalie Mathes <nmathes@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> | Proposals <proposals@mediamatters.org> x-Research <research@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> | | 4/28/2023 | TX Press Shield Laws | Communications between MMFA employees regarding the research and drafting strategy for a draft article about an unrelated social media platform. Document contains stray reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1) |
| MMFA_013770 | Withheld | E-mail | Kayla Gogarty <kgogarty@mediamatters.org> | Natalie Mathes <nmathes@mediamatters.org> | Proposals <proposals@mediamatters.org> x-Research <research@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> | | 4/28/2023 | TX Press Shield Laws | Communications between MMFA employees regarding the research and drafting strategy for a draft article about an unrelated social media platform. Document contains stray reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1) |
| MMFA_013771 | Withheld | E-mail | Natalie Mathes <nmathes@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> Content Editing <content@mediamatters.org> | Proposals <proposals@mediamatters.org> x-Research <research@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> | | 5/1/2023 | TX Press Shield Laws | Communications between MMFA employees regarding the research and drafting strategy for a draft article about an unrelated social media platform. Document contains stray reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1) |
| MMFA_013772 | Withheld | Word | John Knefel jknefel@mediamatters.org | | | | 5/9/2023 | TX Press Shield Laws | Comments, revisions, and citations for a draft article that is not at issue in this case about right-wing media's response to an active shooter. The final version of this article is public, titled "Right-wing media responded to news that the Allen, Texas, shooter is a neo-Nazi by calling it a psyop," and can be accessed on MMFA's website. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1) |

**Defendants' Amended June 28, 2024 Privilege Log**

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013773 | Withheld | Word | John Knefel jknefel@mediamatters.org | | | | 5/9/2023 | TX Press Shield Laws | Comments, revisions, and citations for a draft article that is not at issue in this case about right-wing media's response to an active shooter. The final version of this article is public, titled "Right-wing media responded to news that the Allen, Texas, shooter is a neo-Nazi by calling it a 'psyop'" and can be accessed on MMFA's website. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |
| MMFA_013774 | Withheld | Chat | Brett Abrams; Sergio Munoz <smunoz@mediamatters.or g>; Angelo Carusone <acarusone@mediamatters.or g>; Faith Branch <fbranch@mediamatters.or g>; John Whitehouse <jwhitehouse@mediamatter s.org>; Ben Dimiero <bdimiero@mediamatters. org>; Laura Keiter <lkeiter@mediamatters.org >; Andrea L. Alford <aalford@mediamatters.or g> | Brett Abrams, Cynthia Padera <cpadera@mediamatters.org>; Rebecca Sturtevant <rsturtevant@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org>; Hanne MacDonald <hmacdonald@mediamatters.org>; Casey Hargrave <chargrave@mediamatters.org>; Angelo Carusone <acarusone@mediamatters.org>; Faith Branch <fbranch@mediamatters.org>; Howard Pangelinan <hpangelinan@mediamatters.org>; Beth Cope <bcope@mediamatters.org>; Julie Millican <jmillican@mediamatters.org>; John Whitehouse <jwhitehouse@mediamatters.org>; Ben Dimiero <bdimiero@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>; Carly Novell <cnovell@mediamatters.org>; Andrea L. Alford <aalford@mediamatters.or | | | 5/9/2023 | TX Press Shield Laws | Communications between MMFA employees and third-party communications firm regarding media request from non-MMFA journalist seeking MMFA collaboration on media appearance to discuss speaking engagement by alt-right individuals. Document contains stray references to Musk on Twitter unrelated to research for the November and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |
| MMFA_013775 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatter s.org>; Faith Branch <fbranch@mediamatters.or g>; Carly Novell <cnovell@mediamatters.or g> | Cynthia Padera <cpadera@mediamatters.org>; Rebecca Sturtevant <rsturtevant@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org>; Hanne MacDonald <hmacdonald@mediamatters.org>; Casey Hargrave <chargrave@mediamatters.org>; Angelo Carusone <acarusone@mediamatters.org>; Faith Branch <fbranch@mediamatters.org>; Howard Pangelinan <hpangelinan@mediamatters.org>; Beth Cope <bcope@mediamatters.org>; Julie Millican <jmillican@mediamatters.org>; John Whitehouse <jwhitehouse@mediamatters.org>; Ben Dimiero <bdimiero@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>; Carly Novell <cnovell@mediamatters.org>; Andrea L. Alford <aalford@mediamatters.org> | | | 5/24/2023 | TX Press Shield Laws | Communications between MMFA employees and third-party communications firm regarding article pitches and media requests for articles not at issue in this litigation regarding various topics unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |
| MMFA_013776 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatter s.org>; Sergio Munoz <smunoz@mediamatters.org>; Faith Branch <fbranch@mediamatters.or g>; Julie Millican <jmillican@mediamatters.or g> | Cynthia Padera <cpadera@mediamatters.org>; Rebecca Sturtevant <rsturtevant@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org>; Hanne MacDonald <hmacdonald@mediamatters.org>; Casey Hargrave <chargrave@mediamatters.org>; Angelo Carusone <acarusone@mediamatters.org>; Faith Branch <fbranch@mediamatters.org>; Howard Pangelinan <hpangelinan@mediamatters.org>; Beth Cope <bcope@mediamatters.org>; Julie Millican <jmillican@mediamatters.org>; John Whitehouse <jwhitehouse@mediamatters.org>; Ben Dimiero <bdimiero@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>; Carly Novell <cnovell@mediamatters.org>; Andrea L. Alford <aalford@mediamatters.org>; safford@mediamatters.org> | | | 5/24/2023 | TX Press Shield Laws | Communications between MMFA employees and third-party communications firm regarding article pitch request for an article that is not at issue in this litigation unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |

10

Defendants' Amended June 28, 2024 Privilege Log

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013777 | Withheld | Email | Kayla Gogarty <kgogarty@mediamatters.org> | Natalie Mathes <nmathes@mediamatters.org> | Proposals <proposals@mediamatters.org> Pamela Vogel <pvogel@mediamatters.org> x-Research <research@mediamatters.org> Internal Intel <internalintel@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Carly Evans <cevans@mediamatters.org> LGBT Program <lgbt@mediamatters.org> | | 6/26/2023 | TX Press Shield Laws | Communications between MMFA employees pertaining to the research and drafting strategy for an article not at issue in this case about LGBTQ coverage on unrelated social media platform. Document contains stray reference to Musk or Twitter unrelated to research for the November and 17, 2023 articles or advertisement placement on Twitter.<br><br>**Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). |
| MMFA_013778-MMFA_013782 | Redacted | Email | Katherine Abughazaleh <kabughazaleh@mediamatters.org> | internalintel@mediamatters.org> Andrew Lawrence <alawrence@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Alicia Sadowski <asadowski@mediamatters.org> Helena Hind <hhind@mediamatters.org> Jane Lee <jlee@mediamatters.org> Isabella Corrao <icorrao@mediamatters.org> | | | 8/8/2023 | TX Press Shield Laws | Redacted text contains information on draft articles that are not at issue in this litigation and that do not reference or pertain to Musk or Twitter.<br><br>**Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.021(a)(1). |

11

Defendants' Amended June 28, 2024 Privilege Log

| MMFA_013783 | Withheld | Chat | Ben Van Bloem <bvanbloem@mediamatters.org>; Chloe Simon <csimon@mediamatters.org>; Shelby Jamerson <sjamerson@mediamatters.org>; Bobby Lewis <lewis@mediamatters.org> | Pete Tapis <ptapis@mediamatters.org>; Kayla Gogarty <kgogarty@mediamatters.org>; Jack Winstanley <jwinstanley@mediamatters.org>; Audrey Bowler <abowler@mediamatters.org>; Ben Van Bloem <bvanbloem@mediamatters.org>; Craig Harrington <charrington@mediamatters.org>; Payton Armstrong <parmstrong@mediamatters.org>; Brennan Suen <bsuen@mediamatters.org>; Sharon Kann <skann@mediamatters.org>; Zachary Pleat <zpleat@mediamatters.org>; Angelo Carusone <acarusone@mediamatters.org>; Gideon Taaffe <gtaaffe@mediamatters.org>; Natalie Mathes <nmathes@mediamatters.org>; Torri Lonergan <tlonergan@mediamatters.org>; Andrew Lawrence <alawrence@mediamatters.org>; Alex Paterson <apaterson@mediamatters.org>; Courtney Hagle <chagle@mediamatters.org>; Camden Carter <ccarter@mediamatters.org>; Andrea L. Alford <aalford@mediamatters.org>; Rachel Tardiff <rtardiff@mediamatters.org>; Ariel Churchill <achurchill@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org>; Noah Dowe <ndowe@mediamatters.org>; Chloe Simon <csimon@mediamatters.org>; Jasmine Geonzon <jgeonzon@mediamatters.org>; Madeline Peltz <mpeltz@mediamatters.org>; Sage Hodl <shodl@mediamatters.org>; Audrey McCabe <amccabe@mediamatters.org>; Jack Wheatley <jwheatley@mediamatters.org>; Beth Cope <bcope@mediamatters.org>; Julie Millican <jmillican@mediamatters.org>; Eric Kleefeld <ekleefeld@mediamatters.org>; Beatrice Mount <bmount@mediamatters.org>; Matt Gertz <mgertz@mediamatters.org>; Reed McMaster <rmcmaster@mediamatters.org>; Allison Fisher <afisher@mediamatters.org>; Hanna MacDonald <hmacdonald@mediamatters.org>; Casey Wexler <cwexler@mediamatters.org>; Ethan Collier <ecollier@mediamatters.org>; Brendan Karet <bkaret@mediamatters.org>; John Knefel <jknefel@mediamatters.org>; Justin Horowitz <jhorowitz@mediamatters.org>; John Whitehouse <jwhitehouse@mediamatters.org>; Ben Dimiero <bdimiero@mediamatters.org>; Alex Kaplan <akaplan@mediamatters.org>; Shelby Jamerson <sjamerson@mediamatters.org>; Mia Gingerich <mgingerich@mediamatters.org>; Bushra Sultana <bsultana@mediamatters.org>; Emma Mae Weber <eweber@mediamatters.org>; Lis Power <lpower@mediamatters.org>; Cynthia Padera <cpadera@mediamatters.org>; Pam Vogel <pvogel@mediamatters.org>; Eric Hananoki <ehananoki@mediamatters.org>; Chaire Hoard <choard@mediamatters.org>; Bobby Lewis <lewis@mediamatters.org>; Michael Eberhart <meberhart@mediamatters.org>; Jacina Hollins-Borges <jhollins-borges@mediamatters.org>; Olivia Little <olittle@mediamatters.org>; Jane Lee <jlee@mediamatters.org>; Alex Guiden <aguiden@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>; Tyler Monroe <tmonroe@mediamatters.org>; Evlondo Cooper <ecooper@mediamatters.org>; Jason Campbell <jcampbell@mediamatters.org> | 9/10/2023 | TX Press Shield Laws | Communications between MMFA employees discussing confidential tracking of news stories/headlines on a variety of subjects unrelated to articles or subject matter at issue in this litigation. The document contains a stray reference to Musk or Twitter unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.<br><br>**Texas Press Shield Law.** This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023(a)(1). |

12

App.524

**Defendants' Amended June 28, 2024 Privilege Log**

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013784 | Withheld | Chat | Rebecca Sturtevant <rsturtevant@mediamatters.org>; Carly Novell <cnovell@mediamatters.or g> | Cynthia Padera <cpadera@mediamatters.org>; Rebecca Sturtevant <rsturtevant@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org>; Hanne MacDonald <hmacdonald@mediamatters.org>; Casey Hargrave <chargrave@mediamatters.org>; Angelo Carusone <acarusone@mediamatters.org>; Howard Pangelinan <hpangelinan@mediamatters.org>; Beth Cope <bcope@mediamatters.org>; Julie Millican <jmillican@mediamatters.org>; John Whitehouse <jwhitehouse@mediamatters.org>; Ben Dimiero <bdimiero@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>; Carly Novell <cnovell@mediamatters.org>; Andrea L. Alford <aalford@mediamatters.org> | | | 11/1/2023 | TX Press Shield Laws | Communications between MMFA employees and third-party communications firm regarding article pitches and collaboration strategies with third parties for articles not at issue in this litigation regarding a variety of topics unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |
| MMFA_013785-MMFA_013787 | Redacted | Email | Alicia Sadowski <asadowski@mediamatter s.org> | Internal Intel <internalintel@mediamatters.org>; Andrew Lawrence <alawrence@mediamatters.org>; Helena Hind <hhind@mediamatters.org>; Jane Lee <jlee@mediamatters.org>; Katherine Abughazaleh <kabughazaleh@mediamatters.org>; Isabela Corrao <icorrao@mediamatters.org> | | | 11/2/2023 | TX Press Shield Laws | Redacted text contains information on draft articles that are not at issue in this litigation and that do not reference or pertain to Musk or Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |
| MMFA_013788 | Withheld | Chat | Sharon Kann <skann@mediamatters.org >; Carly Evans <cevans@mediamatters.or g> | Sharon Kann <skann@mediamatters.org>; Carly Evans <cevans@mediamatters.org> | | | 11/3/2023 | TX Press Shield Laws | Communications between MMFA employees pertaining to the research and drafting strategy of an article about advertiser spending on an unrelated social media platform by an organization not referenced in X's amended complaint or interrogatory responses. Document includes brief reference to organizations spending patterns across various platforms including Twitter. **Texas Press Shield Law**: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.(a)(1). |
| MMFA_013789 | Withheld | Chat | Victoria Deck <vdeck@mediamatters.org >; Sharon Kann <skann@mediamatters.org > | Victoria Deck <vdeck@mediamatters.org>; Sharon Kann <skann@mediamatters.org> | | | 11/20/2023 | Attny Client; WP | Communications between two MMFA employees containing legal advice given by counsel in litigation related to Mr. Hananoki's November 2 articles and corresponding counsel requests. **Attorney Client Privilege**: Communications reveal legal guidance given by counsel. **Work Product**: Communications reveal work product compiled at the requested of MMFA's counsel. |
| MMFA_013790 | Withheld | Chat | John Whitehouse <jwhitehouse@mediamatte rs.org>; Jason Campbell <jcampbell@mediamatters. org> | John Whitehouse <jwhitehouse@mediamatters.org>; Jason Campbell <jcampbell@mediamatters.org> | | | 11/27/2023 | Attny Client | Communications between MMFA employees containing legal advice given by counsel in litigation related to Mr. Hananoki's November 2 articles. **Attorney Client Privilege**: Communications reveal legal guidance given by counsel. |
| MMFA_013791 | Withheld | Chat | John Whitehouse <jwhitehouse@mediamatte rs.org>; Jason Campbell <jcampbell@mediamatters. org> | John Whitehouse <jwhitehouse@mediamatters.org>; Jason Campbell <jcampbell@mediamatters.org> | | | 11/30/2023 | Attny Client | Communications between MMFA employees containing legal advice given by counsel in litigation related to Mr. Hananoki's November 2 articles. **Attorney Client Privilege**: Communications reveal legal guidance given by counsel. |

13

Appx. 242

Defendants' Amended June 28, 2024 Privilege Log

| Bates Number | Status | Document Type | From/Author | To | CC | BCC | Date | Privilege Designation | Document Description |
|---|---|---|---|---|---|---|---|---|---|
| MMFA_013792 | Withheld | Chat | Bushra Sultana <bsultana@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org> | Bushra Sultana <bsultana@mediamatters.org>; Sergio Munoz <smunoz@mediamatters.org> | | | 12/11/2023 | Attny Client | Communications between MMFA employees containing legal advice given by counsel, including publishing instructions in response to litigation related to Mr. Hananoki's November 2023 article. **Attorney Client Privilege**: Communications regarding legal guidance given by counsel. |
| MMFA_013793 | Withheld | Chat | Sergio Munoz <smunoz@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org > | Sergio Munoz <smunoz@mediamatters.org>; Laura Keiter <lkeiter@mediamatters.org>nf | | | 2/6/2024 | Attny Client | Communications between MMFA employees containing legal advice given by counsel, including publishing instructions in response to litigation related to Mr. Hananoki's November 2023 article. **Attorney Client Privilege**: Communications regarding legal guidance given by counsel. |

14

App.526

TAB 12

**X Corp v. MMFA | Defendants' Second Privilege Log | September 6, 2024**

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043587, MMFA_043588 | Partially Privileged | Chat | Zachary Pleat <zpleat@mediamatters.org> <newxcombecox@mediamatters.org> Andrew Lawrence <alawrence@mediamatters.org> Madeline Peltz <mpeltz@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> Eric Hananoki <ehananoki@mediamatters.org> Olivia Little <olittle@mediamatters.org> Jason Campbell jcampbell@mediamatters.org | Pete Tapis <ptapis@mediamatters.org> Kayla Gogarty <kgogarty@mediamatters.org> Ilana Berger <iberger@mediamatters.org> Jack Winstanley <jwinstanley@mediamatters.org> Audrey Bowler <abowler@mediamatters.org> Ben Van Bloem <bvanbloem@mediamatters.org> Craig Harrington <charrington@mediamatters.org> Payton Armstrong <parmstrong@mediamatters.org> Brennan Suen <bsuen@mediamatters.org> Shawn Kann <skann@mediamatters.org> Zachary Pleat <zpleat@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Sophie Lawton <slawton@mediamatters.org> Gideon Taaffe <gtaaffe@mediamatters.org> Neva Newcombe <nnewcombecox@mediamatters.org> Natalie Mathes <nmathes@mediamatters.org> Toni Lonergan <tlonergan@mediamatters.org> Vesper Henry <vhenry@mediamatters.org> Andrew Lawrence <alawrence@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Janos Balazs <jbalazs@mediamatters.org> Courtney Hagle <chagle@mediamatters.org> Camden Carter <ccarter@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> Rob Savillo <rsavillo@mediamatters.org> Olivia Smith <osmith@mediamatters.org> Rachel Taroff <rtaroff@mediamatters.org> Ariel Churchill <achurchill@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Spencer Silva <ssilva@mediamatters.org> Noah Dowe <ndowe@mediamatters.org> Isabella Corzo <icorzo@mediamatters.org> Les Fernandez <lfernandez@mediamatters.org> Chloe Simon <csimon@mediamatters.org> Jasmine Geonzon <jgeonzon@mediamatters.org> Madeline Peltz <mpeltz@mediamatters.org> Sage Hooti <shooti@mediamatters.org> Harrison Ray <hray@mediamatters.org> Audrey McCabe <amccabe@mediamatters.org> Jack Wheatley <jwheatley@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> Eric Kleefeld <ekleefeld@mediamatters.org> Alyssa Tirrell <atirrell@mediamatters.org> Ari Drennen <adrennen@mediamatters.org> Beatrice Mount <bmount@mediamatters.org> Matt Gertz <mgertz@mediamatters.org> Reed Mcmaster <rmcmaster@mediamatters.org> Allison Fisher <afisher@mediamatters.org> Casey Wexler <cwexler@mediamatters.org> Ethan Collier <ecollier@mediamatters.org> Brendan Karet <bkaret@mediamatters.org> John Knefel <jknefel@mediamatters.org> Alicia Sadowski <asadowski@mediamatters.org> Justin Horowitz <jhorowitz@mediamatters.org> Gabriel Capuano <gcapuano@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Shelby Jamerson <sjamerson@mediamatters.org> Mia Gingerich <mgingerich@mediamatters.org> Bushra Sultana <bsultana@mediamatters.org> Emma Mae Weber <eweber@mediamatters.org> Lis Power <lpower@mediamatters.org> Cynthia Padera <cpadera@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org> Abbie Richards <aranchards@mediamatters.org> Pam Vogel <pvogel@mediamatters.org> Eric Kleefeld <ekleefeld@mediamatters.org> Charis Hoard <choard@mediamatters.org> Bobby Lewis <blewis@mediamatters.org> Michael Eberhart <meberhart@mediamatters.org> Jacina Hollins-borges <jhollins-borges@mediamatters.org> Helena Hind <hhind@mediamatters.org> Olivia Little <olittle@mediamatters.org> Jane Lee <jlee@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Tyler Monroe <tmonroe@mediamatters.org> Eolndo Cooper <ecooper@mediamatters.org> Carly Novell <cnovell@mediamatters.org> | | | 9/11/2023 | Texas Press Shield Laws | Redacted text includes communications between MMFA employees discussing potential headlines for articles on a variety of topics unrelated to Musk or Twitter.  Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). | |

1

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043589, MMFA_043590 | Partially Privileged | Word | cnovel@mediamatters.org | | | | 11/17/2023 | First Amendment Privilege | Redactions reveal the identity of non-MMFA journalists and their employees.<br><br>First Amendment Associational Privilege: Disclosure of the organizations' and journalists' partnership with MMFA could chill the organization's and MMFA's First Amendment speech and association rights. | |
| MMFA_043591 | Privileged | Email | Cynthia Padera <cpadera@mediamatters.org> | Ezra Reese <ereese@elias.law> Cynthia Padera <cpadera@mediamatters.org> | | Cynthia Padera <cpadera@mediamatters.org> | 11/17/2023 | Attorney-Client Privilege | Correspondence with counsel at Elias Law Group regarding organization response to potential lawsuit.<br><br>Attorney client: the communications reflect communications with counsel for the purpose of retaining legal advice. | Confidential |

2

App.529

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043592 | Privileged | Email | Cynthia Padera <cpadera@mediamatters.org> | Ezra Reese <ereese@elias.law> | | | 1/17/2023 | Attorney-Client Privilege | Correspondence with counsel at Elias Law Group regarding organization response to potential lawsuit. Attorney client: the communications reflect communications with counsel for the purpose of retaining legal advice. | Confidential |
| MMFA_043593 | Privileged | Email | Ezra Reese <ereese@elias.law> | Cynthia Padera <cpadera@mediamatters.org> | | | 1/17/2023 | Attorney-Client Privilege | Correspondence with counsel at Elias Law Group regarding organization response to potential litigation. Attorney client: the communications reflect communications with counsel for the purpose of retaining legal advice. | Confidential |

3

Appx. 247

App.530

Appx. 248

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043594 | Privileged | Chat | Angelo Carusone <acarusone@mediamatters.org> Cynthia Padera <cpadera@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> Pa'tron Johnson <pa-tron@mediamatters.org> Monica Rodriguez <mrodriguez@mediamatters.org> Jack Winstanley <jwinstanley@mediamatters.org> Audrey Bowler <abowler@mediamatters.org> Ben Van Boven <bvanboven@mediamatters.org> Payton Armstrong <parmstrong@mediamatters.org> Zachary Pleat <zpleat@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Gideon Taaffe <gtaaffe@mediamatters.org> Neva Newcombe <nnewcombe@mediamatters.org> Andrea Austria <aaustria@mediamatters.org> Torri Lonergan <tlonergan@mediamatters.org> James Balaza <jbalaza@mediamatters.org> Bobby Nayak <bnayak@mediamatters.org> Camden Carter <ccarter@mediamatters.org> operations <mm-operations@mediamatters.org> Adams Ngom <angom@mediamatters.org> Olivia Smith <osmith@mediamatters.org> Pilar Martinez <pmartinez@mediamatters.org> Noah Dowe <ndowe@mediamatters.org> Isabella Conlan <iconlan@mediamatters.org> John Kerr <jkerr@mediamatters.org> Leo Fernandez <lfernandez@mediamatters.org> Human Resources Representative <hr@mediamatters.org> Jasmine Geonzon <jgeonzon@mediamatters.org> Madeline Peltz <mpeltz@mediamatters.org> Harrison Ray <hray@mediamatters.org> Audrey McCabe <amccabe@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> Eric Kleefeld <ekleefeld@mediamatters.org> Ari Drennen <adrennen@mediamatters.org> Carlos Maza <cmaza@mediamatters.org> Matt Gertz <mgertz@mediamatters.org> Paul R. Edwards <redwards@mediamatters.org> Alicia Sadowski <asadowski@mediamatters.org> Justin Horowitz <jhorowitz@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Mia Gingerich <mgingerich@mediamatters.org> Emma Mae Weber <eweber@mediamatters.org> Lis Power <lpower@mediamatters.org> Cynthia Padera <cpadera@mediamatters.org> Chana Hoard <choard@mediamatters.org> Helena Hird <hhird@mediamatters.org> Olivia Little <olittle@mediamatters.org> Alex Gaiden <agaiden@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Pete Tejes <ptejes@mediamatters.org> Ilana Berger <iberger@mediamatters.org> Victoria Deck <vdeck@mediamatters.org> Craig Harrington <charrington@mediamatters.org> Brennan Suen <bsuen@mediamatters.org> Sharon Kann <skann@mediamatters.org> Casey Wexler <cwexler@mediamatters.org> Sophie Lawton <slawton@mediamatters.org> Kayli Tatken <ktatken@mediamatters.org> Howard Pangelinan <hpangelinan@mediamatters.org> Alex Novell <anovell@mediamatters.org> Natalie Mathes <nmathes@mediamatters.org> Vesper Henry <vhenry@mediamatters.org> Andrew Lawrence <alawrence@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Courtney Hagle <chagle@mediamatters.org> MMFA Help <help@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> Sean Morris <sean.morris@mediamatters.org> Laquinta Alexander <lalexander@mediamatters.org> Rachel Tardiff <rtardiff@mediamatters.org> Molly Butler <molly.butler@mediamatters.org> Axel Churchill <achurchill@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Beatrice Silva <bsilva@mediamatters.org> Camron Simon <csimon@mediamatters.org> Sage Hurd <shurd@mediamatters.org> Jack Wheatley <jwheatley@mediamatters.org> Alyssa Tirrell <atirrell@mediamatters.org> Beatrice Mount <bmount@mediamatters.org> Reed McMaster <rmcmaster@mediamatters.org> | | | 11/19/2023 | Attorney-Client Privilege | Internal communication regarding MMFA's response to litigation related to Mr. Hananoki's November 16 article. Attorney-Client Privilege: The communications reflect and pertain to legal guidance given by counsel. | Confidential |

4

App.531

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | <mcmaster@mediamatters.org>-Priya Singh <psingh@mediamatters.org>-Carly Evans <cevans@mediamatters.org>-John Knefel <jknefel@mediamatters.org>-Gabriel Capuano <gcapuano@mediamatters.org>-Ben Dimiero <bdimiero@mediamatters.org>-Alex Kaplan <akaplan@mediamatters.org>-Shelby Jamerson <sjamerson@mediamatters.org>-Bushra Sultana <bsultana@mediamatters.org>-Katherine Abughazaleh <kabughazaleh@mediamatters.org>-Anh Tran <atran@mediamatters.org>-Rebecca Sturtevant <rsturtevant@mediamatters.org>-Abbie Richards <arichards@mediamatters.org>-Pam Vogel <pvogel@mediamatters.org>-Eric Hananoki <ehananoki@mediamatters.org>-Jonathan harding IT <jharding@mediamatters.org>-Alana Oglesby <aoglesby@mediamatters.org>-Bobby Lewis <blewis@mediamatters.org>-Michael Eberhart <meberhart@mediamatters.org>-Jacina Hollins-Borges <jhollins-borges@mediamatters.org>-Jane Lee <jlee@mediamatters.org>-Tyler Monroe <tmonroe@mediamatters.org>-Eciando Cooper <ecooper@mediamatters.org>-Jason Campbell <jcampbell@mediamatters.org>-Carly Novell <cnovell@mediamatters.org>-James Bagley <jbagley@mediamatters.org> | | | | | | |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043595 | Privileged | Pdf | skurl@mediamatters.org | | | | | 11/21/2023 | Attorney-Client Privilege; Attorney Work Product | Memo created by MMFA regarding research related to the present litigation.<br><br>Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel.<br><br>Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

6

App.533

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043096 | Privileged | Chat | Lexi Ginsberg <lginsberg@mediamatters.org>;Brennan Suen <bsuen@mediamatters.org>;Priya Singh <psingh@mediamatters.org>;Andrea L. Alford <aalford@mediamatters.org> | Lexi Ginsberg <lginsberg@mediamatters.org>;Brennan Suen <bsuen@mediamatters.org>;Priya Singh <psingh@mediamatters.org>;Andrea L. Alford <aalford@mediamatters.org> | | | 1/27/2023 | Attorney-Client Privilege; Texas Press Shield Laws | Communications between MMFA employees regarding research staffing and strategy and containing legal advice given by counsel in litigation related to Mr. Hananoki's November 2023 articles.<br><br>Attorney Client Privilege: communications reveal legal guidance given by counsel.<br><br>Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). | Confidential |

App.534

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043697 | Privileged | Chat | Angelo Carusone <acarusone@mediamatters.org>·Emma Mae Weber <eweber@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org>·Pa'tton Johnson <pa-tton@mediamatters.org>·Monica Rodriguez <mrodriguez@mediamatters.org>·Jack Winstanley <jwinstanley@mediamatters.org>·Audrey Bowler <abowler@mediamatters.org>·Ben Van Boven <bvanboven@mediamatters.org>·Payton Armstrong <parmstrong@mediamatters.org>·Zachary Pleat <zpleat@mediamatters.org>·Angelo Carusone <acarusone@mediamatters.org>·Gideon Taaffe <gtaaffe@mediamatters.org>·Neva Newcombe <nnewcombe@mediamatters.org>·Andrea Austria <aaustria@mediamatters.org>·Torri Lonergan <tlonergan@mediamatters.org>·James Balaza <jbalaza@mediamatters.org>·Bobby Nayak <bnayak@mediamatters.org>·Camden Carter <ccarter@mediamatters.org>·Rob Savillo <rsavillo@mediamatters.org>·Adama Ngom <angom@mediamatters.org>·Olivia Smith <osmith@mediamatters.org>·Pilar Martinez <pmartinez@mediamatters.org>·Noah Dowe <ndowe@mediamatters.org>·Isabella Contar <icontar@mediamatters.org>·John Kerr <jkerr@mediamatters.org>·Leo Fernandez <lfernandez@mediamatters.org>·Human Resources Representative <hr@mediamatters.org>·Jasmine Geonzon <jgeonzon@mediamatters.org>·Madeline Peltz <mpeltz@mediamatters.org>·Harrison Ray <hray@mediamatters.org>·Audrey McCabe <amccabe@mediamatters.org>·Beth Cope <bcope@mediamatters.org>·Julie Millican <jmillican@mediamatters.org>·Eric Kleefeld <ekleefeld@mediamatters.org>·Ari Drennen <adrennen@mediamatters.org>·Carlos Maza <cmaza@mediamatters.org>·Matt Gertz <mgertz@mediamatters.org>·Paul R. Edwards <redwards@mediamatters.org>·Allison Fisher <afisher@mediamatters.org>·Hanne MacDonald <hmacdonald@mediamatters.org>·Casey Wexler <cwexler@mediamatters.org>·Ethan Collier <ecollier@mediamatters.org>·Brendan Karet <bkaret@mediamatters.org>·Lexi Ginsberg <lginsberg@mediamatters.org>·Alicia Sadowski <asadowski@mediamatters.org>·Justin Horowitz <jhorowitz@mediamatters.org>·John Whitehouse <jwhitehouse@mediamatters.org>·Mia Gingerich <mgingerich@mediamatters.org>·Emma Mae Weber <eweber@mediamatters.org>·Lis Power <lpower@mediamatters.org>·Cynthia Padera <cpadera@mediamatters.org>·Chana Huard <chuard@mediamatters.org>·Helena Hird <hhird@mediamatters.org>·Olivia Little <olittle@mediamatters.org>·Pete Tsipis <ptsipis@mediamatters.org>·Alex Gulden <agulden@mediamatters.org>·Laura Keiter <lkeiter@mediamatters.org>·Craig Harrington <charrington@mediamatters.org>·Brendan Buen <bbuen@mediamatters.org>·Victoria Deck <vdeck@mediamatters.org>·Casey Hargrave <chargrave@mediamatters.org>·Sharon Kann <skann@mediamatters.org>·Sophie Lawton <slawton@mediamatters.org>·Howard Pangelinan <hpangelinan@mediamatters.org>·Keel Teitleen <kteitleen@mediamatters.org>·Alex Novell <anovell@mediamatters.org>·Vesper Henry <vhenry@mediamatters.org>·Natalie Mathes <nmathes@mediamatters.org>·Andrew Lawrence <alawrence@mediamatters.org>·Courtney Hagle <chagle@mediamatters.org>·Alex Paterson <apaterson@mediamatters.org>·Andrea L. Alford <aalford@mediamatters.org>·MMFA Help <help@mediamatters.org>·Sean Morris <sean.morris@mediamatters.org>·Laquinta Alexander <lalexander@mediamatters.org>·Rachel Tardiff <rtardiff@mediamatters.org>·Molly Butler <molly.butler@mediamatters.org>·Axel Churchill <achurchill@mediamatters.org>·Sergio Munoz <smunoz@mediamatters.org>·Sage Silva <ssilva@mediamatters.org>·Chloe Simon <csimon@mediamatters.org>·Jack Wheatley <jwheatley@mediamatters.org>·Alyssa Tirrell <atirrell@mediamatters.org>·Beatrice Mount <bmount@mediamatters.org>·Reed McMaster <rmcmaster@mediamatters.org> | | | 11/20/2023 | Attorney-Client Privilege | Internal communication regarding MMFA's response to litigation related to Mr. Hananoki's November 16 article. Attorney-Client Privilege: The communications reflect and pertain to legal guidance given by counsel. | Confidential |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | <mcmaster@mediamatters.org> Priya Singh<br><psingh@mediamatters.org> Carly Evans <cevans@mediamatters.org> John<br>Knefel <jknefel@mediamatters.org> Gabriel Capuano<br><gcapuano@mediamatters.org> Ben Dimiero<br><bdimiero@mediamatters.org> Alex Kaplan<br><akaplan@mediamatters.org> Shelby Jamerson<br><sjamerson@mediamatters.org> Busma Sultana<br><bsultana@mediamatters.org> Katherine Abughazaleh<br><kabughazaleh@mediamatters.org> Anh Tran<br><atran@mediamatters.org> Rebecca Sturtevant<br><rsturtevant@mediamatters.org> Abbie Richards<br><arichards@mediamatters.org> Pam Vogel <pvogel@mediamatters.org> Eric<br>Hananoki <ehananoki@mediamatters.org> Johnathan harting IT<br><jharding@mediamatters.org> Alana Oglesby<br><aoglesby@mediamatters.org> Bobby Lewis<br><blewis@mediamatters.org> Michael Eberhart<br><meberhart@mediamatters.org> Jacina Hollins-Borges <jhollins-<br>borges@mediamatters.org> Jane Lee <jlee@mediamatters.org> Tyler Monroe<br><tmonroe@mediamatters.org> Eleivovio Cooper<br><ecooper@mediamatters.org> Jason Campbell<br><jcampbell@mediamatters.org> Carly Novell<br><cnovell@mediamatters.org> James Bagley <jbagley@mediamatters.org> | | | | | | |

9

App.536

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043598 | Partially Privileged | Chat | Andrea L. Alford <aalford@mediamatters.org> | Lexi Ginsberg <lginsberg@mediamatters.org> Brennan Suen <bsuen@mediamatters.org> Priya Singh <psingh@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> | | | 11/30/2023 | First Amendment Privilege; Texas Press Shield Laws | Redacted confidential discussion about avenues of potential research and advocacy. Redacted portion does not reference or pertain to Musk or Twitter.  Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1).  First Amendment Associational Privilege: The redacted portion contains internal communications concerning research and advocacy strategy. | |

10

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043599_MMFA_043600 | Partially Privileged | Chat | Lexi Ginsberg <lginsberg@mediamatters.org>·Brennan Suen <bsuen@mediamatters.org>·Priya Singh <psingh@mediamatters.org>·Andrea L. Alford <aalford@mediamatters.org> | Lexi Ginsberg <lginsberg@mediamatters.org>·Brennan Suen <bsuen@mediamatters.org>·Priya Singh <psingh@mediamatters.org>·Andrea L. Alford <aalford@mediamatters.org> | | | 12/1/2023 | First Amendment Privilege; Texas Press Shield Laws | Redacted confidential discussion about avenues of potential research and advocacy. Redacted portion does not reference or pertain to Musk or Twitter.<br><br>Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1).<br><br>First Amendment Privilege: The redacted portion contains internal communications concerning research and advocacy strategy. | |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043601 | Privileged | Chat | Angelo Carusone <acarusone@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> Pa'tron Johnson <pa-tron@mediamatters.org> Monica Rodriguez <mrodriguez@mediamatters.org> Jack Winstanley <jwinstanley@mediamatters.org> Audrey Bowler <abowler@mediamatters.org> Ben Van Bloem <bvanbloem@mediamatters.org> Payton Armstrong <parmstrong@mediamatters.org> Zachary Pleat <zpleat@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Gideon Taaffe <gtaaffe@mediamatters.org> Neva Newcombe <nnewcombe@mediamatters.org> Andrea Austria <aaustria@mediamatters.org> Torri Lonergan <tlonergan@mediamatters.org> James Balaza <jbalaza@mediamatters.org> Bobby Nayak <bnayak@mediamatters.org> operations <operations@medi-amatters.org> Adama Ngom <angom@mediamatters.org> Olivia Smith <osmith@mediamatters.org> Pilar Martinez <pmartinez@mediamatters.org> Noah Dowe <ndowe@mediamatters.org> Isabella Conte <iconte@mediamatters.org> John Kerr <jkerr@mediamatters.org> Leo Fernandez <lfernandez@mediamatters.org> Human Resources Representative <hr@mediamatters.org> Jasmine Geonzon <jgeonzon@mediamatters.org> Madeline Peltz <mpeltz@mediamatters.org> Harrison Ray <hray@mediamatters.org> Audrey McCabe <amccabe@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> Eric Kleefeld <ekleefeld@mediamatters.org> Ari Drennen <adrennen@mediamatters.org> Carlos Maza <cmaza@mediamatters.org> Matt Gertz <mgertz@mediamatters.org> Paul R. Edwards <redwards@mediamatters.org> Hanne MacDonald <hmacdonald@mediamatters.org> Casey Wexler <cwexler@mediamatters.org> Ethan Collier <ecollier@mediamatters.org> Brendan Karet <bkaret@mediamatters.org> Lexi Ginsberg <lginsberg@mediamatters.org> Alicia Sadowski <asadowski@mediamatters.org> Justin Horowitz <jhorowitz@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Mia Gingerich <mgingerich@mediamatters.org> Emma Mae Weber <eweber@mediamatters.org> Cynthia Padera <cpadera@mediamatters.org> Charis Hoard <choard@mediamatters.org> Helena Hird <hhird@mediamatters.org> Olivia Little <olittle@mediamatters.org> Alex Gulden <agulden@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Pete Tapia <ptapia@mediamatters.org> Ilana Berger <iberger@mediamatters.org> Victoria Deck <vdeck@mediamatters.org> Craig Harrington <charrington@mediamatters.org> Brendan Suen <bsuen@mediamatters.org> Sharon Kann <skann@mediamatters.org> Casey Hargrave <chargrave@mediamatters.org> Sophie Lawton <slawton@mediamatters.org> Kiel Telleen <ktelleen@mediamatters.org> Howard Pangelinan <hpangelinan@mediamatters.org> Alex Novell <anovell@mediamatters.org> Natalie Mathes <nmathes@mediamatters.org> Vesper Henry <vhenry@mediamatters.org> Andrew Lawrence <alawrence@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Courtney Hagle <chagle@mediamatters.org> MMFA Help <help@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> Sean Morris <sean.morris@mediamatters.org> Laqunia Alexander <lalexander@mediamatters.org> Rachel Tardiff <rtardiff@mediamatters.org> Molly Butler <molly.butler@mediamatters.org> Axel Churchill <achurchill@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Sergio Silva <ssilva@mediamatters.org> Chloe Simon <csimon@mediamatters.org> Sage Huot <shuot@mediamatters.org> Jack Wheatley <jwheatley@mediamatters.org> Alysaa Trivel <atrivel@mediamatters.org> Beatrice Mount <bmount@mediamatters.org> Reed McMaster <rmcmaster@mediamatters.org> | | | 12/1/2023 | Attorney-Client Privilege | Internal MMFA communication regarding internal litigation strategy related to Mr. Hanania's November 16 article. Attorney-Client Privilege: The communications reflect and pertain to legal guidance given by counsel. | Confidential |

12

Appx. 256

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | <mcmaster@mediamatters.org> Priya Singh <psingh@mediamatters.org> Carly Evans <cevans@mediamatters.org> John Knefel <jknefel@mediamatters.org> Gabriel Capuano <gcapuano@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> Shelby Jamerson <sjamerson@mediamatters.org> Bushra Sultana <bsultana@mediamatters.org> Katherine Abughazaleh <kabughazaleh@mediamatters.org> Anh Tran <atran@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org> Abbie Richards <arichards@mediamatters.org> Pam Vogel <pvogel@mediamatters.org> Eric Hananoki <ehananoki@mediamatters.org> Jonathan Harding IT <jharding@mediamatters.org> Alana Oglesby <aoglesby@mediamatters.org> Bobby Lewis <blewis@mediamatters.org> Michael Eberhart <meberhart@mediamatters.org> Tyler Monroe <tmonroe@mediamatters.org> Jacina Hollins-Borges <jhollins-borges@mediamatters.org> Jane Lee <jlee@mediamatters.org> Elorido Cooper <ecooper@mediamatters.org> Jason Campbell <jcampbell@mediamatters.org> Carly Novell <cnovell@mediamatters.org> James Bagley <jbagley@mediamatters.org> | | | | | | |

13

App.540

Appx. 258

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043602 | Privileged | Chat | Angelo Carusone <acarusone@mediamatters.org> Emma Mae Weber <eweber@mediamatters.org> Pam Vogel <pvogel@mediamatters.org> | Kayla Gogarty <kgogarty@mediamatters.org> Payton Johnson <pajohnson@mediamatters.org> Jack Winstanley <jwinstanley@mediamatters.org> Audrey Bowler <abowler@mediamatters.org> Ben Van Boven <bvanboven@mediamatters.org> Payton Armstrong <parmstrong@mediamatters.org> Zachary Pleat <zpleat@mediamatters.org> Angelo Carusone <acarusone@mediamatters.org> Gideon Taaffe <gtaaffe@mediamatters.org> Neva Newcombe <nnewcombe@mediamatters.org> Andrea Austria <aaustria@mediamatters.org> Torri Lonergan <tlonergan@mediamatters.org> James Balaza <jbalaza@mediamatters.org> Bobby Nayak <bnayak@mediamatters.org> Adama Ngom <angom@mediamatters.org> Olivia Smith <osmith@mediamatters.org> Pilar Martinez <pmartinez@mediamatters.org> Noah Dowe <ndowe@mediamatters.org> Isabella Cortan <icortan@mediamatters.org> John Kerr <jkerr@mediamatters.org> Leo Fernandez <lfernandez@mediamatters.org> Human Resources Representative <hr@mediamatters.org> Jasmine Geonzon <jgeonzon@mediamatters.org> Madeline Peltz <mpeltz@mediamatters.org> Harrison Ray <hray@mediamatters.org> Audrey McCabe <amccabe@mediamatters.org> Beth Cope <bcope@mediamatters.org> Julie Millican <jmillican@mediamatters.org> Eric Kleefeld <ekleefeld@mediamatters.org> Ari Drennen <adrennen@mediamatters.org> Carlos Maza <cmaza@mediamatters.org> Matt Gertz <mgertz@mediamatters.org> Paul R. Edwards <redwards@mediamatters.org> Brendan Karet <bkaret@mediamatters.org> Lexi Ginsberg <lginsberg@mediamatters.org> Alicia Sadowski <asadowski@mediamatters.org> Justin Horowitz <jhorowitz@mediamatters.org> John Whitehouse <jwhitehouse@mediamatters.org> Mia Gingerich <mgingerich@mediamatters.org> Emma Mae Weber <eweber@mediamatters.org> Lis Power <lspower@mediamatters.org> Cynthia Padera <cpadera@mediamatters.org> Chana Hozel <chozel@mediamatters.org> Helena Hird <hhird@mediamatters.org> Olivia Little <olittle@mediamatters.org> Alex Gaiten <agaiten@mediamatters.org> Laura Keiter <lkeiter@mediamatters.org> Pete Tapia <ptapia@mediamatters.org> Ilana Berger <iberger@mediamatters.org> Victoria Deck <vdeck@mediamatters.org> Craig Harrington <charrington@mediamatters.org> Brendan Buen <bbuen@mediamatters.org> Sharon Kann <skann@mediamatters.org> Casey Hargrave <chargrave@mediamatters.org> Sophie Lawton <slawton@mediamatters.org> Howard Pangelinan <hpangelinan@mediamatters.org> Alex Novell <anovell@mediamatters.org> Natalie Mathes <nmathes@mediamatters.org> Vesper Henry <vhenry@mediamatters.org> Andrew Lawrence <alawrence@mediamatters.org> Alex Paterson <apaterson@mediamatters.org> Courtney Hagle <chagle@mediamatters.org> MMFA Help <help@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> Sean Morris <sean.morris@mediamatters.org> Laquinta Alexander <lalexander@mediamatters.org> Rachel Turoff <rturoff@mediamatters.org> Molly Butler <molly.butler@mediamatters.org> Axel Churchill <achurchill@mediamatters.org> Sergio Munoz <smunoz@mediamatters.org> Spencer Silva <ssilva@mediamatters.org> Simon <csimon@mediamatters.org> Sage Hazel <shazel@mediamatters.org> Jack Wheatley <jwheatley@mediamatters.org> Alyssa Tirrell <atirrell@mediamatters.org> Beatrice Mount <bmount@mediamatters.org> Reed McMaster <rmcmaster@mediamatters.org> | | | 12/1/2023 | Attorney-Client Privilege | Internal MMFA communication regarding internal litigation strategy related to Mr. Hanania's November 16 article. Attorney Client Privilege: Communications reveal decision behind seeking legal guidance and communications with counsel in present case. | Confidential |

14

App.541

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | <rmcmaster@mediamatters.org> Priya Singh <psingh@mediamatters.org> Carly Evans <cevans@mediamatters.org> John Knefel <jknefel@mediamatters.org> Gabriel Capuano <gcapuano@mediamatters.org> Ben Dimiero <bdimiero@mediamatters.org> Alex Kaplan <akaplan@mediamatters.org> Shelby Jamerson <sjamerson@mediamatters.org> Bushra Sultana <bsultana@mediamatters.org> Katherine Abughazaleh <kabughazaleh@mediamatters.org> Anh Tran <atran@mediamatters.org> Rebecca Sturtevant <rsturtevant@mediamatters.org> Abbie Richards <arichards@mediamatters.org> Pam Vogel <pvogel@mediamatters.org> Eric Hananoki <ehananoki@mediamatters.org> Jonathan harding IT <jharding@mediamatters.org> Alana Oglesby <aoglesby@mediamatters.org> Bobby Lewis <flewis@mediamatters.org> Michael Eberhart <meberhart@mediamatters.org> Jacina Hollins-Borges <jhollins-borges@mediamatters.org> Jane Lee <jlee@mediamatters.org> Tyler Monroe <tmonroe@mediamatters.org> Elorido Cooper <ecooper@mediamatters.org> Jason Campbell <jcampbell@mediamatters.org> Carly Novell <cnovell@mediamatters.org> James Bagley <jbagley@mediamatters.org> | | | | | | |

App.542

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043603 | Privileged | Chat | Andrea L. Alford <aalford@mediamatters.org> | Lexi Ginsberg <lginsberg@mediamatters.org> Brennan Suen <bsuen@mediamatters.org> Priya Singh <psingh@mediamatters.org> Andrea L. Alford <aalford@mediamatters.org> | | | 12/11/2023 | First Amendment Privilege; Attorney-Client Privilege; Texas Press Shield Laws | Communications between MMFA employees regarding whether to publish an article about abortion. The communication contains legal advice given by counsel, including publishing instructions in response to litigation related to Mr. Hananoki's November 2023 articles. Attorney-Client Privilege: Communications reveal legal guidance given by counsel. Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). First Amendment Associational Privilege: This document contains internal communications concerning research and advocacy strategy. | Confidential |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043604 | Privileged | Email | <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 261

17

App.544

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043605 | Privileged | Email | <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043606 | Privileged | Email | <angelo.carusone@mediamatters.org> | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 263

19

App.546

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043607 | Privileged | Email | <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043608 | Privileged | Email | \<angelo.carusone@mediamatters.org\> | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege. The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

App.548

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043609 | Privileged | Email | <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611-13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

22

App.549

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043610 | Privileged | Email | | <angelo.carusone@mediamatters.org> | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043611 | Privileged | Email | <angelo.carusone@mediamatters.org> | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

24

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043612 | Privileged | Email | | <angelo.carusone@mediamatters.org> | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 269

25

App.552

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043613 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

26

App.553

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043614 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

App.554

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043615 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 272

28

App.555

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043616 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 273

29

App.556

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043617 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043616 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043619 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043620 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–12 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 277

33

App.560

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043621 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611-13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043622 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

App.562

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043623 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611-13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

App.563

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043624 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 281

37

App.564

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043625 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043626 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043627 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 284

40

App.567

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043628 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043629 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

42

App.569

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043630 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043631 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043632 | Privileged | Email | | <angelo.carusone@mediamatters.org> | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donors as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorney Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043633 | Privileged | Email | | angelo.carusone@mediamatters.org | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege. The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

46

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043634 | Privileged | Email | | <angelo.carusone@mediamatters.org> | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege. The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 291

47

App.574

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043635 | Privileged | Email | | <angelo.carusone@mediamatters.org> | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donors as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 292

48

App.575

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043636 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

49

App.576

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043637 | Privileged | Email | | Angelo Carusone <angelo.carusone@mediamatters.org> | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043638 | Privileged | Email | | angelo.carusone@mediamatters.org | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043639 | Privileged | Email | | <angelo.carusone@mediamatters.org> | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donors as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043640 | Privileged | Email | | <angelo.carusone@mediamatters.org> | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043641 | Privileged | Email | | angelo.carusone@mediamatters.org | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorney's Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043642 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/29/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043643 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/28/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 300

56

App.583

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043644 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 301

App.584

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043645 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043646 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/29/2023 | First Amendment Privilege | Email thread with prospective non-Texas donors as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043647 | Privileged | Email | | Angelo Carusone <angelo.carusone@mediamatters.org> | | | 12/29/2023 | First Amendment Privilege | Email thread with prospective non-Texas donors as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043646 | Privileged | Email | | angelo.carusone@mediamatters.org | | | 12/29/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.

First Amendment Privilege. The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043649 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donors as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 306

62

App.589

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043650 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/29/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611-13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 307

63

App.590

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043651 | Privileged | Email | | \<angelo.carusone@mediamatters.org\> | | | 12/30/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043652 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 309

65

App.592

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043653 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor as part of end-of-year mass email outreach seeking general funding for MMFA.

First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partner protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043654 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/30/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611-13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043655 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/30/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611-13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

68

App.595

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043656 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA.<br><br>First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

69

App.596

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043657 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/30/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611-13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043658 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043659 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

Appx. 316

72

App.599

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043660 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043661 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611-13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

74

App.601

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043662 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

App.602

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043663 | Privileged | Email | Angelo Carusone <angelo.carusone@mediamatters.org> | | | | | 12/20/2023 | First Amendment Privilege | Email thread with prospective non-Texas donor and development firm as part of end-of-year mass email outreach seeking general funding for MMFA. First Amendment Privilege: The document contains sensitive financial and associational information, as well as communications pertaining to the organization's mission and strategy with third-party partners protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights. See, e.g., Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 611–13 (2021); NAACP v. State of Ala. ex rel. Patterson, 357 U.S. 449, 460 (1958); Whole Woman's Health v. Smith, 896 F.3d 362, 372 (5th Cir. 2018); Perry v. Schwarzenegger, 591 F.3d 1147, 1160 (9th Cir. 2010). | Attorneys Eyes Only |

App.603

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

Appx. 321

77

App.604

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043664 | Privileged | Word | bdimiero@mediamatters.org | | | | | 1/3/2024 | Attorney-Client Privilege; Attorney Work Product | Memo created by MMFA regarding research related to the present litigation.<br><br>Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel.<br><br>Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

78

Appx. 322

App.605

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043665 | Privileged | Word | kjpogahy@mediamatters.org | | | | | 12/15/2023 | Attorney-Client Privilege; Attorney Work Product | Memo created by MMFA regarding research related to the present litigation.<br><br>Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel.<br><br>Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

App.606

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043666 | Privileged | Word | kjogaity@mediamatters.org | | | | | 12/15/2023 | Attorney-Client Privilege; Attorney Work Product | Memo created by MMFA regarding research related to the present litigation. Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel. Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

Appx. 324

80

App.607

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043667 | Privileged | Word | kjogarty@mediamatters.org | | | | | 11/28/2023 | Attorney Work Product | Memo created by MMFA regarding research related to the present litigation.<br><br>Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel.<br><br>Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

81

Appx. 325

App.608

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043668 | Privileged | Word | kgogarty@mediamatters.org | | | | | 11/28/2023 | Attorney-Client Privilege; Attorney Work Product | Memo created by MMFA regarding research related to the present litigation. Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel. Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043669 | Privileged | Word | kjogaaty@mediamatters.org | | | | | 11/28/2023 | Attorney Work Product | Memo created by MMFA regarding research related to the present litigation.<br><br>Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel.<br><br>Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043870-MMFA_043893 | Partially Privileged | Word | cnovell@mediamatters.org | | | | 1/2/2024 | Texas Press Shield Laws | Redacted portions reveal draft summaries of Media Matters's reporting highlights regarding a variety of topics unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.<br><br>Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). | |

Appx. 328

84

App.611

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043694-MMFA_043717 | Partially Privileged | Word | cnovell@mediamatters.org | | | | | 1/2/2024 | Texas Press Shield Laws | Redacted portions reveal draft summaries of Media Matters's reporting highlights regarding a variety of topics unrelated to research for the November 16 and 17, 2023 articles or advertisement placement on Twitter.<br><br>Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1). | |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043716 - MMFA_043727 | Partially Privileged | Word | vdick@mediamatters.org | | | | | 10/25/2023 | First Amendment Privilege; Texas Press Shield Laws | Document contains summary of MMFA website traffic. Redacted portions do not reference or pertain to Musk or Twitter.<br><br>Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1).<br><br>First Amendment Associational Privilege: The redacted portion contains internal communications concerning strategy for increasing news article traffic and reach. | |

Appx. 330

86

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043728 | Privileged | Word | | | | | 6/4/2024 | Attorney-Client Privilege; Attorney Work Product | Word document created by MMFA compiling outreach to MMFA following the present litigation. The document was compiled at the direction of counsel.<br><br>Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel.<br><br>Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043729 | Privileged | Word | | | | | 6/4/2024 | First Amendment Privilege; Texas Press Shield Laws | Internal memorandum documenting potential goals and initiatives across all of MMFA's departments, not all of which was ultimately pursued.<br><br>Texas Press Shield Law: This document reflects information obtained or prepared while acting as a journalist. Tex. Civ. Prac. and Rem. Code § 22.023 (a)(1).<br><br>First Amendment Associational Privilege: This document contains internal communications concerning strategy and messaging. | Confidential |

Appx. 332

88

App.615

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043730 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from non-MMFA employee that collaborates with MMFA on advocacy and journalistic projects. First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalist's First Amendment speech and association rights. | |
| MMFA_043731 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from and between non-MMFA employees that collaborate with MMFA on advocacy and journalistic projects. First Amendment Privilege: The disclosure of the individuals' identity would chill MMFA and the journalist's First Amendment speech and association rights. | |

Appx. 333

89

App.616

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043732 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from and between non-MMFA employees that collaborate with MMFA on advocacy and journalistic projects. First Amendment Privilege. The disclosure of the individuals' identity would chill MMFA and the journalists' First Amendment speech and association rights. | |
| MMFA_043733 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from and between non-MMFA employees that collaborate with MMFA on advocacy and journalistic projects. First Amendment Privilege. The disclosure of the individuals' identity would chill MMFA and the journalists' First Amendment speech and association rights. | |

Appx. 334

90

App.617

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043734 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from and between non-MMFA employees that collaborate with MMFA on advocacy and journalistic projects. First Amendment Associational Privilege: The disclosure of the individuals' identity would chill MMFA and the journalists' First Amendment speech and association rights. | |
| MMFA_043735 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communication from non-MMFA employee that collaborates with MMFA on advocacy and journalistic projects. First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalists' First Amendment speech and association rights. | |

Appx. 335

91

App.618

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043736 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from and between non-MMFA employees that collaborate with MMFA on advocacy and journalistic projects.<br><br>First Amendment Associational Privilege: The disclosure of the individuals' identity would chill MMFA and the journalists' First Amendment speech and association rights. | |
| MMFA_043737 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from and between non-MMFA employees that collaborate with MMFA on advocacy and journalistic projects.<br><br>First Amendment Associational Privilege: The disclosure of the individuals' identity would chill MMFA and the journalists' First Amendment speech and association rights. | |

Appx. 336

92

App.619

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043738 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from non-MMFA employee that collaborates with MMFA on advocacy and journalistic projects.<br><br>First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalist's First Amendment speech and association rights. | |
| MMFA_043739 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications with non-MMFA employee that collaborates with MMFA on advocacy and journalistic projects.<br><br>First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalist's First Amendment speech and association rights. | |

Appx. 337

93

App.620

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043740 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from non-MMFA employee that collaborates with MMFA on advocacy and journalistic projects. First Amendment Privilege: The disclosure of the individual's identity would chill MMFA and the journalist's First Amendment speech and association rights. | |
| MMFA_043741 | Partially Privileged | Image | | | | | 4/3/2024 | First Amendment Privilege | Communications from and between non-MMFA employees that collaborate with MMFA on advocacy and journalistic projects. First Amendment Associational Privilege: The disclosure of the individual identity would chill MMFA and the journalists' First Amendment speech and association rights. | |

Appx. 338

94

App.621

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043742 | Privileged | Pdf | | | | | 4/5/2024 | Attorney-Client Privilege; Attorney Work Product | Memo created by MMFA regarding research related to the present litigation.<br><br>Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel.<br><br>Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

App.622

| Bates Number | Status | Document Type | From | To | CC | BCC | Date | Privilege Designation | Privilege Description | Confidential |
|---|---|---|---|---|---|---|---|---|---|---|
| MMFA_043743 | Privileged | Pdf | | | | | 4/5/2024 | Attorney-Client Privilege; Attorney Work Product | Memo created by MMFA regarding research related to the present litigation.<br><br>Attorney-Client Privilege: The document reflects and pertains to legal guidance given by counsel.<br><br>Attorney Work Product: Memo was created at the direction of counsel for use in the present litigation and reflects attorney mental impressions, legal theories, and strategy. | Confidential |

Appx. 340

96

App.623

# Doc. 98

## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 4:23-cv-01175-O** |
| | § | |
| MEDIA MATTERS FOR AMERICA, et al., | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

### ORDER

Before the Court are Plaintiff's Motion to Compel, brief in support, and appendix (ECF Nos. 83–85); Defendants' Response, appendix, and additional attachments in opposition (ECF Nos. 87–89); and Plaintiff's Reply (ECF No. 91). After reviewing the motion, brief in support, response, and reply, the Court finds the following Requests for Production ("RFP") 17, 18, 21, and 35 remain in dispute based on the briefing. For the following reasons, the Court finds that the Motion should be **GRANTED**.

### I.    BACKGROUND[1]

On November 20, 2023, X Corp. ("Plaintiff" or "X") brought this action against Media Matters, Eric Hananoki, and Angelo Carusone (collectively, "Defendants") for interference with contract, business disparagement, and interference with prospective economic advantage. Plaintiff alleges that Defendants knowingly and maliciously fabricated side-by-side images of various advertisers' posts on Plaintiff's social media platform, X, depicted next to neo-Nazi or other

---

[1] Unless otherwise indicated, the Court's recitation of the facts is taken from Plaintiff's Amended Complaint. *See* Pl.'s Am. Compl., ECF No. 37.

App.625

extremist content, and portrayed these designed images as if they were what the average user experiences on X. Plaintiff asserts that Defendants proceeded with this course of action in an effort to deceptively portray X as a social media platform dominated by neo-Nazism and anti-Semitism, and thereby alienate major advertisers, publishers, and users from X, intending to harm it.

The parties previously presented a discovery dispute for resolution. The Court granted in part and denied in part the issues presented in that discovery dispute.[2] At that time, the Court deferred ruling on requests for production numbers 17, 18, 21, and 35 and the accompanying First Amendment privilege concerns "until such a protocol is established and responsive documents have been identified."[3] The Court ordered Defendants to log any responsive documents as privileged and deliver the privilege log to Plaintiff no later than June 14, 2024.[4] Once these steps were completed, the parties could pursue a motion to compel, if needed. These issues remain in dispute and are now presented by Plaintiff's instant motion.

## II.     LEGAL STANDARDS

### A.  Discovery Objections

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. The Rule provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). A party must assert privilege explicitly and in detail, avoiding boilerplate privilege assertions. FED. R. CIV. P. 26(b)(5)(A)(i)–(ii). "[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the

---

[2] June 6, 2024, Order, ECF No. 65.
[3] *Id.* at 2.
[4] *Id.*

App.626

privilege claim." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (alteration in original) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982)).

Federal Rule of Civil Procedure 37 controls motions to compel discovery or disclosure. "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37. After a party has attempted in good faith to obtain discovery without court action, Rule 37 allows a motion to compel when a party fails to answer or respond to a request for production under Rule 34, provided such discovery requests are within the scope of Rule 26(b). FED. R. CIV. P 37(a)(3). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A response to a Rule 34 request "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons" for each item or category. FED. R. CIV. P.34(b)(2)(B). The 2015 revision of the Federal Rules precludes the use of boilerplate objections. *See* FED. R. CIV. P. 26(b) advisory committee's notes to 2015 amendment.

"[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). The failure to make an explicit, timely objection based on privilege waives the objection. 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L MARCUS, FEDERAL PRACTICE AND PROCEDURES § 2213 (3d ed. 2024). "Even where the responding party has timely served some objections to a Rule 34(a) request, this waiver extends to any grounds not

stated in a timely objection." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 283–84 (N.D. Tex. 2017) (citing FED. R. CIV. P. 34(b)(2)(B)).

When a party withholding documents "fail[s] to provide a privilege log" and "fail[s] to properly substantiate [its] objections by submitting evidence necessary to sustain its burden of proof to [its] objections," privilege is waived. *Johnston v. Transocean Offshore Deepwater Drilling, Inc.*, No. CV 18-491, 2019 WL 1558040, at *2 (E.D. La. Apr. 10, 2019); *see also Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. SA-07-CA-996-OLG, 2009 WL 10713559, at *3 (W.D. Tex. Aug. 11, 2009) (stating that "[f]ailure to provide a privilege log" supporting generalized or catch-all privilege objections waives a privilege claim). Waiver is also warranted when parties disregard a court order. *See Janvey v. Alguire*, No. 3:09-CV-724-N-BQ, 2018 WL 11362638, at *6 (N.D. Tex. Oct. 17, 2018) (Bryant, M.J.) (observing that a finding of waiver is especially warranted when a party opposing discovery has acted with "unjustified delay, inexcusable conduct, or bad faith" (citation and internal quotation marks omitted)). The failure to maintain an objection throughout the duration of a discovery dispute, including in response to a motion to compel, may constitute waiver of the argument. *E.g.*, *Garcia v. Padilla*, No. 2:15-CV-735-FtM-29CM, 2016 WL 881143, at *3 (M.D. Fla. Mar. 8, 2016); *Jackson v. Geometrica, Inc.*, No. 3:04CV640J20HTS, 2006 WL 213860, at *1 (M.D. Fla. Jan. 27, 2006); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 681 n.8 (D. Kan. 2004).

## B.  First Amendment Privilege

The First Amendment serves as a brake on governmental power. The First Amendment reads, "*Congress shall make no law* respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST.

App.628

amend. I (emphasis added). The "guarantees of free speech and equal protection guard only against encroachment by the government and 'erec[t] no shield against merely private conduct.'" *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 566 (1995) (alteration in original) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). "[T]here is no 'state action' to be found in the mere filing of a private civil tort action in state court." *Henry v. First Nat. Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971).

The First Amendment provides a qualified privilege from the disclosure of information concerning certain activities protected by the First Amendment's freedom of speech and association. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 610–11 (2021). Courts examine First Amendment qualified privilege claims under the "exacting scrutiny" standard, which is "triggered by 'state action.'" *Bonta*, 594 U.S. at 616 (quoting *NAACP*, 357 U.S. at 460). To determine whether withholding is appropriate, courts apply a burden-shifting test that "balances the interest in disclosure against the burden imposed on associational rights." *Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, No. 4:20-CV-973-SDJ, 2022 WL 2901007, at *3 (E.D. Tex. Jan. 11, 2022); *see also Perry v. Schwarzenegger*, 591 F.3d 1147, 1160–61 (9th Cir. 2010). Although the Fifth Circuit has not adopted this specific balancing test employed in other circuits, it has suggested that a balancing test is appropriate to analyze the qualified privilege. *See Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 631–32 (5th Cir. 1980); *Whole Woman's Health v. Smith*, 896 F.3d 362, 372–74 (5th Cir. 2018).

The first step involves analyzing whether the party opposing discovery has made a *prima facie* showing of arguable First Amendment infringement. *Perry*, 591 F.3d at 1160. This is a light burden. *See Christ Covenant Church v. Town of Sw. Ranches*, No. 07-60516-CIV, 2008 WL

2686860, at \*6 (S.D. Fla. June 29, 2008). To make such a showing, the party withholding

documents must demonstrate a reasonable probability that disclosure of the information may

expose its "members to economic reprisal, loss of employment, threat of physical coercion, [or]

other manifestations of public hostility." *Hastings*, 615 F.2d at 631 (quoting *NAACP*, 357 U.S. at

462). The proof may include "specific evidence of past or present harassment of members due to

their associational ties, or of harassment directed against the organization itself." *Buckley v. Valeo*,

424 U.S. 1, 74, (1976) (per curiam).

      After the *prima facie* showing is made, the burden then shifts to the party seeking discovery

to show "an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent

effect which . . . these disclosures may well have." *Hastings*, 615 F.2d at 632 (quoting *NAACP*,

357 U.S. at 463). Ultimately, the Court must balance "the potential chilling effect on associational

rights" against the "significance of the interest in disclosure to determine whether that interest

outweighs the harm." *Young Conservatives of Tex. Found.*, 2022 WL 2901007, at \*3.

## III.   ANALYSIS

### A.  Defendants Waived their Objection.

      Plaintiff argues that Defendants waived their First Amendment privilege. The Court agrees

that Defendants' refusal to comply with the Court's June 6, 2024 Order, failure to produce a

privilege log, and failure to specifically raise their First Amendment privilege in the Second

Amended Responses and Objections—together and on their own—warrant waiver.

      First, and most egregious, Defendants plainly ignored this Court's Order by refusing to

search for and log documents responsive to RFP Nos. 17, 18, 21, and 35. Defendants do not dispute

the Court ordered them "to log any responsive documents" to RFP Nos. 17, 18, 21, and 35 "as

privileged and deliver" a privilege log "to Plaintiff no later than June 14, 2024."[5] But Defendants refused to follow the order.

Defendants admit that "as of the date of its first privilege log, [Media Matters] had not identified any donor-related documents that it was withholding based on privilege" and asserted it was not "separately searching for donor-related documents."[6] Defendants' admitted refusal to even search for responsive documents as ordered to do so demonstrates waiver. Defendants cannot escape the consequence of waiver because of their agreement to produce privilege logs on a rolling basis. There is no indication Defendants needed extra time to search and log documents beyond the ordered or agreed upon time. Instead, they have refused to conduct any search. Accordingly, Defendants' privilege objection is waived. *See Janvey*, 2018 WL 11362638, at *6 (Bryant, M.J.) (observing that a finding of waiver is especially warranted when a party opposing discovery has acted with "unjustified delay, inexcusable conduct, [or] bad faith" (citation and internal quotation marks omitted)).

The Court concludes that Defendants' refusal to even search for responsive documents constitutes waiver because their conduct is unwarranted and wholly unjustified. In their briefing, Defendants do not explain why they refused to search for and log responsive documents they believe to be privileged. Defendants did not ask for reconsideration of the Court's Order requiring them to "log responsive documents" and "deliver" the privilege log to Plaintiff.[7] Nor did Defendants ask for an extension of the deadline to comply with the Court's Order. Even now, Defendants do not argue that the *act of searching* for responsive documents violates their First

---

[5] June 6, 2024, Order 2, ECF No. 65; Defs.' Resp. Opp., 4, ECF No. 87.
[6] Defs.' Resp. Opp., 7 & 7 n.3, ECF No. 87; *see also* Pl.'s App. 176, 179, ECF No. 85 (email from A. Khanna dated July 24, 2024, July 30, 2024); Order 2, June 6, 2024, ECF No. 65.
[7] June 6, 2024, Order 2, ECF No. 65.

App.631

Amendment privilege. And no identified case involving First Amendment privilege supports Defendants' decision to refuse to search for responsive documents.

In *Whole Woman's Health v. Smith*, a case Defendants rely on for a different proposition, the Texas Bishops subject to a third-party subpoena maintained their First Amendment objection, yet still conducted a search for responsive documents. 896 F.3d at 366–67 (5th Cir. 2018). Through their searches, the Texas Bishops uncovered over 6,000 pages of records and ultimately turned over 4,321 pages of those records to the plaintiffs. *Id.* at 366. Unlike the Texas Bishops, Defendants here refused to conduct an independent search altogether. In fact, Defendants acknowledge in their email exchange with Plaintiff that they have "refus[ed] to independently *search* for donor related documents" and that the parties "agree that that the privileged status of donor-related documents is ripe for the Court's resolution."[8] However, privilege does not operate in this manner. A party cannot "refus[e] to independently *search*"[9] for responsive documents and still maintain privilege. Defendants' disregard for the Court Order undermines this Court's ability to fully analyze the disputed documents. Accordingly, the Court finds Defendants have waived this privilege.

Second, apart from the Court's order, waiver is warranted because Defendants did not produce a privilege log adequately describing the documents as required by Rule 26. This failure constitutes waiver in its own right. When a withholding party "fail[s] to provide a privilege log" and "fail[s] to properly substantiate [its] objections by submitting evidence necessary to sustain its burden of proof to [its] objections," privilege is waived. *Johnston*, 2019 WL 1558040, at *2. To preserve a privilege claim, Defendants had to "provide sufficient information to permit courts and other parties to 'test[] the merits of' the privilege claim." *BDO*, 876 F.3d at 697 (alteration in

---

[8] Pl.'s App. 176, ECF No. 87 (email from A. Khanna dated July 30, 2024) (emphasis in original).
[9] *Id.*

original) (quoting *El Paso Co.*, 682 F.2d at 541). Here, Defendants did not produce the privilege log at all, which is insufficient to preserve the privilege.

A privilege log is more important in the context of the First Amendment privilege since it is a qualified privilege. The Rule 26 requirement to "*describe the nature of the documents*, communications, or tangible things not produced or disclosed" applies to *absolute* privileges. FED. R. CIV. P. 26(b); *see also* FED. R. CIV. P. 26(b) advisory committee's notes to 1993 amendment ("To withhold materials without such notice is contrary to the rule . . . and may be viewed as a waiver of the privilege or protection."). This requirement is even more critical for a qualified privilege that requires the Court to balance competing interests.[10]

Third and finally, in the operative set of objections—Defendants' Second Amended Responses and Objections—Defendants do not assert their First Amendment argument and thus waive it. Rule 26(b)(5)(A) requires the party claiming a privilege to "(i) *expressly make the claim*; and (ii) *describe the nature of the documents*, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A) (emphases added). When the withholding party fails to comply with Rule 26(b)(5), the Fifth Circuit has found that all assertions of privilege or other protections against the requested discovery have been waived. *See United States v. Fluitt*, 99 F.4th 753, 763–64 (5th Cir. 2024) ("The magistrate judge did not abuse her discretion in holding [the] privilege logs failed to adequately substantiate their assertions of privilege" when the privilege logs did "not provide a description for the documents/emails to explain why each should be protected from disclosure") (citation and internal quotation marks omitted); *see also BDO,* 876 F.3d at 697 ("Continual failure to adhere to Rule 26's prescription

---

[10] *Infra* Section III.C.

App.633

may result in waiver of the privilege where a court finds that the failure results from unjustified

delay, inexcusable conduct, or bad faith.").

Defendants claim their objections "explicitly identified the First Amendment privilege"—

but that is not the case.[11] Defendants did not reassert their privilege claim in the Second Amended

Responses and Objections. For example, in response to Plaintiff's RFP 17, Defendants say:

> **OBJECTIONS:** Defendants object to this Request as being overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case, and for seeking documents not relevant to any claim or defense asserted in this litigation. For example, this Request seeks a high-volume of sensitive financial information "of any kind" that is immaterial or unrelated to any of Plaintiff's tort claims, to any computation of damages, or to any of Defendants' defenses. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Moreover, disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support. Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them". Plaintiff's request for this information is inappropriate and not proportional to the needs of this case."

(footnotes omitted).[12] Defendants provided an identical objection to RFP 18.[13] Defendants'

objections to RFPs 21 and 35 also lack an explicit First Amendment privilege claim:

> **OBJECTIONS:** Defendants object to this Request as harassing. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as

---

[11] Defs.' Resp. Opp., 7, ECF No. 87.
[12] Pl.'s App. 201–02, ECF No. 85.
[13] *Id.* at 203–04.

App.634

Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). Disclosure of donor identifying information can lead to donors being harassed for and deterred from affiliating with organizations they support. Indeed, Elon Musk himself has called Media Matters "an evil propaganda machine that can go to hell" and vowed that X "will pursue not just the organization but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them". Plaintiff's request for this information is inappropriate and not proportional to the needs of this case.

(footnotes omitted).[14]

Critically, Defendants amended their original objections after "conferr[ing] among counsel" because Plaintiff argued the first set of objections were vague and generalized.[15] Thus, in responding to the characterization that the objections were "generalized," Defendants specified that they are relying on the above-quoted grounds to object.[16] But Defendants neither provided the amended objections as a supplement to the first set of objections nor did they incorporate the previous objections. Similar to amended complaints, amended objections supersede the first objection, that is, they became the operative objections. *See Stewart v. City of Hous. Police Dep't*, 372 F. App'x 475, 478 (5th Cir. 2010) ("[A]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

Defendants' failure to reassert the First Amendment privilege is clear when contrasted with their original objection to RFP 17, which said "Defendants also object to this Request to the extent it seeks disclosure of sensitive financial and **associational information protected by the First Amendment privilege, the production of which would chill Defendants' exercise of their First**

---

[14] *Id.* at 205–06, 129–30.
[15] *Id.* at 87.
[16] Defs.' Resp. Opp., 4, ECF No. 87.

App.635

**Amendment speech and associational rights.**"[17] In context, Plaintiff complained that it did not know what First Amendment theory Defendants relied upon—free-speech, free-press rights of journalists, or free-association rights of organizations. In response, Defendants amended their objections to *expressly* assert the requests were "overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case."[18] Moreover, Defendants could not maintain their First Amendment objection in good faith since they refused to even search for the documents. A party cannot identify and describe a responsive but privilege document without searching for and obtaining it. As a result, they must rely on their preserved arguments, which do not involve the First Amendment.

The Court acknowledges this is a close call because Defendants raised *an* objection, but it is not the First Amendment associational privilege claim before the Court today. Instead, Defendants expressly objected that the RFPs were "overly broad, not reasonably particularized, unduly burdensome, harassing, and disproportionate to the needs of this case."[19] But insofar as they are not reasserted or relied upon in Defendants' response, these objections are "deemed abandoned." *Garcia*, 2016 WL 881143, at *3 (M.D. Fla. Mar. 8, 2016) ("Objections timely asserted in a party's initial response to discovery requests but not reasserted or argued in response to a motion to compel are deemed abandoned."). Defendants' response focuses primarily on the First Amendment, which includes arguments about the potential for harassment and relevance. These arguments are pertinent to the general harassment objection, which were asserted in the amended objections.[20] The Court considers these objections and, as explained in Section III.C., the

---

[17] Pl.'s App. 47, ECF No. 85 (emphasis added).
[18] *Supra* notes 12, 14.
[19] *Id.*
[20] *See* Defs.' Resp. Opp., 14–20, ECF No. 87.

App.636

requested documents are discoverable and the protective order already in place protects Defendants from public disclosure and harassment. Thus, these objections are overruled.

Thus, finding waiver of privilege here is especially warranted given that Defendants have waived any applicable First Amendment privilege on these three independent bases. Accordingly, Plaintiff's Motion to Compel on these bases is **GRANTED**.

### B. The First Amendment Privilege Likely Applies.

Irrespective of the issue of waiver, Plaintiff argues the First Amendment privilege does not apply because this case lacks the requisite state action. The First Amendment ordinarily does not apply in disputes between private parties wholly disconnected from state action. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019) ("The First Amendment constrains governmental actors."). Put another way, the First Amendment privilege, from its standard to its application, hinges on state action. The exacting scrutiny standard requires "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *Doe v. Reed*, 561 U.S. 186, 196 (2010) (citation omitted). As the Supreme Court recently reiterated, "[s]uch scrutiny . . . is appropriate given the 'deterrent effect on the exercise of First Amendment rights' that arises as an 'inevitable result of the *government's conduct* in requiring disclosure.'" *Bonta*, 594 U.S. at 607 (quoting *Buckley*, 424 U.S. at 65) (emphasis added).

Plaintiff argues any attempt to reclassify the Federal Rules as state action, or courts as state actors, under the First Amendment is foreclosed by Fifth Circuit precedent rejecting the argument that court action constitutes state action. *See Henry*, 444 F.2d at 1312 (5th Cir. 1971) ("[T]here is no 'state action' to be found in the mere filing of a private civil tort action in state court."). There is appeal to this contention because from the Supreme Court's first recognition of the First

App.637

Amendment privilege in *NAACP v. Alabama ex rel. Patterson*, to its most recent discussion in *Americans for Prosperity Foundation v. Bonta*, state action has been clearly present.

The Supreme Court also recently reiterated, "[i]n such [First Amendment cases], it is 'the application of state power which we are asked to scrutinize.'" *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024) (quoting *NAACP*, 357 U.S. at 463). Moreover, to prove a First Amendment violation, the party must prove that the government, not a private party, suppressed a First Amendment right. *See Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) ("[T]he plaintiffs must show a substantial risk that, in the near future, at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant."). This distinction is important because: "If, for constitutional purposes, every private right were transformed into governmental action by the mere fact of court enforcement of it, the distinction between private and governmental action would be obliterated." *Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157, 176 (D.D.C. 2017) (quoting *Edwards v. Habib*, 397 F.2d 687, 691 (D.C. Cir. 1968)).

These principles appear in the Supreme Court's consideration of this issue. In *NAACP* the state action was clear because the "Attorney General of Alabama brought an equity suit . . . to enjoin the Association from conducting further activities within, and to oust it from, the State" after the NAACP failed to comply with Alabama law that required them "to reveal to the State's Attorney General the names and addresses of all its Alabama members and agents." 375 U.S. at 451–52. Similarly, in *Bonta*, the question before the Supreme Court was the constitutionality of a California state law that required charitable organizations to "disclose to the [California] Attorney General's Office the identities of their major donors." 594 U.S. at 600–01. In *Doe* the state action

was undeniable because the Washington Public Records Act required, upon request, disclosure of referendum signature information. 561 U.S. at 190–191.

Defendants counter that case law demonstrates that the First Amendment privilege applies to discovery disputes between private parties. Citing to the Tenth Circuit in *In re Motor Fuel Temperature Sales Practices Litigation,* Defendants argue circuit courts extended the First Amendment qualified privilege to a discovery dispute involving only private parties. 641 F.3d 470, 481 (10th Cir. 2011). The Tenth Circuit noted "that the First Amendment privilege applies to the district court's discovery order" appeared to be an extension of the privilege, writing that "no court has directly considered its application . . . in a lawsuit between private parties." *Id*. It relied on dicta from a previous Tenth Circuit case which held a district court failed to consider the plaintiff's First Amendment qualified privilege in connection with a discovery dispute. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987)*.

Neither *In re Motor Fuel* nor *Grandbouche* explain how the privilege recognized in *NAACP*—where there was clear state action—applies when a court refereeing a discovery dispute between private parties is identified as the state actor. Instead, *In re Motor Fuel* did not even conduct the balancing test required in analyzing the associational privilege because the appellant did not establish its prima facie case. 641 F.3d at 489–92.

Further, *Grandbouche*'s reliance on *Shelly v. Kraemer*—cited as a see also without any explanation—is wholly unclear as to its application. *Id*. at 1466 (citing 334 U.S. at 14–15). And the Tenth Circuit's reliance on *Shelly* is questionable since the Supreme Court has warned lower courts about the dangers of expanding the state-action doctrine. *See Manhattan Cmty. Access Corp*, 587 U.S. at 818 ("Expanding the state-action doctrine beyond its traditional boundaries would expand governmental control while restricting individual liberty and private enterprise.")

App.639

In *Perry*, another case cited by Defendants, the plaintiff seeking disclosure was not a state actor. Even though the court claims "the evidentiary burden shifts to the plaintiffs to demonstrate a sufficient need for the discovery to counterbalance that infringement," *Perry* does not analyze how the court adjudicating this dispute constitutes state action. 591 F.3d at 1164.

While it may be because *Perry* includes the unique circumstance of private individuals defending the constitutionality of a state ballot amendment, the court never says as much. And when implementing the balancing test, *Perry* omitted "government" from the quote "we 'balance the burdens imposed on individuals and associations against the significance of the government interest in disclosure.'" *Id.* at 1161 (alteration removed) (citing *AFL–CIO v. FEC*, 333 F.3d 168, 176 (D.C.Cir.2003)). It is unclear therefore on what basis *Perry* and other cases have applied *NAACP*'s clear instruction that it is the "application of state power which [the Court is] asked to scrutinize" in balancing the parties' respective interests. *NAACP*, 357 U.S. at 463.

To this point, Plaintiff has made an arguable claim that there is no state action in a discovery dispute between private parties as the cases Defendants rely on fail to squarely address what state action a court is to balance. But, in *Whole Woman's Health*, another case Defendants rely on, the Fifth Circuit seemingly did, when discussing RFRA's compelling interest. 896 F.3d at 371. When the Texas Bishops appealed a third-party subpoena, their grounds included "free exercise, freedom of speech, freedom of assembly, and freedom of petition guarantees of the First Amendment, that it violated the Religious Freedom Restoration Act ("RFRA"), and that it was unduly burdensome under Fed. Rule Civ. Pro. 45(d)." 896 F.3d 366. The circuit discussed the application of the First Amendment qualified privilege to the discovery dispute between those private parties. While it ultimately invoked the rule of constitutional avoidance and determined that the dispute could be

resolved pursuant to the Federal Rules of Civil Procedure, in doing so, it explained the issues involved in resolving a discovery dispute between private parties impacting constitutional rights.

On the issue of state action, the court in *Whole Woman's Health* wrote that the government interest includes the litigant's desire to use the court to obtain the privileged information. *Whole Woman's Health*, 896 F.3d at 371 ("As for the government's (*i.e.*, the court's or litigant's using the court) compelling need and least restrictive means, they are not satisfied merely because the Federal Rules ordinarily authorize broad discovery."). By way of analogy, if "government's . . . compelling need" is "the court's or litigant's using the court" under the RFRA compelling interest analysis, the same ought to be true for the First Amendment associational privilege analysis. *Id.*

The take away in the Fifth Circuit then is that a private party's invocation of court authority to obtain information that may be constitutionally protected is the requisite state action. And that party's need, or interest, is what the court must balance in evaluating the First Amendment consideration. Accordingly, the Court rejects Plaintiff's argument that the First Amendment cannot apply because there is no state action.

### C.  Plaintiff Overcomes any First Amendment Privilege.

Applying the balancing test for the First Amendment qualified privilege to the facts of this case shows Plaintiff overcomes the qualified privilege. X has shown "an interest in obtaining the disclosures . . . which is sufficient to justify the deterrent effect which . . . these disclosures may well have." *Hastings*, 615 F.2d at 632 (alteration in original) (citation omitted).

The Court first looks at whether Defendants have made a *prima facie* case of arguable First Amendment infringement. *Perry*, 591 F.3d at 1160; *Bright Response, LLC*, 2009 WL 10741629, at *1. "Exacting scrutiny is triggered by 'state action which *may* have the effect of curtailing the

freedom to associate,' and by the 'possible deterrent effect' of disclosure." *Bonta*, 594 U.S. at 616 (emphasis in original) (quoting *NAACP*, 357 U.S. at 460–61). Defendants satisfy their burden of showing the potential for infringement. Defendants provide examples of public hostility directed at the organization sufficient to shift the burden.[21] *See Christ Covenant Church*, 2008 WL 2686860, at *7 (finding evidence of hostility against plaintiff and its members was sufficient to make *prima facie* showing).

Having established a *prima facie* showing, the burden then shifts to Plaintiff. Courts have considered, among other things, the following factors to balance the competing interests: the importance of the information sought to the issues in the case, the substantiality of the First Amendment interests at stake, the availability of the information from alternative sources, and whether the request is carefully tailored to avoid unnecessary interference with protected activities. *Perry*, 591 F.3d at 1161.

Plaintiff requests Media Matters' donor lists and financial information for the following reasons: "(1) to see how Defendants have availed themselves of Texas; (2) to see how Defendants funded their tortious conduct; and (3) to see if they are profiting or seeking to improve their financial condition from their disparagement."[22] As explained below, Plaintiff's RFPs sufficiently overcome any potential "deterrent effect[s]" on Defendants' associational rights. *Hastings*, 615 F.2d at 632 (citation omitted).

Regarding the importance of the information sought to the issues in the case, X has made a compelling argument that the documents requested sufficiently overcome any associational burden. Plaintiff requests donor related documents, particularly ones that are demonstrative of Defendants' mental state, which is relevant to the essential elements of its claims and to show

---

[21] Defs.' Additional Exs., ECF No. 89.
[22] Pl.'s Br. Supp. 14, ECF No. 84.

App.642

punitive damages.[23] Requests related to Defendants' mental state "go[] to the 'heart of the matter,'" and Plaintiff is significantly burdened without the documents. *Schiller v. City of New York*, 2006 WL 3592547, *6 (S.D.N.Y. Dec. 6, 2006) (quoting *Anderson v. Hale*, No. 00 C 2021, 2001 WL 503045, *4 (N.D. Ill. May 10, 2001)).

These documents may serve as proof of Defendants mental state, an essential element of Plaintiff's claims. To prevail on a tortious interference with contract claim, Plaintiff must prove a "willful and intentional act of interference with the contract." *Nix v. Major League Baseball*, 62 F.4th 920, 934 (5th Cir.) (quoting *Prudential Ins. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)), *cert. denied*, 144 S. Ct. 165 (2023). For Plaintiff's business disparagement claim, it must prove "false and disparaging information" was published "with malice." *Vendever LLC v. Intermatic Mfg. Ltd*., No. 3:11-CV-201-B, 2011 WL 4346324, at *4 (N.D. Tex. Sept. 16, 2011) (quoting *Forbes v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)). The requests are therefore important to the essential elements of Plaintiff's claims.

Additionally, Plaintiff's claim for punitive damages would not be better exemplified than through Defendants' profiting off the alleged manipulation of X's social media platform, if they have done so. In a related context, the Supreme Court in *Herbert v. Lando* did not recognize an absolute First Amendment press privilege preventing discovery to determine actual malice. 441 U.S. 153 (1979). Summed up by the Fifth Circuit, the press "had no First Amendment privilege against discovery of mental processes where the discovery was for the purpose of determining whether malice existed." *See Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980) (summarizing the

---

[23] *Id.*

App.643

holding of *Herbert*). Like in *Miller* and *Herbert*, here too "the privilege must yield." *Id.* The requests are important to Plaintiff's damages case.

Next, Defendants' First Amendment interests at stake here are significantly reduced without the same type of "state action which may have the effect of curtailing the freedom to associate." *NAACP*, 357 U.S. at 460–61; s*ee also Gueye v. Mike Bloomberg 2020 Inc.*, No. 4:20-CV-00487-BP, 2021 WL 3910341, at *2 (N.D. Tex. Mar. 12, 2021) ("The facts supporting Defendant's request for confidentiality are not as compelling as those at issue in *Perry* or in the Fifth Circuit case that cites *Perry* on the issue of the First Amendment privilege, *Whole Woman's Health.*"). Media Matters is not like the NAACP combatting state-enforced segregation, for whom "compelled disclosure of . . . membership is likely to affect adversely the ability of [the NAACP] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate." *NAACP*, 357 U.S. at 462–63. When a party, like Plaintiff, requests documents to establish jurisdiction, the mens rea, and actual malice from a media organization, *Miller* and *Herbert* are strong indications that any First Amendment interests are reduced.

Plaintiff contends that the withheld documents may still be indicative of Defendants' efforts to solicit Texans generally or to support other journalistic endeavors, both of which may show Defendants purposefully availed themselves of a Texas forum. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 371 (2021) (finding personal jurisdiction where seller "extensively promoted, sold, and serviced" products in the forum state). Additionally, the information Plaintiff seeks is not available by means of an alternative source. While the Court has ruled that personal jurisdiction is proper based on the pleadings, Defendants maintain that personal jurisdiction and venue are improper.[24] Plaintiff continues to carry the burden of showing

_____

[24] Defs.' Answer 16, ECF No. 92; Defs.' Mot Certify Immediate Appeal and Br. Supp., ECF Nos. 93–94.

App.644

jurisdiction throughout the lawsuit. Plaintiff cannot sufficiently establish the extent of Defendants' financial contacts with the state and forum without this information. Despite Defendants' claim that they did not solicit Texas donors for their "work related to X Corp.," donor and financial documents are still relevant and cause a minimal amount of harm to Defendants' associational rights.[25] Defendants cannot limit the relevance of Plaintiff's request by carefully wording affidavits narrower than the documents requested. Moreover, Defendants cannot say with certainty these documents do not show such purposeful availment given their "refusal to independently search" for the responsive documents. [26]

Finally, as to the tailoring of the requests, Plaintiff overcomes any final burden on Defendants' protected activities. While Plaintiff make a number of requests, the privilege objection is reduced because of the protective order already in place. The Supreme Court in *Bonta* explained that "assurances of confidentiality," like a protective order, "may reduce the burden of disclosure" if the procedures established by the parties and enforced by a court order can alleviate the potential chilling effect on associational rights. 594 U.S. at 616.

Unlike in *Bonta*, where the "promise of confidentiality 'rings hallow,'" the parties' assurances here are sound. *Id.* at n.* (quoting *Thomas More L. Ctr. v. Harris*, No. CV 15-3048-R, 2016 WL 6781090, *5 (C.D. Cal. Nov. 16, 2016)). The parties agreed on and have utilized the protective order allowing for the classification of documents as "Attorney's Eyes Only."[27] Defendants do not argue the protective order in place has been violated. Notably, any additional concerns about specific documents could be addressed by further "seek[ing] a protective order designating those documents as confidential." *Fla. State Conf. of Branches & Youth Units of*

---

[25] Defs.' App. Supp. Mot Dismiss Ex. C ¶ 4, ECF No. 42.
[26] Pl.'s App. 176, ECF No. 85 (email from A. Khanna dated July 30, 2024) (emphasis in original).
[27] Pl.'s Reply 7, ECF No. 91.

App.645

*NAACP v. Lee*, 568 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021). Additionally, as a safeguard to protect Defendants' associational rights, Plaintiff must ask the Court before using any information beyond the "Attorney's Eyes Only" designation.

Insofar as the Court can analyze the factors, albeit handicapped by Defendants' failure to search for and log the claimed privileged documents, Plaintiff overcomes the First Amendment qualified privilege. Thus, Plaintiff has overcome any applicable First Amendment qualified privilege. Finally, finding that disclosure is warranted given the heightened relevance standard for overcoming the First Amendment privilege, Defendants' amended objections are overruled.

## IV. CONCLUSION

Because Defendants have waived their qualified privilege, Plaintiff's Motion to Compel is **GRANTED**. Irrespective of waiver, Plaintiff overcomes the qualified First Amendment privilege. Accordingly, Defendants **SHALL** conduct the previously required search for documents responsive to RFPs 17, 18, 21, and 35 and **SHALL PROVIDE** all documents in its care, custody, or control responsive to RFPs 17, 18, 21, and 35 no later than **October 7, 2024.**

**SO ORDERED** on this **27th day** of **September, 2024**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

22

App.646

# Doc. 99

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| **X CORP.,**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**MEDIA MATTERS FOR AMERICA,**<br>**et al.,**<br><br>        **Defendants.** | **Civil Action No. 4:23-cv-01175-O**<br><br>**EXPEDITED RULING BY <u>OCT. 2, 2024</u>**<br>**<u>AT 12:00 P.M.</u> RESPECTFULLY**<br>**REQUESTED** |

**DEFENDANTS' EMERGENCY MOTION TO STAY ORDER COMPELLING**
**PRODUCTION OF DONOR-RELATED DOCUMENTS PENDING APPEAL**

Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A), Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone move the Court to stay its Order granting Plaintiffs' Motion to Compel Production of Donor Related Documents, ECF No. 98 ("Order"), pending the outcome of Defendants' appeal of that Order.

For the reasons stated in the accompanying Brief in Support, Defendants request that the Court enter the accompanying Proposed Order. Alternatively, Defendants respectfully request that the Court grant a two week extension of its production deadline—from October 7 to October 21—to permit the Fifth Circuit to evaluate Defendants' forthcoming stay motion in an orderly fashion.

Given the timing exigencies—and substantial First Amendment issues at stake—Defendants further respectfully request that the Court rule on the instant motion (including any denial) by **Wednesday, October 2, 2024 at 12:00 p.m.** to permit time for a stay request to the Fifth Circuit ahead of the Court's October 7 deadline.

Dated: October 1, 2024

Respectfully submitted,
*/s/ Andrew LeGrand*

App.648

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch* (DC 1014541)
Christopher D. Dodge* (DC 90011587)
Jacob D. Shelly* (DC 90010127)
Samuel T. Ward-Packard* (DC 90005484)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law
swardpackard@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

App.649

## CERTIFCATE OF CONFERRAL

On October 1, 2024, counsel for Defendants conferred with counsel for X Corp. to obtain their position on this motion. Having received no response to date, Defendants assume that X Corp. opposes the motion.

*/s/ Andrew LeGrand*
Andrew LeGrand

## CERTIFICATE OF SERVICE

On October 1, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

App.650

# Doc. 100

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| X CORP.,<br><br>               Plaintiff,<br><br>    v.<br><br>MEDIA MATTERS FOR AMERICA,<br>et al.,<br><br>               Defendants. | **Civil Action No. 4:23-cv-01175-O**<br><br>**EXPEDITED RULING BY <u>OCT. 2, 2024 AT 12:00 P.M.</u> RESPECTFULLY REQUESTED** |

## DEFENDANTS' EMERGENCY BRIEF IN SUPPORT OF MOTION TO STAY ORDER COMPELLING PRODUCTION OF DONOR-RELATED DOCUMENTS PENDING APPEAL

App.652

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ...................................................................................................................... 8

I.    Defendants are likely to succeed on the merits. ...................................................... 8

    A.    The First Amendment prohibits compelling Defendants to produce donor identifying information. ............................................................................. 8

    B.    The district court did not meaningfully address the myriad other objections Defendants raised to the document requests at issue. ................................ 13

    C.    Defendants did not waive their First Amendment rights. ........................... 16

    D.    Defendants are likely to establish appellate jurisdiction or, alternatively, that mandamus jurisdiction is appropriate. ......................................................... 22

II.   A stay preserving the status quo will prevent irreparable injury and serve the public interest. ................................................................................................................... 22

III.  A stay will not injure, much less substantially injure, Plaintiff. ........................... 24

CONCLUSION ................................................................................................................. 25

App.653

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021).............................................................................. *passim*

*Book People, Inc. v. Wong,*
    91 F.4th 318 (5th Cir. 2024) ..........................................................................23

*Brady v. United States,*
    397 U.S. 742 (1970)........................................................................................16

*In re Bryan,*
    645 F.2d 331 (5th Cir. 1981) ...........................................................................2

*Campaign for S. Equality v. Bryant,*
    773 F.3d 55 (5th Cir. 2014) ..........................................................................24

*Campbell v. Clark,*
    471 S.W.3d 615 (Tex. App. 2015).....................................................................9

*Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.,*
    59 F. App'x 830 (7th Cir. 2003) ....................................................................14

*Damon J. Baldone, LLC v. Starr Surplus Lines Ins. Co.,*
    No. 22-1903, 2024 WL 4188482 (E.D. La. Sept. 13, 2024)...........................24

*EEOC v. BDO USA, L.L.P.,*
    876 F.3d 690 (5th Cir. 2017) .........................................................................21

*Elrod v. Burns,*
    427 U.S. 347 (1976)........................................................................................23

*Freedom From Religion Found., Inc. v. Mack,*
    4 F.4th 306 (5th Cir. 2021) .....................................................................24, 25

*Garcia v. Padilla,*
    No. 2:15-cv-735-FtM-29CM, 2016 WL 881143 (M.D. Fla. Mar. 8, 2016) ...........21

*Hastings v. N. E. Indep. Sch. Dist.,*
    615 F.2d 628 (5th Cir. 1980) ...........................................................................9

*Heller v. City of Dallas,*
    303 F.R.D. 466 (N.D. Tex. 2014) ..................................................................20

*Herbert v. Lando,*
    441 U.S. 153 (1979)........................................................................................11

App.654

*Johnson v. Zerbst,*
    304 U.S. 458 (1938) ............................................................................2, 11, 16

*La Union Del Pueblo Entero v. Abbott,*
    68 F.4th 228 (5th Cir. 2023) ........................................................................22

*La Union Del Pueblo Entero v. Abbott,*
    No. SA-21-CV-00844-XR, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022) ...................12, 22

*Media Matters for Am. v. Bailey,*
    No. 24-CV-147 (APM), 2024 WL 3924573 (D.D.C. Aug. 23, 2024) ....................13

*Media Matters for Am. v. Paxton,*
    No. 24-cv-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024) ......................13

*Miller v. Transamerican Press, Inc.,*
    621 F.2d 721 (5th Cir. 1980) ........................................................................11

*Miller v. Transamerican Press, Inc.,*
    628 F.2d 932 (5th Cir. 1980) .................................................................11, 12

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ...................................................................23, 24

*Perry v. Schwarzenegger,*
    591 F.3d 1126 (9th Cir. 2009) ........................................................... *passim*

*Perry v. Schwarzenegger,*
    No. 09-17241 (9th Cir. Dec. 3, 2019) ..........................................................24

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
    734 F.3d 406 (5th Cir. 2013) ........................................................................25

*Ruiz v. Estelle,*
    650 F.2d 555 (5th Cir. 1981) ........................................................................24

*Taylor Lohmeyer L. Firm P.L.L.C. v. United States,*
    957 F.3d 505 (5th Cir. 2020) ........................................................................14

*Tex. All. for Retired Ams. v. Hughs,*
    976 F.3d 564 (5th Cir. 2020) ........................................................................22

*Texans for Free Enter. v. Tex. Ethics Comm'n,*
    732 F.3d 535 (5th Cir. 2013) ........................................................................23

*United States v. Fluitt,*
    99 F.4th 753 (5th Cir. 2024) ........................................................................21

*United States v. Shea*,
    508 F.2d 82 (5th Cir. 1975) ....................................................................16

*Veasey v. Abbott*,
    870 F.3d 387 (5th Cir. 2017) ..................................................................22

*Veasey v. Perry*,
    769 F.3d 890 (5th Cir. 2014) ........................................................8, 14, 25

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ............................................................13, 22

## Other Authorities

Fed. R. Civ. P. 26(b)(1)..................................................................................15

Fed. R. Civ. P. 26(b)(5)(A)............................................................................20

App.656

## INTRODUCTION

In a September 27, 2024 Order, this Court recognized that Defendants have a First Amendment privilege against compelled disclosure of donor related documents, but ruled that Defendants waived any such privilege and ordered the production of all "donor related documents" in ten days. *See* ECF No. 98 ("Order"). Because Defendants intend to immediately appeal that sweeping—and, on the facts of this case, unwarranted—invasion of their constitutional privilege, the Court should stay its Order to allow the Fifth Circuit time to resolve the core First Amendment issues in this case, including whether Defendants knowingly relinquished the constitutional protections they raised at the very outset of discovery and whether Plaintiff has satisfied its demanding burden to overcome those protections here. No court in the United States has ever compelled a media organization to turn over—without even the prospect of redaction—every "donor and financial document" in its possession. The First Amendment guards against such a "widespread burden on donors' associational rights" absent "exacting scrutiny" and "narrow tailoring" that the Court's order sorely lacks. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021). Defendants thus have a strong likelihood of success on appeal for several reasons and a stay is appropriate to permit appellate review of the Court's Order.

*First*, this Court granted X's motion—after first acknowledging the likely infringement of Defendants' First Amendment rights, *see* Order at 17–18—based on conjecture that some responsive documents "may" bear on malice or jurisdiction, *id.* at 18–20. But those 30,000 foot observations avoid the granularity the First Amendment demands. Most critically, they fail to address how a full account of all donors and financial documents bears on *Defendants'* mindset in publishing the articles in question (as is relevant to the merits) or purposeful availment (relevant to the question of jurisdiction). That lack of exacting scrutiny—and the weighty First Amendment associational interests at stake—warrant a stay.

App.657

*Second*, the Court did not meaningfully address Defendants' many *other* objections to X's requests, including on grounds of relevance, overbreadth, burden, and scope—core Rule 26 grounds for resisting disclosure. The overwhelming majority of the documents responsive to Plaintiff's overbroad requests are not even conceivably relevant to this case. But because the Court compelled production of all responsive documents without contending with Defendants' relevance, burden, and overbreadth objections, such materials must be produced regardless. That error furthers the likelihood that Defendants will prevail on appeal.

*Third*, the Court was also mistaken in finding that Defendants waived their First Amendment rights. Waiver requires "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and "purported waivers of fundamental constitutional guarantees are subject to the most stringent scrutiny," *In re Bryan*, 645 F.2d 331, 333 (5th Cir. 1981). X can hardly claim surprise from Defendants' invocation of the First Amendment privilege to donor-related documents. Defendants have raised such privileges ever since receiving X's first set of discovery requests. The Court disregarded those privilege objections on the basis of (i) an after-the-fact interpretation of its June order concerning the premature nature of X's first motion to compel, and (ii) a reinterpretation of Defendants' discovery objections that runs contrary to the record. Those are not adequate grounds to find that Defendants intentionally gave up precious constitutional guarantees.

Finally, the equities weigh overwhelmingly in favor of a stay. The Order acknowledges that the compelled disclosure here likely infringes Defendants' First Amendment rights. *See* Order at 17–18. If this Court's October 7 production deadline stands, those rights will be irreparably violated within a week. And it is not just Defendants' rights at stake; the Court's Order implicates

App.658

the First Amendment rights of third parties who have donated to Defendants. X will suffer no corresponding harm.

Because of the Court's forthcoming October 7 deadline, Defendants respectfully request a ruling on this motion, including a denial, by no later than **Wednesday, October 2 at 12:00 p.m.** to permit time for a stay motion to the Fifth Circuit. Defendants sought X's position on the instant motion but did not hear back by the time of filing and thus assume X opposes the motion.

## BACKGROUND

Media Matters published two articles in November 2023 reporting that X had failed to prevent advertisements from appearing next to neo-Nazi and other extremist content on its social media platform. In response, X sued Media Matters for tortious interference with contract, business disparagement, and interference with prospective economic advantage. *See* Am. Compl. ¶¶ 65–88, ECF No. 37. X's first set of discovery requests sought documents far afield from any of these claims, including requests for virtually all documents and communications that Media Matters possessed about its donors. For example, Request for Production ("RFP") No. 17 seeks:

> Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donation or other financial support.

App. Supp. Mot. to Compel at 13, ECF No. 85 ("X App. 1"). Similarly, RFP No. 18 seeks:

> Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

*Id.* RFP Nos. 21 and 35 duplicated the requests for donor identities and communications while adding some nexus to X's claims. *Id.* (RFP No. 21 seeking "All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino"); *id.* at 24 (RFP No. 35 seeking

"All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform").[1]

Media Matters served timely responses and objections notifying X that it would not produce documents in response to these four requests. Among other objections, Media Matters explained that the requests were overly broad and harassing, and the requests sought "disclosure of sensitive financial and associational information protected *by the First Amendment privilege*, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights." *Id.* at 47–48, 51 (emphasis added). The parties conferred about these objections. As relevant here, counsel for X questioned whether the First Amendment privilege applies in litigation between private parties and requested clarification about the extent to which Media Matters's objections were limiting its collection, search, and production of responsive documents. Counsel for Media Matters, in turn, provided additional caselaw confirming the availability of First Amendment privileges and agreed to amend its responses and objections to clarify which objections were operating to limit document collection and review. App. Supp. Defs.' Resp. to X Mot. to Compel at 102–03, 125–35, ECF No. 63 ("MMFA App. 1").

Immediately after Media Matters alerted X that it would amend its responses and objections—but before Media Matters could serve the amendment—X moved to compel production of all responsive documents, arguing that Media Matters's objections and privilege assertions were procedurally and substantively improper. *See* Pl.'s Br. in Supp. of Mot. to Compel, ECF No. 60. In response, Media Matters explained that its decision to search for and collect

---

[1] RFP No. 35 was served as RFP No. 6 in X's second set of requests for production to Media Matters. For clarity, the parties have renumbered X's second set of requests to continue sequentially after X's first set of requests.

App.660

potentially responsive documents was determined by its objections related to burden and harassment, and that any privilege assertions would be made on a document-by-document basis and memorialized in a privilege log. *See* Defs.' Resp. to Mot. to Compel, ECF No. 62. Thus, Media Matters explained, the parties had a ripe dispute about whether X's donor-related discovery requests were harassing and unduly burdensome—which supplied the basis for Media Matters's refusal to conduct an exhaustive search for all donor-related documents—but they did not yet have a ripe dispute about the First Amendment privilege because the parties had not yet agreed to a privilege log protocol or logged any documents as privileged. *Id.* at 4–5, 10–13.[2] Meanwhile, Media Matters served amended discovery responses that stated its refusal to produce donor-related documents on the basis of burden, harassment, and related objections, while explicitly reserving the right to reassert its previously asserted privilege objections on a document-by-document basis. MMFA App. 1 at 20–26, 71–73.

    This Court adjudicated X's motion to compel on June 6. *See* ECF No. 65 ("June 6 Order"). The Court did not, however, address Media Matters's undue burden and harassment objections to separately searching for or producing donor-related documents. Instead, the Court ordered X to raise any issues regarding Media Matters's amended discovery responses "in a subsequent good faith conferral with Defendants, and if necessary, the Court can resolve any remaining dispute following this effort." *Id.* at 1. The Court also expressly deferred ruling on "any First Amendment privilege concerns until [a privileged-document] protocol is established and responsive documents have been identified." *Id.* at 2. The Court ordered Media Matters "to log any responsive documents as privileged and deliver to Plaintiff no later than June 14, 2024." *Id.*

---

[2] Because the question whether constitutional privileges apply in litigation between private parties was purely legal, Media Matters briefed and invited a ruling on this dispute. ECF No. 62 at 5–9.

When the Court issued its June 6 Order, discovery was scheduled to close on July 29, leaving the parties less than eight weeks to review all potentially responsive documents, log privileged documents, litigate privilege disputes, and depose witnesses about the contents of produced documents. *See* ECF No. 14. Recognizing that "discovery in this case has raised disputes and privileges that have already required litigation and that, despite the parties' diligence, will certainly require additional time to finally resolve," X proposed and filed a joint motion on June 10 to extend all discovery deadlines. *See* ECF No. 66 at 3; *see also id.* n.3 (jointly proposing "to allow additional time for the review of documents for potential privilege assertions and production of privilege logs"). The Court granted that motion in part, requiring the parties to reach a privilege log ***agreement*** by June 14 (but not actually exchange logs on that date); extending the close of discovery to December 31, 2024; and granting the parties' request to extend until June 28 the deadline for Media Matters to provide its "First" privilege log. *See* ECF No. 69.

The parties subsequently agreed to mutual privilege log exchanges on September 6, October 11, November 15, and December 17. Carusone App. Supp. Defs.' Resp. to X Mot. to Compel at 4–5, 9, ECF No. 88 ("Carusone App. 1"). The parties further agreed that, "[w]ith respect to the June 28 'Deadline for Defendants to Provide First Privilege Log and Associated Documents,' the parties understand that on June 28 Defendants will produce a log of any privileged documents identified to date, along with copies of any redacted documents referenced therein, with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement." X App. 1 at 179. Because the Court stated that it "routinely declines to convert an agreement of the parties into a court order," ECF No. 72 (declining to docket parties' proposed protective order), the parties agreed that the privileged-documents protocol should not be docketed. Carusone App. 1 at 4–5. Consistent with the parties'

App.662

agreement and their shared understanding of the Court's June 6 order and related extensions, Media Matters served its first privilege log on June 28 identifying privileged documents identified to date, and a second log on September 6 identifying additional privileged documents, including dozens of donor-related documents over which Media Matters asserted a First Amendment privilege. App. Supp. Mot. to Compel Texas Press Shield Law Docs. at 216–340, ECF No. 97 ("X App. 2")

On August 2, the parties conferred about Media Matters's first privilege log. In advance of that call, counsel for X explained that its "goal is to only burden the Court with the substantive legal issues of privilege—we hope we can work out the procedural mechanics of discovery together in good faith." *Id.* at 175. During the conferral, counsel for X expressed a desire to expedite judicial resolution of the dispute over donor-related documents and counsel for Media Matters confirmed that motions practice regarding the donor-related privilege need not await document identification and logging, because the issue was squarely presented by Media Matters's privilege-based responses and objections to an interrogatory requesting identification of Media Matters's "top 20 funding sources." *Id.* at 174. Since the Court's June 6 Order, counsel for X has not sought to confer about Media Matters's burden-and harassment-based objections to independently searching for donor documents that are not otherwise related to X's claims.

On August 30, X moved to overcome Media Matters's assertion of First Amendment privilege over donor-related information. *See* ECF No. 84. Contrary to what the parties had discussed, however, the motion did not raise the privilege dispute that had ripened when Media Matters served its interrogatory responses on July 19, and it did not focus on the substantive legal dispute of privilege. Instead, X preemptively raised an array of alleged procedural defects with Media Matters's anticipated assertion of privilege over documents, before (wrongly) reiterating its

position that constitutional privileges do not apply in discovery between private parties and that the privilege can be overcome here.

The Court granted X's motion. *See* Order at 22. First, it found that Media Matters waived the First Amendment privilege by—in the Court's view—failing to comply with the June 6 Order, produce a privilege log, and raise the First Amendment privilege in the Second Amended Responses and Objections. *Id.* at 6. The Court then determined that, had the privilege not been waived, it would likely apply in this litigation, but X nonetheless overcame the privilege because the requested documents could be relevant to jurisdiction, punitive damages, and Defendants' mental state. *Id.* at 19–21. The Court ordered Media Matters to provide "all documents in its care, custody, or control response to RFPs 17, 18, 21, and 35 no later than October 7, 2024." *Id.* at 22. Media Matters now seeks to stay this order pending appeal.

## LEGAL STANDARD

Courts in the Fifth Circuit consider four factors in ruling on a motion to stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

## ARGUMENT

### I.   Defendants are likely to succeed on the merits.

#### A.   The First Amendment prohibits compelling Defendants to produce donor identifying information.

It is undisputed that this controversy concerns Defendants' First Amendment rights—the Court found they "satisf[ied] their burden of showing the potential for infringement" of such rights

through compelled disclosure of donor information. Order at 18; *see also* ECF No. 89. But the Court erred in finding Defendants must surrender these rights in the face of overbroad and vague discovery requests for a straightforward reason: Plaintiffs have never explained—and this Court never found—how the "identity" and "residence" of donors is even relevant to the claims or defenses in this case, never mind of sufficient importance to overcome Defendants' First Amendment rights. *See Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1144 (9th Cir. 2009).

To be sure, X urged, and this Court agreed, that X is entitled to take discovery regarding "jurisdiction, the mens rea, and actual malice." Order at 20. But the Court's generalized observations that "donor related documents" "*may* serve as proof of Defendants mental state," and "*may* show" purposeful availment of Texas, *id.* at 18, 20, does not reflect the "exacting scrutiny" the First Amendment demands before "impos[ing] a widespread burden on donors' associational rights." *Bonta*, 594 U.S. at 618; *see also e.g.*, *Campbell v. Clark*, 471 S.W.3d 615, 624 (Tex. App. 2015) (explaining actual malice requires publishing "a false statement of fact to a third party" regardless of the recipient's *identity*).[3]

X's own arguments illustrate the point. It argued below that "[i]f donors worked together with Defendants to harm X business model, X is entitled to learn about those efforts." ECF 91 at 10. X could have crafted a targeted request along these lines—but it did not. And it's after-the-fact guesswork about what documents could fall within its capacious requests fails to explain why X

---

[3] Contrary to Plaintiff's suggestion, Defendants did not categorically refuse to produce discovery on these topics based on their First Amendment rights. Defendants raised *other* categorical objections to these requests based on burden, proportionality, and harassment—objections this Court did not resolve in either its June 6 order or its September 27 order, *see infra* § I.B—but they agreed that they would log any assertion of First Amendment privilege on a document-by-document basis. X App. 1 at 177.

is entitled to wholesale discovery of *all* "donor and financial documents," Order at 21, including the name and home address of each donor. Even in some hypothetical scenario where such donor information could bear on *Defendants'* mindset—and X has wholly failed to proffer such an example—the First Amendment requires "exacting scrutiny" before such disclosure. *Bonta*, 594 U.S. at 616. The Court's order permits X to do precisely what *Bonta* prohibits: "indiscriminately sweep[] up the information of *every* major donor [to Defendants] with reason to remain anonymous," even where their identity has little or no bearing on the topics identified by Defendants. *Id.* at 616–17.

X's request for jurisdictional discovery does not change the matter. For one, Defendants have never refused to produce information related to donations from Texans, including the number and sum of donations received from Texas, as well as the number of donors located in Texas. And neither the Court's order nor X have explained why or how X's claims about the articles at issue could "arise out of or relate to" its donor information—including names and specific addresses of donors in Texas and everywhere else. The Court's conclusion that donor related documents "may still be indicative of Defendants' efforts to solicit Texans generally or to support other journalistic endeavors, both of which may show Defendants purposefully availed themselves of a Texas forum," Order at 20, ignores the fact that specific jurisdiction requires some nexus with the claims at issue in the case. *See Johnson*, 21 F.4th at 318 (explaining a plaintiff's claim must "arise out of or relate" from a defendant's forum contacts). In short, neither the Court's order nor X explain how such information is possibly even *relevant* to a claim or defense, never mind so critically important as to require casting aside First Amendment rights. *See Perry*, 591 F.3d at 1144 (holding that "First Amendment interests" require a "more demanding heightened relevance standard").

For the same reasons, this Court placed far too much reliance on the Supreme Court's holding in *Herbert v. Lando* and the Fifth Circuit's holding in *Miller v. Transamerican Press, Inc. See* Order at 19-20. In *Herbert*, the Supreme Court simply rejected the idea that the First Amendment prohibits *any* inquiry into a defamation defendant's state of mind. *See* 441 U.S. 153, 165 (1979) (explaining that courts "have traditionally admitted any direct and indirect evidence relevant to the state of mind of the defendant"). In doing so, it stressed that such evidence may be sought because it is "essential to proving liability that the plaintiff *focus on the conduct and state of mind of the defendant.*" *Id.* at 160 (emphasis added); *see also id.* (explaining the purpose of such inquiry is into whether "the defendants . . . knew or had reason to suspect that their damaging publication was in error"). That does not explain how a *third party donor's* information and identity bears on proving a plaintiff's case or a defendant's state of mind. The Fifth Circuit said much the same in *Miller*, explaining a defamation plaintiff was entitled to know the identity of a specific informant because the "only way [plaintiff could] establish malice and prove his case [wa]s to show that [the defendant] knew the story was false or that it was reckless to rely on the informant." *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 726 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980). The situation here is nothing like *Miller*—the identity and full gamut of Media Matters's donors and financial support has no bearing on the alleged falsity of the disputed articles.

In fact, *Miller* cuts strongly *against* the Court's sweeping disclosure order. The Fifth Circuit supplemented that decision by adding the following paragraph:

> We do not mean to intimate that a plaintiff will be entitled to know the identity of the informant merely by pleading that he was injured by an untrue statement. Before receipt of such information the plaintiff must show: substantial evidence that the challenged statement was published and is both factually untrue and defamatory; . . . and that knowledge of the identity of the informant is necessary to proper preparation and presentation of the case.

App.667

*Miller*, 628 F.3d at 932 (per curiam). Thus, the plaintiff in *Miller*—to learn the identity of a single informant directly responsible for supplying the allegedly defamatory information—had to both come forward with "substantial evidence" of falsity and establish the informant's identity was "necessary" to their case. *Id.* Merely "pleading" injury was not enough. *Id.* Yet the Court here has compelled the disclosure of a broad sweep of third-party identities without even requiring Plaintiff to cogently explain how they could bear on actual malice or damages.

At bottom, the Court's decision to broadly compel the production of *all* "donor related documents" without any limitation fails to show the "narrow[] tailor[ing]" necessary to impose such a "widespread burden on donors' associational rights." *Bonta*, 594 U.S. at 618. Simply finding that some of these materials "may" be relevant under Rule 26 falls far short of the "exacting scrutiny" the First Amendment demands. *Id.* at 616; *Perry*, 591 F.3d at 1144.[4]

Finally, the mere existence of a protective order does not remedy this lack of exacting scrutiny or narrow tailoring. The Court's order has the effect of requiring Defendants to turn over broad swathes of admittedly protected information, *see* Order at 17–18, regardless of its relationship to the articles or claims at issue in this case. That prospect is "disturbing." *Whole Woman's Health v. Smith*, 896 F.3d 362, 373 (5th Cir. 2018) (setting aside a "discovery order [that] forces" disclosure of sensitive information "*to a public policy opponent*" (emphasis in

---

[4]  Particularly egregious is the Court's refusal to even consider permitting Defendants to "redact the names of any individual" donors from such records. *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *7 (W.D. Tex. Dec. 9, 2022) (recognizing redaction of identifying information would permit "compliance with [] discovery obligations" while protecting against "harassment, membership withdrawal, or discouragement of new members"). The Court nowhere explained how such targeted redactions would deprive X of the ability to seek discovery that "may serve as proof of Defendants mental state" or show purposeful availment of Texas. *See* Order at 18–19. The Court's compelled disclosure thus failed to meet the First Amendment's "narrow tailoring requirement." *Bonta*, 594 U.S. at 612. "That was error." *Id.*

original)). And the Supreme Court has stressed that "disclosure requirements can chill association 'even if there is no disclosure to the general public.'" *Bonta*, 594 U.S. at 616 (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)) (cleaned up). That observation has particular force in this litigation, which began with the world's richest man threatening to file a "thermonuclear" lawsuit, his pronouncement that Defendants are "evil," and his promise to use his limitless resources to "pursue not just [Media Matters], but anyone funding that organization." *See* ECF No. 87 at 20 & n.6. Further still, various state actors—including two state attorneys general—have launched parallel attacks on Defendants in a transparent effort to curry favor with Musk and his fanbase. *Id.* at 1 & n.1.[5] The Court's conclusion that Defendants' First Amendment interests are "reduced" here—in a potentially existential struggle to sustain their journalism against a subject of their reporting who seeks to silence its critics—elides this record altogether. *See* Order at 20.

In sum, Defendants are likely to show that the Court's sweeping and categorical discovery order runs afoul of the First Amendment's requirements. *See Bonta*, 594 U.S. at 611; *Whole Women's Health*, 896 F.3d at 375; *Perry*, 591 F.3d at 1144. At minimum, they have made a sufficiently strong showing on their First Amendment arguments to warrant preserving the status quo pending appeal. *See Veasey*, 769 F.3d at 892.

**B.     The district court did not meaningfully address the myriad other objections Defendants raised to the document requests at issue.**

Defendants are further likely to prevail on appeal because—setting aside the First Amendment—the Court did not meaningfully address Defendants' other objections to X's discovery requests. X's own motion to compel directed itself solely towards Defendants' assertion

---

[5] *See generally Media Matters for Am. v. Bailey*, No. 24-CV-147 (APM), 2024 WL 3924573, at *2, 10–11 (D.D.C. Aug. 23, 2024) (observing "X did not deny that advertising in fact had appeared next to the extremist posts" and "did not deny the basic premise of the article"); *Media Matters for Am. v. Paxton*, No. 24-cv-147 (APM), 2024 WL 1773197, at *18–19 (D.D.C. Apr. 12, 2024).

of First Amendment privilege. *See* ECF No. 84. Defendants disputed that issue, but also pointed out even if the privilege "does not apply," production was still improper because "the requests are harassing and seek irrelevant information." ECF No. 87 at 19. The Court's order acknowledges these same objections, *see* Order at 9-10, yet never really resolves them. That was clear error. *E.g.*, *Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.*, 59 F. App'x 830, 839–40 (7th Cir. 2003) (finding district court abused its discretion by granting motion to compel "in [its] entirety" where court "did not consider" objections).

As explained, *see supra* pp. 4-5, Defendants initially raised a host of objections to the document requests at issue, including both on privilege grounds and on traditional Rule 26 bases like overbreadth, burden, lack of particularity, harassment, and relevance. *See* X App. 1 at 47–49 (RFPs 17, 18), 51–52 (RFP 21), 69–70 (RFP 35). Consistent with circuit law, *see Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) (explaining as a "general rule" that "blanket" assertions are disfavored and instead should be "specifically asserted with respect to particular documents" (citations omitted); *see also infra* § I.C.3, Defendants amended their responses to omit privilege claims, having made clear to X that they would assert such claims on a document-by-document basis in privilege logs. X App. 1 at 177. But they still maintained a host of other objections to the requests under Rule 26. *See id.* at 128–30 (RFP 35), 201–06 (RFPs 17, 18, 21). And they pressed these objections in response to X's motion to compel. *See* ECF No. 87 at 19–20. X did not argue—and this Court did not find—that any of these objections are waived. Yet, without fully addressing these objections, the Court ordered Defendants to produce "all documents in its care, custody, or control responsive to RFPs 17, 18, 21, and 35," Order at 22, without respect to relevance, scope, burden, or duplication.

To be sure, the Court acknowledged these "arguments are pertinent to the *general harassment* objection," which it then overruled in reliance on the protective order. *Id.* at 12–13 (emphasis added). But beyond that drive-by ruling on the "general harassment objection," the Court never grappled with Defendants' outstanding objections, including relevance, scope, and burden. A simple review of the requests at issue illustrates why the Court's haste on this score was error. RFP 17, for example, seeks:

> Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

X. App. 1 at 201. In effect, this request seeks the identity of *every* donor of *any kind* from *any time* from *any place*. But the identity and home address of every donor for any purpose cannot *conceivably* be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Yet RFP 17 calls for just such information and—under this Court's order—Defendants must produce "all" such responsive documents in mere days. The Court simply never addressed the overbreadth, vagueness, or relevance of this request.

X's other overbroad requests yield similar absurdities. RFP 35 seeks:

> All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

X. App. 1 at 69. Given that a "potential donor" could be anyone in the world—and potentially anyone on Media Matters's various listservs—RFP 35 seeks any document or communication with any number of people that "in any way" regard a host of broad topics, regardless of its conceivable relevance to this litigation. In brushing past Defendants' various other objections, the Court's order nonetheless compels the production of such irrelevant and burdensome material. *See* Order at 22.

**C.     Defendants did not waive their First Amendment rights.**

In finding that Media Matters waived the First Amendment privilege, the Court misapprehended the record, misapplied the relevant caselaw, and overlooked the repeated warning from the Supreme Court that an effective waiver of a constitutional right requires that the waiver be an "intentional relinquishment or abandonment of a known right or privilege." *Zerbst*, 304 U.S. at 464; *see also Brady v. United States*, 397 U.S. 742, 748 (1970) (holding valid waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"); *United States v. Shea*, 508 F.2d 82, 85 (5th Cir. 1975) ("Courts indulge every reasonable presumption against waiver of a fundamental right[.]"). There is no basis for waiver here, where Media Matters has vigorously pressed its objections—including on the basis of privilege—to X's requests for donor-related information, all while, to the best of its ability and understanding, adhering to the discovery schedule negotiated by the parties and ordered by the Court.

**1.     Media Matters did not refuse to comply with the June 6 Order.**

The Court's finding that Media Matters failed to comply with the June 6 Order improperly conflates two aspects of that order—Defendants' obligation to log documents over which it was asserting First Amendment privilege, June 6 Order at 2, and *Plaintiff's* obligation to confer and seek resolution on Defendants' objections based on overbreadth, relevance, and harassment, *id.* at 1. Contrary to the Court's suggestion, the June 6 Order did not implicitly override Defendants' objections by requiring them to search for and log the full scope of Plaintiff's overbroad, irrelevant, and harassing requests within a couple of weeks.

*First*, Media Matters has never "refused to conduct any search" for any documents that may be responsive to the donor-related requests for production. *Contra* Order at 7. Rather, as Media Matters explained to X, Media Matters has undertaken a comprehensive search for all

documents potentially relevant to X's claims, including all documents related to this litigation, X
Corp., the X social media platform, Elon Musk, and Linda Yaccarino. Thus, Media Matters's
search necessarily collected *all documents* from likely custodians potentially responsive to RFP
Nos. 21 and 35, which ask for documents related to X, Musk, and Yaccarino. Because RFP Nos.
17 and 18 substantially overlap with RFP Nos. 21 and 35, virtually all of the documents collected
as responsive to RFP Nos. 21 and 35 will also be responsive to RFP Nos. 17 and 18.

The only limitation on Media Matters's collection, as relevant here, has been its refusal to
*separately* search for documents that have nothing to do with the claims in this case but might
nonetheless be responsive to RFP Nos. 17 and 18. This search limitation was not grounded in
privilege, but rather in the burden- and harassment-related objections that Media Matters included
in its operative responses and objections. X App. 1 at 201–06. To the extent X contests those
objections, it was *X*'s obligation to "first raise those issues in a subsequent good faith conferral
with Defendants" and to then move to overcome the objections. June 6 Order at 1. Because X has
not conferred about Media Matters's burden and harassment objections or moved to overcome
them, Media Matters was under no obligation to forfeit them.

The fact that Media Matters never refused to search for any donor-related documents is
readily apparent from the Court's own citations to Media Matters's briefing and correspondence
between counsel for its contrary finding. *See* Order at 7 n.6. Media Matters's response to X's
motion to compel explained that X was "wrong to assert" that Media Matters "refused to log
[responsive] documents" because Media Matters had already searched for and collected documents
likely to be responsive to X's donor-related requests, and those documents would be logged as
they surfaced in the ordinary course of the review process. ECF No. 87 at 7 n.3. Likewise, the
counsel correspondence *rejected* X's insinuation that Media Matters was refusing to search for or

App.673

log any responsive documents. *See* X. App. 1 at 176 ("Third, we are confused by your refrain that Defendants 'refuse to log all responsive documents.'"); *id.* at 179 (reiterating that donor-related documents would appear on a privilege log "to the extent the documents are responsive to search terms generated by other requests").

Ultimately, nothing in the Court's June 6 Order purported to overrule Media Matters's non-privilege-based objections in the course of deferring a ruling on the privilege dispute until a ripe controversy arose. The Court simply required Media Matters to log "any responsive documents" in order to generate a live dispute. June 6 Order at 2.[6] Because Media Matters has logged responsive donor-related documents, it plainly did not "refuse[] to conduct any search," Order at 7, and thus it did not refuse to comply with the Court's order.

*Second*, Media Matters not only sought an extension of the original June 14 deadline for a privilege log—this Court *granted* the extension. In recounting the relevant events, this Court said that "Defendants do not dispute the Court ordered them to deliver a privilege log to Plaintiff no later than June 14, 2024." Order at 6–7 (cleaned up). That much is correct; June 14 was the original deadline. June 6 Order at 2. But then the Court's summary makes a serious error. It said, "There is no indication Defendants needed extra time to search and log documents beyond the ordered or agreed upon time," and further asserted that Defendants did not "ask for an extension of the deadline to comply with the Court's order." Order at 7. That is directly contradicted by the record. On June 10—four days after the Court set the initial June 14 privilege log deadline—X filed a joint motion to extend all discovery deadlines, explaining the parties' shared position that they required

---

[6] The Court's use of "any" reflected the possibility that some requests might not generate any responsive documents. *See* X App. 1 at 206 (in response to RFP No. 21, responding that "Media Matters does not receive any dedicated funding that is restricted for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino").

App.674

"additional time for the review of documents for potential privilege assertions and production of privilege logs." ECF No. 66 at 3 n.3. The Court granted that request in relevant part, extending discovery by over five months and postponing the deadline for Defendants' "First" privilege log—necessarily recognizing that more would follow—until June 28. *See* ECF No. 69 at 1.

| Accordingly, the Court **MODIFIES** the schedule in this matter as follows: | |
|---|---|
| ESI Protocol, Protective Order, and Privilege Log Agreement | June 14, 2024 |
| Deadline for Defendants to Provide First Privilege Log and Associated Documents | June 28, 2024 |
| Initial Expert Designation & Report | ~~June 24, 2024~~ January 14, 2025 |

In other words, the parties agreed that Media Matters needed time beyond June 14 (and beyond June 28) to log *every* privileged document potentially responsive to X's broad discovery requests. ECF No. 66 at 3. Because the Court granted the requested extensions, Media Matters did not disobey the Court by using the extra time it requested and that the Court granted. *See id.*

### 2.     Media Matters did not fail to produce a privilege log.

Media Matters has produced privilege logs adequately describing the logged documents. The Court contends that Media Matters "did not produce the privilege log at all." Order at 9. That is not correct. Media Matters produced its first privilege log on June 28, as ordered ECF No. 69 at 1; it produced a second privilege log on September 6, as the parties agreed; and it intends to produce subsequent privilege logs in October, November, and December, pursuant to the privileged-document protocol that the Court ordered the parties to negotiate. *See* June 6 Order at 2. The Court also appears to fault Media Matters for failing to substantiate its First Amendment objections with sufficient evidence and explanation in its privilege logs. *See* Order at 8–9. But X has not raised any issue with the manner in which Media Matters has designated donor-related documents as privileged by the First Amendment; the Court has not detailed any deficiency in the

App.675

evidence and explanation in Media Matters's logs; and, in any event, Media Matters's privilege logs fully comply with the parties' privilege-document protocol and all operative rules.

### 3.    Media Matters did not improperly fail to raise the First Amendment privilege in its amended discovery responses.

Finally, Media Matters did not waive its privilege objections by failing to identify privileged documents in its amended responses and objections. The Court appears to have confused—and conflated—a party's obligations when responding to a request for production with the party's obligations when logging responsive documents on a privilege log. When objecting to a document request, a party may "explain what portion of [the] document request is objectionable and why . . . and affirmatively explain *whether* any responsive information or documents have been withheld." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) (emphasis added). That is what Media Matters did: its amended responses and objections explained that the donor-related requests, on their face, sought irrelevant information and were harassing, and that Media Matters did not intend to produce donor-related documents on that basis. X App. 1 at 201–06. When withholding a document based on privilege, in contrast, a party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A). Again, that is what Media Matters did. X App. 1 at 201–06.

According to the Court, however, Media Matters was required to describe the withheld documents in its initial responses and objections. *See* Order at 9. That is inconsistent with discovery procedure. Responses and objections inform the search for documents, and so they are necessarily served before any documents are reviewed. How could a party provide a description of "documents/emails" withheld for privilege, *see id.* (quoting *United States v. Fluitt*, 99 F.4th

753, 763–64 (5th Cir. 2024)), before the party has reviewed the documents and emails? Because it plainly could not do so, it need not do so.

Caselaw is not to the contrary. Notably, the two cases the Court cites for a party's failure to comply with Rule 26(b)(5)(A)—its basis for waiver here—concerned a dispute about the party's *privilege log*, not its responses and objections. *See Fluitt*, 99 F.4th 753 at 763–64 (privilege log did not disclose whether parties to purported attorney-client communications were attorneys, clients, or neither); *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (privilege log did not disclose sufficient information to determine whether purported attorney-client communications contained legal advice). The only other discovery case the Court cited—*Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143 (M.D. Fla. Mar. 8, 2016)—held that a party waived objections included in its initial responses when the party failed to argue those objections in response to a motion to compel. *See id.* at *3. Here, there is no question that Media Matters asserted the First Amendment privilege in response to the motion to compel—indeed, that was the primary basis for Media Matters's opposition. *See* ECF No. 87 at 8–19.

Media Matters's operative responses and objections explicitly provided that Media Matters's review of "documents responsive to Plaintiff's Discovery Requests is still ongoing" and that Media Matters reserved its right to supplement or amend the responses and objections "to assert additional objections or privileges . . . on a document-by-document basis." X App. 1 at 185–86. Far from waiver, this was textbook compliance with the Federal Rules. *See La Union Del Pueblo Entero*, 2022 WL 17574079, at *9 (holding "assertions of privilege must 'be specifically asserted' on a document-by-document basis," as "the relevance and need for the document clearly depend on the contents of the document itself") (quoting *Taylor Lohmeyer Law Firm*, 957 F.3d at 510).

App.677

**D.    Defendants are likely to establish appellate jurisdiction or, alternatively, that mandamus jurisdiction is appropriate.**

Finally, Defendants' likelihood of success on the merits is not undercut by any future dispute over appellate jurisdiction. The Fifth Circuit has held that denial of a First Amendment privilege claim satisfies the collateral order doctrine and permits immediate appeal. *See Whole Woman's Health*, 896 F.3d at 367. Beyond the discovery context, the Fifth Circuit has also repeatedly "reaffirmed its precedent holding that interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine." *Id.* at 368 (collecting cases); *cf. La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023) (concluding denial of legislative privilege permitted immediate appeal).[7]

## II.    A stay preserving the status quo will prevent irreparable injury and serve the public interest.

"A stay pending appeal 'simply suspend[s] judicial alteration of the status quo,' so as to allow appellate courts to bring 'considered judgment' to the matter before them and 'responsibly fulfill their role in the judicial process.'" *Tex. All. for Retired Ams. v. Hughes*, 976 F.3d 564, 566 (5th Cir. 2020) (quoting *Nken*, 556 U.S. at 427, 429); *see also Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017) (granting stay pending appeal because "a temporary stay will allow this court to . . . rule on the merits while preserving the status quo"). Here, such a stay will serve to both prevent irreparable harm to Defendants and serve the public interest by allowing for careful consideration of the substantial First Amendment interests implicated in Defendants' privilege assertions.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.). Courts

---

[7] Even if the Court's order did not constitute a "final" order for purposes of the collateral order doctrine, Defendants are also likely to prevail under mandamus jurisdiction. *See Perry*, 591 F.3d at 1134 (suggesting the likely availability of collateral order jurisdiction but choosing to grant relief under mandamus).

App.678

routinely conclude that an injury to a party's First Amendment interests will constitute irreparable injury justifying a stay pending appeal or an injunction. *See, e.g.*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) (holding that plaintiff "has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment . . . rights"); *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013); *Book People, Inc. v. Wong*, 91 F.4th 318, 340–41 (5th Cir. 2024). This Court should do the same, particularly given its own acknowledgment that disclosure risks infringing upon Defendants' rights. *See* Order at 17–18. And should this Court's order compelling disclosure of donors' information remain in place, the harm will be immediate and irreparable. Existing donors will face a substantially increased risk of threats, harassment, and reprisals, as Media Matters's own employees have already experienced. *See* ECF No. 87 at 14–16. Those donors have a strong interest in maintaining the privacy of their affiliation with Media Matters. *See Bonta*, 594 U.S. at 616–17 (noting the "gravity of the privacy concerns" in holding that disclosure requirements can chill association even when disclosure is not to general public and assurances of confidentiality are present). And Media Matters, too, has its own interest in protecting its association with the individuals who fund its First Amendment-protected journalism. That is particularly the case when many of the communications X seeks simply have nothing to do with the articles at issue in this lawsuit.

Defendants' risk of irreparable harm is particularly acute here because the First Amendment privilege, like other privileges, is obviated upon disclosure. *See, e.g.*, *Damon J. Baldone, LLC v. Starr Surplus Lines Ins. Co.*, No. 22-1903, 2024 WL 4188482, at *2 (E.D. La. Sept. 13, 2024) ("[I]f Defendants were required to produce privileged and/or protected communications or documents, they risk suffering immediate, irreparable harm. Once information subject to the attorney-client privilege or work product doctrine is disclosed, the right of

App.679

nondisclosure cannot be restored."); *see also* Order at 2, *Perry v. Schwarzenegger*, No. 09-17241 (9th Cir. Dec. 3, 2019), ECF No. 31 (finding appellants would be irreparably injured and granting stay pending appeal where appellants brought First Amendment privilege claim); *Perry*, 591 F.3d at 1137 (holding that injury to "First Amendment rights" would "not be remediable on appeal"). The inability to restore Defendants' First Amendment right to nondisclosure would render any injury here truly irreparable.

For similar reasons, "the public interest is best served" here "by maintaining the status quo." *Ruiz v. Estelle*, 650 F.2d 555, 569 (5th Cir. 1981). Indeed, the "public interest always lies in a correct application of the First Amendment." *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 317 (5th Cir. 2021) (cleaned up) (granting stay pending appeal); *see also Opulent Life Church*, 697 F.3d at 298 ("[I]njunctions protecting First Amendment freedoms are always in the public interest."). In this case, preserving the staying quo and staying the compelled production of documents and information will serve that interest by providing adequate time for the Fifth Circuit to carefully consider Defendants' substantial First Amendment privilege defenses. *See Campaign for S. Equality v. Bryant*, 773 F.3d 55, 58 (5th Cir. 2014) (granting stay pending appeal, holding that "a detailed and in depth examination of this serious legal issue" was warranted before disturbing status quo).

## III. A stay will not injure, much less substantially injure, Plaintiff.

Conversely, Plaintiff will not be harmed at all by a stay. As explained, Plaintiff is simply not entitled to a full accounting of Media Matters's donors and all of Media Matters' communications with them. The documents at issue are protected by the First Amendment and largely irrelevant to this dispute, and the requests themselves are plainly a harassing attempt to stifle Media Matters's ability to fund its journalistic endeavors. *See supra* § I. Any harm Plaintiff could conceivably face is thus outweighed by Defendants' likelihood of success. *See, e.g.*, *Planned*

App.680

*Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (finding that plaintiffs' "strong showing that their interests would be harmed by staying the injunction" to be outweighed "given the State's likely success on the merits" and ordering stay).

But even if Plaintiff were to ultimately prevail on this issue, the only harm it would face from a stay would be a modest delay in receiving a subset of documents at issue in this matter while the appeal is pending. Discovery in this matter is scheduled to close in approximately three months. *See* ECF No. 69 at 2. Defendants have already made numerous productions over the course of this litigation, and they will continue to make productions concerning all other subjects in this case while their appeal on this issue is pending. Any harm to Plaintiff from a stay would be minimal, if not nonexistent—and certainly not substantial or irreparable. *See Veasey*, 769 F.3d at 892; *Freedom from Religion Found.*, 4 F.4th at 316–17 (granting stay where preserving status quo would not "irreparably injure" non-moving party). This Motion should accordingly be granted.

## CONCLUSION

For the reasons stated above, this Court should stay its Order compelling the production of Defendants' donor-related financial information pending the outcome of Defendants' appeal of the Order. In the alternative, this Court should postpone its October 7 production deadline by two weeks to allow Defendants additional time to pursue a stay in the Fifth Circuit.

Dated: October 1, 2024

Respectfully submitted,
*/s/ Andrew LeGrand*

App.681

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch* (DC 1014541)
Christopher D. Dodge* (DC 90011587)
Jacob D. Shelly* (DC 90010127)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

App.682

**CERTIFICATE OF SERVICE**

On October 1, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

# Doc. 101

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **X CORP.,**<br><br>         **Plaintiff,**<br><br>    **v.**<br><br>**MEDIA MATTERS FOR AMERICA,**<br>**et al.,**<br><br>         **Defendants.** | **Civil Action No. 4:23-cv-01175-O** |

**NOTICE OF APPEAL**

Notice is hereby given that Defendants Media Matters for America, Eric Hananoki, and Angelo Carusone appeal to the U.S. Court of Appeals for the Fifth Circuit from this Court's September 27, 2024 order compelling the production and disclosure of documents Defendants contend are privileged under the First Amendment, *see* Doc. 98.

Dated: October 1, 2024.

Respectfully submitted,
*/s/ Andrew LeGrand*

1                                                                    App.685

GIBSON, DUNN & CRUTCHER LLP
Andrew LeGrand (TX 24070132)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com

Theodore J. Boutrous, Jr.* (CA 132099)
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed* (NY 4382040)
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna* (WA 42612)
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch* (DC 1014541)
Christopher D. Dodge* (DC 90011587)
Jacob D. Shelly* (DC 90010127)
250 Massachusetts Avenue NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law
swardpackard@elias.law

* Admitted *pro hac vice*

*Counsel for Defendants Media Matters for America, Angelo Carusone, and Eric Hananoki*

App.686

## CERTIFICATE OF SERVICE

On October 1, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrew LeGrand*
Andrew LeGrand

App.687

# Doc. 102

**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 4:23-cv-01175-O** |
| | § | |
| MEDIA MATTERS FOR AMERICA, et al., | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court is Defendants' Motion to Stay Order to Compel (ECF No. 99), filed October 1, 2024. Defendants ask the Court to rule on this motion by Wednesday, October 2, 2024, at 12:00 p.m. However, given deadline to produce documents is October 7, 2024, the Court will permit Plaintiff the opportunity to be heard before reaching a decision on the motion.

To permit the Court to expeditiously resolve this dispute, Plaintiff is directed to respond no later than **October 3, 2024, at 5 p.m.** CST. Defendants shall reply no later than **October 4, 2024, at 5 p.m.**

**SO ORDERED** on this **1st day** of **October, 2024**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**