No. 24-10900

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

X CORP.,
*Plaintiff-Appellee*,
v.
MEDIA MATTERS FOR AMERICA, ERIC HANANOKI,
and ANGELO CARUSONE,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of Texas
Case No. 4:23-cv-01175-O

**PLAINTIFF-APPELLEE'S RESPONSE TO
MOTION FOR STAY PENDING APPEAL**

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
STONE | HILTON PLLC
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

JOHN C. SULLIVAN
S|L LAW PLLC
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

*Counsel for Plaintiff-Appellee
X Corp.*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies pursuant to Fifth Circuit Rule 27.4 and Rule 28.2.1 that the following listed persons and private entities have an interest in the outcome of this case, including all private practice lawyers and private law firms currently engaged in this litigation.[1]

Plaintiff-Appellee X Corp. is represented by Stone Hilton PLLC attorneys Judd E. Stone, II, Christopher D. Hilton, Ari Cuenin, Michael Abrams, Alexander Mark Dvorscak, Cody C. Coll, and John Clay Sullivan, S|L Law PLLC.

Defendants-Appellants Media Matters for America, Eric Hananoki, and Angelo Carusone, represented by Elias Law Group LLP attorneys Abha Khanna, Aria Branch, Christopher D. Dodge, Daniela Lorenzo, Elena Alejandra Rodriguez Armenta, Elisabeth C. Frost, Jacob D. Shelly, Omeed Alerasool, and Samuel Ward-Packard; and Gibson Dunn & Crutcher LLP attorneys Andrew Patrick LeGrand, Trey Cox, Amer S. Ahmed, Anne Marie Champion, Jay P. Srinivasan, and Theodore J. Boutrous, Jr.

*/s/ Judd E. Stone II*
Judd E. Stone II
*Counsel of Record for Plaintiff-Appellee X Corp.*

---

[1] The district court has already rejected Defendants' contention that Tesla is an interested party. Mot. ii n.2. In doing so, the court ordered Defendants to pay X's attorney's fees for having to respond to Defendants' motion raising the issue (through a request that X amend its certificate of interested parties) because the motion lacked any basis in law. ECF No. 81 at 7.

**INTRODUCTION**

Defendant-Appellant Media Matters for America ostensibly asks this Court to stay the district court's order to protect not only its First Amendment rights, but the First Amendment rights of nonprofit organizations throughout the Circuit. Yet what it asks for is both smaller and larger than that. Its motion is smaller because the district court did not hold that Media Matters lacks a First Amendment privilege regarding materials related to its donors; rather, the court held that Media Matters *waived* that privilege by stubbornly refusing to comply with its discovery orders, and that X would have overcome Media Matters' qualified privilege in any event. Its motion is larger because to grant Media Matters a stay, this Court must conclude that Media Matters is likely to prevail on five independent, necessary questions. Media Matters must show first that the district court's order is immediately appealable (which it is not); then, that the district court abused its discretion three separate times in holding that Media Matters waived its First Amendment privileges based on three separate willful failures to comply with the court's discovery orders (which it did not); and, finally, that the district court abused its discretion when it concluded that X's need for the documents it seeks outweighed Media Matters' qualified First Amendment privilege (which, again, it did not).

Media Matters' newfound advocacy for First Amendment rights everywhere is not without irony. For months, Media Matters targeted Plaintiff-Appellee X

Corp.'s relationships with major advertisers because Media Matters disagreed with X's free-speech approach to content moderation on X's social media platform. This campaign culminated in several defamatory articles claiming that advertiser safety standards on the X platform failed to prevent users from seeing ads paired with fringe content. A substantial number of advertisers discontinued or reduced their advertising relationships with X as a result, so X brought this suit to vindicate its economic interests and correct Media Matters' falsehoods.

In the district court, X sought information about Media Matters' donors—who they are, where they reside, and what Media Matters has told them—because that information is critical to X's prosecution of its claims. But recognizing that Media Matters believed this information to be particularly sensitive, X agreed that donor-related documents could be afforded "attorney's eyes only" status under the parties' agreed protective order. In June, the district court ordered Media Matters (along with its co-defendants Angelo Carusone, Media Matters' president, and Eric Hananoki, the articles' author) to log all allegedly privileged documents responsive to X's requests for production about Defendants' donors. For reasons that remain unclear, even after repeated reminders by X and multiple rounds of briefing below and now in this Court, Defendants ignored the plain directive in the court's order. Rather than seek clarification or reconsideration, Defendants simply refused to comply.

Defendants now seek relief from the district court's September 27 order concluding that their months-long refusal to abide by the court's prior order waived any putative qualified First Amendment privilege. Defendants face a steep hurdle to obtain reversal. The district court's order correctly held that Defendants waived any First Amendment privilege they may have enjoyed on three separate and independently sufficient grounds, and Defendants almost certainly cannot show that the district court abused its discretion on all three bases, as they must. Even if Defendants could somehow persuade this Court to set aside the district court's waiver-related holdings, they would then have to show that the district court further abused its discretion when it determined that Defendants' qualified First Amendment privilege, if any, must yield to X's demonstrated need for documents to prove that this case belongs in the district court and that Defendants acted with actual malice when they targeted advertiser relationships with X. That kind of careful balancing is the bread-and-butter of trial courts' discovery work, and Defendants have not shown any error, let alone an abuse of discretion, much less the clear and indisputable abuse of discretion that they must show to obtain relief here.

Because Defendants have not made the weighty showing that they are likely to persuade this Court to resolve each of these five independent and sufficient matters in their favor, they cannot show a likelihood of success on the merits—let alone that they are entitled to a stay pending appeal. Their motion should be denied.

# FACTUAL AND PROCEDURAL BACKGROUND

In November 2023, Defendants published two articles falsely representing that blue-chip advertisers' content was organically being "placed" next to hateful content on X's popular social media platform. App.28-31, 33-35. Although Defendants publicly described the ad pairings published in the November articles as appearing after "us[ing] Twitter the way a normal user would," App.23, and the advertisements being "found," App.33, on the platform, these statements were not true. Instead, the pairings only occurred by deliberate manipulation of X's algorithm, resulting in pairings that "constituted 0.0000009090909 percent of impressions served on the day in question," all but one of which were never seen by anyone other than Defendants' own account. App.36.

Defendants' deliberate campaign of targeting X's business relationships with its advertisers was successful, with many withdrawing from X's platform as a result. App.28-31, 37-38. X thereafter brought claims against Defendants for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. App.37-43.

After discovery commenced, X served requests for production. App.246. Defendants generally brushed them aside. *See* App.52 (X's motion discussing Defendants' refusal to ever produce anything in response to 14 out of X's 47 requests); *see generally* App.272-303 (Defendants' responses). After months of

back-and-forth discussions that did not result in substantial progress, App.52, 152, X filed a motion to compel, App.47. X specifically sought production of all documents responsive to its four requests for production about Defendants' donors and communications with those donors. *See* ECF No. 59-1. X likewise asked the district court to overrule Defendants' vagueness, undue burden, and harassment objections that were made with respect to the same requests. App.56-58.

After full briefing, the district court deferred ruling on Defendants' First Amendment privilege objections to the production of donor-related information. App.204. But the court also unambiguously ordered that "Defendants must create and deliver a privilege log of *any* documents being withheld from production to Plaintiff." App.205 (emphasis added). This log was to be fully completed and "deliver[ed] to Plaintiff no later than **June 14, 2024**." App.204.

While Defendants' compliance deadline was pending, the parties met and conferred regarding a joint agreed protective order to maintain the confidentiality of documents that comprised trade secrets or commercial information that would not be otherwise known publicly. ECF No. 70 at 2. Defendants were specifically concerned about protecting information related to their donors and negotiated with X for this information to be specifically described in the protective order as Confidential Attorney Eyes Only. *See, e.g.*, App.168. This agreement prevents X from disclosing the information to anyone who is not an attorney-of-record or

otherwise described in the agreement. ECF No. 70 at 2, 5-7. Although the district court declined to convert the agreement into an order, it emphasized that the parties were able to agree without court involvement and that documents subject to the agreement could be later filed under seal, assuming the standard for doing so was met. App.216. The parties and the district court all understand this agreement to be binding. App.645.

Despite the district court's orders, Defendants refused to search for donor-related information responsive to X's donor-related requests. App.332 (Defendants' counsel discussing "[Defendants'] refusal to independently search for donor related documents"); App.335 (counsel informing X that "Defendants are not separately searching for donor-related documents"). Consequently, review of Defendants' June 28, 2024 privilege log reveals *zero* entries reflecting documents responsive to X's RFPs 17, 18, 21, and 35 requesting information related to Defendants' donors. App.499-526.

On multiple occasions, X registered its disagreement with Defendants' approach, *see, e.g.*, App.332-33, and X eventually had little choice but to ask the district court to compel Media Matters to comply with its months-old order. App.219. After full briefing, the district court granted the motion, finding that Defendants waived their assertion of First Amendment privilege three times over,

and alternatively concluding that X had overcome Defendants' asserted associational interests. App.624-46. These proceedings followed.

## STANDARD OF REVIEW

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). As such, it is an "extraordinary remedy" left to the Court's equitable discretion. *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019). The traditional factors that courts consider in evaluating a stay request include: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 433 (cleaned up). "The first two factors are usually the most important." *Bryant*, 919 F.3d at 303.

## ARGUMENT AND AUTHORITIES

### I. Defendants' Motion Is Premature.

As an initial matter, a stay should be denied under Federal Rule of Appellate Procedure 8(a)(2)(A)(ii) because Defendants did not allow the district court to rule on their stay motion before filing it with this Court. *See, e.g.*, *Rhone v. City of Texas City*, No. 22-40551, 2022 WL 4310058, at *1 (5th Cir. Sept. 19, 2022) (per

curiam). "A party *must* ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal . . . ." Fed. R. App. P. 8(a)(1)(A) (emphasis added). Defendants claim that waiting for the district court to act on their stay motion would be "impracticable" under Rule 8(a)(2)(A)(i). Mot. 10. Yet Media Matters waited until October 1 to ask the district court to stay its September 27 discovery order, inexplicably squandering four days of their ten-day deadline for production. The court then set a prompt briefing schedule—requiring X's response on October 3 and Defendants' reply on October 4—that would enable it to rule expeditiously, before the October 7 deadline for production. *See* App.689.

Whatever exigencies now exist are a product of Defendants' own delay in seeking relief from the district court, and their stay motion should be denied as procedurally unsound. *See, e.g.*, *Boston Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Boston*, 996 F.3d 37, 44, 50 (1st Cir. 2021).

## II.   Defendants Have Not Made a Strong Showing of a Likelihood of Success on the Merits.

This Court is unlikely to reverse the district court's September 27 order. There is no appellate jurisdiction, and Defendants barely try to show that they can meet the much more demanding standard that would justify a writ of mandamus. Beyond that, this Court is unlikely to conclude that the district court abused its discretion by enforcing its June order requiring Defendants to log responsive documents—let alone that the district court abused its discretion thrice over.

Finally, the district court properly balanced Defendants' assertion of First Amendment interests against X's demonstrated need for the documents at issue. Defendants' arguments to the contrary fault the court's initial order requiring a log of all responsive documents. Those assertions, which should have been brought to the district court's attention months ago, cannot carry the day.

### A. The Court lacks jurisdiction over Defendants' appeal, and the Court is unlikely to grant mandamus relief.

Defendants cannot show a likelihood of success if the Court lacks jurisdiction to proceed to the merits. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 599 (5th Cir. 2016). Federal courts have jurisdiction to review "final decisions of the district courts," 28 U.S.C. § 1291, but as a general matter, "discovery orders do not constitute final decisions under § 1291 and are not immediately appealable." *A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n*, 233 F.3d 895, 897 (5th Cir. 2000); *see also* 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3914.23.

Defendants claim otherwise, insisting that the court's September 27 order satisfies the collateral-order doctrine, Mot. 22, which "permits appeals of interlocutory decisions (a) that are conclusive, (b) that resolve important questions separate from the merits, and (c) that are effectively unreviewable on appeal from the final judgment," *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018). Their jurisdictional contention misses the mark in two respects. First, the

9

district court's order resolved an issue that is intertwined with the merits; the entire reason X pursued donor-related information is to prove up its claims. Documents showing that Media Matters solicited donors in Texas would refute Media Matters' position that the district court lacks jurisdiction and is an improper venue to resolve X's claims. And on the merits, Media Matters' solicitation of donations from groups or persons hostile to X would supply potentially potent evidence of malice.

Moreover, because Defendants are parties, they have an adequate remedy by appeal: the Court could remedy any error by remanding the case for a new trial. *See Mohawk Industries v. Carpenter*, 558 U.S. 100, 109 (2009). *Mohawk* is instructive. There, the Supreme Court addressed whether a district court order granting a motion to compel the discovery of information based on the waiver of attorney-client privilege was appealable under the collateral order doctrine. *Id.* It was not. The Supreme Court highlighted that courts "routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system." *Id.* at 108-09. The Court "readily acknowledge[d] the importance of the attorney-client privilege" but nonetheless found that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege." *Id.* The same should be true here with respect to the qualified First Amendment privilege that Defendants have claimed.

Defendants' authorities are inapposite because they each involve *third parties* attempting to appeal a discovery order. That was a crucial consideration in *Smith*, for example, which involved what the Court described as the *sui generis* issue of whether a religious organization, the Texas Conference of Catholic Bishops, could be compelled to turn over purely *internal* communications. *Id.* at 368. The Court emphasized that "a new trial order can hardly avail a third-party witness who cannot benefit directly from such relief." 896 F.3d at 367-68. The Fifth Circuit made similar observations when it allowed non-party legislators to appeal a district court's order overruling a legislative-privilege objection. *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023).

In short, Defendants cite to no Fifth Circuit authority extending the collateral-order doctrine to allow for an immediate appeal from an adverse discovery order like the one the lower court issued. Existing authority suggests the exact opposite. *See, e.g.*, *Mohawk*, 558 U.S. at 109; *Piratello v. Philips Electronics N. Am. Corp.*, 360 F.3d 506, 508 (5th Cir. 2004) ("[A] party that wishes to immediately appeal a discovery order 'must [first] refuse compliance, be held in contempt, and then appeal the contempt order.").

Defendants are therefore likely to prevail only if the Court construes their appeal as a mandamus petition and then grants relief under that far more rigorous standard. As they acknowledge (at 23), their entitlement to a writ of mandamus must

be "clear and indisputable" before the Court can grant relief. *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008). For the reasons set forth below, there was more than sufficient grounds for the district court to find waiver and that X had overcome a qualified privilege. There is no basis for the extraordinary remedy of mandamus.

### B.     The Court did not abuse its discretion in finding waiver.

Defendants' motion barely grapples with the abuse-of-discretion standard of review that governs discovery orders. *See Williams v. Boeing Co.*, 23 F.4th 507, 514 (5th Cir. 2022). Under that standard, this Court will reverse a trial court's "order only if it is 'arbitrary or clearly unreasonable,' and the complaining party demonstrates that it was prejudiced by the ruling." *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000). Defendants' invocation of *Smith* (at 10-11) for the proposition that a more careful examination is required in cases implicating the First Amendment ignores that *Smith* (a) did not involve a protective order shielding relevant documents from everyone but a handful of attorneys, and (b) concerned distinct issues at the intersection of the Religion Clause and non-party discovery. 896 F.3d at 373. *Smith* does not stand for the notion that a defendant can avoid its discovery obligations merely by invoking the First Amendment.

Thus, even if the Court determines that it has jurisdiction, the Court is likely *not* going to find that the district court's September order was arbitrary or clearly unreasonable. The court concluded that "Defendants plainly ignored this Court's

Order by refusing to search for and log documents responsive to RFP Nos. 17, 18, 21, and 35." App.630. This finding was based on the clear language of the court's order, which required Defendants to "create and deliver a privilege log of any documents being withheld from production to Plaintiff" pursuant to those requests, App.205, and Defendants' repeated assertions that it would not search for or log such responsive documents, App.631. As the district court noted, "no identified case involving First Amendment privilege supports Defendants' decision to refuse to search for responsive documents." App.632. In other words, before the Court can even reach the First Amendment issues that Defendants' motion for stay frontloads, it must address two more basic questions: first, whether the district court reasonably interpreted its own order; and second, whether the district court reasonably imposed consequences for Defendants' failure to comply with that order.

On the first score, a "district court has 'broad discretion' to construe its own pretrial orders," *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1334 (11th Cir. 2005), and a "district court's interpretation of its own [prior] order is properly accorded deference on appeal when [that] interpretation is reasonable," *Stansell v. López*, 40 F.4th 1308, 1311 (11th Cir. 2022). After all, the district court "is obviously in the best position to interpret its own order." *Satyam Computer Servs. v. Venture Global Eng'g, LLC,* 323 F. App'x 421, 430 (6th Cir. 2009) (citation omitted)).

Here, the district court's order required Defendants to log responsive documents. App.204. In context, that order served a critical purpose: Once Defendants had logged responsive documents as privileged, the court could adjudicate the merits of any dispute over those designations. Nothing in the order, or in the way that issue was framed, gave Defendants leeway to blow off the search for responsive documents altogether. Although Defendants now assert that they did not separately conduct searches for responsive documents because of their other objections made under Rule 26, that strategy call cannot be squared with the simple instruction that the court issued. As the district court pointed out, if Defendants believed the court should have addressed those burden and harassment objections before requiring a log of responsive documents, Defendants had a recourse: they could have sought reconsideration or clarification of the June order. App.631. Either approach would have been an appropriate way to resolve the issue. But otherwise, "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). Parties that "make private determinations of the law and refuse to obey an order generally risk [] contempt even if the order is ultimately ruled incorrect." *Id.*

The district court was well within its discretion to find waiver. District courts have "broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Keplar v. Google, LLC*, 346 F.R.D. 41, 53 (N.D. Tex. 2024) (Horan,

M.J.). In fact, for violating its order, the district court could have imposed more serious sanctions on Defendants. *See Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions."). It instead chose a measured approach, avoiding formal sanctions, that was commensurate with the severity of Defendants' intransigence.

Indeed, the district court appropriately supported its waiver findings with reference to precedent that a "finding of waiver is especially warranted when a party opposing discovery has acted with 'unjustified delay, inexcusable conduct, [or] bad faith.'" App.631 (quoting *Janvey v. Alguire*, No. 3:09-CV-724-N-BQ, 2018 WL 11362638, at *6 (N.D. Tex. Oct. 17, 2018) (Bryant, M.J.)). The district court also had ample factual basis to back up its findings. The order on X's first motion to compel was issued on June 6 and mandated compliance by June 14. App.204. As of today's filing, X still has not seen a privilege log with all documents responsive to its requests for donor-related information. This is not an instance of a slight or understandable delay. Several months have elapsed, yet X is still unable to even test Defendants' assertion of First Amendment privilege as to donor information on a document-by-document basis.

Relatedly, the district court correctly found that Defendants "did not produce a privilege log adequately describing the documents as required by Rule 26" and that

"[t]his failure constitutes waiver in its own right." App.632; *see also Johnston v. Transocean Offshore Deepwater Drilling, Inc.*, No. CV 18-491, 2019 WL 1558040, at *2 (E.D. La. Apr. 10, 2019) (when a defendant "fail[s] to provide a privilege log" and "fail[s] to properly substantiate [its] objections by submitting evidence necessary to sustain its burden of proof to [its] these objections," privilege is also waived); *see also Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. CV SA-07-CA-996-OLG, 2009 WL 10713559, at *3 (W.D. Tex. Aug. 11, 2009) (the "[f]ailure to provide a privilege log" supporting generalized or catch-all privilege objections waives a privilege claim). And rounding out the district court's waiver findings, the district court carefully examined Defendants' operative objections and responses and held that Defendants failed to adequately preserve the privilege. App. 633-34.

Defendants' rebuttal rises and falls on the parties' submission of a joint motion to extend some of the deadlines in the district court's scheduling order. Mot. 19-20. But nothing in that motion, App.207, or in the court's order granting it in part, App.216, expressly or impliedly superseded the court's requirement that Defendants log responsive donor-related documents and communications. All it did was extend the deadline for Defendants to file a privilege log by two weeks. App.213. And again, to the extent Defendants detected any ambiguity, it was incumbent on them as the parties bound by a court order to seek clarification from the court. *Meyers*, 419 U.S. at 458. For its part, following the court's June order, X repeatedly reiterated

its position that Defendants had an ongoing, affirmative obligation to log responsive documents. App.333-34. Defendants cannot claim surprise that X brought its concerns with Defendants' recalcitrant discovery conduct to the district court's attention—especially after Defendants submitted two privilege logs that highlighted their continued refusal to fully comply with the court's order.

### C. The district court did not abuse its discretion in overruling Defendants' First Amendment objections.

Because Defendants are unlikely to overcome the district court's waiver findings, no stay can issue irrespective of Defendants' substantive First Amendment argument. *See* App.637, App.646 (finding waiver). So while Defendants devote the bulk of their motion criticizing the court's First Amendment analysis, this Court need not reexamine this determination at all.

But even if this Court were to address the merits, there would still be no grounds for a stay. To start, the district court rejected X's arguments that the First Amendment did not apply in this context, App.641, and held X to a standard of exacting scrutiny—the very standard that Defendants have argued should apply here. *See* App.641-42; App.671. Thus, there was no application of an incorrect legal standard that could justify an abuse-of-discretion finding. *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011).

The district court proceeded to balance the competing interests at stake under the framework set out in Defendants' authorities: the importance of the information

sought to the issues in the case, the substantiality of the First Amendment interests at stake, the availability of the information from alternative sources, and whether the request is carefully tailored to avoid unnecessary interference with protected activities. App.642 (citing *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010)). In short, Defendants concede that the district court applied the right standard but disagree with the court's analysis of how that standard shakes out on these facts.[2]

In their motion for stay, Defendants do not cite any authority suggesting that the court abused its discretion in its balancing analysis. Defendants invoke *Perry*, for example, but in that case, the district court applied the wrong legal standard. 591 F.3d at 1164. And in *Americans for Prosperity Foundation v. Bonta*, the Supreme Court discussed the associational chill from "each *governmental* demand for disclosure" in a "dragnet" regime opening state access to all charitable groups' major donors regardless of alleged wrongdoing. 594 U.S. 595, 618 (2021) (emphasis added). But as X has explained, there is no governmental action here, let alone a governmental demand for documents. If there were, then a motion to compel any discovery request would constitute a governmental demand for documents.

---

[2] For avoidance of doubt, X reiterates its view that the First Amendment's protections do not apply to discovery between private parties and preserves that argument for future stages of this appeal.

Defendants also seize on stray language from both cases to assert that the district court failed to address the breadth of X's requests. Mot. 8-10. That contention only hurts Defendants. As explained above, if they took issue with the scope of X's requests, they could have moved for reconsideration of the district court's June order, explaining their view that searching for and logging responsive documents would not be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Alternatively, Defendants could have searched for and logged all responsive documents and then argued on a document-by-document basis that the balancing test should come out in their favor. Either approach would have teed up all of Defendants' objections for resolution, but Defendants chose neither. In the absence of a proper privilege log, there was nothing to balance.

Lastly, to the extent the district court *could* conduct a balancing act on the feeble record that Defendants provided, its reasoning was sound. The court thoughtfully considered the claims and defenses at issue and determined that Defendants' qualified First Amendment privilege must yield. App.641-46. Defendants' arguments to the contrary prove too much. They contend, for example that "[i]nformation about third-party donors has no clear bearing on *Defendants'* mindset," Mot. 13, but that assertion is hard to take seriously. For example, if a donor wrote a large check to Media Matters conditioned on publishing one or more articles defaming X, that communication would be relevant to, if not dispositive of,

Defendants' intent. Likewise, if Defendants solicited donations from individuals publicly known to be antagonistic to X or Elon Musk immediately before or after the publication of defamatory articles, that connection would support X's claim that Defendants acted with malice and intended to cause the harm that they did. For these and other reasons, the district court properly considered that the specific types of documents that X sought had significant connection to the underlying factual and legal disputes. Defendants have not shown that this Court is likely to undo those conclusions.

## III. The Remaining Factors Counsel Against a Stay Pending Appeal.

Before the Court may enter a stay pending appeal, it must also consider whether Defendants will be irreparably injured absent a stay, whether issuance of a stay will substantially injure X, and where the public interest lies. *Nken*, 556 U.S. at 433. Courts often conclude that an injury to a party's First Amendment interests will constitute irreparable injury justifying a stay pending appeal or an injunction if there will be a First Amendment injury. Mot. 22-23. As X has explained elsewhere, and as the court observed, the parties have already agreed to a protective order allowing for the classification of documents as "Confidential" and "Attorney's Eyes Only." App.645-46. Such precautions obviate any risk of irreparable harm. *See Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987) (holding that, with entry of protective

order that protects members' identities from public filings, "public disclosure is minimal, and the threat to first amendment rights is inconsequential").

The remaining considerations favor X. The trial date in this case has already been postponed once, and the district court is unlikely to countenance any further continuances. As the district court noted when it denied Defendants' motion to stay discovery, "[a]ny delays imposed by a stay would undermine [the] speedy resolution" of this case. *See* ECF No. 54 at 15. X intends to use the documents that the district court has required Defendants to produce to inform its general trial strategy and buttress its arguments in support of jurisdiction, venue and the merits. Given Defendants' repeated delays in timely providing documents, *see, e.g.*, App.47, ECF No. 96, X can ill afford even more hurdles in obtaining access to responsive documents that the district court has long ordered to be logged or produced. The public interest lies in "the just, speedy, and inexpensive determination" of this proceeding. Fed. R. Civ. P. 1. A stay would undermine those aims.

## IV.    The Court Should Decline to Enter an Administrative Stay.

"Because an administrative stay precedes a ruling on a stay pending appeal, the *Nken* factors are obviously on the court's radar, and unsurprisingly, they can influence the stopgap decision, even if they do not control it." *United States v. Texas*, 144 S. Ct. 797, 799 (2024) (Barrett, J., concurring). The *Nken* factors

overwhelmingly favor X, *see supra* Parts II & III, which means the Court should decline to enter an administrative stay as well.

## CONCLUSION

Defendants' motion for a stay pending appeal should be denied.

Dated: October 3, 2024             Respectfully submitted.

*/s/ Judd E. Stone II*
Judd E. Stone II
Christopher D. Hilton
Ari Cuenin
Michael R. Abrams
**STONE | HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

**CERTIFICATE OF SERVICE**

On October 3, 2024, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Judd E. Stone II*
Judd E. Stone II

**CERTIFICATE OF COMPLIANCE**

This document complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,023 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Judd E. Stone II*
Judd E. Stone II