**No. 24-10900**

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

X CORP.,
*Plaintiff-Appellee,*

v.

MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, and ANGELO
CARUSONE,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas
(Case No. 4:23-cv-01175-O)

## OPENING BRIEF OF DEFENDANTS-APPELLANTS MEDIA
## MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO
## CARUSONE

*(Counsel listed on following page)*

GIBSON, DUNN &
CRUTCHER LLP
Gregg Costa
811 Main Street, Suite 3000
Houston, TX 77002
T: (346) 718-6649
F: (346) 718-6620
gcosta@gibsondunn.com

Andrew LeGrand
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com
tcox@gibsondunn.com

Theodore J. Boutrous, Jr.
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch
Christopher D. Dodge
Jacob D. Shelly
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

*Counsel for Defendants-
Appellants Media Matters for
America, Angelo Carusone, and
Eric Hananoki*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies pursuant to Fifth Circuit Rule 27.4 and Rule 28.2.1 that the following listed persons and private entities have an interest in the outcome of this case, including all private practice lawyers and private law firms currently engaged in this litigation. Pursuant to the fourth sentence of Rule 28.2.1, government officials and entities are not included in this certificate. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Defendants-Appellants:** Media Matters for America, Eric Hananoki, and Angelo Carusone, represented by Elias Law Group LLP attorneys Abha Khanna, Aria Branch, Christopher D. Dodge, Daniela Lorenzo, Elena Alejandra Rodriguez Armenta, Elisabeth C. Frost, Jacob D. Shelly, Omeed Alerasool, and Samuel Ward-Packard; and Gibson Dunn & Crutcher LLP attorneys Andrew Patrick LeGrand, Trey Cox, Gregg Costa, Amer S. Ahmed, Anne Marie Champion, Jay P. Srinivasan, and Theodore J. Boutrous, Jr.

**Plaintiff-Appellee:** X Corp. and X Corp.'s stockholders.[1] X Corp. is represented by S | L Law PLLC attorney John Clay Sullivan and Stone Hilton PLLC attorneys Alexander Mark Dvorscak, Ari Cuenin, Christopher D. Hilton, Cody C. Coll, Jude E. Stone, II, and Michael Abrams.[2]

*/s/ Gregg Costa*
Gregg Costa

---

[1] X Corp. has disclosed the "persons and entities who are owners/shareholders of X Holdings Corp." in other litigation. *See* Resps.' Supp. R. 7.1 Corp. Disclosure Statement and Certification Pursuant to Local Rule 3-15, *Anoke v. Twitter, Inc.*, No. 3:23-cv-02217-SI (N.D. Cal. June 9, 2023), ECF No. 36-4.

[2] Defendants have asserted that Tesla is an interested party in this matter, *see* ROA.1030–57, which Plaintiff disputes, *see* ROA.1256–79. The district court ruled against Defendants and determined that Tesla was not a "financially interested" party. *See* ROA.1315–17.

## STATEMENT REGARDING ORAL ARGUMENT

This case warrants oral argument, which is scheduled for February 13, 2025. This case involves important questions of First Amendment privilege. Oral argument would aid in resolution of the case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................. iii

TABLE OF AUTHORITIES ....................................................................... v

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................... 3

STATEMENT OF THE ISSUES ................................................................ 4

STATEMENT OF THE CASE ................................................................... 4

SUMMARY OF ARGUMENT ................................................................ 16

STANDARD OF REVIEW ...................................................................... 19

ARGUMENT ........................................................................................... 21

   I.   This Court has jurisdiction over this appeal. .................................. 21

      A.   This Court has interlocutory jurisdiction over this appeal. ....... 21

      B.   This Court should alternatively exercise its mandamus
           jurisdiction. ........................................................................... 25

   II.   The First Amendment protects Media Matters's donor
       information. ........................................................................... 27

      A.   The district court erred by compelling disclosure of First
           Amendment-protected materials. .......................................... 27

      B.   Media Matters did not waive its First Amendment rights. ...... 39

   III.  X's document requests are also impermissible under Rule 26,
       which the district court neglected to address. ................................. 51

      A.   The district court clearly erred by failing to address Media
           Matters's Rule 26 objections. ............................................... 52

      B.   X's requests violate the basic relevance and
           proportionality requirements of Rule 26. .............................. 53

      C.   X's requests have no purpose but to harass Media Matters
           and its donors. ...................................................................... 58

CONCLUSION ....................................................................................... 61

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bradley ex rel. AJW v. Ackal,*
    954 F.3d 216 (5th Cir. 2020) ............................................................... 24

*Ams. for Prosperity Found. v. Bonta,*
    594 U.S. 595 (2021) ................................................................. *passim*

*Backe v. LeBlanc,*
    691 F.3d 645 (5th Cir. 2012) ............................................................... 23

*Bose Corp. v. Consumers Union of U.S., Inc.,*
    466 U.S. 485 (1984) ........................................................................ 19

*Brady v. United States,*
    397 U.S. 742 (1970) .................................................................... 18, 40

*Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San
    Francisco Cnty.,*
    582 U.S. 255 (2017) ........................................................................ 32

*Brown v. Socialist Workers '74 Campaign Comm. (Ohio),*
    459 U.S. 87 (1982) ........................................................... 1, 28, 29, 30

*In re Bryan,*
    645 F.2d 331 (5th Cir. 1981) ............................................... 2, 18, 40, 51

*In re Burlington N., Inc.,*
    822 F.2d 518 (5th Cir. 1987) ............................................................... 25

*Cheney v. U.S. Dist. Court for D.C.,*
    542 U.S. 367 (2004) ........................................................................ 25

*Clemens v. McNamee,*
    615 F.3d 374 (5th Cir. 2010) ............................................................... 32

*Coinmach Corp. v. Aspenwood Apartment Corp.,*
    417 S.W.3d 909 (Tex. 2013) ............................................................... 56

*Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.*,
   59 F. App'x 830 (7th Cir. 2003) ........................................................ 53

*Coomer v. Byrne*,
   No. 1:22-cv-01575-RM-SKC, 2024 WL 3570593
   (D. Colo. Jan. 8, 2024) ...................................................................... 32

*Crosby v. La. Health Serv. & Indem. Co.*,
   647 F.3d 258 (5th Cir. 2011) ............................................................. 56

*Cuomo v. Clearing House Ass'n, LLC*,
   557 U.S. 519 (2009) ........................................................................... 56

*Def. Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) ............................................................. 27

*EEOC v. BDO USA, L.L.P.*,
   876 F.3d 690 (5th Cir. 2017) ............................................................. 49

*Forbes Inc. v. Granada Biosciences, Inc.*,
   124 S.W.3d 167 (Tex. 2003) .............................................................. 56

*Garcia v. Padilla*,
   No. 2:15-cv-735-FtM-29CM, 2016 WL 881143
   (M.D. Fla. Mar. 8, 2016) ................................................................... 50

*In re Grand Jury Subpoena*,
   190 F.3d 375 (5th Cir. 1999) ............................................................. 25

*Hastings v. N.E. Indep. Sch. Dist.*,
   615 F.2d 628 (5th Cir. 1980) ............................................................. 29

*In re Hearst Newspapers, L.L.C.*,
   641 F.3d 168 (5th Cir. 2011) ............................................................. 24

*Heller v. City of Dallas*,
   303 F.R.D. 466 (N.D. Tex. 2014) ..................................................... 48

*Henry v. Lake Charles Am. Press, L.L.C.*,
   566 F.3d 164 (5th Cir. 2009) ............................................................. 24

*Herbert v. Lando,*
    441 U.S. 153, 165 (1979) ................................................................... 34

*Hickman v. Taylor,*
    329 U.S. 495 (1947) .......................................................................... 58

*Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n,*
    24 F.3d 754 (5th Cir. 1994) ............................................................. 20

*Johnson v. TheHuffingtonPost.com, Inc.,*
    21 F.4th 314 (5th Cir. 2021) ........................................................... 32

*Johnson v. Zerbst,*
    304 U.S. 458 (1938) ........................................................ 2, 32, 40, 51

*La Union Del Pueblo Entero v. Abbott,*
    68 F.4th 228 (5th Cir. 2023) ........................................................... 23

*La Union Del Pueblo Entero v. Abbott,*
    No. SA-21-CV-00844-XR, 2022 WL 17574079
    (W.D. Tex. Dec. 9, 2022) ................................................................. 50

*Lewis v. Crochet,*
    105 F.4th 272 (5th Cir. 2024) ......................................................... 23

*In re Lloyd's Reg. N. Am., Inc.,*
    780 F.3d 283 (5th Cir. 2015) ........................................................... 26

*Marceaux v. Lafayette City-Par. Consol. Gov't,*
    731 F.3d 488 (5th Cir. 2013) ....................................................... 3, 24

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995) .......................................................................... 28

*Media Matters for Am. v. Bailey,*
    No. 24-cv-147 (APM), 2024 WL 3924573
    (D.D.C. Aug. 23, 2024) ................................................................... 38

*Media Matters for Am. v. Paxton,*
    No. 24-cv-147 (APM), 2024 WL 1773197
    (D.D.C. Apr. 12, 2024) ..................................................................... 38

*Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*,
   No. A-11-CV-542-LY-AWA, 2013 WL 1293718
   (W.D. Tex. Mar. 26, 2013) ................................................................ 57

*Mi Familia Vota v. Ogg*,
   105 F.4th 313 (5th Cir. 2024) ............................................................ 23

*Miller v. Transamerican Press, Inc.*,
   621 F.2d 721, 726 (5th Cir.), *opinion supplemented on
   denial of reh'g*, 628 F.2d 932 (5th Cir. 1980) ................................. 35, 36

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ........................................................................... 21

*NAACP v. Alabama ex rel. Patterson*,
   357 U.S. 449 (1958) ........................................................................... 28

*Oppenheimer Fund, Inc v. Sanders*,
   437 U.S. 340 (1978) ........................................................................... 61

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010)....................................................... *passim*

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
   29 S.W.3d 74 (Tex. 2000) .................................................................. 56

*Salge v. Edna Indep. Sch. Dist.*,
   411 F.3d 178 (5th Cir. 2005).............................................................. 20

*United States v. Brown*,
   218 F.3d 415 (5th Cir. 2000).............................................................. 24

*United States v. Fluitt*,
   99 F.4th 753 (5th Cir. 2024) .............................................................. 49

*United States v. Shea*,
   508 F.2d 82 (5th Cir. 1975)................................................................. 3

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008).............................................................. 26

*Whole Woman's Health v. Smith,*
  896 F.3d 362 (5th Cir. 2018)......................................................*passim*

*X Corp. v. Media Matters for Am.,*
  120 F.4th 190 (5th Cir. 2024) ....................................................*passim*

**Statutes**

28 U.S.C. § 1291...............................................................................3, 21

**Other Authorities**

Fed. R. Civ. P. 26 ..........................................................................*passim*

Fed. R. Civ. P. 26(b)(1) ..................................................................53, 57

Fed. R. Civ. P. 26(b)(5)(A) .............................................................48, 49

Fed. R. Civ. P. 26(c)(1)..........................................................................53

Fed. R. Civ. P. 26(g)(1)(B) .....................................................................53

Fed. R. Civ. P. 26(g)(1)(B)(ii)................................................................58

Lindsay Kornick, *Elon Musk Calls Media Matters 'Evil
  Propaganda Machine' Ahead of Lawsuit*, Fox Business
  (Dec. 10, 2023), https://www.foxbusiness.com/media/elon-
  musk-calls-media-matters-evil-propaganda-machine-
  lawsuit .............................................................................................58

## INTRODUCTION

Before this case, no reported decision had compelled a nonprofit organization to turn over without even the prospect of redaction every document about its donors. That is because the First Amendment "protects against the compelled disclosure of political associations and beliefs." *Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 91 (1982); *see also Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 610–11 (2021). Despite this well-established principle, the district court ordered Defendants—Media Matters for America, its president Angelo Carusone, and its senior investigative reporter Eric Hananoki (collectively, "Media Matters")—to hand over to Plaintiff X Corp. "all documents and communications" revealing *all* of Media Matters's donors and donor solicitations "*of any kind.*" ROA.361, 2169 (emphasis added).

The district court erred by not applying the "exacting scrutiny" and "narrow[] tailor[ing]" that the First Amendment demands before a court may compel such disclosures "impos[ing] a widespread burden on donors' associational rights." *Bonta*, 594 U.S. at 618. The district court acknowledged that compelling such disclosure would burden Media Matters's First Amendment Rights. ROA.2164–65. But it brushed aside

such concerns based on conjecture that some responsive documents "may" bear on malice or jurisdiction in this business torts case, a far cry from the granular analysis that the First Amendment demands. The district court's order sets a troubling precedent for civic organizations of all stripes, raising the prospect that litigation can be deployed to unlock access to sensitive donor lists based on threadbare claims of relevance.

To evade the clear force of Media Matters's First Amendment privilege, X manufactured a claim that Media Matters had waived the privilege. That argument is wrong. Under no plausible reading of the record did Media Matters make "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). To the contrary, Media Matters has consistently and vigorously asserted its First Amendment rights from the very outset of this litigation, including in its responses and objections to X's discovery requests, in its privilege logs, and in response to X's motion to compel. The district court's finding to the contrary not only rests on conclusions at odds with the record, but also overlooks that "purported waivers of fundamental constitutional guarantees are subject to the most stringent scrutiny," *In re Bryan*, 645 F.2d 331, 333 (5th Cir. 1981), and that

"[c]ourts indulge every reasonable presumption against waiver of a fundamental right," *United States v. Shea*, 508 F.2d 82, 85 (5th Cir. 1975).

The district court could have avoided this intrusion on First Amendment rights. The "district court's order did not address Media Matters's Rule 26 objections" to X's discovery requests on grounds of relevance, overbreadth, burden, and harassment. *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 198 (5th Cir. 2024). That omission was clear error, particularly given the extraordinary invasiveness of X's far-ranging requests, which the motions panel readily recognized to "encompass irrelevant information." *Id.* at 199. Accordingly, the district court's order should be reversed.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court's order denying Appellants' assertion of their First Amendment privilege is "final" under the collateral order doctrine. *See e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018); *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 490 (5th Cir. 2013); *see also X Corp.*, 120 F.4th at 196.

## STATEMENT OF THE ISSUES

1.    Does this Court have jurisdiction under the collateral order doctrine over an appeal from a district court order that burdens First Amendment rights, or, alternatively, is Media Matters entitled to a writ of mandamus?

2.    Does the First Amendment protect Media Matters from being compelled to turn over all documents about its fundraising operations—including the name and residence of each of its donors?

3.    Did the district court clearly err by failing to resolve Media Matters's Rule 26 objections to X's discovery requests, which the motions panel found to be overbroad and seeking irrelevant information?

## STATEMENT OF THE CASE

### I.    X requests all of Media Matters's sensitive donor information.

Media Matters is a nonprofit media organization supported exclusively by private donors who share its mission of monitoring and reporting on misinformation in the media. In November 2023, Media Matters published on its website two articles reporting that X Corp.'s owner, Elon Musk, had apparently endorsed an antisemitic conspiracy theory and that X had failed to prevent advertisements from appearing

next to neo-Nazi and other extremist and conspiratorial content on its social media platform. Displeased with the reporting, Elon Musk promised a "'thermonuclear' lawsuit" against Media Matters, decried the organization as "an evil propaganda machine," and threatened to come after Media Matters's donors. ROA.333, 1969 (citations omitted). Two days later, X sued Media Matters in Texas for tortious interference with contract, business disparagement, and interference with prospective economic advantage. ROA.246–72.[3]

X's discovery requests sought documents far afield from any of these claims. In the requests at issue here, X demanded virtually all

---

[3] Media Matters moved to dismiss, asserting, among other arguments, that courts in Texas lack personal jurisdiction over claims brought by a California company against a D.C.-based organization and its Maryland-based reporter about online articles that were not written in Texas, did not mention Texas, and did not rely on any sources from Texas. ROA.278–315. Defendants subsequently sought a stay of discovery pending resolution of the motion to dismiss given the strength of their jurisdictional argument and the scope of X's discovery requests. ROA.332–43. On April 26, 2024, the district court denied the motion to stay. ROA.552–67. Four months later, the district court denied the motion to dismiss. ROA.1320–31. Defendants have since moved for interlocutory appeal. *See* ROA.1737–84, 2315–36; ECF No. 120. That motion is fully briefed and pending before the district court.

documents and communications that Defendants possessed about Media

Matters's donors:

> **RFP 17:** Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

> **RFP 18:** Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.

> **RFP 21:** All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.

> **RFP 35:** All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.[4]

ROA.361; ROA.548.

---

[4] RFP No. 35 was served as RFP No. 6 in X's second set of requests for production to Media Matters. For clarity, the parties have renumbered X's second set of requests to continue sequentially after X's first set of requests.

Media Matters served timely responses and objections notifying X that it would not produce documents in response to these four requests, even as it began producing documents in response to many of X's more than one hundred other document requests. ROA.1392–1448. Media Matters objected to these four requests on numerous grounds, including as overly broad and harassing under Rule 26. ROA.1410–15; ROA.1432–33. Media Matters also unambiguously stated that the requests sought "disclosure of sensitive financial and associational information protected *by the First Amendment privilege*, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights." *Id.* (emphasis added).

In conferrals about these objections, counsel for X baselessly contended that the First Amendment privilege does not apply in litigation between private parties. X also inquired about the extent to which Media Matters's objections were limiting its collection, search, and production of responsive documents. Counsel for Media Matters, in turn, (i) provided caselaw confirming the availability of First Amendment privileges, and (ii) agreed to amend its responses and objections to clarify that only its Rule 26 objections—and not its anticipated assertions of

privilege—would limit its document collection and review. ROA.819–20, 835–40, 881–82, 886–88, 913–18, 940–44.

Immediately after Media Matters alerted X that it would amend its responses and objections—but before Media Matters could serve the amendment—X moved to compel production of all responsive documents. ROA.584–606. In response, Media Matters explained that while the parties had a ripe dispute about whether X's donor-related discovery requests were harassing and unduly burdensome under Rule 26, the dispute about First Amendment privilege was not ripe because the parties had not yet logged any documents as privileged, or even agreed to a privilege-log protocol. ROA.792–801. Meanwhile, Media Matters served amended discovery responses restating that it would not produce donor-related documents on the grounds of burden, harassment, and overbreadth, while *expressly* reserving the right to assert its First Amendment privilege on a document-by-document basis in a privilege log, as the Federal Rules contemplate. ROA.819–20, 835–40, 881–82, 886–88.

**II.   The district court defers ruling on Media Matters's objections.**

In a June 6 order, the district court denied as premature X's motion to overrule Media Matters's Rule 26 objections. ROA.978–79. Instead of analyzing the merits of these objections, the court ordered X to "first raise those issues in a subsequent good faith conferral with Defendants, and if necessary, the Court can resolve any remaining dispute following this effort." *Id*. At no point since the district court's June 6 order has counsel for X sought to confer about Media Matters's Rule 26-based burden and harassment objections to independently searching for donor documents that are not otherwise related to X's claims.

The court also deferred ruling on "any First Amendment privilege concerns until [a privileged-document] protocol is established and responsive documents have been identified," and ordered Media Matters "to log any responsive documents as privileged and deliver to Plaintiff no later than June 14, 2024." *Id.* In other words, the court confirmed that the proper manner for Media Matters to assert its First Amendment privilege was on a document-by-document basis in a privilege log, rather than in objections and responses to the requests themselves.

At that time, discovery was scheduled to close on July 29, leaving the parties less than eight weeks to review documents potentially responsive to all discovery requests, log privileged documents, litigate privilege disputes, and depose witnesses about the contents of produced documents. *See* ROA.108. Recognizing that the parties required "additional time for the review of documents for potential privilege assertions *and production of privilege logs*," X proposed and filed a joint motion on June 10 to extend all discovery deadlines. *See* ROA.983 n.3 (emphasis added). While negotiating the joint motion, the parties agreed that a six-month extension of the discovery cutoff would provide sufficient time for both parties to search for, review, and log all documents, including donor-related documents. Specifically, the parties agreed that "on June 28 Defendants will produce a log of any privileged documents *identified to date, . . . with additional document productions and privilege logs to follow in accordance with the parties' forthcoming Privilege Log Agreement*." *See* ROA.1542 (emphasis added).

Accordingly, although the district court had previously set a June 14 deadline for Media Matters's privilege log, the parties proposed both extending that deadline to June 28 and modifying the deadline to require

Defendants only "to Provide [their] *First* Privilege Log." *Id.* The court adopted both of the proposed modifications. ROA.1009–10. The parties subsequently formalized a schedule to exchange privilege logs on September 6, October 11, November 15, and December 17. ROA.1620–21, 1625.[5]

Consistent with the court's orders and the parties' agreement, Media Matters served its first privilege log on June 28. Per the parties' agreement, that log lists all privileged documents *identified to date.* When donor-related documents were subsequently identified in Media Matters's ongoing document review process, they were slated for inclusion in the next scheduled privilege log on September 6.

On August 2, the parties conferred about Media Matters's first privilege log. In advance of that call, counsel for X explained that its "goal is to only burden the Court with the substantive legal issues of privilege—we hope we can work out the procedural mechanics of discovery together in good faith." ROA.1538. During the parties'

---

[5] Because the district court stated that it "routinely declines to convert an agreement of the parties into a court order," ROA.1024, the parties agreed not to docket the privileged-documents protocol. *See* ROA.1623–24.

conferrals and correspondence, X argued that Media Matters's assertion of privilege under the *Texas Press Shield Law* "is untimely and therefore waived." ROA.1649. Counsel for X made no such assertion as to Media Matters's donor-related documents. Instead, counsel reiterated X's position that the First Amendment privilege does not apply in litigation between private parties, asked when donor-related documents would be logged, and expressed a desire to expedite judicial resolution of the dispute over donor-related documents. *Id.* Counsel for Media Matters assured that document review, production, and logging was proceeding apace per the parties' agreement, and confirmed that motions practice on the donor-related privilege need not await document identification and logging, because the issue had sufficiently ripened through Media Matters's invocation of privilege in response to an interrogatory requesting identification of Media Matters's "top 20 funding sources." *See* ROA.1537. Counsel for X "agree[d]." ROA.1645.[6]

---

[6] Defendants' objection to this interrogatory was served two weeks before the parties' meet and confer and provided, in relevant part:

> Defendants object to Interrogatory No. 2 as being harassing and irrelevant to any claim or defense asserted in this litigation, and as

As scheduled, Media Matters provided a second privilege log on September 6. That log included dozens of donor-related documents privileged by the First Amendment, accompanied by a specific claim of privilege over each document. ROA.2051–147.

## III. The district court grants X's motion to compel.

On August 30—two months after receiving Media Matters's first privilege log, six weeks after receiving Media Matters's objection to Interrogatory 2, and one week before receiving Media Matters's next scheduled privilege log—X moved to overcome Media Matters's assertion of First Amendment privilege over documents responsive to RFP Nos. 17, 18, 21, and 35. ROA.1336–63.

But contrary to X's representations, that motion did not focus on the substantive legal dispute about the scope of the First Amendment privilege as applied to donor information, and it did not so much as mention the Interrogatory objection the parties had "agree[d]" had

---

calling for First Amendment privileged information. . . . [T]his Interrogatory represents a fishing expedition for highly sensitive and privileged information, the production of which would chill Defendants' exercise of their First Amendment speech and associational rights.

ROA.1509 (collecting cases).

generated a ripe dispute, ROA.1645. Instead, X raised for the first time an array of alleged procedural defects with Defendants' anticipated assertion of privilege over documents, before reiterating its position that the privilege was inapplicable. In response, Media Matters explained that it had not waived any First Amendment protections, that the donor information X demanded was privileged by the First Amendment, and that X's requests fell outside the scope of discovery. ROA.1579–1605.

The court granted X's motion. ROA.2148–69. First, it found that Media Matters waived the First Amendment privilege. ROA.2153–60. It then determined that, absent waiver, the privilege would likely apply, but that X overcame the privilege—and the underlying associational rights of Media Matters and its third-party donors—because some requested documents *could* be relevant to jurisdiction, punitive damages, and Defendants' mental state. ROA.2164–68. Without resolving Media Matters's remaining Rule 26 objections, the court ordered Media Matters to provide "all documents in [their] care, custody, or control in response to RFPs 17, 18, 21, and 35 no later than October 7, 2024." ROA.2169.

The district court denied Media Matters's motion to stay its order pending appeal.[7] In response to Media Matters's stay motion, the court denied having modified the June 14 privilege log requirement, ROA.2298, despite having previously "[r]ecogniz[ed] the volume and complexity of ongoing document discovery" and amending the "Deadline for Defendants to Provide First Privilege Log and Associated Documents" to "June 28, 2024," ROA.1009. It concluded that it was "undisputed" that Media Matters had not logged any documents as privileged under the First Amendment, ROA.2303, even though Media Matters had by that time produced a second privilege log identifying such documents and making concrete claims of privilege over each document, *see* ROA.2290 (noting that X "currently has a log from Defendant identifying privileged donor documents"); ROA.1590 n.3. And it summarily repeated its conclusion that the requested documents were not privileged. ROA.2306.

A motions panel of this Court stayed the order compelling disclosure pending resolution of this appeal. *X Corp.*, 120 F.4th at 199.

---

[7] It did, however, stay "this case" while Defendants requested a stay from this Court "to give the Fifth Circuit time to consider the request." ROA.2310.

Having confirmed its jurisdiction under the collateral order doctrine, the panel recognized that "X Corp.'s discovery requests are disproportional to the needs of the case" and "encompass irrelevant information." *Id.* at 196, 199. It therefore concluded that "Media Matters is likely to succeed on the merits of its appeal." *Id.*

## SUMMARY OF ARGUMENT

**I.**     This Court has jurisdiction. An unbroken line of precedent holds that district court orders impacting First Amendment rights are immediately appealable. *See Whole Woman's Health*, 896 F.3d at 368 (collecting authority). As the motions panel concluded, this appeal is on "firm ground" jurisdictionally. *X Corp.*, 120 F.4th at 196.

Even if the Court concludes it lacks jurisdiction under the collateral order doctrine, it should still reverse the district court's decision under its mandamus jurisdiction. Media Matters satisfies each requirement for a writ of mandamus. If the Court were to reject jurisdiction under the collateral order doctrine, that would mean Media Matters lacks any other adequate means of relief; the harm from disclosing its donor-related information cannot be remedied later. And granting mandamus is especially appropriate given the significance of this issue and the threat

the district court's order poses to organizations that rely upon private donations.

**II.**    Media Matters's donor information is protected by the First Amendment, and the district court erred by compelling its production.

**A.**    The district court erred by compelling production of Media Matters's donor information—including the name and address of every donor in the country—without any application of the exacting scrutiny required by the First Amendment. *See Bonta*, 594 U.S. at 608. Indeed, the district court *agreed* that compelling the production of such information would burden Media Matters's First Amendment rights, yet did so anyway based on undeveloped conjecture about how some unidentified subset of documents *might* be relevant to the case. The First Amendment demands far more granular scrutiny to ensure that any intrusion upon associational rights is "narrowly tailored," *id.*, and justified by a "substantial need" for such information, *Whole Woman's Health*, 896 F.3d at 374.

**B.**    Media Matters has not waived the First Amendment, and the district court clearly erred by concluding otherwise. Media Matters invoked the privilege in every iteration of its discovery responses and

objections, and it has logged privileged documents according to the timetable ordered by the court and agreed to by the parties. The district court modified its previous order requiring Media Matters to log privileged documents by June 14, and it invited the parties to negotiate their own privilege log schedule. The parties did exactly that, agreeing to regular privilege log exchanges through December 2024 to reflect the time and resources required to collect and review all responsive documents, including donor-related documents.

Media Matters did not waive First Amendment privilege by adhering to that negotiated schedule. Instead, Media Matters has conducted a comprehensive search and review of a broad swathe of documents—including donor-related documents—and logged privileged documents as they appeared in the document review stream. Under any standard—let alone "the most stringent scrutiny" applied to purported waivers of fundamental constitutional rights, *In re Bryan*, 645 F.2d at 333—the record does not support a finding of "voluntary" and "knowing" waiver of the First Amendment, *Brady v. United States*, 397 U.S. 742, 748 (1970).  The district court's contrary inferences were clear error.

**III.** The district court's order should also be reversed because X's overbroad and harassing document requests seek irrelevant information and are disproportionate to the needs of this case, rendering them impermissible under Rule 26. A motions panel of this Court already correctly stayed the district court's order on that basis, concluding that X's "discovery requests are disproportional to the needs of the case" and Media Matters is therefore "likely to succeed on the merits of its appeal." *See X Corp.*, 120 F.4th at 198–99. The sweeping overbreadth of X's requests and their inherently harassing nature are ample and independent grounds for reversing the district court's order.

## STANDARD OF REVIEW

A district court's discovery orders are typically reviewed "for abuse of discretion," and its legal conclusions are reviewed *de novo*. *Whole Woman's Health*, 896 F.3d at 369. In "cases raising First Amendment issues," however, "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Id.* (quoting *Marceaux*, 731 F.3d at 491–92); *accord Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (same)

(collecting authority). Accordingly, review of the First Amendment issue here is *de novo*. *See Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005) ("*De novo* is also our standard for reviewing district court rulings that concern First Amendment issues, in which instances we examine the whole record."). "This examination includes an independent review" of the "fact[ual] findings" made in support of the ruling on appeal. *Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n*, 24 F.3d 754, 755 (5th Cir. 1994) (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)), which is necessary to ensure decisions implicating First Amendment rights receive "close scrutiny," *id.* (citing *Planned Parenthood Ass'n v. Chi. Transit Auth.*, 767 F.2d 1225, 1229 (7th Cir. 1985)).

Finally, while a district court's resolution of Rule 26 objections is ordinarily subject review for to abuse of discretion, *see Whole Woman's Health*, 896 F.3d at 369, the district court here did not rule on those objections.

## ARGUMENT

## I. This Court has jurisdiction over this appeal.

### A. This Court has interlocutory jurisdiction over this appeal.

As the motions panel found, this appeal is on "firm ground" jurisdictionally. *X Corp.*, 120 F.4th at 196 (finding that "appellate jurisdiction is proper under the collateral order doctrine"). The Court has jurisdiction under 28 U.S.C. § 1291 because denial of a First Amendment privilege claim is "final" under the collateral order doctrine and permits immediate appeal. *See Whole Woman's Health*, 896 F.3d at 367 (finding collateral order doctrine elements satisfied in appeal from denial of First Amendment privilege).

The collateral order doctrine permits immediate appeal from a district court order that is "conclusive, that resolve[s] important questions separate from the merits, and that [is] effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (citation omitted). Each requirement is satisfied here. The order below is "conclusive" because it fully resolves Media Matters's claim of privilege; compliance is compelled—and the resulting injury to Media Matters is complete—upon

enforcement of the order and prior to final judgment. *See X Corp.*, 120 F.4th at 196 (citing *Whole Woman's Health*, 896 F.3d at 367); *see also Perry v. Schwarzenegger*, 591 F.3d 1147, 1154–55 (9th Cir. 2010) (finding this element "easily satisfied" in similar case). The important First Amendment question presented is also "separate from the merits of X Corp.'s tort claims." *X Corp.*, 120 F.4th at 196 (citing *Whole Woman's Health*, 896 F.3d at 367); *see also Perry*, 591 F.3d at 1154–55 (similar). Finally, the order is not effectively reviewable after final judgment. If Media Matters is compelled to release its donor information, including the names and addresses of its donors, there will be no way to put the horse back in the barn—"once the donor information is disclosed, the First Amendment injury c[an] not be undone." *X Corp.*, 120 F.4th at 196.

X argued to the motions panel that jurisdiction is lacking for two reasons, but the panel properly rejected each theory. First, X claimed that this discovery dispute is intertwined with the merits of its business tort claims. *See* Pl.-Appellee's Resp. to Mot. for Stay Pending Appeal at 9–10, ECF No. 35. But this Court has already held that a First Amendment privilege claim raises an "important" issue "separate from the merits." *Whole Woman's Health*, 896 F.3d at 367. It has also repeatedly rejected

the notion that privilege and immunity claims are intertwined with merits issues. *E.g.*, *Mi Familia Vota v. Ogg*, 105 F.4th 313, 319–20 (5th Cir. 2024) (sovereign immunity claim separate from merits); *Lewis v. Crochet*, 105 F.4th 272, 280 (5th Cir. 2024) (attorney-client privilege claim "completely separate from the merits"); *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023) ("*LUPE*") (similar as to legislative privilege); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (similar as to qualified immunity).

In *LUPE*, for example, Texas legislators appealed the denial of legislative privilege claims over various documents. *See* 68 F.4th at 231. This Court squarely rejected the argument that the dispute about documents was intertwined with the merits, explaining that "the underlying *merits* issue" was whether the challenged statute violated federal law, "while the issue *in this appeal* is whether the legislators can claim privilege." *Id.* at 235. "Those are separate issues." *Id.* The same is true here—whether Media Matters can be compelled to produce sensitive donor information is a separate issue from the ultimate merits of X's claims. *See X Corp.*, 120 F.4th at 196.

Second, X argued to the motions panel that only third parties can seek interlocutory review of First Amendment privilege claims, as parties may appeal after final judgment. *See* ECF No. 35 at 10–11. That, too, is wrong. Contrary to X's claim, party or non-party status has no bearing on the appealability of orders implicating First Amendment rights. This Court has "repeatedly found the [collateral order] doctrine applies in cases in which pre-trial orders arguably infringe on First Amendment rights" of parties. *Marceaux*, 731 F.3d at 490 (permitting defendants to take immediate appeal) (collecting authority); *see also Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 223 (5th Cir. 2020) (permitting intervenor to take immediate appeal); *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 174 (5th Cir. 2011) (similar); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169–71 (5th Cir. 2009) (similar for defendant); *United States v. Brown*, 218 F.3d 415, 420–21 (5th Cir. 2000) (similar). Each of these cases concerned the First Amendment rights of "litigants in the case." *Marceaux*, 731 F.3d at 490 (citing *Brown*, 218 F.3d at 420–21). There is no dispute that the district court's order bears on Media Matters's First Amendment rights. ROA.2164–65; *see also Bonta*, 594 U.S. at 608–10. This appeal is thus proper.

**B.    This Court should alternatively exercise its mandamus jurisdiction.**

If the Court nonetheless concludes it lacks jurisdiction under the collateral order doctrine, it should alternatively rectify the district court's decision under its mandamus jurisdiction. Such relief is warranted when petitioners show there is "no other adequate means to attain the relief [they] desire[]," as well as a "clear and indisputable" "right to . . . the writ." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004) (citations omitted). Further, the Court "must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381. These hurdles "are not insuperable"—and each is readily satisfied here. *Id.*

*First*, mandamus is an appropriate method for review of orders "compelling discovery against a claim of privilege." *In re Grand Jury Subpoena*, 190 F.3d 375, 389 n.16 (5th Cir. 1999); *see also In re Burlington N., Inc.*, 822 F.2d 518, 522 (5th Cir. 1987) (collecting cases). If Media Matters cannot pursue a collateral order appeal, it will have no other adequate means of relief because its "injury will not be remediable on appeal." *Perry*, 591 F.3d at 1158 (allowing mandamus review of First Amendment privilege claim). Once Media Matters is forced to disclose its most sensitive donor-related documents, its First Amendment rights

cannot be restored. *See id.* (concluding that, because the "injury to [] First Amendment rights is the disclosure itself," even if "Proponents prevail at trial, vindication of their rights will be not merely delayed but also entirely precluded").

*Second*, for the reasons explained below, Media Matters has a clear and indisputable right to the writ. This Court will grant mandamus "upon a determination that there has been a clear abuse of discretion." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc). Such an abuse is present here because the First Amendment forbids the compelled disclosure of Media Matters's donor-related information that the district court ordered. *See infra* § II; *see also Bonta*, 594 U.S. at 615–19. The district court's finding that Media Matters waived its First Amendment privileges was also plainly incorrect; it neglected the significant showing needed for a waiver of constitutional rights and clearly erred in its recounting of the procedural history. The district court further compounded its errors by failing to address Media Matters's other preserved objections under Rule 26. *See infra* § III.

*Third*, granting the writ is "especially appropriate where its issuance will have significance beyond the immediate case." *In re Lloyd's*

*Reg. N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015) (cleaned up). Here, the district court's decision is without precedent and presents a critical threat to every news outlet, civic organization, or religious institution that relies upon private donations, and anyone else concerned with the vitality of the First Amendment. If that order is allowed to stand, every organization engaged in First Amendment-protected activity will run the risk of having adversaries rifle through their most sensitive files based on the flimsiest pretext. The public interest in averting such an outcome strongly counsels in favor of granting mandamus. *See Def. Distributed v. Bruck*, 30 F.4th 414, 426–27 (5th Cir. 2022) (exercising mandamus review and granting mandamus petition in case implicating "questions about the abridgement of the Plaintiffs' first amendment rights to publish their materials").

## II. The First Amendment protects Media Matters's donor information.

### A. The district court erred by compelling disclosure of First Amendment-protected materials.

#### 1. The district court failed to apply exacting scrutiny.

There is no dispute that Media Matters's First Amendment rights, as well as the First Amendment rights of Media Matters's third-party

donors, are at stake. The district court recognized Defendants "satisf[ied]" their burden of showing the potential for infringement" of such rights through X's demand for compelled disclosure of donor information. ROA.2165; *see also X Corp.*, 120 F.4th at 197 (noting the district court found "that Media Matters raises legitimate First Amendment concerns").

Rightly so.  The compelled disclosure of donor identity "imposes a widespread burden on donors' associational rights" under the First Amendment. *Bonta*, 594 U.S. at 618. That is because the right to "anonymity" is intrinsic to free speech and advocacy, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342–43 (1995); *see also id. at* 360–66 (Thomas, J., concurring) (describing the importance of anonymity to free speech during the Founding Era); *Brown*, 459 U.S. at 91 ("The Constitution protects against the compelled disclosure of political associations and beliefs."). Indeed, the Supreme Court has long "recognized the vital relationship between freedom to associate and privacy in one's associations." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). The district court was therefore required to apply "exacting scrutiny" to X's sweeping document requests, ensuring any

compelled disclosure was "narrowly tailored." *Bonta*, 594 U.S. at 608; *see also Brown*, 459 U.S. at 91–92; *Perry*, 591 F.3d at 1164.

The district court failed to do so. Nowhere did it explain how the donor information demanded by X—including the "identity" and "residence" of *every* Media Matters donor across the country (ROA.244)— is even relevant to the claims or defenses in this case, never mind of such "substantial need" as to "outweigh[] the intrusion into [Media Matters's and third-party donors'] constitutional rights." *Whole Woman's Health*, 896 F.3d at 374; *see also Hastings v. N.E. Indep. Sch. Dist.*, 615 F.2d 628, 632 (5th Cir. 1980) (reversing compelled disclosure of union's membership list due to insufficient justification relative to associational rights at stake).

As the motions panel rightly concluded, it is hard to fathom how X "needs the identity of Media Matters's every donor, big or small, to advance its theories." *X Corp.*, 120 F.4th at 199. Instead, X's requests "are disproportional to the needs of the case" and seek broad swathes of "irrelevant information." *Id*. And while the motions panel reached these conclusions in evaluating Media Matters's Rule 26 objections, *id.* at 198, they apply with even greater force to the First Amendment question here:

The fact that X's document requests cannot pass even ordinary Rule 26 muster strongly suggests they fail the *heightened* standard required to overcome Media Matters's First Amendment privilege. *See Whole Woman's Health*, 896 F.3d at 374 (explaining plaintiff must demonstrate a "substantial need" for documents to overcome First Amendment privilege); *see also Bonta*, 594 U.S. at 622 (Alito, J., concurring in part) (emphasizing "exacting scrutiny" standard has "real teeth"); *Brown*, 459 U.S. at 91–92.

Far from satisfying exacting scrutiny, the district court relied upon conjecture in compelling Media Matters to comply with X's sweeping demands. It speculated that "donor related documents" "*may* serve as proof of Defendants mental state," and "*may* show" purposeful availment of Texas, without any analysis—let alone "exacting scrutiny"—beyond these undeveloped observations. ROA.2164–67 (emphases added). While the court recognized that X is fairly permitted to take discovery regarding "jurisdiction, [] mens rea, and actual malice," ROA.2167, it did not meaningfully explain how donor information—including the name and street address of each donor—is germane to these issues.

Indeed, it is not. On actual malice and mens rea, the district court speculated that that "[t]hese documents *may* serve as proof of Defendants [sic] mental state," ROA.2166, but information about third-party donors has no clear bearing on *Defendants'* mindset, and certainly does not justify compelling production of *all* "donor related documents." ROA.2165–67; *see X Corp.*, 120 F.4th at 199 (noting the "heavy burden" Media Matters and its donors would face if compelled to disclose donor information). The most X mustered in defense of the district court on this score was to give the single hypothetical example of "a donor [who] wrote a large check to Media Matters conditioned on publishing one or more articles defaming X." ECF No. 35 at 19. But that fanciful example only illustrates the lack of narrow tailoring here—X could have requested documents specifically about donations "conditioned" on publishing articles defaming X. But it did not, choosing instead to issue overbroad demands untethered to the claims and defenses in the case.

Jurisdiction is the only remaining basis on which the district court justified compelled disclosure. ROA.2167–68. Yet neither X nor the district court explained how X's claims—concerning two allegedly defamatory articles written in Maryland and published by a D.C.

organization about a then-California based company—"arise out of or relate to" donor information. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–18 (5th Cir. 2021) (quotation omitted). The court's suggestion that donor information "may" show "Defendants' efforts to solicit Texans generally or to support other journalistic endeavors" was erroneous because such information cannot establish personal jurisdiction without a *nexus* to the articles underlying the claims in this case. ROA.2167; *see also Johnson* 21 F.4th at 317–18; *Clemens v. McNamee,* 615 F.3d 374, 378–79 (5th Cir. 2010) ("Specific jurisdiction requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action."). Because specific jurisdiction turns on whether there "is a connection between the forum and *the specific claims at issue*," the mere allegation that Defendants raised funds in Texas is neither "sufficient" nor "even relevant" to establishing jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco Cnty.*, 582 U.S. 255, 265 (2017) (emphasis added); *see also Coomer v. Byrne*, No. 1:22-cv-01575-RM-SKC, 2024 WL 3570593, at *4, 6 (D. Colo. Jan. 8, 2024) (holding specific jurisdiction lacking based on defendants' appearance on podcast of Colorado resident with "sizable Colorado following" to "solicit

financial contributions to their cause" where events at issue were unrelated to those fundraising efforts). Yet X's requests, and the district court's compulsion order, make no effort to narrowly tailor their scope to the claims at issue or any possible nexus they may have to Texas.

Moreover, the district court failed to consider all the information Media Matters had already agreed to provide that would further obviate any need—let alone a "substantial need," *Whole Woman's Health*, 896 F.3d at 374—for all donor-related documents. For instance, Media Matters had already answered X's inquiry into whether "a donor [who] wrote a large check to Media Matters conditioned on publishing one or more articles defaming X," ECF No. 35 at 19. *See* ROA.1569 (in response to RFP No. 21, responding that "Media Matters does not receive any dedicated funding that is restricted for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino").

As to jurisdiction, Media Matters already offered to provide information about donations from Texans, including the number and sum of donations received from Texas, as well as the number of donors located in Texas. Media Matters offered this information even though it has

expressly confirmed on the record that it did not solicit *any* donations from individuals in Texas in connection with the articles at issue in this suit or to fund Media Matters's work related to X more generally. *See* ROA.1600. Neither the district court nor X explained what remaining donor-related information could be relevant to jurisdiction here, never mind so critical as to trample upon the First Amendment associational rights of Media Matters and its donors.

## 2. The district court misapplied precedent from this Court and the Supreme Court.

Rather than justifying the district court's order, the precedent it relied upon undermines its reasoning. *See* ROA.2166–67. In *Herbert v. Lando*, for example, the Supreme Court merely rejected the idea that the First Amendment prohibits *any* inquiry into a defamation defendant's state of mind—an argument Media Matters does not make here. *See* 441 U.S. 153, 165 (1979) (explaining that courts "have traditionally admitted any direct or indirect evidence relevant to the state of mind of the defendant"). In reaching this conclusion, the Supreme Court stressed that such evidence may be sought because it is "essential to proving liability that the plaintiff *focus on the conduct and state of mind of the defendant.*" *Id.* at 160 (emphasis added); *see also id.* (explaining the

purpose of such inquiry is into whether "the defendants . . . knew or had reason to suspect that their damaging publication was in error"). But that does not explain how information about a *third-party donor* bears on proving a plaintiff's case or a defendant's state of mind.

This Court said much the same in *Miller v. Transamerican Press, Inc.*, explaining a defamation plaintiff was entitled to know the identity of a specific informant because the "only way [plaintiff could] establish malice and prove his case [wa]s to show that [the defendant] knew the story was false or that it was reckless to rely on the informant." 621 F.2d 721, 726 (5th Cir.), *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980) (per curiam). *Miller* is inapposite because the identity and full gamut of Media Matters's donors and financial support has no bearing on the alleged falsity of the disputed articles.

In fact, *Miller* cuts strongly *against* the district court's sweeping disclosure order. This Court supplemented that decision by adding the following paragraph:

> We do not mean to intimate that a plaintiff will be entitled to know the identity of the informant merely by pleading that he was injured by an untrue statement. Before receipt of such information the plaintiff must show: substantial evidence that the challenged statement was published and is both factually untrue and defamatory; . . . and that knowledge of

the identity of the informant is necessary to proper
preparation and presentation of the case.

*Miller*, 628 F.3d at 932. Thus, the plaintiff in *Miller*—to learn the identity

of a single informant directly responsible for supplying the allegedly

defamatory information—had to both come forward with "substantial

evidence" of falsity and establish the informant's identity was

"necessary" to their case. *Id.* Merely "pleading" injury was not enough.

*Id.*

The district court required no such showing from X. To the contrary,

it compelled disclosure of a broad sweep of third-party identities based

solely on X's unsubstantiated allegations without requiring X to

meaningfully explain how they could bear on actual malice or damages.

Under that logic, every defendant would cede their fundamental First

Amendment rights the moment an adversary files a "pleading [asserting]

that he was injured by an untrue statement," *id.*, regardless of the merits

of the allegations. That is not the law.

### 3. The existence of a protective order does not remedy the irreparable harm to Media Matters's associational rights.

Finally, the existence of a protective order does not immunize the

district court's error. *See Whole Woman's Health*, 896 F.3d at 373. The

court's order has the effect of requiring Media Matters to turn over broad swathes of constitutionally protected information, regardless of its relationship to the articles or claims at issue. That prospect is "disturbing" even if it does not result in public disclosure. *Id.* (setting aside a "discovery order [that] forces" disclosure of sensitive information "*to a public policy opponent*"). Indeed, the Supreme Court has stressed that "disclosure requirements can chill association 'even if there is no disclosure to the general public.'" *Bonta*, 594 U.S. at 616 (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)) (cleaned up).

That observation has particular force in this litigation, which began with X's owner Elon Musk threatening to file a "thermonuclear" lawsuit, ROA.333, his pronouncement that Defendants are "evil," and his promise to use his limitless resources to "pursue not just [Media Matters], but *anyone* funding that organization." ROA.1969 (emphasis added) (quotation omitted). Musk left no doubt on this last score, further stating: "I want to be clear about that anyone funding that organization, will be, we will pursue them." *Id.* (quotation omitted); *see also X Corp.*, 120 F.4th at 199 (quoting this threat). On top of all this, two state attorneys general have launched parallel investigations into Media Matters based on

nothing more than X's untested allegations.[8] The district court's conclusion that Media Matters's First Amendment interests—to say nothing of its third-party donors who have little say in the matter—are "reduced" because of a protective order ignores this record. ROA.2167. As the motions panel recognized, Media Matters's concern about retaliation is "reasonabl[e]" considering the "sensitive nature of the requested data." *X Corp.*, 120 F.4th at 199.

*     *     *

Without a "careful consideration of the need for such discovery," *Perry*, 591 F.3d at 1140, the district court granted precisely what the Supreme Court prohibited: an order that "indiscriminately sweep[s] up the information of *every* major donor [to Defendants] with reason to remain anonymous." *Bonta*, 594 U.S at 616–17. Because the district court's conclusion that some of these materials "may" be relevant under Rule 26 falls far short of the "narrow tailoring" and "exacting scrutiny"

---

[8] *See generally Media Matters for Am. v. Bailey*, No. 24-cv-147 (APM), 2024 WL 3924573, at *2, 10–11 (D.D.C. Aug. 23, 2024) (observing "X did not deny that advertising in fact had appeared next to the extremist posts" and "did not deny the basic premise of the article"); *Media Matters for Am. v. Paxton*, No. 24-cv-147 (APM), 2024 WL 1773197, at *18–19 (D.D.C. Apr. 12, 2024).

the First Amendment demands, *id.* at 616, its order compelling production of all donor-related documents violates the First Amendment. *Id.* at 611; *Whole Woman's Health*, 896 F.3d at 375; *Perry*, 591 F.3d at 1144.

**B.     Media Matters did not waive its First Amendment rights.**

The district court erred in finding that Media Matters waived the First Amendment privilege. The waiver finding flowed from an erroneous understanding of the parties' discovery agreement. In fact, Media Matters conducted a search for all potentially responsive documents— including donor-related documents—related to this litigation, X, Twitter, Musk, or Linda Yaccarino, and logged privileged documents on the *timeline agreed to by X and approved by the court.* Unsurprisingly, X never objected to the descriptions of donor documents on Media Matters' privilege log, which meticulously complies with the negotiated protocol. And although Media Matters removed preemptive privilege-based objections from its initial discovery responses, it did so *at X's request* and made clear in its amended responses that privilege would instead be asserted on a document-by-document basis as the Federal Rules contemplate—which is precisely what Media Matters subsequently did.

The district court's finding of waiver not only misapprehended the record but also misapplied the relevant caselaw. It overlooked repeated warnings from the Supreme Court that an effective waiver of a constitutional right requires "an intentional relinquishment or abandonment of a known right or privilege." *Zerbst*, 304 U.S. at 464; *see also Brady*, 397 U.S. at 748 (holding valid waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"). Far from "indulg[ing] every reasonable presumption against waiver of a fundamental right," *In re Bryan*, 645 F.2d at 333 (quoting *Shea*, 508 F.2d at 85), the district court drew every possible inference in favor of waiver. In so doing, it ignored the legal standard, Media Matters's fundamental First Amendment rights, and the associational interests of numerous third parties.

### 1.   Media Matters complied with the district court's orders.

Media Matters's adherence to the district court's orders (and the parties' agreement) did not waive its First Amendment objections.

The district court's first discovery order on June 6 deferred ruling on privilege until Media Matters served a privilege log, and it set a

deadline of June 14 for that log. *See* ROA.978–79. Then, on June 10, the parties jointly sought an extension of all fact discovery and the original June 14 deadline for a privilege log. ROA.984, 986. Media Matters and X filed a joint motion explaining the parties' shared position that they required "additional time for the review of documents for potential privilege assertions *and production of privilege logs.*" ROA.983 n.3 (emphasis added). Recognizing that Media Matters needed significantly more time to search for, identify, and log privileged documents potentially responsive to X's broad discovery requests—including X's donor-related requests—the parties further agreed to modify the original privilege log requirement to make it the "[f]irst" in a rolling production of logs. *See* ROA.983, 1009. In response, the district court *granted* the extension, extending discovery by over five months and postponing the deadline for Defendants' "First" privilege log to June 28, ROA.1009, necessarily recognizing that more privilege logs would follow after that first-in-time log as Media Matters continued reviewing documents on the now-extended schedule. *Id.*

The parties thus conformed their discovery practice to the district court's order, agreeing not only to a new deadline for Media Matters's

first privilege log, but further agreeing that in the first privilege log, Defendants need only "produce a log of any privileged documents *identified to date*, along with copies of any redacted documents referenced therein, *with additional document productions and privilege logs to follow*." ROA.1542 (emphasis added). In other words, Media Matters and X reached an agreement that logging privileged documents would extend past June 28.

Contrary to the district court's conclusion, ROA.2154, Media Matters never "refused to conduct any search" for documents potentially responsive to the donor-related requests for production. Instead, as Media Matters explained to X, it has from the outset searched for all potentially responsive documents—*including donor-related documents*—that pertain in any way to this litigation, X, Twitter, Musk, or Linda Yaccarino, ROA.1644, 1646. Indeed, that broad scope of discovery necessitated the exhaustive, resource-intensive document collection and review process on which the parties' joint request for a modification of the case schedule was premised. Per the parties' agreement, once donor-related documents were identified and determined to be privileged in the document review stream, Media Matters logged them, as reflected in the

second log that Media Matters produced on September 6. *See* ROA.1590 n.3, 1646, 2051–147.

The only limitation on Media Matters's efforts to search for documents, as relevant here, has been its Rule 26 burden-and-harassment-related objections to searching for sensitive documents that—regardless of privilege—have no conceivable relevance to X's claims. ROA.1564–69. The court "DENIED" X's motion to overrule these objections made in Media Matters's amended discovery responses, instructing X to "first raise those issues in a subsequent good faith conferral with Defendants" and then, if necessary, move to overcome the objections. ROA.978–79. X did neither. And to be clear, Media Matters did not *exclude* donor-related documents from its search; it broadly collected documents concerning any of the claims and defenses in the case—including documents concerning X, Twitter, Musk, and Yaccarino that relate to X's claims—regardless of whether such documents might *also* be donor-related. Media Matters's reasonable limitations on

discovery do not equate to a wholesale refusal to conduct any search, as the district court seemed to think.[9]

The fact that Media Matters never refused to search for any donor-related documents is readily apparent from the district court's own citations to Media Matters's briefing and correspondence between counsel. *See* ROA.2154 n.6. Media Matters's response to X's motion to compel explained that X was "wrong to assert" that Media Matters "refused to log [responsive] documents" because, "[a]s Media Matters explained to X during conferrals, documents *already* collected would likely be responsive to X's donor-related requests, and Media Matters assured it would log those privileged documents as they surfaced in the review process." ROA.1590 n.3. Likewise, Media Matters's counsel rejected X's suggestion that Media Matters was refusing to search for or

---

[9] The motions panel wondered, "Does Media Matters think that the First Amendment excuses it from explaining why withheld discovery is privileged?" *X Corp.*, 120 F.4th at 198. Not at all, which is why Media Matters has searched for and logged many of these documents. The relevant question here is whether Media Matters was obligated to forfeit its Rule 26 harassment, relevancy, and burden objections by rushing to find and log every privileged document in a matter of weeks—despite X's failure to challenge those objections and despite scheduling extensions negotiated with X and ordered by the district court. It was not.

log any responsive documents. *See* ROA.1539 ("Third, we are confused by your refrain that Defendants 'refuse to log all responsive documents.'"); ROA.1542 (reiterating that donor-related documents would appear on a privilege log "to the extent the documents are responsive to search terms generated by other requests," such as RFP No. 5, which requests "[a]ll documents and communications discussing or mentioning X, the Platform, Elon, Musk, or Linda Yaccarino," ROA.1184). The district court cited these materials without engaging with what they plainly said—that Media Matters was engaging in a broad search for documents, including donor-related documents.

X was thus well aware that Media Matters was proceeding as the court had ordered and the parties had agreed. After Media Matters produced its first privilege log on June 28, the parties conferred and corresponded extensively over potential disputes. Notably, while X asserted that Media Matters had waived a *different* privilege as to *different* documents, at no point prior to its motion to compel did it suggest that Media Matters had waived the First Amendment privilege over donor-related documents. Instead, it continued to press its position that the First Amendment does not apply in litigation between private

parties, ROA.1545, asked when donor-related documents would be logged, ROA.1538 (expressing goal to "only burden the Court with the substantive legal issues of privilege" rather than "the procedural mechanics of discovery" among the parties), and "agree[d]" that Media Matters's interrogatory response created a ripe dispute over donor-related information, ROA.1541.

X was further aware that Media Matters had not only searched but logged donor-related documents prior to the court's order finding of waiver. *See* ROA.1708; *see also* ROA.2290. And contrary to the district court's accusation, *see* ROA.2155–56, those entries sufficiently explain Media Matters's First Amendment objections. ROA.2078 (identifying as privileged, for example, an "Email thread with prospective non-Texas donor and development firm as part of end-of-year mass-email outreach seeking general funding for MMFA" because production "would chill Defendants' exercise of their First Amendment speech and associational rights"). Notably, X has not objected to any of those privilege designations or descriptions in accordance with the privileged-document protocol that the court ordered the parties to negotiate. *See* ROA.979; *cf.* ROA.1007.

For good reason: Media Matters did exactly what the parties had agreed as to the timing, format, and substance of privilege designations.

Thus, contrary to the district court's conclusions, Media Matters did not "refuse[] to conduct any search" for donor-related documents, refuse to "log responsive documents they believe to be privileged," or fail to "adequately describ[e] the [logged] documents as required by Rule 26." ROA.2154–55. The district court's findings to the contrary were clearly erroneous, as shown by the fact that Media Matters had *already logged* many such documents when the district court issued its order.

> **2.  Media Matters did not waive the First Amendment privilege in its amended discovery responses.**

The district court also erred in its conclusion that Media Matters waived its privilege objections by failing to identify privileged documents in its amended responses and objections. No such waiver occurred, as the district court mistook a party's obligations when responding to a request for production with the party's obligations when logging responsive documents on a privilege log.

When objecting to a document request, a party must "explain what portion of [the] document request is objectionable and why . . . and

affirmatively explain *whether* any responsive information or documents have been withheld." *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) (emphasis added). That is what Media Matters did: its amended responses and objections explained that the donor-related requests, on their face, sought irrelevant information and were harassing, and that Media Matters did not intend to produce donor-related documents on that basis. ROA.1564-69. Notably, Media Matters's initial discovery objections included a full exposition of the First Amendment privilege in response to the requests at issue here, ROA.1854–56, 1858–59. Media Matters then amended those objections at X's request to clarify that Media Matters's search and review of donor documents was limited only by its Rule 26 objections, and not by its anticipated privilege claims, which would be asserted on a document-by-document basis.

That is precisely what the Federal Rules contemplate. When withholding a document based on privilege, a party must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R.

Civ. P. 26(b)(5)(A). Again, that is what Media Matters did. ROA.1564–69; ROA.2051–147.

According to the district court, however, Media Matters was required to describe the withheld documents in its initial responses and objections. *See* ROA.2304–05. That is inconsistent with discovery procedure. Responses and objections inform the search for documents, and so they are ordinarily served before any documents are even collected and reviewed. How could a party provide a description of "documents/emails" withheld for privilege, *see* ROA.2156 (*quoting United States v. Fluitt*, 99 F.4th 753, 763–64 (5th Cir. 2024)), before the party has identified those documents and emails? Because it plainly could not do so, it need not do so.

The very caselaw the district court relied upon to find waiver illustrates the point. Both cases cited by the district court concerning a party's failure to comply with Rule 26(b)(5)(A)—its basis for waiver below—concerned a dispute about the party's *privilege log*, not its responses and objections. *See Fluitt*, 99 F.4th at 763–64; *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017). These cases thus *endorse* Media Matters's approach of making detailed privilege assertions on a

document-by-document basis in a log, rather than making preemptive privilege guesses in response to a request. The only other discovery case the court cited—*Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143 (M.D. Fla. Mar. 8, 2016)—held that a party waived objections included in its initial responses when the party failed to argue those objections in response to a motion to compel. *See id.* at *3.

There is no question that Media Matters asserted the First Amendment privilege in its initial responses and objections to X's discovery requests, ROA.1591–1602, in response to the motion to compel, ROA.793–97, and in its privilege logs, ROA.2023–2147. Media Matters's amended responses and objections explicitly provided that its review of "documents responsive to Plaintiff's Discovery Requests is still ongoing" and reserved its right to supplement or amend the responses and objections "to assert additional objections or privileges . . . on a document-by-document basis." ROA.881–82. Far from waiver, this was textbook compliance with the Federal Rules. *See La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022) ("[A]ssertions of privilege must be specifically asserted on a document-by-document basis." (cleaned up)).

\*     \*     \*

In sum, it is impossible to find in the record below *"an intentional relinquishment or abandonment"* of a constitutional privilege. *Zerbst*, 304 U.S. at 464 (emphasis added). Absent Media Matters's clear and express relinquishment of the privilege, the district court was required to resolve any doubts *against* a finding that a party waived its constitutional rights. *See In re Bryan*, 645 F.2d at 333. Media Matters has insisted at every stage of this case that donor identities are among the most sensitive information in its possession, and that it intends to press every applicable source of law—including the First Amendment—to shield those identities from disclosure to a litigious and vindictive adversary.

## III.  X's document requests are also impermissible under Rule 26, which the district court neglected to address.

X's motion to compel also should have been denied because, as the motions panel concluded, its requests are impermissible under Rule 26. It is undisputed that Media Matters preserved these objections and presented them to the district court. *See, e.g.*, ROA.835–36; ROA.1602–03. Yet, as the motions panel correctly noted, "[t]he district court's order did not address Media Matters's Rule 26 objections." *X Corp.*, 120 F.4th at 198; *see also generally* ROA.2148–69.

The motions panel also rightly determined that X's "discovery requests are disproportional to the needs of the case" and that Media Matters was therefore "likely to succeed on the merits of its appeal." *X Corp.*, 120 F.4th at 199. The district court's failure to even address Media Matters's Rule 26 objections was clear error, and X's failure to comply with Rule 26 in issuing overbroad and deficient requests is an additional basis for reversing the district court's order.

### A.    The district court clearly erred by failing to address Media Matters's Rule 26 objections.

The district court erred by not addressing Media Matters's relevance, proportionality, and harassment objections under Rule 26. X's underlying motion to compel was directed solely towards Media Matters's assertion of the First Amendment privilege. *See* ROA.1340–63. Media Matters disputed that claim, but also argued that even if the privilege "does not apply," production was still improper because "the requests are harassing and seek irrelevant information." ROA.1602.

It is undisputed that Media Matters preserved such objections. And while the district court's order notes these objections in passing, *see* ROA.2156–57, it never resolves them, *see X Corp.*, 120 F.4th at 198 ("The district court's order did not address Media Matters's Rule 26

objections."). That was clear error. *E.g.*, *Cont'l Ins. Co. v. Chase Manhattan Mortg. Corp.*, 59 F. App'x 830, 839–40 (7th Cir. 2003) (finding district court abused its discretion by granting motion to compel "in [its] *entirety*" where court "did not consider" objections).

**B.     X's requests violate the basic relevance and proportionality requirements of Rule 26.**

Rule 26 allows discovery only of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," viewed in light of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). It further empowers courts "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also* Fed. R. Civ. P. 26(g)(1)(B) (requiring parties seeking discovery to certify that their requests are "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

X's sweeping discovery requests run roughshod over these requirements. *See X Corp.*, 120 F.4th at 199 (holding that X's requests "are disproportional to the needs of the case"). For example, RFP No. 17 seeks "the identity of *all* [of Media Matters's] donors or *any others* who provide financial support *of any kind*, their residence," ROA.1186 (emphasis added), along with their full addresses and amounts of donation. RFP No. 18 goes on to ask for "[a]*ny document or communication reflecting Your attempts to solicit donations or financial support of any kind*, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind." *Id.* (emphasis added).[10]

---

[10] Even the requests that purport to have some connection with this case go well beyond the scope of permissible discovery. RFP No. 21 asks for "[a]ll documents and communications" regarding Media Matters's funding for any work "related to X, the Platform, Elon Musk, or Linda Yaccarino," regardless of any connection between such funding sources and any claim or defense in this matter. ROA.1186. And RFP No. 35 asks for "[a]ll materials regarding or communications with any donor or *potential donor*" regarding in any way "Elon Musk, Linda Yaccarino, X, Twitter, or the Platform," again without any connection to the claims or defenses in this case and without defining who is a "potential donor"—a vague and near-limitless category of persons. ROA.886–87.

It is thus unsurprising that the motions panel correctly concluded that all of X's requests "encompass irrelevant information." *X Corp.*, 120 F.4th at 198–99. Indeed, the information requested is not relevant to any claim or defense. *See supra* § II.A. The crux of this lawsuit is X's claim that, in two specific articles published in November 2023, "Media Matters chose to maliciously misrepresent the X experience with the intention of harming X and its business," thus causing harm to X. ROA.251 ¶ 16. X has brought Texas state law business tort claims concerning these articles. *See generally* ROA.246–72; *see also* ROA.588 (X describing "Defendants' tortious interference with X's advertisers through the publication of two deeply misleading articles" as the "*central allegation that X raises in its amended complaint*" (emphasis added)); ROA.1262 (X asserting that it brought these claims "[b]ecause of the ongoing damage caused by" these two articles). The elements of these claims all focus squarely on a narrow set of actions purportedly taken by Media

Matters.[11] None of them depends in the slightest on the identity of or communications with Media Matters's donors or potential donors.

As was readily apparent to the motions panel, Rule 26 does not permit X's far-ranging requests. *See X Corp.*, 120 F.4th at 198–99 (casting doubt that X requires the requested donor information to "advance its theories").  That conclusion was well-founded: "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)); *see also Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009) (judges should not permit "fishing

---

[11] *See, e.g.*, *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (listing as elements of a business disparagement claim that "(1) the defendant published false and disparaging information about [the plaintiff], (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff"); *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) ("We have identified the elements of tortious interference with an existing contract as: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."); *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (listing similar elements for tortious interference with prospective business relations).

expeditions"). X's imagining of conversations between Media Matters and its donors fall far short of meeting the relevance and proportionality requirements of Rule 26 and cannot possibly justify X's sweeping requests. *See, e.g.*, *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. A-11-CV-542-LY-AWA, 2013 WL 1293718, at *6 (W.D. Tex. Mar. 26, 2013) (denying request for production that requesting party contended would "shed light on Benihana's improper motives" where "this possibility amounts to nothing more than mere speculation"); *see also supra* § II.A.2.

At bottom, X seeks to force Media Matters to disclose the identities and full addresses of all its donors, alongside the complete details of Media Matters's fundraising efforts, including every solicitation for financial support of any kind. Because X's requests, on their face, seek vast quantities of discovery not "relevant to any party's claim or defense" and not "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), they must be set aside as overbroad, unduly burdensome, and disproportional to the needs of the case. *See* ROA.835–36; ROA.1602–03.

**C.    X's requests have no purpose but to harass Media Matters and its donors.**

Rule 26 further bars discovery served for "any improper purpose, such as to harass[.]" Fed. R. Civ. P. 26(g)(1)(B)(ii); *see also Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries," and may not be "conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry."). X's requests should also be quashed on this basis because they have no purpose but to harass Media Matters and its donors.

There is no need to speculate on this point. X's owner, Elon Musk, stated publicly:

> Media Matters is an evil propaganda machine. I just generally am against evil propaganda machines. We are suing them in every country that they operate. *And we will pursue not just the organization, but anyone funding that organization. I want to be clear about that. Anyone funding that organization, we will pursue them.* So Media Matters is an evil propaganda machine. They can go to hell. I hope they do.[12]

---

[12] Lindsay Kornick, *Elon Musk Calls Media Matters 'Evil Propaganda Machine' Ahead of Lawsuit*, Fox Business (Dec. 10, 2023), https://www.foxbusiness.com/media/elon-musk-calls-media-matters-evil-propaganda-machine-lawsuit [https://perma.cc/K8M4-TMF3] (emphasis

X's request for "the identity of all [of Media Matters's] donors or any other others who provide financial support of any kind" and "their residence" cannot be divorced from this threat, particularly given the clear irrelevance of such information to X's claims. *See supra* § III.B. As the motions panel rightly concluded, compelling compliance with such a request would force "Media Matters and its donors [to] bear a heavy burden," as it "could enable others to harass or intimidate Media Matters or its donors." *X Corp.*, 120 F.4th at 199.[13]

That is no idle concern. As Media Matters has amply documented, threats against both Media Matters *and* its donors have exploded since the inception of this lawsuit. For example, the day after Musk threatened Media Matters with a "thermonuclear" lawsuit, someone sent a Media

---

added); *see also X Corp.*, 120 F.4th at 199 (containing abridged version of these remarks).

[13] Nor could the parties' agreed protective order serve to reduce the heavy burdens these requests would place on Media Matters. As the motions panel correctly concluded, Media Matters had ample reason to be concerned about the prospect of disclosing its donor information, not based on any doubts about "the character of X Corp.'s lawyers or the judgment of the district court, but because of the sensitive nature of the requested data." *X Corp.*, 120 F.4th at 199 (cleaned up); *see also supra* § II.A.3.

Matters staffer a photograph of the staffer and his wife with the ominous message: "We know where you live. Expect a visit." ROA.1607–08. In the following weeks, Media Matters received multiple voicemails that both referenced this lawsuit and threatened physical harm at its offices. ROA.1609 ("The stuff you're trying to feed Americans like myself is really, really gonna come back and bite you in the ass. And I may be one of the people that you really don't want to come up and visit your offices."). Similarly, after an alleged "leaked donor list" of Media Matters's "five largest contributors" was publicized and then reposted by Musk, a further torrent of abuse and harassment was directed at both Media Matters and those individuals. ROA.1611. Several X posts listed the names of the supposed donors and hurled invective at them based on their perceived religious affiliations. *See, e.g.*, ROA.1613 ("All Jewish donors . . . it explains why media matters went after Elon Musk"). Other X users posted calls for arrests, treason trials, and the "death penalty" of the donors. *Id.*

Unsurprisingly, Media Matters's donors and potential donors have expressed concerns for their privacy and safety as a result, and Media Matters's cash flow has already been affected by these threats.

ROA.1614–15. While the fundamental irrelevance of X's requests was more than a sufficient basis to deny X's motion to compel, the significant risk of harassment embedded in the requests reinforces that conclusion. *E.g.*, *Oppenheimer Fund, Inc v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("[D]iscovery should be denied when a party's aim is to . . . embarrass or harass the person from whom he seeks discovery.").

## CONCLUSION

For these reasons, this Court should reverse the district court's order.

Dated: December 2, 2024

By: */s/ Gregg Costa*
Gregg Costa

GIBSON, DUNN &
CRUTCHER LLP
Gregg Costa
811 Main Street, Suite 3000
Houston, TX 77002
T: (346) 718-6649
F: (346) 718-6620
gcosta@gibsondunn.com

Andrew LeGrand
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com
tcox@gibsondunn.com

Theodore J. Boutrous, Jr.
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

Respectfully submitted,

ELIAS LAW GROUP LLP
Abha Khanna
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch
Christopher D. Dodge
Jacob D. Shelly
250 Massachusetts Avenue NW,
Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

*Counsel for Defendants-Appellants
Media Matters for America, Angelo
Carusone, and Eric Hananoki*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that: (1) all required privacy redactions have been made in compliance with 5th Cir. Rule 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

*/s/ Gregg Costa*
Gregg Costa

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for Appellants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Gregg Costa*
Gregg Costa

**CERTIFICATE OF COMPLIANCE**

This document contains 11,888 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Gregg Costa*
Gregg Costa