No. 24-10900

# In the United States Court of Appeals for the Fifth Circuit

X CORP,

*Plaintiff-Appellee*,

v.

MEDIA MATTERS FOR AMERICA; ERIC HANANOKI;
ANGELO CARUSONE,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

**BRIEF FOR PLAINTIFF-APPELLEE X CORP.**

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
MICHAEL R. ABRAMS
CODY C. COLL
**STONE HILTON PLLC**
600 Congress Ave., Suite 2350
Austin, TX 78701
(737) 465-3897

JOHN C. SULLIVAN
**S|L Law PLLC**
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

*Counsel for Plaintiff-Appellee
X Corp.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Defendants-Appellants:** Media Matters for America, Eric Hananoki, and Angelo Carusone, represented by Elias Law Group LLP attorneys Abha Khanna, Aria Branch, Christopher D. Dodge, Daniela Lorenzo, Elena Alejandra Rodriguez Armenta, Elisabeth C. Frost, Jacob D. Shelly, Omeed Alerasool, and Samuel Ward-Packard; and Gibson Dunn & Crutcher LLP attorneys Andrew Patrick LeGrand, Trey Cox, Gregg Costa, Amer S. Ahmed, Anne Marie Champion, Jay P. Srinivasan, and Theodore J. Boutrous, Jr.

**Plaintiff-Appellee:** X Corp., represented by Stone Hilton PLLC attorneys Judd E. Stone II, Christopher D. Hilton, Ari Cuenin, Michael R. Abrams, Elizabeth Brown Fore, Alex M. Dvorscak and Cody C. Coll and S|L Law PLLC attorney John C. Sullivan.

/s/ *Judd E. Stone II*
Counsel of Record for
Plaintiff-Appellee

i

## STATEMENT REGARDING ORAL ARGUMENT

The Court has scheduled oral argument for February 13, 2025.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................ i

Statement Regarding Oral Argument ....................................... ii

Table of Authorities .................................................................. v

Introduction .............................................................................. 1

Statement of Jurisdiction ........................................................ 3

Issues Presented ....................................................................... 3

Statement of the Case .............................................................. 3

I.      Factual Background ...................................................... 3

II.     Procedural History ....................................................... 6

Summary of the Argument ..................................................... 15

Standard of Review ................................................................ 17

Argument ................................................................................ 18

I.      The Court Lacks Appellate Jurisdiction. ................... 18

    A.      The district court's discovery ruling is not immediately appealable. ...... 18

    B.      The demanding mandamus requirements are unsatisfied. ...................... 25

II.     The District Court's Waiver Findings Were Not an Abuse of Discretion. ... 27

    A.      MMFA failed to comply with the district court's orders. ....................... 29

    B.      MMFA failed to produce the requisite privilege log ............................... 35

    C.      MMFA failed to preserve its First Amendment arguments in opposition to X's discovery requests ......................................................... 37

III.    The District Court Correctly Determined That X Overcame Any Cognizable First Amendment Privilege ........................................................ 38

    A.      The First Amendment does not demand heightened scrutiny for production orders in private civil disputes. ............................ 39

    B.      The September Order comports with the First Amendment. .................... 47

        1.      X's requests are important to the parties' claims and defenses and unavailable from other sources. .......................................... 48

        2.      The district court properly protected First Amendment interests. ...... 53

IV.     MMFA's Rule 26 Arguments Are Meritless. ............................................. 55

Conclusion ...........................................................................................58

Certificate of Service ...........................................................................59

Certificate of Compliance ....................................................................59

# TABLE OF AUTHORITIES

## Cases

*A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n*,
  233 F.3d 895 (5th Cir. 2000) ...............................................................18

*Americans for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021) ...................................................................... *passim*

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
  103 F.4th 383 (5th Cir. 2024) .............................................................40

*Ballard v. Wall*,
  413 F.3d 510 (5th Cir. 2005) ...............................................................40

*Beattie v. Madison Cnty. Sch. Dist.*,
  254 F.3d 595 (5th Cir. 2001) ...............................................................45

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971) .............................................................................43

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984) ..................................................................... 17, 18

*Bradley ex rel. AJW v. Ackal*,
  954 F.3d 216 (5th Cir. 2020) ...............................................................23

*Bristol-Myers Squibb Co. v. Superior Ct.*,
  582 U.S. 255 (2017) .............................................................................51

*Brown v. Socialist Workers '74 Campaign Comm.*,
  459 U.S. 87 (1982) ...............................................................................41

*Chevron USA, Inc. v. Aker Mar. Inc.*,
  689 F.3d 497 (5th Cir. 2012) ...............................................................56

*Chilcutt v. United States*,
  4 F.3d 1313 (5th Cir. 1993) .................................................................34

*Civil Rights Cases*,
  109 U.S. 3 (1883) .................................................................................43

*Crosby v. La. Health Serv. & Indem. Co.*,
  647 F.3d 258 (5th Cir. 2011) ...............................................................48

*Cruz v. Maverick County*,
  957 F.3d 563 (5th Cir. 2020) ...............................................................17

*Cyber Promotions, Inc. v. Am. Online, Inc.*,
   948 F. Supp. 436 (E.D. Pa. 1996).........................................................44

*Doe v. Reed*,
   561 U.S. 186 (2010) ........................................................................44

*Dunbar Corp. v. Lindsey*,
   905 F.2d 754 (4th Cir. 1990)..............................................................43

*EEOC v. BDO USA, L.L.P.*,
   876 F.3d 690 (5th Cir. 2017).......................................................34, 38

*Ernst v. Carrigan*,
   814 F.3d 116 (2d Cir. 2016) ...............................................................19

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021) ........................................................................50

*Garcia v. Padilla*,
   No. 2:15-cv-735-FtM-29CM, 2016 WL 881143 (M.D. Fla. Mar. 8, 2016) ........38

*Grandbouche v. Clancy*,
   825 F.2d 1463 (10th Cir. 1987)...........................................................47

*Guzman v. Hacienda Recs. & Recording Studio, Inc.*,
   808 F.3d 1031 (5th Cir. 2015).............................................................31

*Hardy v. Gissendaner*,
   508 F.2d 1207 (5th Cir. 1975).............................................................40

*Harris v. Dallas ISD*,
   435 F. App'x 389 (5th Cir. 2011).........................................................28

*Hastings v. Ne. ISD*,
   615 F.2d 628 (5th Cir. 1980)..............................................................41

*HC Gun & Knife Shows, Inc. v. City of Houston*,
   201 F.3d 544 (5th Cir. 2000)...............................................17, 27, 29

*Henry v. First Nat'l Bank of Clarksdale*,
   444 F.2d 1300 (5th Cir. 1971).............................................................40

*Henry v. Lake Charles Am. Press, L.L.C.*,
   566 F.3d 164 (5th Cir. 2009)..............................................................23

*Herbert v. Lando*,
   441 U.S. 153 (1979) ........................................................................55

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
   565 U.S. 171 (2012) ........................................................................42

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) ...................................................................... 39, 43

*In re Beazley Ins. Co.*,
No. 09-20005, 2009 WL 7361370 (5th Cir. May 4, 2009) ..................................27

*In re JPMorgan Chase & Co.*,
916 F.3d 494 (5th Cir. 2019) ................................................................25

*In re Lloyd's Reg. N. Am., Inc.*,
780 F.3d 283 (5th Cir. 2015) ................................................................26

*In re Motor Fuel Temp. Sales Practices Litig.*,
641 F.3d 470 (10th Cir. 2011) ............................................................ 24, 47

*In re Occidental Petrol. Corp.*,
217 F.3d 293 (5th Cir. 2000) ............................................................ 25, 26

*In re Parish*,
81 F.4th 403 (5th Cir. 2023) ................................................................26

*In re Paxton*,
60 F.4th 252 (5th Cir. 2023) ............................................................ 25, 26

*In re Sealed Petitioner*,
106 F.4th 397 (5th Cir. 2024) ................................................................26

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ............................................................ 26-27

*Johnson v. Jones*,
515 U.S. 304 (1995) .................................................................... 19, 20

*Johnston v. Transocean Offshore Deepwater Drilling, Inc.*,
No. CV 18-491, 2019 WL 1558040 (E.D. La. Apr. 10, 2019) ...........................35

*JTH Tax, Inc. v. H&R Block E. Tax Servs.*,
359 F.3d 699 (4th Cir. 2004) ................................................................31

*Knapke v. PeopleConnect, Inc.*,
38 F.4th 824 (9th Cir. 2022) ................................................................51

*La Union Del Pueblo Entero v. Abbott*,
68 F.4th 228 (5th Cir. 2023) ................................................................24

*Landmark Land Co. v. Off. of Thrift Supervision*,
948 F.2d 910 (5th Cir. 1991) ................................................................25

*Lindke v. Freed*,
601 U.S. 187 (2024) .........................................................................40

*Louisiana v. Litton Mortg. Co.*,
  50 F.3d 1298 (5th Cir. 1995) ..............................................................37

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) ..............................................................20

*Maness v. Meyers*,
  419 U.S. 449 (1975) ............................................................... 32, 33

*Manhattan Comm. Access Corp. v. Halleck*,
  587 U.S. 802 (2019) .......................................................... 39-40, 43

*Marceaux v. Lafayette City-Par. Consol. Gov't*,
  731 F.3d 488 (5th Cir. 2013) ............................................... 17, 23

*Marchand v. Mercy Med. Ctr.*,
  22 F.3d 933 (9th Cir. 1994) ..............................................................57

*Marshall v. Bramer*,
  828 F.2d 355 (6th Cir. 1987) ..............................................................55

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) ..............................................................41

*McLaughlin v. Miss. Power Co.*,
  376 F.3d 344 (5th Cir. 2004) ..............................................................18

*Mercado v. Lynch*,
  823 F.3d 276 (5th Cir. 2016) ............................................... 24-25

*Miller v. Transamerican Press, Inc.*,
  621 F.2d 721, *opinion supplemented on denial of reh'g*, 628 F.2d 932
  (5th Cir. 1980) ............................................................... 52, 55

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ............................................................... *passim*

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449 (1958) ............................................................... 22, 41

*Ohio A. Philip Randolph Inst. v. Larose*,
  761 F. App'x 506 (6th Cir. 2019) ..............................................................22

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ..............................................................57

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) ............................................... *passim*

*Piratello v. Philips Electronics N. Am. Corp.*,
  360 F.3d 506 (5th Cir. 2004) ............................................................22

*Rogge v. Bandera Falls Prop. Owner's Ass'n*,
  No. CV SA-07-CA-996-OLG, 2009 WL 10713559
  (W.D. Tex. Aug. 11, 2009) ................................................................35

*Scott v. Monsanto Co.*,
  868 F.2d 786 (5th Cir. 1989) ............................................................17

*Shelley v. Kraemer*,
  334 U.S. 1 (1948) ..............................................................................39

*Shelton v. Tucker*,
  364 U.S. 479 (1960) ..........................................................................44

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
  685 F.3d 486 (5th Cir. 2012) ............................................................34

*Stansell v. López*,
  40 F.4th 1308 (11th Cir. 2022)..........................................................31

*Texas v. Kleinert*,
  855 F.3d 305 (5th Cir. 2017)..............................................................48

*Transamerica Leasing, Inc. v. Institute of London Underwriters*,
  430 F.3d 1326 (11th Cir. 2005)....................................................30-31

*United States v. Brown*,
  218 F.3d 415 (5th Cir. 2000)..............................................................23

*United States v. Dodson*,
  288 F.3d 153 (5th Cir. 2002)..............................................................28

*United States v. Fluitt*,
  99 F.4th 753 (5th Cir. 2024)..............................................................38

*United States v. IBM Corp.*,
  83 F.R.D. 97 (S.D.N.Y. 1979)............................................................45

*United States v. Sineneng-Smith*,
  140 S. Ct. 1575 (2020) ......................................................................37

*United States v. Valera*,
  845 F.2d 923 (11th Cir. 1988)............................................................37

*Vela v. City of Houston*,
  276 F.3d 659 (5th Cir. 2001)..............................................................38

*Vernon Smith, etc. v. School Bd. of Concordia Parish*,
   88 F.4th 588 (5th Cir. 2023)..................................................................53

*W. Va. State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) .........................................................................43

*Whole Woman's Health v. Smith*,
   896 F.3d 362 (5th Cir. 2018)...................................................... *passim*

*X Corp. v. Media Matters*,
   120 F.4th 190 (5th Cir. 2024)..................................................... *passim*

## Statutes

28 U.S.C. § 1291 ...................................................................................3, 18

28 U.S.C. § 1332(a)(1)................................................................................3

## Other Authorities

15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
   Federal Practice and Procedure § 3914.23 ...........................................18

## Rules

Fed. R. Civ. P. 26 .......................................................................... *passim*

Fed. R. Civ. P. 45(d) ...............................................................................42

# INTRODUCTION

In November 2023, Defendant-Appellant Media Matters for America ("MMFA"), an activist organization dedicated to fighting what it calls "conservative misinformation," published a widely disseminated article about Plaintiff-Appellee X Corp. It proclaimed that it "found" blue-chip advertisers' content being placed next to hateful posts on the X social media platform, formerly known as Twitter. In the ensuing ruckus, many of those advertisers paused their spending on X.

MMFA lied. The unusual pairing of advertisements with hateful content resulted not from organic ad placement by X, but rather deliberate manipulation by MMFA, the article's author, Eric Hananoki, and MMFA's president, Angelo Carusone. X sued them to vindicate its economic interests and correct MMFA's egregious misrepresentations about X's platform.[1]

X then sought information about MMFA's donors—who they are, the locations where they reside, and what MMFA told them—because that information is critical to X's prosecution of its claims. For example, whether MMFA was motivated to defame X to please its donors—or procure new ones—would be highly probative of MMFA's actual malice in publishing the article. The same would be true of communications between MMFA and any donors (including competitors) indicating interest in harming X's reputation. And documents showing that MMFA

---

[1] While this Brief references MMFA, it applies equally to each defendant.

solicited Texas donors would be potentially dispositive of MMFA's jurisdictional and venue defenses.

Nonetheless, MMFA refused to release this information, necessitating X's initial motion to compel. In June 2024, the district court ordered MMFA to log all donor-related documents responsive to X's requests for production over which MMFA claimed privilege. But instead of seeking clarification or reconsideration, MMFA defied this judicial directive for over four months.

The motions panel found it "puzzling" that MMFA "defied the district court." *X Corp. v. Media Matters*, 120 F.4th 190, 198 (5th Cir. 2024). As did the district court, which concluded in September 2024 that MMFA's recalcitrance waived any putative qualified First Amendment privilege. MMFA appeals that decision, but this Court lacks jurisdiction to review routine document-production orders.

Even assuming otherwise, the district court correctly found that MMFA waived any First Amendment privilege on multiple, independently sufficient grounds. Alternatively, that court ruled that MMFA's qualified First Amendment privilege must yield to X's demonstrated need for the documents at issue. That careful balancing is bread-and-butter trial-court work, and MMFA cannot carry the heavy burden required to show that it was an abuse of discretion.

## STATEMENT OF JURISDICTION

Although this Court lacks jurisdiction over the district court's interlocutory discovery order, the district court properly exercised diversity jurisdiction. *See* 28 U.S.C. §§ 1291, 1332(a)(1).

## ISSUES PRESENTED

1. Whether this Court has jurisdiction to review the challenged order.

2. Whether the district court abused its discretion in holding that MMFA waived a First Amendment associational privilege based on multiple independent and willful failures to comply with that court's discovery orders.

3. Whether the First Amendment's right of association privileges a private party to refuse to follow a discovery order in its litigation against another private party, and if so, whether the district court abused its discretion by concluding that X's interest in the documents outweighed MMFA's qualified privilege.

4. Whether the district court properly overruled MMFA's relevancy and harassment objections and found MMFA's inadequately briefed proportionality objections abandoned.

## STATEMENT OF THE CASE

### I.    Factual Background

As early as April 2022, MMFA targeted Elon Musk to prevent Musk's acquisition of then-Twitter. ROA.255-56. As the transaction coalesced, MMFA

organized an activist-group coalition to undermine Twitter's reputation, revenue, and value. ROA.256-57. This coalition sought to force then-Twitter to maintain censorious controls over speech the groups disfavored, or else drive advertisers away from Twitter to deprive the company of its most significant revenue stream: major-brand advertising. ROA.256-58.

Those efforts failed, and Musk's Twitter purchase closed in October 2022. ROA.256-57. Twitter became X Corp., which, under Musk's new leadership, committed itself to maximizing both free speech for its users and robust brand-safety protections for its advertisers. ROA.246, 258-60. Determined to undermine this project, MMFA published over twenty articles seeking to diminish X's standing with major advertisers. ROA.247.

MMFA's campaign did not initially yield the full economic harm it sought. But on November 16, 2023, Hananoki wrote, MMFA published, and Carusone trumpeted an article with a provocative (and false) headline: "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content." ROA.260. As its headline suggests, this piece represented that X organically "placed" blue-chip advertisers' content next to hateful content on X's popular social media platform. ROA.260-61. MMFA publicly described that it "found" the ad pairings on the platform, ROA.260, through "us[ing] Twitter the way a normal user would," ROA.250.

"Normal" was a curious description. X's internal review uncovered that MMFA's staff created a separate account to use in their "investigation." They ensured the account was more than 30 days old to override mandatory content filters and safety settings that X imposes on all new accounts. ROA. 261. MMFA then set this account to follow only 30 other accounts, all of which were either already known for posting fringe content or were major advertisers' accounts, thus telling the X algorithm that they *wanted* to see only fringe content and major-brand content. ROA.262. But, thanks to X's comprehensive brand-safety policies and tools, ROA.258-60, even that was insufficient to yield MMFA's desired results.

Undeterred, MMFA's staff manufactured through brute force the ad pairings it so desperately wanted to tarnish X's reputation. MMFA staff scrolled and refreshed incessantly, resulting in the display of 13 to 15 times more advertisements per hour than the average X user sees. ROA. 262. This resulted in generating advertisement-content pairings unlike anything any normal user would see. ROA.262. Through this intentional manipulation, MMFA eventually obtained screen shots of controversial content adjacent to major-brand advertising. ROA.262.

MMFA omitted from its publications and media engagements all information about how it conducted its "research" to create those content-advertisement pairings. ROA.262-63. This led readers, listeners, and viewers to believe that the pairings were organic, unmanipulated, widespread, and cause for alarm. ROA.263. But the

pairings represented 0.0000009090909 percent of the impressions served on the day in question. ROA.263. In all but one case, literally no other user on the platform, out of more than 500 million, saw the ad pairing in question; only one pairing was seen by someone (one single person) other than MMFA. ROA.263. MMFA omitted the posts above and below the pairings from the article, as revealing them would have shown the narrow subset of accounts MMFA targeted and followed. ROA.263. And MMFA set the account to "private," thus blocking anyone from seeing that it followed controversial accounts exclusively. ROA.264.

MMFA's knowingly false article targeting X's business relationships resulted in many advertisers withdrawing from X's platform. ROA.264-65. X thereafter sued for business disparagement, tortious interference with contract, and tortious interference with prospective economic advantage. ROA.265-70. X seeks compensation for many millions of dollars in lost revenue.

## II.    Procedural History

Beginning February 5, 2024, X served requests for production. ROA.610-47. In response, MMFA asserted virtually every conceivable basis to withhold production, asserted various boilerplate privileges and objections, and impermissibly promised to produce documents "subject to" those objections. *See* ROA.589; *see generally* ROA.649-744 (Defendants' initial objections and

responses). X's first and second sets of requests for production contain four requests targeted towards MMFA's donors:

- No. 17: information sufficient to identify MMFA's donors.

- No. 18: communications reflecting solicitations of donations.

- No. 21: documents reflecting the funding sources for MMFA's defamatory articles about X.

- No. 35: communications with donors regarding X and the matters at issue in this lawsuit.

ROA.620, 633, 644.

In their initial responses and objections, MMFA objected to these requests under purported "First Amendment speech and associational rights" protecting donor information from disclosure and refused to produce responsive documents. ROA.668-71, 673-74, 705-707, 709-10 (initial responses and objections to RFP Nos. 17, 18, & 21); ROA.728-29 (initial responses and objections to RFP No. 35).

In early April 2024, the parties conferred telephonically about the requests and about MMFA's objections and privilege assertions. ROA.950-53. In a follow-up email, MMFA asserted that First Amendment protections apply to discovery between private, non-governmental parties. ROA.949. X's counsel's response pointed out the disparity between that position and controlling law, under which MMFA bore the burden of establishing such a privilege. ROA.946.

Almost two months of subsequent discussion yielded no substantial progress. ROA.916-56. MMFA's intransigence set off two chains of events.

*First*, on May 22, 2024—more than three months after X served its initial request for production—X informed MMFA that it would move to compel. ROA.926-27. The next day, MMFA reiterated its refusal to provide any further First Amendment authorities and argued that the dispute was unripe because it had not served a privilege log. ROA.924-25. It justified its refusal to provide a privilege log by arguing—for the first time—that it would provide one only after the parties agreed to a privileged-documents protocol. ROA.925.

The parties met telephonically again on May 24. ROA.919-20. Thereafter, MMFA's counsel agreed to serve amended responses and objections to clarify that "[MMFA is] not withholding documents based on general objections" to X's requests. ROA.917. The parties made no agreement about First Amendment privileges specifically or about document collection and review, contrary to MMFA's assertion. *See* Br. 7-8. X moved to compel the next day. ROA.578-606.

In the motion to compel, X specifically sought production of all documents responsive to the donor-information requests. *See* ROA.581. X asked the district court to find MMFA's asserted First Amendment rights either inapplicable or satisfied, and asked that court to overrule MMFA's vagueness, undue burden, and harassment objections to those requests. ROA.582-83.

On May 25, 2024, the district court ordered the parties to confer again. ROA.783. X's counsel requested that court-mandated conference, ROA.914-15, but MMFA's counsel responded that the burden to confer on First Amendment privileges had been met. ROA.914.

On June 6, 2024, the district court ruled on X's motion to compel ("the June Order"). The June Order deferred ruling on MMFA's First Amendment privilege objections to the production of donor-related information until a privileged-documents protocol was established, but it ordered MMFA to search for and log documents responsive to the donor-related requests. *See* ROA.979 (deferring privilege determination until "responsive documents *have been identified*" (emphasis added)). The June Order made the obligation to search for and log donor documents a specific, separate directive. *See* ROA.979 ("The Court **ORDERS** Defendants to *log any responsive documents as privileged* and deliver to plaintiff no later than **June 14, 2024**.") (italic emphasis added).

The June Order also included more generalized discovery directives. It commanded the parties to confer on numerous requests, establish a privileged-documents protocol, and establish an ESI protocol by June 14. ROA.978-79. And it required MMFA to provide documents responsive to nine requests, but it narrowed each requirement substantially to MMFA's benefit. ROA.979-80.

Per the June Order, the parties negotiated and accepted stipulations governing the exchanges of electronically stored information and privileged documents. *See* ROA.988-1003. Before June 14, the parties also negotiated a joint protective order to maintain the confidentiality of documents that comprised trade secrets or commercial information that would not be otherwise known publicly. ROA.1011-23 (executed and filed June 13, 2024). Because MMFA was specifically concerned about protecting information related to their donors, *see, e.g.*, ROA.928, it requested, and received, a specific provision in the protective order designating donor materials as Confidential Attorney Eyes Only, ROA.1013-17. That agreement prevents X from disclosing the information to anyone who is not an attorney of record or one of a handful of other need-to-know persons like court personnel. ROA.1012, 1015-17. Except for two in-house counsel and their supporting personnel, the agreement prohibits any X employee from viewing the information. ROA.1015-16.

The next day, which was also the deadline for MMFA's privilege log, the district court declined to memorialize the protective order in a court order, citing its consistent practice against doing so. ROA.1024. But the court emphasized that the parties could agree without court involvement and that documents subject to the agreement could be later filed under seal, assuming the standard for doing so was met. ROA.1024-25. The court also emphasized that the agreement is—as X understands it to be—contractually binding and enforceable. ROA.1024. MMFA

neither objected to this result nor told X at any point that it required any additional court-ordered protection for its information.

During that same period, the parties negotiated a motion to amend the scheduling order. MMFA requested an extension of the June 14 deadline to provide a privilege log of all donor-information documents. ROA.1634. X agreed to an extension to June 28 for the court-ordered deadline, and the parties ultimately agreed to separately negotiate an agreed timeline for other, future privilege logs. ROA.1630-34. The district court granted the motion, including memorializing June 28, 2024, as the new date for MMFA to provide the privilege log it previously ordered. ROA.1009-10. Coterminously, the parties filed their privilege-log-exchange agreement. ROA.1004-08.[2]

*Second*, on May 28, 2024, MMFA served the promised amended responses and objections, removing their objection and privilege assertion based on "First Amendment speech and associational rights." ROA.1491-93 (amended responses and objections to RFP No. 35); ROA.1564-67, 1568-69 (amended responses and objections to RFP Nos. 17, 18, & 21). The amended responses neither reasserted nor incorporated by reference the original First Amendment objections; instead, they

---

[2] Contrary to MMFA's intimation (at 10-11), X never agreed to postponing compliance with the district court's order indefinitely by negotiating the exchange of *other* privilege logs, ROA.1004-08 (Stipulation and Order for the Exchange of Privilege Logs); ROA.1629-39 (emails negotiating scheduling order and privilege log schedule).

replaced previously asserted constitutional objections with a claim that the requests were harassing. ROA.1491-93; ROA.1564-67, 1568-69. Those amended responses did *not* "reserve[] the right to assert [the] First Amendment privilege" MMFA had previously asserted. Br. 8.

MMFA served a privilege log on June 28, but it revealed no entries reflecting documents responsive to X's donor-information requests. ROA.2023-35. On July 12, X emailed objections to MMFA's June 28 privilege log. ROA.1648-49. After the parties' July 19 teleconference—five and a half months after X served its initial requests for production—MMFA made clear that it was "not separately searching for donor-related documents," directly contravening the district court's order. ROA.1646. In response, X emphasized its view of MMFA's discovery obligations, stating, "Defendants have made clear they will not search for or produce documents regarding donor information—let alone log the documents. *X believes Defendants are required to do so*." ROA.1645 (emphasis added). Although little substantive progress was made, MMFA agreed to amend their June 28 privilege log in accordance with the parties' agreed formatting changes. ROA.1644.

After MMFA reiterated that it was "refus[ing] to independently *search* for donor-related documents," ROA.1643 (emphasis in original), X filed a renewed motion to compel, ROA.1336-63. X argued that MMFA waived any arguable First Amendment privileges by failing to preserve—indeed, by outright dropping—the

privilege claim, failing to provide a privilege log, failing to follow the district court's June Order, and failing to establish the threat of harassment needed to support a privilege claim. ROA.1348-54. X also argued that MMFA's First Amendment privilege assertion failed on its merits. ROA.1354-61.

On September 6, MMFA filed its response to the motion to compel. ROA.1579-1605. Without citation, MMFA told the district court "[a]fter X asked [MMFA] to remove 'generalized' objections, [MMFA] agreed to instead assert these privilege objections on a document-by-document basis." ROA.1587. But, as noted above, the parties agreed only that MMFA would clarify that it was not withholding documents based on general objections to the requests. ROA.917. MMFA now claims the agreement was "to amend its objections and responses to clarify that only its Rule 26 objections—and not its anticipated privilege assertions—would limit its document collection and review." Br. 7-8. But that was not the parties' agreement. *See* ROA.912-17. Regardless, MMFA asserted no First Amendment arguments in the operative responses and objections.

MMFA's response to X's motion to compel also attempted to excuse MMFA's failures by blaming the June Order for compelling burdensome production. ROA.1588-89. But *none* of the June Order's non-donor-information production directives included a fixed compliance deadline. ROA.978-80. And although the district court had ordered production of documents responsive to other

requests, those requests were narrowed significantly to reduce MMFA's burden. ROA.979-80. Contrary to MMFA's claim, ROA.1588-89, the reason its first privilege log and its amended first privilege log contained no donor-information entries was *not* that its counsel was swamped with other document requests, but because MMFA refused outright to search for them, as it told X repeatedly. *See* ROA.1643-46.

The day it filed its response, MMFA served a second privilege log. ROA.2052-2147. That log included several documents responsive to the donor-information requests that had, as MMFA's response to the motion to compel put it, "surfaced in the review process." ROA.1590. As MMFA conceded, it included those documents in its second privilege log only because it found them incidentally.

After full briefing, the district court granted X's motion. ROA.2148-69 ("September Order"). It found that MMFA waived any First Amendment privilege thrice over. First, because its months-long refusal to search for documents responsive to the donor-information requests was unwarranted and unjustified. ROA.2153-55. Second, because MMFA disregarded the district court's order by failing to provide a log of all allegedly privileged donor-information documents. ROA.2155-56. And third, because "the operative set of objections" did not raise, and instead removed, any assertion of a First Amendment privilege. ROA.2156-60. The district court alternatively concluded that, even under the First Amendment, X

14

overcame MMFA's asserted privilege. ROA.2164-69. The court ordered that "Defendants **SHALL** conduct the previously required search for documents responsive to RFPs 17, 18, 21, and 35 and **SHALL PROVIDE** all documents in its care, custody, or control responsive to RFPs 17, 18, 21, and 35 no later than **October 7, 2024.**" ROA.2169.

MMFA moved the district court for a stay pending appeal, ROA.2170-2205, while attempting to perfect an interlocutory appeal of the discovery order, ROA.2206-2208. It then sought a stay from this Court. ROA.2214-2260. The district court denied MMFA's motion. ROA.2310. On expedited briefing, a motions panel of this Court granted a stay pending appeal but emphasized that a "panel hearing the merits of an appeal may review a motions panel ruling, and overturn it where necessary." *X*, 120 F.4th at 198 n.6. These expedited proceedings followed.

## SUMMARY OF THE ARGUMENT

**I.** MMFA cannot fabricate appellate jurisdiction over this mine-run discovery dispute through the collateral-order doctrine. The September Order resolved an issue intertwined with the merits and, as a party, MMFA has an adequate appellate remedy: review after final judgment with remand for retrial. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 109 (2009). MMFA's collateral-order-doctrine cases, including *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), cannot support the expansive appellate jurisdiction MMFA claims here.

**II.** The district court concluded that MMFA waived its reliance on a qualified First Amendment privilege. That result was a bread-and-butter trial-court factual finding, not an abuse of discretion. As the motions panel observed, the district court's June Order "implicitly required [MMFA] to look for documents responsive to X['s] discovery requests," but "[i]n the intervening four months . . . [MMFA] refused to search for these documents or to log its claims to privilege over them." *X*, 120 F.4th at 197. The district court was well within the bounds of discovery management when it concluded that MMFA's litigation strategy constituted waiver.

MMFA's rebuttal turns on a never-previously-claimed and implausible *post hoc* interpretation of the parties' submission of a joint motion to extend some of the district court's scheduling-order deadlines. But nothing in that motion, the parties' attendant conferral process, or the court's order granting it in part superseded the court's requirement that MMFA log responsive donor-related documents and communications. Insofar as MMFA detected ambiguity, it was incumbent on it as the party bound by a court order to seek judicial clarification.

**III.** On the merits, MMFA's arguments fare no better. Its insistence that the district court should have applied exacting scrutiny presumes the presence of state action. But this is a civil dispute between private parties, and thus there is no state action that could trigger heightened scrutiny. Even assuming that is wrong, MMFA's argument is baffling because the district court applied a heightened standard of

review to X's requests for production. MMFA's disagreement with how the court applied that standard to the facts is no basis to find an abuse of discretion.

**IV.** Finally, because the district court applied a more demanding standard of review than the one in Federal Rule of Civil Procedure 26, it necessarily follows that the district court correctly overruled MMFA's Rule 26 objections. MMFA is simply wrong to assert that the district court never addressed those objections.

## STANDARD OF REVIEW

"The district court has broad discretion in discovery matters and its rulings will be reversed only on an abuse of that discretion." *Scott v. Monsanto Co.*, 868 F.2d 786, 793 (5th Cir. 1989). Under this deferential review, *Cruz v. Maverick County*, 957 F.3d 563, 569 (5th Cir. 2020), this Court will reverse a discovery order "only if it is arbitrary or clearly unreasonable, and the complaining party demonstrates that it was prejudiced by the ruling," *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549 (5th Cir. 2000) (cleaned up). Courts "make an independent examination of the entire record" for findings necessary to support First Amendment claims. *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 492 (5th Cir. 2013) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (applying independent-examination review to "actual malice" element)). But reviewing a district court's ultimate ruling is "not equivalent to a 'de novo' review," as findings that are "irrelevant to the constitutional standard" are not

disturbed unless clearly erroneous. *Bose*, 466 U.S. at 514 n.31. The Court "must first determine whether appellate jurisdiction exists" before considering an appeal's merits. *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 350 (5th Cir. 2004) (per curiam).

## ARGUMENT

## I. The Court Lacks Appellate Jurisdiction.

This Court has jurisdiction to review "final decisions of the district courts." 28 U.S.C. § 1291. Generally, "discovery orders do not constitute final decisions" and "are not immediately appealable." *A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n*, 233 F.3d 895, 897 (5th Cir. 2000); *see also* 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3914.23. MMFA nevertheless argues that the September Order is an immediately appealable collateral order. Alternatively, it seeks mandamus relief. But both arguments fail, so this appeal should be dismissed for want of jurisdiction.

### A.     The district court's discovery ruling is not immediately appealable.

The collateral-order doctrine "permits appeals of interlocutory decisions (a) that are conclusive, (b) that resolve important questions separate from the merits, and (c) that are effectively unreviewable on appeal from the final judgment." *Whole Woman's Health*, 896 F.3d at 367. Assuming that the September Order is conclusive,

18

the donor-information dispute is inseparable from the merits and appeal from a final judgment offers alternative remedies. Each fault independently precludes review.

*First*, the September Order resolved an issue intertwined with the merits. In determining that X was entitled to the requested information, the district court reasoned in part that, in this factual context, X's needs for MMFA's information were robust and MMFA's First Amendment interests were comparatively weak. ROA.2164-69. X would use MMFA's information to prove its claims. Documents showing that MMFA solicited donors in Texas would refute MMFA's position that the district court is an improper venue without jurisdiction over X's claims. *See* ROA.2165-68. On the merits, MMFA's solicitation of donations from groups or persons hostile to X would supply potent evidence of malice. *See* ROA.2165-67. The First Amendment rights MMFA undoubtedly intends to assert at trial to stymie the admission and use of this information are not "significantly different" and "conceptually distinct" from the "fact-related legal issues" of actual malice, liability, and punitive damages. *Johnson v. Jones*, 515 U.S. 304, 314 (1995).

The district court's views of the comparative strength of X's need to make those showings versus MMFA's First Amendment interests are necessarily "intertwined" with these merits issues at trial. *See* ROA.2152 (citing *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010)); *cf. Ernst v. Carrigan*, 814 F.3d 116, 120 (2d Cir. 2016) (finding anti-SLAPP analysis "inescapably intertwined

with the 'fact-related legal issues' underlying the defamation claims" (quoting *Johnson*, 515 U.S. at 314); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 118-19 (2d Cir. 2006) (order limiting documents' public access was "completely separate" from underlying racketeering and fraud allegations, about which the court "d[id] not need to say anything").

MMFA responds that the merits of X's tort claims are separate from the asserted "First Amendment question" underlying their discovery objections. Br. 22 (citing *X*, 120 F.4th at 196). But that argument fails under the legal test that MMFA asked the district court to apply, which includes, among other factors, "the importance of the information sought to the issues in the case." ROA.2165 (citing *Perry*, 591 F.3d at 1161). This discovery dispute centers on "donor related documents, particularly ones that are demonstrative of Defendants' mental state, which is relevant to the essential elements of [X's] claims." ROA.2165. Such intent questions "go to the heart of the matter," ROA.2166 (cleaned up), and cannot be deemed "separate" from this case's merits.

*Second*, parties have an adequate appellate remedy: remanding the case for a retrial. *Mohawk* is instructive. *See* 558 U.S. at 109. There, the Court addressed whether a district court order granting a motion to compel discovery of information based on an attorney-client-privilege waiver was an appealable collateral order. *Id.* It was not. Courts "routinely require litigants to wait until after final judgment to

vindicate valuable rights, including rights central to our adversarial system." *Id.* at 108-09.

*Mohawk* "readily acknowledge[d] the importance of the attorney-client privilege"; nevertheless, "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality" of the privilege. *Id.* at 109, 109. Courts "can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." *Id.* at 109. The same is true here.

Moreover, *Mohawk* recognized that deferring review of an adverse ruling until final judgment will not chill protected communications of individuals who were "unlikely to focus on the remote prospect of an erroneous disclosure, let alone on the timing of a possible appeal." *Id.* at 110. Privilege-dispute stakeholders must already account for the realistic possibility of disclosure if the privilege's scope or applicability are "misapplied." *Id.* And the Court specifically rejected the counterargument that interlocutory review is necessary to protect an asserted "right not to disclose the privileged information in the first place." *Id.* at 109.

Although *Mohawk* addressed the attorney-client privilege, it applies *a fortiori* here. Unlike the absolute protection of the attorney-client privilege, MMFA's theory at most supports "a qualified privilege from the disclosure of

information . . . protected by the First Amendment's freedom of speech and association." ROA.2152 (citing *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 607 (2021); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958)). The prospect that disclosure will result from "balanc[ing] the interest in disclosure against the burden imposed on associational rights" inheres in qualified privileges. ROA.2152 (citation omitted).

MMFA cites no Fifth Circuit authority extending the collateral-order doctrine to adverse discovery orders against party litigants (as opposed to third parties in *Whole Woman's Health*). Existing authority supports the opposite result. *See, e.g.*, *Mohawk*, 558 U.S. at 109; *Piratello v. Philips Electronics N. Am. Corp.*, 360 F.3d 506, 508 (5th Cir. 2004) (per curiam) ("A party that wishes to immediately appeal a discovery order must first refuse compliance, be held in contempt, and then appeal the contempt order." (cleaned up)). Other circuits hold that interlocutory discovery orders adverse to claimed associational privilege are not appealable. *See Ohio A. Philip Randolph Inst. v. Larose*, 761 F. App'x 506, 511 (6th Cir. 2019) (collecting Sixth and Tenth Circuit authority); *see also Perry*, 591 F.3d at 1156.

While the stay panel correctly noted that some collateral orders "infring[ing] on First Amendment rights" are appealable, *X*, 120 F.4th at 196 (citation omitted), that authority cannot benefit MMFA. MMFA notes (at 24) that this Court has permitted "litigants in the case" to invoke the collateral-order doctrine to protect

their First Amendment rights. *Marceaux*, 731 F.3d at 490 (citing *United States v. Brown*, 218 F.3d 415, 420-21 (5th Cir. 2000)). But this authority approved of immediate appellate review only of orders restricting *speech* rights—and even then, only of orders preventing litigants from making public statements and "'extrajudicial comments,'" which, "by definition, have no bearing on the trial itself." *Brown*, 218 F.3d at 420-21; *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 223 (5th Cir. 2020) (similar regarding free-press rights). That does nothing for MMFA, which was not restrained below from making extrajudicial comments. Similarly, MMFA cites authority protecting "those exercising their First Amendment rights" from "the chilling effect of defending meritless and abusive tort suits." *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 177 (5th Cir. 2009). Again, this cannot help MMFA: X's complaint cannot be plausibly claimed to be "meritless and abusive." It already survived a motion to dismiss.  ROA.1320.

None of MMFA's authorities approve of MMFA's theory that a litigant may seek immediate review in this Court of any order that litigant views as impinging on his First Amendment interests to any extent. Nor, so far as X is aware, has the Supreme Court ever endorsed such a view of the collateral-order doctrine. And the consequences of this Court adopting such an expansive theory of interlocutory review would be drastic. By definition, every order to compel disclosure or production requires a litigant to communicate something he would rather not. No

doubt many of these communications are made to third parties that a dissatisfied litigant may point to in order to claim his associational rights have been infringed. MMFA has offered no limiting principle entitling it to appellate review but preventing this Court from becoming a free-wheeling discovery referee. That is because it has none. This Court should reject MMFA's invitation to take up a swath of routine discovery disputes for MMFA's benefit.

MMFA's authorities are also inapposite insofar as they involve *third parties* seeking discovery-order review. That consideration was crucial in *Whole Woman's Health*, which emphasized that "a new trial order can hardly avail a third-party witness who cannot benefit directly from such relief." 896 F.3d at 367-68. This Court expressly relied on that distinction when it let non-party legislators appeal a district court's order overruling a legislative-privilege objection. *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023) ("As non-parties, the legislators cannot move for a new trial."). Furthermore, *Whole Woman's Health* relied on the third-party distinction to depart from Ninth and Tenth Circuit precedent holding that rulings adverse to First Amendment privilege claimants were not immediately appealable. 896 F.3d at 368 (distinguishing *Perry*, 591 F.3d at 1156; *In re Motor Fuel Temp. Sales Practices Litig.*, 641 F.3d 470, 484 (10th Cir. 2011)). This Court should follow that distinction to honor the rule of orderliness, *see Mercado v. Lynch*,

823 F.3d 276, 279 (5th Cir. 2016) (per curiam), to avoid a circuit split, and to respect *Mohawk*.

**B.    The demanding mandamus requirements are unsatisfied.**

Mandamus review provides no jurisdictional alternative. Mandamus is granted "not as a matter of right, but in the exercise of a sound judicial discretion." *In re Occidental Petrol. Corp.*, 217 F.3d 293, 295-96 (5th Cir. 2000) (citation omitted). The petitioner must have "no other adequate means to attain the relief he desires," the Court must be "satisfied that the writ is appropriate under the circumstances," and the petitioner must demonstrate a "clear and indisputable right to the writ." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019) (citations omitted). "Satisfying this condition requires more than showing that the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion"—the court must have "clearly and indisputably erred." *Id.* (cleaned up).

The Court may "deny the writ as a matter of prudence even when the district court erred." *In re Paxton*, 60 F.4th 252, 260 (5th Cir. 2023). These "prudential denials" respect "mistaken resolution of a novel or thorny question of law," *id.*, such as misinterpreting a "question of first impression," *Landmark Land Co. v. Off. of Thrift Supervision*, 948 F.2d 910, 911 (5th Cir. 1991). "These types of mistakes, made under difficult circumstances, may not rise to the level of a clear and

indisputable error, as required for mandamus relief." *In re Sealed Petitioner*, 106 F.4th 397, 402 (5th Cir. 2024) (citation omitted). Under that standard, mandamus relief is doubly foreclosed.

*First*, any right to relief is unclear and disputable. Mandamus is unavailable if the "legal merits" or the district court's duties are "to any degree debatable." *In re Parish*, 81 F.4th 403, 409 (5th Cir. 2023) (citation omitted). MMFA seeks extensions of First Amendment associational rights, presenting a "novel [and] thorny question of law" that is inappropriate for mandamus. *In re Paxton*, 60 F.4th at 260. Indeed, accepting MMFA's arguments would bring the Fifth Circuit into conflict with other circuits, rendering mandamus unwarranted. *See, e.g.*, *In re Sealed Petitioner*, 106 F.4th at 404 (denying mandamus petition where the Fifth Circuit had not addressed a question and the petitioner's argument conflicted with two other circuits' law). And even if the district court erred, *but see infra* Parts II-IV, a "mere showing of error" cannot suffice because "a writ of mandamus is not to be used as a substitute for appeal." *In re Occidental*, 217 F.3d at 295-96 (cleaned up).

*Second*, the discovery dispute's narrow, fact-bound scope renders mandamus unwarranted. Mandamus is "especially appropriate" where it has "significance beyond the immediate case." *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 294 (5th Cir. 2015) (cleaned up). But that generality never supplanted the fundamental tenet that "writs of mandamus are supervisory in nature." *In re Volkswagen of Am., Inc.*,

545 F.3d 304, 319 (5th Cir. 2008) (en banc). A case-bound, "fact-intensive" analysis like the district court's should "establish that the issue presented here would be of minimal importance beyond this case." *In re Beazley Ins. Co.*, No. 09-20005, 2009 WL 7361370, at *6 (5th Cir. May 4, 2009) (per curiam) (cleaned up).

## II.    The District Court's Waiver Findings Were Not an Abuse of Discretion.

The district court found that MMFA waived its First Amendment objections by disobeying orders concerning logging privilege objections, by failing to produce a privilege log per Rule 26, and by failing to properly lodge First Amendment objections to X's discovery requests. ROA.2153-60. That court properly exercised its discretion in holding that each failure independently waived MMFA's First Amendment objections, and each basis suffices to affirm.

MMFA counters (at 40-50) that it complied with discovery obligations and preserved First Amendment claims. These arguments fail outright under this Court's deferential review for discovery orders. This Court reverses a trial-court "order only if it is 'arbitrary or clearly unreasonable,' and the complaining party demonstrates that it was prejudiced by the ruling." *HC*, 201 F.3d at 549. Because this case does not involve a criminal defendant's rights, however, MMFA cannot suggest the standard for "intentional relinquishment or abandonment of a known right or privilege" extends to the "voluntary [and] . . . knowing, intelligent acts" of a litigant in civil discovery. Br. 40 (citations omitted).

27

These principles were not "lost on the [c]ourt" below. ROA.2304. Rather, the "only reasonable conclusion" was that "Defendants' actions constituted waiver." ROA.2304. They "failed to comply with the June 6, 2024 Order, failed to describe[] the documents withheld, and because they did not even search for them, they could not assert the privilege with respect to specific documents in their amended objections." ROA.2304. Each reason "could independently warrant waiver," but "if all three of these grounds *together* do not amount to waiver," it was rightly unclear to the district court "what, if anything, would ever constitute waiver," ROA.2304.

That conclusion tracks Circuit precedent. In discovery, "waiver occurs by an affirmative choice by a party to forego any remedy available to him." *Harris v. Dallas ISD*, 435 F. App'x 389, 396 (5th Cir. 2011) (per curiam) (quoting *United States v. Dodson*, 288 F.3d 153, 160 (5th Cir. 2002)) (cleaned up). For instance, in *Harris*, "[b]y withdrawing her motion to compel, Harris chose to forego the remedy available to her" and waived the issue. *Id. Whole Woman's Health* further confirms MMFA's waiver: though the district court there ordered Catholic bishops to produce numerous internal Church communications over Easter weekend, *none* of this Court's three opinions—including the dissent—suggested that the bishops could preserve a First Amendment privilege against discovery by merely ignoring court orders. *See* 896 F.3d at 375; *id.* at 376 (Ho, J., concurring); *id.* at 376-77 (Costa, J., dissenting).

MMFA fails to justify its non-compliance with court orders. It inadequately logged First Amendment privilege objections. And its shifting discovery objections failed to preserve First Amendment claims.

## A.    MMFA failed to comply with the district court's orders.

It is still "puzzling why [MMFA] defied the district court" with respect to its discovery obligations. *X*, 120 F.4th at 198. MMFA could have "independently search[ed] for the documents and creat[ed] a privilege log." *Id.* But it did not. Thus, the stay panel asked, "Does [MMFA] think that the First Amendment excuses it from explaining why withheld discovery is privileged?" *Id.*

That appears to be MMFA's position. MMFA pays this Court mere lip service to the contrary (at 44 n.9). Yet there is no disputing that Rule 26(b)(5) obligates MMFA to expressly claim and describe any purportedly privileged documents, *X*, 120 F.4th at 198, and here the trial judge expressly ordered MMFA to do so, ROA.979-80. Nor did MMFA seek reconsideration of that order. It simply refused to comply for months. MMFA offers no plausible excuse for its actions. A "trial judge's control of discovery is granted great deference." *X*, 120 F.4th at 198 (quoting *HC*, 201 F.3d at 549). "If litigants refuse to comply with the trial court's reasonable discovery orders, they do so at their own risk." *Id.* By contrast, when this Court "reversed a discovery order mid-litigation in *Whole Woman's Health*, [896 F.3d at 366,] the adversely affected party had diligently searched for and turned over a

substantial number of responsive documents," unlike MMFA. *Id.* The district court thus reasonably interpreted its own order and imposed appropriate consequences.

**1.** MMFA "plainly ignored" the June Order "by refusing to search for and log documents responsive to RFP Nos. 17, 18, 21, and 35." ROA.2153. This finding tracked the June Order's clear language, which required MMFA to "create and deliver a privilege log of any documents being withheld from production to Plaintiff" pursuant to those requests, ROA.980, and MMFA's repeated assertions that it would not search for or log such documents, ROA.2154. As the district court noted, no First Amendment case "supports Defendants' decision to refuse to search for responsive documents." ROA.2155.

That court's stay order, ROA.2301-03, confirms MMFA's intransigence. MMFA's "duty to 'log any responsive documents' could only reasonably be predicated on first searching for the documents." ROA.2302. "No good faith reading of the Order allow[ed] Defendants to provide a blank privilege log—that is, without the purported First Amendment privileged documents." ROA.2302.

In response, MMFA relitigates the facts, arguing that compliance with the June Order never required it to independently search for responsive donor information or log attendant privilege claims until the relevant discovery cutoff. Br. 40-47. That approach fails because the "district court had broad discretion to construe its own pretrial orders." *Transamerica Leasing, Inc. v. Institute of London*

*Underwriters*, 430 F.3d 1326, 1334 (11th Cir. 2005) (cleaned up). "When a district court's decision is based on an interpretation of its own order, [appellate] review is even more deferential because district courts are in the best position to interpret their own orders." *JTH Tax, Inc. v. H&R Block E. Tax Servs.*, 359 F.3d 699, 705 (4th Cir. 2004); *see also Stansell v. López*, 40 F.4th 1308, 1311 (11th Cir. 2022) ("A district court's interpretation of its own prior order is properly accorded deference on appeal when that interpretation is reasonable." (cleaned up)). The "great deference owed to the trial judge's findings compels the conclusion that where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (cleaned up).

MMFA (at 40-42) relies on the parties' submission of a joint motion to extend some deadlines in the district court's scheduling order. But X never agreed to let MMFA skirt the June Order by negotiating *other* privilege logs, *see* ROA.1004-08; ROA.1629-39, and nothing joint motion suggests otherwise. The most natural understanding of MMFA's promise to "produce a log of any privileged documents identified to date" on June 28, ROA.1630, was that *later* privilege logs would cover information the district court had not *already* ordered logged. By so-ordering the extension, the district court confirmed that nothing in the agreed motion or the order

granting it in part superseded the order to log donor-related materials. *See* ROA.2302.

Regardless of whether the district court extended the deadline for compliance with its prior order, MMFA *still* had not given X a privilege log asserting First Amendment claims before X moved to compel. ROA.2302. Under MMFA's "only reading" of the extension order, it needed never log First Amendment claims until "the end of the parties' agreed upon privilege log schedule." ROA.2302. But "no plausible reading" of the extension order could have "postponed the adjudication of a ripe controversy by half a year." ROA.2302. Insofar as MMFA detected ambiguity in the order binding it, it bore the burden to seek clarification. *See generally Maness v. Meyers*, 419 U.S. 449, 458 (1975). It did not. *Cf.* ROA.1540-45 (X emails reiterating that MMFA had to identify and log purportedly privileged documents).

Apparently understanding the peril in flouting court orders, MMFA disavows its prior conduct, claiming that it "from the outset searched for all potentially responsive documents—including donor-related documents—that pertain in any way to this litigation." Br. 42 (citing ROA.1644). This eleventh-hour attempted exculpation is doubly flawed.

First, it contravenes what MMFA told the district court. There, MMFA represented that it had "'refus[ed] to independently *search* for donor related documents,'" and that "'the privileged status of donor-related documents'" was thus

ripe for judicial resolution in July 2024. ROA.2155 (quoting ROA.1643). MMFA admits (at 45) that it collected donor information only if incidentally responsive to unrelated discovery requests; MMFA contradicts itself by now suggesting otherwise. Piling excuses, MMFA asserts (at 43) that it needed never separately search for purportedly privileged documents because it also raised Rule-26-related objections. This fares no better. Rule 26(b)(5)(A) brooks no such exception, requiring MMFA to expressly claim privilege document-by-document to enable X and the district court "to assess the claim[s]" of privilege. If MMFA believed that it was exempt from even looking for—and thus logging—privileged documents because of Rule 26, it was obligated to move the district court for reconsideration on that basis. After all, "all orders and judgments of courts must be complied with promptly." *Meyers*, 419 U.S. at 458. Parties that "make private determinations of the law and refuse to obey an order generally risk [] contempt even if the order is ultimately ruled incorrect." *Id.* A court that may impose contempt sanctions for noncompliance may alternatively find privilege arguments waived.

Second, it fails to explain why MMFA disobeyed the June Order, which was not merely to search for privileged responsive documents, but to log those documents, identify any claimed privileges, and serve X that log. Here, MMFA's defense operates as a confession. MMFA "admit[ted] that 'as of the date of its first privilege log, [MMFA] had not identified any donor-related documents that it was

withholding based on privilege' and asserted it was not 'separately searching for donor-related documents.'" ROA.2154 (quoting ROA.1646). That is what the June Order required of MMFA: "'log responsive documents' and 'deliver' the privilege log to Plaintiff." ROA.2153-54. MMFA cannot excuse its failure to find, and thus log, privileged documents based on its admitted refusal to look for them.

**2.** The district court reasonably exercised its ample discretion to deem MMFA's objections waived, and that alone is dispositive. District courts have "broad discretion under Rule 37(b) to fashion remedies suited to [discovery] misconduct." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). The district court could have been harsher on the "broad spectrum of sanctions." *Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993). It instead chose consequences short of formal sanctions yet commensurate with the severity of MMFA's continued intransigence.

This Court recognizes that disobeying discovery obligations "may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017). The district court appropriately noted that a "finding of waiver is especially warranted when a party opposing discovery has acted with unjustified delay, inexcusable conduct, or bad faith." ROA.2154 (cleaned up). The district court issued the June Order on June 6, mandating compliance by June 14. ROA.980.

Indefensibly, X still has not received a privilege log with all documents responsive to its donor-information requests—MMFA's search for these documents has not commenced, let alone ended. Nearly a year since X first served its requests, X still cannot evaluate, let alone test, MMFA's associational-privilege claims on a document-by-document basis.

The district court gave MMFA every opportunity to "fully frame" the First Amendment dispute. ROA.2304. "In response," however, "Defendants did not even search for responsive documents." ROA.2304. Given that the district court had done "everything in its power, short of a show-cause hearing, to address Defendants' actions," that court acted well within its discretion to find waiver. ROA.2304.

## B.     MMFA failed to produce the requisite privilege log.

The district court also found that MMFA never "produce[d] a privilege log adequately describing the documents as required by Rule 26," a "failure [that] constitutes waiver in its own right." ROA.2155; *see Johnston v. Transocean Offshore Deepwater Drilling, Inc.*, No. CV 18-491, 2019 WL 1558040, at *2 (E.D. La. Apr. 10, 2019) (when a defendant "fail[s] to provide a privilege log" and "fail[s] to properly substantiate [its] objections by submitting evidence necessary to sustain its burden of proof to [its] these objections," privilege is waived); *Rogge v. Bandera Falls Prop. Owner's Ass'n*, No. CV SA-07-CA-996-OLG, 2009 WL 10713559, at *3 (W.D. Tex. Aug. 11, 2009) (similar). MMFA largely ignores this alternative and

sufficient ruling, cursorily asserting (at 47) that it did not fail to follow Rule 26. But here, too, the district court was on solid footing.

Rule 26 requires a party to "describe the nature of the documents, communications, or tangible things not produced or disclosed" to preserve the privilege. ROA.2303. When, as here, a withholding party "fails to provide a privilege log and fails to properly substantiate its objections by submitting evidence necessary to sustain its burden of proof to its objections," privilege is waived. ROA.2303 (cleaned up).

As the district court's stay order explains, "regardless of *when* a privilege log was required, [MMFA] did not provide a privilege log at all regarding these objections" when representing to that court that the parties' First Amendment dispute was ripe. ROA.2303. MMFA could not "'agree that the privileged status of donor-related documents is ripe for the Court's resolution' *and* simultaneously hold that subsequent logs would provide the privilege objection and description." ROA.2303. That cake-and-eat-it-too position was untenable because it undermined the (at best) qualified privilege, which "requires a balancing of the harm of disclosure of a document with the purported need," and prejudiced X's case preparation by forcing X to "wait to compel production of documents necessary for depositions at the close of discovery." ROA.2303.

**C.    MMFA failed to preserve its First Amendment arguments in opposition to X's discovery requests.**

The district court also examined MMFA's operative objections and responses and found that MMFA waived any First Amendment privilege. ROA.2156-60. While the non-compliance outlined above is reason enough to affirm the district court's ruling, MMFA (at 47-50) falters on this ground, too.

In responding to X's discovery requests, MMFA agrees that it had to "explain what portion of [the] document request is objectionable and why," and "affirmatively explain whether any responsive information or documents have been withheld." Br. 47-48 (citation omitted). Such rules typify the "principle of party presentation" inherent in "our adversarial system of adjudication." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). MMFA concedes (at 48) that it did not raise a First Amendment privilege in its operative response below. That omission alone justifies the district court's waiver ruling. *Cf. Louisiana v. Litton Mortg. Co.*, 50 F.3d 1298, 1303-04 (5th Cir. 1995) (reiterating that theories pressed in an original complaint but omitted in amended pleadings are generally deemed abandoned); *United States v. Valera*, 845 F.2d 923, 928 (11th Cir. 1988) (noting that withdrawn evidentiary objection cannot be "resurrect[ed]" on appeal).

But MMFA's position is even more precarious: it did not merely fail to raise a First Amendment privilege in its amended, live response, it raised such a privilege in its original response and then specifically removed it from its amended response.

ROA.2156-59; *see* ROA.1491-93, ROA.1564-67, ROA.1568-69. The deliberate removal of a previously asserted position is the definition of a litigant abandoning an argument. *Cf. Vela v. City of Houston*, 276 F.3d 659, 678-79 & n.22 (5th Cir. 2001) (providing examples of abandonment). MMFA's objections were correctly "deemed abandoned." ROA.2159 (quoting *Garcia v. Padilla*, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143, at *3 (M.D. Fla. Mar. 8, 2016)). As with imposing consequences for disobeying court orders, *see supra* Part I.A.2, the district court properly exercised its broad discretion in finding waiver, ROA.2159.[3]

## III. The District Court Correctly Determined That X Overcame Any Cognizable First Amendment Privilege.

The district court alternatively held that X's requests overcame any applicable First Amendment privilege. ROA.2164-69. Although the district court held X to a "heightened" First Amendment standard, ROA.2305, MMFA nonetheless argues that it erroneously failed to apply "exacting scrutiny." MMFA's argument fails in

---

[3] MMFA attempts to distract this Court from its own-goal by suggesting the district court improperly required it to "describe the withheld documents in [the] initial responses and objections." Br. 49 (citing ROA.2304-05). Not so. MMFA waived its First Amendment objections both by failing to produce a privilege log as explained above, *contra* Br. 49-50 (citing *United States v. Fluitt*, 99 F.4th 753, 763-64 (5th Cir. 2024); *EEOC*, 876 F.3d at 697), and by abandoning in its amended responses objections lodged in its initial discovery responses. MMFA originally claimed privilege based on "First Amendment speech and associational rights"; its live objections omitted that claim. ROA.1491-93; ROA.1564-67, 1568-69. That is the quintessential abandonment of an argument. *See, e.g.*, *Vela*, 276 F.3d at 678-79 & n.22.

two ways. First, the state-action requirement prevents application of an exacting-scrutiny standard in this purely private dispute. Second, the district court correctly applied heightened First Amendment scrutiny in finding that X overcame whatever qualified privilege applied.

## A.    The First Amendment does not demand heightened scrutiny for production orders in private civil disputes.

MMFA chides the district court (at 28) for disregarding the "exacting scrutiny" standard in *Bonta*, 594 U.S. at 607. But applying *Bonta* here reflects a novel and aggressive First Amendment extrapolation to protect against private action despite contrary Supreme Court admonitions. Equally telling, MMFA never suggests a limiting principle to the private-party discovery protections it seeks to mint. MMFA's position must be rejected on its own terms and because of the grave implications of eliminating the First Amendment's state-action requirement.

**1.** *Bonta* examined the constitutionality of California's statutory regime mandating disclosure of donor information *to California's Attorney General*. *Id.* at 601-03. State law thus compelled disclosure to a state official empowered to enforce that law. *Id.* at 601. Applying the First Amendment was therefore consistent with holding that the Constitution "guard[s] only against encroachment by the government and 'erec[ts] no shield against merely private conduct.'" *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 566 (1995) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)); *see also Manhattan Comm. Access Corp.*

*v. Halleck*, 587 U.S. 802, 812 (2019) (explaining that a "private entity is not ordinarily constrained by the First Amendment because the private party is not a state actor"); *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 393 (5th Cir. 2024) ("While the government cannot abridge free speech, private parties typically bear no such burden." (citation omitted)). Indeed, because "the First Amendment binds only the government," First Amendment claims against private parties are "a nonstarter." *Lindke v. Freed*, 601 U.S. 187, 191 (2024).

This case is between X, a private corporation, MMFA, a private organization, and two MMFA employees. The government is not a party to the case, nor is any statute or regulation's validity contested. This is a purely private dispute in which one of the parties is invoking the same discovery rules that apply equally to all civil litigation matters. This Court has recognized for decades that courts supply no state action by adjudicating purely private disputes. *See Hardy v. Gissendaner*, 508 F.2d 1207, 1210-11 (5th Cir. 1975) (rejecting argument that "enactment of the state statute coupled with the necessity of state judicial action for its enforcement amount to state action"); *Henry v. First Nat'l Bank of Clarksdale*, 444 F.2d 1300, 1312 (5th Cir. 1971) ("[T]here is no 'state action' to be found in the mere filing of a private civil tort action in state court."); *see also Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) ("Private individuals generally are not considered to act under color of

law, *i.e.,* are not considered state actors, and 'private misuse of a state statute does not describe conduct that can be attributed to the State.'" (citation omitted)).

MMFA's authority reveals a state-action nexus that is absent from X's discovery requests. *Bonta* involved a statutorily mandated "disclosure regime" reported to California's Attorney General. *See* 594 U.S. at 607, 612. *NAACP* concerned an Alabama statute mandating corporate disclosures of information and Alabama's motion for production thereof. 357 U.S. at 451-53. The state involvement was therefore twofold, implicating both a state disclosure statute and an order to produce documents to the state issued on the state's motion. MMFA's other authority involves a similar governmental nexus that is lacking here.[4]

MMFA next cites (at 30) *Whole Woman's Health.* Such reliance is triply misplaced. First, that case involved Texas officials as defendants and a challenge to a Texas law, aligning it with other state-action cases and providing the governmental nexus that MMFA lacks. 896 F.3d at 365.

Second, *Whole Woman's Health* concerned a third-party discovery order demanding production of a religious body's internal deliberative communications,

---

[4] *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 338 (1995) (litigation involving a state agency over a penalty it levied); *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 89 (1982) (challenge of disclosure provisions of the Ohio Campaign Expense Reporting Law); *Hastings v. Ne. ISD*, 615 F.2d 628, 628-29 (5th Cir. 1980) (litigation between teacher federation and school board); *Perry*, 591 F.3d at 1152 (litigation over a state law with state-official parties).

thereby implicating not only associational freedom, but also freedom of speech, the right to petition, and religious concerns under the Free Exercise and Establishment Clauses and the Religious Freedom Restoration Act. *Id.* at 370. This religious dimension is no small distinction: courts show "special solicitude to the rights of religious organizations." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 189 (2012); *see Whole Woman's Health*, 896 F.3d at 368, 374. An order to produce relevant documents relating to (potentially complicit) donors of a secular organization engaged in an economic-sabotage campaign bears little resemblance to the *Whole Woman's Health* order, which required third-party production of internal church communications over Easter.

Finally, *Whole Woman's Health* did not rest on the First Amendment. Rather, this Court employed constitutional avoidance, concluding that the production order imposed undue burdens under Federal Rule of Civil Procedure 45(d). *See id.* at 374-76. This Court neither performed a heightened First Amendment analysis nor held that production orders implicating the First Amendment must satisfy "exacting scrutiny." *See id.* at 372-74. At most it suggested that constitutional interests merit consideration in discovery disputes.[5] Here, the district court carefully evaluated MMFA's constitutional interests, ordering disclosure only after evaluating MMFA's

---

[5] This Court should be especially reluctant to expand *Whole Woman's Health* for MMFA's benefit given its "sui generis" facts. *Id.* at 368; *see also id.* at 364 (describing the situation as "extraordinary").

claims under a heightened standard of review notwithstanding alternatively finding that MMFA waived any First Amendment privilege.

**2.** The Supreme Court has unequivocally instructed that the First Amendment restricts public, not private, conduct. *E.g.*, *Hurley*, 515 U.S. at 566. Neither this Court nor the Supreme Court expanded the state-action doctrine to cover production orders in purely private litigation. By asserting that the district court was required to apply *Bonta* in its September Order, that is the rule MMFA asks this Court to adopt. This Court should decline that invitation. *See Halleck*, 587 U.S. at 818 (warning against "[e]xpanding the state-action doctrine beyond its traditional boundaries").

The Bill of Rights exists "to protect the people from the power of the government." *Dunbar Corp. v. Lindsey*, 905 F.2d 754, 763 (4th Cir. 1990); *accord W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943). State actors enjoy unique powers to surveil, punish, tax, and control. Private parties "cannot deprive a man of his right to vote, to hold property, to buy and to sell, to sue in the courts, or to be a witness or a juror." *Civil Rights Cases*, 109 U.S. 3, 17 (1883); *see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 391-92 (1971) (noting that public actors have "greater capacity for harm" than private ones). Ordering production of sensitive information to the government is qualitatively different from production to private parties, and there is good reason to maintain that distinction. Classifying discovery orders—indeed, potentially all judicial

directives—as state action subject to constitutional scrutiny has far-reaching implications. *See Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 445 (E.D. Pa. 1996) (noting disapprovingly that classifying judicial orders as state action would "ha[ve] the effect of creating government action every time a magistrate simply signs, and a trial judge enforces, a discovery order").

Consider *Bonta*'s "exacting scrutiny" standard, which requires "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." 594 U.S. at 607. That rule worked in *Bonta*, which evaluated statutorily mandated disclosure to a state attorney general. *Id.* at 613. But the concept of a "sufficiently important governmental interest" in a dispute between two parties is a *non sequitur*. *See* Br. 28-29 (claiming that "exacting scrutiny" is necessary without describing that analysis beyond a nod to "narrow[] tailor[ing]" and a "substantial need" for information). And even if by legerdemain MMFA could substitute for *Bonta*'s "governmental interest" a "substantial need" requirement for private parties, the analogy fails: the reasons private parties seek discovery categorically differ from governmental interests in disclosure. *See, e.g.*, *Bonta*, 594 U.S. at 612 (preventing charitable fraud and self-dealing); *Doe v. Reed*, 561 U.S. 186, 198 (2010) (preventing fraudulent referendum signatures); *Shelton v. Tucker*, 364 U.S. 479, 485 (1960) (investigating "the competence and fitness of those whom it hires to teach in its schools"). State-actor tests poorly fit private disputes.

More broadly, constitutionalizing discovery orders would circumscribe trial-court authority where it merits wide latitude. "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (cleaned up). Treating courts refereeing discovery disputes as state actors would subject routine decision-making to repeated challenge and interlocutory review over the district courts' everyday affairs. *See* Br. 19, 21 (justifying interlocutory, *de novo* review under the First Amendment).

Indeed, if judges making discovery decisions are state actors, such challenges could implicate the Fourth Amendment as well as the First—another concerning expansion of the state-action requirement. *See United States v. IBM Corp.*, 83 F.R.D. 97, 102 (S.D.N.Y. 1979) ("It strains common sense and constitutional analysis to conclude that the fourth amendment was meant to protect against unreasonable discovery demands made by a private litigant in the course of civil litigation."). Constitutionalizing judicial orders in cases with no government involvement fails to advance the First Amendment's restraint on governmental power while transforming wide swaths of discovery disputes into constitutional cases.

Finally, constitutionalizing judicial discovery orders makes little sense because constitutional interests are already accounted for in the discovery provisions of the Federal Rules. Rule 26(b)(1) and Rule 26(b)(2)(C) call on courts to take

relevant circumstances into account. The Rules Committee has confirmed that First Amendment interests are included in this balancing test. *See* Fed. R. Civ. P. 26(b)(1), Committee Note to 2015 amendments, quoting Committee Note to 1983 amendments (stating that "many cases in public policy spheres, such as . . . *free speech* . . . may have importance far beyond the monetary amount involved" (emphasis added)). Rule 26(b) thus provides the proper inquiry for courts deciding discovery disputes in private litigation, even if the dispute implicates the First Amendment. This approach is fully consistent with *Whole Woman's Health*, which, despite identifying First Amendment issues, ultimately decided that discovery dispute under the Federal Rules. 896 F.3d at 374-76.

Meanwhile, MMFA provides no limiting principle for its novel First Amendment privilege against discovery in private litigation. Taken seriously, it is difficult to overstate what MMFA proposes. Sensitive information and communications, from scandalous text messages to confidential business negotiations, are routinely compelled to be disclosed in discovery. A novel rule that discovery about donors in private civil disputes triggers heightened First Amendment scrutiny would have no logical endpoint. Indeed, if a court's discovery orders supply state action, then *every* judicially compelled disclosure of information (*i.e.*, every discovery order) implicates First Amendment associational or speech rights. This Court would not only have to supervise federal-court discovery, but

state-court discovery, too. And it would have to do so for every litigant: MMFA enjoys no special First Amendment rights as a nonprofit organization. MMFA could not even cabin its legal theory to litigants, given that the asserted protections would purportedly extend to *every* individual supporter of such groups even if no information is ever publicly disclosed. *See* Br. 37-38.

Only two federal appellate courts have indicated support for MMFA's sweeping approach. *See Perry*, 591 F.3d at 1160 n.5; *In re Motor Fuel*, 641 F.3d at 481; *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987). These out-of-circuit decisions are neither precedential nor persuasive. As the September Order explained, those Circuits failed to "explain how the privilege recognized in *NAACP*—where there was clear state action—applies when a court refereeing a discovery dispute between private parties is identified as the state actor," and courts should avoid expanding the state-action doctrine. ROA.2162.

## B.    The September Order comports with the First Amendment.

Even if MMFA had not waived its First Amendment privileges, and even if *Bonta* applied, the September Order should be affirmed because the district court applied heightened scrutiny, carefully examined X's discovery requests, and correctly determined that it satisfied that standard.

MMFA does not articulate what "exacting scrutiny" entails, save a mention that X's requests should be "narrowly tailored" and serve a "substantial need." Br.

28-29. That *is* what the district court found. First, it determined that MMFA made a *prima facie* First Amendment infringement showing. ROA.2164-65. It then balanced "the importance of the information sought to the issues in the case, the substantiality of the First Amendment interests at stake, the availability of the information from alternative sources, and whether the request is carefully tailored to avoid unnecessary interference with protected activities." ROA.2165.

This was the method established by *Perry*, a decision MMFA cites favorably (at 22, 29). Any argument by MMFA that the district court espoused "an erroneous view of the law," *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011), for employing it is thus foreclosed because such unpreserved arguments cannot be raised initially on appeal, *see, e.g.*, *Texas v. Kleinert*, 855 F.3d 305, 314 n.7 (5th Cir. 2017). At most, MMFA objects to a "routine application of settled legal principles" to the facts—an area uniquely reserved to trial courts "for which appellate deference is the norm." *Mohawk*, 558 U.S. at 110.

1.    **X's requests are important to the parties' claims and defenses and unavailable from other sources.**

Even under MMFA's preferred framework the district court appropriately ordered disclosure. X sought information sufficient to identify MMFA's donors and their residence; communications reflecting solicitations of donations; documents reflecting the funding sources for MMFA; and communications with donors regarding X and the matters at issue in this lawsuit. ROA.1376, 1387. To start,

48

MMFA does not quibble with the finding that the "information Plaintiff seeks is not available by means of an alternative source." ROA.2167. Sensibly so. The documents that X seeks cannot be obtained through anyone else, especially because MMFA has refused to disclose information about its donors. While MMFA disputes the district court's relevancy analysis, its arguments are misguided.

***Requests for Production Nos. 17 and 18.*** Start with the identities and locations of MMFA's donors (No. 17) and MMFA's solicitations of current and prospective donors (No. 18). To prevail on a business-disparagement claim, X "must prove 'false and disparaging information' was published 'with malice.'" ROA.2166 (citation omitted). Accordingly, "[r]equests related to Defendants' mental state go to the heart of the matter, and Plaintiff is significantly burdened without the documents." ROA.2166 (citation omitted). The district court correctly found that these requests directly bear on MMFA's mental state in publishing the defamatory articles. If MMFA received donations from X's marketplace competitors or influential individuals known to be critical of X, those donations would provide important context for X's request for punitive damages. Or if MMFA's solicitation communications indicated they were looking to go after certain social media platforms or certain advertisers or speech, that too would be highly probative of actual malice. As the district court rightly noted, X's "claim for punitive damages would not be better exemplified than through Defendants' profiting off the alleged

manipulation of X's social media platform, if they have done so." ROA.2166. Notwithstanding the stay panel's "doubt[s]" about the discovery's potential scope, *X*, 120 F.4th at 199, the identities and locations of donors and relative size of their contributions is probative of how MMFA targeted support for sabotaging X's business.[6]

X also seeks information about MMFA's solicitation of donors because it informs the venue and personal jurisdiction determinations. That is more than enough to supply a "nexus" to the case. Br. 32. Through outreach to Texas donors and potential donors, MMFA's documents could demonstrate that MMFA deliberately reached into Texas for its monetary benefit or "promot[ion]"—and thus purposely availed itself of Texas. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 371 (2021). MMFA's solicitations may also provide critical insight into motive. If MMFA touted itself as a warrior against right-wing social-media extremism around the time that it solicited donations from its backers, a jury could easily conclude that MMFA meant to hound the X platform to solicit donations. This

---

[6] With respect to MMFA's insistence that X improperly sought donor addresses, that request arose in view of MMFA's claim that venue is improper in the Northern District of Texas. *See* ROA.1331-32. X would have readily conferred with MMFA over Request for Production No. 17's use of the term "residences" and confirmed—as it does now for avoidance of doubt—that X meant *county* of residence, not every individual MMFA donor's address. Nevertheless, X cannot foreclose the possibility that more granular donor address information might become relevant, either for venue purposes or for service of third-party discovery, if probative documents relating to that specific donor emerge in party discovery.

evidence of malice would provide an additional tether to "the specific claims at issue." Br. 32 (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 265 (2017)).

MMFA offers two unpersuasive rejoinders. *First*, pointing to its pledges that it did not solicit Texas donors specifically for their "work related to X," MMFA argues that its donor and financial documents must necessarily be irrelevant. *See* Br. 33-34; ROA.1600. But MMFA is silent on whether it solicited Texas funding more generally (and related to silencing conservative speech on social media platforms more generally), and on what conditions or promises it may have made in securing that funding. X should not be rendered without recourse to test such assertions; indeed, testing an opponent's assertions is the purpose of discovery and the adversarial process. *See, e.g.*, *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 834 (9th Cir. 2022) ("PeopleConnect is entitled to discovery . . . and need not accept at face value the statements Knapke's counsel made in a memorandum of law."). Moreover, MMFA "cannot say with certainty these documents do not show such purposeful availment given their 'refusal to independently search' for the responsive documents." ROA.2168.

*Second*, MMFA argues that the district court and X purportedly engaged in "hypothetical[s]" and "speculat[ion]" in concluding that the requested discovery might provide powerful evidence of malice. Br. 31. But MMFA has only itself to

blame. The district court clearly would have preferred to engage in the concrete, document-by-document analysis of MMFA's privilege claims that Rule 26 contemplates. That is why its June Order deferred its First Amendment ruling and instead required MMFA to create and deliver to X a privilege log. *See* ROA.979-80. MMFA ignored the district court's directive, which left both the district court and X with no option but to draw general inferences regarding information that could exist. MMFA cannot fault X or the district court for failing to undertake a more detailed discovery analysis when MMFA withheld necessary details. In any event, it is not unduly speculative to ask MMFA to search for documents that would be highly probative of MMFA's motives. Because there remains ample potential for highly relevant information responsive to X's requests and unavailable elsewhere, "the privilege must yield." *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980).

**Requests for Production Nos. 21 and 35.** Likewise, documents and communications about funding for "work related to X, the Platform, Elon Musk, or Linda Yaccarino" (No. 21) and communications with donors "mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform" (No. 35) shed light on MMFA's motives for disparaging X and disseminating its tortious articles.

The stay panel understood that these requests are "relevant to X['s] theories." *X*, 120 F.4th at 199. MMFA barely attempts to show otherwise. Indeed, MMFA relegates its concerns with the requests to a footnote (at 54 n.10), thereby forfeiting any error claimed as to these discovery requests. *See Vernon Smith, etc. v. School Bd. of Concordia Parish*, 88 F.4th 588, 596 (5th Cir. 2023). Forfeiture aside, X's suit is premised on MMFA's publication of falsehoods about the X platform that MMFA publicized to destroy X's business. *Any* MMFA communications about X, whether relating to donors or not, are essential to X's trial presentation.

## 2.     The district court properly protected First Amendment interests.

Meanwhile, the district court took pains to protect associational interests. The parties agreed to a protective order allowing for the classification of documents as "Confidential" and "Attorneys Eyes Only," limiting the individuals that can see such documents and their uses; donor information specifically receives the "Attorneys Eyes Only" designation, preventing any disclosure to the "opponent[s]" that MMFA fears. ROA.1011-12. The district court enhanced these protections by committing itself to further protection of specific documents that MMFA finds necessary. *See* ROA.2168 ("[A]ny additional concerns about specific documents could be addressed by further 'seek[ing] a protective order designating those documents as confidential.'" (citation omitted)). In denying a stay, the district court further protected MMFA by requiring X to gain "explicit Court approval" before using

donor information beyond the scope of the Attorney's Eyes Only designation. ROA.2308. These precautions adequately address MMFA's concerns. *Bonta*, 594 U.S. at 616 (noting that "assurances of confidentiality" like protective orders "may reduce the burden of disclosure").[7] To suggest otherwise is to assume that X's attorneys will defy both court orders and their formalized agreements with MMFA. MMFA's repeated invocation of Musk's public comments is immaterial; he is not permitted to see the documents that MMFA must produce if MMFA denotes them Attorneys' Eyes Only.

In view of these prophylactic measures, an order requiring the turnover of a limited subset of documents to X's attorneys, for use limited to this litigation, will not result in harassment of MMFA or its donors. Neither *Bonta* nor *Whole Woman's Health* considered the protective effect of confidentiality orders or stipulations, let alone ones that allowed documents to be denoted Attorneys Eyes Only. *Contra* Br. 36-37. The September Order does not require the turnover of information to the government (*Bonta*) or to a public policy opponent against the backdrop of state-actor litigation (*Whole Woman's Health*). Instead, the order requires information to be provided to *attorneys* in civil litigation. At bottom, if donors worked with MMFA to harm X, X is entitled to discovery about those efforts. If X wants to use that

---

[7] For this reason, the motions panel was mistaken that the district court issued no order "backed by courts' coercive power." *X*, 120 F.4th at 199.

information in this litigation, it must ask the district court. Until that happens, any harassment claims are speculative. This is why, as the Sixth Circuit held, when a protective order protects members' identities from public filings, "public disclosure is minimal, and the threat to [F]irst [A]mendment rights is inconsequential." *Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987).

Finally, MMFA (at 34-36) attacks the district court's reliance on *Miller* and *Herbert v. Lando*, 441 U.S. 153 (1979). But those decisions—which concerned the disclosure of reporters' notes and confidential informants—illustrate that even First Amendment interests must yield when the discovery is necessary to a party's defamation claims, as is comparable here. *See Herbert*, 441 U.S. at 175 ("Evidentiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances."); *Miller*, 621 F.2d at 725-27. More importantly, MMFA never explains how that authority requires a different First Amendment standard than the *Bonta* standard it endorses elsewhere.

## IV.   MMFA's Rule 26 Arguments Are Meritless.

Finally, MMFA argues that the district court erred with respect to objections under Rule 26. It insists (at 52-53) that the court clearly "erred by not addressing MMFA's relevance, proportionality, and harassment objections under Rule 26." This is demonstrably untrue. As the district court explained in denying MMFA's motion to stay pending appeal, it "addressed the objection that the requests 'are

harassing and seek irrelevant information' in its analysis of the First Amendment balancing test." ROA.2305. Indeed, MMFA "benefited from the [c]ourt's analysis that addressed these concerns with the 'more demanding heightened relevance standard' under the First Amendment qualified privilege." ROA.2305.

True, that court never separately addressed whether X's requests were "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). For good reason: MMFA never briefed that issue when opposing X's motion to compel. Its response mentioned the word "proportional" only once. *See* ROA.1602. As the district court observed, "objections not relied upon and explained in the motion to compel brief were 'deemed abandoned.'" ROA.2305 (citation omitted). Consequently, MMFA's belated focus on proportionality (at 53, 57) cannot "be considered absent extraordinary circumstances." *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 (5th Cir. 2012). Unsurprisingly, MMFA invokes none—because it treats relevancy and proportionality as intertwined inquiries. *E.g.*, Br. 56-57. Indeed, any Rule 26(b)(1) proportionality analysis would necessarily account for the enforceable contract—and court order—protecting donor information. *See supra* Part III.B.2. Following MMFA's presentation was no abuse of discretion.

Regarding the objections that MMFA *did* preserve, the district court correctly noted that its analysis already incorporated Rule 26 and held X to a higher standard. Rule 26 allows "discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense." Fed. R. Civ. P. 26(b)(1). A "relevant matter" is anything "bear[ing] on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Indeed, the Federal Rules encourage more rather than less discovery. *See Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 & n.3 (9th Cir. 1994). As explained in Part III.B.1, *supra*, X's requests are not just relevant but important to the claims and defenses in the case. And the requests were not served to harass but to obtain crucial case information. *Supra* pp. 51-58. The district court's First Amendment balancing analysis properly tracked these concerns.

## CONCLUSION

The Court should dismiss this appeal for lack of jurisdiction or, alternatively, affirm the September Order.

Dated: January 2, 2025                    Respectfully submitted.

*/s/ Judd E. Stone II*
Judd E. Stone II
Christopher D. Hilton
Ari Cuenin
Michael R. Abrams
Cody C. Coll
**STONE HILTON PLLC**
600 Congress Ave., Ste. 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
michael@stonehilton.com
cody@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L Law PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

## CERTIFICATE OF SERVICE

On January 2, 2025, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Judd E. Stone II*
Judd E. Stone II

## CERTIFICATE OF COMPLIANCE

This document complies with Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,988 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Judd E. Stone II*
Judd E. Stone II