**No. 24-10900**

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

X CORP.,
*Plaintiff-Appellee,*

v.

MEDIA MATTERS FOR AMERICA, ERIC HANANOKI, and ANGELO
CARUSONE,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas
(Case No. 4:23-cv-01175-O)

## REPLY BRIEF OF DEFENDANTS-APPELLANTS MEDIA
## MATTERS FOR AMERICA, ERIC HANANOKI, AND ANGELO
## CARUSONE

*(Counsel listed on following page)*

GIBSON, DUNN &
CRUTCHER LLP
Gregg Costa
811 Main Street, Suite 3000
Houston, TX 77002
T: (346) 718-6649
F: (346) 718-6620
gcosta@gibsondunn.com

Andrew LeGrand
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com
tcox@gibsondunn.com

Theodore J. Boutrous, Jr.
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

ELIAS LAW GROUP LLP
Abha Khanna
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch
Christopher D. Dodge
Jacob D. Shelly
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

*Counsel for Defendants-
Appellants Media Matters for
America, Angelo Carusone, and
Eric Hananoki*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................ 2

   I.   X cannot evade this Court's jurisdiction. ........................... 2

      A.  This Court has uniformly held that it has collateral order jurisdiction over discovery orders implicating First Amendment rights. ...................................................... 2

      B.  This Court should alternatively exercise its mandamus jurisdiction. .................................................................... 9

  II.  X cannot overcome Media Matters's well-preserved First Amendment privilege. ...................................................... 12

      A.  Media Matters did not intentionally relinquish or abandon the First Amendment privilege. ................................ 12

      B.  First Amendment protections apply in discovery disputes between private parties. ........................................ 19

      C.  The district court erred by compelling donor information protected by the First Amendment. .......................... 24

  III.  X's requests are also impermissible under Rule 26, as the motions panel determined. .................................................. 28

CONCLUSION ........................................................................ 34

# TABLE OF AUTHORITIES

## CASES

*Adolph Coors Co. v. Movement Against Racism & the Klan*,
    777 F.2d 1538 (11th Cir. 1985) .......................................................... 21

*Ams. for Prosperity Found. v. Bonta*,
    594 U.S. 595 (2021)..................................................................... 2, 27

*Carrier v. Ravi Zacharias Int'l Ministries, Inc.*,
    2023 WL 2355891 (N.D. Ga. Mar. 3, 2023) ...................................... 20

*Cheney v. U.S. Dist. Ct. for D.C.*,
    542 U.S. 367 (2004).......................................................................... 10

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999).......................................................................... 13

*Crosby v. La. Health Serv. & Indem. Co.*,
    647 F.3d 258 (5th Cir. 2011) ............................................................ 32

*Curtis Pub. Co. v. Butts*,
    388 U.S. 130 (1967).......................................................................... 13

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ............................................................ 11

*Doe v. Stegall*,
    653 F.2d 180 (5th Cir. Unit A 1981) .................................................. 6

*Elrod v. Burns*,
    427 U.S. 347 (1976)........................................................................ 6, 7

*Ernst v. Carrigan*,
    814 F.3d 116 (2d Cir. 2016) ............................................................... 5

*Flynn v. Square One Distrib., Inc.*,
   2016 WL 2997673 (M.D. Fla. May 25, 2016) ................................... 20

*Fox v. Saginaw Cnty., Mich.*,
   35 F.4th 1042 (6th Cir. 2022) ............................................................ 3

*Grandbouche v. Clancy*,
   825 F.2d 1463 (10th Cir. 1987) ........................................................ 20

*Gueye v. Mike Bloomberg 2020 Inc.*,
   2021 WL 3910341 (N.D. Tex. Mar. 12, 2021) ................................... 21

*Harris v. Dall. ISD*,
   435 F. App'x 389 (5th Cir. 2011) ................................................. 1, 14

*Hastings v. N. E. Indep. Sch. Dist.*,
   615 F.2d 628 (5th Cir. 1980) ............................................................ 23

*Henry v. Lake Charles Am. Press, LLC*,
   566 F.3d 164 (5th Cir. 2009) ...................................................... 4, 5, 8

*In re Beazley Ins. Co.*,
   2009 WL 7361370 (5th Cir. May 4, 2009) ........................................ 11

*In re Bryan*,
   645 F.2d 331 (5th Cir. 1981) ............................................................ 13

*In re Itron, Inc.*,
   883 F.3d 553 (5th Cir. 2018) ............................................................ 11

*In re Lloyd's Reg. N. Am., Inc.*,
   780 F.3d 283 (5th Cir. 2015) ............................................................ 11

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
   641 F.3d 470 (10th Cir. 2011) ..................................................... 9, 19

*In re Sch. Asbestos Litig.*,
   842 F.2d 671 (3d Cir. 1988) .............................................................. 3

*In re Schlumberger Tech. Corp.*,
    818 F. App'x 304 (5th Cir. 2020) ....................................................... 11

*Janus v. AFSCME*,
    585 U.S. 878 (2018) ........................................................................... 13

*Johnson v. Jones*,
    515 U.S. 304 (1995) ............................................................................. 5

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) .............................................................. 26

*Johnson v. Zerbst*,
    304 U.S. 458 (1938) ........................................................................... 13

*Kastigar v. United States*,
    406 U.S. 441 (1972) ........................................................................... 22

*La Union Del Pueblo Entero v. Abbott*,
    68 F.4th 228 (5th Cir. 2023) ................................................................ 4

*La Union del Pueblo Entero v. Abbott*,
    2022 WL 17574079 (W.D. Tex. Dec. 9, 2022) ................................... 21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ........................................................................... 24

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006) ................................................................ 5

*Marceaux v. Lafayette City-Par. Consol. Gov't*,
    731 F.3d 488 (5th Cir. 2013) ........................................................... 7, 8

*Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*,
    2013 WL 1293718 (W.D. Tex. Mar. 26, 2013) .................................. 32

*Micro Motion, Inc. v. Kane Steel Co.*,
    894 F.2d 1318 (Fed. Cir. 1990) .......................................................... 31

*Miller v. Transamerican Press, Inc.*,
    621 F.2d 721 (5th Cir. 1980) ........................................................... 23

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ......................................................................... 4

*Mize v. McGraw-Hill, Inc.*,
    82 F.R.D. 475 (S.D. Tex. 1979) ...................................................... 21

*Mohawk Indus. v. Carpenter*,
    558 U.S. 100 (2009) ..................................................................... 3, 7

*Moore v. Felger*,
    19 F.3d 1054 (5th Cir. 1994) ........................................................... 4

*Murphy v. Deloitte & Touche Group Ins. Plan*,
    619 F.3d 1151 (10th Cir. 2010) ..................................................... 32

*NAACP v. State of Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ................................................................. 20, 21

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2009) ............................................... *passim*

*Procter & Gamble Co. v. Amway Corp.*,
    242 F.3d 539 (5th Cir. 2001) ......................................................... 23

*Pulte Home Corp. v. Montgomery County*,
    2017 WL 1104670 (D. Md. Mar. 24, 2017) ................................... 20

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
    599 F.2d 707 (5th Cir. 1979) ........................................................... 6

*Shelley v. Kraemer*,
    334 U.S. 1 (1948) ........................................................................... 20

*Sierra Club v. Energy Future Holdings Corp.*,
    2013 WL 12244352 (E.D. Tex. Dec. 30, 2013) ......................... 20, 21

*Sierra Club v. Union Elec. Co.*,
  2015 WL 9583394 (E.D. Mo. Dec. 31, 2015) ..................................... 20

*Soukhaphonh v. Hot Topics, Inc.*,
  2017 WL 6888243 (C.D. Cal. May 23, 2017) .................................... 31

*Tucker v. Faith Bible Chapel Int'l*,
  36 F.4th 1021 (10th Cir. 2022) ........................................................ 4

*United States v. Grammas*,
  376 F.3d 433 (5th Cir. 2004) .......................................................... 10

*United States v. Trump*,
  88 F.4th 990 (D.C. Cir. 2023) ........................................................... 3

*Whole Woman's Health v. Smith*,
  896 F.3d 362 (5th Cir. 2018) .................................................... *passim*

*X Corp. v. Media Matters for Am.*,
  120 F.4th 190 (5th Cir. 2024) ................................................... *passim*

## STATUTES

28 U.S.C. § 1291 ................................................................................. 2

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 .......................................................... *passim*

# INTRODUCTION

X fails to rehabilitate the district court's erroneous decision to compel wholesale discovery of First Amendment-protected information.

Instead, X asks this Court to depart from well-established principles governing appellate jurisdiction and state action. On jurisdiction, X would eviscerate an unbroken line of this Court's precedent granting collateral-order review of orders burdening First Amendment rights. Tellingly, X cites not one instance when this Court has denied review in such cases. And X's novel state action argument, with which even the district court disagreed, defies both precedent and common sense: When the judiciary exerts its authority to compel discovery into a media nonprofit's most sensitive internal documents, state action exists.

The district court's waiver and merits analyses, meanwhile, remain indefensible. X tries to dilute the standard of review for waiver of constitutional rights, but even the case that X highlights confirms that constitutional protections may not be so easily waived. *Harris v. Dall. ISD*, 435 F. App'x 389, 396 (5th Cir. 2011). On the merits, X barely attempts to show how the district court's order—which compelled the

production of *every* responsive document to self-evidently overbroad requests—reflects "exacting scrutiny" and "narrow tailoring." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 608 (2021).

In all events, X fails to meaningfully grapple with the motions panel's determination that the district court failed to address Media Matters's Rule 26 objections to X's irrelevant, disproportional, and harassing requests for the identities and communications of donors who have nothing to do with this case. The district court's failure to do so independently warrants reversal.

## ARGUMENT

### I.    X cannot evade this Court's jurisdiction.

#### A.    This Court has uniformly held that it has collateral order jurisdiction over discovery orders implicating First Amendment rights.

X offers no persuasive reason to doubt the jurisdictionally "firm ground" upon which this appeal stands. *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 196 (5th Cir. 2024). This Court has repeatedly and uniformly held that orders burdening First Amendment rights satisfy the collateral order doctrine and give rise to jurisdiction under 28 U.S.C. § 1291. *See* Br.24 (collecting authority). That is because such orders are "(a) conclusive, (b) [] resolve important questions separate from the

merits, and (c) [] are effectively unreviewable on appeal from the final judgment." *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018) (quoting *Mohawk Indus. v. Carpenter,* 558 U.S. 100, 106 (2009)). X fails to cite a single case in which this Court has declined jurisdiction over a collateral order burdening a First Amendment right. And its arguments against collateral order jurisdiction have already been considered—and squarely rejected—by this Court.

*First*, X argues that the order involved "an issue intertwined with the merits." Resp.19. But this Court has already determined that whether the First Amendment protects against compelled disclosure is "separate" from the merits. *Whole Woman's Health*, 896 F.3d at 367. X ignores this holding on separability, which many other circuits mirror in recognizing that the "the First Amendment privilege is a question of law that is entirely separate from the merits of the litigation." *Perry v. Schwarzenegger*, 591 F.3d 1126, 1134 (9th Cir. 2009); *see also, e.g.*, *In re Sch. Asbestos Litig.*, 842 F.2d 671, 678 (3d Cir. 1988) (holding "the issue of [pretrial order's] impact upon [appellant's] first amendment rights is an issue wholly separate from the merits of the . . . litigation"); *see also United States v. Trump*, 88 F.4th 990, 1000 (D.C. Cir. 2023) (similar); *Fox*

*v. Saginaw Cnty., Mich.*, 35 F.4th 1042, 1046 (6th Cir. 2022) (similar); *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1036 (10th Cir. 2022) (similar).

While X contends the district court's discovery order is intertwined with the merits because X intends to "use" donor documents "to prove its claims," Resp.19, "[t]hat argument misstates" the legal standard. *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023). It does not matter whether the underlying "order compels documents that 'bear directly on' the merits." *Id.* "Here, the underlying *merits* issue is whether" Media Matters tortiously injured X, "while the issue *in this appeal* is whether [Media Matters] can claim privilege." *Id.* Under this Court's precedent, "[t]hose are separate issues." *Id.*

Nor does it matter that the trial court had to weigh "the comparative strength" of the parties' interests. Resp.19. That a trial court "must consider the plaintiff's factual allegations" in resolving a discovery dispute does not intertwine that dispute with the merits. *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 175 (5th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 529 (1985)). Some "involvement with the underlying facts is acceptable." *Id.*; *see also Moore v. Felger*, 19 F.3d

1054, 1057 (5th Cir. 1994) (explaining collateral order jurisdiction is not defeated simply because the court "considers the factual allegations composing the claim for relief"). And this Court has repeatedly held that denials of privilege and immunity are "separate from the merits," even when the underlying dispute implicated the merits. *See* Br.23 (collecting cases); *see also Whole Woman's Health*, 896 F.3d at 375-76.

The authority on which X relies is inapposite. *Johnson v. Jones* involved the appeal of an order on summary judgment, 515 U.S. 304, 307 (1995), and *Ernst v. Carrigan* involved the appeal of an order denying a motion to strike under an anti-SLAPP law, which "necessarily evaluate[d] in detail the merits of [the] plaintiff's claim," 814 F.3d 116, 120 (2d Cir. 2016). The district court here, in contrast, has not been asked to weigh the evidentiary import of the disputed donor documents on X's tort claims—they have neither been produced to X nor offered as evidence. Likewise, this Court does "not need to say anything about the merits of [X's] underlying" tort claims to resolve this appeal. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 118 (2d Cir. 2006); *see also Henry*, 566 F.3d at 176 (concluding evidentiary dispute implicating First Amendment was "hardly dispositive as to the merits of the suit").

*Second*, X contends that Media Matters cannot satisfy the collateral order doctrine because it has an adequate appellate remedy eventually. But an order compelling disclosure is "effectively unreviewable on appeal from the final judgment." *Whole Woman's Health*, 896 F.3d at 367. That is because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, the district court ordered Media Matters to disclose a host of information about Media Matters's supporters. Once those identities and communications are revealed, they can "not once again be concealed," and "review following a decision on the merits would come too late to remedy any injury caused by the order to disclose the [supporters'] information." *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979); *see also Doe v. Stegall*, 653 F.2d 180 (5th Cir. Unit A 1981) (district court's denial of Doe's motion to remain anonymous is an appealable collateral order). Postjudgment appeal cannot remedy that irreparable harm.

X leans on *Mohawk* for the proposition that postjudgment review suffices. Resp.20-22. But *Mohawk* concerned the attorney-client privilege, and "following *Mohawk*, this court has reaffirmed its precedent

holding that interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine." *Whole Woman's Health*, 896 F.3d at 368 (collecting authority); *see also Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 490 (5th Cir. 2013) (collateral order doctrine "applies in cases in which pre-trial orders arguably infringe on First Amendment rights"); *X Corp.*, 120 F.4th at 196 (similar). This Court's approach makes sense because the irreparable harm caused by compelled disclosure of First Amendment-protected information is precisely the sort of imperiling of a "value of a high order" that weighs against "delaying review until the entry of final judgment." *Mohawk*, 558 U.S. at 107; *accord Elrod*, 427 U.S. at 373.

X also suggests that collateral order jurisdiction over First Amendment issues is limited to third-party discovery orders. Resp.22. But this Court has previously heard collateral order appeals from "litigants in the case" when "pre-trial orders arguably infringe on First Amendment rights." *Marceaux*, 731 F.3d at 490 (collecting cases). And, as the motions panel recognized, *Whole Woman's Health* (which concerned a discovery order) treated the First Amendment and the third-party status of appellants as *independent* reasons for immediate appeal.

*See X Corp.*, 120 F.4th at 196; *see also Whole Woman's Health*, 896 F.3d at 368. In any event, this appeal *does* concern the rights of third parties—Media Matters's donors—who lack adequate postjudgment redress.

X downplays this unbroken line of cases by claiming that each case concerned *speech* rights, not other (apparently lesser) First Amendment guarantees like freedom of association. Resp.23. But X cites zero authority for the proposition that certain First Amendment rights take a backseat to others. This Court's precedent fails to recognize such an arbitrary distinction, consistently referring categorically to "First Amendment rights" in its collateral orders cases. *E.g.*, *Whole Woman's Health*, 896 F.3d at 368; *Marceaux*, 731 F.3d at 490; *Henry*, 566 F.3d at 167.

*Finally,* X wrongly suggests (at Resp.24) that allowing an interlocutory appeal here would create a circuit split. But as this Court recognized in *Whole Woman's Health*, use of the collateral order doctrine to vindicate First Amendment rights is consistent with the caselaw from other circuits. *Perry*, for example, declined "use of the collateral order doctrine" as a matter of "caution" but proceeded to grant mandamus relief anyway. *See Whole Woman's Health*, 896 F.3d at 368 & n.6 (citing *Perry*,

591 F.3d at 1156). Similarly, the Tenth Circuit concluded that the jurisdictional prerequisites for mandamus were satisfied, but it held that collateral order review was unavailable in part because "the discovery sought information pertaining to potential fraud." *Id.* at 368 (citing *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 476 (10th Cir. 2011)). *Whole Woman's Health* recognizes that allowing collateral order review was *not* incongruous with those cases, "reaffirm[ing Fifth Circuit] precedent holding that interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine." *Id.*[1]

## B.    This Court should alternatively exercise its mandamus jurisdiction.

Alternatively, Media Matters is entitled to mandamus relief because it has "no other adequate means" to obtain relief; it has a "clear and indisputable" "right to . . . the writ"; and granting the writ "is

---

[1] This Court noted that *Perry* and *In re Motor Fuel Temperature Sales Practices Litigation* did not "involve[] discovery against a third party" only as an "*addition[al]*" reason to set them aside. *Whole Woman's Health*, 896 F.3d at 368.

appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). X's threadbare responses are meritless.

*First*, X does not contest—and thus concedes—that Media Matters has no other adequate means to obtain relief. Resp.25-27; *see United States v. Grammas*, 376 F.3d 433, 437 n.3 (5th Cir. 2004).

*Second*, Media Matters's right to relief is clear and indisputable. Br.26. X's only rejoinder is that Media Matters purportedly seeks "extensions of First Amendment associational rights," and that accepting its arguments would "bring the Fifth Circuit into conflict with other circuits." Resp.26. But X does not even try to identify any split this would allegedly create, and there is none. *See id.* Instead, well-established principles compel the conclusion that Media Matters may invoke the First Amendment privilege; the privilege forbids the sweeping and apparently unprecedented disclosure the district court ordered; and X failed to satisfy the demanding showing required for a waiver of constitutional rights. Br.27-51; *infra* § II. X also ignores that the district court failed even to address Media Matters's Rule 26 objections. *See X Corp.*, 120 F.4th at 198; Resp.25-27. That, too, was clear error, reinforcing

that Media Matters's right to relief is clear and indisputable. Br.52-53;
*infra* § III.

*Third*, granting the writ is appropriate because "its issuance will
have significance beyond the immediate case." *In re Lloyd's Reg. N. Am.,
Inc.*, 780 F.3d 283, 294 (5th Cir. 2015) (cleaned up). This Court has
routinely found this requirement satisfied in granting mandamus to
reverse district court decisions denying privilege. *See, e.g.*, *In re Itron,
Inc.*, 883 F.3d 553, 568-69 (5th Cir. 2018); *In re Schlumberger Tech. Corp.*,
818 F. App'x 304, 308 (5th Cir. 2020). And X's contention, Resp.26-27,
that the purportedly fact-bound nature of this dispute precludes
mandamus is wrong. The only case X cites in support, which concerned
whether an insurer was a real or nominal party, bears no resemblance to
this case. *See In re Beazley Ins. Co.*, 2009 WL 7361370, at *5-6 (5th Cir.
May 4, 2009) (per curiam).

Disputes about parties' First Amendment rights like this one, in
contrast, implicate "not only the parties' interests but those of the judicial
system itself." *Def. Distributed v. Bruck*, 30 F.4th 414, 426-27 (5th Cir.
2022) (citation omitted) (granting mandamus petition in action involving
"the abridgement of the Plaintiffs' first amendment rights"). In

particular, the district court's order in this case threatens every organization engaged in First Amendment-protected activity. Br.27; *cf. Whole Woman's Health*, 896 F.3d at 373 (granting relief over First Amendment privilege claim to avoid "setting a precedent" for probing litigation tactics). X does not even address—let alone dispute—this point. Resp.25-27.

Because Media Matters satisfies each element, mandamus relief is warranted.

## II.    X cannot overcome Media Matters's well-preserved First Amendment privilege.

### A.    Media Matters did not intentionally relinquish or abandon the First Amendment privilege.

Media Matters's invocation of the First Amendment privilege has been unequivocal since the genesis of discovery. In an attempt to avoid that clear conclusion and embrace the district court's unsupportable finding of waiver, X misconstrues the history of this matter. At worst, what it describes are miscommunications or misunderstandings, none of which come anywhere close to satisfying the demanding standard for waiver of constitutional rights.

- 12 -

As an initial matter, X misstates the applicable legal standard. Where (as here) core constitutional rights are at stake, waiver requires an "intentional relinquishment or abandonment," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), and courts must hold "purported waivers of fundamental constitutional guarantees" to "the most stringent scrutiny," *In re Bryan*, 645 F.2d 331, 333 (5th Cir. 1981). X proposes that this standard should be limited to cases involving "a criminal defendant's rights," Resp.27, but it provides no citation supporting that notion and fails to acknowledge—let alone address—Supreme Court precedent to the contrary. *See, e.g.*, *Janus v. AFSCME*, 585 U.S. 878, 930 (2018) (in civil suit, citing *Zerbst* for principle that waiver of First Amendment rights "cannot be presumed" and holding that, "to be effective, the waiver must be freely given and shown by 'clear and compelling' evidence"); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 145 (1967) (plurality op.) (recognizing that First Amendment rights are the "matrix, the indispensable condition, of nearly every other form of freedom" and overturning finding that libel defendant waived rights (quotation omitted)); *cf. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 681-82 (1999) (in sovereign immunity case,

recognizing "[t]he classic description of an effective waiver of a constitutional right is the 'intentional relinquishment or abandonment of a known right or privilege'").

Indeed, the case that X cites for the appropriate standard—*Harris v. Dallas ISD*, 435 F. App'x 389 (5th Cir. 2011)—quotes the very *Zerbst* formulation that X now disputes. *See* 435 F. App'x at 396. *Harris* further recognized that waiver requires an "affirmative choice"—indicating that mere misunderstanding or mistake is insufficient—"for real or perceived benefits." *Id.* X has not identified any conceivable benefit that could have motivated Media Matters to waive its rights.[2]

Because a finding of waiver turns on the intent of the *waiving party*, X's digression about the legal standard for district court interpretations of their own orders, Resp.29-31, is irrelevant. The appropriate inquiry is not whether the district court subjectively believed that Media Matters was relinquishing its core rights; the question is whether *Media Matters*

---

[2] *Harris* also answers the district court's question about "what, if anything, would ever constitute waiver." ROA.2304. Media Matters could have waived the First Amendment privilege by withdrawing its opposition to X's motion to compel, *cf. Harris*, 435 F. App'x at 396, or by voluntarily producing the requested documents.

believed it was doing so. It is impossible to support such a finding on this record. If Media Matters intended its amended discovery objections— served on May 29, *see* ROA.819-96—to abandon its right to assert the First Amendment privilege, then why did its May 29th opposition to X's motion to compel solicit adjudication of the privilege's applicability in suits between private parties and argue that the privilege dispute would ripen once documents were identified? *See* ROA.792-97. Similarly, if Media Matters intended to relinquish the privilege when it served its first privilege log in June, why did it tell X that donor documents were sure to appear on upcoming privilege logs as they surfaced in the review process? *See* ROA.1646. And if it intended to abandon the privilege, why did Media Matters again invite adjudication of the privilege's applicability and scope based on its objection to an interrogatory that sought information mirroring the document requests at issue here? *See id.* X offers no answers.

X's selective—and, in several instances, contrived—retelling of the facts fails to rehabilitate the district court's extraordinary finding. That finding was dependent on the court's clearly erroneous answers to three simple questions.

## Question 1: Did Media Matters search for donor documents? Answer: Yes.

The only basis for the district court's contrary finding is a misreading of Media Matters's assertion in correspondence with opposing counsel that it would not ***independently*** or ***separately*** search for donor documents that had no conceivable relevance to X, X's leadership, or this litigation. *See* ROA.1643, 1646. Media Matters's qualifier necessarily meant that it ***was*** searching for donor documents that could satisfy X's ***own theory*** of how the documents could be relevant—because they included names, words, or phrases referencing the parties and issues in dispute. Neither the district court nor X identified a single representation from Media Matters that it refused to search for donor documents related to X or the issues implicated by X's lawsuit. Indeed, X's continued assertion that Media Matters "refused" to search for donor documents is belied by the fact that X possesses a privilege log listing 60 donor documents that Media Matters identified in its comprehensive search for all potentially relevant documents responsive to the requests at issue. *See* ROA.2051-147.

To the extent X now maintains that Media Matters should *also* have searched for correspondence from donors with no connection to Texas who support Media Matters's reporting on matters far removed from the issues in this case, then the dispute is no longer only about privilege, but also about burden, proportionality, relevance, and harassment. Media Matters objected to the discovery requests on those very grounds, ROA.819-944, and the district court conspicuously declined to overrule those objections, ROA.978-79. X never sought to confer about these objections—as the district court ordered as a prerequisite to any further motions practice, ROA.979; it has never even *attempted* to defend the relevance of donor documents that make no mention of the entities or subjects at issue in this litigation; and the district court has never overruled Media Matters's Rule 26 objections to searching for that entirely immaterial subset of donor documents.

**Question 2: Did Media Matters log privileged donor documents? Answer: Yes.**

X does not dispute that several dozen donor documents were adequately described on Media Matters's second scheduled privilege log, which was served before the motion to compel ripened. ROA.2051-147. X

now says it wanted every donor document in Media Matters's possession (potentially relevant or not) to be included on the first log. But it never communicated as much to Media Matters. To the contrary, X filed a joint motion to extend discovery deadlines because it recognized that document (and attendant privilege) review was too time-intensive for the original schedule, ROA.983; it agreed with Media Matters that the June 28 log would only include privileged documents "identified to date," ROA.1542; it recognized that the privilege dispute had ripened with Media Matters's July interrogatory objections, ROA.1537, 1645; and it told Media Matters in July—after production of the first privilege log— that it did not perceive any procedural issues related to the donor-document dispute worthy of the court's attention, ROA.1538. Thus, even as X now attempts to recast the procedural history, nothing in the record supports the claim that Media Matters refused to produce a privilege log or intentionally relinquished the privilege when it included donor documents on the second of five scheduled privilege log exchanges.

**Question 3: Did Media Matters's discovery objections reserve the right to assert the First Amendment privilege?**

**Answer: Yes.**

Media Matters's operative discovery objections explicitly reserved its right "to assert additional objections or privileges . . . on a document-by-document basis." ROA.881-82. There is no coherent way to read that reservation as an abandonment of the right to assert the First Amendment privilege on a document-by-document basis.

### B. First Amendment protections apply in discovery disputes between private parties.

The district court had little trouble rejecting X's farfetched argument that the First Amendment does not apply in litigation between private parties. ROA.2164. As the district court explained, "a private party's invocation of court authority to obtain information that may be constitutionally protected is the requisite state action" that implicates the privilege. *Id.* This determination reflects the clear nationwide consensus: "the First Amendment privilege applies to discovery orders issued in litigation involving only private parties," *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d at 481, because a court order "compelling discovery and the trial court's enforcement of that order

- 19 -

provide the requisite governmental action that invokes First Amendment scrutiny," *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987). A battery of district courts across the nation have held likewise.[3]

The principle that discovery orders implicate state action flows directly from canonical Supreme Court cases. *Shelley v. Kraemer*, 334 U.S. 1, 14-15 (1948), recognizes that the action of "courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of" the Constitution's state action requirement. Similarly, *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449 (1958), which reviewed a state court order requiring a private organization to disclose its membership lists, explains that "[t]he crucial factor is the interplay of governmental and private action, for it is only

---

[3] *See Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, 2023 WL 2355891, at *4 (N.D. Ga. Mar. 3, 2023) (recognizing, in dispute between private parties, that "courts have consistently recognized a qualified associational privilege in the discovery context"); *Pulte Home Corp. v. Montgomery County*, 2017 WL 1104670, at *3 (D. Md. Mar. 24, 2017) (holding, in dispute between private parties, that "First Amendment protections apply in the context of discovery orders"); *Flynn v. Square One Distrib., Inc.*, 2016 WL 2997673, at *2 n.4 (M.D. Fla. May 25, 2016) (similar); *Sierra Club v. Union Elec. Co.*, 2015 WL 9583394, at *2 (E.D. Mo. Dec. 31, 2015) (similar); *Sierra Club v. Energy Future Holdings Corp.*, 2013 WL 12244352, at *3 (E.D. Tex. Dec. 30, 2013) (similar).

after the initial exertion of state power represented by the production order that private action takes hold." *Id.*

Since *NAACP*, this Court and courts within the circuit have taken the First Amendment privilege as a given, adjudicating privilege assertions among private parties as a matter of course. *See, e.g.*, *Whole Woman's Health*, 896 F.3d at 369-70; *La Union del Pueblo Entero v. Abbott*, 2022 WL 17574079, at *9 (W.D. Tex. Dec. 9, 2022); *Gueye v. Mike Bloomberg 2020 Inc.*, 2021 WL 3910341, at *2 (N.D. Tex. Mar. 12, 2021); *Energy Future Holdings Corp.*, 2013 WL 12244352, at *3; *Mize v. McGraw-Hill, Inc.*, 82 F.R.D. 475, 478 (S.D. Tex. 1979); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1540 (11th Cir. 1985) (in suit between private parties, recognizing "compelled disclosures [of organization's membership] would, of course, be constitutionally excessive [because] the First Amendment ma[kes] such information privileged").

Faced with this one-sided authority, X manufactures a "state-action nexus" requirement, arguing that the First Amendment privilege applies only when a government party or state law is involved. Resp.41. Not so.

In *Perry*, for example, private plaintiffs sought the production of private defendant-intervenors' internal communications—the mere presence of state officials in the litigation had nothing to do with the discovery dispute. *See Perry*, 591 F.3d at 1152. Likewise, in *Whole Woman's Health*, the discovery dispute was entirely between private parties. *See* 896 F.3d at 369-70. X seeks to distinguish that case as one concerning religious rights, but those rights derive from the First Amendment, and X never explains why an order implicating religious freedom constitutes state action, but one affecting association does not. *See* Resp. 42.

X's proposed departure from settled doctrine would have wide-ranging consequences. For example, X's formulation would retract a witness's ability to assert Fifth Amendment rights against self-incrimination in a deposition or civil suit, at least where a government actor is not otherwise a party. *But see Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) (recognizing the Fifth Amendment privilege "can be asserted in any proceeding"). And it would overturn the line of cases recognizing that journalists have a presumptive First Amendment right against the compelled disclosure of confidential informants in civil

litigation. *See Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725-26 (5th Cir.), *modified on reh'g,* 628 F.2d 932 (5th Cir. 1980) (observing the privilege is especially important in private libel disputes where "a defamed plaintiff might relish an opportunity to retaliate against the informant").

X's concerns about workability are overblown. The "governmental interest" to be evaluated is the court's interest in compelling production of discoverable information. And constitutional privilege disputes will not require adjudication in every civil suit in which sensitive internal documents are requested in discovery. To claim the First Amendment privilege, a litigant will have to show credible fear that disclosure of requested documents will result in a chill to core speech, press, associational, or religious activity. *See, e.g.*, *Hastings v. N. E. Indep. Sch. Dist.*, 615 F.2d 628, 631 (5th Cir. 1980). That showing is unlikely in regard to requests for private "scandalous text messages," Resp.46, that are not essential to First Amendment rights, or for "confidential business negotiations," *id.*, and other commercial speech that "receives less protection from government regulation [and] private suits," *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 548 (5th Cir. 2001), *abrogated*

*on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Nor will unmasking the identities of individuals in garden-variety commercial disputes subject them to the type of harassment and death threats that have been aimed at Media Matters's employees and donors. *See* ROA.1606-15.

Before the district court, X conceded the obvious: the on-point authority compiled by Media Matters "supports a qualified privilege and a case-by-case analysis of the disputed materials." ROA.1358. That analysis cannot be avoided here.

## C. The district court erred by compelling donor information protected by the First Amendment.

X's various attempts to absolve the district court's failure to apply exacting scrutiny in compelling Media Matters to comply with X's far-ranging requests similarly fall flat. To begin, X insists that the district court dutifully applied the "method established by *Perry*," Resp.48, but the Ninth Circuit there emphasized the need for "careful consideration of the need for such discovery," requiring "the party seeking the discovery [to] show that the information sought is highly relevant to the claims or defenses in the litigation," *Perry*, 591 F.3d at 1161. The district court's

order is bereft of such analysis, compelling wholesale production of *all* responsive documents despite their near total irrelevance. ROA.2169.

X further attempts to bolster the district court's order using implausible theories of the requested discovery's potential relevance. *See* Resp.48-53. For instance, X's suggestion that it might be relevant if Media Matters received donations "from X's marketplace competitors or influential individuals known to be critical of X" or solicited donations indicating "they were looking to go after certain social media platforms," Resp.49, only highlights the lack of narrow tailoring in X's requests and the district court's order. *See Perry*, 591 F.3d at 1152, 1164 (concluding plaintiffs failed to meet "evidentiary burden" to satisfy "heightened relevance test"). That is *not* what X sought nor what the district court ordered when it compelled Media Matters to reveal the names and addresses of *all* of its donors, along with the complete details of *all* of its fundraising efforts, including *every* solicitation for financial support. Such an order, if enforced, would sweep in huge swathes of information that X does not even pretend is relevant under Rule 26, let alone through the lens of the exacting scrutiny that the First Amendment demands.

To justify the sheer scope of the district court's order, X leans hard on its burden to prove personal jurisdiction and venue. Resp.50-51. But it fails to dispute that Media Matters has never refused to produce information about donations received from Texas. *See* Br.33. Nor does it explain why it requires all Media Matters's donor information for this purpose. X's theory also confuses basic personal jurisdiction principles. It says it seeks information "on whether [Media Matters] solicited Texas funding *more generally*" or sought to "silenc[e] conservative speech on social media platforms *more generally*." Resp.51 (emphases added). Such documents are not relevant to whether *specific* (rather than general) jurisdiction exists in a case concerning a D.C.-based media outlet's publishing two articles about a then-California based company. *See* Br.31-34; *see also Johnson v. TheHuffingtonPost.com, Inc.,* 21 F.4th 314, 317-18 (5th Cir. 2021) (explaining plaintiff's claims "must arise out of or relate to" defendant's purposeful forum contacts, and that other ties to

the forum "cannot sustain [this Court's] power to hear" a case "if they do not connect to the plaintiff's claim").[4]

Finally, X argues that the parties' protective order ameliorates any burden on First Amendment rights. Resp.53-55. But "[w]hile assurances of confidentiality may reduce the burden of disclosure to the State, they do not eliminate it." *Bonta*, 594 U.S. at 616; *see also Perry*, 591 F.3d at 1164 (recognizing a protective order "cannot eliminate these threatened harms"). Any modest reduction on the burden to Media Matters's associational rights—and the rights of its donors—is outweighed by the irrelevance of nearly all the information the district court compelled to be disclosed. *See Perry*, 591 F.3d at 1165 (weighing benefits of protective order against the need for discovery and chill to associational rights); *accord Bonta*, 594 U.S. at 616 n.* (similar).

That X's owner will not immediately gain direct access to the information at issue is also of little comfort to Media Matters and its

---

[4] X's contention (at Resp.53) that Media Matters forfeited its arguments as to RFP Nos. 21 and 35 is also baseless. Media Matters did not limit its concerns with those requests to a footnote, as X suggests, but rather made numerous arguments as to why *none* of the requests, including those two, could satisfy Rule 26, let alone the more demanding First Amendment standard. Br.27-34, 53-57.

donors. *Contra* Resp.54. X's owner Elon Musk has promised to pursue
"*anyone*" funding Media Matters. ROA.1969. Turning over the name and
home address of *everyone* funding Media Matters therefore will chill the
associational rights of thousands of third parties, notwithstanding that
this information will (for the time being) "only" be provided to Musk's in-
house and outside counsel. *See Perry*, 591 F.3d at 1165 (granting relief
after weighing foreseeable chill against protective order). Indeed, Media
Matters presented extensive evidence of chill below, which the district
court acknowledged but failed to weigh in its balancing analysis.
ROA.2164-69. That erroneous application of exacting scrutiny requires
reversal lest this Court "set[] a precedent that may be replicated in
litigation anywhere." *Whole Women's Health*, 896 F.3d at 373
(characterizing as "disturbing" the prospect of First Amendment
privileged information being "turn[ed] over to a public policy opponent").

## III. X's requests are also impermissible under Rule 26, as the motions panel determined.

As the motions panel noted, "the district court's order did not
address Media Matters's Rule 26 objections." *X Corp.*, 120 F.4th at 198.
X does not contest that a failure to address such objections would
constitute clear error. *See* Resp.55-57.

Instead, X insists the district court did address Rule 26—but concedes the district court never addressed Media Matters's proportionality objection. Resp.56. That alone was clear error and warrants reversal. Br.52-53.

As for harassment and relevance, X does not even cite the district court's order in suggesting those objections were addressed. The order's plain text makes clear that it was limited to First Amendment privilege. *E.g.*, ROA.2153-60 (holding Media Matters waived privilege); ROA.2164-69 (holding any such privilege overcome); ROA.2169 (granting motion on these bases). X's only response is to suggest that the district court addressed relevance and harassment "in its analysis of the First Amendment balancing test." Resp.55-56 (quoting ROA.2305). But the order's balancing-test analysis does not use the word "harass" or any variation of it, let alone contain any meaningful discussion of the harassment issue. ROA.2164-69. And even if the district court may have addressed relevance in a drive-by manner as part of its erroneous First Amendment analysis, nowhere does it even properly recognize the elements of Media Matters's Rule 26 objections, let alone resolve them. *See id.*

As for the merits of the Rule 26 issues, X has little to say about them, and what it does say is wrong.

***Proportionality***. X studiously avoids the motions panel's correct conclusion that X's "discovery requests are disproportional to the needs of the case." *X Corp.*, 120 F.4th at 199. Instead, it suggests Media Matters abandoned its proportionality objection in responding to the motion to compel. Resp.56. That is false. Media Matters's response clearly explained that Rule 26 limits discovery to nonprivileged matters that are "proportional to the needs of the case," and outlined the factors involved in the proportionality analysis, including "the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." ROA.1602 (quoting Fed. R. Civ. P. 26(b)(1)). Then, Media Matters argued that given the lack of importance of donor information and the burden that would be imposed on Media Matters and its donors, "the burden of the proposed discovery . . . clearly 'outweighs its likely benefit'"—in other words, the requests were disproportional under the enumerated Rule 26 factors. ROA.1603 (quoting Fed. R. Civ.

P. 26(b)(1)). X's and the district court's failure to acknowledge this point does not mean Media Matters abandoned the objection.

X also vaguely suggests that any "proportionality analysis would necessarily account for" the parties' protective agreement and the requirement to ask the district court before using material designated Attorneys' Eyes Only. Resp.56. But a protective order, even when entered by a court, is "not a substitute" for satisfying Rule 26 and does not "obviate[] . . . objections to discovery" under that rule. *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990); *see also Soukhaphonh v. Hot Topics, Inc.*, 2017 WL 6888243, at *3 (C.D. Cal. May 23, 2017) (holding existence of protective order "did not absolve" party from making a "showing of proportionality"). And because X entirely fails to address the merits of the proportionality issue, this Court should conclude, just as the motions panel did, that X's requests fail the proportionality requirement. *X Corp.*, 120 F.4th at 199; Br.53-57; Resp.55-57.

**Relevance.** The motions panel was likewise correct that X's requests "encompass irrelevant information." *X Corp.*, 120 F.4th at 199. X offers little on the issue of relevance other than to cross-reference the

arguments it advanced in its discussion of the First Amendment privilege. *See* Resp.57. For the reasons already stated, those arguments fail to establish the relevance of X's requests under any standard. *Supra* § II.C; *see also* Br.30-34, 53-57.

Moreover, X rehashes a sweeping view of relevance that is out of step with the purpose of Rule 26. It uses imagined hypotheticals to try to establish relevance, and defends this practice by blaming Media Matters for purportedly ignoring the district court's June order. Resp.49-52. That is factually incorrect, as explained. *See* Br.40-47; *supra* § II.A. And contrary to X's contention that it may "ask MMFA to search for documents that would be highly probative of MMFA's motives," Resp.52, courts will deny discovery intended to "shed light" on a party's "improper motives" precisely when that possibility "amounts to nothing more than mere speculation," as here. *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, 2013 WL 1293718, at *6 (W.D. Tex. Mar. 26, 2013). Rule 26 is not "a license to engage" in such "an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)).

***Harassment.*** X all but ignores harassment. It never acknowledges the motions panel's correct conclusion that, if Media Matters were forced to release the requested information, "Media Matters and its donors would bear a heavy burden," as this "could enable others to harass or intimidate Media Matters or its donors." *X Corp.*, 120 F.4th at 199; *see* Resp.55-57. Instead, it asserts that "any harassment claims are speculative" given the parties' agreement and the requirement to ask the district court before using material designated Attorneys' Eyes Only, and that "the requests were not served to harass but to obtain crucial case information." Resp.55, 57. But accepting X's downplaying of potential harassment requires ignoring, as X does, mountains of evidence that Media Matters's donors have already been subject to significant harassment in connection with this litigation. *See* Br.59-61 (citing ROA.1607-15); Resp.55-57. It requires ignoring that X's owner, Elon Musk, has threatened to "*pursue not just [Media Matters], but anyone funding that organization,*" Br.58, and personally amplified a previous leak purporting to identify Media Matters's largest contributors, *see* ROA.1611. And it requires ignoring, as X does, the motions panel's correct observation that Media Matters had every reason to be concerned

by the prospect of disclosure of its donor information, not because of any doubts about the character of X's lawyers "or the judgment of the district court, but because of the sensitive nature of the requested data." *X Corp.*, 120 F.4th at 199. This Court should not turn a blind eye to the significant risk of harassment and should accordingly reverse.

## CONCLUSION

This Court should reverse the district court's order or grant mandamus relief.

Dated: January 23, 2025

By: */s/ Gregg Costa*
Gregg Costa

GIBSON, DUNN &
CRUTCHER LLP
Gregg Costa
811 Main Street, Suite 3000
Houston, TX 77002
T: (346) 718-6649
F: (346) 718-6620
gcosta@gibsondunn.com

Andrew LeGrand
Trey Cox
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
T: (214) 698-3100
F: (214) 571-2960
alegrand@gibsondunn.com
tcox@gibsondunn.com

Theodore J. Boutrous, Jr.
333 South Grand Avenue
Los Angeles, CA 90071
T: (213) 229-7000
F: (213) 229-7520
tboutrous@gibsondunn.com

Amer S. Ahmed
200 Park Avenue
New York, New York 10166
T: (212) 351-4000
F: (212) 351-4035
aahmed@gibsondunn.com

Respectfully submitted,

ELIAS LAW GROUP LLP
Abha Khanna
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180
akhanna@elias.law

Aria C. Branch
Christopher D. Dodge
Jacob D. Shelly
250 Massachusetts Avenue NW,
Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 986-4498
abranch@elias.law
cdodge@elias.law
jshelly@elias.law

*Counsel for Defendants-Appellants
Media Matters for America, Angelo
Carusone, and Eric Hananoki*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that: (1) all required privacy redactions have been made in compliance with 5th Cir. Rule 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

*/s/ Gregg Costa*
Gregg Costa

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for Appellants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Gregg Costa*
Gregg Costa

## CERTIFICATE OF COMPLIANCE

This document contains 6,486 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Gregg Costa*
Gregg Costa