# United States Court of Appeals
# for the Fifth Circuit

No. 24-10900

United States Court of Appeals
Fifth Circuit
**FILED**
October 20, 2024
Lyle W. Cayce
Clerk

X Corp.,

>*Plaintiff—Appellee*,

*versus*

Media Matters for America; Eric Hananoki; Angelo Carusone,

>*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-1175

Before Smith, Graves, and Engelhardt, *Circuit Judges*.

Per Curiam:

Media Matters, Inc., appeals the district court's discovery order compelling it to disclose its donors' information and communications. We grant Media Matters's motion for stay pending appeal.

I.

In November 2023, X Corp. sued Media Matters, Inc., Eric Hananoki, and Angelo Carusone (collectively, "Media Matters") for (1) interfering with X Corp.'s contract, (2) disparaging X Corp's business, and (3) interfer-

No. 24-10900

ing with X Corp.'s prospective economic advantage. X Corp. alleges that Media Matters "knowingly and maliciously" manipulated images to "portray X Corp. as a social media platform dominated by neo-Nazism and anti-Semitism," which "alienate[d] major advertisers, publishers, and users from X."

In discovery, X Corp. requested that Media Matters produce the identity of donors, their addresses, and its communications with them. Relevant to this appeal are X Corp.'s Requests for Production 17, 18, 21, and 35:

> Request for Production 17. Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.
>
> Request for Production 18. Any document or communication reflecting Your attempts to solicit donations or financial support of any kind, including but not limited to any discussions with any donors or any others who provided, considered providing, or were asked to provide financial support of any kind.
>
> Request for Production 21. All documents and communications regarding Your sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino.
>
> Request for Production 35. All materials regarding or communications with any donor or potential donor to Media Matters mentioning or regarding in any way this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform.

X Corp. moved to compel Media Matters to produce responsive documents, but the district court deferred ruling on those four requests. Recognizing Media Matters's potential First Amendment concerns, the court

instead ordered it to "identif[y]" "responsive documents," to "log [them] as privileged," and to hand over a privilege log to X Corp. by June 14, 2024.

Over the next four months, however, Media Matters neither searched for nor logged documents responsive to Requests 17 and 18. In emails to X Corp., Media Matters acknowledged that it wasn't "separately searching for donor-related documents" and said that X Corp. would learn about them only if they overlapped with other discovery requests. In this court, Media Matters maintains that it didn't need to act on Requests 17 and 18 because they "substantially overlap[ped]" with Requests 21 and 35.

In late September 2024, X Corp. again moved to compel production. Media Matters opposed the motion, asserting once again that the documents were privileged under the First Amendment and, alternatively, were outside the proper scope of discovery under Rule 26(b).

This time, the district court granted the motion and ordered Media Matters to produce all documents responsive to Requests 17, 18, 21, and 35. While the court acknowledged that Media Matters likely had a First Amendment privilege, it found that Media Matters had waived any privilege by refusing to search for and to log responsive documents. It found also that Media Matters hadn't clearly invoked the First Amendment in its latest discovery responses. But the court didn't address whether these discovery requests exceeded the scope of discovery.

Media Matters appealed that order. In the meantime, on October 2, it moved this court to (1) stay the order pending appeal and (2) administratively stay the order while we decide whether to stay it pending appeal. Media Matters likewise asked the district court to stay its own order. Before this court took any action, the district court temporarily stayed its own order on October 3. On October 7, the court denied a stay of its order pending appeal but extended Media Matters's deadline to produce documents until

this court could decide the instant stay application.

We now need to decide only whether to stay the district court's order pending appeal.

## II.

Before considering whether to stay, we must examine our jurisdiction. Media Matters avers we have jurisdiction under 28 U.S.C. § 1291, which grants the courts of appeals "jurisdiction of appeals from all final decisions of the district courts of the United States." Typically, a decision is "final" only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). But the collateral order doctrine provides a narrow exception for decisions that are conclusive, resolve important questions separate from the merits, and are effectively unreviewable on appeal from the final judgment. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). The question is whether the district court's order compelling disclosure of Media Matters's donor information satisfies those criteria.

Media Matters invokes *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), which, it says, permits immediate appeal in cases involving First Amendment privilege, reasoning that orders denying the privilege "(1) are 'conclusive' because 'failure to comply . . . may result in sanctions'; (2) 'resolve important . . . issues separate from the merits'; and (3) are 'effectively unreviewable' on appeal' from the final judgment." But the Supreme Court has "stressed" that the collateral order doctrine "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk*, 558 U.S. at 106 (quotation omitted). "The justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Id.*

No. 24-10900

In conducting this analysis, the reviewing court should consider whether the appeal involves "important questions separate from the merits," and, "[m]ore significantly, . . . whether a right is 'adequately vindicable' or 'effectively reviewable'"—a question that "cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." *Id.* at 107 (citations omitted). The Supreme Court has "generally denied review of pretrial discovery orders," even orders involving "one of the oldest recognized privileges for confidential communications."[1]

To succeed, then, Media Matters must clear a high bar, and its cited case, *Whole Women's Health*, is not directly on point. There, we asserted jurisdiction under the collateral-order doctrine where a religious third party sought to quash a subpoena on First Amendment and Religious Freedom Restoration Act ("RFRA") grounds. 896 F.3d at 366. *Mohawk* did "not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect." *Id.* at 368. But because Media Matters isn't a third party, it invokes *Whole Woman's Health*'s "reaffirm[ation]" of this Court's "precedent holding that interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine." *Id.*

Media Matters is on firm ground. "We have repeatedly found the [collateral order] doctrine applies in cases in which pre-trial orders arguably infringe on First Amendment rights." *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 490 (5th Cir. 2013). That is true of the district court's

---

[1] *Mohawk*, 558 U.S. at 108 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981), and *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998)).

5

order here.[2] Arguably the greatest consideration in determining appealability is the "importance" of the issue at stake, and that, in the collateral order context as in others, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 179–80 (5th Cir. 2009). "[I]n free-speech cases[,] interlocutory appeals sometimes are more freely allowed." *Id.* at 181 (citing *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 712 (7th Cir. 1986)).

Here, appellate jurisdiction is proper under the collateral order doctrine. The order Media Matters appeals is conclusive because failure to comply is likely to result in sanctions. *See Whole Woman's Health*, 896 F.3d at 367. This appeal would resolve an important issue—Media Matters's First Amendment privilege claim—that is separate from the merits of X Corp.'s tort claims. *See id.* And the appealed-from order would be effectively unreviewable on direct appeal because once the donor information is disclosed, the First Amendment injury could not be undone. *See id.*

## III.

In deciding whether to stay the discovery order pending Media Matters's appeal, we ask (1) whether Media Matters has made a strong showing that it is likely to succeed on the merits, (2) whether it will suffer irreparable injury without a stay, (3) whether the stay will substantially injure other parties interested in the proceedings, and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

---

[2] *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1161, 1163 (9th Cir. 2010) (applying First Amendment privilege to discovery order that may "chill[] associational rights" (cleaned up)).

No. 24-10900

A.

Factors (2), (3), and (4) weigh in Media Matters's favor. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[3] A stay would not "substantially injure other parties interested in the proceedings," which have no legitimate interest in the immediate disclosure of Media Matters's donors. *Nken*, 556 U.S. at 434. And "because First Amendment freedoms need breathing space to survive," the public interest is better served by avoiding even the "risk of a chilling effect on association." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 618–19 (2021).

B.

Our decision thus turns on whether Media Matters is likely to succeed on the merits of its appeal.

We review a district court's discovery rulings for an abuse of discretion. *HC Gun & Knife Shows, Inc. v. City of Hous.*, 201 F.3d 544, 549 (5th Cir. 2000). We generally affirm unless a ruling on discovery is "arbitrary or clearly unreasonable." *United States v. Butler*, 429 F.3d 140, 148 (5th Cir. 2005). But "in cases raising First Amendment issues, an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression."[4]

Media Matters primarily claims that the order violates its donors' First Amendment rights. It contends that, under *Bonta*, the district court

---

[3] *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam); accord *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012).

[4] *Marceaux*, 731 F.3d at 491–92 (cleaned up). *See generally Whole Woman's Health*, 896 F.3d at 369.

7

could not order disclosure unless it satisfied "exacting scrutiny" because "compelled disclosure of donor identity imposes a widespread burden on donors' associational rights under the First Amendment."

In *Bonta*, the Supreme Court held unconstitutional a California regulation requiring charities to "disclose to the state . . . the identities of their major donors." 594 U.S. at 600–01. "[C]ompelled disclosure of affiliation," the Court explained, "may constitute as effective a restraint on freedom of association as other forms of governmental action." *Id.* at 606 (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)) (cleaned up). The Court thus applied "exacting scrutiny" to California's regulation. *Id.* at 611. The regulation failed exacting scrutiny because (1) there was no "substantial relation between the disclosure [regulation] and a sufficiently important government interest," and (2) California had not "narrowly tailored" the regulation to its claimed interest. *Id.* at 611, 612.

"[E]xacting scrutiny is triggered by *state action* which may curtail the freedom to associate." *Bonta*, 594 U.S. at 616 (emphasis added) (cleaned up). Conversely, the discovery order here compels a private party to disclose information to another private party.[5]

The district court agreed that Media Matters raises legitimate First Amendment concerns. So when X Corp. first moved to compel in May 2024, the court didn't order Media Matters immediately to disclose its purportedly privileged information but, instead, ordered it to log its claims of privilege by June 14. This order implicitly required Media Matters to look for documents responsive to X Corp.'s discovery requests.

---

[5] *But see Perry*, 591 F.3d at 1161 (applying First Amendment privilege to discovery request served by private party); *Whole Woman's Health*, 896 F.3d at 371 (suggesting that RFRA may apply to private litigant's discovery requests).

No. 24-10900

In the intervening four months, however, Media Matters refused to search for these documents or to log its claims to privilege over them. It says that it had several more months to comply under the district court's updated discovery timeline. But that's not how it explained its refusal; instead, it told X Corp. that it was "not separately searching for donor-related documents" under Requests 17 and 18 and that X Corp. would find out about those documents only if they fell within other discovery requests. It similarly maintains here that those requests "substantially overlap" with other requests.

The district court granted X Corp.'s second motion to compel. It reasonably concluded that Media Matters never intended to log responsive documents. It thus found that by defying the order, Media Matters had waived any applicable First Amendment privilege. In addition, it found that Media Matters had abandoned its First Amendment privilege by not properly raising it in its updated discovery responses.

It is puzzling why Media Matters defied the district court. As that court explained, Media Matters "could have complied with the Order by, at a minimum, independently searching for the documents and creating a privilege log." In other words, it didn't yet have to turn over the purportedly privileged documents. Does Media Matters think that the First Amendment excuses it from explaining why withheld discovery is privileged? *But see* Fed. R. Civ. P. 26(b)(5).

"A trial judge's control of discovery is granted great deference." *HC Gun*, 201 F.3d at 549. If litigants refuse to comply with the trial court's reasonable discovery orders, they do so at their own risk. Even when we reversed a discovery order mid-litigation in *Whole Woman's Health*, the adversely affected party had diligently searched for and turned over a substantial number of responsive documents. *See* 896 F.3d at 366.

Nonetheless, waiver or not, we don't decide these "novel and far-

reaching" First Amendment issues in this ruling on the motion to stay, lest we "issu[e] unnecessary and potentially overbroad or misleading rulings." *Id.* at 374. This stay application is an imperfect vehicle to resolve those questions. "[T]ime is woefully short for thorough consideration." *Id.* And the parties have presented their arguments across only a few pages that they filed in the haste of an emergency appeal.[6]

Instead, we look to the discovery limits set out in Federal Rule of Civil Procedure 26. A party may only "obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case." FED. R. CIV. P. 26(b)(1) (emphasis added). We consider, among other things, "the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (cleaned up). The district court's order did not address Media Matters's Rule 26 objections. Because we can resolve Media Matters's request for a stay on these grounds, we do.

Starting with Request for Production 17, the broadest request, X Corp. demanded

> Documents sufficient to show the identity of all Your donors or any others who provide financial support of any kind, their residence, the time and place of their donation or provision of financial support, and the amount of their donations or other financial support.

Request 17 is not "proportional to the needs of the case." *See* FED. R. CIV. P. 26(b)(1). X Corp. says that it needs this information to determine (1) how

---

[6] Importantly, this decision is made by an administrative panel (sometimes called a motions panel). The merits of the interlocutory appeal will be decided by a merits panel after full briefing and, if that panel chooses, oral argument. "A panel hearing the merits of an appeal may review a motions panel ruling, and overturn it where necessary." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 704 (5th Cir. 1997) (citation omitted).

Media Matters has "availed [itself] of Texas," (2) how it "funded [its] tortious conduct," and (3) whether it is "profiting or seeking to improve [its] financial condition from its disparagement." In its order compelling production, the district court said that this information would help X Corp. prove "willful and intentional . . . interference with [X Corp.'s] contract" and whether "false and disparaging information was published with malice."

We doubt that X Corp. needs the identity of Media Matters's every donor, big or small, to advance its theories. Nor does it need the full residential addresses for any of those stated purposes. Conversely, Media Matters and its donors would bear a heavy burden if Media Matters had to release this information. It could enable others to harass or intimidate Media Matters or its donors. Indeed, X Corp.'s owner, Elon Musk, has said that X Corp. would "pursue not just [Media Matters] but anyone funding that organization. I want to be clear about that anyone funding that organization, will be, we will pursue them."

The district court might have alleviated some of these burdens by issuing the protective order to which the parties had stipulated. It declined to do so, reasoning that parties could always "agree to any confidentiality or discovery-related contract" without using judicial resources. Unlike a private agreement, however, court orders are backed by courts' coercive power. True, the district court required X Corp. to "ask the Court before using an information beyond the Attorney's Eyes Only designation." But that was far from a blanket ban on sharing confidential information. We conclude that Media Matters was reasonably concerned, not because we doubt the "character of [X Corp.'s] lawyers" or the judgment of the district court, but because of the sensitive nature of the requested data.

The other requests for production are not as broad but still encompass irrelevant information. Request 18 asks for communications "reflecting . . .

attempts to solicit donations or financial support, including . . . discussions with donors" or potential donors. Request 21 asks for "sources of funding for research, investigation, reporting, publication, or any other work related to X, the Platform, Elon Musk, or Linda Yaccarino." Request 35 asks for communications with donors or potential donors regarding "this Matter, Elon Musk, Linda Yaccarino, X, Twitter, or the Platform, including misinformation, brand safety, or ad pairing on the Platform." There is no apparent reason why these documents need to identify all donors or potential donors, but we agree with the district court that the communications could otherwise be relevant to X Corp.'s theories. Indeed, Media Matters seems to agree that Requests 21 and 35 are appropriate.

Because X Corp.'s discovery requests are disproportional to the needs of the case, Media Matters is likely to succeed on the merits of its appeal. *See* Fed. R. Civ. P. 26(b)(1).

### IV.

Because all factors support staying the discovery order pending appeal, Media Matters's October 2, 2024, motion for a stay pending appeal is GRANTED. The district court's September 27, 2024, order compelling production is STAYED pending further order of this court. Media Matters's motion for administrative stay is DISMISSED as moot. Nothing in this opinion is to be construed as a comment on the ultimate merits of the underlying litigation.